Exhibit A

```
                                1995-00068154
                                Recorded By:         03 RecFee
                                COLLINS & AIKMAN        SurMon
                                                        NoPCOR
                                Official Records        DTTax
                                County of Solano        Free    $.  0
                                Robert Blechschmidt     OvrSht
                                Assessor/Recorder
```

Recording requested by:
Collins & Aikman Products Co.
701 McCullough Drive                14:36   27-OCT-95   AR16   11   Pgs
Charlotte, North Carolina 28262

When recorded, mail to:
Department of Toxic Substances Control
Region 1
10151 Croydon Way, Suite 3
Sacramento, California 95827
Attention: James L. Tjosvold

**COVENANT
TO RESTRICT USE OF PROPERTY**

Wickes Forest Industries
Elmira, Solano County, California

---

This Covenant and Agreement ("Covenant") is made on this __27th__ day of __October__, 1995, by Collins & Aikman Products Co. ("Covenantor"), a Delaware corporation, which is the owner of record of certain real property situated at 147 A Street in the City of Elmira, County of Solano, State of California, described in Exhibit "A" attached hereto and incorporated herein by this reference ("the Property") and the California Department of Toxic Substances Control ("DTSC"), with reference to the following facts:

A.  The Property is the real property known as Wickes Forest Industries, which has been contaminated.

B.  The Property was formerly used as a wood treatment facility. During the operational years, wood was treated with preservative solutions containing arsenic, chromium, and copper. These metals have contaminated the soils. Arsenic is highly toxic by ingestion and inhalation and is a known carcinogen. Higher concentrations of copper can be toxic to humans, and aquatic life is sensitive to lower concentrations. The soils at the site exceed local background concentrations for these metals. Certain of the

1

soils have been left in place, and an asphalt cap has been constructed over the site to prevent direct human exposure and migration of the contamination.

C.   Covenantor desires and intends that in order to protect the present or future public health and safety, and the environment, the Property shall be used in such a manner as to avoid any potential harm to persons or property which may result from contamination in place underneath the Property.

## ARTICLE I
## GENERAL PROVISIONS

1.01 <u>Provisions To Run With The Land</u>.  This Covenant sets forth protective provisions, covenants, restrictions, and conditions, (collectively referred to as "Restrictions"), upon the Property and subject to which the Property shall be improved, held, used, occupied, leased, sold, hypothecated, encumbered, and/or conveyed.  Each and all of the Restrictions shall run with the land and pass with each and every portion of the Property, and shall apply to and bind the respective successors in interest thereof. Each and all of the Restrictions are imposed upon the entire Property unless expressly stated as applicable to a specific portion of the Property.  Each and all of the Restrictions are imposed pursuant to Sections 25355.5 and 25356.1 of the California Health and Safety Code (H&SC) and run with the land pursuant to Section 25230(a)(1) of the California H&SC.  Each and all of the Restrictions are enforceable by DTSC and its successor agencies, if any.

1.02 <u>Concurrence of Owners Presumed</u>.  All purchasers, lessees, or possessors of the Property shall be deemed by their purchase, leasing, or possession of such Property, to be in accord with the foregoing and to agree for and among themselves, their heirs, successors and assignees, and the agents, employees, and lessees of such owners, heirs, successors, and assignees, that their interests in the Property will be subject to the Restrictions contained herein.

1.03 <u>Incorporation Into Deeds and Leases</u>. Covenantor desires and covenants, and all purchasers, lessees or possessors shall be deemed to have covenanted, that the Restrictions set out herein shall be incorporated by reference in each and all deeds and leases of the Property.

ARTICLE II

DEFINITIONS

2.01 <u>DTSC</u>. "DTSC" shall mean the California Department of Toxic Substances Control and shall include its successor agencies, if any.

2.02 <u>Improvements</u>. "Improvements" shall mean all buildings, structures, roads, driveways, regrading, landscaping, bodies of water, park and playground improvements, and paved parking areas, constructed or placed upon any portion of the Property.

2.03 <u>Occupants</u>. "Occupants" shall mean those persons entitled by ownership, leasehold, or other legal relationship to the exclusive right to occupy any portion of the Property.

2.04 <u>Owner</u>. "Owner" shall mean the Covenantor, its successors in interest, and their successors in interest, including heirs, and assigns, who at any time hold title to all or any portion of the Property.

2.05 "Final Cap" shall mean the combination of materials that covers the site to reduce infiltration of surface water and limit human exposure to contaminated soil.

2.06 "Excavation" shall mean the excavation of soil below the final cap that covers the Property.

2.07 "Hazardous materials" shall have the meaning set forth in California Code of Regulations, Title 22, Section 66260.10.

ARTICLE III

DEVELOPMENT, USE, AND CONVEYANCE OF THE PROPERTY

3.01 <u>Restrictions on Use</u>. Every Owner and Occupant promises to restrict the use of the Property described in Exhibit "A" as follows:

3



(A) The Property at 147 A Street shall not be used for residences, hospitals, schools for persons under age 21, day-care centers or any permanently occupied human habitation, including hotels or motels which are used as a permanent residence by employees, without the prior written approval of DTSC.

(B) Except as specified in subsection (D), no use of the Property shall disturb the integrity of the final cap over the Property as described in Exhibit "A", unless the Covenantor, owner, occupant or lessee can demonstrate to DTSC that the disturbance of the final cap is necessary to the proposed use of the Property and will not increase to an unacceptable level any potential reasonable hazard to the public health and safety or the environment, or is necessary to reduce an imminent threat to the public health and safety or the environment, and DTSC approves such a use in writing.

(C) The Covenantor, owner, occupant, or lessee may obtain DTSC approvals as provided in subsection (A) and (B) of this paragraph without instituting the variance provisions of Section 4.01.

(D) The final cap may be disturbed for the purpose of performing emergency repairs, routine periodic maintenance or planned construction, if the final cap is restored to its original condition upon completion of such work. The Covenantor shall notify DTSC of emergency repairs, or planned construction on the property where the final cap has been disturbed not later than two business days after such repairs are begun. Upon completion of the emergency repairs or planned construction, the owner or occupant shall provide DTSC with all documentation requested by DTSC to establish that the final cap has been restored to an equivalent condition.

3.02 *Conveyance of Property*. The Owner or Owners and the Occupants shall provide a thirty (30) day advance notice to DTSC of any sale, lease, or other conveyance of the Property or an interest in the Property to a third person. DTSC shall not, by reason of this Covenant, have authority to approve, disapprove, or otherwise affect any sale, lease, or other conveyance of the Property or any

4

interest in it except as otherwise provided by law or by reason of this Covenant.

3.03 <u>Enforcement</u>. Failure of an Owner to comply with any of the requirements, as set forth in Paragraph 3.01, shall be grounds for DTSC, by reason of this Covenant, to have the authority to require that the Owner modify or remove any Improvements constructed in violation of that paragraph. Violation of the Covenant shall be grounds for DTSC to file an action against the Owner as provided by law, including but not limited to the provisions of Chapter 6.5 and 6.8, Division 20 of the H&SC.

3.04 <u>Notice in Agreements</u>. The Covenantor shall provide a notice to all Owners and Occupants that shall accompany all purchase, lease, sublease, or rental agreements relating to the Property by supplying a copy of this Agreement. In this way all Owners and Occupants shall be aware of the following statement:

> "The land described herein contains hazardous substances. Such condition renders the land and the owner, lessee, or other possessor of the land subject to requirements, restrictions, provisions, and liabilities contained in Chapter 6.5 and Chapter 6.8 of Division 20 of the Health and Safety Code. This statement is not a declaration that a hazard exists."

ARTICLE IV

VARIANCE AND TERMINATION

4.01 <u>Variance</u>. Any Owner or, subject to the prior written consent of the Owner, any Occupant of the Property or a portion thereof may apply to DTSC for a written variance from the provisions of this Covenant. Such application shall be made in accordance with Section 25233 of the California H&SC.

4.02 <u>Termination</u>. Any Owner or, subject to the prior written consent of the Owner, an Occupant of the Property or a portion thereof may apply to DTSC for a termination of the Restrictions as they apply to all or any portion of the Property. Such application

5

shall be made in accordance with Section 25234 of the California H&SC.

4.03 <u>Term</u>.   Unless terminated in accordance with paragraph 4.02 above, by law or otherwise, this Covenant shall continue in effect in perpetuity.

## ARTICLE V
## MISCELLANEOUS

5.01 <u>No Dedication Intended</u>.  Nothing set forth herein shall be construed to be a gift or dedication, or offer of a gift or dedication, of the Property to the general public or for any purposes whatsoever.

5.02 <u>Notices</u>. Whenever any person gives or serves any notice, demand, or other communication with respect to this Covenant, each such notice, demand, or other communication shall be in writing and shall be deemed effective (1) when delivered, if personally delivered to the person being served or to an officer of a corporate party being served, or (2) three business days after deposit in the mail if mailed by United States mail, postage paid, certified, return receipt requested to the record Owner. Notices shall be sent to:

> Collins & Aikman Products Co
> Real Estate Department
> 701 McCullough Drive
> Post Office Box 32665
> Charlotte, North Carolina 28232
> Attention: Bettie Coltrane
> (704) 548-2369
> (704) 548-2300 FAX

> and

> Collins & Aikman Products Co.
> Legal Department
> Post Office Box 32665
> Charlotte, North Carolina 28232
> Attention: John B. Orgain
> (704) 548-2353
> (704) 548-2010 FAX

6

In every case, a copy shall be sent to:

> Department of Toxic Substances Control
> Attention: James L. Tjsovold
> Region 1
> Acting Chief
> Central California Site Mitigation Branch
> 10151 Croydon Way, Suite 3
> Sacramento, California 95827
> (916) 255-3545
> (916) 255-3697 FAX

5.03 <u>Partial Invalidity</u>. If any portion of the Restrictions or terms set forth herein are determined to be invalid for any reason, the remaining portions shall remain in full force and effect as if such portion had not been included herein.

5.04 <u>Article Headings</u>. Headings at the beginning of each numbered article of this Covenant are solely for the convenience of the parties and are not a part of this Covenant.

5.05 <u>Recordation</u>. This instrument shall be executed by the Covenantor, and by the Director, California Department of Toxic Substances Control. This instrument shall be recorded by the Covenantor in the County of Solano within fourteen (14) days after the date of execution by both parties in accordance with the recording requirements of the California H&SC, Section 25230.

IN WITNESS WHEREOF, the parties execute this Covenant as of the date first set forth above.

Covenantor: Collins & Aikman Products Co.
By: John B. Ongain
Title: Senior Counsel
Date: August 28, 1995

DEPARTMENT OF TOXIC SUBSTANCES CONTROL
By: James Tjsovold
Title: Acting Branch Chief
Date: July 18, 1995

7

Order No. 40969

## EXHIBIT "A"

The following described parcels of land are located within the County of Solano, State of California.

### PARCEL ONE

Beginning at the southeast corner of the Northwest One Quarter of Section Nineteen (19) Township Six (6) North Range One (1) East, Mount Diablo Base and Meridian; running thence North along the Quarter Section line to the Southeasterly boundary of the right of way of the Southern Pacific Railroad; thence Southwesterly along the southeasterly line of the right of way of the Southern Pacific Railroad Company to the Quarter Section line running East and West through said Section Nineteen (19); thence East and along said Quarter Section line to the place of beginning. EXCEPTING THEREFROM, however, all that certain real property as conveyed by Eleanor B. Allison to Southern Pacific Railroad Company, a corporation, by Deed dated May 10th, 1916, and recorded May 23rd, 1916 in Liber "226" of Deeds, Page 104, thereof, and described as follows: Beginning at the point of intersection of the Southeasterly right of way line of the Southern Pacific Railroad Company's railroad (as it now exists across said Northwest Quarter of Section 19) with the east line of the Northwest Quarter of Section 19, Township 6 North Range 1 East, Mount Diablo Base and Meridian; thence Southwesterly along said Southeasterly right of way line of the Southern Pacific Railroad Company, a distance of 506 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 265 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point on the east line of said Northwest Quarter of Section 19; thence North along said East line of the Northwest Quarter of Section 19, a distance of 50.7 feet to the point of beginning.

### PARCEL TWO

Beginning at the intersection of the northerly line of Edwards Street and the westerly line of "A" Street extended northerly; thence running Westerly and along the northerly line of Edwards Street, One Hundred Forty (140) feet, more or less, to the intersection of the easterly line of the right of way of the Southern Pacific Railroad Company; thence Northerly and along the easterly line of the right of way of the Southern Pacific Railroad Company, One Hundred Ninety-One (191) feet more or less to the southerly line of County Road Number Two Hundred Forty-Six (246) sometimes also known as Binghampton Street; thence Easterly and along

142-010-13

CONTINUED

Order No. 40969

Exhibit "A" Cont'd. (Parcel Two)

the southerly line of County Road Number 246, to the intersection of the westerly line of a street, extended Northerly; thence Southerly and along the westerly line of a street, extended Northerly to the northerly line of Edwards Street and the place of beginning. All as said streets herein referred to are laid down and designated on that certain map entitled: "PLAN OF RESURVEY OF PORTION OF VACA STATION, PROPERTY OF W. C. FARMER, SITUATED ON SOUTH WEST ONE QUARTER (S.W. 1/4) OF SECTION NINETEEN (19) TOWNSHIP VI NORTH RANGE 1 EAST SOLANO COUNTY," surveyed by E. H. Marshall, Deputy County Surveyor, April 8th, 1870 and now appearing of record in Volume "1" of Maps, Page 44 thereof, Solano County Records.

PARCEL THREE

Beginning at the point of intersection of the westerly line of "A" Street, extended Northerly, and the northerly line of County Road Number 246 (Holdener Road, formerly shown as Binghampton Street) in Elmira Townsite, Solano County, California, which point bears North 0° 22' 08" West, 30 feet and South 89° 55' 06" West, 397.80 feet from the southeast corner of the Northwest One-Quarter of Section 19, T6N, R1E, M.D.B. & M.; thence, from said point of beginning, along the northerly line of the aforementioned Binghampton Street South 89° 55' 06" West, 171.67 feet to the easterly right-of-way line of the Southern Pacific Railroad; thence along said easterly right-of-way line South 34° 52' 51" West, 73.21 feet to the southerly line of said Binghampton Street; thence, along said southerly line, North 89° 55' 06" East, 171.67 feet to the westerly line of the aforementioned "A" Street; thence along the prolongation of said westerly line of "A" Street, North 34° 52' 51" East, 73.21 feet to the point of beginning.

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**  No. 5907

State of _CALIFORNIA_
County of _SACRAMENTO_

On _July 18, 1985_ before me, _DAVID HURLEY_,
    DATE                                NAME, TITLE OF OFFICER - E.G., "JANE DOE, NOTARY PUBLIC"

personally appeared _JAMES TJOSVOLD_,
                    NAME(S) OF SIGNER(S)

☐ personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

SIGNATURE OF NOTARY

[Notary stamp: DAVID HURLEY, COMM. #1040651, Notary Public-California, SACRAMENTO COUNTY, My Comm. Exp. Jan. 4, 1999]

━━━━━━━━━━━━ OPTIONAL ━━━━━━━━━━━━

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form.

**CAPACITY CLAIMED BY SIGNER**

☐ INDIVIDUAL
☐ CORPORATE OFFICER

_____
TITLE(S)

☐ PARTNER(S)    ☐ LIMITED
                ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____

SIGNER IS REPRESENTING:
NAME OF PERSON(S) OR ENTITY(IES)

**DESCRIPTION OF ATTACHED DOCUMENT**

_____
TITLE OR TYPE OF DOCUMENT

_____
NUMBER OF PAGES

_____
DATE OF DOCUMENT

_____
SIGNER(S) OTHER THAN NAMED ABOVE

©1993 NATIONAL NOTARY ASSOCIATION • 8236 Remmet Ave., P.O. Box 7184 • Canoga Park, CA 91309-7184

STATE OF NORTH CAROLINA )
)
COUNTY OF MECKLENBURG )

On August 28, 1995, before me the undersigned, a Notary Public in and for said state, personally appeared John B. Orgain, IV, personally known to me or proved to me on the basis of satisfactory evidence to be the person who executed the within instrument as Senior Counsel of Collins & Aikman Products Co., the corporation that executed the within instrument, and acknowledged to me that such corporation executed the same pursuant to its bylaws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

*Karen M. Allen*
Notary Public in and for said County and State
MY COMMISSION EXPIRES JANUARY 31, 1998


END OF DOCUMENT

This is certified to be an exact reproduction of the filed record if certification is imprinted in purple ink, bearing date of issuance and an original signature of the Assessor/Recorder or deputy.
MARC C. TONNESEN
Solano County Assessor/Recorder
By: [signature] Deputy
Issue Date: 2/13/14
Copy No: 14-58766