Lester O. Brown, Bar No. 160828
LBrown@perkinscoie.com
James G. Bernald, Bar No. 205519
JBernald@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile:  310.788.3399

Attorneys for Defendant
West Coast Wood Preserving, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,<br><br>Plaintiffs,<br><br>v.<br><br>JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; and WEST COAST WOOD PRESERVING, LLC, a Nevada limited liability company,<br><br>Defendants. | Case No. 2:14-cv-00595-WBS-EFB<br><br>**ANSWER AND AFFIRMATIVE DEFENSES BY DEFENDANT WEST COAST WOOD PRESERVING, LLC**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge:    William B. Shubb |

Defendant West Coast Wood Preserving, LLC ("WCWP") files its answer to the complaint of Plaintiffs California Department of Toxic Substances Control and the Toxic Substances Control Account (collectively "DTSC") as follows:

## JURISDICTION

1. Paragraph 1 contains legal conclusions, to which WCWP is not required to respond. To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

## VENUE

2. Paragraph 2 contains legal conclusions, to which WCWP is not required to respond. To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

## INTRA-DISTRICT ASSIGNMENT

3. Paragraph 3 contains legal conclusions, to which WCWP is not required to respond. To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

## STATEMENT OF THE ACTION

4. WCWP admits that DTSC purports to make a claim against Defendants under section 107(a) of CERCLA, 42 U.S.C. section 9607(a), for the recovery of response costs and interest on such response costs that Plaintiffs have incurred in connection with releases and threatened releases of hazardous substances from the approximately 7.5 acre property located at 147 A Street, Elmira, CA 95625 (the "Elmira Site"). WCWP denies that it is liable to Plaintiffs for any response costs that Plaintiffs have incurred. WCWP is without knowledge or information sufficient to form a belief regarding the truth of any remaining allegations in Paragraph 4 and therefore denies them.

5. WCWP denies that it is jointly and severally liable to Plaintiffs for future response costs incurred by the Plaintiffs in responding to releases and threatened releases of hazardous substances at, beneath, and/or from the Elmira

1 Site.  WCWP is without knowledge or information sufficient to form a belief
2 regarding the truth of any remaining allegations in Paragraph 5 and therefore denies
3 them.

    6.    The allegations set forth in Paragraph 6 concern parties other than WCWP, and therefore no response is required.  To the extent any allegations in this paragraph may be deemed to require a response, WCWP denies all such allegations.

## **PLAINTIFFS**

    7.    Paragraph 7 contains legal conclusions, to which WCWP is not required to respond.  To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

    8.    Paragraph 8 contains legal conclusions, to which WCWP is not required to respond.  To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

## **DEFENDANTS**

    9.    WCWP admits the allegations in Paragraph 9.

    10.    WCWP admits the allegations in Paragraph 10.

    11.    WCWP admits the allegations in Paragraph 11.

    12.    WCWP admits the allegations in Paragraph 12.

    13.    Paragraph 13 contains legal conclusions to which no response is required.  WCWP denies that it is a successor to Defendant Pacific Wood Preserving ("PWP"), as evidenced by the following facts.

- PWP incorporated under California law in 1972.
- The sole shareholder of PWP was non-party Richard F. Jackson.
- PWP operated a wood preserving and treating facility at the Elmira Site from 1972 until September 1979.  At a meeting on September 15, 1978, PWP's Board of Directors discussed the Wickes Corporation's ("Wickes") interest in purchasing PWP.

- In September 1979, PWP and Wickes entered into a Purchase and Sale Agreement.  Under that agreement, substantially all of the property and assets of PWP (including the Elmira Site) were sold to Wickes.
- Prior to the sale to Wickes, PWP was informed by the Central Valley Regional Water Quality Control Board that it had successfully investigated and remediated contamination at the Elmira Site.
- Wickes acquired not only the Elmira Site but also the operations located at the Site.  The agreement provided that Wickes acquired "substantially all of the assets used" by PWP in its Elmira business.  Pursuant to the agreement, Wickes acquired PWP's machinery, equipment, inventory, leases, licenses, and many of PWP's contractual liabilities.  The agreement also required PWP to abandon the "Pacific Wood Preserving Corporation" name and transfer it to Wickes.
- Following the sale of its assets to Wickes, PWP began winding up its affairs and dissolving its corporate existence.  On September 11, 1980, PWP was dissolved in accordance with California law.  The process was not completed until sometime in late 1981.
- Pacific Wood Preserving of Bakersfield ("PWP-Bakersfield") was incorporated under Nevada law in 1978.
- PWP-Bakersfield's initial directors were Steven Wellingsworth, Jake Deerst, and George Siegel.
- As part of its dissolution process, in September 1981 PWP transferred full ownership via grant deed of the Bakersfield land where PWP-Bakersfield was located.
- In November 2013, PWP-Bakersfield converted into WCWP.  At no point did either PWP-Bakersfield or WCWP have anything to do with the Elmira Site operations.

-3- DEFENDANT WEST COAST WOOD PRESERVING, LLC's ANSWER TO COMPLAINT
2:14-CV-00595-WBS-EFB

1
2
3
4
5

- WCWP is a Nevada Limited Liability Company with its principal place of business in Kern County, California.
- Before September 2010, neither DTSC nor any other state agency notified or alleged that WCWP was a Potentially Responsible Party ("PRP") for any hazardous waste cleanup at the Elmira Site.

6 Except as expressly admitted above and to the extent that a response is required,
7 WCWP is without knowledge or information sufficient to form a belief regarding
8 the truth of the allegations in Paragraph 13 and therefore denies them.

## GENERAL ALLEGATIONS

10     14.    WCWP admits the allegations in Paragraph 14.

11     15.    WCWP admits that Wickes conducted wood preserving operations at
12 the Elmira Site. Except as expressly admitted above, WCWP is without knowledge
13 or information sufficient to form a belief regarding the truth of the allegations in
14 Paragraph 15 and therefore denies them.

15     16.    With respect to DTSC's allegation that since 1972, hazardous
16 substances were released into the environment at and from the Elmira Site, WCWP
17 admits the following incidents:

- In 1978, rain storms caused wood treatment chemicals to overflow from the treatment area into a nearby drainage ditch. On March 2, 1978 the Central Valley Regional Water Quality Control Board ("Regional Board") issued a Cleanup and Abatement Order. The cleanup order required PWP to: (1) clean up and dispose of all the contaminated soil from the spill; and (2) develop and implement methods to contain contaminated storm waters in the future. PWP performed the work required by the cleanup order, and in 1979, the Regional Board found that PWP satisfied the cleanup order requirements.

-4-

DEFENDANT WEST COAST WOOD
PRESERVING, LLC's ANSWER TO COMPLAINT
2:14-CV-00595-WBS-EFB

- The events that led to the cleanup order also resulted in a civil enforcement lawsuit against PWP by the State of California. That action was later settled for $7,500 as PWP had completely complied with the cleanup and investigation requirements.
- While it was under the operation of Wickes, at least two major discharges of hazardous materials occurred. On December 24, 1979, a green liquid, later determined to be water mixed with arsenic, chromium, and copper, was reported to be flowing over the top of a 3-foot containment wall into a ditch near the property. In November 1980, Wickes discharged approximately 12,000 gallons of reportedly contaminated well water into the drainage ditches. Testing conducted thereafter revealed that the Elmira Site had concentrations of 120,000 ppb of hexavalent chromium and 200 ppb of arsenic in the groundwater. The Regional Board also found that Wickes had disposed of hazardous waste on-site without a permit.
- The actions of Wickes prompted the Regional Board to issue Cleanup and Abatement Orders to Wickes dated October 4, 1982 and June 6, 1982.
- These orders resulted in Wickes entering into a settlement agreement with the Regional Board. In the agreement, the Regional Board found that Wickes (1) disposed of hazardous waste on-site without a permit; (2) did not take steps to ensure that waste was taken to a permitted facility; and (3) did not operate, design, or equip the facility to prevent discharge of hazardous wastes and to prevent hazards to public health, personal safety, and wildlife amongst other violations of the Health and Safety Code.
- Wickes stopped operating on the Elmira Site in 1982 when it commenced bankruptcy proceedings. Ownership of the Elmira

1          facility was transferred to Collins & Aikman Products, LLC ("C&A")
2          in 1982.
3      • Upon information and belief, although aware of contamination
4          conditions at the Elmira Site at the time C&A took control of the
5          facility in 1982, DTSC failed to require that C&A conduct a
6          comprehensive cleanup of the Site. Indeed, upon information and
7          belief, DTSC directed C&A to take actions at the Elmira Site that
8          exacerbated the contamination condition caused by Wickes.
9      • Upon information and belief, although responsible for taking action at
10         the Elmira Site regarding the environmental conditions at the Site,
11         C&A sold the property to Defendants Jim Dobbas and Continental
12         Rail, Inc. in 1997. Upon information and belief, DTSC was aware of
13         the sale but took no action to stop it.
14     • Upon information and belief, DTSC took no action to perfect a claim
15        against Wickes when Wickes went into bankruptcy.
16     • C&A filed for bankruptcy in 2005. Upon information and belief, after
17        C&A went bankrupt and until 2011, DTSC took no further action to
18        mitigate or clean up contamination at the Elmira Site. Indeed, DTSC
19        essentially abandoned the Elmira Site, thus allowing other owners
20        Continental Rail, Inc., Jim Dobbas, and David Van Over to conduct
21        activities on the Site that may have resulted in further contamination
22        at the Site.
23  Except as expressly admitted above, WCWP is without knowledge or information
24  sufficient to form a belief regarding the truth the allegations in Paragraph 16 and
25  therefore denies them.
26          17.    WCWP admits the allegations in Paragraph 17.
27          18.    WCWP is without knowledge or information sufficient to form a belief
28  regarding the truth of the allegations in Paragraph 18 and therefore denies them.

19. WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 19 and therefore denies them.

20. WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 20 and therefore denies them.

21. WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 21 and therefore denies them.

22. WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 22 and therefore denies them.

23. WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 23 and therefore denies them.

24. WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 24 and therefore denies them.

25. WCWP admits the allegations in Paragraph 25.

26. WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 26 and therefore denies them.

27. WCWP admits the allegations in Paragraph 27.

28. WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 28 and therefore denies them.

29. Paragraph 29 contains legal conclusions and DTSC's characterization of its claims, to which WCWP is not required to respond. To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

30. Paragraph 30 contains legal conclusions and DTSC's characterization of its claims, to which WCWP is not required to respond. To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

31. WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 31 and therefore denies them.

1    32.   WCWP is without knowledge or information sufficient to form a belief

2    regarding the truth of the allegations in Paragraph 32 and therefore denies them.

## FIRST CLAIM FOR RELIEF

### (Claim for Recovery of Response Costs Pursuant to

### Section 107(a) of CERCLA, 42 U.S.C. § 9607(a))

6    33.   WCWP incorporates by references its answers to Paragraphs 1-32.

7    34.   Paragraph 34 contains legal conclusions and DTSC's characterization of its claims, to which WCWP is not required to respond. To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

11   35.   Paragraph 35 contains legal conclusions and DTSC's characterization of its claims, to which WCWP is not required to respond. To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

15   36.   Paragraph 36 contains legal conclusions and DTSC's characterization of its claims, to which WCWP is not required to respond. To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

19   37.   Paragraph 37 contains legal conclusions and DTSC's characterization of its claims, to which WCWP is not required to respond. To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

23   38.   Paragraph 38 contains legal conclusions and DTSC's characterization of its claims, to which WCWP is not required to respond. To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

27   39.   Paragraph 39 contains legal conclusions and DTSC's characterization of its claims, to which WCWP is not required to respond. To the extent any

allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2))

40. WCWP incorporates by references its answers to Paragraphs 1-39.

41. Paragraph 41 contains legal conclusions and DTSC's characterization of its claims, to which WCWP is not required to respond. To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations and asserts that joint and several liability does not apply here.

## THIRD CLAIM FOR RELIEF

### (Failure and Refusal to Comply with Imminent or Substantial Determination Order and Remedial Action Order - California Health and Safety Code Sections 25355.5, 25358.3, 25359, 25367)

### (Against Defendants Dobbas, CRI, and Van Over)

42. WCWP incorporates by references its answers to Paragraphs 1-41.

43. WCWP is without knowledge or information sufficient to form a belief with regarding to the truth of the allegations in Paragraph 43 and therefore denies them

44. Paragraph 44 contains legal conclusions and DTSC's characterization of its claims, to which WCWP is not required to respond. To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

45. Paragraph 45 contains legal conclusions and DTSC's characterization of its claims, to which WCWP is not required to respond. To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

1  46.  Paragraph 46 contains legal conclusions and DTSC's characterization of its claims, to which WCWP is not required to respond. To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

47.  Paragraph 47 contains legal conclusions and DTSC's characterization of its claims, to which WCWP is not required to respond. To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

48.  WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 48 and therefore denies them

49.  WCWP denies that all costs DTSC has incurred since 2005 are a result of the actions or failure to act of Dobbas, CRI, and Van Over. WCWP asserts that the vast majority of costs are due to actions and inactions taken by Wickes and C&A as well as DTSC, and WCWP denies that DTSC's costs constitute response costs under CERCLA.

50.  The allegations set forth in Paragraph 50 concern parties other than WCWP, and therefore no response is required. To the extent any allegations in this paragraph may be deemed to require a response, WCWP denies all such allegations.

## AFFIRMATIVE DEFENSES

In asserting the following affirmative defenses, WCWP does not admit that the burden of proving the allegations or denials contained therein is upon WCWP. Rather, the burden of proving the facts relevant to and/or the inverse of the allegations contained in the following defenses and other matters is on the Plaintiffs. Moreover, WCWP does not admit any liability in asserting the following affirmative defenses and other matters; rather, WCWP specifically denies any and all allegations of liability in the Plaintiffs' lawsuit.

Without admitting liability as to any of the Plaintiffs' causes of action and reserving its right to amend its Answer to assert additional defenses as they may

become known during discovery, WCWP asserts the following defenses and other matters:

## FIRST AFFIRMATIVE DEFENSE

1. <u>Discharged by Bankruptcy</u>. During the late 1980s, PWP-Bakersfield experienced financial difficulty leading it to file a petition for Chapter 11 reorganization in 1991 in the United States Bankruptcy Court for the Eastern District of California, Case number 91-28246-A-11, entitled *In re Pacific Wood Preserving of Bakersfield*. The Bankruptcy Court confirmed PWP-Bakersfield's reorganization plan on or about June 8, 1993.

2. The State of California received appropriate notice of PWP-Bakersfield's bankruptcy case and its ability to file a claim against PWP-Bakersfield, whether as an alleged successor to PWP with respect to any environmental liabilities at the Elmira Site, or otherwise. In particular, the California Office of the Attorney General and other state agencies were served with copies of relevant pleadings and orders in PWP-Bakersfield's bankruptcy case. Pleadings filed with the court evidence direct notice to the Attorney General's Office of: (1) the Order Approving the Disclosure Statement for Plan of Reorganization; (2) Ballot; (3) the Amended Plan of Reorganization; and (4) the Amended Disclosure Statement. In addition, the California Department of General Services filed a claim in the bankruptcy proceeding.

3. Because the State was apprised of PWP-Bakersfield's bankruptcy, and DTSC's claim arose before the bankruptcy petition due to the prior cleanup actions at the Elmira Site, the complaint against WCWP, and each and every purported count and cause of action therein, is barred by PWP-Bakersfield's Chapter 11 bankruptcy reorganization.

## SECOND AFFIRMATIVE DEFENSE

4. <u>Failure to state a claim</u>. The complaint against WCWP, and each and every purported count and cause of action therein, fails to state a claim for which relief can be granted.

## THIRD AFFIRMATIVE DEFENSE

5. <u>No successor liability for PWP</u>. As described in Paragraph 13 of this Answer, which is realleged and incorporated by this reference, WCWP did not succeed to any of PWP's liabilities related to the Elmira Site, and, as a consequence, DTSC's claims against WCWP are barred.

## FOURTH AFFIRMATIVE DEFENSE

6. <u>Statute of Limitations</u>. DTSC's claims against WCWP are barred by the applicable statutes of limitations or repose, including, but not limited to, 42 U.S.C. section 9613(g)(2).

## FIFTH AFFIRMATIVE DEFENSE

7. <u>Laches</u>. DTSC's claims against WCWP, to the extent they are equitable in nature, are barred in whole or in part by the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE

8. <u>Costs inconsistent with National Contingency Plan</u>. In 1991, rather than removing the contaminated soil, DTSC directed C&A to cover the soils with approximately 6 inches of shotcrete.

9. In 1994, under the approval of DTSC, C&A excavated approximately 2,100 cubic yards of contaminated soils from off-site drainage ditches and stockpiled them on the Elmira Site and placed an asphalt cap over these impacted soils.

10. Under DTSC's oversight, C&A maintained and operated a groundwater extraction and treatment system, storm water control system, and asphalt cap ("the System"), but DTSC failed to ensure the System's operation following C&A Product's bankruptcy in 2005 until at least 2007.

11. As a result of these misguided remediation actions, the 2008 Remedial Investigation Report revealed that arsenic and hexavalent chromium had continued to leach from the capped soil due to rainwater and groundwater transport and were a persistent source of groundwater contamination.

12. Consequently, for these and potentially other reasons, DTSC's claims against WCWP are barred in whole or in part insofar as DTSC seeks to recover costs that are not reasonable or necessary response costs or are otherwise inconsistent with the National Contingency Plan.

### SEVENTH AFFIRMATIVE DEFENSE

13. <u>Costs not related to recovery</u>. For the reasons described in the Sixth Affirmative Defense above, DTSC's claims against WCWP are barred in whole or in a part insofar as DTSC seeks to recover costs and expenses other than response costs, as the term is defined in CERCLA.

### EIGHTH AFFIRMATIVE DEFENSE

14. <u>Third-party</u>. The discharge, release, and/or disposal of hazardous substances at the Elmira Site, and any resulting harms, were caused by the acts or omissions of other third parties or entities unrelated to WCWP, and WCWP has no liability for such damages under CERCLA. 42 U.S.C. § 9607(b)(3). To the extent Plaintiffs assert some contamination by PWP, PWP is not responsible for the conditions because it fully cleaned the Elmira Site before the sale to Wickes, and regardless, WCWP is not a successor to PWP.

### NINTH AFFIRMATIVE DEFENSE

15. <u>Several liability</u>. WCWP denies any liability, but to the extent WCWP is held liable, its liability is divisible and it is only liable for its several share of liability. Costs should be apportioned accordingly.

### TENTH AFFIRMATIVE DEFENSE

16. <u>Minimal contribution</u>. WCWP's share of liability, if any, is de minimis, de micromis, or both.

## ELEVENTH AFFIRMATIVE DEFENSE

17. <u>Waiver</u>.  DTSC's claims are barred in whole or in part by waiver.

## TWELFTH AFFIRMATIVE DEFENSE

18. <u>Failure to mitigate</u>.  DTSC has failed to mitigate damages, if any.

## PRAYER FOR RELIEF

WHEREFORE, WCWP prays for judgment and relief as follows:

1. Dismissal of DTSC's Complaint against WCWP with prejudice;

2. In the event WCWP is found to have any liability, it is liable only for its several share and is entitled to seek contribution from other responsible parties;

3. An award of reasonable attorneys' fees and costs to WCWP; and

4. Such other relief as the Court deems equitable and just.

DATED: June 10, 2014                Respectfully submitted,

/s/ Lester O. Brown
**PERKINS COIE LLP**
Lester O. Brown
Attorneys for Defendant
West Coast Wood Preserving, LLC

## **DEMAND FOR JURY TRIAL**

Defendant WCWP hereby demands a trial by jury in this action.

DATED: June 10, 2014

/s/ Lester O. Brown
**PERKINS COIE LLP**
Lester O. Brown
Attorneys for Defendant
West Coast Wood Preserving, LLC