# EXHIBIT A

## AGREEMENT OF PURCHASE AND SALE

This Agreement of Purchase and Sale (**"Agreement"**), made this _11_ day of February, 2011(the **"Effective Date"**), is entered into by and between **Jim Dobbas, Inc, a California corporation** (**"Seller"**), and **David van Over, an individual as an unmarried man** (**"Buyer"**).

### Recitals

A. Seller is the owner of an undivided fifty percent (50%) interest in that certain real property located in the unincorporated community of Elmira (**"City"**), Solano County (**"County"**), State of California, commonly known as APNs 0142-042-010, 0142-010-130 and 0142-010-140 and more particularly described on Exhibit A attached hereto (the **"Real Property"**). The Property is adjacent to, or nearby, a Union Pacific Railroad rail spur.

B. The Real Property has constructed thereon two (2) buildings (the "Buildings") containing a total of approximately 18,216 square feet, related improvements (collectively, the **"Improvements"**). If, and to the extent Seller has mineral or other rights in the Property (**"Additional Property Rights"**), such rights are intended to be transferred to Buyer. The Real Property, Improvements and Additional Property Rights are hereinafter collectively referred to as the **"Property"**.

C. Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, the Property pursuant to the terms of this Agreement.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants contained herein, the parties agree as follows:

### Agreement

1. Purchase and Sale. Seller agrees to sell and convey to Buyer, and Buyer agrees to purchase from Seller, the Property on the terms set forth in this Agreement.

2. Purchase Price. The purchase price (**"Purchase Price"**) for the Property shall be One Dollar ($1.00) and shall be payable at the Transfer of Title (defined below).

3. Transfer of Title. For purposes of this Agreement, **"Transfer of Title"** shall be defined as the date that the Quit Claim Deed is recorded in the Official Records of the County. The Transfer of Title shall occur on the Effective Date unless extended by the mutual written consent of the parties.

4. Condition of Title. Title to the Property shall be conveyed to Buyer by Seller by a quit claim deed, which shall be in the form attached hereto as Exhibit B ("Quit

1141071.4
2/11/11

-1-

Claim Deed"). Buyer agrees and acknowledges that it is taking title subject to the Deed Restriction and Environmental Lien described in Section 8; all real estate taxes and assessments which are liens upon the property; all applicable laws, ordinances, rules; all governmental regulations (including, but not limited to those relative to building, zoning and land use) affecting the development, use, occupancy or enjoyment of the property; all matters apparent from the inspection of the property; and all other title matters affecting the property, whether or not of record (collectively, **"Approved Condition of Title"**).

5. Costs and Expenses. Buyer and Seller shall equally share the cost of: (i) any local transfer tax imposed by the City, and (ii) any documentary transfer tax imposed by the County.

6. Prorations.

(a) Taxes/Assessments. At the Transfer of Title, Seller shall pay the 2011 second installment of real estate taxes and assessments for the Property. From and after the Effective Date, Buyer shall be responsible for all real estate taxes, assessments, supplemental taxes or assessment bonds related to the Property and Seller shall be released from any and all obligations thereunder.

(b) Other Expenses. All other expenses for the Property shall be prorated as of 11:59 p.m. on the day prior to the Transfer of Title between the parties based upon the latest available information.

(c) Corrections. If any errors or omissions are made regarding adjustments and prorations as set forth herein, the parties shall make the appropriate corrections promptly upon discovery thereof. If any estimates are made at the Transfer of Title regarding adjustments or prorations, the party shall make the appropriate correction promptly when accurate information becomes available. Any corrected adjustment or proration shall be paid in cash to the party entitled thereto.

7. Review of Documents and Materials. Buyer acknowledges that due to time constraints, Seller cannot provide all of the documents in its possession concerning the Property to Buyer. Within ten (10) business days following the Effective Date, Seller shall make available to Buyer, those documents which Buyer may reasonably request, such request to be made in writing within five (5) business days following the Effective Date (collectively, **"Documents and Materials"**). Seller makes no representation or warranty regarding the truth or accuracy of the Documents and Materials. All such documents and materials shall be subject to that certain Bilateral Confidentiality Agreement with an effective date of February 1, 2011 between the parties.

1141071.4
2/11/11

-2-

8.  <u>Environmental Disclosures.</u>

(a) <u>Deed Restriction</u>. The Property is subject to that certain Covenant to Restrict Use of Property dated October 27, 1995 ("Deed Restriction"). Buyer acknowledges its receipt of a copy of the Deed Restriction and agrees and acknowledges that it is taking the Property subject to the Deed Restriction. Buyer agrees and acknowledges that Seller will have no liability for the performance of any obligations required by the Deed Restriction following the Effective Date and that Buyer will assume any liability Seller has related to or arising from the Deed Restriction following the Effective Date. Buyer acknowledges that the land described herein contains hazardous substances. Such condition renders the land and the owner, lessee, or other possessor of the land subject to requirements, restrictions, provisions, and liabilities contained in Chapter 6.5 and Chapter 6.8 of Division 20 of the Health and Safety Code. This statement is not a declaration that a hazard exists.

(b) <u>Former Uses/Hazardous Substances</u>. As previously disclosed in the Letter of Intent dated February 7, 2011, the Property is a former wood treatment facility. Operations at the Property included treating lumber with preservative solutions containing arsenic, chromium and copper. Investigations by third parties have shown that soils on the Property have been affected by these inorganic metals. Groundwater beneath the Property and beneath adjacent properties has also been contaminated by chromium, copper and arsenic. The cost to complete the investigation, remediation and monitoring of the hazardous substances associated with the former wood treatment facilities is uncertain. The California Department of Toxic Substances Control ("DTSC") has jurisdiction over the environmental conditions at the Property and has been providing oversight since approximately 1982. A Proof of Claim was filed by DTSC in the bankruptcy proceedings of the former owner, Collins and Aikman Products.

(c) <u>Environmental Lien</u>. On November 22, 2010, a lien was recorded by DTSC against Seller's interest in the Property in the amount of $883,348 ("Environmental Lien"). Buyer acknowledges its receipt of a copy of the Environmental Lien and agrees and acknowledges that it is taking the Property subject to the Environmental Lien. Buyer agrees and acknowledges that Seller will have no liability for the Environmental Lien following the Effective Date and that Buyer will assume any liability Seller has for the Environmental Lien following the Effective Date.

(d) <u>Environmental Disclosure Documents</u>. Additional information concerning the above described hazardous substances on and around the Property has been provided by Seller to Buyer, including, but not limited to, the documents listed on Exhibit "C", "Environmental Disclosure Documents." Buyer acknowledges that third parties, rather than Seller, have performed the majority of the investigation, remediation and monitoring activities at the Property and as such Seller does not have many of the technical work plans or reports that describe environmental conditions on the Property

-3-

1141071.4
2/11/11

As required by California Health & Safety Code section 25359.7, Buyer acknowledges that it has been advised in writing that a release of hazardous substances has come to be located on or beneath the Property.

Buyer's Initials: _____

9. "As-Is" Purchase. BUYER HEREBY ACKNOWLEDGES AND AGREES THAT IT IS ACQUIRING THE PROPERTY IN ITS PRESENT "AS IS/WHERE IS WITH ALL FAULTS" CONDITION AND WITH ALL DEFECTS (INCLUDING SOIL AND GROUNDWATER CONTAMINATION) AND NEITHER SELLER NOR ANY EMPLOYEE OR AGENT OF SELLER HAS MADE OR WILL MAKE, EITHER EXPRESSLY OR IMPLIEDLY (AND SELLER SPECIFICALLY NEGATES AND DISCLAIMS) ANY REPRESENTATIONS, GUARANTIES, PROMISES, STATEMENTS, ASSURANCES OR WARRANTIES OF ANY KIND CONCERNING THE PROPERTY. BUYER ACKNOWLEDGES AND AGREES THAT BUYER HAS THE RIGHT TO INVESTIGATE THE PROPERTY PRIOR TO THE EFFECTIVE DATE AND TO PERFORM ANY AND ALL REASONABLE TESTS, INCLUDING ENVIRONMENTAL SAMPLING, ON THE PROPERTY TO DETERMINE THE CONDITION OF THE PROPERTY, FEASIBILITY OF THE PROPERTY FOR BUYER'S INTENDED USE THEREOF AND ANY OTHER PAST, PRESENT OR FUTURE MATTER RELATING TO THE PROPERTY WHICH MAY AFFECT THE PROPERTY, BUYER'S LIABILITY OR ITS CURRENT OR FUTURE USE, HABITABILITY, VALUE OR DESIRABILITY.

Buyer's Initials: _____

10. Buyer's Compliance with Environmental Regulatory Directives, Orders and Applicable Environmental Laws. Buyer agrees and acknowledges that it is assuming responsibility and liability for the hazardous substances on, at, beneath or emanating from, the Property following the Effective Date and that Seller will have no liability for the hazardous substances on, at, beneath or emanating from, the Property following the Effective Date. Commencing on the Effective Date, Buyer shall, at its sole cost, promptly comply with all applicable environmental laws (whether in existence as of the Effective Date or thereafter promulgated) and all applicable regulatory agency directives, orders and policies pertaining to the Property and/or related to or arising from hazardous substances on, at, beneath or emanating from, the Property. Buyer agrees that it shall promptly provide written notice to DTSC in the form of the letter attached as Exhibit "D", with a copy to Seller, of its interest in the Property, and assumption of responsibility for compliance with all laws as set forth herein.

11. Buyer's Indemnification of Seller. Commencing on the Effective Date, Buyer shall indemnify, defend and hold harmless Seller (and its officers, shareholders, directors, employees, representatives and agents) against claims, costs, cost recovery actions, government orders (including, but not limited to, any orders issued or threatened by

-4-

1141071.4
2/11/11

DTSC even if such orders are issued or threatened on or after the Effective Date, but before the Transfer of Title, expenses, fees (including, but not limited to Attorneys' fees or consultant fees), losses, penalties, liens (including, but not limited to, the Environmental Lien), judgments or damages (collectively, "Claims") related to or arising from the hazardous substances on, at, beneath or emanating from, the Property regardless of whether such Claims arose before or after the Effective Date, the Deed Restriction or challenges by third parties to validity or enforceability of this Agreement.  Buyer agrees and acknowledges that the obligations pursuant to this Section 11 shall survive the Transfer of Title.

12. Buyer's Release of Seller.  Commencing on the Effective Date, Buyer shall release Seller (and its officers, shareholders, directors, employees, representatives and agents) against claims, costs, cost recovery actions, government orders (including, but not limited to, any orders issued or threatened by DTSC) expenses, fees (including, but not limited to Attorneys' fees or consultant fees), losses, penalties, liens (including, but not limited to, the Environmental Lien), judgments or damages (collectively, "Claims") related to or arising from the hazardous substances on, at, beneath or emanating from, the Property regardless of whether such Claims arose before or after the Effective Date, the Deed Restriction or challenges by third parties to validity or enforceability of this Agreement. This release is intended by Buyer to be a general release.  Buyer is aware of the provisions of California Civil Code Section 1542, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

Buyer hereby expressly waives all the benefits of Section 1542 and any other similar law of any jurisdiction.  Buyer understands and further agrees that it may later discover facts different from, or in addition to, those which it now believes to be true, but nonetheless agrees herein that this Agreement shall be and remain in effect in all respects notwithstanding such different or additional facts or Buyer's discovery thereof. Nevertheless, Buyer intends to release and forever discharge Seller as set forth above.

To the best of Seller's actual knowledge (without the duty to investigate) at the time of the Effective Date, there are no impending liens or claims against the Property other than those previously described in Section 8 of this Agreement.

13. Notices.  All notices or other communications required or permitted hereunder shall be in writing, and shall be personally delivered or sent by registered or certified mail, postage prepaid, return receipt requested, or sent by electronic facsimile and shall be deemed received upon the earlier of (i) if personally delivered, the date of delivery to the address of the person to receive such notice, (ii) if mailed, on the date of

1143071.4
2/11/11

posting by the United States Post Office, or (iii) if given by electronic facsimile, when received by the other party.

TO SELLER:   Jim Dobbas, Inc.
         300 Taylor Road
         Newcastle, CA 95658
         Attention: Don Dobbas
         Facsimile: (916) 663-4376

         With a copy to:
         Nicole R. Gleason
         Downey Brand LLP
         621 Capitol Mall, 18th Floor
         Sacramento, CA 95814
         Facsimile: (916) 520-5743

TO BUYER:    David van Over
         216 F Street #108
         Davis, CA 95616
         Facsimile: (530) 231-6372

Notice of change of address shall be given by written notice in the manner described in this Section.

14. Brokers. Buyer and Seller represent and warrant that neither party has used a real estate broker in connection with the sale of the Property and no real estate brokerage commission is due or payable upon the consummation of the transactions herein. If any claims for brokers' or finders' fees for the consummation of this Agreement arise, then Buyer hereby agrees to indemnify, hold harmless and defend Seller from and against such claims if they shall be based upon any statement, representation or agreement by Buyer, and Seller hereby agrees to indemnify, hold harmless and defend Buyer if such claims shall be based upon any statement, representation or agreement made by Seller.

15. Miscellaneous.

(a) Partial Invalidity. If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Agreement shall be valid, and shall be enforced to the fullest extent permitted by law.

(b) Waivers. No waiver of any breach of any covenant or provision herein contained shall be deemed a waiver of any preceding or succeeding breach thereof, or of

-6-

1141071.4
2/11/11

any other covenant or provision herein contained. No extension of time for performance of any obligation or act shall be deemed an extension of time for performance of any other obligation or act except those of the waiving party, which shall be extended by a period of time equal to the period of the delay.

(c) <u>Discharge of Seller's Obligations</u>. The acceptance of the Quit Claim Deed by Buyer shall be deemed to be a full performance and discharge of every agreement and obligation on the part of Seller to be performed pursuant to the provisions of this Agreement.

(d) <u>Successors and Assigns</u>. This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the parties hereto.

(e) <u>Professional Fees</u>. If either party commences an action against the other to interpret or enforce any of the terms of this Agreement or because of the breach by the other party of any of the terms hereof, the losing party shall pay to the prevailing party reasonable attorneys' fees, costs and expenses and court costs and other costs of action incurred in connection with the prosecution or defense of such action, whether or not the action is prosecuted to a final judgment. For the purpose of this Agreement, the terms "attorneys' fees" or "attorneys' fees and costs" shall mean the fees and expenses of counsel to the parties hereto, which may include printing, photostating, duplicating and other expenses, air freight charges, and fees billed for law clerks, paralegals, librarians and others not admitted to the bar but performing services under the supervision of an attorney. The terms "attorneys' fees" or "attorneys' fees and costs" shall also include, without limitation, all such fees and expenses incurred with respect to appeals, arbitrations and bankruptcy proceedings, and whether or not any action or proceeding is brought with respect to the matter for which said fees and expenses were incurred. The term "attorney" shall have the same meaning as the term "counsel."

(f) <u>Entire Agreement</u>. This Agreement (including the preamble, Recitals and all Exhibits attached hereto) is the final expression of, and contains the entire agreement between, the parties with respect to the subject matter hereof and supersedes all prior understandings with respect thereto with the exception of that certain Bilateral Confidentiality Agreement effective as of February 1, 2011. This Agreement may not be modified, changed, supplemented, superseded, canceled or terminated, nor may any obligations hereunder be waived, except by written instrument signed by the party to be charged or by its agent duly authorized in writing or as otherwise expressly permitted herein. The parties do not intend to confer any benefit hereunder on any person, firm or corporation other than the parties hereto and lawful assignees.

(g) <u>Assignment</u>. Prior to the Transfer of Title, Buyer may not assign its right, title or interest in this Agreement to any other party without prior written notice to Seller.

1141071.4
2/11/11

-7-

(h) Time of Essence.  Seller and Buyer hereby acknowledge and agree that time is strictly of the essence with respect to each and every term, condition, obligation and provision hereof.

(i) Construction.  Headings at the beginning of each paragraph and subparagraph are solely for the convenience of the parties and are not a part of the Agreement.  Whenever required by the context of this Agreement, the singular shall include the plural and the masculine shall include the feminine and vice versa.  This Agreement shall not be construed as if it had been prepared by one of the parties, but rather as if both parties had prepared the same.  Buyer acknowledges and agrees that Downey Brand LLP has been retained solely to represent the interests of Seller. Unless otherwise indicated, all references to paragraphs, sections, subparagraphs and subsections are to this Agreement.  All exhibits referred to in this Agreement are attached and incorporated by this reference.

(j) Governing Law.  The parties hereto acknowledge that this Agreement has been negotiated and entered into in the State of California.  The parties hereto expressly agree that this Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of California.

(k) Possession of Property.  Subject to the Approved Condition of Title, Buyer shall be entitled to the possession of the Property immediately following the Effective Date.

(l) Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument.  For purposes of executing this Agreement, a facsimile or PDF signature shall have the same force and effect as the original.

1141071.4
2/11/11

EXHIBIT A - DOBBAS CROSSCLAIM

(m)   Limited Liability.  The obligations of Seller, its agents, representatives or employees, arising by virtue of this Agreement shall be limited to the interest of Seller in the Property and there shall be no recourse against any other assets of Seller, its agents, representatives or employees.  In the event of a Seller breach, Buyer's sole and absolute remedy (regardless of the nature of the cause of action alleged) shall be specific performance.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

**BUYER:**

David van Over,
an individual as an unmarried man

**SELLER:**

**Jim Dobbas, Inc., a California corporation**

By

Name: Donald James Dobbas
Its: President

## EXHIBIT A

### Description of Real Property

The following described parcels of land are located within the County of Solano, State of California..

PARCEL ONE

Beginning at the southeast corner of the Northwest One Quarter of Section Nineteen (19) Township Six (6) North Range One (1) East, Mount Diablo Base and Meridian; running thence North along the Quarter Section line to the Southeasterly boundary of the right of way of the Southern Pacific Railroad; thence Southwesterly along the southeasterly line of the right of way of the Southern Pacific Railroad Company to the Quarter Section line running East and West through said Section Nineteen (19); thence East and along said Quarter Section line to the place of beginning. EXCEPTING THEREFROM, however, all that certain real property as conveyed by Eleanor B. Allison to Southern Pacific Railroad Company, a corporation, by Deed dated May 10th, 1916, and recorded May 23rd, 1916 in Liber "226" of Deeds, Page 104, thereof, and described as follows: Beginning at the point of intersection of the Southeasterly right of way line of the Southern Pacific Railroad Company's railroad (as it now exists across said Northwest Quarter of Section 19) with the east line of the Northwest Quarter of Section 19, Township 6 North Range 1 East, Mount Diablo Base and Meridian; thence Southwesterly along said Southeasterly right of way line of the Southern Pacific Railroad Company, a distance of 506 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 265 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point on the east line of said Northwest Quarter of Section 19; thence North along said East line of the Northwest Quarter of Section 19, a distance of 50.7 feet to the point of beginning.

PARCEL TWO

Beginning at the intersection of the northerly line of Edwards Street and the westerly line of "A" Street extended northerly; thence running Westerly and along the northerly line of Edwards Street, One Hundred Forty (140) feet, more or less, to the intersection of the easterly line of the right of way of the Southern Pacific Railroad Company; thence Northerly and along the easterly line of the right of way of the Southern Pacific Railroad Company, One Hundred Ninety-One (191) feet more or less to the southerly line of County Road Number Two Hundred Forty-Six (246) sometimes also known as Binghampton Street; thence Easterly and along

CONTINUED

-1-

1141071.4
2/11/11

Exhibit "A" Cont'd. (Parcel Two)

the southerly line of County Road Number 246, to the intersection of the westerly line of a street, extended Northerly; thence Southerly and along the westerly line of a street, extended Northerly to the northerly line of Edwards Street and the place of beginning. All as said streets herein referred to are laid down and designated on that certain map entitled: "PLAN OF RESURVEY OF PORTION OF VACA STATION, PROPERTY OF W. C. PARKER, SITUATED ON SOUTH WEST ONE QUARTER (S.W. 1/4) OF SECTION NINETEEN (19) TOWNSHIP VI NORTH RANGE 1 EAST SOLANO COUNTY," surveyed by E. H. Marshall, Deputy County Surveyor, April 8th, 1870 and now appearing of record in Volume "1" of Maps, Page 44 thereof, Solano County Records.

PARCEL THREE

Beginning at the point of intersection of the westerly line of "A" Street, extended Northerly, and the northerly line of County Road Number 246 (Haldaner Road, formerly shown as Binghampton Street) in Elmira Townsite, Solano County, California, which point bears North 0° 22' 08" West, 30 feet and South 89° 55' 06" West, 397.60 feet from the southeast corner of the Northeast One-Quarter of Section 19, T6N, R1E, M.D.B. & M.; thence, from said point of beginning, along the northerly line of the aforementioned Binghampton Street South 89° 55' 06" West, 171.67 feet to the easterly right-of-way line of the Southern Pacific Railroad; thence along said easterly right-of-way line South 34° 52' 51" West, 73.21 feet to the southerly line of said Binghampton Street; thence, along said southerly line, North 89° 55' 06" East, 171.67 feet to the westerly line of the aforementioned "A" Street; thence along the prolongation of said westerly line of "A" Street, North 34° 52' 51" East, 73.21 feet to the point of beginning.

RECORDING REQUESTED BY

and

WHEN RECORDED MAIL TO

Jim Dobbas, Inc.
P.O. Box 177
Newcastle, CA 95658

Recorded in Official Records,
Solano County
Doc#: 201100013729
2/14/2011   3:22 PM

C

* STATE OF CALIFORNIA )
COUNTY OF PLACER ) ss

(SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE)

## QUITCLAIM DEED

FOR VALUABLE CONSIDERATION, Jim Dobbas, Inc., a California corporation ("Grantor"), hereby RELINQUISHES, REMISES, RELEASES AND FOREVER QUITCLAIMS to David van Over, an unmarried man ("Grantee"), all of Grantor's right title and interest (subject to that certain Covenant to Restrict Use of Property dated October 27, 1995/Recorders No. 1995-00068154 and including all appurtenant rights, including mineral rights) in and to that certain real property, commonly known as APNs 0142-042-010, 0142-010-130 and 0142-010-140, and more particularly described on Exhibit A attached hereto and incorporated by this reference (the "Property").

IN WITNESS WHEREOF, this Quitclaim Deed was executed on this the _11_ day of February, 2011.

Jim Dobbas, Inc., a California
Corporation

*The undersigned grantor(s) declare(s)*
*DOCUMENTARY TRANSFER TAX is $101.20*
*computed on full value of property conveyed or*
*computed on full value less value of liens and*
*encumbrances remaining at time of sale*
*unincorporated area city of _____*

By _____
Donald James Dobbas

Its:
President

* On _FEB 11 2011_ before me, _R. L. ROGERS, NOTARY PUBLIC_
(Name and Title of Officer)

personally appeared _DONALD JAMES DOBBAS_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (NOTARY SEAL)
(Notary Officer)

R. L. ROGERS
Commission # 1835712
Notary Public - California
Placer County
My Comm. Expires Mar 8, 2013

TAX BILL TO:
DAVID VAN OVER
216 F STREET #108
DAVIS, CA. 95616

EXHIBIT A - DOBBAS CROSSCLAIM

**EXHIBIT A**

**Description of Real Property**

The following described parcels of land are located within the County of Solano, State of California.

**PARCEL ONE**

Beginning at the southeast corner of the Northwest One Quarter of Section Nineteen (19) Township Six (6) North Range One (1) East, Mount Diablo Base and Meridian; running thence North along the Quarter Section line to the Southeasterly boundary of the right of way of the Southern Pacific Railroad; thence Southwesterly along the southeasterly line of the right of way of the Southern Pacific Railroad Company to the Quarter Section line running East and West through said Section Nineteen (19); thence East and along said Quarter Section line to the place of beginning. EXCEPTING THEREFROM, however, all that certain real property as conveyed by Eleanor B. Allison to Southern Pacific Railroad Company, a corporation, by Deed dated May 10th, 1916, and recorded May 23rd, 1916 in Liber "226" of Deeds, Page 106, thereof, and described as follows: Beginning at the point of intersection of the Southeasterly right of way line of the Southern Pacific Railroad Company's railroad (as it now exists across said Northwest Quarter of Section 19) with the east line of the Northwest Quarter of Section 19, Township 6 North Range 1 East, Mount Diablo Base and Meridian; thence Southwesterly along said Southeasterly right of way line of the Southern Pacific Railroad Company, a distance of 506 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 265 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point on the east line of said Northwest Quarter of Section 19; thence North along said East line of the Northwest Quarter of Section 19, a distance of 50.7 feet to the point of beginning.

**PARCEL TWO**

Beginning at the intersection of the northerly line of Edwards Street and the westerly line of "A" Street extended northerly; thence running Westerly and along the northerly line of Edwards Street, One Hundred Forty (140) feet, more or less, to the intersection of the easterly line of the right of way of the Southern Pacific Railroad Company; thence Northerly and along the easterly line of the right of way of the Southern Pacific Railroad Company, One Hundred Ninety-One (191) feet more or less to the southerly line of County Road Number Two Hundred Forty-Six (246) sometimes also known as Binghamton Street; thence Westerly and along

CONTINUED

EXHIBIT A - DOBBAS CROSSCLAIM

Exhibit "A" Cont'd. (Parcel Two)

the southerly line of County Road Number 246, to the intersection of the
westerly line of a street, extended Northerly; thence Southerly and
along the westerly line of a street, extended Northerly to the northerly
line of Roberts Street and the place of beginning. All as said streets
herein referred to are laid down and designated on that certain map
entitled: "PLAN OF RESURVEY OF PORTION OF VACA STATION, PROPERTY OF
W. C. FARMER, SITUATED ON SOUTH WEST ONE QUARTER (S.W. 1/4) OF SECTION
NINETEEN (19) TOWNSHIP VI NORTH RANGE I EAST SOLANO COUNTY," surveyed by
R. L. Marshall, Deputy County Surveyor, April 8th, 1870 and now appearing
of record in Volume "1" of Maps, Page 44 thereof, Solano County Records.

PARCEL THREE

Beginning at the point of intersection of the westerly line of "A"
Street, extended Northerly, and the northerly line of County Road Number
246 (Holdener Road, formerly shown as Binghampton Street) in Elmira
Townsite, Solano County, California, which point bears North 0° 23' 08"
West, 30 feet and South 89° 55' 06" West, 197.80 feet from the southeast
corner of the Northeast One-Quarter of Section 19, T6N, R1E, M.D.B. & M.;
thence, from said point of beginning, along the northerly line of the
aforementioned Binghampton Street South 89° 55' 06" West, 171.67 feet to
the easterly right-of-way line of the Southern Pacific Railroad; thence
along said easterly right-of-way line South 34° 52' 51" West, 73.21 feet
to the southerly line of said Binghampton Street; thence, along said
southerly line, North 89° 55' 06" East, 171.67 feet to the westerly line
of the aforementioned "A" Street; thence along the prolongation of said
westerly line of "A" Street, North 34° 52' 51" East, 73.21 feet to the
point of beginning.

1141156.2                          3

**EXHIBIT B**

**Quit Claim Deed**

RECORDING REQUESTED BY

and

WHEN RECORDED MAIL TO

Jim Dobbas, Inc.
P.O. Box 177
Newcastle, CA 95658

(SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE)

**QUITCLAIM DEED**

FOR VALUABLE CONSIDERATION, Jim Dobbas, Inc., a California corporation (**"Grantor"**), hereby RELINQUISHES, REMISES, RELEASES AND FOREVER QUITCLAIMS to David van Over, an unmarried man (**"Grantee"**), all of Grantor's right title and interest (subject to that certain Covenant to Restrict Use of Property dated October 27, 1995/Recorders No. 1995-00068154 and including all appurtenant rights, including mineral rights) in and to that certain real property, commonly known as APNs 0142-042-010, 0142-010-130 and 0142-010-140 and more particularly described on Exhibit A attached hereto and incorporated by this reference (the "Property").

IN WITNESS WHEREOF, this Quitclaim Deed was executed on this the ___ day of February, 2011.

Jim Dobbas, Inc., a California
Corporation


By _____
    Donald James Dobbas
Its: _____
    President

On _____ before me, _____ ,
(Name and Title of Officer)

personally appeared _____ , who proved to
me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

-3-

EXHIBIT A - DOBBAS CROSSCLAIM

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (NOTARY SEAL)
          (Notary Officer)

-4-

1141071.4
2/11/11

## EXHIBIT C

### Environmental Disclosure Document

1. Covenant to Restrict Use of Property dated 10.27.95

2. 2007 BEC Appraisal of the Property

3. Settlement Agreement dated 1984

4. Continental Rail Bankruptcy documents

5. Removal Action Workplan, Draft Final dated October 2009

6. Sampling & Analysis Plan - April 2009

7. Remedial Investigation Report - July 2008

8. Imminent &Substantial Endangerment Determination and Cover Letter dated 11.09.06

9. Operation and Maintenance Agreement 2.26.96

10. Wickes Final Lien_11_22_10

11. Collins and Aikman Bankruptcy Amended Disclosure Statement for the First Amended Joint Plan

12. Background documents on Pacific Wood Preserving

13. 2010 Draft Imminent and Substantial Endangerment Determination and Consent Order and letter dated May 10, 2010

14. 2006 Draft Imminent or Substantial Endangerment Determination Order and Remedial Action Order and letter dated July 24, 2006

15. DTSC's Proof of Claim in the Collins and Aikman Bankruptcy dated January 10, 2006

16. DTSC's Supplement Statement in Support of Proof of Claim dated January 10, 2006

17. DTSC's Summary of Site Conditions, "9/6/06 Meeting between DTSC and Property Owners"

-5-

1141071.4
2/11/11

18. Asphalt Cap Report dated March 1, 2005

19. Pilot Study Work Plan dated March 18, 2005

1141071.4
2/11/11

EXHIBIT A - DOBBAS CROSSCLAIM

**EXHIBIT D**

**DTSC Notice Letter**

February __, 2011

**VIA FEDERAL EXPRESS**

Department of Toxic Substances Control
1001 I Street
Sacramento, CA 95814-2828
Attention: Chief,
Northern California – Central Cleanup Operations Branch

Re:       **Former Wickes Forest Industries Site; 147 A Street, Elmira, California**

Dear Sir/Madam:

On February **(insert Transfer of Title date)**, 2011, I acquired Jim Dobbas, Inc.'s fifty percent (50%) interest in the above referenced property for one dollar ($1.00). On February **(Insert Transfer of Title date)**, 2011, I acquired Continental Rail, Inc.'s fifty percent (50%) interest in the above referenced property for one dollar ($1.00). I also agreed to comply with all applicable environmental laws and all applicable regulatory agency directives pertaining to the property and the releases from the former Wickes facility. In addition, I agreed to take the property subject to DTSC's lien on Jim Dobbas, Inc.'s interest in the property and assume any liability Jim Dobbas, Inc. has for the lien. I write to provide my contact information and to request a meeting with DTSC to discuss site conditions, my plans for the property and the agency's expectations.

Best Regards,


David van Over
216 F Street #108
Davis, CA 95616
Cell: 775.830.3888
Fax: 530.231.6372


cc: Elizabeth Yelland, DTSC (via E-Mail: EYelland@dtsc.ca.gov )
    Ray Leclerc, DTSC (via E-Mail: rleclerc@dtsc.ca.gov )
    Marilee Hanson, DTSC (via E-Mail: MHanson@dtsc.ca.gov )
    Don Dobbas, Jim Dobbas, Inc. (via E-Mail)
    Nicole Gleason, Downey Brand (via E-Mail)

1141071.4
2/11/11

-7-

EXHIBIT A - DOBBAS CROSSCLAIM



