1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   CALIFORNIA DEPARTMENT OF          CIV. NO. 2:14-595 WBS EFB
     TOXIC SUBSTANCES CONTROL and
13   the TOXIC SUBSTANCES CONTROL      MEMORANDUM AND ORDER RE: MOTION
     ACCOUNT,                          TO DISMISS COUNTERCLAIMS AND
14                                     MOTION TO STRIKE
                    Plaintiffs,
15
          v.
16
     JIM DOBBAS, INC., a
17   California corporation;
     CONTINENTAL RAIL, INC., a
18   Delaware corporation; DAVID
     VAN OVER, individually;
19   PACIFIC WOOD PRESERVING, a
     dissolved California
20   corporation; and WEST COAST
     WOOD PRESERVING, LLC, a
21   Nevada limited liability
     company,
22
                    Defendants,
23
24   AND RELATED COUNTERCLAIMS AND
     CROSS-CLAIMS.
25
                            ----oo0oo----
26

27        Plaintiffs California Department of Toxic Substances

28   Control ("DTSC") and the Toxic Substances Control Account

                                  1

1   ("TSCA") brought this action under the Comprehensive

2   Environmental Response, Compensation, and Liability Act of 1980

3   ("CERCLA"), 42 U.S.C. §§ 9601 et seq., to recover cleanup costs

4   from defendants Jim Dobbas, Inc. ("Dobbas"), Continental Rail,

5   Inc., Pacific Wood Preserving, West Coast Wood Preserving, LLC

6   ("WCWP"), and David van Over.  Dobbas, van Over, and WCWP

7   answered the Complaint.  Dobbas's Answer includes counterclaims

8   alleging that plaintiffs are liable to it for mismanaging the

9   cleanup.  Plaintiffs now move to dismiss Dobbas's counterclaims

10  pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure

11  to state a claim on which relief can be granted and to strike

12  several portions of the Answer filed by Dobbas pursuant to Rule

13  12(f).

14  I.   Factual and Procedural History

15          In 1972, Pacific Wood Preserving began conducting wood

16  preserving operations at a facility in Elmira, California (the

17  "Elmira facility").  (Compl. ¶¶ 13-14.)  In 1979, Pacific Wood

18  Preserving dissolved and was allegedly succeeded by WCWP, which

19  relocated its wood preserving operations to Bakersfield,

20  California.  (Id.)  From 1979 to 1982, Collins & Aikman Products

21  Company ("CAPCO"), a successor to the Wickes Corporation,

22  conducted wood preserving operations at the Elmira facility.

23  (Id. ¶ 15.)  In 1997, CAPCO sold the Elmira facility to Dobbas

24  and Continental Rail, which in turn sold it to van Over in 2011

25  for two dollars.  (Id. ¶¶ 19, 26.)

26          Plaintiffs allege that the operators of the Elmira

27  facility released numerous hazardous substances, including

28  arsenic, chromium, copper, and other constituents of wood

2

1  preserving chemicals.  (Id. ¶ 16.)  Between 1980 and 2005, CAPCO

2  took a number of remedial actions under the oversight of DTSC,

3  including excavating soil, installing an asphalt cap over

4  contaminated soils, constructing a drainage system over

5  contaminated areas of the site, monitoring groundwater, and

6  installing a groundwater extraction and treatment system.  (Id.

7  ¶ 17.)  In 2005, CAPCO declared bankruptcy and ceased remediation

8  efforts.  (Id. ¶ 21.)

9          In 2006, DTSC allegedly requested that Dobbas and

10  Continental Rail resume remediation efforts at the Elmira

11  facility.  (Id. ¶ 22.)  Plaintiffs allege that, while Dobbas

12  agreed to perform certain remedial actions, both Dobbas and

13  Continental Rail "failed and refused to perform most of the

14  actions formerly conducted by [CAPCO] to address contamination

15  at, around, and/or beneath the site."  (Id. ¶ 23.)  After Dobbas

16  and Continental Rail sold the Elmira facility to van Over in

17  2011, DTSC issued an Imminent or Substantial Endangerment

18  Determination Order and Remedial Action Order requiring Dobbas,

19  Continental Rail, and van Over to conduct additional remediation

20  activities.  (Id. ¶ 27.)  All three of those defendants allegedly

21  failed to comply with these orders.  (Id. ¶ 28.)  As a result,

22  plaintiffs have taken "response" actions from November 2005 to

23  present at the Elmira facility, including efforts to repair and

24  restart the groundwater extraction and treatment system,

25  groundwater monitoring, investigation of soils, and

26  implementation of the Removal Action Workplan.  (Id. ¶ 29.)

27  Plaintiffs allege they have incurred over $2.2 million in

28  response costs as a result of defendants' failure to comply with

3

1    their orders.  (Id. ¶¶ 29-31.)

2          Plaintiffs brought this action seeking cost recovery

3    under CERCLA, 42 U.S.C. § 9607, declaratory relief under CERCLA,

4    42 U.S.C. § 9613(g), and damages, injunctive relief, and civil

5    penalties under the Hazardous Substance Account Act ("HSAA"),

6    Cal. Health & Safety Code §§ 25300 et seq.  Dobbas and van Over

7    timely answered the Complaint, demanded a jury trial and

8    attorney's fees, and asserted numerous affirmative defenses.

9    (Docket Nos. 23, 24.)  In addition, Dobbas filed a counterclaim

10   against DTSC alleging that it mismanaged cleanup efforts at the

11   Elmira facility and seeking cost recovery and contribution under

12   CERCLA, contribution and indemnity under HSAA, and declaratory

13   relief under CERCLA and the Declaratory Judgment Act, 28 U.S.C.

14   § 2201.  (Docket No. 23.)  Plaintiffs now move to dismiss

15   Dobbas's counterclaim pursuant to Rule 12(b)(6) for failure to

16   state a claim on which relief can be granted and to strike

17   portions of Dobbas's Answer pursuant to Rule 12(f).  (Docket No.

18   27.)

19   II.  Motion to Dismiss

20          When considering a motion to dismiss a counterclaim

21   under Rule 12(b)(6), the court uses an identical standard as that

22   for dismissal of a claim.  The court must accept the allegations

23   in the claim as true and draw all reasonable inferences in favor

24   of the claimant.  See Scheuer v. Rhodes, 416 U.S. 232, 236

25   (1974), overruled on other grounds by Davis v. Scherer, 468 U.S.

26   183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  To survive a

27   motion to dismiss, a claimant must plead "only enough facts to

28   state a claim to relief that is plausible on its face."  Bell

4

1   Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This

2   "plausibility standard," however, "asks for more than a sheer

3   possibility that a defendant has acted unlawfully," and where a

4   counterclaim pleads facts that are "merely consistent with a

5   defendant's liability," it "stops short of the line between

6   possibility and plausibility."  Ashcroft v. Iqbal, 556 U.S. 662,

7   678 (2009) (quoting Twombly, 550 U.S. at 557).

8       A.   Dobbas's CERCLA Counterclaims

9           Dobbas's first and second counterclaims seek cost

10  recovery and contribution from DTSC pursuant to §§ 9607 and 9613

11  of CERCLA.  In order to assert such a claim, Dobbas must allege

12  that DTSC was (1) "the owner and operator of a vessel or a

13  facility," (2) a "person who at the time of disposal owned or

14  operated any facility at which such hazardous substances were

15  disposed of," (3) a "person who . . . arranged for disposal or

16  treatment . . . of hazardous substances," or (4) a "person who

17  accepts or accepted any hazardous substances for transport

18  . . . ."  42 U.S.C. § 9607(a).  Dobbas asserts its counterclaims

19  on the theory that DTSC mismanaged cleanup efforts at the

20  remediation sites and is therefore liable as an "operator" under

21  § 9607(a)(2).  (Dobbas's Countercl. at 2-4.)

22          In light of the tautological definition provided by

23  Congress,[1] the Supreme Court gave CERCLA's use of the term

24  "operator" an expansive meaning: "someone who directs the

25  workings of, manages, or conducts the affairs of a facility."

26

27          [1]    The phrase "owner or operator" is defined as "any
    person owning or operating" a facility.  42 U.S.C.
28  § 9601(20)(A)(ii).

1   <u>United States v. Bestfoods</u>, 524 U.S. 51, 66 (1998).  In the

2   context of CERCLA, the Court stated that "an operator must

3   manage, direct, or conduct operations specifically related to

4   pollution, that is, operations having to do with the leakage or

5   disposal of hazardous waste, or decisions about compliance with

6   environmental regulations."  <u>Id.</u>  Several courts have found that

7   government entities may fall within the scope of this language.

8   <u>See</u> <u>United States v. Township of Brighton</u>, 153 F.3d 307, 315 (6th

9   Cir. 1998) ("[A] government entity, by regulating the operation

10  of a facility actively and extensively enough, can itself become

11  an operator."); <u>FMC Corp. v. United States Dep't of Commerce</u>, 29

12  F.3d 833, 840 (3rd Cir. 1994) (en banc) ("[T]he government can be

13  liable when it engages in regulatory activities extensive enough

14  to make it an operator of a facility . . . .").

15          Whether a government entity's involvement in

16  remediation efforts subsequent to the emission of hazardous

17  substances at a facility renders it an "operator" of the facility

18  thus depends on whether it managed, directed, or conducted

19  operations there.[2]  Courts have struggled with the level of

20  control necessary to support operator liability, some settling on

21  a narrower "actual control" standard, <u>see</u> <u>Brighton</u>, 153 F.3d at

22  313-14 (requiring "affirmative acts" from a purported operator),

23  while others have adopted a broader "authority to control"

24  _____

25          [2]   DTSC suggests in passing that it enjoys sovereign
    immunity from Dobbas's CERCLA counterclaims because it is an

26  agency of the State of California.  As the Ninth Circuit has made
    clear, however, CERCLA includes a "waiver of sovereign immunity

27  [that] is coextensive with the scope of liability imposed by 42
    U.S.C. § 9607."  <u>United States v. Shell Oil Co.</u>, 294 F.3d 1045,

28  1053 (9th Cir. 2002).

standard, see Nurad Inc. v. William E. Hooper & Sons Co., 966
F.2d 837, 842 (4th Cir. 1992) (requiring only the existence of
authority to act).  The Ninth Circuit has yet to crystalize the
scope of post-Bestfoods operator liability, but it has noted the
expansive reach of the term.  See City of Los Angeles v. San
Pedro Boat Works, 635 F.3d 440, 444 (9th Cir. 2011).

DTSC points to several cases employing a narrow
definition of "operator," including Long Beach Unified Sch. Dist.
V. Dorothy B. Godwin Cal. Living Trust, 32 F.3d 1364, 1367 (9th
Cir. 1994) (requiring an operator to "play an active role in
running the facility, typically involving hands-on, day-to-day
participation") and United States v. Dart Indus., Inc., 847 F.2d
144, 146 (4th Cir. 1988) (requiring "hands-on" activities).
These stricter constructions would help DTSC's contention that it
falls outside the scope of operator liability.  However, all
these cases predate the Supreme Court's more-recent formulation
in Bestfoods--the formulation this court must follow.

Several courts have dismissed claims against state
agencies when there were no allegations that the state agency had
any involvement with the facility other than remedial cleanup
efforts.  See, e.g., Dart Indus., 847 F.2d at 146; Stilloe v.
Almy Bros., 782 F. Supp. 731, 736 (N.D.N.Y. 1992); United States
v. W. Processing Co., 761 F. Supp. 725, 731 (W.D. Wash. 1991).
But, again, these cases rest on the pre-Bestfoods understanding
of the term "operator."  See Dart Indus., 847 F.2d at 146
(requiring "hands on" activities that contributed to the release
of hazardous waste); Stilloe, 782 F. Supp. at 735-36 (relying on
pre-Bestfoods cases); W. Processing Co., 761 F. Supp. at 730-31

7

1  (relying on pre-Bestfoods cases).  Accordingly, these cases lack

2  persuasive force here.

3          Dobbas alleges sufficient facts to survive a motion to

4  dismiss under Bestfoods.  It claims that DTSC and its predecessor

5  agency, the California Department of Health Services ("DHS"),

6  have been involved in cleanup efforts at the Elmira facility for

7  over three decades.  (Countercl. ¶ 6.)  During that time, Dobbas

8  states that DTSC and DHS issued multiple remedial action plans

9  that selected and implemented response actions at the Elmira

10  facility.  (Countercl. ¶¶ 7, 9.)  Such actions could plausibly

11  constitute management or direction of operations there.

12          Dobbas supports this contention with two exhibits,

13  (Countercl. Exs. A-B), attached to its counterclaim and

14  incorporated by reference.  See Sprewell v. Golden State

15  Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (holding that courts

16  may consider documents attached to a complaint in resolving a

17  motion to dismiss).  The first exhibit consists of a settlement

18  agreement between the DHS and Wickes Forest Industries dated

19  February 26, 1984.  (Docket No. 23-2.)  It sets forth various

20  remedial obligations to be implemented by Wickes with respect to

21  cleanup at the Elmira facility, and it specifically includes

22  DHS's approval of plans for "stormwater management, the ground

23  water treatment and contaminated soils removal and containment

24  elements of the Plan."  (See id.)  The second exhibit consists of

25  an Operation and Maintenance Agreement between DTSC and the

26  Collins and Aikman Products Company ("CAPCO") dated March 12,

27  1996.  (Docket No. 23-3.)  That exhibit details some of DTSC's

28  involvement in remedial action, including reviewing and approving

1  "Sampling Analysis Procedures," "Health & Safety Protections,"

2  "Removal/Disposal Procedures," and a "Remedial Action Plan."

3  (Id.)   While the second exhibit also states that DTSC did not

4  "actually perform the Remedial Action," (id.), this does not

5  preclude the document from supporting Dobbas's counterclaim.

6  Bestfoods does not require an operator to play an active role.

7  It requires only that an entity "manage, direct, or conduct . . .

8  operations having to do with the leakage or disposal of hazardous

9  waste, or decisions about compliance with environmental

10  regulations."   Bestfoods, 524 U.S. at 66.   These documents give

11  rise to a plausible claim that DTSC's actions meet this standard,

12  and Dobbas should have an opportunity to develop it further.

13         In its supporting memorandum, Dobbas also points to

14  portions of DTSC's Complaint suggesting that, from November 2005

15  to the present, DTSC has performed "response actions" at the

16  facility, including "efforts to repair and restart the

17  groundwater extraction and treatment system, completion of a

18  remedial investigation for site soils, preparation of the Removal

19  Action Workplan, implementation of the Removal Action Workplan in

20  October and November 2011, groundwater monitoring, and other

21  tasks."   (See Compl. ¶¶ 21-29.)   These factual allegations raise

22  an inference that DTSC acted as an "operator" under § 9607(a)(2).

23  Dobbas similarly supports its allegations of negligence, gross

24  negligence, and/or intentional misconduct, (Countercl. ¶¶ 17,

25  26), and cognizable response costs, (Countercl. ¶¶ 21-22), with

26  factual allegations from DTSC's complaint.   (Dobbas's Opp'n at

27  11-13.)

28         Taken as a whole, the pleadings contain sufficient

9

1    facts to support Dobbas's counterclaims.  See Twombly, 550 U.S.

2    at 570 (requiring that a party plead "only enough facts to state

3    a claim to relief that is plausible on its face").  The court

4    must therefore deny DTSC's motion to dismiss Dobbas's first two

5    counterclaims.

6         B.   Dobbas's HSAA Counterclaim

7              The HSAA provides that "[a]ny person who has incurred

8    removal or remedial action costs in accordance with this chapter

9    or [CERCLA] may seek contribution or indemnity from any person

10   who is liable pursuant to this chapter . . . ."  Cal. Health &

11   Safety Code § 25363(e).  Under the HSAA, a "responsible party" or

12   "liable person" refers to those individuals who are liable for

13   cleanup costs under 42 U.S.C. § 9607(a).  Id. § 25323.5(a)(1);

14   see also Coppola v. Smith, 935 F. Supp. 2d 993, 1011 (E.D. Cal.

15   2013) (Ishii, J.) ("Although the HSAA is not identical to CERCLA,

16   the HSAA expressly incorporates the same liability standards,

17   defenses, and classes of responsible persons as those set forth

18   in CERCLA." (citations omitted)); Castaic Lake Water Agency v.

19   Whittaker Corp., 272 F. Supp. 2d 1053, 1084 n.40 (C.D. Cal. 2003)

20   ("HSAA creates a scheme that is identical to CERCLA with respect

21   to who is liable." (citations and internal quotation marks

22   omitted)).  As explained above, Dobbas has stated a claim under

23   CERCLA.  Because the HSAA mirrors CERCLA's scope of liability,

24   the court must also deny DTSC's motion to dismiss Dobbas's HSAA

25   counterclaim.

26        C.   Dobbas's Claim for Declaratory Relief

27             Dobbas seeks declaratory relief under CERCLA's

28   declaratory judgment provision, 42 U.S.C. § 9613(g)(2)--a

                                   10

provision that is entirely derivative of its claim under § 9607 for response costs.  See Coppola v. Smith, --- F. Supp. 2d ----, ----, Civ. No. 1:11-1257 AWI BAM, 2014 WL 1922400, at *11 (E.D. Cal. May 14, 2014) ("A claim for declaratory relief under . . . § 9613(g) is dependent upon a valid § 9607 claim.").  Because Dobbas has stated a claim for cost recovery against DTSC under § 9607, it may also seek declaratory relief under CERCLA.

Dobbas likewise seeks declaratory relief under the Declaratory Judgment Act ("DJA") with respect to its § 9613(f) claim for contribution.[3]  CERCLA does not address the availability of declaratory relief for a contribution claim, see 42 U.S.C. § 9613(g), but the Ninth Circuit permits such relief in order to support the policy considerations animating it.  See Boeing Co. v. Cascade Corp., 207 F.3d 1177, 1191 (9th Cir. 2000) (allowing declaratory relief on a contribution claim as "consistent with the broader purposes of CERCLA").  The DJA authorizes a court to grant declaratory relief where there is "a

---

[3]   DTSC argues that all declaratory relief under CERCLA must be funneled through § 9613(g), not the DJA.  (Pls.'s Mem. at 10-11.)  The court does not find this argument persuasive.  DTSC fails to support its proposition with a case addressing declaratory relief on a contribution claim under § 9613(f).  The case it cites addresses only cost recovery claims under §9607(a).  See City of Colton v. Am. Promotional Events, Inc.-W., 614 F.3d 998, 1007 (9th Cir. 2010) (holding that declaratory relief for cost recovery under CERLCA § 107(a) must be asserted through CERCLA's "more detailed declaratory judgment provision").  Moreover, the Ninth Circuit appears to have analyzed declaratory judgment relating to a contribution claim under the standard of the DJA before.  See Boeing Co. v. Cascade Corp., 207 F.3d 1177, 1192 (9th Cir. 2000) (using the "substantial controversy" language of DJA analysis).  Other circuits have also permitted declaratory relief under the DJA for a CERCLA contribution claim.  See, e.g., New York v. Solvent Chem. Co., 664 F.3d 22, 25 (2d Cir. 2011).

1    case of actual controversy within its jurisdiction," subject to

2    certain exceptions.  28 U.S.C. § 2201(a).  The court may "declare

3    the rights and other legal relations of any interested party

4    seeking such declaration, whether or not further relief is or

5    could be sought."  Id.  Because Dobbas has stated a claim for

6    contribution under § 9613(f), it may pursue declaratory relief

7    allocating future contribution.  See Boeing, 207 F.3d at 1191-92.

8    Accordingly, the court must deny DTSC's motion to dismiss these

9    counterclaims.

10   III. Motion to Strike

11        Rule 12(f) authorizes the court to "strike from a

12   pleading an insufficient defense or any redundant, immaterial,

13   impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

14   "[T]he function of a [Rule] 12(f) motion to strike is to avoid

15   the expenditure of time and money that must arise from litigating

16   spurious issues by dispensing with those issues prior to trial."

17   Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir.

18   1983).

19        A.   Dobbas's Jury Trial Demand

20        DTSC asks the court to strike Dobbas's demand for a

21   jury trial.  The Seventh Amendment entitles a party to a jury

22   trial in all "[s]uits at common law" in which the amount in

23   controversy exceeds twenty dollars, U.S. Const. amend. VII, but

24   does not require a jury trial for claims that are exclusively

25   equitable in nature, see Tull v. United States, 481 U.S. 412,

26   417-18 (1987).  In determining whether a party is entitled to a

27   jury trial on a particular claim, a court must determine whether

28   the claim resembles one historically tried to juries before the

1    merger of law and equity and, more importantly, whether the

2    relief sought is equitable or legal in nature.  Id. at 418; see

3    also Chauffeurs, Teamsters, & Helpers, Local No. 391 v. Terry,

4    494 U.S. 558, 565 (2002) (noting that "[t]he second inquiry is

5    the more important in our analysis" (citation omitted)).  "In

6    close cases, a court should err on the side of preserving the

7    right to a jury trial."  Granite Rock Co. v. Int'l Bhd. of

8    Teamsters, 649 F.3d 1067, 1069 (9th Cir. 2011) (citation

9    omitted).

10           Plaintiffs' first two claims seek cost recovery and

11   declaratory relief under CERCLA.  "Substantial case law supports

12   the conclusion that CERCLA cost recovery actions are equitable in

13   nature and thus that no jury trial is available."  Cal. Dep't of

14   Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d

15   1028, 1046 (C.D. Cal. 2002) (citing cases).  Dobbas does not

16   dispute this, although some question has arisen over the

17   soundness of this assumption.  See AMW Materials Testing, Inc. v.

18   Town of Babylon, 584 F.3d 436, 452 (2d Cir. 2009) (citing Great-

19   W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 212 (2002))

20   (explaining that, "in light of [Great-West], it is by no means

21   clear that the restitution provided by § 9607(a) is equitable,

22   rather than legal, in nature").[4]  Instead, Dobbas points to its

23   _____

24        [4]   Because § 9607(a) cost-recovery actions seek to restore
     parties who incur cleanup costs to the position they previously
25   occupied, "courts have characterized CERCLA claims as
     'restitution' and have viewed them as actions in equity."  Wehner
26   v. Syntex Corp., 682 F. Supp. 39, 40 (N.D. Cal. 1987).  In AMW,
     however, the Second Circuit rejected the hard-and-fast conclusion
27   that, because § 9607(a) provides "restitution," it must be
     considered equitable for Seventh Amendment purposes.  AMW, 584
28   F.3d at 451-52.  The court pointed to the Supreme Court's

1    § 9613(f) contribution counterclaim and the "split" among courts

2    as to whether a right to jury trial exists for such claims.  See

3    Hatco Corp. v. W.R. Grace & Co. Conn., 59 F.3d 400, 412 n.9 (3d

4    Cir. 1995) (collecting cases).  In light of the uncertainty over

5    whether the right to a jury exists under CERCLA, and the need to

6    err on the side of preserving that right, see Granite Rock, 649

7    F.3d at 1069, the court finds disposal of Dobbas's jury demand

8    for these claims inappropriate on a motion to strike.

9           Plaintiffs also assert a claim under the HSAA, which

10   includes a request for civil penalties.  Whether or not this

11   claim requires a jury trial turns on whether civil penalties

12   under the HSAA are legal or equitable in nature.  For instance,

13   the Supreme Court has held that civil penalties under the Clean

14   Water Act ("CWA") require a jury trial because those penalties

15   were traditionally only available in actions at law and were

16   designed to punish and deter pollution, rather than to force them

17   to disgorge their profits or to make victims of pollution whole.

18   Tull, 481 U.S. at 422-24.  By contrast, civil penalties available

19   under other statutes do not require a jury trial because those

20   penalties constitute equitable relief that is incidental to the

21   enforcement of the statutory scheme at issue.  See, e.g., DiPirro

22   v. Bondo Corp., 153 Cal. App. 4th 150, 182-84 (1st Dist. 2007)

23   (no right to jury trial in action seeking civil penalties under

24   _____

25   discussion of restitution in Great-West, in which it cautioned
     that "not all relief falling under the rubric of restitution is

26   equity."  532 U.S. at 212.  Ultimately, the AMW court eschewed
     adopting a legal, rather than equitable, conception of cost

27   recovery because the court concluded that the plaintiff was
     entitled to judgment as a matter of law, rendering the issue

28   moot.  AMW, 584 F.3d at 452.

1    Proposition 65); Shabaz v. Polo Ralph Lauren Corp., 586 F. Supp.

2    2d 1205, 1211-12 (C.D. Cal. 2008) (no right to jury trial in

3    action seeking civil penalties under Song-Beverly Credit Card

4    Act).

5              As in Tull, the civil penalties authorized by HSAA are

6    essentially legal in nature.  Like the CWA, the HSAA "does not

7    direct that the 'civil penalty' be imposed solely on the basis of

8    equitable determinations."  Tull, 481 U.S. at 422.  Instead, it

9    simply authorizes a maximum penalty of $25,000 per day, Cal.

10   Health & Safety Code § 25359.2, which suggests that the penalty

11   is of a legal character, see Tull, 481 U.S. at 422 (holding civil

12   penalty was legal in part because the CWA "simply imposes a

13   maximum penalty of $10,000 per day of violation").

14             The civil penalties available under the HSAA are also

15   legal in nature because they go beyond restitution; instead, they

16   serve as "penalty provisions designed to coerce cooperation and

17   compliance."  Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.,

18   65 Cal. Rptr. 2d 127, 132 (2d Dist. 1997), rev'd on other

19   grounds, 18 Cal. 4th 857 (1998).  In fact, the structure of the

20   HSAA contains a separate provision that allows DTSC to recover up

21   to three times the amount of any costs it incurs "as a result of

22   the failure to take proper action," Cal. Health & Safety Code

23   § 25359(a), suggesting that its civil penalty provision is

24   designed to provide an additional measure of retribution and

25   deterrence and is not itself an equitable remedy.  See Tull, 481

26   U.S. at 425 (holding that the civil penalty provision authorized

27   legal relief because it was a "separate and distinct statutory

28   provision" from those authorizing equitable relief).

1    Accordingly, because the relief plaintiffs seek under

2 the HSAA is legal in nature, see id. at 418, the court must also

3 deny plaintiffs' motion to strike Dobbas's jury demand with

4 respect to the HSAA claim.

5    B.   Prayer for Attorney's Fees

6    CERCLA "does not provide for the award of private

7 litigants' attorney's fees associated with bringing a cost

8 recovery action." Key Tronic Corp. v. United States, 511 U.S.

9 809, 819 (1994); see also Alco, 217 F. Supp. 2d at 1046 (noting

10 that CERCLA does not "permit an award of attorney's fees by a

11 prevailing defendant in a CERCLA cost recovery action" and

12 striking prayer for attorney's fees). Nor does the HSAA provide

13 for an award of attorney's fees to a prevailing defendant or

14 otherwise displace the longstanding rule that, "[i]n the absence

15 of some special agreement, statutory provision, or exceptional

16 circumstances, attorney's fees are to be paid by the party

17 employing the attorney." Prentice v. N. Am. Title Guar. Corp.,

18 59 Cal. 2d 618, 620 (1963) (citations omitted). Accordingly, the

19 court must grant plaintiffs' motion to strike defendants' prayers

20 for attorney's fees.

21    C.   Dobbas's Affirmative Defenses

22    Affirmative defenses can be challenged as a matter of

23 pleading or as a matter of law. See Dodson v. Strategic

24 Restaurants Acquisition Co. II, LLC, 289 F.R.D. 595, 603 (E.D.

25 Cal. 2013) (Karlton, J.). An affirmative defense fails as a

26 matter of pleading if it does not give "fair notice of what the

27 [affirmative defense] is and the grounds upon which it rests."

28

1    Id. (quoting Twombly, 550 U.S. at 555).[5]  An affirmative defense

2    fails as a matter of law if it "lacks merit under any set of

3    facts the defendant might allege."  Id. (citation and quotation

4    marks omitted).  "[W]hen the affirmative defense is purely a

5    question of law, an early adjudication of that question of law

6    will expedite the litigation and facilitate the administration of

7    justice . . . ."  Grason Elec. Co. v. Sacramento Mun. Utility

8    Dist., 526 F. Supp. 276, 281 (E.D. Cal. 1981) (Ramirez, J.).

9         Plaintiffs assert three causes of action: (1) recovery

10   of response costs under § 107(a) of CERCLA, 42 U.S.C. § 9607(a),

11   (2) declaratory relief under § 113(g)(2) of CERCLA, 42 U.S.C.

12   § 9613(g)(2), and (3) failure to comply with imminent or

13   substantial determination order and remedial action order under

14   HSAA, Cal. Health & Safety Code §§ 25355.5, 25358.3, 25359,

15   25359.2, 25367.  Dobbas initially responded with forty-four

16   affirmative defenses.  (See Dobbas's Answer at 10-18.)  Dobbas

17   now concedes that many of its affirmative defenses are

18   inappropriate, but it argues that nine of them[6] should not be

19   _____

20   [5]    The court acknowledges the disagreement among district
     courts in the Ninth Circuit--including between different judges

21   within this district--over whether affirmative defenses must meet
     the plausibility pleading standard of Bell Atlantic Corporation

22   v. Twombly, 550 U.S. 554 (2007), and Ashcroft v. Iqbal, 556 U.S.
     662 (2009). The court need not reach this question here, as DTSC

23   contests only the legal sufficiency of Dobbas's defenses.  (Pls.'
     Mem. at 13-21.)  And in any case, affirmative defenses that are

24   insufficiently pled would fail to satisfy either standard.

25   [6]    These defenses include Dobbas's third ("PLAINTIFFS are
     Responsible Parties"), sixth ("Acts or Omissions of PLAINTIFFS"),

26   sixteenth ("Failure to Mitigate"), seventeenth ("Lack of
     Causation"), twenty-seventh ("Aggravation of Harm"), twenty-ninth

27   ("No Liability for Others' Releases"), thirty-sixth ("Reliance"),
     thirty-seventh ("Independent, Intervening, and/or Superseding

28   Claims"), and thirty-ninth ("Undue Delay") affirmative defenses.

                                  17

1    stricken because either (1) plaintiff asserts claims outside of

2    § 9607(b)'s constraints--and thus, Dobbas's may raise additional

3    defenses to these claims--or (2) Dobbas's defenses fit within the

4    constraints of § 9607(b).  (Dobbas's Opp'n at 17.)

5           1.   <u>Subsection 9607(b)'s Restrictions Apply to All</u>

6    <u>Plaintiffs' Claims</u>

7           Subsection 9607(b) governs defenses to liability in

8    cost recovery actions under CERCLA.  That subsection provides

9    that no liability attaches if the release or threatened release

10   of a hazardous substance was caused solely by: (1) "an act of

11   God," (2) "an act of war," (3) "an act or omission of a third

12   party other than an employee or agent of the defendant" if the

13   defendant sufficiently establishes that "(a) he exercised due

14   care . . . and (b) he took precautions against foreseeable acts

15   or omissions of any such third party."  42 U.S.C. § 9607(b).

16          The Ninth Circuit has emphasized that these "statutory

17   defenses are exclusive" and "that the three statutory defenses

18   are the only ones available" in cost recovery actions under

19   CERCLA.  <u>Cal. ex rel. Cal. Dep't of Toxic Substances Control v.</u>

20   <u>Neville Chem. Co.</u>, 358 F.3d 661, 672 (9th Cir. 2004); <u>see also</u>

21   <u>Levin Metals Corp. v. Parr-Richmond Terminal Co.</u>, 799 F.2d 1312,

22   1317 (9th Cir. 1986) ("[I]n order to state a claim for a

23   declaration of nonliability [under CERCLA], the declaratory

24   judgment plaintiff must base its claim of nonliability on one or

25   more of the statutory affirmative defenses.").  The exclusivity

26   of these defenses reflects the unique nature of CERCLA's

27   statutory scheme, under which "[l]iability is strict, without

28   regard to fault, and is imposed jointly and severally unless a

1   defendant can demonstrate that the harm is 'divisible.'"   Alco

2   Pacific, 217 F. Supp. 2d at 1034.

3          To be clear, the court in Neville concluded that this

4   limitation did not extend to suits for contribution under

5   § 133(f) of CERCLA, 42 U.S.C. § 9613(f)(1), because that

6   provision explicitly states that "[i]n resolving contribution

7   claims, the court may allocate response costs among liable

8   parties using such equitable factors as the court determines are

9   appropriate."   Neville, 358 F.3d at 672 (quoting 42 U.S.C.

10   § 9613(f)(1) (quotation marks omitted)).   But plaintiffs have not

11   asserted a contribution claim under § 113(f).   Plaintiffs assert

12   only two CERCLA causes of action: a cost recovery action under

13   § 107(a) and a claim for declaratory relief under § 113(g).

14   Because declaratory relief claims are derivative of cost

15   recovery, the Neville court treated them identically.   See id. at

16   672 ("The provisions of CERCLA governing suits for recovery of

17   costs, 42 U.S.C. §§ 9607(a) and 9613(g)(2), make no such

18   reference to equitable factors.").   According, the limitations of

19   § 9607(b) prevent Dobbas from asserting any affirmative defense

20   not listed within that section against plaintiffs' first two

21   claims.

22          Dobbas nonetheless argues that it may assert additional

23   affirmative defenses against plaintiffs' third cause of action

24   for civil penalties under the HSAA, (See Compl. at 9-11), because

25   § 9607(b) does not apply to the HSAA.   Although the HSAA is not

26   identical to CERCLA, "California's HSAA . . . expressly

27   incorporates CERCLA's liability standards and defenses."   Adobe

28   Lumber, Inc. v. Hellman, 658 F. Supp. 2d 1188, 1192 (E.D. Cal.

1    2009); see also Coppola, 935 F. Supp. 2d at 1011 ("[T]he HSAA

2    expressly incorporates the same liability standards, defenses,

3    and classes of responsible persons as those set forth in

4    CERCLA.") (emphasis added).  Dobbas's attempt to assert

5    additional defenses here contradicts HSAA's statutory language,

6    which explicitly restricts available defenses to those available

7    under CERCLA, 42 U.S.C. § 9607(b).  See Cal. Health & Safety Code

8    § 25323.5(b) ("For purposes of this chapter, the defenses

9    available to a responsible party or liable person shall be those

10   defenses specified in Sections 101(35) and 107(b) of the federal

11   act (42 U.S.C. Secs. 9601(35) and 9607(b)).").  This provision

12   makes no reference to a distinction between cost recovery claims

13   and any other kind of claims.  It mandates the restrictions of

14   § 9607(b), regardless of the claim.  Accordingly, Dobbas cannot

15   assert defenses to the HSAA that it cannot assert under § 107(a)

16   of CERCLA.

17                2.   Affirmative Defenses Fitting Within § 9607(b)

18              Dobbas argues that several of its challenged

19   affirmative defenses fit within the scope of § 9607(b).  (See

20   Dobbas's Opp'n at 17-18.)  For some defenses, this may be true.

21   Dobbas asserts several defenses related to causation: (1) that

22   none of its acts or omissions "is the cause in fact or proximate

23   cause of any costs or damages alleged in the Complaint,"

24   (Dobbas's Answer at 13), (2) that it "is not liable for any costs

25   that were not incurred as a direct result of [its] hazardous

26   substance releases," (id. at 15), and (3) that any of plaintiffs'

27   injuries "were the result of independent, intervening, or

28   superseding forces and/or actions or omissions of third parties

20

1   over which [it] had no control . . . ," (id. at 17).

2          Although these defenses do not precisely track the

3   statutory defenses set forth in § 9607(b), this court has

4   previously suggested that defenses of this nature are applicable

5   in CERCLA cost recovery actions because they relate to whether

6   the release of hazardous substances was "caused solely" by the

7   act or omission of a third party under § 9607(b)(3).  See Adobe

8   Lumber, 658 F. Supp. 2d at 1204 ("If the defendant's release was

9   not foreseeable, and if its conduct--including acts as well as

10  omissions--was 'so indirect and insubstantial' in the chain of

11  events leading to the release, then the defendant's conduct was

12  not the proximate cause of the release and the third party

13  defense may be available . . . .");  Whittaker Corp., 272 F. Supp.

14  2d at 1082 (quoting Lincoln Props., Ltd. v. Higgins, 823 F. Supp.

15  1528, 1542 (E.D. Cal. 1992) (Levi, J.) (noting that CERCLA's

16  statutory defenses "incorporate[] the concept of proximate or

17  legal cause")).  Accordingly, because these defenses relate to

18  whether Dobbas's conduct was the proximate cause of any release

19  of hazardous substances, the court will deny plaintiffs' motion

20  to strike these affirmative defenses.

21         The remaining defenses go beyond the scope of

22  § 9607(b).  They can be dealt with in three groups.  First,

23  Dobbas asserts two defenses that are essentially equitable in

24  nature: (1) that it acted in reliance on DTSC's directions,

25  (Dobbas's Answer at 17), and (2) that any relief would be

26  "inappropriate and inequitable" in light of DTSC's delay in

27  initiating remedial actions, (id.).  But as numerous courts have

28  made clear, "traditional equitable defenses" of the sort Dobbas

21

1    asserts are unavailable under CERCLA.  <u>Neville</u>, 358 F.3d at 672;

2    <u>see also</u> <u>Pakootas v. Teck Cominco Metals, Ltd.</u>, 452 F.3d 1066,

3    1078 n.18 (9th Cir. 2006); <u>Alco Pacific</u>, 217 F. Supp. 2d at 1040

4    ("[T]raditional equitable defenses to liability are not available

5    to defendants in CERCLA cost recovery actions under § 9607.").

6    The court will therefore grant plaintiffs' motion to strike these

7    defenses.

8         Second, Dobbas raises a failure-to-mitigate defense.

9    (Dobbas's Answer at 13.)  But because CERCLA does not permit

10   defendants to avoid liability by "challeng[ing] . . . the

11   reasonableness of the government's clean-up activities," CERCLA

12   does not authorize a failure-to-mitigate defense.  <u>Alco Pacific</u>,

13   217 F. Supp. 2d at 1041.  Moreover, while Dobbas cites <u>United</u>

14   <u>States v. Iron Mountain Mines, Inc.</u> in support of the proposition

15   that such a defense is available, the court actually held the

16   exact opposite: that this defense is unavailable because "CERCLA

17   does not impose a duty upon the government to mitigate response

18   costs.'"  812 F. Supp. 1528, 1543 (E.D. Cal. 1992) (Schwartz, J.)

19   (quoting <u>United States v. Kramer</u>, 757 F. Supp. 397, 407 (D.N.J.

20   1991)).  The court will also grant plaintiffs' motion to strike

21   this defense.

22        Third, Dobbas asserts that plaintiffs' claims against

23   Dobbas "are barred or should be reduced in proportion to

24   [plaintiffs'] own liability," (Dobbas's Answer at 10), that

25   "[a]ny release or threatened release of a hazardous substance,

26   any damages allegedly resulting therefrom, and any response costs

27   or expenditures allegedly incurred as a result thereof, were

28   caused in whole or in part by acts and/or omissions by

                                  22

1  [plaintiffs]," (id. at 11), and that plaintiffs' actions "caused"

2  or "aggravated" the release of hazardous substances and that "any

3  recovery . . . under the complaint should be barred or reduced

4  accordingly," (id. at 14-15).  But courts have consistently

5  "rejected negligence on the part of the government as a defense

6  to liability in CERCLA actions."  Alco Pacific, 217 F. Supp. 2d

7  at 1037 (striking contributory fault defense and citing cases);

8  see also United States v. Shell Oil Co., Civ. No. 91-589, 1992 WL

9  144296, at *9 (C.D. Cal. Aug. 9, 1992) ("[C]omparative fault and

10 contributory negligence are not defenses to CERCLA actions."

11 (citations omitted)).  Section 9607(b) requires a defendant to

12 prove that damages were "solely caused" by a third party, 42

13 U.S.C. § 9607(b), preventing Dobbas from asserting these kinds of

14 comparative negligence defenses.  Accordingly, the court will

15 grant plaintiffs' motion to strike these affirmative defenses.

16         IT IS THEREFORE ORDERED that:

17         (1) DTSC's motion to dismiss be, and the same hereby

18 is, DENIED;

19         (2) plaintiffs' motion to strike the jury demand of

20 defendant Jim Dobbas, Inc., be, and the same hereby is, DENIED;

21         (3) plaintiffs' motion to strike the prayer for

22 attorney's fees of defendant Jim Dobbas, Inc., be, and the same

23 hereby is, GRANTED;

24         (4) plaintiffs' motion to strike Jim Dobbas, Inc.'s

25 affirmative defenses is DENIED with respect to the seventeenth,

26 twenty-ninth, and thirty-seventh affirmative defenses and GRANTED

27 in all other respects;

28         Jim Dobbas, Inc., has twenty days from the date this

1   Order is signed to file an amended answer or counterclaim, if it

2   can do so consistent with this Order.

3   Dated:   September 16, 2014

4   

    WILLIAM B. SHUBB
5   UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28