# EXHIBIT E

1

2

3  IRELL & MANELLA
THOMAS W. JOHNSON, JR.
MICHAEL G. ERMER
4  JEFFREY E. THOMAS
840 Newport Center Drive, Suite 500
5  Newport Beach, CA 92660-6324
(714) 760-0991
6  Attorneys for Plaintiff
Collins & Aikman Group, Inc.

**FILED**
SEP 23 1992
JAMES M. DEMPSEY, CLERK
BY _____
Q. Watts  DEPUTY

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              FOR THE COUNTY OF LOS ANGELES   SC019932

10  COLLINS & AIKMAN GROUP, INC.,        )  CASE NO._____
                                         )
11              Plaintiff,               ) COMPLAINT FOR BREACH
                                         ) OF CONTRACT, DECLARATORY
12          vs.                          ) RELIEF, FRAUD, AND
                                         ) BAD FAITH
13  ALLIANZ INSURANCE COMPANY, BELLEFONTE )
INSURANCE COMPANY, THE CENTRAL NATIONAL ) Jury Trial Demanded
14  INSURANCE COMPANY, MUTUAL FIRE, MARINE )
& INLAND INSURANCE COMPANY, PURITAN     )
15  INSURANCE COMPANY, UNDERWRITERS AT    )
LLOYD'S LONDON, in its individual and   )
16  representative capacities, LLOYD'S    )
LONDON SYNDICATES WEH (No. 362), AGW    )
17  (No. 91), RGV (No. 947), HOLMES      )
(No. 694), MIL (No. 391), PINE TOP      )
18  INSURANCE COMPANY, UNIONAMERICA       )
INSURANCE COMPANY LTD., and DOES 1      )
19  through 250, inclusive,              )
                                         )
20              Defendants.              )
    _____)

21

22          Plaintiff Collins & Aikman Group, Inc., alleges,

23  on personal knowledge as to its own acts and upon information

24  and belief as to all other matters, as follows:

25

26

27

28

000001

## PARTIES

1.  Plaintiff Collins & Aikman Group, Inc. (for-
merly known as Wickes Companies, Inc. and, prior to that,
known as The Wickes Corporation) ("Wickes") is a corporation
duly organized and existing under the laws of the State of
Delaware, with its principal place of business located in
the State of California and offices in Santa Monica,
California.  Wickes brings this action on its own behalf and
on behalf of all of its divisions, subsidiaries or affiliated
corporations or companies, or companies or corporations
associated through ownership or management (collectively the
"Insureds"), that are insured under the policies of insur-
ance, issued by or on behalf of defendants, that are at issue
in this action.

2.  Defendant Allianz Insurance Company is a
corporation duly organized and existing under the laws of
the State of California, with its principal place of business
located in the State of California, and is authorized to do
and is doing business in the State of California.

3.  Defendant Bellefonte Insurance Company is a
corporation duly organized and existing under the laws of the
State of Delaware, with its principal place of business
located in the State of Ohio, and is doing business in the
State of California.

4.  Defendant The Central National Insurance
Company (also known as The Central National Insurance Company

-2-

**000002**

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000232

of Omaha) is a corporation duly organized and existing under the laws of the State of Nebraska, with its principal place of business located in the State of Nebraska, and is authorized to do and is doing business in the State of California.

5.   Defendant Mutual Fire, Marine & Inland Insurance Company (In Rehabilitation) ("Mutual Fire") is a corporation in rehabilitation under the laws of the State of Pennsylvania, is the successor-in-interest to Mutual Fire, Marine & Inland Insurance Company, and is doing business in the State of California.  Mutual Fire is named as a defendant herein to the extent consistent with any applicable orders of the appropriate authorities governing its rehabilitation.

6.   Defendant Puritan Insurance Company is a corporation duly organized and existing under the laws of the State of Connecticut, with its principal place of business located in the State of Kansas, and is authorized to do and is doing business in the State of California.

7.   Defendant Underwriters at Lloyd's London, ("Lloyd's") is a business entity and/or association organized under the laws of a foreign sovereign state, and represents underwriters, and participated in placing and underwriting insurance policies under which the Insureds are insured. Lloyd's is being sued in its individual capacity and as representative of all Lloyd's underwriting syndicates, the members of such syndicates, and the participating companies associated with Lloyd's policies that participated in under-

-3-

000003

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000233

1  writing insurance policies under which the Insureds are

2  insured (all of those underwriting syndicates, the members

3  of such syndicates and such participating companies being

4  collectively referred to herein as the "Lloyd's Under-

5  writers").   The Lloyd's Underwriters are individuals or

6  entities organized under the laws of foreign sovereign

7  states, and include, without limitation, the following

8  defendants:

9          Lloyd's Syndicate WEH (No. 362)
           Lloyd's Syndicate AGW (No. 91)
10         Lloyd's Syndicate RGV (No. 947)
           Lloyd's Syndicate HOLMES (No. 694)
11         Lloyd's Syndicate MIL (No. 391)
           Pine Top Insurance Company
12         Unionamerica Insurance Company Ltd.

13  Lloyd's and the Lloyd's Underwriters (collectively the

14  "Lloyd's Defendants") are doing business in the State of

15  California.

16          8.   Each of the Does 1 through 250, inclusive,

17  is a corporation, individual, Lloyd's Underwriter or other

18  entity which is authorized to do and/or is doing business

19  in the State of California.   The true identities of Does

20  1 through 250 are currently unknown to Wickes which prays

21  leave to amend this Complaint to assert the proper name

22  of each Doe when its identity is discovered.   Each of Does

23  1 through 250 issued, underwrote, or participated in issuing

24  or underwriting policies of insurance to the Insureds which

25  provided coverage for all or a portion of the losses referred

26

27

28

-4-

**000004**

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000234

1   to in this Complaint, or participated in or ratified the

2   wrongful conduct of the defendants alleged in this Complaint.

3                           THE LOSSES

4           9.   The Insureds have, or at material times have

5   had, interests in certain properties (collectively the

6   "Sites") with respect to which it has been alleged by various

7   authorities that action must be taken and/or expenses

8   incurred with respect to purported environmental conditions

9   at the Sites.   The Insureds have incurred, and are continuing

10   to incur, damages and loss relating to each of the Sites.

11          10.   The Sites include, without limitation, the

12   following:

13          (a)   The Elmira, California site.   The

14   California Environmental Protection Agency, Department of

15   Toxic Substances Control (formerly known as the California

16   Department of Health Services) has alleged that Wickes is

17   obligated to take action in respect of alleged environmental

18   conditions at a site located at the corner of Holdner Street

19   and A Street in Elmira, California.   The loss Wickes has

20   incurred to date relating to that site includes, without

21   limitation, an amount in excess of $2 million expended in

22   respect of alleged damage at that site.

23          (b)   The Mifflinburg, Pennsylvania site.

24   The Pennsylvania Department of Environmental Resources

25   has alleged that Wickes and/or another of the Insureds,

26   Yorktowne, Inc., are obligated to take action in respect

27

28

                              -5-

000005

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000235

-28-

1  of alleged environmental conditions at a site located on

2  Eighth Street in Mifflinburg, Pennsylvania.  The loss Wickes

3  has incurred to date relating to that site includes, without

4  limitation, an amount in excess of $500,000 expended in

5  respect of alleged damage at that site.

6          (c)  The Saginaw, Michigan site.  The Michigan

7  Department of Natural Resources has alleged that Wickes is

8  obligated to take action in respect of alleged environmental

9  conditions at a site located at 1700 East Holland Avenue in

10  Saginaw, Michigan.  The loss Wickes has incurred to date

11  relating to that site includes, without limitation, an amount

12  in excess of $1.4 million expended in respect of alleged

13  damage at that site.

14          (d)  The Shenandoah, Iowa site.  The United

15  States Environmental Protection Agency has alleged that

16  Wickes is obligated to take action in respect of alleged

17  environmental conditions at a site located approximately one

18  mile north of Shenandoah, Iowa.  The loss Wickes has incurred

19  to date relating to that site includes, without limitation,

20  an amount in excess of $600,000 expended in respect of

21  alleged damage at that site.

22                  THE INSURANCE POLICIES

23      11.  Each of the defendants issued policies of

24  insurance (the "Policies") to Wickes which covered the inter-

25  ests of the Insureds in all property owned in whole or in

26  part by the Insureds.  The Policies include a certain policy

27

28

-6-

**000006**

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000236

-29-

issued for the period from at least May 15, 1978 through the date of the cancellation of that policy -- December 1, 1980. (A copy of that policy is annexed hereto as Exhibit A, and its terms are incorporated by reference herein.)

12.   The Policies cover losses relating to the Sites.

13.   The Insureds have complied with any applicable conditions precedent or obligations of the Insured under the terms of each of the Policies.

14.   The defendants, and each of them, have failed and refused to provide the Insureds with the coverage for losses relating to the Sites.  The Insureds are entitled to such coverage under the Policies.

## FIRST CAUSE OF ACTION

### (Against All Defendants --
### For Breach of Contract)

15.   Wickes repeats and incorporates by reference the allegations set forth in paragraphs 1 through 14 as if fully set forth herein.

16.   Each of the defendants issued written policies of insurance that obligate the defendants, and each of them, to provide insurance coverage to Wickes and the other Insureds for losses relating to the Sites.

17.   Under the terms of the Policies, the defendants, and each of them, are liable to pay Wickes for losses incurred by Wickes and/or the other Insureds arising out of,

-7-

000007

by reason of, or otherwise relating to the Sites.   Those losses include, without limitation, expenses incurred by the Insureds that directly or indirectly result from or by reason of activities undertaken in response to and/or to remediate alleged environmental conditions at the Sites.

18.   The defendants, and each of them, have failed and refused to provide insurance coverage for losses that have been, or may be, incurred by the Insureds relating to the Site.

19.   The conduct of the defendants, and each of them, described above constitutes wrongful breaches of each defendant's obligations to the Insureds under the respective insurance policies.

20.   Wickes has been damaged as a direct and proximate result of each defendant's breaches of those obligations.

21.   By reason of the foregoing, Wickes is entitled to recover damages from each defendant (plus, without limitation, the costs and attorneys' and other fees incurred to enforce the Insureds' rights under the Policies) in an amount to be determined at trial.

-8-

000008

## SECOND CAUSE OF ACTION

### (Against All Defendants --
### For Declaratory Relief)

22.   Wickes repeats and incorporates by reference
the obligations set forth in paragraphs 1 through 21 as if
fully set forth herein.

23.   A dispute has arisen between Wickes and each
of the defendants.  Wickes contends that it is entitled to be
paid by each defendant for any and all loss relating to the
Sites.  The defendants, and each of them, deny that Wickes is
entitled to be paid for any loss relating to the Sites, or
have failed to date to acknowledge their obligations to
provide such insurance coverage.  An actual controversy
exists between Wickes and each of the defendants regarding
the construction and interpretation of the Policies, and more
particularly, the application of the Policies to losses
relating to the Sites.  A declaratory judgment is necessary
and appropriate to determine the rights and duties of the
parties under the Policies.

## THIRD CAUSE OF ACTION

### (Against the Lloyd's Defendants --
### For Fraud and Misrepresentation)

24.   Wickes repeats and incorporates by reference
the allegations set forth in paragraphs 1 through 23 as if
fully set forth herein.

25.   The Lloyd's Defendants, and each of them,
issued, or authorized their agent, Sherwood Insurance

-9-

000009

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000239

-32-

Services, to issue on behalf of each of them, policies of insurance in which the Lloyd's Defendants represented that certain insurance coverage (the "Lloyd's Policy") (a copy of which is included in Exhibit A hereto) was effective at least as of May 15, 1979, and remained effective at least through and including December 1, 1980.  In a written endorsement dated December 5, 1980, which was executed by or on behalf of the Lloyd's Defendants and issued to Wickes, the Lloyd's Defendants confirmed their representation that the Lloyd's Policy was effective at least through December 1, 1980.  The Insureds reasonably relied on all representations made by or on behalf of the Lloyd's Defendants in the Lloyd's Policy, including, without limitation, the representations as to the effective dates of the Lloyd's Policy.

26.   After the Lloyd's Defendants were notified of the losses incurred by the Insureds relating to the Sites, attorneys for the Lloyd's Defendants stated to Wickes, in a letter dated August 23, 1991, and in other communications, that the Lloyd's Policy had been cancelled on May 15, 1980.

27.   Wickes denies that the Lloyd's Policy had been cancelled on May 15, 1980, and alleges that the Lloyd's Policy remained effective at least through, and was cancelled effective only as of, December 1, 1980.  If, however, the statements made by the attorneys for the Lloyd's Defendants concerning the cancellation of the Lloyd's Policy are true, then the representations made by or on behalf of the Lloyd's

-10-

**000010**

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000240

-33-

Defendants in the Lloyd's Policy are false, and the Lloyd's Defendants knew or should have known that those representations were false when made.

28.   Wickes has been damaged as a result of the Lloyd's Defendants' fraud and misrepresentation.   Among other things, if Wickes knew that the Lloyd's Policy had been cancelled as of May 15, 1980, as the Lloyd's Defendants' attorneys now claim, Wickes would have obtained other insurance coverage for the Insureds.

29.   The Lloyd's Defendants are liable to Wickes for all damages Wickes has sustained as a result of the Lloyd's Defendants' fraud and misrepresentation, and for punitive damages, in amounts to be determined at trial.

### FOURTH CAUSE OF ACTION

(Against the Lloyd's
Defendants -- For Bad Faith)

30.   Wickes repeats and incorporates by reference the allegations set forth in paragraphs 1 through 29 as if fully set forth herein.

31.   The failure and refusal of the Lloyd's Defendants, and each of them, to pay Wickes for loss relating to the Sites is unreasonable, capricious, and arbitrary and constitutes a breach of the covenant of good faith and fair dealing contained in each and all of the insurance policies issued by or on behalf of the Lloyd's Defendants.   The

-11-

000011

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000241

-34-

1    Lloyd's Defendants, and each of them, are guilty of

2    oppressive, fraudulent, or malicious conduct.

3         32.  As a result of the bad faith conduct of the

4    Lloyd's Defendants, and each of them, in this matter, Wickes

5    has incurred, and may continue to incur, further loss and

6    other expenses relating to the Sites.

7         33.  Wickes has been required to bring this Com-

8    plaint to enforce its rights under the Policies, including

9    its right to coverage for the full term of the Lloyd's

10   Policy, which the Lloyd's Policy plainly states but, in

11   flagrant disregard at the Insureds' rights, the Lloyd's

12   Defendants deny.  Wickes is entitled to recover as damages as

13   against the Lloyd's Defendants, and each of them, all the

14   loss, costs and expenses (including attorneys' fees) which it

15   has or may incur relating to the Sites, together with

16   interest thereon, and all costs and attorneys' or other fees

17   incurred to enforce its right under the Policies.  Wickes

18   will seek leave to amend this Complaint to state its damages

19   in full when its damages can be fully ascertained.

20        34.  Due to the oppressive, fraudulent, or

21   malicious conduct of the Lloyd's Defendants, and each of

22   them, Wickes is entitled to punitive damages in an amount to

23   be determined at trial.

24        WHEREFORE, Wickes prays for judgment against each

25   and all of the defendants as follows:

26

27

28

-12-

**000012**

## FIRST CAUSE OF ACTION

1.   For damages (plus, without limitation, the costs and attorneys' and other fees incurred by Wickes to enforce its rights under the Policies) in an amount to be determined at trial;

## SECOND CAUSE OF ACTION

2.   For a declaratory judgment that the defendants, and each of them, are obligated to pay the Insureds for all losses incurred in relation to the Sites;

## THIRD CAUSE OF ACTION

3.   For damages in an amount to be determined at trial, including costs and attorneys' and other fees incurred herein, and punitive damages in an amount to be determined at trial;

## FOURTH CAUSE OF ACTION

4.   For damages in an amount to be determined at trial, including costs and attorneys' and other fees incurred herein, and punitive damages in an amount to be determined at trial;

-13-

**000013**

DTSC, et al. v. Jim Dobbas, Inc., et al.

AGO000243

## ALL CAUSES OF ACTION

     5.  For costs of suit incurred herein, including reasonable attorneys' and other fees, and such other relief as the Court may deem just and proper.

Dated:  September 25, 1992

                     IRELL & MANELLA

                     By _____
                        Jeffrey E. Thomas

                     Attorneys for Plaintiff
                      Collins & Aikman Group, Inc.

-14-

000014

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000244

-37-

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** (Aviso a Acusado)
ALLIANZ INSURANCE COMPANY, BELLEFONTE INSURANCE COMPANY,
THE CENTRAL NATIONAL INSURANCE COMPANY, MUTUAL FIRE,
MARINE & INLAND INSURANCE COMPANY, PURITAN INSURANCE
COMPANY, UNDERWRITERS AT LLOYD'S LONDON, in its individual
and representative capacities, LLOYD'S LONDON SYNDICATES
WEH (No. 362), AGW (No. 91), RGV (No. 947), HOLMES
(No. 694), MIL (No. 391), PINE TOP INSURANCE COMPANY,
UNIONAMERICA INSURANCE COMPANY LTD., and
DOES 1 through 250, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
(A Ud. le está demandando)

COLLINS & AIKMAN GROUP, INC.

| | |
|---|---|
| You have **30 CALENDAR DAYS** after this summons is served on you to file a typewritten response at this court.<br><br>A letter or phone call will not protect you; your typewritten response must be in proper legal form if you want the court to hear your case.<br><br>If you do not file your response on time, you may lose the case, and your wages, money and property may be taken without further warning from the court.<br><br>There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). | Después de que le entreguen esta citación judicial usted tiene un plazo de 30 DIAS CALENDARIOS para presentar una respuesta escrita a máquina en esta corte.<br><br>Una carta o una llamada telefónica no lo protección; su respuesta escrita a máquina tiene que cumplir con las formalidades legales apropiadas si usted quiere que la corte escuche su caso.<br><br>Si usted no presenta su respuesta a tiempo, puede perder el caso, y le pueden quitar su salario, su dinero y otras cosas de su propiedad sin aviso adicional por parte de la corte.<br><br>Existen otros requisitos legales. Puede que usted quiera llamar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de referencia de abogados o a una oficina de ayuda legal (vea el directorio telefónico). |

The name and address of the court is: (El nombre y direccion de la corte es)
SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES
1725 Main Street
Santa Monica, California 90401

**CASE NUMBER** (Numero del Caso)
**SC019932**

The name, address and telephone number of plaintiff's attorney, or plaintiff without an attorney, is
(El nombre, la direccion y el numero de telefono del abogado del demandante o del demandante que no tiene abogado, es)
IRELL & MANELLA
THOMAS W. JOHNSON, JR./MICHAEL G. ERMER/JEFFREY E. THOMAS
840 Newport Center Drive, Suite 500
Newport Beach, California 92660-6324
Telephone: (714) 760-0991

| DATE: (Fecha) ~~ 2 5 1992 | James H. Dempsey | Clerk, by A. WATTS (Actuario) | Deputy (Delegado) |
|---|---|---|---|

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.80 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (individual)
☐ other:
4. ☐ by personal delivery on (date):

Form Adopted by Rule 982
Judicial Council of California
982(a)(9) (Rev. January 1, 1984)

(See reverse for Proof of Service)
**SUMMONS**

**000015**

CCP 412.20

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000245

-38-

**ROOF OF SERVICE — SUMMONS**

(Use ~~~ arate proof of service for each person ser~~~

1. I served the
   a. [X] summons   [X] complaint   [ ] amended summons   [ ] amended complaint
      [ ] completed and blank Case Questionnaires   [ ] Other (specify):
   b. on defendant (name): Puritan Insurance Company

   c. by serving   [ ] defendant   [X] other (name and title or relationship to person served): Robert J. Renke
                                                                                                 Registered Agent

   d. [ ] by delivery [ ] at home [X] at business
      (1) date:   10/27/92
      (2) time:   11:32 am
      (3) address: 50 California, San Francisco, CA

   e. [ ] by mailing
      (1) date:
      (2) place:

2. Manner of service (check proper box):
   a. [X] Personal service. By personally delivering copies. (CCP 415.10)
   b. [ ] Substituted service on corporation, unincorporated association (including partnership), or public entity. By leaving during usual office hours, copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP 415.20(a))
   c. [ ] Substituted service on natural person, minor, conservatee, or candidate. By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of the office or place of business, at least 18 years of age who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP 415.20(b))   (Attach separate declaration or affidavit stating acts relied on to establish reasonable diligence in first attempting personal service.)
   d. [ ] Mail and acknowledgment service. By mailing (by first-class mail or airmail, postage prepaid) copies to the person served, together with two copies of the form of notice and acknowledgment and a return envelope, postage prepaid addressed to the sender. (CCP 415.30)   (Attach completed acknowledgment of receipt.)
   e. [ ] Certified or registered mail service. By mailing to an address outside California (by first-class mail, postage prepaid, requiring a return receipt) copies to the person served. (CCP 415.40)   (Attach signed return receipt or other evidence of actual delivery to the person served.)
   f. [ ] Other (specify code section):
          [ ] additional page is attached.

3. The "Notice to the Person Served" (on the summons) was completed as follows (CCP 412.30, 415.10 and 474):
   a. [ ] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of (specify):
   c. [X] on behalf of (specify): Puritan Insurance Company
      under: [X] CCP 416.10 (corporation)              [ ] CCP 416.60 (minor)           [ ] other:
             [ ] CCP 416.20 (defunct corporation)       [ ] CCP 416.70 (conservatee)
             [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (individual)
   d. [X] by personal delivery on (date): 10/27/92

4. At the time of service I was at least 18 years of age and not a party to this action.
5. Fee for service: $
6. Person serving:
   a. [ ] California sheriff, marshal, or constable.
   b. [ ] Registered California process server.
   c. [X] Employee or independent contractor of a registered California process server.
   d. [ ] Not a registered California process server.
   e. [ ] Exempt from registration under Bus. & Prof. Code 22350(b).

   f. Name, address and telephone number and, if applicable, county of registration and number.

   **NOW LEGAL SYSTEMS**
   79 CLEMENTINA
   SAN FRANCISCO, CA 94105
   L.A. COUNTY CERTIFICATE #25.2
   (415) - 904-4580

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

(For California sheriff, marshal, or constable use only)
I certify that the foregoing is true and correct.

Date: 10/28/92

Date:

~~~(Rev. January 1, 1984)~~~

000016

THIS POLICY INSURES

THE WICKES CORPORATION

ITS DIVISIONS, SUBSIDIARIES OR AFFILIATED CORPORATION
OR COMPANIES, OR COMPANIES OR CORPORATIONS ASSOCIATED
THROUGH OWNERSHIP OR MANAGEMENT

AS NOW OR MAY HEREAFTER BE CONSTITUTED
(HEREINAFTER REFERRED TO AS THE INSURED)
FOR ACCOUNT OF WHOM IT MAY CONCERN

INCEPTION:     MAY 15, 1978 12:01 A.M., UNITED STATES STANDARD
               PACIFIC TIME

EXPIRATION:    MAY 15, 1981 12 01 A.M., UNITED STATES STANDARD
               PACIFIC TIME

TIME OF ATTACHMENT:  IT IS AGREED THAT, ANYTHING IN THIS POLICY TO
THE CONTRARY NOTWITHSTANDING, THE ACTUAL EFFECTIVE TIME OF ATTACH-
MENT OF THIS INSURANCE ON THE ABOVE DATE SHALL BE THE SAME TIME ON
THE ABOVE DATE AS THE ACTUAL EFFECTIVE TIME OF CANCELLATION AND/OR
EXPIRATION OF POLICY(IES) REPLACED OR RENEWED BY THIS POLICY.

LOSS PAYABLE CLAUSE AND NOTIFICATION CLAUSE

A.    LOSS, IF ANY, SHALL BE ADJUSTED WITH THE INSURED AND PAYABLE
      TO THE INSURED OR ORDER.

B.    ALL NOTICES AND COMMUNICATIONS CONCERNING THIS POLICY SHALL BE
      ADDRESSED TO:

           JAMES E. MORTON
           SENIOR DIRECTOR/INSURANCE & SECURITY
           THE WICKES CORPORATION
           110 WEST A STREET
           SAN DIEGO, CALIFORNIA 92101

      WITH COPIES MAILED SIMULTANEOUSLY TO:

           FRANK B. HALL & CO. OF CALIFORNIA
           3200 WILSHIRE BOULEVARD
           LOS ANGELES, CALIFORNIA 90010



**EXHIBIT 4**

000017

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000247

PART I

ALL PROPERTY

1.  **PROPERTY COVERED:** THIS POLICY COVERS THE INTEREST OF THE INSURED IN ALL PROPERTY, INCLUDING BULLION AND MANUSCRIPTS, OWNED IN WHOLE OR IN PART BY THE INSURED.

2.  **EXTENSIONS OF COVERAGE:** THIS POLICY IS EXTENDED TO COVER AS FOLLOWS:

    A.  IMPROVEMENTS AND BETTERMENTS ARE COVERED AS PROPERTY OF THE NAMED INSURED UNDER THIS POLICY.  THE TERM "IMPROVE-MENTS AND BETTERMENTS" SHALL BE CONSTRUED TO INCLUDE AND APPLY TO ANY AND ALL EXPENDITURES AND ADVANCEMENTS MADE BY THE INSURED FOR IMPROVEMENTS, CHANGES, ADDITIONS AND ALTERATIONS TO PROPERTY OF OTHERS; ALSO THIS INSURANCE SHALL NOT BE PREJUDICED BY THE FACT THAT THE INSURED UNDER THIS POLICY IS NOT THE SOLE AND UNCONDITIONAL OWNER OF THE PROPERTY INSURED HEREUNDER, AND IN CASE OF LOSS UNDER THIS POLICY, SO LONG AS THE INSURED HAS AN INSURABLE INTEREST THEREIN, THIS COMPANY SHALL ADJUST AND PAY SUCH LOSS TO THE INSURED ON THE SAME BASIS AS IF THE INSURED WERE THE SOLE AND UNCONDITIONAL OWNER OF SAID PROPERTY, WITHOUT DEDUCTION BECAUSE OF ANY LIMITATIONS UPON THE INTEREST OF SAID INSURED IN SAID PROPERTY, WHETHER AS A RESULT OF ANY LEASE OR RENTAL AGREEMENT OR OTHERWISE, OR BECAUSE OF ANY INSURANCE THEREON HAVING BEEN ISSUED TO OR IN THE NAME OF OTHERS.  THIS POLICY SHALL NOT CONTRIBUTE HOWEVER, IN THE APPORTIONMENT OF ANY LOSS UNDER POLICIES ISSUED IN THE NAME OF OTHERS THAN THE NAMED INSURED HEREUNDER.

    B.  THE INTEREST OF THE INSURED IN ALL PROPERTY NOT OWNED IN WHOLE OR IN PART BY THE INSURED, BUT HELD BY THE INSURED IN ANY CAPACITY OR FOR WHICH THEY HAVE ASSUMED LIABILITY PRIOR TO LOSS OR SHALL BE LIABLE BY LAW OR INSURED FOR THE ACCOUNT OF OTHERS AND WHETHER HELD BY THEM OR OTHERS.

    C.  AT THE INSURED'S SOLE OPTION, PERSONAL EFFECTS BELONGING TO OR IN USE BY OFFICIALS AND EMPLOYEES OF THE INSURED WHILE ON PREMISES OF LOCATIONS INSURED HEREUNDER, AND WHEN NOT OTHERWISE INSURED; LOSS, IF ANY, TO BE ADJUSTED WITH AND PAYABLE TO THE INSURED.

000018

2.   EXTENSIONS OF COVERAGE: (CONTINUED)

D.   EXPENSE INCURRED IN THE REMOVAL OF DEBRIS OF THE PROPERTY
COVERED HEREUNDER, WHICH MAY BE OCCASIONED BY LOSS CAUSED
BY ANY OF THE PERILS INSURED AGAINST IN THIS POLICY.

E.   DEMOLITION AND INCREASED COST OF CONSTRUCTION: ANY INCREASE
OF LOSS OCCASIONED BY THE ENFORCEMENT OF ANY STATE OR MUNI-
CIPAL LAW OR ORDINANCE REGULATING THE CONSTRUCTION OR REPAIR
OF BUILDINGS OR THE DEMOLITION OF ANY PORTION OF A BUILDING
WHICH HAS NOT SUFFERED DAMAGE, WHICH IS IN FORCE AT THE
TIME SUCH LOSS OCCURS, LIMITED, HOWEVER, TO THE MINIMUM
REQUIREMENTS OF SUCH LAW OR ORDINANCE AND WITH RESPECT TO
CONSTRUCTION OR REPAIR OF BUILDINGS, LIMITED ALSO TO THE
GREATER COST OF ERECTING ON THE SAME SITE A BUILDING OF THE
SAME TYPE, THE SAME TOTAL FLOOR AREA, THE SAME HEIGHT, AND
AS NEARLY LIKE THE BUILDING DESTROYED AS POSSIBLE, HAVING
REGARD TO SUCH CHANGES AS MAY BE REQUIRED BY SUCH LAW OR OR-
DINANCE.

3.   **PROPERTY NOT COVERED:**  THIS POLICY DOES NOT COVER ON:

A.   ACCOUNTS, BILLS, CURRENCY, DEEDS, EVIDENCES OF DEBT, MONEY
OR SECURITIES.

B.   LAND VALUES

C.   STANDING TIMBER, ANIMALS, SHRUBS, PLANTS, AND LAWNS OUTSIDE
OF ANY BUILDING.

D.   WATERCRAFT, AIRCRAFT AND MOTOR VEHICLES OR TRAILERS WHICH
ARE LICENSED BY THE MOTOR VEHICLE DEPARTMENT FOR HIGHWAY
OPERATION.

E.   LOSS TO IMPORT OR INCOMING INTERCOASTAL WATER SHIPMENTS OR
TO IMPORT AIRBORNE SHIPMENTS UNTIL AFTER DISCHARGE FROM
OCEAN-GOING VESSELS OR FROM AIRCRAFT AND UNTIL AFTER THE
RISK ASSUMED UNDER ANY OCEAN MARINE CARGO POLICY HAS CEASED;
LOSS TO EXPORT OR OUTGOING INTERCOASTAL WATER SHIPMENTS
OR TO EXPORT AIRBORNE SHIPMENTS AFTER LADEN ON BOARD OCEAN-
GOING VESSELS OR ON BOARD AIRCRAFT OR AFTER THE RISK ASSUMED
UNDER ANY OCEAN MARINE CARGO POLICY HAS COMMENCED, WHICHEVER
FIRST OCCURS.

F.   BOILER AND MACHINERY OF EVERY KIND AND DESCRIPTION TO THE
EXTEND SUCH IS ORDINARILY COVERED UNDER A SEPARATE POLICY
OF INSURANCE (SUBJECT TO THE TERMS OF THE "OTHER INSURANCE
CLAUSE" CONTAINED HEREIN).

**000019**

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000249

-42-

IT IS **WARRANTED** BY THE INSURED THAT A POLICY OF INSURANCE
WILL BE MAINTAINED ON ANY OBJECTS OF BOILER AND MACHINERY
REQUIRING INSPECTION AND PERMIT TO OPERATE.

G.  **CONTRACTORS** EQUIPMENT OWNED OR RENTED BY WICKES FOREST
**DIVISION**

4.  **VALUATION:**  IN CASE OF LOSS THE BASIS OF ADJUSTMENT SHALL BE
**AS FOLLOWS:**

A.  **ON PROPERTY SOLD BUT NOT DELIVERED:**

THIS COMPANY SHALL NOT BE LIABLE FOR MORE THAN THE NET
SELLING PRICE OF THE INSURED AFTER ALL ALLOWANCES AND
DISCOUNTS.

B.  **MERCHANDISE HELD FOR SALE AT WICKES RETAIL LUMBER DIVI-
SION, SEQUOIA SUPPLY, INC., HOME LUMBER COMPANY AND
BUILDERS EMPORIUM.**

VALUED AT RETAIL SELLING PRICE.

C.  **VALUABLE PAPERS AND RECORDS AT COST TO REPAIR OR REPLACE
OR RECONSTRUCT THE PROPERTY WITH OTHER OF LIKE KIND AND
QUALITY.  IT IS UNDERSTOOD AND AGREED THAT THE TERM
"VALUABLE PAPERS AND RECORDS" INCLUDES DATA PROCESSING
MEDIA MEANING PERFORATED TAPES, PUNCH CARDS, MAGNETIC
TAPES, MAGNETIC CARDS, OR OTHER FORMS OF SYSTEM COMMUNI-
CATION.**

D.  **ON ALL OTHER PROPERTY:**

THIS COMPANY'S LIABILITY FOR LOSS OR DAMAGE SHALL NOT
EXCEED THE SMALLEST OF THE FOLLOWING AMOUNTS:

(a)  **THE AMOUNT OF INSURANCE PROVIDED FOR IN THIS POLICY**

(b)  **THE AMOUNT WHICH WOULD BE NECESSARY TO REPAIR OR
REPLACE THE PROPERTY WITH MATERIALS OF LIKE KIND
AND QUALITY WITHOUT DEDUCTION FOR DEPRECIATION,
ON THE SAME PREMISES AND INTENDED FOR ANY TYPE OF
COMMERCIAL OR MERCANTILE OCCUPANCY.  IF PROPERTY
DAMAGED OR DESTROYED IS NOT REPAIRED, REBUILT, OR
REPLACED ON THE SAME OR ANOTHER SITE WITHIN REA-
SONABLE TIME AFTER LOSS OR DAMAGE, THE COMPANY WILL
THEN NOT BE LIABLE FOR MORE THAN THE ACTUAL CASH
VALUE OF THE PROPERTY DAMAGED OR DESTROYED.**

**000020**

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000250

-43-

(c)   THE AMOUNT ACTUALLY AND NECESSARILY EXPENDED IN REPAIRING OR REPLACING THE DAMAGED OR DESTROYED PROPERTY (WHETHER OR NOT SUCH REPAIR OR REPLACE- MENT IS WITH MATERIALS OF LIKE KIND AND QUALITY TO THOSE OF THE DAMAGED OR DESTROYED PROPERTY) ON THE SAME PREMISES AND INTENDED FOR ANY TYPE OF COMMERCIAL OR MERCANTILE OCCUPANCY.

NOTHING IN THE FOREGOING PARAGRAPHS (b) AND (c) SHALL BE CONSTRUED AS RESTRICTING THE REPAIR OR REPLACEMENT OF THE DAMAGED OR DESTROYED PROPERTY TO THE SAME PREMISES.

IN THE APPLICATION OF ANY CLAUSE, ENDORSEMENT, OR FORM ATTACHED TO THIS POLICY, CONTAINING THE WORDS "ACTUAL CASH VALUE" OR "ACTUAL VALUE", SUCH WORDS ARE HEREBY CHANGED TO THE WORDS, "REPLACEMENT VALUE" WHICH SHALL BE CONSIDERED TO MEAN THE REPLACEMENT COST WITHOUT DE- DUCTION FOR DEPRECIATION (EXCEPT AS STATED ABOVE IN PARAGRAPH 4, SECTION D, SUB PART (b) AND PARAGRAPH 11, SECTION C OF THE GENERAL CONDITIONS APPLYING TO ALL PARTS.).

000021

## PART II

### TIME ELEMENT

1. THIS POLICY INSURES AGAINST LOSS RESULTING DIRECTLY FROM NECESSARY INTERRUPTION OF BUSINESS AND/OR EXTRA EXPENSE OR RENTAL INCOME AND/OR OFF PREMISES POWER INCLUDING TRANSMISSION FACILITIES (ALL AS HEREINAFTER DEFINED) CAUSED BY DAMAGE TO OR DESTRUCTION OF REAL OR PERSONAL PROPERTY, EXCEPT FINISHED STOCK, BY THE PERIL(S) INSURED AGAINST DURING THE TERM OF THIS POLICY.

   A. **ON BUSINESS INTERRUPTION:(GROSS EARNINGS): THIS COMPANY SHALL BE LIABLE FOR THE ACTUAL LOSS SUSTAINED BY THE INSURED RESULTING FROM INTERRUPTION OF BUSINESS, BY PERILS INSURED HEREUNDER, BUT NOT EXCEEDING THE REDUCTION IN GROSS EARNINGS LESS CHARGES AND EXPENSES WHICH DO NOT NECESSARIOY CONTINUE DURING THE INTERRUPTION OF BUSINESS, ONLY FOR SUCH LENGTH OF TIME, PLUS NOT EXCEEDING THIRTY (30) ADDITIONAL DAYS, AS WOULD BE REQUIRED WITH THE EXERCISE OF DUE DILIGENCE AND DISPATCH TO REBUILD, REPAIR OR REPLACE SUCH PART OF THE PROPERTY INSURED HEREUNDER, OR RECIPIENT OR CONTRIBUTORY PROPERTIES INCLUDING BUSINESSES OF OTHERS IN THE SAME VICINITY WHICH ATTRACT BUSINESS TO THAT VICINITY, AS HAS BEEN DAMAGED OR DESTROYED AND NOT LIMITED BY THE DATE OF EXPIRATION OF THIS POLICY. DUE CONSIDERATION SHALL BE GIVEN TO THE CONTINUATION OF NORMAL CHARGES AND EXPENSES, INCLUDING PAYROLL EXPENSE, TO THE EXTENT NECESSARY TO RESUME OPERATIONS OF THE INSURED WITH THE SAME QUALITY OF SERVICE WHICH EXISTED IMMEDIATELY PRECEDING THE LOSS.**

   B. **ON EXTRA EXPENSE: THIS COMPANY SHALL BE LIABLE UNDER THIS POLICY FOR THE ACTUAL LOSS SUSTAINED BY REASON OF SUCH EXTRA EXPENSE AS IT MAY BE NECESSARY TO INCUR TO CONTINUE THE NORMAL CONDUCT OF THE BUSINESS OF THE INSURED, FOR NOT EXCEEDING THIRTY (30) ADDITIONAL DAYS, COMMENCING WITH THE DATE OF DESTRUCTION OR DAMAGE, AND NOT LIMITED BY THE DATE OF EXPIRATION OF THIS POLICY, AS SHALL BE REQUIRED WITH THE EXERCISE OF DUE DILIGENCE AND DISPATCH**

000022

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000252

TO REBUILD, REPAIR OR REPLACE SUCH PART OF THE PROPERTY
INSURED HEREUNDER AS MAY BE DESTROYED OR DAMAGED.

C.  ON RENTAL INCOME:  IF THE PROPERTY INSURED BY THIS POLICY
BE DAMAGED OR DESTROYED DURING THE TERM OF THIS POLICY BY
THE PERILS INSURED AGAINST SO AS TO RENDER SUCH PROPERTY
WHOLLY OR PARTIALLY UNTENANTABLE, THIS COMPANY SHALL BE
LIABLE FOR THE LOSS OF "RENTAL INCOME", AS DEFINED HEREIN,
RESULTING FROM SUCH UNTENANTABILITY, LESS SUCH CHARGES
AND EXPENSES AS DO NOT NECESSARILY CONTINUE DURING THE
PERIOD OF UNTENANTABILITY, BUT NOT EXCEEDING THE ACTUAL
LOSS SUSTAINED RESULTING FROM SUCH UNTENANTABILITY, AND
FOR ONLY SUCH LENGTH OF TIME, PLUS NOT EXCEEDING THIRTY
(30) ADDITIONAL DAYS, AS WOULD BE REQUIRED WITH THE EX-
ERCISE OF DUE DILIGENCE AND DISPATCH TO RESTORE TO A
TENANTABLE CONDITION SUCH PROPERTY AS HAS BEEN DAMAGED
OR DESTROYED, COMMENCING WITH THE DATE OF SUCH DAMAGE OR
DESTRUCTION AND NOT LIMITED BY THE DATE OF EXPIRATION OF
THIS POLICY.

D.  ON OFF-PREMISES POWER INCLUDING TRANSMISSION FACILITIES:
THE COMPANY ALSO INSURES AGAINST LOSS RESULTING FROM
NECESSARY INTERRUPTION OF BUSINESS CONDUCTED BY THE ASSURED
DUE TO DAMAGE OR DESTRUCTION BY THE PERILS INSURED AGAINST,
OF OFF-PREMISES UTILITY AND POWER STATIONS, SUBSTATIONS,
TRANSFORMER OR SWITCHING OR PUMPING STATIONS, INCLUDING
LOSS RESULTING FROM DAMAGE TO OFF-PREMISES POLES, TOWERS,
AND TRANSMISSION OR DISTRIBUTION LINES, FURNISHING ELECTRI-
CITY, STEAM, WATER, GAS OR REFRIGERATION TO PREMISES IN-
SURED HEREUNDER.

2.  SPECIAL PROVISIONS APPLICABLE TO "GROSS EARNINGS":

RESUMPTION OF OPERATIONS: IT IS A CONDITION OF THIS INSURANCE
THAT IF THE INSURED COULD REDUCE THE LOSS RESULTING FROM THE
INTERRUPTION OF BUSINESS,

(a)  BY COMPLETE OR PARTIAL RESUMPTION OF OPERATION OF HIS
BUSINESS, OR

(b)  BY MAKING USE OF ANY OTHER AVAILABLE SOURCE OF MATERIALS,
OR

(c)  BY MAKING USE OF STOCK (RAW, IN PROCESS OR FINISHED) AT
THE LOCATION(S) OPERATED BY THE INSURED OR ELSEWHERE,

**000023**

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000253

-46-

SUCH REDUCTION SHALL BE TAKEN INTO ACCOUNT IN ARRIVING AT THE AMOUNT OF LOSS HEREUNDER. THE INSURED SHALL ALSO USE HIS IN-FLUENCE TO INDUCE THE RECIPIENT PROPERTY(IES) OR THE CONTRIBU-TING PROPERTY(IES) TO MAKE USE OF ANY OTHER MACHINERY, EQUIP-MENT, SUPPLIES OR LOCATION AVAILABLE IN ORDER TO RESUME OPERA-TIONS AND DELIVERY OF MATERIALS TO THE INSURED AND SHALL CO-OPERATE WITH THE RECIPIENT PROPERTY(IES) OR THE CONTRIBUTING PROPERTY(IES) TO THIS EFFECT IN EVERY WAY, BUT NOT FINANCIALLY UNLESS SUCH EXPENDITURE SHALL BE AUTHORIZED BY THIS COMPANY.

3. SPECIAL PROVISIONS APPLICABLE TO "GROSS EARNINGS" AND "RENTAL INCOME":

EXPENSE TO REDUCE LOSS: THIS POLICY ALSO COVERS SUCH EXPENSES AS ARE NECESSARILY INCURRED FOR THE PURPOSE OF REDUCING LOSS UNDER THIS POLICY BUT IN NO EVENT SHALL THE AGGREGATE OF SUCH EXPENSES EXCEED THE AMOUNT BY WHICH THE LOSS UNDER THIS POLICY IS THEREBY REDUCED.

4. DEFINITIONS:

A. "GROSS EARNINGS" AS STATED HEREIN SHALL MEAN THE SUM OF:

(a) TOTAL NET SALES VALUE OF PRODUCTION,

(b) TOTAL NET SALES OF MERCHANDISE, AND

(c) OTHER EARNINGS DERIVED FROM OPERATIONS OF THE BUSINESS LESS THE COST OF:

(1) RAW STOCK FROM WHICH SUCH PRODUCTION IS DERIVED,

(2) SUPPLIES CONSISTING OF MATERIALS CONSUMED DIRECTLY IN THE CONVERSION OF SUCH RAW STOCK INTO FINISHED STOCK OR IN SUPPLYING THE SERVICE(S) SOLD BY THE INSURED,

(3) MERCHANDISE SOLD, INCLUDING PACKAGING MATERIALS THEREFOR, AND

(4) SERVICE(S) PURCHASED FROM OUTSIDERS (NOT EMPLOYEES OF THE INSURED) FOR RESALE WHICH DO NOT CONTINUE UNDER CONTRACT.

NO OTHER COSTS SHALL BE DEDUCTED IN DETERMINING GROSS EARNINGS. IN DETERMINING GROSS EARNINGS DUE CONSIDERATION SHALL BE GIVEN TO THE EXPERIENCE OF THE BUSINESS BEFORE THE DATE OF DAMAGE OR DE-STRUCTION AND THE PROBABLE EXPERIENCE THEREAFTER HAD NO LOSS OCCURRED.

**000024**

B.   "RAW STOCK" AS STATED HEREIN SHALL MEAN: MATERIAL IN THE
CONDITION IN WHICH THE INSURED RECEIVED IT FOR CONVERSION
BY THE INSURED INTO FINISHED STOCK.

C.   "STOCK IN PROCESS" AS STATED HEREIN SHALL MEAN: RAW STOCK
WHICH HAS UNDERGONE ANY AGING, SEASONING, MECHANICAL OR
OTHER PROCESS OF MANUFACTURE, BUT WHICH HAS NOT BECOME
FINISHED STOCK.

D.   "FINISHED STOCK" AS STATED HEREIN SHALL MEAN:  STOCK MANU-
FACTURED BY THE INSURED WHICH IN THE ORDINARY COURSE OF
THE INSURED'S BUSINESS IS READY FOR PACKAGING, SHIPMENT
OR SALE.

E.   "MERCHANSISE" AS STATED HEREIN SHALL MEAN: GOODS KEPT FOR
SALE BY THE INSURED.

F.   "NORMAL" AS STATED HEREIN SHALL MEAN: THE CONDITION THAT
WOULD HAVE EXISTED HAD NO LOSS OCCURRED.

G.   "RENTAL INCOME" AS STATED HEREIN SHALL MEAN:  THE RENTAL
INCOME DERIVED BY THE INSURED, OR ANY ADDITIONAL INSURED
FOR WHOM THE INSURED HAD AGREED TO PROVIDE RENTAL INCOME
INSURANCE FROM PROPERTY INSURED HEREUNDER DETERMINED
ACCORDING TO BONA FIDE LEASES, CONTRACTS OR AGREEMENTS IN
FORCE, PLUS FAIR RENTAL VALUE OF THOSE PORTIONS OF ANY
PROPERTY INSURED HEREUNDER WHICH ARE OCCUPIED BY THE IN-
SURED OR WHICH ARE WITHOUT ANY OCCUPANT.

5.   SPECIAL EXCLUSIONS:

A.   BUSINESS INTERRUPTION (GROSS EARNINGS) COVERAGE AFFORDED
HEREUNDER SHALL NOT APPLY TO WICKES RETAIL LUMBER DIVISION
LOCATIONS, SEQUOIA SUPPLY, INC., HOME LUMBER COMPANY, LAND
DEVELOPMENT AND BUILDERS EMPORIUM.

B.   THE FOLLOWING IS APPLICABLE TO ALL LOCATIONS EXCEPT LOCA-
TIONS OF BEHLAN MANUFACTURING PLANT IN COLUMBUS, NEBRASKA:

THIS COMPANY SHALL NOT BE LIABLE FOR ANY ORDINARY PAYROLL
EXPENSE DEFINED AS THE ENTIRE PAYROLL EXPENSE FOR ALL
EMPLOYEES OF THE INSURED, EXCEPT OFFICERS, EXECUTIVES,
DEPARTMENT MANAGERS, EMPLOYEES UNDER CONTRACT AND OTHER
IMPORTANT EMPLOYEES.

000025

GENERAL CONDITIONS

APPLYING TO ALL PARTS

1. LIMITS OF LIABILITY: THIS COMPANY SHALL NOT BE LIABLE HEREUNDER FOR MORE THAN $2,500,000 FOR LOSS ARISING FROM ANY ONE OCCURRENCE.

   A. EARTHQUAKE: THE AGGREGATE LIABILITY OF THIS COMPANY FOR LOSS OR DAMAGE BY AN EARTHQUAKE IN ANY ONE POLICY YEAR SHALL NOT EXCEED $2,500,000.

   B. FLOOD: THE AGGREGATE LIABILITY OF THIS COMPANY FOR LOSS OR DAMAGE BY FLOOD IN ANY ONE POLICY YEAR SHALL NOT EXCEED $2,500,000.

2. TERRITORIAL LIMITS: THIS POLICY INSURES PROPERTY ANYWHERE IN THE UNITED STATES OF AMERICA, ITS TERRITORIES AND POSSESSIONS, AND CANADA; AND IN TRANSIT WITHIN AND BETWEEN THE UNITED STATES, ITS TERRITORIES AND POSSESSIONS, AND CANADA.

3. PERILS INSURED: THIS POLICY INSURES AGAINST ALL RISKS OF DIRECT PHYSICAL LOSS FROM ANY CAUSE WHATSOEVER (INCLUDING GENERAL AVERAGE AND SALVAGE CHARGES ON SHIPMENTS COVERED WHILE WATER-BORNE OR AIRBORNE) EXCEPT AS HEREINAFTER EXCLUDED.

   A. WEAR, TEAR, GRADUAL DETERIORATION, LATENT DEFECT OR IN-HERENT VICE, UNLESS OTHER ACCIDENT COVERED HEREIN ENSUES AND THEN ONLY FOR LOSS, DAMAGE OR BUSINESS INTERRUPTION CAUSED BY THE ENSUING ACCIDENT.

   B. INFIDELITY OR ANY DISHONEST ACT ON THE PART OF THE INSURED OR OTHER PARTY OF INTEREST, HIS OR THEIR EMPLOYEES OR AGENTS OR ANY OTHER PERSON OR PERSONS TO WHOM THE PROPERTY MAY BE ENTRUSTED (CARRIERS FOR HIRE EXCEPTED).

   C. LOSS OR SHORTAGE DISCLOSED ON TAKING INVENTORY:

   D. FIRE CAUSED, DIRECTLY OR INDIRECTLY, BY ENEMY ATTACK BY ARMED FORCES, INCLUDING ACTION TAKEN BY MILITARY, NAVAL OR AIR FORCES IN RESISTING AN ACTUAL OR AN IMMEDIATELY IMPENDING ENEMY ATTACK;

000026

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000256

-49-

3. (1) HOSTILE OR WARLIKE ACTION IN TIME OF PEACE OR WAR, INCLUDING ACTION IN HINDERING, COMBATING OR DEFENDING AGAINST AN ACTUAL, IMPENDING OR EXPECTED ATTACK, (a) BY ANY GOVERNMENT OR SOVEREIGN POWER (DE JURE OR DE FACTO) OR BY ANY AUTHORITY MAINTAINING OR USING MILITARY, NAVAL OR AIR FORCES; OR (b) BY MILITARY, NAVAL OR AIR FORCES; OR (c) BY ANY AGENT OR ANY SUCH GOVERNMENT, POWER, AUTHORITY OR FORCES; (2) ANY WEAPON OF WAR EMPLOYING ATOMIC FISSION OR RADIOACTIVE FORCE WHETHER IN TIME OF PEACE OR WAR; (3) INSURRECTION, REBELLION, REVOLUTION, CIVIL WAR, USURPED POWER OR ACTION TAKEN BY GOVERNMENTAL AUTHORITY IN HINDERING, COMBATING OR DEFENDING AGAINST SUCH AN OCCURRENCE, SEIZURE OR DESTRUCTION UNDER QUARANTINE OR CUSTOMS REGULATIONS, CONFISCATION BY ORDER OF ANY GOVERNMENT OR PUBLIC AUTHORITY, OR RISKS OF CONTRABAND OR ILLEGAL TRANSPORTATION OR TRADE;

4. RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE - PHYSICAL DAMAGE - DIRECT: THIS POLICY DOES NOT COVER ANY LOSS OR DAMAGE ARISING DIRECTLY OR INDIRECTLY FROM NUCLEAR REACTION OR NUCLEAR RADIATION OR RADIOACTIVE CONTAMINATION, HOWEVER SUCH NUCLEAR REACTION OR NUCLEAR RADIATION OR RADIOACTIVE CONTAMINATION MAY HAVE BEEN CAUSED. NEVERTHELESS IF FIRE IS AN INSURED PERIL AND A FIRE ARISES DIRECTLY OR INDIRECTLY FROM NUCLEAR REACTION OR NUCLEAR RADIATION OR RADIOACTIVE CONTAMINATION ANY LOSS OR DAMAGE ARISING DIRECTLY FROM THAT FIRE SHALL (SUBJECT TO THE PROVISIONS OF THIS POLICY) BE COVERED EXCLUDING, HOWEVER, ALL LOSS OR DAMAGE CAUSED BY NUCLEAR REACTION OR NUCLEAR RADIATION OR RADIOACTIVE CONTAMINATION ARISING DIRECTLY OR INDIRECTLY FROM THAT FIRE.

5. SELF INSURED RETENTION: THIS COMPANY SHALL NOT BE LIABLE UNLESS THE LOSS EXCEEDS $50,000.00 PER OCCURRENCE AND THEN SHALL BE LIABLE ONLY FOR SUCH LOSS IN EXCESS OF $50,000.00.

(IF MORE THAN ONE EARTHQUAKE SHOCK SHALL OCCUR WITHIN ANY PERIOD OF SEVENTY-TWO (72) HOURS, SUCH EARTHQUAKE SHOCKS SHALL BE DEEMED TO BE A SINGLE EARTHQUAKE AS RESPECTS THE APPLICATION OF THE SELF INSURED RETENTION).

6. DEFINITIONS:

A. THE TERM "OCCURRENCE" AS STATED HEREIN SHALL MEAN: ANY ONE LOSS, DISASTER OR CASUALTY, OR SERIES OF LOSSES, DISASTERS OR CASUALTIES ARISING OUT OF ONE EVENT.

B. THE TERM "FLOOD" AS STATED HEREIN SHALL MEAN: FLOOD, SURFACE WATER, WAVES, TIDAL WATER OR TIDAL WAVE, OVERFLOW OF STREAMS OR OTHER BODIES OF WATER, OR SPRAY FROM ANY OF THE FOREGOING, ALL WHETHER DRIVEN BY WIND OR NOT.

000027

DTSC, et al. v. Jim Dobbas, Inc., et al.

AGO000257

7.   PREMIUM AND PREMIUM ADJUSTMENT CLAUSE: THIS POLICY IS ISSUED FOR
     AND IN CONSIDERATION OF A TOTAL ANNUAL DEPOSIT PREMIUM OF
     $                 DUE AND PAYABLE AS OF INCEPTION DATE OF
     THIS POLICY AND AT EACH ANNIVERSARY DATE THEREAFTER.

     THE INSURED AGREES TO REPORT TO THIS COMPANY, AS SOON AS PRACTI-
     CABLE AFTER EACH ANNIVERSARY, THE TOTAL VALUE OF PROPERTY,
     BUSINESS INTERRUPTION AND RENTAL VALUE AT RISK HEREUNDER (EXCEPT
     PROPERTY IN TRANSIT AND VALUABLE PAPERS AND MEDIA) AS OF THE
     ANNIVERSARY DATE, AND PREMIUM FOR THE ENSUING YEAR WILL BE AD-
     JUSTED ON THE DIFFERENCE BETWEEN SUCH REPORTED VALUES AND THE
     VALUES AS OF THE IMMEDIATELY PRECEDING ANNIVERSARY AT A RATE
     OF $      PER $100.00 OF TOTAL VALUES.  ANY ADDITIONAL OR RETURN
     PREMIUM RESULTING FROM SUCH ADJUSTMENT WILL BE CHARGED OR CREDITED,
     UNLESS THE DIFFERENCE IS LESS THAN FIVE PERCENT (5%) OF THE
     IMMEDIATELY PRECEDING ANNIVERSARY, IN WHICH CASE ADDITIONAL OR
     RETURN PREMIUMS WILL BE WAIVED.

     THE TOTAL VALUE AS OF MAY 15, 1978 IS $811,000,000.00

8.   ERROR OR OMISSION:  IT IS AGREED THAT THIS INSURANCE SHALL NOT BE
     PREJUDICED BY ANY INADVERTENT OMISSION OR UNINTENTIONAL ERROR,
     PROVIDED THAT NOTICE BE GIVEN THIS COMPANY AS SOON AS SAID
     OMISSION OR ERROR BECOMES KNOWN AND DEFICIENCY OF PREMIUM, IF
     ANY, IS PAID.

9.   LOSS CLAUSE: ANY LOSS HEREUNDER SHALL NOT REDUCE THE AMOUNT OF
     THIS POLICY, EXCEPT AS STATED ELSEWHERE IN THIS POLICY REGARDING
     THE ANNUAL AGGREGATE FOR THE PERILS OF EARTHQUAKE AND FLOOD.

10.  CIVIL AUTHORITY:

     A.   IT IS UNDERSTOOD AND AGREED THAT THE PROPERTY INSURED HERE-
          UNDER IS ALSO COVERED AGAINST ACTS OF DESTRUCTION, BY ORDER
          OF ANY CIVIL AUTHORITY, AT THE TIME OF AND FOR THE PURPOSE
          OF PREVENTING THE SPREAD OF FIRE OR DAMAGE BY OTHER CAUSES,
          PROVIDED THAT SUCH FIRE OR DAMAGE BY OTHER CAUSES DID NOT
          ORIGINATE FROM ANY OF THE PERILS EXCLUDED BY THIS POLICY.

     B.   THIS POLICY IS FURTHER EXTENDED TO INCLUDE BUSINESS IN-
          TERRUPTION LOSS AS COVERED HEREIN, SUSTAINED DURING THE PERIOD
          OF TIME, NOT EXCEEDING TWO (2) CONSECUTIVE WEEKS WHEN, AS A
          RESULT OF A DIRECT LOSS OR DAMAGE FROM THE PERILS INSURED
          AGAINST TO THE ADJACENT PROPERTY, ACCESS TO THE PREMISES IS
          PROHIBITED BY ORDER OF CIVIL AUTHORITY.

**000028**

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000258

-51-

11.  ACQUISITION NEGOTIATIONS CLAUSE: THIS POLICY, SUBJECT TO ALL ITS
TERMS AND CONDITIONS, IS TO APPLY TO PROPERTY ON WHICH THE IN-
SURED IS CONDUCTING ACQUISITION NEGOTIATIONS, FROM THE TIME
SUCH NEGOTIATIONS COMMENCE SUBJECT TO THE FOLLOWING CONDITIONS:

A.  TO THE EXTENT POSSIBLE OR CONSIDERED PRUDENT BY THE IN-
SURED, DETAILS OF THE PROPERTY INVOLVED WILL BE SUPPLIED
TO THIS COMPANY IN WRITING.

B.  THIS COVERAGE IS TO APPLY ONLY AS EXCESS OF EXISTING IN-
SURANCE, IF ANY.

C.  IN THE EVENT OF A LOSS, RECOVERY BY THE INSURED WILL BE
LIMITED TO THE AMOUNT ACTUALLY EXPENDED BY THE INSURED
IN REPAIR OR REPLACEMENT OF THE DAMAGED OR DESTROYED PROPERTY.
IN NO EVENT TO EXCEED ACTUAL CASH VALUE OF SAID ACQUISITION,
IF NOT REPAIRED OR REPLACED BY THE INSURED.

D.  AS RESPECTS LOSS OF EARNINGS OR OTHER TIME ELEMENT COVERAGES,
THE AMOUNT OF THE LOSS WILL BE DETERMINED FROM THE DATE OF
ACQUISITION OF THE PROPERTY, OR FROM SUCH PRIOR DATE AS MAY
BE AGREED TO BY THE INSURED AND THIS COMPANY AT THE TIME OF,
OR SUBSEQUENT TO, THE DATE OF LOSS.

IT IS THE INTENT OF THIS EXTENSION TO PROVIDE THE INSURED WITH
COVERAGE TO PROTECT A POSSIBLE LOSS AFTER AN ACQUISITION OF
PROPERTY IS CONSUMATED BUT WHICH RESULTS FROM LOSS OR DAMAGE TO THE
PROPERTY OCCURRING DURING THE PERIOD OF NEGOTIATION AND PRIOR TO
THE ACTUAL ACQUISITION OF THE PROPERTY BY THE INSURED.

12.  JOINT LOSS CLAUSE:  SEE ENDORSEMENT NO. 1.

13.  SUBROGATION WAIVER CLAUSE:  THIS INSURANCE SHALL NOT BE INVALIDATED
SHOULD THE INSURED WAIVE IN WRITING ANY OR ALL RIGHT OF RECOVERY
AGAINST ANY PARTY FOR LOSS, PROVIDED, HOWEVER, THAT IN THE EVENT
THE INSURED WAIVES ONLY A PART OF HIS RIGHTS AGAINST ANY PARTI-
CULAR THIRD PARTY, THIS COMPANY SHALL BE SUBROGATED WITH RESPECT
TO ALL RIGHTS OF RECOVERY WHICH THE INSURED MAY RETAIN AGAINST
ANY SUCH THIRD PARTY FOR LOSS FROM THE PERILS INSURED AGAINST TO
THE EXTENT THAT PAYMENT THEREFOR IS MADE BY THIS COMPANY; ALL
SUBJECT TO THE FOLLOWING ADDITIONAL PROVISIONS:

A.  IF MADE BEFORE LOSS HAS OCCURRED, SUCH AGREEMENT MAY RUN IN
FAVOR OF A THIRD PARTY FALLING WITHIN ONE OF THE FOLLOWING
CATEGORIES AT THE TIME OF LOSS:

080029

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000259

-52-

(1)   A THIRD PARTY INSURED UNDER THIS POLICY: OR

(2)   A CORPORATION, FIRM, OR ENTITY (1) OWNED OR
      CONTROLLED BY THE NAMED INSURED OR IN WHICH
      THE NAMED INSURED OWNS CAPITAL STOCK OR OTHER
      PROPRIETARY INTEREST, OR (2) OWNING OR CON-
      TROLLING THE NAMED INSURED OR OWNING OR
      CONTROLLING CAPITAL STOCK OR OTHER PROPRIETARY
      INTEREST IN THE NAMED INSURED: OR

(3)   A TENANT OF THE NAMED INSURED.

14.   LIBERALIZATION CLAUSE:  IF DURING THE PERIOD THAT INSURANCE
      IS IN FORCE UNDER THIS POLICY, OR WITHIN 45 DAYS PRIOR TO THE
      INCEPTION DATE THEREOF, ON BEHALF OF THIS COMPANY THERE BE
      ADOPTED, OR FILED WITH AND APPROVED OR ACCEPTED BY THE INSURANCE
      SUPERVISORY AUTHORITIES, ALL IN CONFORMITY WITH LAW, ANY CHANGES
      IN THE FORM ATTACHED TO THIS POLICY BY WHICH THIS FORM OF
      INSURANCE COULD BE EXTENDED OR BROADENED WITHOUT INCREASED
      PREMIUM CHARGE BY ENDORSEMENT OR SUBSTITUTION OF FORM, THEN SUCH
      EXTENDED OR BROADENED INSURANCE SHALL INURE TO THE BENEFIT OF THE
      INSURED HEREUNDER AS THOUGH SUCH ENDORSEMENT OR SUBSTITUTION OF
      FORM HAD BEEN MADE.

15.   ACTS OR OMISSIONS CLAUSE:  THIS INSURANCE SHALL NOT BE PREJUDICED
      BY ANY ACTS OR OMISSIONS OF THE OWNER OF THE BUILDING, IF THE
      INSURED IS NOT THE OWNER THEREOF, OR BY ANY ACTS OR OMISSIONS
      ON THE PART OF THE SUB OR OTHER TENANTS, WHEN SUCH ACTS OR
      OMISSIONS ARE NOT WITHIN THE CONTROL OF THE INSURED NAMED HEREIN.

16.   WARRANTY COMPLIANCE CLAUSE: THIS POLICY SHALL NOT BE AFFECTED BY
      FAILURE OF THE INSURED TO COMPLY WITH ANY OF THE WARRANTIES OR
      CONDITIONS ENDORSED ON THIS POLICY IN ANY PORTION OF THE PREMISES
      OVER WHICH THE INSURED HAS NO CONTROL.

17.   IT IS HEREBY AGREED THAT THE TERMS AND CONDITIONS OF THIS FORM
      ARE SUBSTITUTED FOR THOSE OF THE POLICY TO WHICH IT IS ATTACHED,
      THE PROVISIONS OF THE LATTER BEING HEREBY WAIVED, EXCEPT PROVI-
      SIONS REQUIRED BY LAW TO BE INSERTED IN THE POLICY.

18.   WAIVER OF CONDITIONS SUSPENDING OR RESTRICTING INSURANCE: THE
      CONDITIONS IN THIS POLICY THAT THIS COMPANY SHALL NOT BE LIABLE
      FOR LOSS OCCURRING WHILE THE HAZARD IS INCREASED BY ANY MEANS
      WITHIN THE CONTROL OR KNOWLEDGE OF THE INSURED WHETHER INTENDED
      FOR OCCUPANCY BY OWNER OR TENANT, IS VACANT OR UNOCCUPIED BE-
      YONG A PERIOD OF SIXTY (60) CONSECUTIVE DAYS, ARE HEREBY WAIVED.

000030

19. CARRIERS OR BAILEES: THIS INSURANCE SHALL NOT INURE DIRECTLY NOR INDIRECTLY TO THE BENEFIT OF ANY CARRIER, NOR WITHOUT THE AFFIRMATIVE CONSENT OF THE INSURED TO THE BENEFIT OF ANY OTHER BAILEE. NOTWITHSTANDING THE FOREGOING, THE INSURED MAY ACCEPT WITHOUT PREJUDICE TO THIS INSURANCE THE ORDINARY BILLS-OF-LADING USED BY COMMON CARRIERS, INCLUDING RELEASED OR PARTIALLY RELEASED VALUE BILLS-OF-LADING, AND THE INSURED MAY WAIVE SUBROGATION AGAINST RAILROADS UNDER SIDE TRACK AGREEMENTS, AND EXCEPT AS OTHERWISE PROVIDED, THE INSURED SHALL NOT ENTER INTO ANY SPECIAL AGREEMENT WITH ANY CARRIER OTHERWISE RELEASING THEM FOR THEIR COMMON LAW OR STATUTORY LIABILITY. THIS COMPANY SHALL NOT BE LIABLE FOR ANY LOSS OR DAMAGE WHICH, WITHOUT ITS CONSENT, HAS BEEN SETTLED OR COMPROMISED BY THE INSURED.

20. OTHER INSURANCE CLAUSE: THIS POLICY SHALL NOT ATTACH TO OR BECOME INSURANCE UPON ANY PROPERTY COVERED HEREUNDER WHICH AT THE TIME OF LOSS IS SEPARATELY OR MORE SPECIFICALLY INSURED UNDER ANY OTHER POLICY, UNTIL THE LIABILITY OF SUCH SEPARATE OR MORE SPECIFIC INSURANCE HAS FIRST BEEN EXHAUSTED AND SHALL THEN COVER ONLY THE VALUE THEREOF OVER AND ABOVE THE AMOUNT OF SUCH SEPARATE OR MORE SPECIFIC INSURANCE. EXCESS INSURANCE AND INSURANCE WRITTEN ON DIFFERENT TERMS AND CONDITIONS IS PERMITTED.

21. SUE AND LABOR CLAUSE: IF, IN THE EVENT OF LOSS, IT SHALL BE NECESSARY FOR THE INSURED TO USE REASONABLE MEANS TO SAFEGUARD AND RECOVER THE PROPERTY COVERED OR ITS VALUE, WITHOUT PREJUDICE TO THIS INSURANCE, THIS COMPANY WILL CONTRIBUTE TO THE JUST AND REASONABLE CHARGES THEREOF IN SUCH PROPORTION AS THE AMOUNT OF INSURANCE OR LIMIT OF LIABILITY HEREUNDER BEARS TO THE WHOLE VALUE OF THE PROPERTY INVOLVED IN DISASTER AT THE TIME SUCH LOSS SHALL OCCUR. THE ACTS OF EACH PARTY OR THEIR AGENTS IN SAVING, PRESERVING OR RECOVERING THE PROPERTY SHALL NOT BE CONSIDERED OR HELD TO BE EITHER A WAIVER OR AN ACCEPTANCE OF ABANDONMENT.

22. BRANDS AND TRADE MARKS: IN CASE OF DAMAGE TO PROPERTY BEARING A BRAND OR TRADE MARK, OR THE SALE OF WHICH IN ANY WAY CARRIES OR IMPLIES THE GUARANTEE OR THE RESPONSIBILITY OF THE MANUFACTURER OR INSURED, THE SALVAGE VALUE OF SUCH DAMAGED PROPERTY SHALL BE DETERMINED AFTER REMOVAL IN THE CUSTOMARY MANNER OF ALL SUCH BRANDS OR TRADE MARKS OR OTHER IDENTIFYING CHARACTERISTICS.

23. NOTICE OF LOSS CLAUSE: IN THE EVENT OF LOSS OR DAMAGE LIKELY TO BE INSURED AGAINST BY THIS POLICY, THE INSURED SHALL GIVE NOTICE OF LOSS TO THIS COMPANY AS SOON AS PRACTICABLE AFTER KNOWLEDGE OF LOSS IS RECEIVED BY THE SENIOR DIRECTOR OF INSURANCE AND SECURITY IN SAN DIEGO, WHICH IN THE OPINION OF SUCH PARTY IS INSURED HEREUNDER.

**000031**

A.   PERMISSION IS HEREBY GRANTED FOR THE INSURED TO TAKE
     ANY ACTION (1) DEEMED NECESSARY TO PROTECT ITS PROPERTY
     FROM LOSS OR DAMAGE; (2) TO COMMENCE REPAIR OR REPLACEMENT.

B.   THE INSURED AGREES TO ACCOMPLISH REPAIR OR REPLACEMENT
     OF DAMAGED PROPERTY WITH DILIGENCE AND DISPATCH, OR
     DETERMINE, WITHIN   REASONABLE LENGTH OF TIME THAT REPAIR
     OR REPLACEMENT IS NOT TO BE ACCOMPLISHED.

C.   IT SHALL BE NECESSARY FOR THE INSURED TO RENDER A STATE-
     MENT, SIGNED AND SWORN TO, STATING THE KNOWLEDGE AND
     BELIEF OF THE INSURED AS TO THE PLACE, TIME AND CAUSE OF
     THE LOSS OR DAMAGE, THE INTEREST OF THE INSURED AND OF
     ALL OTHERS IN THE PROPERTY, THE VALUE THEREOF AND THE
     AMOUNT OF LOSS OR DAMAGE THEREON.  IN CASE OF FAILURE TO
     FILE WRITTEN PROOFS-OF-LOSS WITHIN NINETY (90) DAYS AFTER
     THE AMOUNT OF THE LOSS BECOMES KNOWN TO THE SENIOR DIRECTOR
     OF INSURANCE AND SECURITY UNLESS SUCH TIME IS EXTENDED IN
     WRITING BY THE INSURER(S), THE CLAIM SHALL BE INVALIDATED.
     UPON THE INSURER'S REQUEST THE INSURED SHALL EXHIBIT THE
     DAMAGED PROPERTY TO THE INSURER(S) AND SUBMIT TO THE EXAMINA-
     TION UNDER OATH BY ANYONE, DESIGNATED BY THE INSURER(S),
     SUBSCRIBE THE SAME AND PRODUCE FOR THE INSURER'S EXAMINATION
     ALL PERTINENT RECORDS AND SALES INVOICES, CERTIFIED COPIES
     IF ORIGINALS BE LOST PERMITTING COPIES THEREOF TO BE MADE,
     ALL AT SUCH REASONABLE TIMES AND PLACES AS THE INSURER(S)
     SHALL DESIGNATE.

24.  ABANDONMENT: THERE SHALL BE NO ABANDONMENT TO THE COMPANY OF
     ANY PROPERTY.

25.  STANDARD MORTGAGE CLAUSE: LOSS OR DAMAGE UNDER THIS POLICY SHALL
     BE PAYABLE TO MORTGAGEES AS PER SCHEDULE ON FILE WITH THE IN-
     SURED AND/OR THIS COMPANY IN ACCORDANCE WITH THE TERMS AND
     CONDITIONS OF THE STANDARD MORTGAGE CLAUSE ACCEPTABLE TO THE
     MORTGAGEES.  IN THE EVENT THE COMPANY ELECTS TO CANCEL THIS
     POLICY, WRITTEN NOTICE OF INTENT TO CANCEL MUST BE MAILED TO
     THE MORTGAGEES SIMULTANEOUSLY WITH THE WRITTEN NOTICE TO THE
     INSURED IN ACCORDANCE WITH THE CANCELLATION CLAUSE PROVISIONS.

26.  CANCELLATION CLAUSE:     THIS POLICY MAY BE CANCELLED AT ANY
     TIME AT THE REQUEST OF THE INSURED OR BY THE COMPANY GIVING
     NINETY (90) DAYS' WRITTEN NOTICE OF INTENT TO CANCEL EXCEPT,
     HOWEVER, IN THE EVENT OF CANCELLATION FOR NONPAYMENT OF PREMIUMS
     UNDER ONE OR MORE PARTS, THE COMPANY SHALL GIVE TEN (10) DAYS'
     WRITTEN NOTICE OF INTENT TO CANCEL THE ENTIRE POLICY, AND

A.   IF CANCELLED AT THE REQUEST OF THE INSURED, THE EARNED
     PREMIUM DUE THIS COMPANY FOR THE TERM THE POLICY HAD BEEN
     IN FORCE SHALL BE COMPUTED BY USING THE CUSTOMARY SHORT
     RATE TABLES.

000032

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000262

B.   IF CANCELLED BY THE COMPANY, THE RETURN PREMIUM DUE THE
     INSURED SHALL BE COMPUTED ON A PRO RATA BASIS.

C.   NOTICE OF CANCELLATION MAILED TO THE LAST KNOWN ADDRESS
     OF THE INSURED AS SHOWN IN THE NOTIFICATION CLAUSE, IF
     ANY, SHALL BE SUFFICIENT NOTICE.

27.  ATTACHMENT CLAUSE: THIS POLICY IS MADE AND ACCEPTED SUBJECT TO
     THE FOREGOING PROVISIONS AND STIPULATIONS WHICH ARE HEREBY MADE
     A PART OF THIS POLICY, TOGETHER WITH SUCH OTHER PROVISIONS,
     STIPULATIONS AND AGREEMENTS AS ARE ENDORSED HEREON OR ADDED
     HERETO, AS PROVIDED IN THIS POLICY.

THE INSURANCE COMPANY(IES) SIGNATORY HERETO
(HEREINBEFORE CALLED THE COMPANY)
EACH FOR ITSELF SEVERALLY BUT NOT JOINTLY DO(ES) INSURE
FOR THE AMOUNT UNDERWRITTEN FOR EACH AND EVERY LOSS
COVERED HEREUNDER AS SET FORTH UNDER THEIR RESPECTIVE
NAMES.

IN WITNESS WHEREOF, THE FOLLOWING COMPANY(IES) EXECUTE AND ATTEST
THESE PRESENTS, AND SUBSCRIBE FOR THE AMOUNT OF PARTICIPATION OF THE
INSURANCE PROVIDED HEREUNDER AS SHOWN:

| PARTICI-PATION | POLICY NUMBER | COMPANY | ANNUAL DEPOSIT PREMIUM |
|---|---|---|---|
| 70% | FI531662 | PURITAN INSURANCE CO. | $607,439 |
|  |  | SIGNATURE | |
| 23% | F6127637 | CENTRAL NATIONAL INSURANCE CO. | $199,587 |
|  |  | SIGNATURE | |
| 4% | F121595 | BELLEFONTE INSURANCE CO. | $ 34,711 |
|  |  | SIGNATURE | |
| 3% | 27314 | MUTUAL FIRE, MARINE & INLAND INS. | $ 26,033 |
|  |  | SIGNATURE | |

000033

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000263

-56-

THE WICKES CORPORATION

ENDORSEMENT NO. 1

IT IS UNDERSTOOD AND AGREED PARAGRAPH # E OF PART I OF THIS FORM
"PROPERTY NOT COVERED" IS CHANGED TO READ:

3.  PROPERTY NOT COVERED:

    E.  SHIPMENTS BY MAIL, WATERBORNE SHIPMENTS ON INTERCOASTAL OR
        OVERSEAS VESSELS OR WHICH IS OTHERWISE INSURED; EXPORT OR
        IMPORT SHIPMENTS WHILE ON AIRCRAFT (EXCEPT TO AND FROM CANADA).

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

| PARTICIPATION | POLICY NUMBER | COMPANY |
|---|---|---|
| 70% | F1531662 | PURITAN INSURANCE COMPANY |
| 23% | F6127637 | CENTRAL NATIONAL INSURANCE CO. |
| 4% | F121595 | BELLEFONTE INSURANCE CO. |
| 3% | 27314 | MUTUAL FIRE, MARINE & INLAND INS. CO. |

**000034**

DTSC, et al. v. Jim Dobbas, Inc., et al.

AGO000264

-57-

THE WICKES CORPORATION

ENDORSEMENT NO. 2

IT IS UNDERSTOOD AND AGREED PARAGRAPH # E OF PART I OF THIS FORM
"PROPERTY NOT COVERED" IS CHANGED TO READ:

3.  PROPERTY NOT COVERED:

    E.  SHIPMENTS BY MAIL, WATERBORNE SHIPMENTS ON INTERCOASTAL OR
        OVERSEAS VESSELS OR WHICH IS OTHERWISE INSURED; EXPORT OR
        IMPORT SHIPMENTS WHILE ON AIRCRAFT (EXCEPT TO AND FROM CANADA).

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

000035

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000265

-58-

THE WICKES CORPORATION

ENDORSEMENT NO. 3

IT IS HEREBY AGREED THAT EFFECTIVE MAY 15, 1978 PARAGRAPH 13, SUBROGATION WAIVER CLAUSE, IS DELETED IN ITS ENTIRETY AND THE FOLLOWING CLAUSE IS SUBSTITUTED IN ITS PLACE:

13.  SUBROGATION WAIVER CLAUSE:

THIS INSURANCE SHALL NOT BE INVALIDATED SHOULD THE INSURED WAIVE IN WRITING ANY OR ALL RIGHT OF RECOVERY AGAINST ANY PARTY FOR LOSS, PROVIDED, HOWEVER, THAT IN THE EVENT THE INSURED WAIVES ONLY A PART OF HIS RIGHT AGAINST ANY PARTICULAR THIRD PARTY, THIS COMPANY SHALL BE SUBROGATED WITH RESPECT TO ALL RIGHTS OF RECOVERY WHICH THE INSURED MAY RETAIN AGAINST ANY SUCH THIRD PARTY FOR LOSS FROM THE PERILS INSURED AGAINST TO THE EXTENT THAT PAYMENT THEREFORE IS MADE BY THIS COMPANY; ALL SUBJECT TO THE FOLLOWING ADDITIONAL PROVISIONS:

(a)  IF MADE BEFORE LOSS HAS OCCURRED, SUCH AGREEMENT MAY RUN IN FAVOR OF ANY THIRD PARTY:

(b)  IF MADE AFTER LOSS HAS OCCURRED, SUCH AGREEMENT MAY RUN ONLY IN FAVOR OF A THIRD PARTY FALLING WITHIN ONE OF THE FOLLOWING CATEGORIES AT THE TIME OF LOSS:

(1)  A THIRD PARTY INSURED UNDER THIS POLICY; OR

(2)  A CORPORATION, FIRM OR ENTITY (a) OWNED OR CONTROLLED BY THE NAMED INSURED OR IN WHICH THE NAMED INSURED OWNS CAPITAL STOCK OR OTHER PROPRIETARY INTEREST, OR (b) OWNING OR CONTROLLING THE NAMED INSURED OR OWNING OR CONTROLLING CAPITAL STOCK OR OTHER PROPRIETARY INTEREST IN THE NAMED INSURED: OR

(3)  A TENANT OF THE NAMED INSURED.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**000036**

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000266

-59-

THE WICKES CORPORATION

PREMIUM INSTALLMENT ENDORSEMENT NO.4

IT IS UNDERSTOOD AND AGREED THAT THE PREMIUM FOR THE COVERAGE AFFORDED HEREUNDER IS $873.306.00  AND IS PAYABLE IN ANNUAL INSTALLMENT AS FOLLOWS:

| INSTALLMENT | DATE DUE | AMOUNT |
|---|---|---|
| INITIAL | 5-15-79 | $291.102.00 |
| SECOND ANNUAL | 5-15-80 | $291.102.00 |
| FINAL | 5-15-81 | $291.102.00 |

000037

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000267

-60-

THE WICKES CORPORATION

ENDORSEMENT NO. 5


IT IS HEREBY UNDERSTOOD AND AGREED THAT PART 1, ITEM 1, PROPERTY COVERED,
IS AMENDED TO READ:

      THIS POLICY COVERS THE INTEREST OF THE INSURED IN ALL
      PROPERTY, INCLUDING BULLION AND MANUSCRIPTS, OWNED IN
      WHOLE OR IN PART BY THE INSURED, OR IN WHICH THE INSURED
      HAS A FINANCIAL INTEREST.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

000038

DTSC, et al. v. Jim Dobbas, Inc., et al.

AGO000268

THE WICKES CORPORATION
ENDORSEMENT #6

IT IS HEREBY AGREED THAT EFFECTIVE 5-15-79 THE FOLLOWING ARE AMENDED:

1.   EXPIRATION DATE FROM 5-15-81 TO 5-15-82.

2.   PARAGRAPH 7 OF GENERAL CONDITIONS TITLED PREMIUM AND PREMIUM
     ADJUSTMENT CLAUSE:

     a)   RATE FROM .107 TO .100
     b)   PREMIUM ADJUSTED ON 90% OF VALUE
     c)   DEPOSIT PREMIUM BASED ON $873,306,000 BEING 90% OF VALUE.

3.   THE FOLLOWING PREMIUM BONUS PLAN IS ADDED TO THE POLICY:

     PREMIUMS ARE SUBJECT TO A THREE YEAR RETURN PREMIUM BONUS PLAN. IF
     THE LOSS RATIO (INCLUDING ADJUSTING EXPENSES) IS UNDER 40% AT THE
     END OF THREE YEARS AND AFTER ALL LOSSES HAVE BEEN PAID, THE COMPANIES
     WILL ALLOW A RETURN PREMIUM EQUAL TO 10% OF THE THREE YEAR EARNED
     PREMIUM. IF THE INSURED CANCELS PRIOR TO THE FULL THREE YEAR TERM
     NO RETURN PREMIUM WOULD BE ALLOWED REGARDLESS OF LOSS RATIO. IF
     THE COMPANY CANCELS, THE COMPANY WOULD ALLOW A RETURN PREMIUM BASED
     ON PAID LOSSES AND EXPENSES AND THE EARNED PREMIUM TO DATE OF
     CANCELLATION.

4.   COMPANY(IES) PARTICIPATION AND ANNUAL DEPOSIT PREMIUMS AS FOLLOWS:

| PARTICIPATION | | | | ANNUAL DEPOSIT |
| OLD | NEW | POLICY # | COMPANY | PREMIUM |
| --- | --- | --- | --- | --- |
| 70% | NIL | F1531662 | PURITAN INS. CO. | NIL |
| 4% | NIL | F121595 | BELLEFONTE INS. CO. | NIL |
| 3% | NIL | 27314 | MUTUAL FIRE, MARINE & INLAND INS. CO. | NIL |
| 23% | 33-1/3% | F6127637 | CENTRAL NATIONAL INS. CO. | |

BY _____  $291,102
        CRAVENS, DARGAN & CO.

| NIL | 33-1/3% | S5007040 | ALLIANZ INS. CO. | |

BY _____  $291,102
   ALLIANZ UNDERWRITERS, INC.
   (BY SHERWOOD INSURANCE SERVICES)

000039

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000269

-62-

NIL  33-1/3% 1016   LLOYDS' LONDON & CERTAIN
               COMPANIES

               BY            $291,102
               SHERWOOD INS. SERVICE

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

000040

## THE WICKES CORPORATION

ENDORSEMENT NO. 7

IT IS HEREBY AGREED THAT EFFECTIVE JUNE 1, 1979, THE FOLLOWING IS ADDED TO PART I · ALL PROPERTY · ITEM 2 · EXTENSIONS OF COVERAGE:

F.    CHARGES MADE BY A FIRE DEPARTMENT OR OTHER ORGANIZA-TION INVOLVED IN THE SAVING OR PROTECTING OF PROPERTY INSURED HEREUNDER.

CENTRAL NATIONAL INS. CO.

by _____
CRAVENS, DARGAN & CO.

ALLIANZ INS. CO.

by _____
ALLIANZ UNDERWRITERS, INC.

LLOYDS' LONDON & CERTAIN COMPANIES

by _____
SHERWOOD INS. SERVICE

**000041**

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000271

-64-

THE WICKES CORPORATION

ENDORSEMENT #8

IN CONSIDERATION OF AN ADDITIONAL PREMIUM AS SHOWN BELOW, IT IS UNDERSTOOD
AND AGREED THAT EFFECTIVE INCEPTION, MORGAN-LINDSAY CO. IS HEREBY INSURED
UNDER THIS POLICY.  VALUES FOR MORGAN-LINDSAY ARE $9,347,479 AND THE DEPOSIT
PREMIUM IS INCREASED BY $11,421.72.

NEW TOTAL VALUES FOR DEPOSIT PREMIUM PURPOSES IS $882,653,479.

COMPANY(IES) PARTICIPATION AND ANNUAL DEPOSIT ADDITIONAL PREMIUM ARE AS
FOLLOWS:

| POLICY NO. | COMPANY | ADDITIONAL PREMIUM |
|---|---|---|
| F6127637 | CENTRAL NATIONAL INSURANCE CO. | $ 3,115.64 |
| S5007040 | ALLIANZ INSURANCE CO. | 3,115.64 |
| 1016 | LLOYDS' AND CERTAIN COMPANIES | 3,115.64 |
| F6127638 | CENTRAL NATIONAL INSURANCE CO. | $   691.60 |
| S5007043 | ALLIANZ INSURANCE CO. | 691.60 |
| 1017 | LLOYDS' AND CERTAIN COMPANIES | 691.60 |

CENTRAL NATIONAL INSURANCE COMPANY.

BY _____
        CRAVENS, DARGAN & CO.

ALLIANZ INSURANCE CO.

BY _____
        ALLIANZ UNDERWRITERS, INC.

LLOYDS' LONDON AND CERTAIN COMPANIES

BY _____
        SHERWOOD INSURANCE SERVICES

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

000042

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000272

-65-

## THE WICKES CORPORATION

### Endorsement No. 9

In consideration of the premium as shown below, it is understood and agreed that effective May 15, 1980, the following are amended:

1. Paragraph 1 of GENERAL CONDITIONS is changed to read as follows:

   1. **LIMITS OF LIABILITY:** This company shall not be liable hereunder for more than $15,000,000 for loss arising from any one occurrence..

      A. **EARTHQUAKE:** The aggregate liability of this company for loss or damage by an earthquake in any one policy year shall not exceed $15,000,000.

      B. **FLOOD:** The aggregate liability of this company for loss or damage by flood in any one policy year shall not exceed $15,000,000.

2. New total value (90%) as of 5/1/80 for deposit premium purposes is $1,005,000,000.

3. The Premium Bonus Plan contained in Endorsement No. 6 is hereby deleted.

4. Paragraph 5 of GENERAL CONDITIONS is changed to read as follows:

   5. **DEDUCTIBLE CLAUSE:** All claims for loss or damage arising out of one occurrence shall be adjusted as one loss and from this amount of each such adjusted loss $50,000 shall be deducted.

      (a) The first $1,000,000 of all insured losses, excess of the above primary deductible, occurring in a single policy year shall be the responsibility of the insured;

      (b) In the event insured losses, excess of the above primary deductible, exceed $1,000,000 in a single policy year, the policy provisions shall apply to such excess for the remainder of that policy year;

         (i) The total amount of insured losses occurring during any one policy year shall be the sum of the actual adjusted losses plus the amount of reserves established for losses in the process of adjustment.

         (ii) At such time as all insured losses occurring in a single policy year are adjusted, if the total amount of adjusted losses is less than $1,000,000, any excess previously paid by the company shall be refunded to it by the insured.

      (c) In the event the company elects to cancel the policy at any time other than on the policy anniversary date, it is agreed the annual aggregate sum of $1,000,000 will be pro-rated and any losses excess of the pro-rate amount will be remitted to the insured by the company.

**000043**

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000273

(d) In the event the insured elects to cancel the policy at any time other than on the policy anniversary date, all losses in the annual aggregate shall be the responsibility of the insured and the earned premium for the policy shall be computed in accordance with the policy provisions;

(e) Adjustment expenses for losses in each $1,000,000 annual aggregate deductible, to a maximum of $5,000.00 shall be the responsibility of the insured.  Loss adjustment expenses in excess of $5,000.00 in a single policy year shall be paid by the company.

(f) In the event recovery of a loss is realized from a third party, the proceeds from such recovery shall be applied first to reduction of the excess aobve the $1,000,000 annual aggregate deductible, if any, and the remainder, if any, shall be due the insured.

Expenses involved in such subrogation endeavor shall be apportioned between the insured and the company in the ratio each will benefit from such endeavor, whether or not any recovery is actually realized.

(If more than one earthquake shock shall occur within any period of seventy-two (72) hours, such earthquake shocks shall be deemed a single earthquake as respects the application of the deductible.)

5. Paragraph 7 of GENERAL CONDITIONS is changed to read as follows:

a.   Rate from $.100 to $.03732.

6. Companies participation and semi-annual deposit premiums as follows:

| Participation | Policy No. | Company | Semi-Annual Deposit Premium |
|---|---|---|---|
| 33-1/3% | F6127637 | Central National Ins. Company | $62,500.00 |
| | | BY: | |
| 33-1/3% | S5007040 | Allianz Insurance Co. | $62,500.00 |
| | | BY: | |
| 3-1/3% | 1016 | Lloyds' of London and Certain Companies | $62,500.00 |
| | | BY: | |

All other terms and conditions remain unchanged.

Dated at San Francisco, California this 12th day of May, 1980.

SHERWOOD INSURANCE SERVICES

By:

**000044**

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000274

-67-

**ENDORSEMENT**                                        **Allianz** 

This policy is reinsured by Munich Reinsurance Company U. S.
Branch.

In the event that Allianz Insurance Company is unable to respond
to the rights of recovery afforded the Insured and Lender due to
financial insufficiency, the Insured and Lender are hereby
granted the same rights of recovery against Munich Reinsurance
Company U. S. Branch as would be granted against Allianz Insurance
Company.

It is however understood that Munich Reinsurance Company U. S.
Branch shall not be subject to duplicate liability.

_____
Hans Raffler ⊢ President
**Munich Reinsurance Company**
**U.S. Branch**

her terms and conditions of this Policy remain unchanged.

information below is required to be completed only when this endorsement is issued subsequent to the policy effective date

**Effective** MAY 15, 1980        this endorsement forms part of Policy Number  S5 00 70 40

of **ALLIANZ INSURANCE COMPANY**

Issued to  WICKES CORPORATION

ement No. 10

_____
AUTHORIZED REPRESENTATIVE

-9606 (2/78)

**000045**

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000275

1000/100.18

## ENDORSEMENT

INSURED  THE WICKES CORPORATION

PRODUCER

THE EFFECTIVE DATE OF THIS ENDORSEMENT IS   DECEMBER 1, 1980

TYPE OF COVERAGE      PER FORM

NO.   11

POLICY NO.   CENTRAL NATIONAL INSURANCE COMPANY   C-612-76-37

RETURN PREMIUM:  $50,850.

IN CONSIDERATION OF THE RETURN PREMIUM SHOWN ABOVE,

IT IS UNDERSTOOD AND AGREED THAT THIS POLICY IS

CANCELLED EFFECTIVE DECEMBER 1, 1980, 12:01 A.M.,

AT THE PLACE OF ISSUANCE.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

CRAVENS, DARGAN & COMPANY

DATED AT   SAN FRANCISCO, CA   THIS   5TH   DAY OF DEC
1980

BY _____
AUTHORIZED REPRESENTATIVE

BID 101 (6/79).

000046

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000276

-69-

**ENDORSEMENT**

INSURED   THE WICKES CORPORATION

NO. ➤ 12

EFFECTIVE DATE OF THIS ENDORSEMENT IS   DECEMBER 1, 1980

POLICY   LLOYDS
NO.   CERT NO. 1016

TYPE OF COVERAGE   PER FORM

RETURN PREMIUM:  $50,850.

IN CONSIDERATION OF THE RETURN PREMIUM SHOWN ABOVE,

IT IS UNDERSTOOD AND AGREED THAT THIS POLICY IS

CANCELLED EFFECTIVE DECEMBER 1, 1980, 12:01 A.M.,

AT THE PLACE OF ISSUANCE.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

SHERWOOD INSURANCE SERVICES

AT   SAN FRANCISCO, CA   THIS   5TH   DAY OF DEC
1980

BY _____
AUTHORIZED REPRESENTATIVE

ORIGINAL ENDORSEMENT

080047

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000277

-70-

100 14

**ENDORSEMENT**

INSURED   NICKLS CORPORATION

NO. ► 13

PRODUCER

ALLIANZ INSURANCE
POLICY   COMPANY
NO.       S-500-70-40

THE EFFECTIVE DATE OF THIS ENDORSEMENT IS   NOVEMBER 15, 1980
TYPE OF COVERAGE       PER FORM

ADDITIONAL PREMIUM:  $62,500.00

IT IS UNDERSTOOD AND AGREED THAT THE SEMI ANNUAL

DEPOSIT PREMIUM, AS DECLARED ON ENDORSEMENT

NUMBER 9, IS DUE AND PAYABLE ON NOVEMBER 15, 1980.

SUBSEQUENT DEPOSIT PREMIUM DUE:  MAY 15, 1981

AMOUNT DUE:  $62,500.00

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS
OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

ALLIANZ UNDERWRITERS, INCORPORATED

DATED
AT SAN FRANCISCO, CA      THIS 14TH      DAY OF OCT
1980

BY _____
AUTHORIZED REPRESENTATIVE

GS 101 (4/79)

**000048**

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000278

1000/100.1

## ENDORSEMENT

INSURED   THE WICKES CORPORATION

PRODUCER

THE EFFECTIVE DATE OF THIS ENDORSEMENT IS   DECEMBER 1, 1980
TYPE OF COVERAGE   PER FORM

NO.   14
ALLIANZ INSURANCE
COMPANY
POLICY
NO.   S-500-70-40


RETURN PREMIUM:  $50,850.

IN CONSIDERATION OF THE RETURN PREMIUM SHOWN ABOVE,

IT IS UNDERSTOOD AND AGREED THAT THIS POLICY IS

CANCELLED EFFECTIVE DECEMBER 1, 1980, 12:01 A.M.,

AT THE PLACE OF ISSUANCE.


NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

ALLIANZ UNDERWRITERS, INCORPORATED

DATED
AT   SAN FRANCISCO, CA   THIS   5TH   DAY OF DEC
1980

BY _____
AUTHORIZED REPRESENTATIVE

BIB 101 (4/78)

000049

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000279

-72-

# Allianz 🏛

## Allianz Underwriters, Inc. ☐
A Stock Company          Los Angeles, California

## ☑ Allianz Insurance Company
A Stock Company          Los Angeles, California

| POLICY NUMBER | PREVIOUS POLICY NO. |
|---|---|
| $ 5 00 70 40 | NEW |

SHERWOOD INSURANCE SERVICES
155 SANSOME STREET, STE. 700
SAN FRANCISCO, CALIF. 94104

**Insured's Name and Mailing Address**

WICKES CORPORATION
1010 2ND AVENUE
SAN DIEGO, CALIFORNIA 92101

**DECLARATIONS**

MAY 15, 1979   MAY 15, 1982   3
Inception (Mo. Day Yr.)   Expiration (Mo. Day Yr.)   Years

It is important that the written portions of all policies covering the same property read exactly alike. If they do not, they should be made uniform at once.

INSURANCE IS PROVIDED AGAINST ONLY THOSE PERILS AND FOR ONLY THOSE COVERAGES INDICATED BELOW BY A PREMIUM CHARGE AND AGAINST OTHER PERILS AND FOR OTHER COVERAGES ONLY WHEN ENDORSED HEREON OR ADDED HERETO.

| AMOUNT | RATE | PREPAID TERM PREMIUM DUE AT INCEPTION | ANNUAL PAYMENT DUE UNDER DEF PREM. PAY. PLAN | PERIL(S) Insured Against and Coverage(s) Provided (Insert Name of Each) |
|---|---|---|---|---|
| $ 833,333.00 | $ VRS | $ | $291,102.00* | FIRE AND LIGHTNING |
| xxxxxxx | $ | $ | $INCLUDED | EXTENDED COVERAGE |
| | $ | $ | $INCLUDED | ALL OTHER PERILS |
| | $ | $ | $ | |

| $873,306.00 TOTAL PREMIUM FOR POLICY TERM UNDER D.P.P.P. | TOTAL(S) $ | $291,102.00* |
|---|---|---|

*SEE ENDORSEMENT NO.4 ATTACHED

| Item No. | Amount Flat or Rate and Extended Coverage, or Other Peril | Per Cent of Co-Insurance Applicable | DESCRIPTION AND LOCATION OF PROPERTY COVERED Show construction, type of roof and occupancy of building covered or containing the property covered. If occupied as a dwelling state number of families. |
|---|---|---|---|
| 1. | $833,333.00 PART OF $2,500,000.00 | | ON ALL REAL, PERSONAL PROPERTY, BUSINESS INTERRUPTION, CONTINGENT BUSINESS INTERRUPTION, EXTRA EXPENSE, RENTAL INCOME, ACCOUNTS RECEIVABLE, VALUABLE PAPERS AND MEDIA, AS PER FORMS AND ENDORSEMENTS ATTACHED. |

**A&B.—Total Insurance—See form attached—Item 1, $                ; Item 2, $                ; Item 3, $                ; Item 4, $

B.-C.—Valuation Clause—See form attached—Item  , $                ; Item  , $                ; Item  , $                ; Item  , $

Subject to Form No(s). MANUSCRIPT FORM: ENDT. NO. 1-6 INCLUSIVE (AND EDITION DATE(S))                attached hereto.

Mortgage Clause: Subject to the provisions of the mortgage clause attached hereto, loss, if any, on building items, shall be payable to:

INSERT NAME(S) OF MORTGAGEE(S) AND MAILING ADDRESS(ES)

Countersignature Date JULY 3, 1979                *Henry Kidd Jr.*

**IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO**
AND OF the premium above specified, this Company, for the term of years specified above from inception date shown above At 12:01 A.M. (Standard Time) to expiration date shown above At 12:01 A.M. (Standard Time) at location of property involved, to an amount not exceeding the amount(s) above specified, does insure the insured named above and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described herein while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of this Company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

000050

**Concealment**
**fraud.** This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circum- concerning this insurance or the subject thereof, or the est of the insured therein, or in case of any fraud or false swearing by the insured relating thereto

**Uninsurable**
**and**
**accepted property.** This policy shall not cover accounts, bills, currency, deeds, evidences of debt, money or securities, nor, unless specifically named herein in writing, bullion or manuscripts.

**Perils not**
**included.** This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by: (a) enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; (b) invasion; (c) insurrection; (d) rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this policy; (i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in neighboring premises; (j) nor shall this Company be liable for loss by theft.

**Other insurance.** Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto

**Conditions** suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring

(a) while the hazard is increased by any means within the control or knowledge of the insured; or

(b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days; or

(c) as a result of explosion or riot, unless fire ensue, and in that event for loss by fire only.

**Other perils**
**or subjects.** Any other peril to be insured against or subject of insurance to be covered in this policy shall be by endorsement in writing hereon or added hereto.

**Added provisions.** The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy is subject to change.

**Waiver**
**provisions.** No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this Company relating to appraisal or to any examination provided for herein.

**Cancellation**
**of policy.** This policy may be cancelled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by this Company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand.

**Mortgagee**
**interests and**
**obligations.** If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee a ten days' written notice of cancellation.

If the insured fails to render proof of loss such mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If this Company shall claim that no liability as existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions

**Pro rata** liability. This Company shall not be liable for a greater proportion of any loss than the amount hereby red shall bear to the whole insurance covering the property against the peril involved, whether collectible or not

**Requirements in** case loss occurs. The insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged. The insured as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made.

**Appraisal.** In case the insured and this Company shall fail to agree as to the actual cash value or amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

**Company's**
**options.** It shall be optional with this Company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within thirty days after the receipt of the proof of loss herein required.

**Abandonment.** There can be no abandonment to this Company of any property.

**When loss**
**payable.** The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company as pressed in writing or by the filing with this Company of an award as herein provided

**Suit.** No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.

**Subrogation.** This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company

In Witness Whereof, the company has caused this policy to be executed and attested but this policy shall not be valid unless countersigned by a duly authorized representative of the company

**Allianz Underwriters, Inc.**                    **Allianz Insurance Company**

Secretary          Pr   nt                     Secretary          esident

000051

═══ California Standard Form Fire Insurance Policy ═══

LOAN NO. _____  BR CH NO._____ DUR NO._____

No. F   612 76 37                                       A STOCK COMPANY

# THE CENTRAL NATIONAL INSURANCE COMPANY
## OF OMAHA, NEBRASKA

Insured's Name and Mailing Address

- THE WICKES CORPORATION
  110 WEST A STREET
  SAN DIEGO, CALIFORNIA 92101

5/15/78      5/15/81      3 Years

It is important that the written portions of all policies covering the same property read exactly alike. If they do not, they should be made uniform at once.
INSURANCE IS PROVIDED AGAINST ONLY THOSE PERILS AND FOR ONLY THOSE COVERAGES INDICATED BELOW BY A PREMIUM CHARGE AND AGAINST OTHER PERILS AND FOR OTHER COVERAGES ONLY WHEN ENDORSED HEREON OR ADDED HERETO.

| AMOUNT | RATE | PREPAID TERM PREMIUM DUE AT INCEPTION | ANNUAL PAYMENT DUE UNDER DEF. PREM. PAY. PLAN | PERIL(S) Insured Against and Coverage(s) Provided (Insert Name of Each) |
|---|---|---|---|---|
| SEE BELOW $ | .107 | $ | $  199,587 | FIRE AND LIGHTNING |
| xxxxxxx  $ | INC. | $ | $  INC. | EXTENDED COVERAGE |
| $ | INC. | $ | $  INC. | ALL RISK |
| $ | | $ | $ | |
| $  598,761 TOTAL PREMIUM | | TOTAL(S) $ | $  199,587 | |

POLICY TERM UNDER D P P P

$ 575,000 N/A
PART OF
2,500,000.

DESCRIPTION AND LOCATION OF PROPERTY COVERED

AS PER FORM

MANUSCRIPT FORM END. 1 & 2                          attached hereto.

Mortgage Clause: Subject to the provisions of the mortgage clause attached hereto, loss, if any, on building items, shall be payable to:

Agency at   SAN FRANCISCO, CALIFORNIA

CRAVENS, DARGAN & COMPANY

6/15/78LME                BY _____ Agent

IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO AND OF the above specified dollars premium, this Company, for the term of years specified above from inception date shown above At Noon (Standard Time) at location of property involved, to an amount not exceeding the above specified dollars, does insure the named named above and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, AGAINST ALL LOSS BY FIRE, LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described herein while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of this Company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

000052   CN2478 REV.10-68

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000282

-75-

1 **Concealment, fraud.** This entire policy ll be void if whether
2 before or after a loss, the insured ha fully concealed or mis-
3 represented any material fact or circumstance concerning this
4 insurance or the subject thereof, or the interest of the insured
5 therein, or in case of any fraud or false swearing by the insured
6 relating thereto.
7 **Uninsurable and excepted property.** This policy shall not cover
8 accounts, bills, currency, deeds, evidences of debt, money or
9 securities; nor, unless specifically named herein in writing,
10 bullion or manuscripts.
11 **Perils not included.** This company shall not be liable for loss by
12 fire or other perils insured against in this policy caused, directly
13 or indirectly, by: (a) enemy attack by armed forces, including
14 action taken by military, naval or air forces in resisting an actual
15 or an immediately impending enemy attack; (b) invasion;
16 (c) insurrection; (d) rebellion; (e) revolution; (f) civil war;
17 (g) usurped power; (h) order of any civil authority except acts
18 of destruction at the time of and for the purpose of preventing the
19 spread of fire, provided that such fire did not originate from any
20 of the perils excluded by this policy; (i) neglect of the insured to
21 use all reasonable means to save and preserve the property at
22 and after a loss, or when the property is endangered by fire in
23 neighboring premises; (j) nor shall this company be liable for
24 loss by theft.
25 **Other Insurance.** Other insurance may be prohibited or the
26 amount of insurance may be limited by endorsement attached
27 hereto.
28 **Conditions suspending or restricting insurance.** Unless otherwise
29 provided in writing added hereto this company shall not be liable
30 for loss occurring (a) while the hazard is increased by any
31 means within the control or knowledge of the insured; or (b)
32 while a described building, whether intended for occupancy by
33 owner or tenant, is vacant or unoccupied beyond a period of
34 60 consecutive days; or (c) as a result of explosion or riot,
35 unless fire ensue, and in that event for loss by fire only.
36 **Other perils or subjects.** Any other peril to be insured against
37 or subject of insurance to be covered in this policy shall be by
38 endorsement in writing hereon or added hereto.
39 **Added provisions.** The extent of the application of insurance
40 under this policy and of the contribution to be made by this com-
41 pany in case of loss, and any other provision or agreement not in-
42 consistent with the provisions of this policy, may be provided for
43 in writing added hereto, but no provision may be waived except
44 such as by the terms of this policy or by statute is subject to
45 change.
46 **Waiver provisions.** No permission affecting this insurance shall
47 exist, or waiver of any provision be valid, unless granted herein
48 or expressed in writing added hereto. No provision, stipulation
49 or forfeiture shall be held to be waived by any requirement or
50 proceeding on the part of this company relating to appraisal or
51 to any examination provided for herein.
52 **Cancellation of policy.** This policy may be canceled at any time
53 at the request of the insured, in which case this company shall,
54 upon demand and surrender of this policy, refund the excess of
55 paid premium above the customary short rates for the expired
56 time. This policy may be canceled at any time by this company
57 by giving to the insured a five days' written notice of cancellation
58 with or without tender of the excess of paid premium above the
59 pro rata premium for the expired time, which excess, if not ten-
60 dered, shall be refunded on demand. Notice of cancellation
61 shall state that said excess premium (if not tendered) will be
62 refunded on demand.
63 **Mortgage interests and obligations.** If loss hereunder is made
64 payable, in whole or in part, to a designated mortgagee not
65 named herein as the insured, such interest in this policy may be
66 canceled by giving to such mortgagee a 10 days' written notice
67 of cancellation.
68 If the insured fails to render proof of loss such mortgagee, upon
69 notice, shall render proof of loss in the form herein specified
70 within sixty (60) days thereafter and shall be subject to the pro-
71 visions hereof relating to appraisal and time of payment and of
72 bringing suit. If this company shall claim that no liability existed
73 as to the mortgagor or owner, it shall, to the extent of payment
74 of loss to the mortgagee, be subrogated to all the mortgagee's
75 rights of recovery, but without impairing mortgagee's right to
76 sue; or it may pay off the mortgage debt and require an assign-
77 ment thereof and of the mortgage. Other provisions relating to
78 the interests and obligations of such mortgagee may be added
79 hereto by agreement in writing.

80 **Pro rata liability.** s company shall not be liable for a
81 greater proportio f any loss than the amount hereby insured
82 shall bear to the whole insurance covering the property against
83 the peril involved, whether collectible or not
84 **Requirements in case loss occurs.** The insured shall give writ-
85 ten notice to this company of any loss without unnecessary de-
86 lay, protect the property from further damage forthwith sepa-
87 rate the damaged and undamaged personal property, put it in
88 the best possible order, furnish a complete inventory of the de-
89 stroyed, damaged and undamaged property, showing in detail
90 quantities, costs, actual cash value and amount of loss claimed,
91 and within 60 days after the loss, unless such time is extended
92 in writing by this company, the insured shall render to this com-
93 pany a proof of loss, signed and sworn to by the insured, stating
94 the knowledge and belief of the insured as to the following: the
95 time and origin of the loss, the interest of the insured and of all
96 others in the property, the actual cash value of each item thereof
97 and the amount of loss thereto, all encumbrances thereon, all
98 other contracts of insurance, whether valid or not, covering any
99 of said property, any changes in the title, use, occupation, loca-
100 tion, possession or exposures of said property since the issuing of
101 this policy, by whom and for what purpose any building herein
102 described and the several parts thereof were occupied at the
103 time of loss and whether or not it then stood on leased ground,
104 and shall furnish a copy of all the descriptions and schedules in
105 all policies and, if required and obtainable, verified plans and
106 specifications of any building, fixtures or machinery de-
107 stroyed or damaged. The insured, as often as may be reason-
108 ably required, shall exhibit to any person designated by this
109 company all that remains of any property herein described, and
110 submit to examinations under oath by any person named by this
111 company, and subscribe the same; and, as often as may be rea-
112 sonably required, shall produce for examination all books of
113 account, bills, invoices and other vouchers, or certified copies
114 thereof if originals be lost, at such reasonable time and place as
115 may be designated by this company or its representative, and
116 shall permit extracts and copies thereof to be made.
117 **Appraisal.** In case the insured and this company shall fail to
118 agree as to the actual cash value or the amount of loss, then, on
119 the written demand of either, each shall select a competent and
120 disinterested appraiser and notify the other of the appraiser
121 selected within 20 days of such demand. The appraisers
122 shall first select a competent and disinterested umpire, and fail-
123 ing for 15 days to agree upon such umpire, then, on request of
124 the insured or this company, such umpire shall be selected by a
125 judge of a court of record in the state in which the property cov-
126 ered is located. The appraisers shall then appraise the loss,
127 stating separately actual cash value and loss to each item; and,
128 failing to agree, shall submit their differences, only, to the um-
129 pire. An award in writing, so itemized, of any two when filed
130 with this company shall determine the amount of actual cash
131 value and loss. Each appraiser shall be paid by the party
132 selecting him and the expenses of appraisal and umpire shall
133 be paid by the parties equally.
134 **Company's options.** It shall be optional with this company to
135 take all, or any part, of the property at the agreed or appraised
136 value, and also to repair, rebuild or replace the property
137 destroyed or damaged with other of like kind and quality
138 within a reasonable time, on giving notice of its intention so to
139 do within 30 days after the receipt of the proof of loss herein
140 required.
141 **Abandonment.** There can be no abandonment to this com-
142 pany of any property.
143 **When loss payable.** The amount of loss for which this com-
144 pany may be liable shall be payable 60 days after proof of
145 loss, as herein provided, is received by this company and ascer-
146 tainment of the loss is made either by agreement between the
147 insured and this company expressed in writing or by the filing
148 with this company of an award as herein provided.
149 **Suit.** No suit or action on this policy for the recovery of any
150 claim shall be sustainable in any court of law or equity unless
151 all the requirements of this policy shall have been complied
152 with, and unless commenced within 12 months next after
153 inception of the loss.
154 **Subrogation.** This company may require from the insured
155 an assignment of all right of recovery against any party for
156 loss to the extent that payment therefor is made by this
157 company.

**IN WITNESS WHEREOF,** this company has executed and attested these presents; but this policy shall not be valid unless coun-
tersigned by the duly authorized agent of this company at the agency hereinbefore mentioned.

_E. Benjamin Nelson_
Secretary

_Donald J. Sleezer_
President

**000053**

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000283

-76-

GENERAL ENDORSEMENT

PARTICIPATION CLAUSE

IT IS AGREED THIS COMPANY'S PARTICIPATION HEREUNDER IS $575,000

(23%) PART OF $2,500,000.  THIS COMPANY SHALL PARTICIPATE IN

LOSSES HEREUNDER TO THAT PROPORTION NOT TO EXCEED $575,000.00

IN ANY ONE OCCURRENCE.

Nothing herein contained shall vary, alter, waive or extend any of the terms, representations, conditions or agreements of the policy other than as above stated.

to be attached to and forming a part of Policy No. _____ F 612 76 37 _____ of the _____

CENTRAL NATIONAL INSURANCE COMPANY

Issued to   THE WICKES CORPORATION

Location No. _____

Endorsement No.  2 _____   Effective _____ 5/15/78 _____

CRAVENS, DARGAN & COMPANY

By _____ Agent

F 60 SC(SCM 9-77)

000054

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000284

-77-

FU-60 SC(50M 4-78

### GENERAL ENDORSEMENT

IT IS HEREBY AGREED THAT THE
INSURED'S MAILING ADDRESS IS
AMENDED TO READ:

1010 2nd.AVENUE
SAN DIEGO, CA  92101

Nothing herein contained shall vary, alter, waive or extend any of the terms, representations, conditions or agreements of the policy other than as above stated.

To be attached to and forming a part of Policy No. __P 612 76 37_____ of the _____

### CENTRAL NATIONAL INSURANCE COMPANY

Issued to ____THE WICKES CORPORATION ETAL_____

Section No. _____

Endorsement No. ___4____   Effective ___11-7-78____

By _____ Agent

000055

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO0000285

-78-

S.P. FORM

188
Jan. 1972

## EFFECTIVE TIME ENDORSEMENT

(For Use As Required With Policies Issued On or After Jan. 1, 1972 To Comply With Section 460 of the California Insurance Code or ORS 743.609 of the Oregon Insurance Code)

Except as hereinafter provided, this policy shall be effective and shall terminate at 12:01 A.M. (Standard Time) on the inception and expiration dates specified in this policy.

TO THE EXTENT ONLY THAT THE INSURANCE AFFORDED BY THIS POLICY IS ALSO PRO-VIDED BY OTHER INSURANCE TERMINATING AT NOON ON THE INCEPTION DATE OF THIS POLICY, INSURANCE UNDER THIS POLICY SHALL NOT BECOME EFFECTIVE UNTIL SUCH OTHER INSURANCE HAS TERMINATED.

188
1972

**000056**

THE WICKES CORPORATION

Endorsement No. 9

In consideration of the premium as shown below, it is understood and agreed that effective May 15, 1980, the following are amended:

1.  **Paragraph 1 of GENERAL CONDITIONS** is changed to read as follows:

    1.  <u>LIMITS OF LIABILITY</u>:  This company shall not be liable hereunder for more than $15,000,000 for loss arising from any one occurrence..

        A.  <u>EARTHQUAKE</u>:  The aggregate liability of this company for loss or damage by an earthquake in any one policy year shall not exceed $15,000,000.

        B.  <u>FLOOD</u>:  The aggregate liability of this company for loss or damage by flood in any one policy year shall not exceed $15,000,000.

2.  New total value (90%) as of 5/1/80 for deposit premium purposes is $1,005,000,000.

3.  The Premium Bonus Plan contained in Endorsement No. 6 is hereby deleted.

4.  Paragraph 5 of GENERAL CONDITIONS is changed to read as follows:

    5.  <u>DEDUCTIBLE CLAUSE</u>:  All claims for loss or damage arising out of one occurrence shall be adjusted as one loss and from this amount of each such adjusted loss $50,000 shall be deducted.

        (a)  The first $1,000,000 of all insured losses, excess of the above primary deductible, occurring in a single policy year shall be the responsibility of the insured;

        (b)  In the event insured losses, excess of the above primary deductible, exceed $1,000,000 in a single policy year, the policy provisions shall apply to such excess for the remainder of that policy year;

            (i)  The total amount of insured losses occurring during any one policy year shall be the sum of the actual adjusted losses plus the amount of reserves established for losses in the process of adjustment.

            (ii)  At such time as all insured losses occurring in a single policy year are adjusted, if the total amount of adjusted losses is less than $1,000,000, any excess previously paid by the company shall be refunded to it by the insured.

        (c)  In the event the company elects to cancel the policy at any time other than on the policy anniversary date, it is agreed the annual aggregate sum of $1,000,000 will be pro-rated and any losses excess of the pro-rate amount will be remitted to the insured by the company.

**000057**

(d)   In the event the insured elects to cancel the policy at any time other than on the policy anniversary date, all losses in the annual aggregate shall be the responsibility of the insured and the earned premium for the policy shall be computed in accordance with the policy provisions;

(e)   Adjustment expenses for losses in each $1,000,000 annual aggregate deductible, to a maximum of $5,000.00 shall be the responsibility of the insured.  Loss adjustment expenses in excess of $5,000.00 in a single policy year shall be paid by the company.

(f)   In the event recovery of a loss is realized from a third party, the proceeds from such recovery shall be applied first to reduction of the excess aobve the $1,000,000 annual aggregate deductible, if any, and the remainder, if any, shall be due the insured.

Expenses involved in such subrogation endeavor shall be apportioned between the insured and the company in the ratio each will benefit from such endeavor, whether or not any recovery is actually realized.

(If more than one earthquake shock shall occur within any period of seventy-two (72) hours, such earthquake shocks shall be deemed a single earthquake as respects the application of the deductible.)

5.   Paragraph 7 of GENERAL CONDITIONS is changed to read as follows:

a.   Rate from $.100 to $.03732.

6.   Companies participation and semi-annual deposit premiums as follows:

| Participation | Policy No. | Company | Semi-Annual Deposit Premium |
|---|---|---|---|
| 33-1/3% | F6127637 | Central National Ins. Company | $62,500.00 |
| | | BY: _____ | |
| 33-1/3% | S5007040 | Allianz Insurance Co. | $62,500.00 |
| | | BY: _____ | |
| 33-1/3% | 1016 | Lloyds' of London and Certain Companies | $62,500.00 |
| | | BY: _____ | |

All other terms and conditions remain unchanged.

Dated at San Francisco, California this 12th day of May, 1980.

SHERWOOD INSURANCE SERVICES

By: _____

000058

**ENDORSEMENT**

INSURED  WICKES CORPORATION

NO. ➤ 10

CENTRAL NATIONAL
INSURANCE COMPANY

POLICY
NO.   F-612-76-37

PRODUCER
THE EFFECTIVE DATE OF THIS ENDORSEMENT IS NOBEMBER 15, 1980
TYPE OF COVERAGE    PER FORM

ADDITIONAL PREMIUM:  $62,500.00

IT IS UNDERSTOOD AND AGREED THAT THE SEMI ANNUAL

DEPOSIT PREMIUM, AS DECLARED ON ENDORSEMENT

NUMBER 9, IS DUE AND PAYABLE ON NOVEMBER 15, 1980.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS
OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

CRAVENS, DARGAN AND COMPANY

DATED
AT    SAN FRANCISCO, CA    THIS 14TH    DAY OF   OCT    BY
                                                  1980

AUTHORIZED REPRESENTATIVE

SIB 101 (4/78)

000059

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000289

-82-

**ENDORSEMENT**

THE WICKES CORPORATION

FRANK B. HALL & COMPANY, LOS ANGELES

EFFECTIVE DATE OF THIS ENDORSEMENT IS     MAY 15, 1978

OF COVERAGE PROPERTY

NO. 

POLICY
NO 76127637
CENTRAL NATIONAL INS. CO.

IT IS HEREBY UNDERSTOOD AND AGREED THAT PART 1, ITEM 1, PROPERTY COVERED,
IS AMENDED TO READ:

THIS POLICY COVERS THE INTEREST OF THE INSURED IN ALL
PROPERTY, INCLUDING BULLION AND MANUSCRIPTS, OWNED IN
WHOLE OR IN PART BY THE INSURED, OR IN WHICH THE INSURED
HAS A FINANCIAL INTEREST.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS
OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

SHERWOOD INSURANCE SERVICES

DATED SAN FRANCISCO, CA        24TH JANUARY 1979
AT                             THIS        DAY OF        BY
                                                        AUTHORIZED REPRESENTATIVE

101 (6/78)

000060

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO0000290

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | CASE NUMBER |
|---|---|
| LLINS & AIKMAN GROUP, INC.,<br>                    Plaintiff,<br><br>LIANZ INSURANCE COMPANY, et al.,<br>                    Defendants. | **CERTIFICATE OF ASSIGNMENT** |

All civil actions or proceedings presented for filing must be accompanied by this certificate.

The undersigned declares that the above entitled matter is filed for proceedings in the District of the Los Angeles Superior Court under Section 392 et seq., Code of Civil Procedure and Rule 300 Sections 3 and 4 of this court for the reasons checked below.

The address of the accident, performance, party, detention, place of business, or other factor which qualifies this case for filing in the above designated district is:

COLLINS & AIKMAN GROUP, INC., Plaintiff,   3340 Ocean Park Blvd., Suite 2000
(NAME – INDICATE TITLE OR OTHER QUALIFYING FACTOR)                              (ADDRESS)

Santa Monica                   California                   90405
(CITY)                         (STATE)                      (ZIP CODE)

| | NATURE OF ACTION | GROUND |
|---|---|---|
| ☐ 1 | Abandonment | Petitioner resides within the district |
| ☐ 2 | Adoption | Petitioner resides within the district |
| ☐ 3 | Adoption | Consent to out-of-state adoption, consentor resides within the district |
| ☐ 4 | Appeal from Labor<br>Commission Decision | Labor hearing was held within the district |
| ☐ 5 | Conservator | Petitioner or conservatee resides within the district |
| ☐ 6 | Contract | Performance in the district is expressly provided for |
| ☒ 7 | Equity | The cause of action arose within the district |
| ☐ 8 | Eminent Domain | The property is located within the district |
| ☐ 9 | Family Law | One or more of the party litigants resides within the district |
| ☐ 10 | Forcible Entry | The property is located within the district |
| ☐ 11 | Guardianship | Petitioner or ward resides within the district |
| ☐ 12 | Habeas Corpus | No action pending, the person is held within the district |
| ☐ 13 | Mandate* | The defendant functions wholly within the district |
| ☐ 14 | Name Change | The petitioner resides within the district |
| ☐ 15 | Personal Property | The property is located within the district |
| ☐ 16 | Probate | Decedent resided or petitioner resides within the district |
| ☐ 17 | Prohibition* | The defendant functions wholly within the district |
| ☐ 18 | Review* | The defendant functions wholly within the district |
| ☐ 19 | Small Claims Appeal | The lower court is located within the district |
| ☐ 20 | Title to Real Property | The property is located within the district |
| ☒ 21 | Tort | The cause of action arose within the district |
| ☐ 22 | Tort | One or more defendant(s) reside within the district |
| ☐ 23 | Transferred Action | The lower court is located within the district |
| ☐ 24 | Unlawful Detainer | The property is located within the district |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and this declaration was executed on September 25, 1992 at   Newport Beach  , California.

| THE COURT MAY IMPOSE SANCTIONS OR OTHER PENALTIES<br>FOR FAILURE TO FILE IN THE PROPER DISTRICT | _____<br>JEFFREY E. THOMAS   (SIGNATURE OF ATTORNEY) |
|---|---|

*Prerogative writs concerning a court of inferior jurisdiction shall be filed in Central District.

RULE 300 LASCA

**CERTIFICATE OF ASSIGNMENT**        000061

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000291

# CERTIFICATE OF SERVICE

Case Name: *California Department of Toxic Substances Control, et al. v. Jim Dobbas, Inc. et al*

Case No.:    **2:14-cv-00595-WBS-EFB**

I certify that on October 2, 2014, I electronically filed the following document(s) with the Clerk of the Court by using the CM/ECF system:

**DECLARATION OF LESTER O. BROWN IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT AGAINST COLLINS & AIKMAN PRODUCTS, LLC**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am a partner of the law firm of Perkins Coie, LLP, a member of the California State Bar, and admitted in this district.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at Perkins Coie LLP for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at Perkins Coie LLP is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users.  On October 2, 2014, I have caused to be mailed in Perkins Coie LLP's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, to the following non-CM/ECF participants:

David Van Over
216 F Street, #108
Davis, CA  95616

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 2, 2014, at Los Angeles, California


_____          _____
          Lester O. Brown                                    /s/ Lester O. Brown
              Declarant                                                Signature