Exhibit B

 


DOUGLAS L. ZALLEY
Assistant Vice President
and Corporate Counsel

September 6, 1991

Ms. Lisa Shaw
Environmental Claims Management
CIGNA Property and Casualty Companies
1600 Arch Street
Philadelphia, PA  19103


RECE[IVED]
SEP 0 9 19[..]
MAJOR CLA[IMS]

RE:  Insured:  Wickes Companies, Inc.
     Site    :  Elmira, CA
     File #  :  717 L 770151-8

Dear Ms. Shaw:

Risk International Services, Inc. has been retained by Wickes Companies, Inc. to handle the above-referenced claim. On behalf of the insured, I am responding to your letter dated January 25, 1991. By accepting your letter, the insured does not restrict, limit or waive any of its rights and defenses, but specifically reserves them under its policies of insurance and all applicable law. I have provided a general response to your inquiries below.

1. Description of Elmira facility:

The facility at the Elmira site was previously owned by Pacific Wood Preserving Corporation and was acquired by Wickes on September 12, 1979, and eventually became part of Wickes Forest Industries. Wickes Forest Industries was a wholly-owned subsidiary of the Wickes Corporation, the named insured. Operations at the site were discontinued in 1982. The business consisted of wood preservation and treatment.

2. Relationship that Wickes has with the Elmira site:

Wickes acquired the site from Pacific Wood Preserving Corporation in an asset sale on September 12, 1979. Wickes owned and operated the Elmira plant from 1979 until the plant closed in 1982.

780 Montrose West Avenue    Suite 160    Akron, OH 44321-2786    (216) 666-2566    Fax (216) 666-0842

CN 0154

DEFENDANT'S EXHIBIT 14

00292
000825

Ms. Lisa Shaw
Page 2
September 6, 1991

3. Description of types of wastes generated:

A spill at the Elmira Facility occurred on November 7, 1980. The water supply valve did not close on the "automatic control" system from the previous night. This water flowed into the empty mixing tank (about 1-1/2 feet of sludge on bottom of tank) and it overflowed at about two or three in the morning. The concrete containment well diverted the overflow to the sump which pumped the water to another empty tank. The concrete containment well leaked at the base of the second tank and the water flowed into the retail yard. It then travelled about 150 feet along the "A" street ditch both east and west of the plant entrance. The overflow was noticed at 5:00 a.m. and stopped at 5:15 a.m.

The yard area west of the plant showed levels of contamination and monitoring wells indicate some groundwater contamination.

The IT Corporation pumped about 6,000 gallons back into the tanks. It is difficult to determine how much water overflowed, but a rough estimate is not more than 12,000 gallons.

Site contamination arose from other operational spills, releases or discharges before, during and after the policy period. Investigation is continuing and information will be updated in the future.

4. Extent of contamination:

Remediation efforts include (1) the removal of contaminated soils and concrete, (2) capping of the contaminated soil area to prevent further release of contamination into the groundwater, (3) construction and operation of a treatment system to remove chromates and other hazardous materials from the groundwater. Ongoing monitoring to locate additional plumes and sources of contamination continues.

5. Documents (schedule of insurance) pertaining to coverage years between 1970 and 1984:

The insurers noticed on the Elmira facility claim are listed in the attached Exhibit "A".


Risk International

CN 0155

00293

000826

6. Period of releases:

Releases by Pacific Wood Preserving Corporation, predecessor to Wickes Forest Industries, apparently occurred prior to the date of and subsequent to Wickes Forest Industries' acquisition of the site further releases occurred. See response to number 3.

7. Materials released at Elmira site:

See response to number 3. Apparently, chromates used as a wood preservative were also released onto the soil.

8. Contamination first discovered:

Some degree of contamination was identified prior to Wickes' acquisition of the plant in 1979. The date of discovery by the plant predecessor is unknown. Additional contamination occurred after the acquisition and was discovered to some extent by February 26, 1984 when Wickes entered a Consent Decree with the California Department of Health Services.

9. Forward copies of reports, correspondence between Wickes and government agencies.

Reports related to the site contain confidential information protected by the attorney-client and attorney work product privileges. The insured is willing to disclose the reports but is concerned that doing so may compromise the confidentiality privileges, as long as Cigna continues its reservation of rights and is not clearly a part of the defense effort. Correspondence between the insured and government is enclosed. Additional correspondence may exist.

10. Copies of agreements signed relating to the site.

A copy of the 1984 Consent Decree is enclosed.



Risk International

Should you require additional information, please contact me directly. Thank you.

      Cordially,

      RISK INTERNATIONAL SERVICES, INC.

      Douglas L. Talley
      Assistant Vice-President
      and Corporate Counsel

Enclosures



CN 0157

00295

CONSENT ORDER

BEFORE THE
DEPARTMENT OF HEALTH SERVICES
STATE OF CALIFORNIA

In the
Matter of
\_\_\_ Forest Industries
a Division of The Wickes
Corporation,
Elmira Facility

ORDER
AND
SCHEDULE OF COMPLIANCE


COPY

The attached Settlement Agreement and Schedule of Compliance is hereby adopted by the Department of Health Services as an Order and Schedule of Compliance pursuant to Health and Safety Code Section 25187.

This Order shall become effective on    2/26/84   .

IT IS SO ORDERED on this  26th  day of   February   .

_(Signature)_

CN 0158

00296

000829

BEFORE THE
DEPARTMENT OF HEALTH SERVICES

CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD,
CENTRAL VALLEY REGION
STATE OF CALIFORNIA

In Re:

Wickes Forest Industries,
a Division of the Wickes
Corporation
Elmira Facility

SETTLEMENT AGREEMENT
AND
SCHEDULE OF COMPLIANCE

I

The State Department of Health Services (Department) alleges that The Wickes Corporation (Wickes) has violated, and is in violation of, specific provisions of the Hazardous Waste Control Laws (Act) and regulations adopted thereunder, as set forth more fully in Paragraph VII as a result of its alleged disposal of hazardous waste at its facility in Elmira, California (Site).

II

The California Regional Water Quality Control Board, Central Valley Region, (Board) alleges that Wickes' waste discharges at the Site have violated the Porter-Cologne Water Quality Control Act and regulations and orders adopted thereunder. The Board issued Cleanup and Abatement Orders on June 6, 1982 and October 4, 1982 after finding that on-Site soils were contaminated (in part by a toxic spill on November 7, 1980) and are threatening surface and ground waters in Elmira. The Board alleges that Wickes is in violation of the October 4, 1982 Order.

III

The Settlement Agreement (Agreement) and Schedule of Compliance (Order) have been agreed to by Wickes, the Department and the Board to resolve the matters found and alleged in Paragraphs II and VII without civil litigation and to facilitate implementation of the measures described herein.

IV

Wickes, the Department and the Board admit and agree that the Department and the Board have jurisdiction over these matters and the parties.

V

This Agreement and Order apply to and are binding upon the parties, their successors and assigns.

CN 0159

00297

000830

## VI

For the purposes of this Agreement and Order, Wickes agrees to waive any right to a hearing prior to issuance of the Order or to the reimbursement agreed to in paragraph VIII of this Agreement. Wickes has denied all of the allegations in paragraphs I, II, and VII. Any payments or actions by Wickes pursuant to this Agreement are not to be construed as an admission of guilt or liability. By means of this Agreement the Department and the Board make no finding of fact or conclusion of law that resolves issues of culpability or guilt on the part of Wickes.

## VII

The Department alleges that Wickes has violated, or is in violation of, the Act and regulations adopted thereunder for the following reasons:

1. Wickes has disposed of hazardous waste on-site without a permit or an Interim Status Document (ISD) for such disposal [Health and Safety Code, Sections 25142, 25154, 25199 and 25201 and Title 22, California Administrative Code (22 CAC), Sections 66387 and 66490].

2. As a result of its disposal of hazardous wastes, Wickes has committed the additional following violations of regulations adopted pursuant to the Act:

   a. As a producer of hazardous waste, Wickes did not take steps to ensure that its waste was taken to a facility permitted by the Department (22 CAC, Section 66505).

   b. Wickes did not operate, design or equip the facility to prevent discharge of hazardous wastes and to prevent hazards to public health, personal safety and wildlife [22 CAC, Sections 66525(a) and 66530(a)].

3. Wickes has not complied with closure requirements in Health and Safety Code, Section 25159.6 and 40 CFR 265.111 through 265.115.

4. Wickes has not complied with post-closure plan requirements in Health and Safety Code, Section 25159.5 and 40 CFR 265.118.

5. Wickes has not complied with financial assurance requirements in Health and Safety Code, Section 25159.6 and 40 CFR, Subpart H.

The Department is not aware of any fact regarding the Site which would constitute additional violations of the Act or regulations adopted thereunder.

## VIII

Wickes agrees to reimburse the Department $2,500 as full settlement for all resources previously expended on this matter and to contribute $10,000 to the Board's Cleanup and Abatement account. Payment will occur within sixty (60) days after execution of this Agreement. Such payment shall in no event be construed as a fine or penalty.

Wickes Forest Industries
Elmira Facility                                                                 -3-

IX

Wickes conducted sampling and analyses to define the extent of soil and surface and ground water contamination on and off the Site. In a letter dated 9 September 1983, Wickes submitted a "Remedial Action Plan" (Plan):

1. The Department and the Board approve the stormwater management, the ground water treatment and contaminated soils removal and containment elements of the Plan, as amended by Wickes' letter to the Board dated 29 September 1983 and any subsequent amendments agreed to in writing by the parties.

2. Wickes shall implement the Plan and subsequent amendments agreed to in writing by the parties in compliance with the terms herein and shall complete corrective measures, other than the ground water treatment system, on-going treatment, maintenance and monitoring activities, within sixty (60) days from the date of this Agreement. Wickes shall complete the ground water treatment system within ninety (90) days from the date of this Agreement.

3. Wickes shall submit a Post-Closure Care Plan (PCCP) and a proposed financial assurance mechanism for post closure/care to the Department for approval that meets the requirements of 40 CFR 265.118 within 60 days after the date of this agreement. Wickes shall implement the approved PCCP in compliance with the terms therein.

4. Wickes shall provide to the Department and the Board within thirty (30) days from the approval of the PCCP acceptable financial assurance documentation for post-closure care.

5. Wickes shall propose deed restrictions for the Department's approval. The restrictions shall limit the type and manner of future uses of the site and ensure the continued integrity of treatment and control facilities. The proposed restrictions shall be submitted within 60 days of the date of this Agreement.

6. Wickes shall record the approved deed restrictions within 30 days of the date of their approval. The deed restrictions may be removed upon written agreement of the parties.

7. Wickes shall comply with the Board's Monitoring and Reporting Program (MRP). The attached MRP is approved by the Board.

CN 0161

00299

X

The goals of the Plan discussed in Paragraph IX are:

1. Elimination of human and animal contact with contaminated soils at the Site within 60 days of the date of this Agreement.

2. Elimination of the migration of contaminated ground water away from the Site within 270 days of the date of this Agreement.

3. Elimination of off-Site contamination in ground water in approximately 5 years.*

4. Elimination of on-Site contamination in ground water in 5 to 10 years.*

* The goals are based on current drinking water standards. Stricter standards may require review and revision of the time estimates.

XI

Whenever the remaining elements of the Plan are submitted to the Department and the Board pursuant to this Agreement and Order, the Department and the Board shall review them and either approve them or request modifications within 15 working days of their receipt. If the Department or Board requests modifications to Wickes' submission, Wickes shall respond thereto within 15 working days of the receipt of the request.

XII

If, for any reason, Wickes is unable to perform any activity or submit any document in compliance with the schedule set forth herein or in compliance with any work schedule submitted pursuant to this Agreement and approved by the Department and Board, Wickes may request, in writing, an extension of the time specified. The extension request shall include a justification for the delay.

XIII

If the Department and the Board reasonably determine that good cause exists for an extension, they will grant the request and specify in writing a new schedule. Wickes shall comply with the new schedule. No penalty shall be imposed or paid pursuant to Paragraph XIV for any time period included within an extension granted under this paragraph. Extensions may be granted retroactively. Wickes shall notify the Board or Department as soon as possible and in no event later than 48 hours of its knowledge of non-compliance.

The Department and Board will find that good cause exists for an extension if the delay is caused by factors totally beyond Wickes' reasonable control despite Wickes' best efforts to comply.

XIV

In the event that Wickes fails to perform work on pad sealing, roof construction, stormwater diversions, soil removal, french drain trench for the treatment system, or ground water treatment system within the times specified in the Order Wickes shall pay a civil penalty of $2,500 to the Department and a contribution of $2,500 to the Board's Cleanup and Abatement account for each day of non-compliance. If Wickes fails to submit other documents or perform other activities within the time specified in the Order Wickes shall pay civil penalties of $250 to the Department and a contribution of $250 to the Board's Cleanup and Abatement Account for each day of each item of non-compliance. The provisions of this paragraph do not apply if Wickes establishes that the failure to comply with a deadline is due solely to an Act of God.

The Department and the Board will allow additional days for performance of work on pad sealing, stormwater diversions, soil removal, and the french drain trenches if the following rainfall occurs. For each day rainfall exceeds 0.20", Wickes will be granted an extension of 1 day. For each day rainfall equals or exceeds 0.50", Wickes will be granted an extension of 1 additional day per each 0.50" increment of rain. For example, if rainfall equals 3.00" on a given day, Wickes shall be entitled to an extension of 7 days. Rainfall measurements for the site shall be those recorded by the United States Weather Service at the Vacaville Station.

XV

If, through the discovery of new facts or otherwise, Wickes, the Department or the Board believes corrective measures are inadequate or unnecessary to achieve goals discussed in Paragraph X; or if the Department and Board do not approve elements submitted pursuant to Paragraph IX or modifications submitted pursuant to Paragraph XI; or do not approve removal of deed restrictions; the parties shall seek agreement. If agreement is not reached within 45 days, or if the Department or Board believes that Wickes is not in compliance with this Agreement, any of the parties may seek judicial relief.

In the case of any proposed changes in the MRP, the Board shall provide notice to Wickes and the Department 30 days before amending it. The MRP shall be amended only by written agreement of the parties or by action of the Board at a Board Meeting.

The Department may amend the PCCP to reflect changes in the MRP or changes in applicable federal or state laws or regulations. The Department will provide 30 days notice to Wickes and the Board before amending the PCCP.

Wickes Forest Industries -6-
Elmira Facility

### XVI

In consideration of Wickes' performance under this Agreement, the Department and Board hereby convenant not to seek civil or criminal penalties, fines or similar sanctions against Wickes, its parent, subsidiary or affiliated companies on matters alleged in Paragraphs I, II, & VII.

### XVII

Except as specifically provided in Paragraph XVI, nothing in this Agreement or Order shall be construed to prevent or limit the Department or the Board, as part of any judicial relief pursuant to paragraph XV, from taking any additional action authorized by law in regard to those matters alleged in Paragraphs I, II and VII, including, but not limited to removal, remedial, or cost recovery actions pursuant to the Hazardous Substances Act, Health and Safety Code, Section 25300, et seq., or to the Porter-Cologne Water Quality Control Act.

### XVIII

In consideration of Wickes' performance under this agreement, the Board rescinds the Cleanup and Abatement Orders dated October 4, 1982 and June 5, 1982.

### XIX

Wherever notification or submission of documents are required under this Agreement, they shall be addressed to: Enforcement Coordinator, Toxic Substances Control Division, 714/724 P Street, Sacramento, CA 95816; Executive Officer, Regional Board, 3201 S Street, Sacramento, CA 95815 and to the General Counsel, Wickes Companies Inc. 3340 Ocean Park Boulevard, Santa Monica, California 90405. If these persons or addresses change, the affected party shall immediately notify the other parties.

### XX

Wickes, the Department and the Board hereby consent to this Agreement and the issuance of the Order by their duly authorized representative and stipulate that, without the necessity of a hearing or findings of fact and conclusions of law the Director of the Department of Health Services or his duly authorized representative may enter an order binding on the parties in accordance with this Settlement Agreement and Order.

2/26/84
Date

*[signature]*
Peter Rank
Director
Department of Health Services
State of California

Feb 15, 1984
DATE

*[signature]* William H. Crooks
William H. Crooks, Executive Officer
California Regional Water
 Quality Control Board
Central Valley Region

Feb 9, 1984
DATE

*[signature]*
VICE PRESIDENT
The Wickes Corporation



CALIFORNIA REGIONAL WATER QUALITY CONTROL BD.
CENTRAL VALLEY REGION

MONITORING AND REPORTING PROGRAM
FOR
WICKES FOREST INDUSTRIES
WICKES WOOD PRESERVING
ELMIRA, SOLANO COUNTY




## MONITORING

### Ion Exchange Treatment System Monitoring*

Sampling of influent and effluent shall be conducted a minimum of once weekly. Frequency may be adjusted when sufficient data has been collected and experience justifies such a change. Monitor and report the following:

| Constituent | Units | Type of Sample | Sampling Frequency |
|---|---|---|---|
| Total Chromium | mg/l | Grab | Twice Per Week |
| Hexavalent Chromium | mg/l | Grab | Once Per Week |
| Total Copper | mg/l | Grab | Once Per Week |
| Total Arsenic | mg/l | Grab | Twice Per Week |
| Flow | gallons per day | Continuous | Daily |

A visual inspection of the treatment system operation shall be made daily.

### GROUND WATER MONITORING

Grab samples shall be obtained from the following wells as shown on the attached map: E4, E5, E6, E15, E16, E17, E18, Rhodes well, and Elmira School well. Monitor and report the following:

| Constituent | Units | Type of Sample | Sampling Frequency |
|---|---|---|---|
| Total Chromium | mg/l | Grab | Monthly |
| Hexavalent Chromium | mg/l | Grab | Monthly |
| Total Copper | mg/l | Grab | Monthly |
| Total Arsenic | mg/l | Grab | Monthly |
| Ground Water Elevation | mg/l | Grab | Monthly |
| pH | pH units | Grab | Monthly |

Frequency may be adjusted to quarterly one year after ground water treatment begins. Two years after treatment begins and annually thereafter, frequency and number of wells to be sampled will be evaluated.

*If the discharge is to the City of Vacaville's collection system this section will be revised.

MONITORING AND REPORTING PROGRAM
WICKES FOREST INDUSTRIES
WICKES WOOD PRESERVING
ELMIRA, SOLANO COUNTY

## STORMWATER SYSTEM MONITORING

The effectiveness of the stormwater management and pad sealing will be monitored by visual inspection no less frequently than the sampling of the wells. Any problems noted for appropriate maintenance or repairs shall be reported with the next monitoring report.

Samples shall be obtained of runoff from the first rainfall following installation of the stormwater management structures. These samples shall be analyzed for Total and Hexavalent Chromium, Copper and Arsenic. Should these samples show significant levels of the metals, additional sampling will be required.

Unless otherwise noted, all sampling, sample preservation, and analyses shall be conducted in accordance with the current edition of "Standard Methods for the Examination of Water and Wastewater" or as approved by the Executive Officer.

All analyses shall be performed in a laboratory approved to perform such analyses by the California State Department of Public Health or a laboratory approved by the Executive Officer.

## REPORTING

In reporting the monitoring data, the discharger shall arrange the data in tabular form so that the date, the constituents, and the concentrations are readily discernible.

Monthly monitoring reports shall be submitted to the Regional Board and the Department of Health Services by the 15th day of the following month.

If the discharger monitors any pollutant more frequently than required by this order or locations not designated herein, he shall include the results of such monitoring in the monthly reports.

Ordered by _____
WILLIAM H. CROOKS, Executive Officer

21 November 1983
(Date)

GCV:131
10/31/83

CN 0167

00305

000838

| INSURERS | POLICY PERIOD FROM | TO | POLICY NUMBER | TYPE | LIMIT OCC/AGG | DED/SIR | |
|---|---|---|---|---|---|---|---|
| CONTINENTAL | 7/24/84 | 7/24/85 | SRL3344602 | CGL | 1/1 | 100,000 | |
| CONTINENTAL (Retail) | 7/24/85 | 7/24/86 | SRL3344617 | CGL | 1/1 | 250,000 | |
| FIRST STATE | 4/24/82 | 4/24/83 | 951246 | UMB | 10/10 | CGL | |
| FIRST STATE | 4/24/83 | 4/24/84 | ID936017 | XS | 10/10 | SIR | |
| INA | 5/1/81 | 4/24/82 | GO 19 07 60-8 | CGL | 1/1 | 250,000 | |
| INA | 4/24/82 | 4/24/83 | CL 00 41 24 5 | CGL | 1/1 | | |
| INA | 4/24/83 | 7/24/84 | GLPC0004216A | CGL | 1/1 | | |
| INA | 7/24/84 | 7/24/85 | IBC154417 | UMB | 25/25 | CGL | |
| NEW ENGLAND RE | 5/1/81 | 5/1/82 | 4646942 | UMB | 10/10 | CGL | |
| ST. PAUL | 4/24/83 | 4/24/84 | 966110702 | UMB | 5/5 | CGL | |
| TRANSCONTINENTAL | 4/24/83 | 4/24/84 | XDX2620518 | XS | 10/10 | SIR | sudd/acc |
| TRAVELERS | 5/1/79 | 5/1/81 | TR-ESL-133T700-1-78 | CGL | 25/25 | | sudd/acc |