Exhibit C

## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| COLLINS & AIKMAN CORPORATION, et al.[1] | ) | Case No. 05-55927 (SWR) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | (Tax Identification #13-3489233) |
| | ) | |
| | ) | Honorable Steven W. Rhodes |

### ORDER CONFIRMING FIRST AMENDED JOINT PLAN OF COLLINS & AIKMAN CORPORATION AND ITS DEBTOR SUBSIDIARIES

The above-captioned debtors and debtors in possession (collectively, the "Debtors")
having filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, on
May 17, 2005 (the "Petition Date"); the Debtors having filed, on January 24, 2007, the First
Amended Joint Plan of Collins & Aikman Corporation and Its Debtor Subsidiaries
[Docket No. 3976] (as amended and filed with the Court on July 9, 2007 [Docket No. 7731] (the
"Plan")[2] and the amended disclosure statement related thereto [Docket No. 3977] (the

---

[1]   The Debtors in the jointly administered cases include: Collins & Aikman Corporation; Amco Convertible Fabrics, Inc., Case No. 05-55949; Becker Group, LLC (d/b/a/ Collins & Aikman Premier Mold), Case No. 05-55977; Brut Plastics, Inc., Case No. 05-55957; Collins & Aikman (Gibraltar) Limited, Case No. 05-55989; Collins & Aikman Accessory Mats, Inc. (f/k/a the Akro Corporation), Case No. 05-55952; Collins & Aikman Asset Services, Inc., Case No. 05-55959; Collins & Aikman Automotive (Argentina), Inc. (f/k/a Textron Automotive (Argentina), Inc.), Case No. 05-55965; Collins & Aikman Automotive (Asia), Inc. (f/k/a Textron Automotive (Asia), Inc.), Case No. 05-55991; Collins & Aikman Automotive Exteriors, Inc. (f/k/a Textron Automotive Exteriors, Inc.), Case No. 05-55958; Collins & Aikman Automotive Interiors, Inc. (f/k/a Textron Automotive Interiors, Inc.), Case No. 05-55956; Collins & Aikman Automotive International, Inc., Case No. 05-55980; Collins & Aikman Automotive International Services, Inc. (f/k/a Textron Automotive International Services, Inc.), Case No. 05-55985; Collins & Aikman Automotive Mats, LLC, Case No. 05-55969; Collins & Aikman Automotive Overseas Investment, Inc. (f/k/a Textron Automotive Overseas Investment, Inc.), Case No. 05-55978; Collins & Aikman Automotive Services, LLC, Case No. 05-55981; Collins & Aikman Canada Domestic Holding Company, Case No. 05-55930; Collins & Aikman Carpet & Acoustics (MI), Inc., Case No. 05-55982; Collins & Aikman Carpet & Acoustics (TN), Inc., Case No. 05-55984; Collins & Aikman Development Company, Case No. 05-55943; Collins & Aikman Europe, Inc., Case No. 05-55971; Collins & Aikman Fabrics, Inc. (d/b/a Joan Automotive Industries, Inc.), Case No. 05-55963; Collins & Aikman Intellimold, Inc. (d/b/a M&C Advanced Processes, Inc.), Case No. 05-55976; Collins & Aikman Interiors, Inc., Case No. 05-55970; Collins & Aikman International Corporation, Case No. 05-55951; Collins & Aikman Plastics, Inc., Case No. 05-55960; Collins & Aikman Products Co., Case No. 05-55932; Collins & Aikman Properties, Inc., Case No. 05-55964; Comet Acoustics, Inc., Case No. 05-55972; CW Management Corporation, Case No. 05-55979; Dura Convertible Systems, Inc., Case No. 05-55942; Gamble Development Company, Case No. 05-55974; JPS Automotive, Inc. (d/b/a PACJ, Inc.), Case No. 05-55933; New Baltimore Holdings, LLC, Case No. 05-55992; Owosso Thermal Forming, LLC, Case No. 05-55946; Southwest Laminates, Inc. (d/b/a Southwest Fabric Laminators Inc.), Case No. 05-55948; Wickes Asset Management, Inc., Case No. 05-55962; and Wickes Manufacturing Company, Case No. 05-55968.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

---

K&E 11815541.12

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000301

"Disclosure Statement"); the Court having entered an order [Docket No. 3988] (the "Solicitation Procedures Order") on January 26, 2007, (a) approving the Disclosure Statement, (b) establishing April 9, 2007, as the deadline for submitting ballots to vote to accept or reject the Plan and for filing objections to confirmation of the Plan, (c) establishing April 19, 2007, as the date of commencement of the Confirmation Hearing, (d) approving certain ballots and notices in connection with solicitation of the Plan, including the form and method of notice of the Confirmation Hearing (the "Confirmation Hearing Notice") and (e) establishing certain procedures for soliciting and tabulating votes with respect to the Plan; the Court having adjourned the Confirmation Hearing and certain other deadlines in connection therewith [Docket Nos. 4400, 4674 and 7379]; the Debtors having provided due, adequate and sufficient notice of the Plan, the Disclosure Statement and the Confirmation Hearing, along with the deadlines for voting on the Plan and objecting to confirmation of the Plan, to Holders of Claims and Equity Interests and other parties in interest; the Debtors having distributed the Plan and the Disclosure Statement to all Holders of Impaired Claims against the Debtors that are entitled to vote on the Plan, together with a solicitation of votes to accept or reject the Plan in accordance with the Solicitation Procedures Order; the Debtors having filed the Debtors' Memorandum of Law (a) in Support of the First Amended Joint Plan of Collins & Aikman Corporation and Its Debtor Subsidiaries and (b) in Response to Objections Thereto [Docket No. 7734] (the "Confirmation Memorandum"); the Debtors having filed the Affidavit of Kurtzman Carson Consultants LLC Certifying Ballots Accepting and Rejecting the Debtors' First Amended Joint Plan of Collins & Aikman Corporation and Its Debtor Subsidiaries [Docket No. 7732] (the "Voting Affidavit") attesting to and certifying the method and results of the ballot tabulation for each of the Impaired Classes entitled to vote on the Plan; the Debtors having filed the

K&E 11815541.12

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000302

Declaration of John Boken in Support of Confirmation of the First Amended Joint Plan of Collins & Aikman Corporation and Its Debtor Subsidiaries [Docket No. 7733]; this Court having convened the Confirmation Hearing on July 12, 2007, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128 and 1129 of the Bankruptcy Code, to consider the confirmation of the Plan; the Court having (a) reviewed the above-referenced pleadings and all objections and responses thereto, (b) heard or received the statements of counsel in support of and in opposition to confirmation of the Plan at the Confirmation Hearing, (c) considered all testimony presented and evidence admitted by affidavits or otherwise and (d) taken judicial notice of all other papers, pleadings and records on file in these Chapter 11 Cases; it appearing that notice of the Confirmation Hearing and the opportunity of any party in interest to object to and be heard regarding confirmation of the Plan were adequate and appropriate as to all parties to be affected by the Plan and the transactions contemplated thereby and that the legal and factual bases set forth in the Confirmation Memorandum and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation and good cause appearing therefor,

THE COURT FINDS AND DETERMINES THAT:[3]

## Jurisdiction and Venue

A.     On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code. Venue is proper in this

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to confirmation of the Plan are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000303

District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

### Modifications to the Plan

B.    Any modifications to the Plan described or set forth herein constitute technical changes or changes with respect to particular Claims by agreement with Holders of such Claims, and do not materially or adversely affect or change the treatment of any Claims or Equity Interests.   Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

### Transmittal of Solicitation Package

C.    The Disclosure Statement (including exhibits, one of which is the Plan), the Confirmation Hearing Notice, the Solicitation Procedures Order, the appropriate ballot(s), voting instructions and a pre-addressed return envelope, if applicable, were transmitted in accordance with Bankruptcy Rule 3017(d) and the Solicitation Procedures Order.

### Publication of Confirmation Hearing Notice

D.    On February 14, 2007, the Debtors published the Confirmation Hearing Notice in the Detroit News / Free Press and The Wall Street Journal.

4

K&E 11815541.12

DTSC, et al. v. Jim Dobbas, Inc., et al.

AGO000304

## Voting Affidavit

E.      On July 9, 2007, the Debtors filed the Voting Affidavit certifying the method and results of the ballot tabulation for each of the Classes entitled to vote to accept or reject the Plan with the Court.

## Judicial Notice

F.      The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court or its duly appointed agent, including, without limitation, all pleadings and other documents on file, all orders entered and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

## Transmittal and Mailing of Materials; Notice

G.      Due, adequate and sufficient notice of the Disclosure Statement, the Plan and the Confirmation Hearing, along with all deadlines for voting on or filing objections to the Plan, has been given in accordance with the procedures set forth in the Solicitation Procedures Order. The Disclosure Statement (including exhibits, one of which is the Plan), the Confirmation Hearing Notice, the Solicitation Procedures Order and the appropriate ballot(s) were transmitted and served in substantial compliance with the Bankruptcy Rules and the Solicitation Procedures Order, and such transmittal and service were adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing, as continued from time to time, and other dates and deadlines described in the Solicitation Procedures Order was given in compliance with the Bankruptcy Rules and Solicitation Procedures Order, and no other or further notice is, or shall be, required.

## Solicitation

H.      The Debtors, the Agent, the Creditors Committee and their respective officers, directors, employees, attorneys, financial advisors, accountants, investment bankers, investment

5

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000305

advisors, actuaries, professionals, agents, affiliates and representatives have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Solicitation Procedures Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article XII of the Plan.

I.      All procedures used to distribute solicitation materials to the applicable Holders of Claims and Equity Interests and to tabulate the ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the Eastern District of Michigan and all other applicable rules, laws and regulations.

### Classes Deemed to Have Accepted the Plan

J.      Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are Unimpaired under the Plan and presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and the votes of Holders of Claims in Classes 1 and 2 were therefore not solicited.

### Impaired Classes that Have Voted to Accept the Plan

K.      As evidenced by the Voting Affidavit, which certified both the method and results of the voting, Class 3 (Prepetition Facility Claims), Class 4 (OEM Claims) and Class 5 (General Unsecured Claims) have voted to accept the Plan.

### Classes Deemed to Have Rejected the Plan

L.      Class 8 (Equity Interests), Class 9 (Subordinated Securities Claims) and Class 10 (Intercompany Claims) will receive no distributions and retain no property under the Plan and

6

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000306

are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and the votes of Holders of Claims and Equity Interests in Classes 8, 9 and 10 were therefore not solicited.

### Impaired Classes that Have Voted to Reject the Plan

M.      As evidenced by the Voting Affidavit, which certified both the method and results of the voting, Class 6 (Senior Note Claims and PBGC Claims) and Class 7 (Senior Subordinated Note Claims) have voted to reject the Plan with respect to the Debtors, as substantively consolidated to the extent set forth in the Plan.

### Burden of Proof

N.      The Debtors, as proponents of the Plan, have met their burden of proving the elements of section 1129(a) and (b) of the Bankruptcy Code.

### Compliance with Requirements of Section 1129 of the Bankruptcy Code

*Section 1129(a)(1) – Compliance of the Plan with Applicable Provisions of the Bankruptcy Code*

O.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123. Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article II of the Plan designates Classes of Claims and Equity Interests, other than Administrative Claims and Priority Tax Claims (which are not required to be classified). As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Equity Interests contains only Claims and Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class. The Debtors have presented clear and convincing evidence that valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and

7

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000307

Equity Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims or Equity Interests.

P.      Pursuant to section 1123(a)(2) and (3) of the Bankruptcy Code, Articles II and III of the Plan specify all Claims that are Unimpaired and the treatment of all Claims and Equity Interests that are Impaired.

Q.      Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan provides the same treatment for each Claim or Equity Interest within a particular Class.

R.      Pursuant to section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate and proper means for implementation of the Plan. The Debtors will have, immediately upon the Effective Date of the Plan, sufficient cash to make all payments required to be made on the Effective Date pursuant to the terms of the Plan. Moreover, Article IV and various other provisions of the Plan specifically provide for adequate and appropriate means for the Plan's implementation, including, without limitation: (i) the sale of certain of the Debtors' assets; (ii) establishment of the Post-Consummation Trust, the Litigation Trust and the Residual Trusts; (iii) the transfer of the Post-Consummation Trust Assets, the Litigation Trust Assets and the Residual Trust Assets to the Post-Consummation Trust, the Litigation Trust and the applicable Residual Trust, respectively; (iv) the funding of the expenses of the Post-Consummation Trust and the Litigation Trust; (v) the appointment of the Plan Administrator and the Litigation Trust Administrator; (vi) the cancellation of instruments, securities and other documentation; (vii) the preservation of rights and Causes of Action; and (viii) the general authority for all corporate action necessary to effectuate the Plan.

8

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000308

S.    Section 1123(a)(6) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases because, among other things, the Debtors are not issuing any securities under the Plan.

T.    The Plan complies with section 1123(a)(7) of the Bankruptcy Code, regarding the selection of individuals to administer debts, because the selection of the Plan Administrator and the Litigation Trust Administrator has been accomplished in a fair and reasonable manner, consistent with public policy.

U.    The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (i) distributions to Holders of Claims, (ii) the disposition of executory contracts and unexpired leases, (iii) the retention of, and the right to enforce, sue on, settle or compromise (or refuse to do any of the foregoing with respect to) certain claims or causes of action against third parties, to the extent not waived or released under the Plan, (iv) resolution of Disputed Claims, (v) allowance of certain Claims, (vi) indemnification obligations, (vii) releases by the Debtors, (viii) releases by certain third parties, (ix) exculpation, (x) injunction against certain actions and (xi) establishment of the Trusts and the transfer of assets to the relevant Trusts.

***Section 1129(a)(2) – Compliance with Applicable Provisions of the Bankruptcy Code***

V.    The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.

W.    The Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

K&E 11815541.12

X.     The solicitation of acceptances or rejections of the Plan was (i) pursuant to the Solicitation Procedures Order, (ii) in compliance with all applicable laws, rules and regulations governing the adequacy of disclosure in connection with such solicitation and (iii) solicited after disclosure to Holders of Claims or Equity Interests of adequate information as defined in section 1125(a) of the Bankruptcy Code.

Y.     The Debtors, the Agent, the Creditors Committee and their respective officers, directors, employees, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, affiliates and representatives have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.

***Section 1129(a)(3) – Proposal of Plan in Good Faith***

Z.     The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself and the process leading to its formulation.  The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of maximizing the value of the Debtors' assets and the recovery of Holders of Claims under the circumstances of these Chapter 11 Cases.

***Section 1129(a)(4) – Court Approval of Certain Payments as Reasonable***

AA.     Pursuant to section 1129(a)(4) of the Bankruptcy Code, any payment made or promised by the Debtors or by any person acquiring property under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, including all administrative expense and substantial contribution claims under sections 503 and 507 of the Bankruptcy Code, or in connection with the Plan and incident to the Chapter 11 Cases, has been or will be disclosed to this Court.  Any such payment made before Confirmation was reasonable and made with appropriate authority of the Court; provided that the reasonableness of Fee Claims that have not

10

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000310

heretofore been Allowed on a final basis will be determined by this Court after submission of a final fee application in accordance with this Order.   All such payments to be fixed after Confirmation shall be made pursuant to the terms of the Plan and are subject to the approval of this Court as reasonable and consistent with this Order.

**Section 1129(a)(5) – Disclosure of Identity and Affiliations of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy**

BB.   Section 1129(a)(5) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.   To the extent section 1129(a)(5) applies to the Post-Consummation Trust and the Litigation Trust, the Debtors have disclosed that (i) the Agent, in consultation with the Prepetition Lenders, has designated Capstone Advisory Group, LLC as the Plan Administrator and (ii) the Agent, in consultation with the Prepetition Lenders and the Creditors Committee, has designated Alan B. Miller as the Litigation Trust Administrator.

**Section 1129(a)(6) – Approval of Rate Changes**

CC.   No regulatory commission has any jurisdiction over rate changes by the Debtors, and the Plan does not provide for rate changes by the Debtors.   Section 1129(a)(6) of the Bankruptcy Code is therefore inapplicable to these Chapter 11 Cases.

**Section 1129(a)(7) – Best Interests of Creditors and Equity Interest Holders**

DD.   The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.   The Disclosure Statement, including the liquidation analysis, and any other evidence adduced at the Confirmation Hearing (i) are persuasive, credible and accurate as of the dates such evidence was prepared, presented or proffered, (ii) either have not been controverted by other persuasive evidence or have not been challenged, (iii) are based upon reasonable and sound assumptions, (iv) provide a reasonable estimate of the liquidation values of the Debtors upon conversion to a case under chapter 7 of the Bankruptcy Code and (v) establish that each Holder of a Claim or

11

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000311

Equity Interest in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

### Section 1129(a)(8) – Acceptance of the Plan by Each Impaired Class

EE.    Pursuant to section 1129(a)(8) of the Bankruptcy Code, Classes 1 and 2 are Unimpaired and, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted the Plan. As set forth in the Voting Affidavit, Classes 3, 4 and 5 have voted to accept the Plan and Classes 6 and 7 have voted to reject the Plan. The Plan provides that Holders of Claims and Equity Interests in Classes 8, 9 and 10 will not receive any distribution or retain any property under the Plan, and Classes 8, 9 and 10 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Nevertheless, the Plan is confirmable because, as more fully set forth in paragraph KK of this Order, the Plan satisfies section 1129(b)(1) of the Bankruptcy Code with respect to Classes 6, 7, 8, 9 and 10.

### Section 1129(a)(9) – Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code

FF.    The Plan provides for treatment of Administrative Claims, Priority Tax Claims and Claims entitled to priority pursuant to section 507(a)(4)-(7) of the Bankruptcy Code in the manner required by section 1129(a)(9) of the Bankruptcy Code.

### Section 1129(a)(10) – Acceptance by at Least One Impaired Class

GG.    Section 1129(a)(10) of the Bankruptcy Code is satisfied. Classes 3, 4 and 5 have voted to accept the Plan and, to the best of the Debtors' knowledge, do not contain "insiders."

12

DTSC, et al. v. Jim Dobbas, Inc., et al.

AGO000312

***Section 1129(a)(11) – Feasibility of the Plan***

HH.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The financial projections set forth in the Disclosure Statement and evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence or sufficiently challenged in any of the objections to the Plan and (iii) establish that the Plan is feasible and that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors, except as otherwise proposed in the Plan.  The Debtors will have sufficient funds to satisfy their obligations under the Plan.

***Section 1129(a)(12) – Payment of Bankruptcy Fees***

II.     In accordance with section 1129(a)(12) of the Bankruptcy Code, Article III of the Plan provides for the payment of all fees payable under 28 U.S.C. § 1930 until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first, in accordance with section 350(a) of the Bankruptcy Code.  The Debtors and the Post-Consummation Trust, as applicable, have adequate means to pay all such fees.

***Section 1129(a)(13) – Retiree Benefits***

JJ.     The Plan satisfies section 1129(a)(13) of the Bankruptcy Code.  Payment of the Debtors' retiree benefits will be governed by, and the Debtors will comply with, the terms of the agreement between the Debtors and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, dated June 1, 2007.

***Section 1129(b) – Confirmation of the Plan Over Nonacceptance by Impaired Class***

KK.     Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that not all Impaired Classes have voted to accept the Plan.  All of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) with respect to such Impaired Classes have been met.  With respect to Classes 6 and 7, which

13

K&E 11815541.12

05-55927-swr    Doc 7827    Filed 07/18/07    Entered 07/18/07 17:01:03    Page 13 of 61

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000313

voted to reject the Plan, and Classes 8, 9 and 10, which are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, no Holder of Claims or Equity Interests junior to Classes 6, 7, 8, 9 or 10 will receive or retain any property under the Plan on account of a junior Claim, and, as evidenced by the uncontroverted valuations and estimates contained in the Disclosure Statement and put into evidence at the Confirmation Hearing, no Class of Claims or Equity Interests senior to any such Classes is receiving more than full payment on account of such Claims or Equity Interests.

*Section 1129(d) – Principal Purpose of the Plan*

LL.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

## Treatment of Unimpaired Claims

MM.     The provisions of the Plan with respect to the Holders of Unimpaired Claims are fair and appropriate.

## Objections to Confirmation of the Plan

NN.     All objections to Confirmation filed with the Court have been withdrawn, settled, resolved or have been overruled on their merits pursuant to the Confirmation Hearing and this Order.

## Executory Contracts and Unexpired Leases

OO.     The Debtors have exercised reasonable business judgment in determining whether to assume or reject each of their Executory Contracts and Unexpired Leases as set forth in Article V of the Plan and in this Order. Each assumption or rejection of an Executory Contract or Unexpired Lease pursuant to this Order or Article V of the Plan shall be legal, valid and binding upon the applicable Debtor or the Post-Consummation Trust and all other Debtor or non-Debtor parties to such Executory Contract or Unexpired Lease, all to the same extent as if such

14

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000314

assumption or rejection had been authorized and effectuated pursuant to an appropriate order of the Court that was entered pursuant to section 365 of the Bankruptcy Code prior to the Confirmation Date.

### Releases

**PP.**      **Except to the extent otherwise set forth in this Order, the releases of Claims and Causes of Action described in Article XII of the Plan constitute good faith compromises and settlements of the matters covered thereby. Such compromises and settlements are made in exchange for consideration and are in the best interest of Holders of Claims, are fair, equitable, reasonable and are integral elements of the resolution of the Chapter 11 Cases in accordance with the Plan. Each of the release, indemnification and exculpation provisions set forth in the Plan, including Article XII of the Plan, (i) is within the jurisdiction of the Court under 28 U.S.C. § 1334(a), (b) and (d), (ii) is an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code, (iii) is an integral element of the transactions incorporated into the Plan, (iv) confers material benefit on, and is in the best interest of, the Debtors, their estates and their creditors, (v) is important to the overall objectives of the Plan to finally resolve the Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors and (vi) is consistent with sections 105, 1123 and 1129 and other applicable provisions of the Bankruptcy Code.**

### Preservation of Causes of Action

QQ.      While the Debtors have made a reasonable effort to identify known actual or potential Causes of Action that the Litigation Trust may pursue after the Effective Date, the Litigation Trust has the right to pursue or defend Causes of Action not specifically or generally identified in Article IV.G of the Plan and Exhibit A to the Plan and the Disclosure Statement.

15

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000315

RR.     It is in the best interests of the Debtors' Estates and the Holders of Claims that all Causes of Action not expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, including this Order, be retained by the Debtors before the Effective Date, and by the Litigation Trust and the Post-Consummation Trust, as applicable, upon and after the Effective Date, pursuant to Article IV.G of the Plan.

### Approval of Settlements and Compromises

SS.     Pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise of all Claims or controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim with respect thereto, or any distribution to be made on account of such an Allowed Claim.  The compromise and settlement of such Claims or controversies embodied in the Plan is in the best interests of the Debtors, their Estates and Holders of Claims and is fair, equitable and reasonable.

TT.     The settlement reached among the constituents of the Creditors Committee with respect to the allocation of the Litigation Recovery Interests as set forth on Exhibit J to the Plan is fair, equitable and reasonable, and complies with the applicable legal standard set forth in Bankruptcy Rule 9019.

UU.     All settlements and compromises of Claims and causes of action of non-Debtor entities that are embodied in the Plan are effective and binding on each Holder of a Claim and Equity Interest who may have standing to assert such Claims or causes of action, and no such Holder of a Claim or Equity Interest shall possess standing to assert such Claims or causes of action after the Effective Date.

K&E 11815541.12

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000316

### Satisfaction of Conditions to Confirmation

VV.    Each of the conditions precedent to entry of this Order, as set forth in Article X of the Plan, has been satisfied or waived in accordance with the Plan.

### Satisfaction of Conditions of Consummation

WW.    Each of the conditions precedent to the Effective Date under Article X of the Plan has been satisfied or waived in accordance with the provisions of the Plan, or is reasonably likely to be satisfied.

### Retention of Jurisdiction

XX.    The Court may properly retain jurisdiction over the matters set forth in Article XIII of the Plan.

### Exemptions from Taxation

YY.    Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under the Plan, including the Soft-Trim Sales Transaction, the Remaining Sales Transactions and the other transactions related to the Sale Process (as defined and described in the Disclosure Statement), may not be taxed under any law imposing a stamp tax or similar tax. Any transfers from the Debtors to the Post-Consummation Trust, the Litigation Trust, the Residual Trusts or otherwise pursuant to the Plan, and any transfers from the NH Trust (as defined below), shall not be subject to any such taxes, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and must accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Any of the transactions described in the Plan or the Disclosure Statement taken on, prior to or after the Effective Date are hereby deemed to have been in furtherance of, or in connection with, the Plan.

17

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### Confirmation of the Plan

1.     The Plan and each of its provisions, as modified by this Order and on the record at the Confirmation Hearing, is confirmed and approved on a final basis in each and every respect pursuant to section 1129 of the Bankruptcy Code. The terms of the Plan and the exhibits thereto are incorporated by reference into, and are an integral part of, this Order. The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent. Notwithstanding the foregoing, if there is any direct conflict between the terms of the Plan and the terms of this Order, the terms of this Order shall control. All objections and responses to, and statements and comments regarding, the Plan, to the extent not already withdrawn or resolved pursuant to representations on the record at the Confirmation Hearing are overruled on their merits.

### Plan Modifications

2.     All modifications or amendments to the Plan since the solicitation, as set forth in the Plan, this Order and on the record at the Confirmation Hearing, are approved pursuant to section 1127(a) of the Bankruptcy Code, and the Plan, as modified, meets the requirements of, among other applicable law, sections 1122 and 1123 of the Bankruptcy Code.

### Plan Classification Controlling

3.     The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or

18

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000318

otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, (c) may not be relied upon by any creditor as representing the actual classification of such Claims under the Plan for distribution purposes and (d) shall not be binding on the Post-Consummation Trust, the Litigation Trust or the Debtors.

## Effects of Confirmation

### *Existing Injunctions and Stays Remain in Effect Until Effective Date*

4.       Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105, 362 or 525 of the Bankruptcy Code or otherwise and in existence on the date of this Order, shall remain in full force and effect until the Effective Date. This Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, Equity Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to the Plan.

### *Injunction*

5.       Article XII.E of the Plan is approved as follows:

> **Except as otherwise provided in the Plan, or in respect of the OEM Excluded Claims or the NNA Excluded Claims, the Confirmation Order or the Customer Agreement, as of the Effective Date, all Persons that have held, currently hold or may hold a Claim or other debt or liability that is paid, compromised or otherwise classified or an Equity Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions on account of any such paid, compromised or otherwise classified Claims, debts or liabilities or terminated Equity Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against the Debtors, any of the Trusts or their respective property, other than to enforce any right to a distribution pursuant to the Plan; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, any of the Trusts or their respective property, other than as permitted pursuant to (a) above; (c) creating, perfecting or enforcing any lien or**

19

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000319

encumbrance against the Debtors, any of the Trusts or their respective property; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors or any of the Trusts; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

Except as otherwise provided in the Plan, or in respect of the OEM Excluded Claims or the NNA Excluded Claims, the Confirmation Order or the Customer Agreement, as of the Effective Date, all Persons that have held, currently hold or may hold any claims, causes of action and any other debts, obligations, rights, suits, damages, actions, interests, remedies or liabilities that are released pursuant to the Plan are permanently enjoined from taking any of the following actions against any released Person or its property on account of such released claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities: (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released Person; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Article XII.E.

*Exculpation*

6.      Article XII.D of the Plan is approved as follows:

Notwithstanding anything contained in the Plan to the contrary except Article XIV.J, the Exculpated Parties will neither have nor incur any liability to any Person for any prepetition or postpetition act taken or omitted to be taken in connection with or related to formulating, negotiating, preparing, disseminating, implementing or administering the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any other prepetition or

20

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000320

postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors or confirming or consummating the Plan; provided that (i) the foregoing provisions of this Article XII.D will have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct, (ii) each Exculpated Party will be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan, (iii) the foregoing provisions of this Article XII.D will not apply to any acts or omissions expressly set forth in and preserved by the Plan and (iv) the foregoing provisions of this Article XII.D will have no effect on any liability of the Post-Consummation Trust that results from any such acts or omissions in connection with the Customer Agreement or the Post-Petition Customer Contracts

Notwithstanding anything contained in the Plan to the contrary, the Exculpated Parties will not include the Non-Released Parties, and the Plan will not exculpate nor be deemed to have exculpated any of the Non-Released Parties for any acts they have taken, whether in contemplation of the restructuring of the Debtors, in confirming or consummating the Plan, or otherwise.

### *Releases by the Debtors and the OEMs*

7.  Article XII.B of the Plan is approved as follows:

Notwithstanding anything contained in the Plan to the contrary, on the Effective Date and effective as of the Effective Date and immediately prior to the transfer of the Litigation Trust Assets and the Litigation Trust Claims to the Litigation Trust, for the good and valuable consideration provided by each of the Debtor Releasees, including: (1) the discharge of claims and all other good and valuable consideration paid pursuant to the Plan; and (2) the services of the officers and directors employed by the Debtors on or after November 1, 2006 in facilitating the expeditious implementation of the transactions contemplated by the Plan, each of the Debtors will provide a full discharge and release to each of the OEMs and the Debtor Releasees (and each such OEM and Debtor Releasee so released will be deemed released and discharged by the Debtors) and the respective properties of each such OEM and Debtor Releasee from any and all claims, causes of action and any other debts, obligations, rights, suits, damages, actions, interests, Causes of Action,

21

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000321

remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, contingent or fixed, currently existing or hereafter arising, in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including those that any of the Debtors or any of the Trusts would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Person would have been legally entitled to assert for or on behalf of any of the Debtors or any of their Estates and further including those in any way related to the Chapter 11 Cases or the Plan; provided that the foregoing provisions of this Article XII.B will not operate to waive or release any Debtor Releasee from any Causes of Action set forth on Exhibit A.

Notwithstanding anything contained in the Plan to the contrary, except as otherwise set forth in the Customer Agreement and the OEM Excluded Claims, on the Effective Date and effective as of the Effective Date and immediately prior to the transfer of the Litigation Trust Assets and the Litigation Trust Claims to the Litigation Trust, for the good and valuable consideration provided by the Debtors, including the releases of the OEMs set forth in this Article XII.B, each of the OEMs will provide a full discharge and release to each of the Debtors (and each such Debtor so released will be deemed released and discharged by each of the OEMs) and the Debtors' respective properties from any and all claims, causes of action and any other debts, obligations, rights, suits, damages, actions, interests, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, contingent or fixed, currently existing or hereafter arising, in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including those that any of the OEMs would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Person would have been legally entitled to assert for or on behalf of any of the OEMs and

22

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000322

further including those in any way related to the Chapter 11 Cases or the Plan.

Notwithstanding anything contained in the Plan to the contrary, the Debtors will not have released nor be deemed to have released by operation of this Article XII.B or otherwise any of the Causes of Action set forth on Exhibit A or any other claims, causes of action, debts, obligations, rights, suits, damages, actions, interests, remedies or liabilities that they or any of the Trusts may have now or in the future against the Non-Released Parties.

Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, of the releases provided under this Article XII.B, which includes by reference each of the related provisions and definitions contained in the Plan, and further, will constitute the Bankruptcy Court's finding that such release is: (1) in exchange for good and valuable consideration provided by the Debtor Releasees and the OEMs, representing good faith settlement and compromise of the claims released herein; (2) in the best interests of the Debtors and all Holders of Claims; (3) fair, equitable and reasonable; (4) approved after due notice and opportunity for hearing; (5) a bar to the Debtors and the Trusts asserting any Claim released herein against any of the Debtor Releasees or their respective property; and (6) a bar to each of the OEMs asserting any Claim released herein against any of the Debtors or their respective property.

### *Third Party Releases*

8.      Article XII.C of the Plan is approved as follows:

As of the Effective Date, in consideration for the obligations of the Debtors and the Trusts under the Plan and the Cash, other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each Releasing Party will be deemed to forever release, waive and discharge all claims (including Derivative Claims), causes of action and any other debts, obligations, rights, suits, damages, actions, interests, remedies and liabilities (other than the right to enforce the obligations of the Debtors or the Trusts under the Plan and the contracts, instruments, releases, agreements and documents delivered thereunder), whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, contingent or fixed, currently

23

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000323

existing or hereafter arising, in law, equity or otherwise, that
are based in whole or in part on any act, omission, transaction
or other occurrence taking place on or prior to the Effective
Date in any way relating to a Debtor, the Chapter 11 Cases or
the Plan that such Person has, had or may have against any
Third Party Releasee and their respective property (which
release will be in addition to the discharge of Claims and
termination of Equity Interests provided herein and under the
Confirmation Order and the Bankruptcy Code).

Notwithstanding anything contained in the Plan to the
contrary, the Releasing Parties will not have released nor be
deemed to have released by operation of this Article XII.C or
otherwise any claims or causes of action that they, the Debtors
or any of the Trusts may have now or in the future against the
Non-Released Parties.

Entry of the Confirmation Order will constitute the
Bankruptcy Court's approval pursuant to section 363 of the
Bankruptcy Code and Bankruptcy Rule 9019 of the release
provided under this Article XII.C, which includes by reference
each of the related provisions and definitions contained in the
Plan, and further, will constitute the Bankruptcy Court's
finding that such release is:  (1) in exchange for good and
valuable consideration provided by the Debtor Releasees and
the Releasing Parties, representing good faith settlement and
compromise of the claims released herein; (2) in the best
interests of the Debtors and all Holders of Claims; (3) fair,
equitable, and reasonable; (4) approved after due notice and
opportunity for hearing; and (5) a bar to any of the Releasing
Parties asserting any claim released by this Article XII.C
against any of the Third Party Releasees or their respective
property.

<u>Matters Relating to Implementation of the Plan</u>

*Executory Contracts and Unexpired Leases*

9.      The Executory Contract and Unexpired Lease provisions of Article V of the Plan

are hereby approved and Executory Contracts and Unexpired Leases are rejected under the terms

set forth in Article V of the Plan.

10.     Except for an Executory Contract or Unexpired Lease that was previously

assumed, assumed and assigned or rejected by an order of the Court with an effective date of

24

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000324

such rejection on or before the Effective Date or that is assumed pursuant to Article V.A of the Plan or is assumed elsewhere in this Order, each Executory Contract and Unexpired Lease entered into by a Debtor prior to the Petition Date will be rejected pursuant to section 365 of the Bankruptcy Code on the Effective Date or as of the date set forth on Exhibit F to the Plan.

11.     If the rejection of an Executory Contract or Unexpired Lease gives rise to a Claim (including any Claims arising from those indemnification obligations) by the other party or parties to such contract or lease, such Claim will be forever barred and will not be enforceable against the Debtors, the Trusts, their respective successors or their respective properties unless a proof of Claim is Filed and served on the Post-Consummation Trust no later than 30 days after the Effective Date.

12.     Nothing in this Order, the Plan or any exhibit to the Plan is intended or shall be construed as a waiver of the Debtors' authority to assume and assign or reject an Executory Contract or Unexpired Lease prior to the Effective Date, including in connection with the sale(s) of the Debtors' businesses, pursuant to procedures approved by the Court.

*Immediate Effectiveness; Successors and Assigns*

13.     Immediately upon the entry of this Order, the terms of the Plan, all exhibits thereto and all other relevant and necessary documents, shall be, and hereby are, deemed effective and binding upon the Debtors, any and all Holders of Claims or Equity Interests, the Creditors Committee, the Agent, the Prepetition Lenders, and any other interested parties and all respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing parties.

*Corporate Authorization; Dissolution*

14.     Upon the entry of this Order by the Court, all matters provided for under the Plan involving the corporate structure of the Debtors will be deemed authorized and approved without

25

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000325

any requirement of further action by the Debtors, the Debtors' shareholders or the Debtors' boards of directors. The Debtors may, in consultation with the Agent, for the purpose of effectuating the transfer of the Remaining Assets to the Post-Consummation Trust in a manner deemed to be in the best interests of the Post-Consummation Trust and its beneficiaries (a) preserve the corporate existence of some or all of the Debtors so as to permit the transfer of the Remaining Assets owned by such Debtors by means of direct or indirect transfers of the stock or other equity interests of such Debtors to the Post-Consummation Trust, and if deemed desirable in connection therewith to cancel the existing stock or other equity interests of such Debtors, issue new stock or equity interests of such Debtors, amend the organizational documents of such Debtors and replace the officers and directors of such Debtors, (b) create new corporations or other entities and transfer certain of the Remaining Assets thereto so as to permit the transfer of such Remaining Assets by means of direct or indirect transfers of the stock or other equity interests of such new corporations or other entities to the Post-Consummation Trust and (c) effect other transactions determined by the Debtors and the Agent to be appropriate to achieve such purpose. To the extent not used in the transfer of Remaining Assets and not completed prior to the Effective Date, the Debtors (and, in any event, their boards of directors) will dissolve or otherwise terminate their existence following the Effective Date and are authorized to dissolve or terminate the existence of wholly owned non Debtor subsidiaries following the Effective Date as well as any remaining health, welfare or benefit plans.

15.    The Debtors and the Post-Consummation Trust are authorized to effect any Restructuring Transactions.

26

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000326

*Post-Consummation Trust/ Plan Administrator*

16.     The Plan Administrator's appointment shall be effective as of the Effective Date. The Plan Administrator's compensation shall be as set forth in the Post-Consummation Trust Agreement.

17.     The Post-Consummation Trust Agreement and all of the terms and conditions contained therein are approved.

18.     The powers, authority, responsibilities and duties of the Post-Consummation Trust, the Plan Administrator and the Post-Consummation Trust Advisory Board are set forth in and will be governed by the Post-Consummation Trust Agreement.

19.     On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtors will transfer to the Post-Consummation Trust all of their rights, title and interests in all of the Remaining Assets, which transfer shall have the effect set forth in the Plan (including, without limitation, Articles IV.B and VIII thereof); provided that any assets securing the OEM Cap-Ex Claims that are transferred to the Post-Consummation Trust will be so transferred subject to the OEM Cap-Ex Claims and all other rights and remedies of the OEMs with respect to the OEM Cap-Ex Claims set forth in the Customer Agreement and the July 8, 2005 Agreement.  In connection with the transfer of the Remaining Assets, including rights and Causes of Action, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Post-Consummation Trust will vest in the Post-Consummation Trust and its representatives, and the Debtors and the Post-Consummation Trust are authorized to take all necessary actions to effectuate the transfer of such privileges.

27

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000327

*Litigation Trust/ Litigation Trust Administrator*

20.     The Litigation Trust Administrator's appointment shall be effective as of the Effective Date.  The Litigation Trust Administrator's compensation shall be as set forth in the Litigation Trust Agreement.

21.     The Litigation Trust Agreement and all of the terms and conditions contained therein are approved.

22.     The powers, authority, responsibilities and duties of the Litigation Trust, the Litigation Trust Administrator and the Litigation Trust Committee are set forth in and will be governed by the Litigation Trust Agreement.

23.     On the Effective Date, and in accordance with section 1123(b)(3) of the Bankruptcy Code and pursuant to the terms of the Plan, the Debtors will transfer to the Litigation Trust all of their rights, title and interests in all of the Litigation Trust Assets.  All such assets shall vest exclusively in the Litigation Trust on the Effective Date.  The Litigation Trust through its authorized agents or representatives will have and may exclusively enforce any and all of the Litigation Trust Assets in accordance with the provisions of the Litigation Trust Agreement.  The Litigation Trust will have the exclusive right, authority and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any and all of the Litigation Trust Assets in accordance with the terms of the Litigation Trust Agreement.

24.     In connection with the transfer to the Litigation Trust of the Litigation Trust Assets, any attorney client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Litigation Trust will vest in the Litigation Trust and its authorized agents and representatives,

28

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000328

and the Debtors and the Litigation Trust Administrator are authorized to take all necessary actions to effectuate the transfer of such privileges to the Litigation Trust.

25.     On the Effective Date, the Debtors are authorized to deposit with the Litigation Trust $3 million in Cash to cover the reasonable costs of the Litigation Trust as more fully set forth in the Litigation Trust Agreement. The Litigation Trust will have no obligation to and will not repay the $3 million to the Debtors or the Post-Consummation Trust.

26.     On the Effective Date, the Debtors are authorized to deposit with the Litigation Trust any funds collected by the Debtors prior to the Effective Date on behalf of preference demands and duplicate payments and any interest earned on such collections.

### Residual Trusts

27.     The Residual Trust Agreements and all of the terms and conditions contained therein are approved.

28.     The Debtors, in consultation with the Agent, prior to the Effective Date, or the Post-Consummation Trust, on or after the Effective Date, will have the authority to establish the Residual Trusts in accordance with the Residual Trust Agreements to pay or otherwise resolve any Residual Trust Rights. The sole right to recover on account of the Residual Trust Rights will be limited to the Residual Trust Assets.

### Residual Claims Trust

29.     The Residual Claims Trust Agreement and all of the terms and conditions contained therein are approved.

30.     With the consent of the Insurers, which has been given to Debtors in connection with the Plan, all of the Debtors' rights and obligations under the Insurance Contracts are assigned to, and shall vest in, the Residual Claims Trust. The Residual Claims Trust, the

29

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000329

Post-Consummation Trust and the Litigation Trust shall be bound by the Plan, this Order and the Insurance Contracts.

***Cancellation and Surrender of Instruments, Securities and Other Documentation***

31.     Except as provided in any contract, instrument or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article III of the Plan, the DIP Facility, the Prepetition Credit Facility, the Senior Note Indenture, the Senior Subordinated Note Indenture, the Senior Notes, the Senior Subordinated Notes and the Equity Interests will be canceled and of no further force and effect, without any further action on the part of any Debtor or any of the Trusts; except as otherwise provided in the Plan in connection with the charging liens of the Indenture Trustees that the provisions of the Senior Note Indenture and Senior Subordinated Note Indenture governing the rights of the Indenture Trustees with respect to their respective Holders will remain enforceable as between the Indenture Trustees and the Holders.   The Holders of or parties to instruments, securities and other documentation cancelled pursuant to the Plan will have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided pursuant to the Plan; provided that no distribution under the Plan will be made to or on behalf of any Holder of an Allowed Claim evidenced by Senior Notes or Senior Subordinated Notes unless and until such instruments or securities are received by the Litigation Trust Administrator or the applicable Disbursing Agent, together with any letter of transmittal required by the Litigation Trust Administrator or applicable Disbursing Agent, to the extent required in Article VI.I of the Plan.

## Adequate Protection Payments

32.     The payment of a portion of the Adequate Protection Payments (as defined in the Disclosure Statement) that was heretofore deferred to August 1, 2007 pursuant to orders of this

30

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000330

Court dated August 29, 2006 and January 11, 2007, and payment of the corresponding portion of the Adequate Protection Payments for the additional periods through September 28, 2007, are hereby deferred to October 31, 2007. Such deferred Adequate Protection Payments (a) shall be deemed satisfied on the Effective Date by the distributions and other treatment provided on account of the Prepetition Facility Claims pursuant to Article III.C.1 of the Plan and (b) because the value of such treatment is substantially less than the principal amount of the Prepetition Facility Claims, the Adequate Protection Payments shall not be taken into consideration in determining the Allowed amount of the Prepetition Facility Claims.

### Distributions

33.     The distribution provisions of Article VI of the Plan are hereby approved in their entirety.  The Debtors, the Plan Administrator and the Litigation Trust Administrator, or such Third-Party Disbursing Agents as the Post-Consummation Trust and the Litigation Trust may employ, as applicable, will administer all Claims and make all Distributions required under the Plan pursuant to the terms of the Plan.  Pursuant to the terms of the Plan, the Litigation Trust will employ the Senior Note Indenture Trustee and the Senior Subordinated Note Indenture Trustee as Third-Party Disbursing Agents with respect to any distributions to the Holders of the Senior Notes and the Holders of Senior Subordinated Notes, respectively, if such Indenture Trustees have offered to provide such services on reasonable and customary commercial terms.

### Maintenance of Causes of Action

34.     The provisions of Article IV.G of the Plan are hereby approved in their entirety.  Except as otherwise provided in the Plan (including Article XII.B of the Plan), on the Effective Date, all of the Debtors' rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal

31

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000331

in an adversary proceeding or contested matter Filed in one or more of the Chapter 11 Cases, including, but not limited to, the actions set forth in Article IV.G of the Plan and any Causes of Actions specified on <u>Exhibit A</u> to the Plan, will be transferred to the Litigation Trust or the Post-Consummation Trust, as applicable, in accordance with the Plan.

35.    Unless a claim or Cause of Action against a creditor or other Person is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtors expressly reserve and transfer such claim or Cause of Action to the Litigation Trust and the Post-Consummation Trust, as applicable, for later adjudication by the applicable Trust, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such claims or Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or this Order, except where such claims or Causes of Action have been expressly waived, relinquished, released, compromised or settled in the Plan or a Final Order.

### Prosecution of Objections to Claims

36.    All objections to Claims must be Filed by the Claims Objection Bar Date, and if Filed after the Effective Date, such objections shall be served only on the Holders of such Claims and the United States trustee.  If an objection has not been Filed to a proof of Claim or a scheduled Claim by the Claims Objection Bar Date, the Claim to which the proof of Claim or scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been Allowed earlier.   An objection is deemed to have been timely Filed as to all Tort Claims and Potentially Insured Claims, thus making each such Claim a Disputed Claim as of the Claims Objection Bar Date.   Each such Tort Claim and Potentially Insured Claim will remain a Disputed Claim until it becomes an Allowed Claim by a Final Order.

K&E 11815541.12

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000332

37.    The Debtors, the Post-Consummation Trust, the Litigation Trust and the Residual Claims Trust, as applicable, shall reserve the right to extend the Claims Objection Bar Date by filing a motion with the Court with proper notice to parties in interest in accordance with relevant Local Rules of this Court and the Bankruptcy Rules.

38.    After the Effective Date, except as provided in paragraph 39 of this Order or Article VII.D of the Plan, only the Debtors or the Post-Consummation Trust will have the authority to File, settle, compromise, withdraw or litigate to judgment objections to Claims. After the Effective Date, except as provided in Article VII.D.1(c) of the Plan, the Post-Consummation Trust may settle or compromise any Disputed Claim without approval of the Court; provided that (a) the Post-Consummation Trust will promptly File with the Court a written notice of any settlement or compromise of a Claim with a Face Amount in excess of $1,000,000 and (b) the Agent and the United States trustee will be authorized to contest the proposed settlement or compromise by Filing a written objection with the Court and serving such objection on the Post-Consummation Trust within 20 days of the service of the settlement notice. If such objection is filed and the Post-Consummation Trust and the objecting party are unable to consensually resolve such objection, the objection will be set for hearing before the Court. If no such objection is Filed, the applicable settlement or compromise will be deemed final without further action of the Court; provided that the Post-Consummation Trust will be authorized, but not required, to file a certification of no objection and submit an order to the Court on account of such settlements and compromises.

39.    Following the Effective Date, objections to and reconciliation of Class 5, 6 and 7 Claims will be performed by the Litigation Trust Administrator under the supervision and direction of the Litigation Trust Committee member(s) appointed by the Creditors Committee.

33

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000333

**Substantial Consummation**

40.     The substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, shall be deemed to have occurred on the Effective Date.

**Retention of Jurisdiction**

41.     Notwithstanding the entry of this Order and the occurrence of the Effective Date, the Court will retain such jurisdiction over the Chapter 11 Cases after the Effective Date as is legally permissible, including jurisdiction to:

a.      Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim, Priority Claim, Secured Claim and Unsecured Claim and the resolution of any objections to the allowance, priority or classification of Claims or Equity Interests;

b.      Determine any matters related to or in connection with the Soft-Trim Sales Transaction and the Remaining Sales Transactions;

c.      Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

d.      Resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor or the Post-Consummation Trust may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including any Cure Amount Claims;

e.      Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

f.      Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or brought thereafter;

g.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, the Disclosure Statement or this Order;

34

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000334

h.   Resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Person's rights arising from or obligations incurred in connection with the Plan or such documents;

i.   Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code; modify the Disclosure Statement, this Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or this Order; or remedy any defect or omission or reconcile any inconsistency in any Court order, the Plan, the Disclosure Statement, this Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Plan, the Disclosure Statement or this Order, in such manner as may be necessary or appropriate to consummate the Plan;

j.   Issue injunctions, enforce the injunctions contained in the Plan and this Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with Consummation, implementation or enforcement of the Plan or this Order;

k.   Enter and implement such orders as are necessary or appropriate if this Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

l.   Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, this Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or this Order;

m.   Determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for taxes; and

n.   Enter a Final Decree closing the Chapter 11 Cases.

### Payment of Statutory Fees

42.   On or before the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930 will be paid by the Debtors in Cash equal to the amount of such Administrative Claims. After the Effective Date, all fees payable pursuant to 28 U.S.C. § 1930

35

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000335

will be paid by the Post-Consummation Trust in accordance therewith until the closing of the

Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code.

## Modifications

43.     Without need for further order or authorization of this Court, the Debtors and the

Post-Consummation Trust are authorized to make any and all modifications to the Plan before its

substantial consummation in such a manner that does not materially modify the terms of the

Plan, as modified by this Order, and as may be necessary to carry out the purposes and intent of

the Plan; provided that (a) the consent of the Litigation Trust Administrator shall be required

prior to any modifications to the provisions of the Plan that relate to the Litigation Trust and

(b) the consent of the Insurers shall be required prior to any modifications to the provisions of

the Plan that relate to the Insurers, the Insurance Contracts, or the Insurers' rights.

## Dissolution of the Creditors Committee

44.     Effective thirty (30) days after the Effective Date, if no appeal of this Order is

then pending, the Creditors Committee will dissolve and the members of the Creditors

Committee will be released and discharged from all duties and obligations arising from or related

to the Chapter 11 Cases. The legal Professionals retained by the Creditors Committee and the

members thereof will not be entitled to assert any Fee Claim for any services rendered or

expenses incurred after thirty (30) days after the Effective Date, and the financial advisory

Professionals retained by the Creditors Committee and the members thereof will not be entitled

to assert any Fee Claim for any services rendered or expenses incurred after the Effective Date,

except in either case for services rendered and expenses incurred in connection with any

applications for allowance of compensation and reimbursement of expenses pending on the

Effective Date or Filed and served after the Effective Date pursuant to Article III.A.1(f)(ii)(A) of

the Plan and in connection with any appeal of this Order.

36

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000336

## Post-Consummation Notices and Reports

### *Notice of Entry of Confirmation Order*

45.     Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Debtors are directed to serve a notice of the entry of this Order on all Holders of Claims or Equity Interests to whom the notice of the Confirmation Hearing was mailed and to the United States trustee no later than 60 days after the Confirmation Date; *provided* that if within 60 days after the Confirmation Date, this Court has entered a final decree closing these Chapter 11 Cases pursuant to Rule 3022, then the Debtors are authorized, in their discretion, to serve on the Persons identified in this paragraph, a combined notice of entry of this Order and entry of the final decree, in lieu of separate notices, no later than 75 days after the Confirmation Date.

46.     The Debtors shall serve copies of this Order on each party that has filed and not withdrawn a notice of appearance in these Chapter 11 Cases and on each party who filed an objection or response to, or statement or comment regarding the Plan, no later than 14 days after the Confirmation Date.

47.     Except as set forth in paragraphs 45 and 46 of this Order, no further notice of the entry of this Order shall be required.

### *Notice of Effective Date*

48.     The Debtors shall serve a notice of the Effective Date (the "Effective Date Notice") on all Holders of Claims or Equity Interests to whom the notice of the Confirmation Hearing was mailed and to the United States trustee no later than 10 days after the Effective Date.

### *General Bar Date for Administrative Claims*

49.     Except as otherwise provided in paragraph 50, unless previously Filed, requests for payment of Administrative Claims that arise on or before the Effective Date must be Filed

37

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000337

and served on the Post-Consummation Trust no later than 30 days after the Effective Date. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable bar date will be forever barred from asserting such Administrative Claims against the Debtors, the Post-Consummation Trust, the Litigation Trust or their respective property, and such Administrative Claims will be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the Post-Consummation Trust and the requesting party by the later of (a) 180 days after the Effective Date and (b) 90 days after the Filing of the applicable request for payment of Administrative Claims.

### *Bar Date for Professional Compensation*

50.    Professionals or other Persons asserting a Fee Claim for services rendered before the Effective Date must File and serve an application for final allowance of such Fee Claim no later than 30 days after the Effective Date on the following parties; provided that (a) any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Court review or approval, pursuant to the Ordinary Course Professionals Order and (b) any Professional that is entitled, pursuant to the Plan or an order of the Court, to receive payment from the Estates for fees and expenses incurred after the Effective Date in connection with the Chapter 11 Cases may be compensated by the Post-Consummation Trust without further application to the Court:

DTSC, et al. v. Jim Dobbas, Inc., et al.

AGO000338

**The Debtors and the Post-Consummation Trust**
Richard M. Cieri
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

-and-

David L. Eaton
Ray C. Schrock
Scott R. Zemnick
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

-and-

Joseph M. Fischer
Lawrence A. Lichtman
Carson Fischer, P.L.C.
4111 West Andover Road -- Second Floor
Bloomfield Hills, Michigan 48302
Telephone: (248) 644-4840
Facsimile: (248) 644-1832

**The Creditors Committee**
Michael S. Stamer
Philip C. Dublin
Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue
New York, New York 10022
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

-and-

Thomas B. Radom
Butzel Long, P.C.
100 Bloomfield Hills Parkway
Bloomfield Hills, Michigan 48304
Telephone: (248) 258-1616
Facsimile: (248) 258-1439

**The Post-Consummation Trust**
Peter Chadwick
Capstone Advisory Group, LLC
1875 I Street, NW
Suite 500
Washington, D.C. 20006
Telephone: (202) 429-2079
Facsimile: (202) 429-2081

**The Agent**
Harold S. Novikoff
Gregory E. Pessin
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

**The United States Trustee**
Stephen E. Spence
U.S. Department of Justice
Office of the United States Trustee
211 West Fort Street, Suite 700
Detroit, Michigan 48226
Telephone: (313) 226-7911
Facsimile: (313) 226-7952

51.     Objections to any Fee Claim must be Filed and served on the
Post-Consummation Trust and the requesting party by the later of (a) 60 days after the

39

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000339

Effective Date and (b) 30 days after the Filing of the applicable request for payment of the Fee Claim.

### Authorization to Consummate

52.     The Debtors are authorized to consummate the Plan at any time after the entry of this Order subject to the satisfaction or waiver of the conditions precedent to Consummation set forth in Article X.B of the Plan.

53.     The Debtors are authorized and empowered to take any and all actions necessary or appropriate to consummate and implement the Plan, together with all additional instruments and documents that may be reasonably necessary or appropriate to consummate and implement the Plan.

### Failure to Consummate the Plan

54.     In accordance with Article X.D of the Plan, if the Consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in this Order, the Plan or the Disclosure Statement will:  (a) constitute a waiver or release of any Claims by or against, or any Equity Interests, in any Debtor; (b) prejudice in any manner the rights of any Debtor or any other party; or (c) constitute an admission, acknowledgment, offer or undertaking by any Debtor in any respect.

### Specific Creditor Provisions

55.     Notwithstanding anything contained in the Plan or elsewhere in this Order, the provisions of Article XII.E of the Plan shall not preclude the assertion at any time of a right of setoff or a right of recoupment by Shawmut Corporation for which a proof of claim asserting such right was timely Filed.  Any objection to such right of setoff or right of recoupment shall be determined in accordance with the procedures set forth in the Plan.

40

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000340

56.     Notwithstanding anything contained in the Plan or elsewhere in this Order, the provisions of Articles XII.C and XII.E of the Plan shall not preclude the assertion at any time of a right of setoff or a right of recoupment or any defense (affirmative or otherwise) by VF Corporation or VF Playwear, Inc. however the same may arise, including those types of matters described in Article XII.E of the Plan, relating to the substance of the matters identified in a proof of claim that was timely Filed.  Any objection to such claim shall be determined in accordance with the procedures set forth in the Plan.  Such rights and/or defenses are preserved and are not reduced or impacted by the Plan.

57.     Neither the provisions of Article XII.E of the Plan nor any other provision of the Plan shall enjoin or otherwise preclude the assertion at any time of a right of setoff, recoupment or any defense (affirmative or otherwise) by H.P. Pelzer Automotive System, Inc. and/or Cimatron Technologies, Inc. to an objection to claim, other contested matter or adversary proceeding.  Such rights and/or defenses are preserved and are not reduced or impacted by the Plan.

58.     Notwithstanding anything to the contrary in the Plan or this Order, CBS Operations Inc. (f/k/a Viacom International Inc.) shall not be a Releasing Party and shall not be subject to the Third Party Releases set forth herein or in Article XII.C of the Plan.

59.     Neither the provisions of Article XII.C or Article XII.E of the Plan, nor any other provision of the Plan, shall enjoin or otherwise preclude the assertion at any time of a right of setoff, recoupment or any defense (affirmative or otherwise) by Becker Properties, LLC; Becker Ventures; Anchor Court, LLC; Townhall 4, LLC; Lear Corporation; Cooper-Standard Automotive Inc.; TR Associates, LLC; Pentastar Aviation, LLC; Freudenberg NOK, Inc.; Freudenberg;   Freudenberg   Spinweb   Company;   Freudenberg   Nonwovens,   L.P.;

41

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000341

Freudenberg Spunweb Company; Freudenberg Nonwovens Group North America Tuft Division; Comerica Leasing Corporation; and/or Comerica Bank in any context (whether as an affirmative defense, an affirmative right or otherwise). Such rights and/or defenses are preserved and are not reduced or impacted by the Plan.

60.     Notwithstanding anything to the contrary in the Plan or this Order, Becker Properties, LLC; Becker Ventures; Anchor Court, LLC; Townhall 4, LLC; Lear Corporation; Cooper-Standard Automotive Inc.; TR Associates, LLC; Pentastar Aviation, LLC; Freudenberg NOK, Inc.; Freudenberg; Freudenberg Spinweb Company; Freudenberg Nonwovens, L.P.; Freudenberg Spunweb Company; Freudenberg Nonwovens Group North America Tuft Division; Comerica Leasing Corporation; and/or Comerica Bank shall not be a Releasing Party and shall not be subject to Article XII.C of the Plan or paragraph 8 of this Order.

61.     Notwithstanding anything to the contrary in the Plan or this Order, the rejection dates for all of the Unexpired Leases to which Becker Properties, LLC is a counterparty as listed on Exhibit F to the Plan shall be governed by the various orders entered by the Court approving the rejection of such Unexpired Leases, and the "Estimated Dates of Rejection" for such Unexpired Leases as listed on Exhibit F to the Plan are inapplicable.

62.     Notwithstanding any language in the Plan or Disclosure Statement to the contrary, the Debtors acknowledge and agree that they do not retain any equity interest in Collins & Aikman MOBIS, LLC and that the Debtors duly conveyed to MOBIS Alabama, LLC ("MOBIS") all their equity interest in Collins & Aikman MOBIS, LLC pursuant to the Membership Interest Purchase Agreement between MOBIS and Collins & Aikman Products Co. that was approved by this Court by order entered on August 16, 2006.

42

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000342

63.     Notwithstanding anything to the contrary in the Plan or this Order, the State of Michigan, Treasury Department (the "Treasury") shall not be a Releasing Party and shall not be subject to Article XII.C of the Plan or paragraph 8 of this Order.  Notwithstanding anything to the contrary in the Plan or this Order, to the extent the Treasury has a right to a distribution under the Plan on account of its Allowed Other Secured Claim or Allowed Priority Tax Claim and such distribution is not timely made to the Treasury in accordance with the Plan, the Treasury may seek to enforce any right to such distribution, but only after providing the Debtors or, if applicable, the Post-Consummation Trust with 30 days from the Debtors' receipt of written notice by the Treasury of such untimely distribution to make such distribution.

64.     Notwithstanding anything to the contrary in the Plan or this Order, the Debtors and, to the extent applicable, the Post-Consummation Trust, shall continue to fulfill all of the duties and obligations of the Debtors set forth in paragraph 11 of the Final Order Approving Customer Agreement Among the Debtors, Their Principal Customers and JPMorgan Chase Bank, N.A. and Related Relief [Docket No. 3890] (the "Final Customer Agreement Order") in favor of H.S. Die and Engineering, Inc. and its affiliates and subsidiaries, including, but not limited to, the maintenance of the H.S. Die Deemed Segregated Proceeds (as such term is defined in the Final Customer Agreement Order), subject to all rights, claims and defenses of the Debtors, to the extent applicable, the Post-Consummation Trust, the Customers (as such term is defined in the Customer Agreement), the Debtors' prepetition and postpetition senior, secured lenders and other parties in interest, other than contesting the finality of the Final Customer Agreement Order.

65.     Notwithstanding anything to the contrary in the  Plan or this Order, (a) the Inmet Division of Multimatic shall not be a Releasing  Party and shall not be subject to

43

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000343

Article XII.C of the Plan or paragraph 8 of this Order, (b) the provisions of Article XII.E of the Plan shall not preclude the assertion at any time of a right of setoff or a right of recoupment by the Inmet Division of Multimatic (i) for which a proof of claim asserting such right was timely Filed, subject to any rights, claims and defenses of any party with respect thereto or (ii) on account of a postpetition, pre-Confirmation Allowed Administrative Claim maintained by the Inmet Division of Multimatic against the Debtors, if any, subject to any rights, claims and defenses of any party with respect thereto and (c) the provisions of Article XII.E of the Plan shall not preclude the Inmet Division of Multimatic's ability to enforce any right to a distribution on account of a postpetition pre-Confirmation Allowed Administrative Claim, if any, subject to any rights, claims and defense of any party with respect thereto. Any objection to the Inmet Division of Multimatic's right of setoff or right of recoupment shall be determined in accordance with the procedures set forth in the Plan.

66.    Notwithstanding anything to the contrary in the Plan or this Order, DOTT Industries, Inc. shall not be a Releasing Party and shall not be subject to the Third Party Releases set forth herein or in Article XII.C of the Plan, nor shall any provision in the Plan or this Order compromise or diminish DOTT Industries, Inc.'s right, if any, to exercise setoff against any Third Party Releasee or other non-Debtor entity, subject to any rights, claims or defenses of any party with respect thereto.

67.    Notwithstanding anything to the contrary in the Plan or this Order, the Ohio Department of Taxation shall not be a Releasing Party and shall not be subject to Article XII.C of the Plan or paragraph 8 of this Order.

68.    Notwithstanding anything contained in the Plan or elsewhere in this Order, the provisions of Article XII.E of the Plan shall not preclude the assertion at any time of a right of

44

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000344

setoff or a right of recoupment by Texas Comptroller of Public Accounts for which a proof of claim preserving such right was timely Filed. Any objection to such right of setoff or right of recoupment shall be determined in accordance with the procedures set forth in the Plan.

69.     Notwithstanding anything to the contrary in the Plan or this Order, to the extent the Allowed Priority Tax Claims, if any, of the Texas Comptroller of Public Accounts are not paid within 30 days after the Effective Date, such claims are subject to Article III.A.2. of the Plan except that such claims shall be satisfied in Cash in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest of nine percent (9.0%) per annum from the Effective Date on the unpaid portion of such Allowed Priority Tax Claim.

70.     Notwithstanding anything to the contrary in the Plan or this Order, the case of *Wanda Patterson et al. v. Heartland Industrial Partners, LLP et al.* (the "Patterson Action") currently pending in the United States Court of Appeals for the Sixth Circuit (the "Court of Appeals") shall be permitted to proceed in the Court of Appeals for the limited purpose of allowing (a) the parties in the Patterson Action to present oral argument before the Court of Appeals in connection with their cross-appeals of the summary judgment order previously issued by the United States District Court for the Northern District of Ohio, (b) the Court of Appeals to rule on such appeals and (c) the parties in the Patterson Action to further appeal said ruling(s) to an en banc panel of the Court of Appeals or to the United States Supreme Court. Nothing in this paragraph is intended or shall be construed to permit any other or further proceeding in the Patterson Action, or any other judicial, administrative or other action or proceeding, including the reopening of discovery or any advancement to trial in the Patterson Action.

71.     The Debtors shall serve the Effective Date Notice upon counsel for Connecticut General Life Insurance Company ("CGLIC") in accordance with paragraph 48 of

45

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000345

this Order. Notwithstanding anything to the contrary in the Plan or this Order, each of the Group Contracts/ Policies between the Debtors and CGLIC, pursuant to which CGLIC provides, among other things, claims processing services in connection with the Debtors' self-insured medical benefits plan and other insurance benefits to the Debtors and their employees, (collectively, the "CGLIC Agreements") shall be deemed rejected as of the earlier of (a) ten (10) days after the date of service of the Effective Date Notice and (b) ten (10) days after the date of service of a rejection notice served in accordance with the procedures approved by the Court in the Order Approving Expedited Rejection Procedures for Executory Contracts and Unexpired Leases [Docket No. 3151]; provided that, in the event the Debtors elect to (x) amend Exhibit E to the Plan to add any or all of the CGLIC Agreements or (y) otherwise assume and assign any or all of the CGLIC Agreements prior to the Effective Date, the Debtors shall serve notice of such assumption and assignment upon counsel for CGLIC, and CGLIC shall have until ten (10) days after the date of service of such notice to file an objection to such proposed assumption and assignment.

72.     Pursuant to this Order and the Plan, two custodial trusts will be created to hold the properties and funds described below for the benefit of U.S. EPA (the "Zanesville Trust") and New Hampshire DES (the "NH Trust" and collectively with the Zanesville Trust, the "Custodial Trusts"). The Custodial Trusts shall constitute Residual Trusts under the Plan.

73.     As described below, the following properties will be transferred to the Custodial Trusts, or, in the case of the Farmington Plant Property, to such party as the State of New Hampshire may designate, free and clear of all liens and encumbrances of record:

      a.     Land and buildings constituting the Farmington Plant Property;

      b.     Cardinal Landfill Property; and

46

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000346

c.     Zanesville Mosaic Tile Property.

74.    The Michigan Department of Environmental Quality ("MDEQ") will not object to the abandonment pursuant to 11 U.S.C. § 554 of the Mancelona Pond Property (a/k/a the Wickes Effluent Pond) by the Debtor[4] subject to the execution and recording of both an easement of access in gross to the property and a restrictive covenant prohibiting the use of groundwater and providing any other necessary use restrictions at the property and subject to paragraph 80 of this Order.

75.    On the Effective Date, the Farmington Plant Property will be transferred to the NH Trust or such party as the State of New Hampshire may designate, free and clear of all liens and encumbrances of record; provided that (a) the Debtor shall be permitted to continue to occupy the Farmington Plant Property for the purpose of liquidating machinery and equipment, and the removal of process waste and debris (as set forth below) located therein and not required to be left in place by the terms hereof until the earlier of (i) the date the Debtor provides notice of its liquidation sales (and cleanup consistent with the terms hereof) of the Farmington Plant Property and (ii) November 1, 2007 (the "Closure Date") and (b) until the Closure Date, the Debtor shall continue to (i) pay all carrying costs associated with the Farmington Plant Property, including any taxes, utilities and other similar costs, and (ii) perform any required environmental quality obligations associated with the Farmington Plant Property and the Cardinal Landfill Property.  On or before the Closure Date, the Debtor will remove from the Farmington Plant waste and debris resulting from facility operations.  The Debtor shall leave "as is" all systems for fire suppression, security, electrical, HVAC, water and the MOM 3A hydraulic containment

---

[4]    All references to the "Debtor" in paragraphs 72 through 84 shall refer to the relevant Collins & Aikman entity or, after the Effective Date, the Post-Consummation Trust or other successor to such entity under the Plan.

K&E 11815541.12

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000347

system and all related pumps; wells; treatment equipment; electrical and plumbing systems; any keys in Debtor's possession for equipment enclosures, monitoring and pumping wells and gates; and system manuals and information that are currently on-site (the "Hydraulic Containment System"). Until the Closure Date the Debtor will continue to operate the Hydraulic Containment System. The Debtor shall provide to the State of New Hampshire all files and records in its possession pertaining to the environmental condition of the Farmington Plant and the Dover property for which it has information, including all site-specific data prepared by consultants employed by the Debtor not previously supplied to the Department. This shall include paper documents, electronic databases, spread sheets, and other electronic files and records.

76.     At the Cardinal Landfill the Debtor shall leave "as is" all security, electrical, plumbing, monitoring wells, pumps and related equipment and utilities, and the soil vapor management system that are currently on-site, including all related equipment and utilities in the on-site treatment shed ("SVMS"). The Debtor shall provide any keys in its possession for equipment enclosures, monitoring wells, pumping wells and gates at the Cardinal Landfill property. The Debtor shall provide to the State of New Hampshire all files and records in its possession pertaining to the environmental condition of the Cardinal Landfill site for which it has information, including site-specific data prepared by consultants employed by the Debtor not previously supplied to the Department. This shall include paper documents, electronic databases, spread sheets, and other electronic files and records.

77.     At the Mancelona Pond Property, the Debtor shall leave "as is" all monitoring wells, including off-site monitoring wells to the extent permitted by any access agreements between the Debtor and the owners of the property on which the monitoring wells are located, and if the monitoring wells are locked, will provide the MDEQ with keys in its possession. The

48

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000348

Debtor shall provide the MDEQ with keys to the gate for the fenced portion of the Mancelona Pond Property. On or before the Effective Date, the Debtor shall turn over to the MDEQ all files and records in its possession pertaining to the environmental conditions at or associated with the Mancelona Pond Site and the former Wickes Manufacturing Plant (now owned by Dura Operating Corp.), including any site-specific data prepared by consultants employed by the Debtor. This shall include paper documents, electronic databases, spread sheets and other electronic files and records. The Debtor shall also provide, as part of the restrictive covenant and easement in gross, any surveys and legal descriptions of the Mancelona Pond Property that are in its possession.

78.     The terms and conditions related to the Zanesville Mosaic Tile property are set forth in the Zanesville Settlement Agreement (as defined below). The Debtor shall provide to U.S. EPA any surveys and legal description of the Zanesville Mosaic Tile Property that are in its possession.

79.     The NH Trust will be funded with $3,642,857 on the Effective Date.

80.     On the Effective Date, the Debtor shall pay to the State of Michigan $607,143. The MDEQ's share of the base settlement proceeds will be paid directly into the State of Michigan's Environmental Response Fund pursuant to a mutually acceptable Michigan Settlement Agreement, which settlement agreement shall be the stipulation referenced in paragraph 90 of this Order. MDEQ does not assume liability for Claims against the Debtors by receipt of the settlement proceeds.

81.     An agreement in principle has been reached between the Debtor, U.S. EPA and a third party (the "Marmon Group") under which the Zanesville Mosaic Tile property will be transferred to the Zanesville Trust. The terms of the settlement relating to the Zanesville Mosaic

49

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000349

Tile property are set forth in the Zanesville settlement agreement by and between the Debtor, the U.S. EPA and the Marmon Group (the "Zanesville Settlement Agreement"). The date on which the Zanesville Settlement Agreement becomes effective in accordance with its terms is hereinafter referred to as the "Zanesville Effective Date."

82.     In the event the Zanesville Effective Date has not occurred on or before the Effective Date, the Debtor shall deposit $750,000 into escrow pursuant to an escrow agreement in form and substance satisfactory to the parties. If the Zanesville Effective Date occurs within 12 months of the Effective Date, the escrowed funds shall be refunded to the Debtor. If the Zanesville Effective Date does not occur within 12 months of the Effective Date, the escrowed funds less the amount of any Alternate Value (as defined below) shall be paid by the escrow agent to the Agencies (as defined below) in accordance with a formula to be agreed among them and made part of the Escrow Agreement, and escrowed funds in the amount of any Alternate Value shall be refunded to the Debtor. Interest earned on any funds in the escrow shall be paid to the party entitled to receive such funds. "Alternate Value" shall mean 70% of the monetary value of any capping, monitoring or related work at the Zanesville site that Marmon Group or another third party becomes obligated to perform; provided that in no case shall the Alternate Amount exceed $525,000. The Debtor and U.S. EPA will attempt in good faith to agree on the monetary value of such work and, if no such agreement is reached, will seek resolution with the assistance of a mutually acceptable neutral.

83.     U.S. EPA, New Hampshire DES, and MDEQ (collectively, the "Agencies") will not seek injunctive relief or otherwise pursue the Debtor or the Post-Consummation Trust for cleanup of the properties listed in paragraph 73 of this Order.

50

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000350

84.     The Agencies shall have an allowed administrative claim in an amount from $4,250,000 to $5,000,000 (depending upon the timing of the Zanesville Effective Date) in these cases if the Plan is confirmed and consummated, or if an alternative plan that is proposed by the Debtor or other third party is confirmed and consummated, so long as such alternative plan provides the same treatment respecting the Agencies as that afforded the Agencies under the Plan, such claim to be shared among them as set forth in paragraphs 79 through 82 of this Order; provided that in any such case such treatment shall be deemed to satisfy and discharge such administrative claim in full. If, however, these cases are converted to a case under chapter 7 or a plan is confirmed that does not provide for the same treatment afforded the Agencies under the Plan, then the Agencies shall have (a) an allowed administrative claim, binding upon any future trustee, successor to the Debtor or alternative plan proponent totaling no more than $10,500,000 if the Marmon Settlement is finalized (such amount to be shared among New Hampshire DES ($9,000,000) and MDEQ ($1,500,000)), or (b) an allowed administrative claim, binding upon any future trustee, successor to the Debtor, or alternative plan proponent, totaling no more than $11,400,000 if the Marmon Settlement is not finalized.

85.     Paragraphs 72 through 84 of this Order shall also apply to the Debtor-leased property at 16 Industrial Park Drive in Dover, New Hampshire.

86.     Except as set forth in paragraph 83 of this Order, nothing in the Plan or this Order discharges, releases or precludes any liability to a governmental unit that is not a Claim.

87.     Except as set forth in paragraph 83 of this Order, any relief provided under the Plan or this Order to non-Debtors shall not release, discharge, enjoin or preclude any liability of such non-Debtors to a governmental unit under any federal, state or local environmental law except as set forth in the applicable Residual Trust Agreements that govern the Custodial Trusts.

K&E 11815541.12

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000351

88.     Nothing in the Plan or this Order discharges, releases or precludes any claim of a governmental unit that arises on or after the Effective Date; provided that, to the extent such claim is within the scope of the applicable Residual Trust Agreements that govern the Custodial Trusts, such claim shall be discharged, released and precluded as set forth therein or paragraph 83 of this Order.

89.     Except as set forth in paragraph 83 of this Order or the applicable Residual Trust Agreements that govern the Custodial Trusts, nothing in the Plan or this Order releases any entity from liability under environmental law as the owner or operator of property that such entity owns or operates after the Effective Date.

90.     The Debtors are authorized to enter into the stipulation between the Debtors and the State of Michigan substantially in the form of Docket No. 7729.

91.     Neither the provisions of Article XII.E of the Plan nor any other provision of the Plan or this Order shall enjoin or otherwise preclude the assertion at any time of a right of setoff or recoupment, or any other rights or claims asserted as defenses (affirmative or otherwise), including but not limited to any right to indemnification under the by-laws of Collins & Aikman Corporation, the Delaware General Corporate Law or that certain Services Agreement dated February 23, 2001, as amended, among Heartland Industrial Partners, L.P. ("Heartland") and the Debtors, by (a) Heartland and its affiliates, including but not limited to the Heartland Affiliates (as defined in Heartland's objection to the Plan [Docket No. 4644]), (b) their respective partners (both general and limited), members (both managing and otherwise), officers, directors, employees, agents and representatives, (c) Mr. Daniel P. Tredwell, (d) Mr. W. Gerald McConnell, (e) Mr. Samuel Valenti, III and (f) Mr. David Stockman.   Such rights and/or defenses are preserved and are not reduced or impacted by the Plan or this Order.

K&E 11815541.12

92.     Notwithstanding anything to the contrary in the Plan or this Order, (a) Heartland and its affiliates, including but not limited to the Heartland Affiliates (as defined in Heartland's objection to the Plan [Docket No. 4644]), (b) their respective partners (both general and limited), members (both managing and otherwise), officers, directors, employees, agents and representatives, (c) Mr. Daniel P. Tredwell, (d) Mr. W. Gerald McConnell, (e) Mr. Samuel Valenti, III and (f) Mr. David Stockman shall not be a Releasing Party and shall not be subject to Article XII.C of the Plan or paragraph 8 of this Order.

93.     Notwithstanding anything to the contrary in this Order, the Plan, any exhibit to the Plan or any other Plan document, nothing in this Order, the Plan, any exhibit to the Plan or any other Plan document (including any provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing the legal, equitable or contractual rights and defenses of Fireman's Fund Insurance Company and National Surety Company (collectively, "FFIC"), if any, in any respect, including without limitation, any rights of recoupment, setoff, rescission, contribution and subrogation of FFIC. The rights of FFIC shall be determined under their respective insurance policies and applicable law. The Residual Claims Trust, the Post-Consummation Trust, the Litigation Trust and any other trust created by the Plan are bound by the policies issued by FFIC.

94.     Notwithstanding anything to the contrary in the Plan or this Order, The Haartz Corporation shall not be a Releasing Party and shall not be subject to Article XII.C of the Plan or paragraph 8 of this Order, nor shall the provisions of Article XII.E of the Plan preclude the assertion at any time of a right of setoff or a right of recoupment by The Haartz Corporation for which a proof of claim asserting such right was timely Filed. Any objection to such right of

53

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000353

setoff or right of recoupment shall be determined in accordance with the procedures set forth in the Plan.

95.    Neither the provisions of Article XII.E of the Plan nor any other provision of the Plan shall enjoin or otherwise preclude the assertion at any time of a right of setoff, recoupment or any defense (affirmative or otherwise) by Johnson Controls, Inc., Intertec Systems, LLC and Bridgewater Interiors, LLC in any context (whether as an affirmative defense, an affirmative right or otherwise). Such rights and/or defenses are preserved and are not reduced or impacted by the Plan.

96.    Notwithstanding anything to the contrary in the Plan, this Order or the transactions contemplated thereby, The Dow Chemical Company and its subsidiaries and its affiliates (collectively "Dow") shall not be a Releasing Party and shall not be subject to Article XII.C of the Plan or paragraph 8 of this Order.

97.    Notwithstanding anything to the contrary in the Plan (including but not limited to Article XII. A, C and E of the Plan), this Order, or the transactions contemplated thereby, and notwithstanding Dow's acceptance of any distribution under the Plan, Dow's right to assert any Cause of Action (whether as an affirmative defense, an affirmative right or otherwise) against the Debtors, the Debtor Releasees, and the Trusts (including, without limitation, the rights of setoff, subrogation and recoupment) shall not be limited, reduced, enjoined or otherwise impacted or affected in any way whatsoever; provided that Dow's right to assert any Cause of Action that arose prior to the Effective Date against the Debtors or the Trusts is solely for defensive purposes and Dow shall not have the right to assert any such pre-Effective Date Cause of Action against the Debtors or the Trusts seeking an affirmative recovery, except that Dow may file an administrative expense claim in accordance with and subject to the provisions of the Plan.

54

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000354

98.    Notwithstanding anything to the contrary in this Order, the Plan, the exhibits to the Plan, or any exhibits, schedules or other attachments to any motion or agreement providing for the sale of the Debtors' assets, any and all executory contracts with Dow are rejected as of the Effective Date of the Plan if they are still executory as of the Effective Date and Dow has no obligation to perform according to the terms of such executory contracts after their respective expiration date or the Effective Date, whichever is earlier, unless Dow consents in writing to an extension of such expiration date or rejection date or such contracts are assumed by a Court order prior to such expiration date or rejection date.

99.    Notwithstanding anything to the contrary in the Plan or this Order, Pullman Industries, Inc. ("Pullman") shall not be a Releasing Party and shall not be subject to Article XII.C of the Plan or paragraph 8 of this Order.

100.    Neither the provisions of Article XII.E of the Plan nor any other provision of the Plan shall enjoin or otherwise preclude the assertion at any time of (a) a right of setoff, recoupment or any defense (affirmative or otherwise) by Pullman in any context (whether as an affirmative defense, an affirmative right or otherwise) or (b) any right or claim of ownership, lien, or otherwise, if and to the extent that same may be asserted as to or against any property in possession of Pullman.   Such rights and/or defenses are preserved and are not reduced or impacted by the Plan or this Order.

101.    Notwithstanding anything to the contrary in the Plan or this Order, the rights and claims of Pullman shall be determined on the merits of the matters before the Court in those adversary proceedings known as Collins & Aikman Corporation, et al. v. Noble International, Ltd., Adversary Proceeding No. 07-5679, and Collins & Aikman Corporation, et al. v. Pullman Industries, Inc., Adversary Proceeding No. 07-5461 (collectively, the

55

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000355

"Pullman Adversary Cases"), and Pullman shall have an Allowed Claim under the Plan as and to the extent awarded in the Pullman Adversary Cases.

102.    The Debtors shall be deemed to have segregated and hold $980,000 (the "TTERTT Fund") for amounts allegedly owed to TTERTT Associates, L.L.C. ("TTERTT") on account of the Debtors' obligations to TTERTT pursuant to the lease between TTERTT Associates, L.L.C. and Collins & Aikman Products Co. dated February 27, 2006 (as amended from time to time, the "Lease") for the period ending November 30, 2007; provided that the TTERTT Fund shall decrease dollar-for-dollar by amounts paid after the date of this Order by the Debtors to TTERTT under the Lease, which amounts once paid will not be subject to disgorgement for any reason. TTERTT shall have the same rights in the TTERTT Fund as TTERTT would have in the amounts in the TTERTT Fund as if the TTERTT Fund were escrowed solely for the benefit of TTERTT. This provision will be binding upon any subsequently appointed chapter 7 trustee if the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code. The Debtors (on their behalf and on behalf of the Debtors' bankruptcy estates) waive, release and discharge TTERTT (and all brokers receiving commissions under the Lease) from and against any claim, demand and cause of action that they had, have or may have with respect to the Early Termination Fee paid to TTERTT on or about May 31, 2007 in accordance with Section 3.3 of the Lease including, without limitation, the unamortized broker's fee paid to Kojaian Management Corporation. The reservation of rights contained in the Debtors' letter to TTERTT dated May 31, 2007 (which gave notice of the Debtors' intent to terminate the Lease effective November 30, 2007) is withdrawn.

103.    To the extent the Debtors sell or otherwise dispose of the equipment (the "Textron Sales") that is the subject of the agreements (the "Textron Equipment") to which

56

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000356

Textron Financial Corporation and/or its affiliates (collectively, "Textron") and the Debtors or any of their respective affiliates are parties (the "Textron Agreements"), which equipment Textron has an interest in, the proceeds of such Textron Sales in an amount less than or equal to the principal amount of the Allowed Claims of Textron will be paid to Textron (collectively, the "Textron Sales Proceeds"); provided that (a) to the extent the total amount of the Textron Sales Proceeds exceeds the principal amount of the Allowed Claims of Textron, such excess shall be distributed in accordance with further order of the Court with all parties reserving their rights and defenses with respect to such excess and the treatment of Textron's remaining claim and (b) to the extent the total amount of the Textron Sales Proceeds is less than the principal amount of the Allowed Claims of Textron, Textron shall have an Allowed General Unsecured Claim in Class 5 of the Plan for such deficiency.  To the extent the Textron Equipment is not sold or otherwise disposed of as set forth in the immediately preceding sentence, the Debtors will release their rights, claims and interest in such Textron Equipment to Textron.

104.    Notwithstanding anything to the contrary in the Plan, Exhibit E to the Plan, Exhibit F to the Plan, this Order, the Notice of Rejection of Certain Executory Contracts Filed July 11, 2007 [Docket No. 7749] or any other notice or motion purporting to reject an executory contract or unexpired lease, the Master Services Agreement by and between Infocrossing, Inc. and Alicomp, a division of Alicare, Inc. (collectively, "Infocrossing"), and Collins & Aikman Products Co. dated June 1, 2003 (with all related statements of work and schedules, the "Infocrossing Agreement") shall be assumed pursuant to section 365 of the Bankruptcy Code subject to (a) the cure under section 365(b)(1)(A) of the Bankruptcy Code for the Infocrossing Agreement in the amount of $200,000 in immediately available funds being paid by the Debtors to Infocrossing no later than five business days from the date of entry of this Order

57

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000357

for all defaults under the Infocrossing Agreement and (b) the Infocrossing Agreement being amended so that the Debtors are authorized to terminate the Infocrossing Agreement without penalty upon no less than 60 days prior written notice delivered to Infocrossing by the Debtors or the Post-Consummation Trust, as applicable; provided that such written notice shall not provide for termination prior to December 31, 2007. As soon as practicable after the entry of this Order, the Debtors shall dismiss with prejudice and without costs Adversary Proceeding No. 07-04803 against Alicomp.

105.   Nothing in the Plan or this Order confirming the Plan shall release, discharge, enjoin or impact in any way the claims or the prosecution of the claims of K.J. Egleston, et al. or the members of the putative Class Action Plaintiffs (as defined in the objection of K.J. Egleston, et al. [Docket No. 4655] (the "Egleston Objection")) asserted, or to be asserted, on behalf of the putative Class Action Plaintiffs (as defined in the Egleston Objection) or in their individual capacity against non-Debtors named in the Collins & Aikman Securities Class Action (as defined in the Egleston Objection) and/or against any other non-Debtor, provided that nothing in this paragraph shall allow K.J. Egleston, et al. or the members of the putative Class Action Plaintiffs (as defined in the Egleston Objection) to pursue those claims against the Trusts and/or any persons or entities that operate or effectuate the terms of the Trusts solely in their capacity as such.

106.   Nothing in the Plan or this Order confirming the Plan shall release, discharge, enjoin or impact in any way the claims or the prosecution of the claims of MainStay High Yield Corporate Bond Fund ("MainStay") or the members of the putative Class (as defined in MainStay's objection to the Plan [Docket No. 4628] (the "MainStay Objection")) asserted, or to be asserted, on behalf of the putative Class or in their individual capacity against non-Debtors

58

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000358

named in the Noteholder Litigation (as defined in the MainStay Objection) and/or against any other non-Debtor, provided that nothing in this paragraph shall allow MainStay or the members of the putative Class (as defined in the MainStay Objection) to pursue those claims against the Trusts and/or any persons or entities that operate or effectuate the terms of the Trusts solely in their capacity as such.

107.    The Debtors and Beirne Maynard & Parsons LLP ("BMP") reserve their respective rights with respect to BMP's alleged right and claim to any constructive trust whereby the Debtors hold funds received from insurers for the benefit of BMP.

108.    Notwithstanding anything to the contrary in the Plan or this Order, the California Department of Toxic Substances Control and the Central Valley Regional Water Quality Control Board (collectively, "California Environmental Entities") shall not be Releasing Parties and shall not be subject to the obligation to provide Third Party Releases set forth herein or in Article XII.C of the Plan.

109.    Notwithstanding anything to the contrary in the Plan or this Order, the California Environmental Entities shall not be subject to the provisions of Article XII.E and Paragraph 5 of this Order.

110.    Nothing in the Plan or this Order discharges, releases or precludes any liability to the California Environmental Entities that is not a Claim.

111.    Any relief provided under the Plan or this Order to non-Debtors shall not release, discharge, enjoin or preclude any liability of such non-Debtors to the California Environmental Entities under any federal, state or local environmental law or regulation.

112.    Nothing in the Plan or this Order discharges, releases or precludes any claim of the California Environmental Entities that arises on or after the Effective Date.

K&E 11815541.12

113.    Nothing in the Plan or this Order releases any entity from liability under environmental law as the owner or operator of property located in the State of California that such entity owns or operates after the Effective Date.

114.    The Stipulation between the Debtors and the California Environmental Entities is hereby approved and incorporated in this Order by reference.

115.    Notwithstanding anything to the contrary in the Plan, the liens, if any, of the City of Evart, Michigan (the "City") arising under Michigan or local law shall continue against the Debtors' Evart, Michigan facility (the "Facility") until the validity, extent or priority of such liens is resolved between the Debtors and the City or determined by the Court or such other court with jurisdiction, subject to any rights, claims and defenses of any party with respect thereto; provided, however, that if the Facility is or becomes subject to a sale, the liens, if any, of the City shall attach to the sale proceeds of the Facility upon the closing of such sale of the Facility, subject to (a) the validity, extent and priority of the liens, if any, of the City being resolved between the Debtors and the City or determined by the Court or such other court with jurisdiction and (b) any rights, claims and defenses of any party with respect thereto.

116.    Notwithstanding anything to the contrary in the Plan or this Order, Valiant Tool & Mold, Inc. ("Valiant") shall not be a Releasing Party and shall not be subject to Article XII.C of the Plan or paragraph 8 of this Order.

117.    Neither the provisions of Article XII.E of the Plan nor any other provision of the Plan shall enjoin or otherwise preclude the assertion at any time of (a) a right of setoff, recoupment or any defense (affirmative or otherwise) by Valiant in any context (whether as an affirmative defense, an affirmative right or otherwise) or (b) any right or claim of ownership, lien or otherwise, if and to the extent that same may be asserted as to or against any tooling or molds

60

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000360

built or fabricated by Valiant. Such rights and/or defenses are preserved and are not reduced or impacted by the Plan.

118.   Any lease or contract with Comerica Leasing Corporation shall be removed from Exhibit F to the Plan.

119.   Notwithstanding anything to the contrary in this Order, the Plan, any exhibit to the Plan or any other Plan document, nothing in this Order, the Plan, any exhibit to the Plan or any other Plan document (including any provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing London Market Insurers' legal, equitable or contractual rights, if any, in any respect. The rights of London Market Insurers shall be determined under their respective insurance policies or settlements with any of the Debtors relating to such insurance policies.

120.   Nothing in the Plan or this Order shall prejudice the ability of the Court to enforce any order entered as a result of (a) the Order Appointing Fee Examiner in the Chapter 11 Cases [Docket No. 7331] or (b) any Fee Claim.

### Final Order

121.   This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

Signed on July 18, 2007

/s/ Steven Rhodes

Steven Rhodes

ZZ.     Chief Bankruptcy Judge

I hereby certify that the foregoing is a
true copy of the original on file in this
office.

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

BY _____
                              Deputy Clerk:
DATE   2|10|14

61

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000361

Form ntcconfclos

211 West Fort Street
Detroit, MI 48226

## UNITED STATES BANKRUPTCY COURT
### Eastern District of Michigan

Case No.: **05−55927−swr**
Chapter: 11

In Re: (NAME OF DEBTOR(S))
    Collins & Aikman Corporation
    250 Stephenson Highway
    Troy, MI 48083

Social Security No.:

Employer's Tax I.D. No.:
    13−3489233

## NOTICE OF CONFIRMATION AND OPPORTUNITY
## TO OBJECT TO THE CLOSING OF THE CASE

To the Creditors of the above−named Debtor:

NOTICE IS HEREBY GIVEN that the Plan of Reorganization filed on 07/09/2007 was confirmed on 7/18/07 .

The Court will find that the estate has been fully administered and will enter a final decree closing the case in 30 days unless, within that time, an objection is filed. If an objection is filed, it will be set for hearing.

**If the closing is delayed past this time period for any reason, the burden will be on the debtor's counsel to notify the clerk when it is appropriate to close the case so that unnecessary U.S. Trustee fees will not accrue.**

Dated: 7/18/07

BY THE COURT

Katherine B. Gullo , Clerk of Court
UNITED STATES BANKRUPTCY COURT

DTSC, et al. v. Jim Dobbas, Inc., et al.
AGO000362