1  Lester O. Brown, Bar No. 160828
   LBrown@perkinscoie.com
2  James G. Bernald, Bar No. 205519
   JBernald@perkinscoie.com
3  PERKINS COIE LLP
   1888 Century Park East, Suite 1700
4  Los Angeles, CA  90067-1721
   Telephone:  310.788.9900
5  Facsimile:  310.788.3399

6  Attorneys for Defendant
   West Coast Wood Preserving, LLC
7

8                   UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11 | CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, et al., | Case No. 2:14-cv-00595-WBS-EFB
12 | | **STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT WEST COAST WOOD PRESERVING, LLC**
13 | Plaintiffs, |
14 | v. |
15 | JIM DOBBAS, INC., et al., | [Filed concurrently with Notice of Motion and Motion For Summary Judgment, Declaration of Lester O. Brown, Declaration of Stephen Ryan, Request for Judicial Notice, and [Proposed] Order]
16 | Defendants. |
17 | |
18 | | Date:     January 26, 2014
19 | | Time:     2:00 p.m.
   | | Place:    Courtroom 5, 14th Floor
20 | |           501 I Street
   | |           Sacramento, CA 95814
21 | | Trial:    January 4, 2017
   | | Action Filed:   March 3, 2014
22 | |
23 | AND RELATED COUNTERCLAIMS AND CROSS-ACTIONS. |
24 | |

25

26

27

28

Defendant West Coast Wood Preserving, LLC ("WCWP") respectfully submits the following Statement of Undisputed Facts in support of its motion for summary judgment, pursuant to Federal Rules of Civil Procedure, Rule 56(a) and Local Rule of the District Court for the Eastern District of California 260:

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 1. PWP Corp. was incorporated under California law in 1972 and operated a wood treatment and preserving business at the Wickes Site in Elmira, California until September 1979. | 1. WCWP's Request for Judicial Notice ("RJN"), ¶ 7, Ex. F; Declaration of Stephen Ryan ("Ryan Dec."), ¶¶ 5-7. |
| 2. Richard Jackson was PWP Corp.'s sole shareholder and was one of its board members. | 2. Ryan Dec., ¶¶ 4, 23. |
| 3. PWP Corp. operated from its single location in Elmira, California. | 3. Ryan Dec., ¶ 5. |
| 4. In late 1978, the Wickes Corporation ("Wickes"), a multi-billion dollar corporation, expressed interest in purchasing PWP Corp.'s operations. | 4. Ryan Dec., ¶ 6; Declaration of Lester O. Brown ("Brown Dec."), ¶ 9, Ex. F. |
| 5. Negotiations began in 1979 and concluded with a Purchase Agreement on September 12, 1979. | 5. Ryan Dec., ¶ 7, Ex. A. |
| 6. Wickes purchased or assumed from PWP Corp.:<br>• The land in Elmira on which the facility was situated;<br>• The "machinery, equipment, | 6. Ryan Dec., ¶ 7, Ex. A at pp. 6-7, 22-24, and 32-41. |

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| office furniture, [and other] goods and chattels" at the facility;<br>• The buildings and improvements at the facility;<br>• The licenses for the proprietary wood preserving treatment processes utilized by PWP Corp.;<br>• PWP Corp.'s inventory;<br>• PWP Corp.'s trade accounts payable; and<br>• The PWP name and an agreement by PWP Corp. to refrain from using the trade name "Pacific Wood Preserving," except where it is necessary for it to wind-up its operations. | |
| 7.     Wickes also retained 26 of PWP Corp.'s employees. | 7.     Ryan Dec., ¶ 7, Ex. A at p. 44. |
| 8.     These employees included Marjorie Moore, the office manager and corporate secretary of PWP Corp., and Richard Brinkman, the facility superintendent. | 8.     Ryan Dec., ¶ 7, Ex. A at p. 44. |
| 9.     Wickes and PWP Corp. characterized their transaction as a "bulk sale" in the Purchase Agreement, and | 9.     Ryan Dec., ¶ 7, Ex. A at p. 25. |

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| Wickes agreed to comply with California's Bulk Sales Statutes prior to the closing. | |
| 10.   No stock was transferred to Jackson in exchange for the sale of PWP Corp.'s assets to Wickes. | 10.   Ryan Dec., ¶¶ 7 - 8, Exs. A and B. |
| 11.   At the time of the Purchase Agreement, the only other asset that PWP Corp. had, which was not being transferred to Wickes, was an undeveloped parcel of real property located in Bakersfield, California. | 11.   Ryan Dec., ¶ 12. |
| 12.   The Purchase Agreement required PWP Corp. to complete an investigation and remediation of the Wickes Site required by the California Regional Water Quality Control Board, Central Valley Region ("Regional Board") resulting from a spill of chemicals. | 12.   Ryan Dec., ¶ 7, Ex. A at pp. 26-27. |
| 13.   In 1979, PWP Corp. hired CH2M Hill to do the engineering work and sampling of soils and groundwater at the site.  PWP Corp. also hired IT Corporation and other companies to collect and dispose of the contaminated soils. | 13.   Brown Dec., ¶¶ 4 -5, Ex. A and B. |

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 14. CH2M Hill prepared a report dated May 9, 1979, on behalf of PWP Corp., which was submitted to the Regional Board. | 14. Brown Dec., ¶ 4, Ex. A. |
| 15. CH2M Hill and its contractors completed the investigation, clean up and improvements in late summer 1979. | 15. Brown Dec., ¶ 6, Ex. C. |
| 16. On November 19, 1979, the Regional Board notified PWP Corp. that the required actions had been satisfactorily completed. | 16. Brown Dec., ¶ 6, Ex. C. |
| 17. On September 11, 1980, PWP Corp. filed for dissolution in accordance with California law. | 17. RJN, ¶ 9, Ex. H. |
| 18. The dissolution was not complete until sometime in late 1981. | 18. Ryan Dec., ¶ 16. |
| 19. In October 1978, PWP Corp. had purchased a parcel of property at 5601 District Boulevard, Bakersfield, California for $250,000. | 19. Ryan Dec., ¶¶ 12 – 13; RJN, ¶¶ 10-11, Exs. I & J. |
| 20. PWP Corp. financed $177,500 of this amount with a mortgage secured by a deed of trust from the seller, Tenneco Realty Development Corporation ("Tenneco"). | 20. Ryan Dec., ¶ 14; RJN, ¶ 11, Ex. J. |

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 21. On September 19, 1980, Tenneco reconveyed its deed of trust on the Bakersfield property back to PWP Corp. | 21. RJN, ¶ 12, Ex. K. |
| 22. The "Full Reconveyance" that Tenneco filed with the Kern County Recorder's Office states that the debt secured by the deed of trust had been fully paid. | 22. RJN, ¶ 12, Ex. K. |
| 23. Pacific Wood Preserving of Bakersfield, Inc. was incorporated under Nevada law on October 27, 1978. | 23. RJN, ¶ 1, Ex. A. |
| 24. In 1979, Pacific Wood Preserving of Bakersfield, Inc. began operating a wood preserving and treatment plant at 5601 District Boulevard, Bakersfield. | 24. Ryan Dec., ¶ 20. |
| 25. On September 19, 1980, Pacific Wood Preserving of Bakersfield, Inc. executed a "Short Form Deed of Trust and Assignment of Rents" in favor of Lloyds Bank California to secure a loan in the amount of $200,000. | 25. RJN, ¶ 13, Ex. L. |
| 26. Those monies were used by Pacific Wood Preserving of Bakersfield, Inc. to purchase the property from PWP Corp., as the final payment for the property was due and owing and PWP | 26. Ryan Dec., ¶ 24. |

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| Corp. no longer had any funds to pay it. | |
| 27.    On September 21, 1981, PWP Corp. filed a "Grant Deed (Corporation)" with the Kern County Recorder's office granting the property at 5601 District Boulevard, Bakersfield, California to Pacific Wood Preserving of Bakersfield, Inc. | 27.    RJN, ¶ 14, Ex. M. |
| 28.    After Wickes took over PWP Corp.'s operations in Elmira, California, several documented chemical spills at the Wickes Site took place resulting in enforcement action by the Regional Board and DTSC's predecessor.  For example, on November 7, 1980, a large spill of toxic chemicals occurred at the Wickes Site. | 28.    Brown Dec., ¶ 10, Ex. G. |
| 29.    The Regional Board issued cleanup and abatement orders on June 7, 1982 and October 4, 1982. | 29.    Brown Dec., ¶¶ 10 - 11, Exs. G and H. |
| 30.    On September 9, 1983, Wickes proposed a Remedial Action Plan ("RAP") for the Wickes Site that required it to, *inter alia*, construct a groundwater "treatment plant utilizing an ion-exchange system," to construct a | 30.    Brown Dec., ¶ 13, Ex. J at pp. 57-58. |

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| subsurface drainage system, to remove soil in the truck loading pad area, and to cap the drying pad area with asphalt, instead of removing contaminated soils. | |
| 31.   The Regional Board, with the concurrence of DTSC's predecessor, conceptually approved the RAP on September 19, 1983. | 31.   Brown Dec., ¶ 15, Ex. L. |
| 32.   In February 1984, Wickes, DTSC, and the Regional Board entered into a Settlement Agreement and Schedule of Compliance regarding Wickes' disposal of hazardous substances at the Site. | 32.   Brown Dec., ¶ 12, Ex. I. |
| 33.   Pursuant to this settlement agreement, the State formally approved the 1983 RAP. | 33.   Brown Dec., ¶ 12, Ex. I at p. 50. |
| 34.   The settlement stated that the goals of the 1983 RAP included the elimination of all groundwater contamination (both on- and off-site) in five to ten years. | 34.   Brown Dec., ¶ 12, Ex. I at p. 51. |
| 35.   Wickes commenced the physical on-site construction of work called for by the 1983 RAP in the fall of 1983, including but not limited to the asphalt paving of the drying pad area. | 35.   Brown Dec., ¶¶ 16, 17, Ex. M at p. 97 and Ex. N at p. 109. |

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 36. Wickes also constructed the groundwater extraction and ion-exchange treatment system, which began operating in April 1984. | 36. Brown Dec., ¶ 16, Ex. M at p. 98. |
| 37. In November 1986, Wickes purchased the Collins & Aikman Corporation ("C&A") for approximately $1.16 billion. | 37. Brown Dec., ¶ 18, Ex. O. |
| 38. On February 5, 1992, DTSC and C&A entered into an Enforceable Agreement requiring C&A to propose a new RAP for the Wickes Site. | 38. Brown Dec., ¶ 20, Ex. Q. |
| 39. In May 1993, as part of its requirement for approval of this new RAP, the State required C&A to add a preliminary nonbinding allocation of responsibility to the new RAP with regard to the costs of investigating and remediating the Elmira site, assigning 100% of the responsibility to C&A as successor in interest to Wickes, in turn as successor in interest to PWP Corp. | 39. Brown Dec., ¶ 21, Ex. R at p. 147. |
| 40. On February 25, 1994, C&A proposed the new RAP which concentrated on soil contamination in the northern portion of the Site. | 40. Brown Dec., ¶ 16, Ex. M. |

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 41. DTSC's official and published Executive Summary of the 1994 RAP described it as a "Final Remedial Action Plan." | 41. Brown Dec., ¶ 16, Ex. M, pp. 87-94. |
| 42. The 1994 RAP called for, *inter alia*, the grading of soil and the installation of an asphalt cap in all areas of the Wickes Site that were not previously sealed, and the recording of a deed restriction. | 42. Brown Dec., ¶ 16, Ex. M at p. 92. |
| 43. The 1994 RAP also included a Preliminary Nonbinding Allocation of Financial Responsibility ("NBAR") stating that C&A was "[t]he responsible party." | 43. Brown Dec., ¶ 16, Ex. M at p. 93. |
| 44. In a "Final RAP Checklist" from February 1994, DTSC wrote that the response activities associated with the 1994 RAP would "result in a permanent solution to the contamination problem (*e.g.* total removal)." | 44. Brown Dec., ¶ 22, Ex. S at p. 149. |
| 45. In March 1996, DTSC certified implementation of the 1994 RAP at the Wickes Site. | 45. Brown Dec., ¶ 23, Ex. T. |
| 46. In this "Remedial Action Certification Form" (the "1996 RAC") | 46. Brown Dec., ¶ 23, Ex. T at pp. 158, 159, 162, and 163. |

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| which was signed by the DTSC Project Manager, Unit Chief, and Branch Chief, and published to all the interested parties, DTSC confirmed that:<br>• Two Remedial Actions Plans (RAPs) have been completed to address the contamination";<br>• The "Response Action Taken on Site" was a "Final Remedial Action";<br>• The remedial action taken at the site between 1983 and 1996 consisted of soil excavation and off-site disposal, an asphalt cap, groundwater extraction and treatment in an on-site chemical treatment plant, and a deed restriction;<br>• C&A spent approximately $5.5 million in response costs associated with the 1994 RAP; and<br>• "DTSC has determined that all appropriate removal/remedial actions have been completed and that all acceptable engineering | |

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| practices were implemented." | |
| 47. In 2009, DTSC commissioned a Removal Action Workplan ("RAW"), which was finalized in July 2010. This RAW called for soil excavation, off-site disposal, and groundwater monitoring. The RAW does not cite to any post-1982 spills or leaks of hazardous substances at the Wickes Site. | 47. Brown Dec., ¶ 25, Ex. V, at pp. 185, 186, 202, 204, 205, and 207. |
| 48. The July 2010 RAW was implemented by DTSC in 2011-2012. | 48. Brown Dec., ¶ 26, Ex. W. |
| 49. In its Complaint, DTSC alleges that it has spent in excess of $2 million since 2007 to remediate the Wickes Site. | 49. Complaint, ECF No. 1 at ¶ 31, p. 8. |
| 50. With the exception of Jackson, PWP Corp. and Pacific Wood Preserving of Bakersfield, Inc. had different shareholders and board members. | 50. Ryan Dec., ¶ 23; RJN, ¶¶ 1 and 7, Exs. A and F. |
| 51. In September 2010, for the first time, DTSC sent a letter to WCWP alleging that it was a potentially responsible party ("PRP") for the cleanup of hazardous substances at the Wickes Site as the successor to PWP Corp. | 51. Brown Dec., ¶ 27, Ex. X. |

| UNDISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 52. WCWP denied any such responsibility. | 52. Brown Dec., ¶ 28, Ex. Y. |
| 53. DTSC's website identifies C&A as the responsible party at the Wickes Site. | 53. Brown Dec., ¶ 29, Ex. Z. |
| 54. WCWP, both in its official pronouncements and industry reporting, tried to ensure that its operations were not confused with the Wickes' operations in Elmira. | 54. Ryan Dec., ¶ 25, Ex. C. |
| 55. Pacific Wood Preserving of Bakersfield, Inc. emphasized in advertisements that it was a "brand new" wood treating company. | 55. Ryan Dec., ¶ 25, Ex. C. |
| 56. In November 2013, Pacific Wood Preserving of Bakersfield, Inc. converted from a corporation into a limited liability company entitled West Coast Wood Preserving, LLC ("WCWP"). | 56. RJN, ¶ 4, Ex. E. |
| 57. There have been no wood preserving or treatment operations at the Wickes Site since Wickes closed the site in August 1982. | 57. Brown Dec., Exs. V, p. 185, and M, pp. 87 and 101. |

1 | DATED: December 15, 2014           **PERKINS COIE LLP**

3 | By:/s/ Lester O. Brown
     Lester O. Brown

  | Attorneys for Defendant
  | West Coast Wood Preserving, LLC