1  Lester O. Brown, Bar No. 160828
   LBrown@perkinscoie.com
2  James G. Bernald, Bar No. 205519
   JBernald@perkinscoie.com
3  PERKINS COIE LLP
   1888 Century Park East, Suite 1700
4  Los Angeles, CA  90067-1721
   Telephone:  310.788.9900
5  Facsimile:  310.788.3399

6  Attorneys for Defendant
   West Coast Wood Preserving, LLC
7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11 | CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, et al., | Case No. 2:14-cv-00595-WBS-EFB
12 | | **DECLARATION OF STEPHEN RYAN IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT WEST COAST WOOD PRESERVING, LLC**
13 | Plaintiffs, |
14 | v. |
15 | JIM DOBBAS, INC., et al., | [Filed concurrently Notice of Motion and Motion For Summary Judgment, Statement of Undisputed Facts, Declaration of Lester O. Brown, Request for Judicial Notice, and [Proposed] Order]
16 | Defendants. |
17 | |
18 | | Date:  January 26, 2015
19 | | Time:  2:00 p.m.
   | | Place: Courtroom 5, 14th Floor
20 | |        501 I Street
   | |        Sacramento, CA 95814
21 | | Trial: January 4, 2017
   | | Action Filed: March 3, 2014
22 | |
23 | AND RELATED CROSS-ACTIONS. |
24

25

26

27

28

LEGAL124440526.1

RYAN DECLARATION
2:14-cv-00595-WBS-EFB

I, Stephen Ryan, declare as follows:

1. I am a former corporate officer of Pacific Wood Preserving of Bakersfield, Inc., which later converted into West Coast Wood Preserving, LLC.

2. I make this declaration in support of West Coast Wood Preserving, LLC's Motion for Summary Judgment.

3. I have personal knowledge of the facts recited herein, and if called as a witness, could and would testify competently thereto.

4. I knew Richard Jackson since the early 1970s. I started working at Pacific Wood Preserving Corporation ("PWP Corp.") in 1977 or 1978. At PWP Corp., I was a salesman and became the manager in 1979. My responsibilities included overseeing sales and production. Richard Jackson was the owner and president of PWP Corp.

5. PWP Corp. operated a wood treatment and preserving business from its single location in Elmira, California.

6. In late 1978, the Wickes Corporation ("Wickes") expressed interest in purchasing PWP Corp.'s operations.

7. Negotiations began in earnest in 1979 between PWP Corp. and Wickes and concluded with the sales agreement of September 12, 1979 (the "Purchase Agreement"). A true and correct copy of the Purchase Agreement is attached to this Declaration as Exhibit A. The Purchase Agreement is a business record of PWP Corp., which was prepared and maintained in the ordinary course of its business.

8. Contemporaneous with the Purchase Agreement, Wickes and Richard Jackson entered into a separate consulting Agreement (the "Consulting Agreement"). A true and correct copy of the Consulting Agreement is attached to this Declaration as Exhibit B. The Consulting Agreement is a business record of PWP Corp., which was prepared and maintained in the ordinary course of its business.

9. Before Wickes would complete the purchase, it insisted that PWP Corp. complete the investigation and remediation of the Elmira site required by the California Regional Water Quality Control Board, Central Valley Region ("Regional Board") resulting from a spill of chemicals.

10. I recall that PWP Corp. spent approximately $100,000 investigating, remediating and improving the Elmira site before Wickes took it over.

11. The Purchase Agreement required that certain monies be reserved in the event the remediation of the Elmira site was not completed to the satisfaction of the Regional Board. Because the State formally approved PWP Corp.'s remediation of the site, PWP Corp. was able to receive these monies back from Wickes.

12. At the time of the Purchase Agreement, the only other asset that PWP Corp. had, which was not being transferred to Wickes, was an undeveloped parcel of real property in Bakersfield, California with a street address of 5601 District Boulevard.

13. PWP Corp. had purchased the Bakersfield real property in October 1978.

14. PWP Corp. financed part of the purchase price of the Bakersfield real property with a mortgage secured by a deed of trust from the seller, Tenneco Realty Development Corporation.

15. The mortgage required three annual payments of one third of the purchase price.

16. On September 11, 1980 PWP Corp. filed for dissolution in accordance with California law. PWP Corp.'s dissolution was not complete until sometime in late 1981.

17. From shortly after the time of the Purchase Agreement, neither Richard Jackson nor I had any further involvement or concerns about the Elmira

1  site, despite the existence of the Consulting Agreement between Jackson and
2  Wickes.

3      18.    In 1978, a group of investors approached Richard Jackson about
4  forming a new company to provide wood treatment and preserving services to the
5  growing Bakersfield market.

6      19.    This new company was incorporated as Pacific Wood Preserving of
7  Bakersfield, Inc. ("PWP-Bakersfield").

8      20.    In 1979, PWP-Bakersfield began operating a wood preserving and
9  treatment plant at 5601 District Boulevard, Bakersfield, California.

10      21.    After PWP Corp.'s sale of assets to Wickes, Richard Jackson and I
11  focused our energies on the development of PWP-Bakersfield.

12      22.    I worked at PWP-Bakersfield from 1979 until 1993.  At PWP-
13  Bakersfield, I was the General Manager.  My responsibilities included sales,
14  purchasing, production and personnel.

15      23.    With the exception of Richard Jackson, PWP Corp. and PWP-
16  Bakersfield had different shareholders and board members.  Richard Jackson was
17  the shareholder of PWP Corp.  The shareholders of PWP-Bakersfield were Richard
18  Jackson, Frank Boge, Darrell Nicholas, Alex Saucido and Jeff Rodgers.

19      24.    In September 1980, PWP-Bakersfield obtained a loan from Lloyds
20  Bank California.  This loan was used by PWP-Bakersfield to purchase the
21  Bakersfield property from PWP Corp., as the final payment for the property was
22  due and owing and PWP Corp. no longer had any funds to pay it.

23      25.    PWP-Bakersfield– both in its official pronouncements and industry
24  reporting – tried to ensure that its operations were not confused with the Wickes
25  operations in Elmira.  For example, around the time it started operations PWP-
26  Bakersfield placed an advertisement in several publications announcing that it was
27  a brand new company.  A true and correct copy of one such advertisement is
28  attached to this Declaration as Exhibit C.  This advertisement is a business record of

1  PWP-Bakersfield, which was prepared and maintained in the ordinary course of its
2  business.
3      26.   Since Richard Jackson was a pioneer, and well-known in the wood
4  preserving industry, some of PWP-Bakersfield's marketing materials emphasized
5  Mr. Jackson's long history of involvement in the industry and inadvertently
6  referenced PWP Corp.

   I declare under penalty under the laws of the United States of America that
   the foregoing is true and correct.

   Executed on December 11, 2014 at *Bakersfield*, California.

   _____
   Stephen Ryan