# Exhibit B

<u>CONSULTING AGREEMENT</u>

This Agreement entered as of the _____ day of _____,
1979, by and between THE WICKES CORPORATION, a Delaware corpora-
tion, hereinafter referred to as the "Corporation", and RICHARD
JACKSON, hereinafter individually referred to as the "Consultant."

RECITALS

This Agreement is entered into with reference to the
following facts:

1.   RICHARD JACKSON is principal stockholder and instru-
mental in the development of the business of PACIFIC WOOD
PRESERVING CORPORATION, a California corporation, and which is
hereinafter referred to as the "Company."

2.   Contemporaneously herewith, the Company and the Corpor-
ation are consummating a transaction by which certain of the
assets of the Company are being sold to the Corporation.

3.   The assets of the Company being sold to the Corpora-
tion comprise substantially all of the assets used by the
Company in its business of the chemical preserving of lumber
in or near the City of Elmira, California.

EXHIBIT H

WCWP000194

## AGREEMENT

NOW, THEREFORE, in order to induce the Corporation to consummate the purchase of the assets, as described above, and as additional consideration therefore, and for the further consideration hereinafter set forth to be paid to Consultant, Consultant and the Corporation agree as follows:

1.    The Consultant agrees that he will render consulting services to the Corporation for a term of not less than six (6) months nor more than twelve (12) months, commencing September 12, 1979, in the area which is served by the Company which is the City of Elmira, California, and surrounding territory, hereinafter referred to as "said service area." The Consultant will serve the Corporation diligently and faithfully in its business and use his best efforts to give advice to the Corporation, its officers and designated personnel and to promote the interests of the Corporation and will personally perform at such reasonable times and places as the Corporation may direct in connection with its business, subject to the provisions of this Paragraph 1. The services to be performed by the Consultant to the Corporation shall be limited solely to said service area unless the Consultant shall agree to perform designated services for the Corporation in other locations. The Consultant shall be required to be available for consulting services on a day-to-day basis. The Consultant's services shall not preclude him from

-2-

WCWP000195

-56-

absenting himself from Elmira, California for vacations and other reasonable purposes.

2.    In consideration of the consulting services to be performed pursuant to this Agreement by the Consultant to the Corporation, the Corporation shall pay the Consultant an annual fee in the amount of Three Thousand Seven Hundred Fifty Dollars ($3750) per month payable monthly, during the term of the consultation period.  In addition to said Consultant's fee, the Corporation shall reimburse the Consultant for all reasonable and necessary travel, living and other expenses incurred in the performance of the service described in Paragraph 1 in accordance with the then prevailing policies of the Corporation; provided, however, that the Consultant shall not be required to travel outside of said service area without Consultant's consent.

3.    The Consultant shall perform his services to the Corporation solely as an independent contractor and nothing herein shall at any time be so construed as to create the relationship of employee, partners, principal and agent or joint ventures as between the Consultant and the Corporation.

4.    The Consultant's rights under this Agreement shall not be assignable by the Consultant, it being understood and agreed that the Services to be rendered by the Consultant to the Corporation are personal insofar as the Consultant is

-3-

WCWP000196

concerned, and no assignee shall be permitted to perform such services for or on behalf or in place of the Consultant. The Corporation's rights under this Agreement to receive the consulting services of the Consultant shall be assignable by the Corporation to any of its subsidiary or affiliated companies or any other permitted assignee to whom the assets formerly owned by the Company or a substantial portion thereof have been sold or otherwise transferred, and in the event of any such assignment, the Corporation shall remain fully liable to perform the obligations to be kept and performed by the Corporation pursuant to the terms of this Agreement.

5.   This Agreement supersedes all prior agreements and understandings between the Corporation and the Consultant with respect to the consulting services contemplated hereby and may not be changed, or terminated orally.  No change, termination or attempted waiver of any of the provisions of this Agreement relating to the Consultant's services and his compensation therefor and matters related thereto shall be of any effect unless the same is set forth in writing and duly executed by the party against whom it is sought to be enforced.

6.   In consideration of the Corporation paying the sum of Seventy five Thousand and 00/100 Dollars ($75,000) to the Consultant, payable as hereinafter provided, and in order

-4-

WCWP000197

to induce the Corporation to consummate the purchase of the assets as described above, and as additional consideration therefore, the Consultant agrees with the Corporation that:

A.   Consultant shall not, directly or indirectly, own, participate in the ownership (except ownership of stock in any corporation whose stock is listed on the Pacific, New York or American stock exchanges), management, operation or control of, or be connected in any manner (except by virtue of any lessor-lessee or landlord-tenant relationship) with any business of any type and character in competition with the Corporation in the chemical preservations of lumber, as such was conducted by the Company prior to the commencement of business on September 12, 1979.  In addition, Consultant agrees not to solicit the present customers, suppliers of the Company for services or products presently furnished by or to the Company.

B.   The period of time during which Consultant agrees not to engage in such activities shall be three (3) years from September 12, 1979.

C.   The geographic area within which Consultant agrees not to so engage in such activities shall be that circular area determined with a radius of two hundred

-5-

WCWP000198

and fifty (250) miles from the Company's present location in Elmira, California, as it stands on the date hereof ("Circumscribed Area").

7.  In the event that any one or more of the provisions contained in paragraph 6 above shall, for any reason, be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision had not been contained herein.  If, moreover, any one or more of the provisions contained in said paragraph shall, for any reason, be held to be excessively broad as to time, duration, geographical scope, activity or subject, it shall be construed by limiting and reducing it, so as to be enforceable to the extent compatible with the then existing applicable laws of the State of California.

8.  The amounts to be paid by the Corporation to Consultant as set forth in Paragraph 6 as a fee for not competing with Wickes above shall be paid to Consultant in equal successive annual installments of Twenty-five Thousand Dollars ($25,000) the first payment commencing September 12, 1980 and continuous each year thereafter for the term hereof.  The amounts paid to Consultant in the first annual install ment shall be reduced by the amount of consulting fee paid pursuant to Section 2 hereof.

-6-

WCWP000199

9.   The covenants of Consultant as set forth in paragraph 6 above shall be assignable by the Corporation to any of its subsidiary or affiliated corporations or any other assignee to whom the assets acquired by the Corporation from the Company, or a substantial part thereof, are sold or otherwise transferred.

IN WITNESS WHEREOF, the undersigned have executed this Agreement this 12th day of September, 1979.

THE WICKES CORPORATION,
a Delaware corporation

BY _____
        C. A. Johnson
     Executive President

CONSULTANT

BY _____
        Richard Jackson

-7-

WCWP000200

Pacific Wood Preserving Co.
Schedule of Mach. & Equip.
Page 2

| | |
|---|---|
| (22) Hyster H90C, 9,000 lb. pneu forklift diesel engine & side shift S/N C5D121435 | 919. |
| Lincoln 225 amp. welder | 128. |
| Duracraft drill press | 165. |
| P & H model 1224 top & side Rosser head type incisor w/feed & offeed table S/N 74-1 | 4,045. |
| 30' - 4 Strand chain conveyor w/motor | 588. |
| Radial arm cut off saw w/24" blade & conveyor | 919. |
| Custom cut off saw | 730. |
| Lincoln 225 amp. AC-DC portable gas powered arc welder S/N A775954 | 625. |
| tram cars | 294. |
| Dewalt radial arm cut off saw w/table | 625. |
| Horizontal drilling machine | 110. |
| Electrical work on installing machinery | 7,251. |
| Miscellaneous shop equipment & tools | 7,552. |
| Dog ear machine | 638. |
| 3/4 T. Chevrolet pickup truck | 1,103. |
| Office equipment | 5,552. |
| Chain saws (2) | 300. |
| Paint-O-Matic | 7,718. |

250,573.

Schedule A(2)

WCWP000201

-62-