Exhibit Q

## BEFORE THE

## STATE OF CALIFORNIA

## ENVIRONMENTAL PROTECTION AGENCY

## DEPARTMENT OF TOXIC SUBSTANCES CONTROL

| | |
|---|---|
| IN RE WICKES COMPANIES, INC. <br><br> **ELMIRA SITE** | **ENFORCEABLE AGREEMENT** |

This **ENFORCEABLE AGREEMENT** is a confidential agreement to compromise ("Agreement") made by and between WICKES COMPANIES, INC., a Delaware corporation ("Wickes") and the STATE OF CALIFORNIA ENVIRONMENTAL PROTECTION AGENCY, DEPARTMENT OF TOXIC SUBSTANCES CONTROL ("Department"), (collectively the "Parties") effective as of February 5, 1992.

### *RECITALS:*

**A.** **Site** This Agreement pertains to the former Wickes Forest Industries facility, located at 147 "A" Street Elmira, California (the "Site"). The Site was acquired by Wickes (formerly known as The Wickes Corporation) in 1979 from Pacific Wood Preserving Corporation and, between 1979 and 1981, was operated as a wood treatment facility by the Wickes Forest Industries division of The Wickes Corporation.

**B.** **1983 Remedial Action Plan Submission** By letter of September 9, 1983, as amended by letter of September 29, 1983, Wickes Forest Industries submitted a Remedial Action Plan to the Department's predecessor agency, the California Department of Health Services ("DOHS"), addressing contamination of the Site (the "1983 Remedial Action Plan").

**C.** **1984 Order and Schedule of Compliance**
On February 26, 1984, DOHS issued to The Wickes Corporation an Order and Schedule of Compliance (the "Order") pursuant to Health and Safety Code section 25187. The Order adopted and incorporated a Settlement Agreement and Schedule of Compliance entered into by and between Wickes Forest Industries, the California Regional Water

**ENFORCEABLE AGREEMENT**
**WICKES COMPANIES, INC. (ELMIRA SITE)**

Quality Control Board, Central Valley Region ("Regional Board") and DOHS (the "1984 Agreement"), addressing soil, surface water and groundwater contamination identified in the 1983 Remedial Action Plan, and resolving all violations of law then known, suspected, or alleged by DOHS and the Regional Board, as set forth in the 1984 Agreement.

D.  **1983 Remedial Action Plan Approval**  DOHS and the Regional Board approved the stormwater management, groundwater treatment, and contaminated soils removal and containment elements of the 1983 Remedial Action Plan, and any subsequent amendments to the 1983 Remedial Action Plan agreed to in writing by the parties.

E.  **1984 Bankruptcy Order**  On April 24, 26 and 30, 1982 respectively, Wickes Companies, Inc., The Wickes Corporation (now known as Wickes Companies, Inc.), Gamble-Skogmo, Inc., and affiliates filed Chapter 11 proceedings in the United States Bankruptcy Court, Central District of California. On September 21, 1984, that Court issued an Order Confirming Plan (the "Bankruptcy Order") in said bankruptcy proceedings.  Among other things, Paragraph 2 of the Bankruptcy Order discharges Wickes from any debt that arose before September 21, 1984, whether such debt was known, unknown, fixed, contingent, matured, unmatured, liquidated, or unliquidated.  Additionally, Paragraph 3 of the Bankruptcy Order enjoins the commencement or continuation of any action, the employment of process, and the doing of any act to collect, recover or offset any debt discharged by the Bankruptcy Order, and further provides that any judgment at any time obtained is void to the extent that such judgment is a determination of the personal liability of Wickes with respect to any debt discharged by the Bankruptcy Order.  The Department does not agree with the contentions of Wickes as set forth in this Paragraph.

F.  **Bankruptcy Order Contentions**  Wickes contends that any and all obligation it may have had to investigate or to remediate or otherwise to respond to soil, surface water, or groundwater contamination at, around or associated with the Site, beyond those investigation and remediation efforts specifically identified in the 1983 Remedial Action Plan, constitutes a pre-petition debt, and was and is discharged by the Bankruptcy Order.  The Department does not agree with the contentions of Wickes as set forth in this Paragraph.

DTSC, et al. v. Jim Dobbas, Inc., et al.
DTSC010100

ENFORCEABLE AGREEMENT
WICKES COMPANIES, INC. (ELMIRA SITE)

**G.   Subsequent Investigations/Remedial Actions**   Without waiving its position that any contamination Wickes may have had with respect to any contamination or other condition at, around or associated with the Site not expressly identified in the 1983 Remedial Action Plan constitutes a pre-petition debt discharged pursuant to the Bankruptcy Order, at DOHS' request, Wickes agreed to and did perform additional site investigation regarding the matters covered in this Agreement, and provided several written and oral reports and proposals regarding such matters to DOHS and the Department.   Additionally, Wickes was authorized to and on April 15, 1992 did install a gunite (shotcrete) cover in that portion of the containment building which previously had a floor consisting of compacted soil.

**H.  Confidential Settlement Negotiations**  In the course of the process whereby Wickes provided DOHS and the Department with information as described in the preceding paragraph, the Parties have participated in meetings and conversations on May 29, 1992; April 8, 1992; February 5, 1992; December 20, 1991; August 15, 1991 and May 14, 1991, and during those meetings and conversations Wickes has provided additional information to DOHS and the Department regarding the matters covered in this Agreement.  These meetings and the provision of information by Wickes have been pursuant to and in the nature of confidential settlement negotiations.   Nothing reported or stated by Wickes or its consultants or representatives in those meetings or correspondence constitutes an admission, waiver, or limitation of defenses, and such reports and information cannot be used for any purpose whatsoever except for the intended purpose of settling the current dispute between the Parties without the necessity of litigation.

**I.   Dispute as to Facts and Law**  On January 17, 1992, the Department delivered a letter to Wickes stating that, as a result of information provided by Wickes, new facts have been discovered within the meaning of Paragraph XV of the 1984 Agreement, and that further investigation and/or remediation may be necessary at the Site.   The Department asked Wickes to prepare another Remedial Action Plan, which meets the requirements of section 25356.1 of the Health and Safety Code as now amended and in effect, and an Initial Study pursuant to the California Environmental Quality Act ("CEQA"). Wickes maintains that no new facts have been discovered and that it is under no legal or other obligation to perform any further investigation or remediation work on or related to the Site, or to prepare a new Remedial Action Plan or an Initial Study for such work, as a result of the discharge of any such obligations

DTSC, et al. v. Jim Dobbas, Inc., et al.

DTSC010101

ENFORCEABLE AGREEMENT
WICKES COMPANIES, INC. (ELMIRA SITE)

through the Bankruptcy Order, the compromise and satisfaction of
any such obligations through the 1984 Agreement, and for other
reasons.    Neither the Department nor Wickes agrees with the
contentions of the other party as set forth in this Paragraph.

   J.   **Stay / 45-Day Period**   The Department contends that its
letter of January 17, 1992 initiated the 45-day period during which
the Parties must seek agreement prior to initiating judicial
action, as provided for in Paragraph XV of the 1984 Agreement.
Solely for purposes of this Confidential Agreement to Compromise,
and without conceding or agreeing on this date, the 45-day period
is presumed to have commenced on January 17, 1992.


   *NOW THEREFORE, in   consideration  of   the   foregoing  and*

*of the mutual promises hereinafter  set forth,  the Parties agree*

*as follows:*


   **1.0  Discussions and Correspondence**  The Parties will continue
to meet and exchange information in good faith to attempt to
resolve their differences.

   **1.1  Discussions between the Parties**   These meetings shall
continue  to  be  in  the  nature  of  confidential  settlement
negotiations, and nothing stated or reported by Wickes or its
consultants or representatives in such meetings constitutes an
admission, waiver or limitation of defenses, and the information
discussed at such meetings cannot be used for any purpose
whatsoever except for the intended purpose of settling the current
dispute between the Parties.

   **1.2   Correspondence between the Parties**   The information
exchanged pursuant to these confidential settlement negotiations
and/or in performance of this Agreement, including written reports
and  other  documents  and  related  correspondence,  shall  not
constitute an admission, waiver or limitation of defenses by Wickes
in any civil, criminal or administrative action against Wickes by
the Department or any other entity.  However, notwithstanding any
other provision of this Agreement, the Department may use the
information submitted by Wickes pursuant to Paragraphs 5.0, 6.0 and
7.0 of this Agreement as evidence of site conditions in an action
for injunctive relief and/or cost recovery.  In such event, Wickes

DTSC, et al. v. Jim Dobbas, Inc., et al.
DTSC010102

-131-

ENFORCEABLE AGREEMENT
WICKES COMPANIES, INC. (ELMIRA SITE)

shall have the opportunity to submit evidence to contest, explain or supplement any evidence used by the Department.

**2.0   Legal Relief**   In the event that Wickes and the Department ultimately are not able to reach agreement regarding further Site investigation and/or remediation, the Parties hereto acknowledge that either or both Parties may seek relief through legal proceedings.

**3.0   Paragraph XV (1984 Agreement): 45-Day Period**
The 45-day period that is deemed to have commenced on January 17, 1992, is hereby stayed as of February 5, 1992, and shall not recommence except pursuant to the terms of this Agreement. If the period recommences, it shall resume with twenty-seven (27) days remaining (the number of days remaining when temporarily stayed by this Agreement).

**4.0   Stay in Effect / Termination of Stay**   The stay shall remain in effect during such time as the work described in Paragraphs 5.0, 6.0 and 7.0 below is performed and the Parties continue to negotiate in good faith.

Additionally, Wickes may at any time and without cause terminate its obligations under Paragraphs 5.0 and 7.0 of this Agreement by providing written notice of such termination to the Department, whereby the 45-day period shall recommence, and the Department will be relieved of its obligations under Paragraphs 6.0 and 9.0 of this Agreement. Likewise, prior to Wickes' performance under Paragraph 5.0, the Department may, without cause, terminate its obligations under Paragraphs 6.0 and 9.0 of this Agreement by providing written notice of such termination to Wickes, whereby the 45-day period will recommence and Wickes will be relieved of its obligations under Paragraphs 5.0 and 7.0 of this Agreement. All other obligations and agreements of the Parties under this Agreement shall survive such termination.

**5.0   Preliminary Remedial Action Plan / Workplan**   Wickes shall prepare a preliminary, non-binding draft Remedial Action Plan ("Preliminary Remedial Action Plan") and a corresponding draft Initial Study under CEQA, and, within ninety (90) days after this Agreement is signed by the last of the Parties so to sign, Wickes shall submit both documents to the Department for its review and comment in accordance with Paragraph 6.0 below. With good cause shown, Wickes may have an extra thirty (30) days to submit these documents. Wickes has sent the Department a copy of its Workplan for the Preliminary Remedial Action Plan, which outlines the scope of the Preliminary Remedial Action Plan. The Department expressly

- Page 5 of 10 -

DTSC, et al. v. Jim Dobbas, Inc., et al.
DTSC010103

-132-

ENFORCEABLE AGREEMENT
WICKES COMPANIES, INC. (ELMIRA SITE)

considers the Preliminary Remedial Action Plan to be nonbinding, and by agreeing to and preparing the Workplan, the Preliminary Remedial Action Plan and the Initial Study, Wickes shall not become obligated to undertake further work or study or to prepare any final Remedial Action Plan, or to implement any course of action described in the Preliminary Remedial Action Plan or Initial Study. The Department shall approve Wickes' Workplan concurrently with the Department's execution of this Agreement, and this Agreement, except the confidentiality provisions hereof, shall be null and void and of no further effect in the event that the Department does not timely approve Wickes' Workplan.

6.0 **Approval by the Department** The Department shall, within sixty (60) calendar days after its receipt of the Preliminary Remedial Action Plan and Initial Study, provide Wickes with a full and complete written response to both documents stating, at a minimum, the following:

> a. Whether the Department is satisfied with the adequacy of any remedial measures identified in the Preliminary Remedial Action Plan, and if not, what specific modifications are necessary;

> b. Whether following any modification of the Preliminary Remedial Action Plan as may be necessary to conform to the requirements of section 25356.1 of the Health & Safety Code, the Department would issue the Preliminary Remedial Action Plan for public review;

> c. Whether the Department will issue a Negative Declaration for public review and comment in accordance with CEQA, or will require preparation of an Environmental Impact Report.

7.0 **Final Remedial Action Plan / Public Comment** Within 30 calendar days after receipt of the Department's full and complete written response pursuant to the preceding Paragraph, Wickes shall provide the Department with written notice stating whether Wickes will proceed with the development of a final draft Remedial Action Plan to be submitted for public comment.

8.0 **Recommencement of 45-Day Period** In the event that any of the time periods provided in the preceding Paragraphs expire without the required written notice being received by the other party, the 45-day period described above at Paragraph 3.0 shall recommence.

DTSC, et al. v. Jim Dobbas, Inc., et al.
DTSC010104

ENFORCEABLE AGREEMENT
WICKES COMPANIES, INC. (ELMIRA SITE)

**9.0   Public Statements / Facts Sheets**   During the period of stay pursuant to this Agreement, the Department shall not issue any public statements or fact sheets pertaining to the Site or adjacent property, provided however that the Department can respond to public inquiry.

**10.   Authorization for Upgrading Groundwater Treatment System and Installation of Gunite Cover**   As set forth and described in Attachment A hereto, consisting of the following:

> 1)   *A letter, consisting of two pages, dated February 10, 1992 to Harry Sneh, (on behalf of the Department) from Bruce H. Edelson (on behalf of Wickes) with the subject, entitled "Containment Building – Soil Containment Work Plan", together with attachments, and*
> 2)   *A document consisting of 26 pages plus tables and figures, dated March 29 1991, prepared by Levine/Fricke, entitled "Results of Hydrogeologic Investigations and Evaluation of Remedial Action Alternatives for the Former Wickes Forest Industries Facility Elmira, California" together with its transmittal letter, dated March 29, 1991 consisting of one page, with the subject entitled the same, and a letter consisting of four pages, dated June 18, 1991 to Bruce H. Edelson, (on behalf of Wickes) from Harry N. Sneh (on behalf of the Department), with the subject entitled "Wickes Forest Industries – Elmira Site",*

Wickes is authorized but not required to proceed to upgrade its existing groundwater treatment system and was authorized but not required to install a gunite (shotcrete) cover in that portion of the containment building which currently has a floor consisting of compacted soil.   Wickes has installed a gunite cover in the containment building as noted in Recital G hereof, and this shall be a final and permanent remedy in accordance with the 1983 Remedial Action Plan, for soils covered by the containment building.   Attachment A is incorporated herein and made a part of this Agreement.   To the extent that a Remedial Action Plan may be required for the installation of the gunite cover or upgrading the groundwater treatment system, the Department considers the work to be within the scope of the 1983 Remedial Action Plan as approved by DOHS, and Wickes need not provide any further Remedial Action Plan or CEQA documentation before proceeding with such work.   If Wickes decides to proceed with the groundwater treatment system upgrade described in Attachment A, it will do so according to schedules to be agreed upon by Wickes and the Department.

DTSC, et al. v. Jim Dobbas, Inc., et al.
DTSC010105

ENFORCEABLE AGREEMENT
WICKES COMPANIES, INC. (ELMIRA SITE)

    **11.** **Settlement of Dispute / Reservation of Rights**  Wickes and
the Department freely enter into this Agreement in order to attempt
to resolve an ongoing dispute as to the nature of investigatory
and/or remedial action, and associated plans and studies, that may
be required for the Site, thereby attempting to avoid recourse to
judicial remedies.  Neither this Agreement nor any work performed
or document or information prepared or exchanged pursuant hereto
constitutes an admission, waiver, or limitation of defense.  This
Agreement cannot be used for any purpose whatsoever except for the
intended purpose of settling the current dispute between the
Parties without the necessity of litigation.  All rights,
privileges and protections Wickes has and may have under the
Bankruptcy Order are preserved and are not affected or eliminated
in any way by this Agreement or any actions undertaken pursuant
hereto.

    **12.** **Confidentiality**  The Parties each covenant and agree
to maintain the confidentiality of this Agreement, and to make
no voluntary statement or take any other action whatsoever which
might reasonably be expected to result in disclosures of or any
publicity concerning the terms of this Agreement, except to the
extent disclosure is required by applicable law or court order
or pursuant to future written agreement of the Parties.
This Paragraph does not preclude disclosure by Wickes to its
consultants and contractors as may be appropriate to effectuate
this Agreement.

    **13.** **Entire Understanding / Duplicate Originals**  The Parties
hereto each warrant that no promise, inducement or agreement not
expressed herein has been made to it in connection with this
Agreement, and that this Agreement represents the entire
understanding of the Parties, as to the matters contained herein.
No prior oral or written understanding shall be of any force or
effect with respect to the matters covered in this Agreement. This
Agreement may not be modified or altered except in writing signed
by the Party or Parties bound.  Each Party hereto acknowledges and
agrees that it has consulted with and has been represented by legal
counsel with respect to the matters which are the subject of this
Agreement, and has entered into this Agreement freely and
voluntarily.  All executed copies of this Agreement are duplicate
originals, equally admissible in evidence.

DTSC, et al. v. Jim Dobbas, Inc., et al.
DTSC010106

ENFORCEABLE AGREEMENT
WICKES COMPANIES, INC. (ELMIRA SITE)

**14. _Interpretation / Severability_** This Agreement shall be administered and interpreted under the laws of the State of California, without regard to conflicts of laws principles. If any part of this Agreement is found to be unenforceable under applicable laws, that part shall be inoperative but the remainder of the Agreement shall remain in full force and effect.

**15. _Successors_** This Agreement shall be binding upon the Parties and their successors and assigns, and all protections, privileges and rights hereunder apply and shall inure to the benefit of Wickes and its related, affiliated, parent and subsidiary entities, and their successors and assigns.

**16. _Notices_** All notices or other formal communications that either Party may give to the other under or in connection with this Agreement shall be in writing, and shall be deemed to have been given upon placement in the United States mail or a reputable overnight delivery service, such as Federal Express or Airborne Express, or upon the other Party's receipt of a facsimile copy, and shall be sent to the following:

If to the Department:
    Mr. James L. Tjosvold, Chief
    Responsible Party Unit, Site Mitigation, Region 1
    Department of Toxic Substances Control, CAL/EPA
    10151 Croydon Way, Suite 3
    Sacramento, California 96827-2100

With a copy to:
    David Kimbrel Henderson, Esq.
    Office of Legal Counsel
    Department of Toxic Substances Control, CAL/EPA
    P.O. Box 806
    Sacramento, California 95812-0806

If to Wickes:
    Donald W. Vagstad, Esq.
    General Counsel
    Corporate Division Wickes Companies, Inc.
    3340 Ocean Park Boulevard, Suite 2000
    Santa Monica, California 90405

With copy to:
    Christopher J. McNevin, Esq.
    Pillsbury Madison & Sutro
    725 South Figueroa Street, Suite 1200
    Los Angeles, California 90017-2513

- Page 9 of 10 -

DTSC, et al. v. Jim Dobbas, Inc., et al.
DTSC010107

**ENFORCEABLE AGREEMENT**
**WICKES COMPANIES, INC. (ELMIRA SITE)**

*IN WITNESS WHEREOF*, the Parties hereto have caused this Agreement
to be executed by their respective authorized representatives as of
February 5, 1992.

f/k/a
COLLINS & AIKMAN GROUP, INC.
**WICKES COMPANIES, INC.,**
a Delaware corporation

By _____

Robert S. Fenton
(Printed Name)

Vice President
(Title)

**STATE OF CALIFORNIA**
**ENVIRONMENTAL PROTECTION AGENCY**
**DEPARTMENT OF TOXIC SUBSTANCES CONTROL**

By _____
William P. Ryan, Jr.
**Acting Deputy Director for**
**Site Mitigation**

- Page 10 of 10 -

DTSC, et al. v. Jim Dobbas, Inc., et al.
DTSC010108

-137-