# EXHIBIT "D"

1  LAW OFFICES OF STANLEY PECK
   State Bar No. 41007
2  1388 Sutter Street, Suite 705
   San Francisco, CA 94109
3  Telephone: 415-885-2375

4  Attorneys for Debtor

**FILED**

JUN 8 - 1993

R.G. HELTZEL, CLERK
United States Bankruptcy Court
Eastern District of Calif.



ENTERED ON DOCKET

JUN   9 1993

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

9
10      UNITED STATES BANKRUPTCY COURT

11      EASTERN DISTRICT OF CALIFORNIA

12

13  In re:                        )     CHAPTER 11
                                  )
14                                )     NO. 91-28246-A-11
    PACIFIC WOOD PRESERVING       )
15  OF BAKERSFIELD,               )
                                  )
16                                )     Date: 6/8/93
                                  )     Time: 2:00 PM
17          Debtor.               )     Department: A, Judge Dahl
                                  )
18  ————————————————————————————————

19           ORDER CONFIRMING AMENDED PLAN

20      The Amended Plan under Chapter 11 of the Bankruptcy Code filed by PACIFIC

21  WOOD PRESERVING OF BAKERSFIELD on April 28, 1993 having been transmitted to

22  creditors and equity security holders; and

23      It having been determined after hearing on notice that the requirements for

24  confirmation set forth in 11 U.S.C. §1129(a) have been satisfied;

25
        IT IS ORDERED that:
26
        The Amended Plan filed by PACIFIC WOOD PRESERVING OF BAKERSFIELD
27

28

                                      FILED MJP        45

    DOCKETED MJP

WCWP000504

Exhibit D
Page 38

on April 28, 1993, is confirmed.

    A copy of the confirmed Amended Plan is attached.

DATED:    JUN 8 - 1993

LOREN S. DAHL
UNITED STATES BANKRUPTCY JUDGE

2

WCWP000505

LAW OFFICES OF STANLEY PECK
State Bar No. 41007
1388 Sutter Street, Suite 705
San Francisco, CA  94109
Telephone:  415-885-2375

Attorneys for Debtor

ORIGINAL FILED

93 MAY -4  PM 12: 53

CLERK, U.S. BANKRUPTCY CT.
EASTERN DIST. OF CA.
SACRAMENTO, CA.

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | CHAPTER 11 |
| | |
| | NO.  91-28246-A-11 |
| PACIFIC WOOD PRESERVING | |
| OF BAKERSFIELD, | |
| | Date:  May 4, 1993 |
| | Time:  2:00 pm |
| Debtor. | Department: A, Judge Dahl |

AMENDED PLAN OF REORGANIZATION

WCWP000506

Exhibit D
Page 40

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

In re:                                    )    No.  91-28246-A-11
                                          )    Chapter 11
PACIFIC WOOD PRESERVING OF                )
   BAKERSFIELD, INC.                      )
                                          )        AMENDED PLAN
——————————————————————————————)        OF REORGANIZATION

Pacific Wood Preserving of Bakersfield, Inc. ("PWPB" or "Debtor")
proposes the following Debtor's Plan of Reorganization (the "Plan"),
pursuant to, and in accordance with Sections 1121 and 1123 of Title 11
of the United States Code (the "Bankruptcy Code"), and is the proponent
of the Plan pursuant to Section 1121(c) of the Bankruptcy Code.

ARTICLE I

DEFINITIONS

As used in this Plan, the following terms shall have the
respective meanings specified below, which meanings shall be equally
applicable to the singular and plural and to the masculine and feminine
forms of the terms defined, unless the context of this Plan otherwise
requires.

"ADMINISTRATIVE CLAIM" shall mean any allowed claim that is
defined in section 503(b) of the Bankruptcy Code as an "administrative
expense" within the meaning of that section and includes all fees
payable under 28 U.S.C. Section 1930.

"ALLOWED CLAIM" shall mean a claim (as defined in Section 101(4)
of the Bankruptcy Code (a) as to which a proof of claim was filed with
the Bankruptcy Court on or before the date fixed by the Bankruptcy
Court, by applicable law, by Court rule, or by this Plan, as the last
date for filing such a proof of claim with respect to such claim; or

1

WCWP000507

Exhibit D
Page 41

(b) a claim listed on the Debtor's schedules as filed with the Bankruptcy Court, including any amendments thereto, and which are not listed as disputed, contingent, or unliquidated as to amount; and further as to any such claim either no objection to the allowance thereof has been filed, or, if any objection has been filed, such objection has been denied or the claim fixed as to amount by order or judgment which has become final by reason of expiration of the period of appeal therefrom, or from any decision on appeal without an appeal or further appeal having been taken.

"BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, 11 U.S.C. Sections 101, et. seq., as amended from time to time.

"BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. Section 2075.

"BUSINESS DAY" shall mean a day other than a Saturday, Sunday or other day on which commercial banks in San Francisco, California are authorized or required by law to close.

"CONFIRMATION DATE" shall mean the date on which the Bankruptcy Court enters the confirmation order.

"CONFIRMATION ORDER" shall mean the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

WCWP000508

Exhibit D
Page 42

"CREDITORS FUND ACCOUNT" shall mean the account established by Credit Managers Association in accordance with Article VII of this Plan.

"CREDITORS FUND ACCOUNT TRUST AGREEMENT" shall mean the trust agreement agreed to by the Disbursing Agent and Debtor established for the purpose of administering the Creditors Fund Account.

"DEBTOR" shall mean Pacific Wood Preserving of Bakersfield, Inc.

"DISBURSING AGENT" shall mean Credit Managers Association.

"DISPUTED CLAIM" shall mean a claim listed on the Debtor's schedules of assets and liabilities as filed with the Bankruptcy Court, including any amendments thereto, as disputed, contingent or unliquidated as to amount, and/or a claim which the Debtor disputes and has or will file an objection to allowance which has not been resolved by a final order.

"EFFECTIVE DATE" shall mean the 11th day following entry of the order confirming the plan, if no appeal was timely filed, or in the event an appeal is timely filed, on the 11th day following entry of said order, unless the order is stayed by a court of competent jurisdiction.

"EXCESS CASH FLOW" shall mean, for each Fiscal Year of the Debtor, the sum of the following:

    (a)   Income before taxes on income, exclusive of any income resulting from forgiveness of debt,
    (b)   less the provision for taxes on income,
    (c)   plus depreciation,
    (d)   less principal payments on long term debt,
    (e)   less capital expenditures,

3

(f) less the amount of $50,000 to provide a reserve for environmental costs and expenses.

"FINAL ORDER" shall mean an order or judgment of the Bankruptcy Court which has become final by expiration of the time for taking an appeal, or, if an appeal is taken, or any proceeding seeking review or rehearing have been commenced, said appeal or proceedings have been resolved so that such order or judgment has been affirmed and has not been reversed, stayed, modified, or amended, and the time for taking or seeking any further judicial or appellate review has expired.

"FISCAL YEAR" shall mean the year commencing on November 1 and ending on October 31.

"EQUITY INTERESTS" shall mean any equity interests in Debtor.

"MARKET RATE" shall mean the Union Bank Reference Rate.

"PLAN" shall mean this Plan of Reorganization, all exhibits thereto, and any amendments or modifications hereof.

"POST-CONFIRMATION ADMINISTRATIVE CLAIMS" shall mean any claim incurred under the Creditors Fund Account Trust Agreement by the Disbursing Agent subsequent to the confirmation of the Plan.

"PRIORITY TAX CLAIMS" shall mean Allowed Claims against the Debtor for the payment of taxes which are entitled to priority pursuant to Section 507(a)(3) of the Bankruptcy Code, plus any interest and penalties to Confirmation Date.

4

"PRO RATA" shall mean, with respect to an amount of cash to be distributed to the holder of a Class 4 Allowed Claim, the proportion that such Allowed Claim bears to the aggregate of all Allowed Claims of Class 4 entitled to share in the distribution on a particular date.

## ARTICLE II

### CLASSIFICATION OF CLAIMS AND INTERESTS

The claims of creditors and equity security holders of the Debtor are divided into the classes described below. A claim or interest will be placed in a particular class only to the extent that the claim or interest qualifies within the description of that class and may be in a different class to the extent that the remainder of such claim or interest qualifies within the description of a such different class. A claim will be entitled to treatment accorded to a particular class only to the extent that such claim is an allowed claim.

Class 1 Claims - Obligations Incurred Since Filing Chapter 11. Claims entitled to priority pursuant to Section 507(a) of the Code consisting of obligations incurred by the Debtor in the ordinary course of business since the Chapter 11 filing on October 31, 1991.

Class 2 Claims - All Allowed Secured Claims of Union Bank.

Class 3 Claims - Small Unsecured Claims. All allowed unsecured claims that are equal to or less than $2,000, and claimants willing to reduce their claims to $2,000.

5

WCWP000511

Exhibit D
Page 45

<u>Class 4 Claims</u> – All Other Unsecured Claims.  All other allowed unsecured claims in excess of $2,000 not electing to be included in Class 3.

<u>Class 5 Claims</u> – Equity Interests.  All interests of holders of stock or other equity securities of the Debtor.

### ARTICLE III

### TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In addition to the five classes of claims and interests, the Plan provides for treatment of Administrative and Priority Tax Claims as follows:

Section 3.1.   Administrative Claims – All allowed claims for administrative expense shall be paid in full, in cash, upon the later of (i) the Effective Date or (II) final allowance of such Claim by order of the Court.

Section 3.2.   Priority Tax Claims – Allowed Priority Tax Claims shall be paid in six annual installments of principal plus interest at the Market Rate in effect at the Confirmation Date, with the first payment due on the Effective Date.

Any claimant under this Article may agree in writing to a less favorable treatment.

### ARTICLE IV

### TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

The claims and interests classified in Article II of this Plan shall be settled, satisfied, released and discharged in the following manner:

6

WCWP000512

**Exhibit D
Page 46**

Section 4.1.    Treatment of Class 1 Claims (Obligations Incurred since Filing of Chapter 11):

Class 1 claims are not impaired.  Class 1 Claims shall be paid in cash in full in accordance with the ordinary business terms of payment for each such claim.

Section 4.2.    Treatment of Class 2 Claims (Allowed Secured Claims of Union Bank):

In accordance with agreements reached with the Bank and approved by the Bankruptcy Court, the allowed claims of Union Bank shall be paid as follows:

1.    APWP's payment under the term loan will be modified as follows: for the period commencing on March 25, 1992 and ending on April 1, 1997, no interest shall accrue on and no periodic payments shall be due and payable on the Term Loan. Commencing on April 1, 1997, interest shall accrue on the Term Loan at the rate of the lower of (i) Union Bank Reference Rate plus 1.5% or (ii) 10%; and APWP shall pay to the Bank monthly payments of principal and interest, amortized on a twenty (20) year basis, with a balloon payment due on April 1, 2012.

2.    Upon receipt of $175,000 by March 25, 1994, the Bank has agreed that the unpaid balance of the Revolving Line of Credit shall become part of the Term Loan and be subject to the payment schedule described above.  In the event that the Bank does not receive said payment by March 25, 1994, Union Bank is free to exercise any and all legal and contractual rights against APWP and PWPB allowed under its various agreements.  PWPB and Jackson will continue to guaranty the

7

WCWP000513

Exhibit D
Page 47

APWP debt. PWPB, APWP and Jackson will continue to guaranty the TPWP debts. PWPB's guaranties will continue to be secured by PWPB's Kern County property. As noted above, Jackson's guaranties will be released upon receipt of $175,000.00 by 1994 on account of the Revolving Line of Credit.

Section 4.3. Treatment of Class 3 Claims (Small Unsecured Claims):

Claimants in Class 3 shall receive 25% of the amount of their claim up to a maximum of $500 per claimant on the Effective Date.

Section 4.4. Treatment of Class 4 Claims (All Other Unsecured Claims): All other allowed unsecured claims in excess of $2,000 not electing to be included in Class 3.

1. On the Effective Date of the Plan, holders of Class 4 claims shall receive a non-interest bearing unsecured debt instrument for 50% of the amount of the creditor's allowed Class 4 claim.

2. Payments to holders of Class 4 claims will be made ninety days after the end of each of the Fiscal Years ending October 31, 1993 through October 31, 1996, with the first payment, if any, due January 31, 1994 and continuing annually thereafter with the final payment to be made on January 31, 1997 or, if sooner, when the Debt Instrument has been paid in full.

3. Each holder of a Class 4 Claim will receive his Pro Rata share of 50% of the Excess Cash Flow, as defined on page 12

8

of the Disclosure Statement of Debtor for the preceding Fiscal Year, with the first such calculation based on the Fiscal Year ending October 31, 1993 and the final calculation to be based on the Fiscal Year ending October 31, 1996.

4. The Debtor may, at its option, redeem the Debt Instruments at any time, by paying all outstanding Debt Instruments multiplied by the following percentages, (less all payments made on account of the Instrument prior to the date fixed by the Debtor for redemption) if redeemed prior to the following dates:

| | |
|---|---|
| January 31, 1994 | 25% |
| January 31, 1995 | 30% |
| January 31, 1996 | 40% |
| January 31, 1997 | 50% |

5. Each class 4 creditor will have the right to assign its allowed claim to Marzetta Signs, Inc. ("Marzetta"), a company in which Richard F. Jackson holds a one-third minority interest, for the right to discounts on purchases of indoor-outdoor vinyl and aluminum signs from Marzetta, with such discounts to be equal to two times the amount of the allowed claim. Marzetta agrees to grant to such assignors for a period of 10 years discounts of 50% if the then-current published price list for any item contained in the then-current Marzetta catalogue, and 30% off the published price list for any custom order signs. The right to such discounts shall expire at the rate of 10% per year.

6. Claims assigned to Marzetta will survive as Class 4 claims, and Marzetta shall receive an unsecured debt instrument equal in face value to 50% of the amount of the claims so acquired by Marzetta.

9

WCWP000515

Exhibit D
Page 49

Payments to Marzetta shall be deferred until such time as all Class 4 claims have been satisfied in accordance with the terms of this Plan.  Such debt will accrue interest at the rate of 6% per annum beginning November 1, 1996.  Marzetta shall thereafter receive annual payments of principal and interest equal to 25% of "Excess Cash Flow" until such time as their reduced claim has been satisfied in full.

7.   Upon assignment of any claims to Marzetta, Debtor will have no further obligation to creditors making such assignments.

Section 4.5.   Treatment of Class 5 Interests (Equity Interests): Class 5 interests are unimpaired.  Each shareholder of PWPB stock shall retain his interest.

## ARTICLE V

## IDENTIFICATION OF IMPAIRED AND UNIMPAIRED CLASSES

Section 5.1.   Unimpaired Classes:  Class 1 (Obligations Incurred since Filing of Chapter 11) and Class 5 (Equity Interests) are unimpaired under this Plan pursuant to and in accordance with Section 1124 of the Bankruptcy Code.  By virtue of their statue of "unimpaired classes of claims", such classes are conclusively presumed to have accepted this Plan in accordance with Section 1126(f) of the Bankruptcy Code.

Section 5.2.   Impaired Classes:  The claims in Class 2 (Allowed Secured Claims of Union Bank), Class 3 (Small Unsecured Claims), and Class 4 (All Other Unsecured Claims) are impaired under this Plan and

10

the holders of such claims shall be entitled to vote to accept or reject the Plan.  Such class shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds in amount and more than one-half in number of the claims in such class.  Ballots that are signed and returned, but not expressly voted either for acceptance or rejection of the Plan will be considered as acceptances.

## ARTICLE VI

### EXECUTORY CONTRACTS AND LEASES

Except as to those executory contracts listed in Exhibit A attached hereto, which executory contracts the Debtor hereby assumes, all executory contracts of the Debtor which were in existence at the time of filing of the Chapter 11 petition on October 31, 1991, which have not already been rejected or assumed pursuant to Court Order, are rejected.

## ARTICLE VII

### MEANS FOR IMPLEMENTATION OF THE PLAN

Section 7.1 - Establishment of Creditors Fund Account:

Under the Plan, a Creditors Fund Account will be established and administered by Credit Managers Association, who will act as the Disbursing Agent for the account.  All payments made by Debtor in accordance with the Plan will be deposited to the Creditors Fund Account.  The Disbursing Agent shall hold the account in trust for the benefit of the holders of Allowed Claims in Class 4 to be administered as set forth in the Plan and as more specifically described in the

11

Creditors Fund Account Trust Agreement which shall be executed by the parties thereto and approved by the Court on or before the Confirmation Hearing Date.

The Agreement will provide for (a) the payment of fees and expenses of the Disbursing Agent, and (b) the mechanism and schedule for distributions from the Account by the Disbursing Agent. Under the terms of the Plan, funds will be deposited by the Debtor into the Account on or before January 31 of each year in an amount equal to 50% of the Excess Cash Flow of the Debtor for each of the fiscal years ending October 31, 1993 through 1996. Such amounts will be distributed as expeditiously as possible by the Disbursing Agent on a Pro Rata basis to all holders of Allowed Claims in Class 4 in accordance with the terms of the Plan.

In the event that the Debtor elects to make an early redemption of Debt Instruments in accordance with the Plan, the Disbursing Agent will distribute such funds as are deposited into the Account as expeditiously as possible on a Pro Rata basis.

Section 7.2 - Procedure for Handling Disputed Claims:

In determining amounts to be retained in the Creditors Fund Account for holders of Disputed Claims, the Disbursing Agent shall treat all Disputed Claims as if they were Allowed Claims and shall set aside funds sufficient to make distributions as provided under the Plan to each holder of a Disputed Claim, as if such holder were entitled to receive a distribution as a holder of an Allowed Claim. Within 30

12

days after a Disputed Claim has been determined to be an Allowed Claim in whole or in part, the Disbursing Agent shall make distributions to holders of each such claim from funds retained for the purpose in the Account.   To the extent that Disputed Claims are disallowed by Final Order in whole or in part, funds otherwise distributable will be retained in the Account until the following January 31, at which time they will be included in any Pro Rata distribution to holders of Class 4 claims.

Section 7.3 - Procedure for Handling Unclaimed Distributions:

Any distribution under the Plan that is unclaimed for 90 days after the date of issuance of a check in payment of such distribution shall be held without interest for the benefit of the holder of each such Allowed Claim.   To the extent that any unclaimed distributions exist eleven following the date of issuance of checks in payment of Allowed Claims, such amounts shall be included in the distributions to be made the following January 31 on a Pro Rata basis to holders of Class 4 claims.

### ARTICLE VIII

### JURISDICTION OF THE BANKRUPTCY COURT

Section 8.1 - Revesting of Assets:   As of the Effective Date, the Debtor shall be revested with all assets not distributed to creditors under this Plan.   As of the Effective Date, the Debtor shall be entitled to manage its affairs without further order of the Bankruptcy Court and shall be discharged from all debts, except as otherwise provided in the Bankruptcy Code and this Plan.

13

WCWP000519

Exhibit D
Page 53

Section 8.2 – Retention of Jurisdiction:   Subject to Section 8.1 of this Plan, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(a)   Determination of objections to the allowance of claims, classification of claims, and the re-examination of claims which have been allowed for purposes of voting for or against the Plan. Failure by the Debtor to object or to examine any claim which has been allowed solely for purposes of voting shall not be deemed to be a waiver of the Debtor's right to object to, or to reexamine, such claim in whole or in part;

(b)   Except as otherwise provided in this Plan, determination of any and all controversies, suits, causes of action, or disputes involving the Debtor or its assets arising prior to the Confirmation Date, whether or not subject to an action pending as of the Confirmation Date, between and/or among the Debtor and any other party, including without limitation any right of the Debtor to recover assets or assert any power or right, pursuant to and in accordance with the Bankruptcy Code;

(c)   Review and determination of any and all applications for the payment of fees by the Debtor's attorneys and other professionals pursuant to and in accordance with Section 330 or 503 of the Bankruptcy Code, and any other fees and expenses authorized to be paid or reimbursed by the Debtor pursuant to and in accordance with the Bankruptcy Code, and all objections thereto;

(d) Determination of any disputes regarding proposed distributions from the Creditors Fund Account by Credit Managers Association, including, but not limited to, the review and determination of disputes

14

over proposed fees or expenses to be paid to attorneys or professionals on behalf of Creditors Managers Association, if and only if a dispute arises over such proposed distributions.

(e)   Determination of any and all pending applications for the rejection or assumption and assignment, as the case may be, of executory contracts and unexpired leases to which the Debtor is a party, or with respect to which the Debtor may be liable, and the determination of any and all claims arising therefrom;

(f)   Modification of this Plan or correction of any defect, curing of any omission, or reconciliation of any inconsistency in this Plan or the Confirmation Order to the extent authorized by the Bankruptcy Code, as may be necessary to carry out the purposes and intent of this Plan;

(g)   Enforcement, interpretation and implementation of this Plan, including any agreement for the satisfaction of any Allowed Claims; and

(h)   Entry of a final decree concluding and terminating the Debtor's bankruptcy case.

## ARTICLE IX

## MODIFICATION OF PLAN

Section 9.1 - Modification Before Confirmation:  The Debtor may modify this Plan at any time prior to the Confirmation Date, but may not modify the Plan so that the Plan as modified fails to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code.  After the Debtor has filed a modification of this Plan with the Bankruptcy Court, the Plan as modified shall become the Plan.

15

Section 9.2 – Modification After Confirmation:  The Debtor may modify this Plan at any time after the Confirmation Date and before substantial consummation of the Plan, but may not modify the Plan so that the Plan as modified fails to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code.  The Plan as modified pursuant to and in accordance with this section of the Plan shall become the Plan only if the Bankruptcy Court, after notice and a hearing, confirms such Plan, as modified, pursuant to and in accordance with Section 1129 of the Bankruptcy Code, and circumstances warrant such modification.

Section 9.3 – Defects, Omissions, and Inconsistencies in the Plan: Before or after the Confirmation Date, or in the Confirmation Order, the Debtor may, with the approval of the Bankruptcy Court, and provided it does not materially and adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistency in the Plan, or amend the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

## ARTICLE X

### MISCELLANEOUS PROVISIONS

Section 10.1 – Monitoring:  Union Bank and Credit Managers Association may perform on-going monitoring of the Debtor's financial performance until all payments due holders of Class 4 claims under the Plan have been paid.  The Debtor will provide Union Bank and Credit Managers Association with annual financial statements for each Fiscal Year through October 31, 1996, and to the Bank thereafter for the outstanding period of the Bank indebtedness.

16

WCWP000522

Exhibit D
Page 56

Section 10.2 – Administrative Claims:  All applications for the allowance of Administrative Claims pursuant to and in accordance with Section 507(a)(1) of the Bankruptcy Code, including but not limited to applications for compensation of professionals whose employment has been authorized by the Court, shall be filed and served upon the Debtor's counsel within 30 days after the Confirmation Date.  Any such Administrative Claims not filed within the required time period are hereby discharged and barred.

Section 10.3 – Executory Contracts and Unexpired Leases:  All claims arising from the rejection of executory contracts and unexpired leases under this Plan shall be filed with the Bankruptcy Court and served upon Debtor's counsel within 30 days after the Confirmation Date and shall be unsecured claims.  All such claims shall be treated as disputed unless the Debtor specifically admits such claim.  Any such claims not filed within the required time period are hereby discharged.

Section 10.4 – Transferability:  Any holder of any claim may freely transfer to any other person any rights which it receives or shall receive pursuant to the terms of this Plan, but such transferee shall be subject to all of the terms and conditions set forth in this Plan.  The foregoing does not excuse compliance with any securities law if applicable to such transfer.

Section 10.5 – Severability:  Any provision of this Plan that is held to be inoperative, unenforceable, void, or invalid in any jurisdiction shall, as to that jurisdiction, be ineffective, unenforceable, void, or invalid, without affecting the remaining

17

provisions in that jurisdiction, or the operation, enforceability, or validity of that provision in any other jurisdiction, and to this end the provisions of this Plan are declared to be severable.

Section 10.6 - Successors and Assigns:  The rights and provisions of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such person.

Section 10.7 - Headings:  The headings and underscoring of the articles, sections and clauses used in this Plan have been inserted for convenience only, and neither constitute a portion of the Plan, nor in any manner shall affect or be considered in interpreting this Plan.

Section 10.8 - Current and Proposed Officers and Directors: The current and proposed officers and directors of the Debtor as are follows:

        Richard F. Jackson - President and Chairman of the Board
        Steve Ryan - Secretary and Director
        Frank Boge - Director
        Darryll Nicholas - Director

Following confirmation of the Plan,  the foregoing officers and directors will continue to serve as such, with the same duties and levels of compensation.

Section 10.9 - Changes to Certificate of Incorporation: Pursuant to section 1123(a)(6) of the Code, the certificate of incorporation of Debtor shall be amended to prohibit the Debtor from issuing non-voting equity securities.

DATED:  April 26, 1993

                        PACIFIC WOOD PRESERVING OF BAKERSFIELD, INC.


                        By:_____

                        Richard F. Jackson, President

WCWP000524

Exhibit D
Page 58

EXHIBIT "A"

EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The following executory contracts and/or unexpired leases are assumed by Debtor:

1.  General Motors Acceptance Corporation - Unexpired lease of a GM pick-up truck.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

DATE: 06/08/93

THE HON. LOREN S. DAHL

BEFORE:   291-28246-A-11

HEARING — CONFIRMATION
OF PLAN OF REORGANIZATION
3-8-93

CASE NO.: _____

MOTION CONTROL NO.: _____

ADVERSARY NO.: _____

TITLE: PACIFIC WOOD PRESERVING _____, Debtor

v. _____

DEPUTY CLERK: NANCY WILLIAMS

REPORTER: Barbara Como Reporting
L. Meyer

APPEARANCES:

For: ( ) Plaintiff   ( ✗ ) Moving Party   ( ) U.S. Trustee          ( ) Defendant   ( ) Debtor   ( ) Trustee

By: _Atty Peik_

PROCEEDINGS:

( ✗ ) Debtor's   ( ) Creditor's   ( ) Trustee's   ( ) Court's   ( ) Plaintiff's   ( ) Defendant's   ( ) U.S. Trustee's

## ⊠ CIVIL MINUTES

MOTION/APPLICATION WAS:

( ) Granted
( ) Granted in Part
( ) Approved
( ) Without Prejudice
( ) Default Entered

( ) Submitted
( ) Denied
( ) Resolved by Stipulation
( ) Dismissed per FRCP 41(a)
( ) Findings of Fact/Conclusions of Law Stated Orally

( ) Case Dismissed on 10 Days Notice by Trustee
( ) Dropped, No Appearance
( ) Dropped, Per Moving Party
( ✗ ) Plan Confirmed

ORDER TO BE PREPARED BY: _____

ORDER TO BE APPROVED BY: _____

HEARING CONTINUED TO: _____ AT _____   ( ) Request of Parties   ( ) By Court

Because: _____

BRIEFING SCHEDULE:   Opening: _____ /Opposition: _____ /Reply: _____

## ( ) CIVIL MINUTE ORDER

IT IS ORDERED that the Motion/Application is:

( ) Granted
( ) Granted in Part
( ) Approved

( ) Default Entered
( ) Denied
( ) Without Prejudice

( ) Resolved by Stipulation
( ) Dismissed per FRCP 41(a)
( ) Findings of Fact/Conclusions of Law Stated Orally on Record

IT IS FURTHER ORDERED:

DOCKETED MJP

FILED MJP

DATED:
EDC 6-600(A) (Rev. 11/91)

UNITED STATES BANKRUPTCY JUDGE

WCWP000526

Exhibit D
Page 60