EXHIBIT "N"

JENNIFER HARTMAN KING (Bar No. 211313)
NICOLE R. GLEASON (Bar No. 199655)
SHELBY M. GATLIN (Bar No. 272701)
KING WILLIAMS & GLEASON LLP
520 Capitol Mall, Suite 750
Sacramento, CA  95814
Telephone:      (916) 379-7530
Facsimile:      (916) 379-7535
jhartmanking@kwgattorneys.com
ngleason@kwgattorneys.com
sgatlin@kwgattorneys.com

Attorneys for Defendant Jim Dobbas, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,<br><br>          Plaintiffs,<br><br>          v.<br><br>JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; and WEST COAST WOOD PRESERVING, LLC, a Nevada limited liability company,<br><br>          Defendants.<br><br>AND RELATED CROSS-CLAIMS AND COUNTER CLAIMS | Case No.:  2:14-cv-00595-WBS-EFB<br><br>**JIM DOBBAS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS DEFENDANT JIM DOBBAS, INC.'S COUNTERCLAIM, AND TO STRIKE PORTIONS OF ANSWERS OF DEFENDANTS JIM DOBBAS, INC., DAVID VAN OVER, AND WEST COAST WOOD PRESERVING, LLC**<br><br>Date:          **September 8, 2014**<br>Time:          **2:00 p.m.**<br>Place:         **Courtroom 5, 14th Floor**<br>Judge:         **Hon. William B. Shubb**<br><br>Action filed:   March 3, 2014<br>Trial Date:     January 4, 2017 |

KING WILLIAMS & GLEASON LLP
520 CAPITOL MALL, SUITE 750
SACRAMENTO, CA 95814
TELEPHONE: (916) 379-7530 FAX: (916)379-7535

00011924.6

1

**TABLE OF CONTENTS**

2

I.      INTRODUCTION ............................................................................................. 1

II.     THE FACTUAL ALLEGATIONS ................................................................... 2

III.    MOTION TO DISMISS ................................................................................... 5

    A.   Standard of Review Generally. ................................................................ 5

    B.   CERCLA Liability Provisions Generally. ................................................ 6

    C.   DTSC Is Not Immune From Liability Under CERCLA ........................... 8

    D.   Dobbs's Allegations Plausibly Support a Claim Against DTSC for "Operator" Liability Under CERCLA Sections 107 and 113, and Provide Sufficient Notice of the Basis for these Claims Under Rule 8. ...................................................................... 8

    E.   Dobbs's Allegations Plausibly Support a Claim for Relief Under CERCLA Section 107(d) Based Upon DTSC's Actions, and Provide Sufficient Notice of the Basis for this Claim under Rule 8. ..................................................................... 11

    F.   Dobbas Sufficiently Alleges Its Costs Related to the Site's Contamination. ..................... 13

    G.   The HSAA Claim Survives in the Same Manner as the CERCLA Claims. ...................... 13

    H.   Dobbas Properly Seeks Declaratory Relief under the Declaratory Judgment Act. ............. 13

IV.    MOTION TO STRIKE .................................................................................. 14

    1.   Standard of Review Generally .............................................................. 15

    2.   The Jury Demand is Appropriate Because the Counterclaim Involves a Mix of Legal and Equitable Claims .................................................................. 15

    3.   The Remaining Affirmative Defenses are Related to the Controversy and Fall within CERCLA's Statutory Defenses .................................................. 17

V.     CONCLUSION ............................................................................................. 18

00011924.6

i

1

## TABLE OF AUTHORITIES

2

3

*Cases*

4

*Adobe Lumber, Inc. v. Hellman*
   *658 F.Supp.2d 1188, 1204 (E.D. Cal. 2009)* ................................................ *17*

5

*Ascon Properties, Inc. v. Mobil Oil*
   *866 F.2d 1149 (9th Cir. 1989)* ................................................................ *13*

6

*Beacon Theatres Inc. v. Westover*
   *359 U.S. 500 (1959)* ............................................................................ *16*

7

*Bell Atlantic Corp. v. Twombly*
   *550 U.S. 544, 555 (2007)* ........................................................................ *5*

8

*Carolina Cas. Ins. Co. v. Oahu Air Conditioning Service, Inc.*
   *2014 WL 309557 (E.D. Cal. Jan. 28, 2014)* .............................................. *17*

9

*Carson Harbor Village, Ltd. v. Unocal Corp.*
   *270 F.3d 863, 870–71 (9th Cir. 2001)* ........................................................ *7*

10

*Castaic Lake Water Agency v. Whittaker Corp.*
   *272 F.Supp. 2d 1053, 1082 (C.D. Cal. 2003)* ........................................... *17*

11

*Champlaie v. BAC Home Loans Servicing, LP*
   *706 F.Supp.2d 1029, 1039 (E.D. Cal. 2009)* ....................................... *15, 17*

12

*Chapman v. Kleindienst*
   *507 F.2d 1246 (7th Cir. 1974)* ................................................................ *16*

13

*City of Colton v. Am. Promotional Events, Inc.-West*
   *614 F.3d 998, 1002–03 (9th Cir. 2010)* .............................................. *7, 14*

14

*City of Detroit v. A.W. Miller, Inc.*
   *842 F.Supp. 957 (E.D. Mich. 1994.)* ........................................................ *17*

15

*Curtis v. Loether*
   *415 U.S. 189, 196, n.11 (1974)* ................................................................ *16*

16

*Dedham Water Co. v. Cumberland Farms Dairy, Inc.*
   *805 F.2d 1074, 1081 (1st Cir. 1986)* .......................................................... *8*

17

*Dichter–Mad Family Partners, LLP v. United States*
   *709 F.3d 749, 761 (9th Cir. 2013)* ............................................................. *5*

18

*FMC Corp. v. U.S. Dep't of Commerce*
   *29 F.3d 833, 843 (3d Cir. 1994)* ................................................................ *8*

19

*GTE Sylvania, Inc. v. Continental T.V., Inc.*
   *537 F.2d 980, 986, n.7 (9th Cir. 1976)* .................................................... *16*

20

*Henry A. v. Willden*
   *678 F.3d 991, 1005 (9th Cir. 2012)* ........................................................... *6*

21

*Hillsborough County v. A&E Road Oiling Service, Inc.*
   *853 F.Supp.1402, 1411 (M.D. Fla 1994)* ................................................ *13*

22

*Hishon v. King & Spalding*
   *467 U.S. 69, 73 (1984)* ............................................................................ *6*

23

24

25

26

27

28

00011924.6

**Exhibit N
Page 104**

1   *Hobart Corp. v. Waste Management of Ohio, Inc.*
    840 F.Supp.2d 1013, 1019 (S.D. Ohio 2011) ............................................................ 6

2   *In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*
    712 F.Supp. 994, 998 (D. Mass. 1989) .................................................................. 15

3   *Kaiser Aluminum v. Catellus Dev.*
    976 F.2d 1338, 1341 (9th Cir. 1992) ...................................................................... 9

4
    *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*
5   507 U.S. 163 (1993) ............................................................................................... 13

6   *Lytle v. Household Mfg., Inc.*
    494 U.S. 545, 550 (U.S.N.C. 1990) ....................................................................... 16

7   *Minnesota Mut. Life Ins. Co. v. Brodish*
    200 F.Supp. 777, 778 (E.D. Penn. 1962) ............................................................. 16

8   *N. Penn Transfer, Inc. v. Victaulic Co. of America*
    859 F.Supp. 154, 158 (E.D. Penn. 1994) ............................................................. 15

9
    *New York v. Solvent Chemical Co., Inc.*
10  664 F.3d 22, 25 (2d Cir. 2011) ............................................................................ 14

11  *Parklane Hosiery Co. Inc. v. Shore*
    439 U.S. 322, 353-55(1979) ................................................................................ 16

12  *Rescuecom Corp. v. Google, Inc.*
    562 F.3d 123 (2d Cir. 2009) .................................................................................. 5

13  *Scheuer v. Rhodes*
    416 U.S. 232, 236 (1974) ....................................................................................... 5

14
    *Swierkiewicz v. Sorema N.A.*
15  534 U.S. 506, 512-513 (2002) ................................................................................ 6

16  *Taylor Farm Ltd. Liability Co. v. Viacom, Inc.*
    234 F.Supp.2d 950, 962-63 (S.D. Ind. 2002) ......................................................... 7

17  *United States v. Bestfoods*
    524 U.S. 51, 66-7 (1998) .................................................................................. 9, 10

18  *United States v. Dart Indus., Inc.*
    847 F.2d 144, 146 (4th Cir. 1988) ....................................................................... 10
19
    *United States v. Hercules, Inc.*
20  247 F.3d 706 (8th Cir. 2001) ............................................................................... 16

21  *United States v. Iron Mountain Mines, Inc.*
    881 F.Supp. 1432, 1443 (E.D. Cal. 1995) ................................................ 7, 8, 10, 11, 18

22  *United States v. Township of Brighton*
    153 F.3d 307, 313 (6th Cir. 1998) ...................................................................... 9, 10

23  *United States v. Vertac Chem. Corp.*
    46 F.3d 803, 808 (8th Cir. 1995) ....................................................................... 9, 16
24
    *United States v. Williams*
25  441 F.2d 637, 644 (5th Cir. 1971) ....................................................................... 15

26  *Viking Resources* ............................................................................................... 15

    *Voggenthaler v. Maryland Square, LLC*
27  724 F.3d 1050, 1061, 1064 (9th Cir. 2013) ............................................................ 6

28

Exhibit N
Page 105

1

**Statutes**

2

42 U.S.C.

3

§ 9601(20)(A)...................................................................................................... 9
§ 9601(20)(D)...................................................................................................... 9
§ 9601(21), (27)................................................................................................... 6
§ 9607.................................................................................................................. 9
§ 9607(a)..................................................................................................... 6, 7, 13
§ 9607(a)(1)-(2).................................................................................................... 6
§ 9607(b)(3)................................................................................................... 17, 18
§ 9607(d)............................................................................................................ 11
§ 9607(d)(1).......................................................................................................... 7
§ 9613(f)(1)........................................................................................................... 7

CERCLA

§ 106.................................................................................................................... 8
§ 107........................................................................................................... 7, 8, 14
§ 107(a)....................................................................................................... 6, 7, 8
§ 107(b)(3)......................................................................................................... 17
§ 107(d)..................................................................................................... 6, 7, 11
§ 113.............................................................................................................. 7, 8
§ 113(f)...................................................................................................... 6, 7, 14
§ 113(f)(1)........................................................................................................ 7, 8
§ 113(g)(2).................................................................................................... 13, 14

**Rules**

Federal Rules of Civil Procedure

Rule 8 ..................................................................................... 1, 8, 11, 13
Rule 8(a)(2) ........................................................................................... 5
Rule 12(f) ...................................................................................... 15, 17

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOBBAS'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM AND STRIKE ANSWERS
2:14-cv-00595-WBS-EFB

**I.    INTRODUCTION**

After over three decades of mismanagement in the investigation of and remedial activities at the real property known as 147 A Street, Elmira, Solano County, California ("Site"), the California Department of Toxic Substances Control ("DTSC") seeks to hold Jim Dobbas, Inc. ("Dobbas") responsible for costs to correct DTSC's own failures (to the tune of over $2.2 million), despite the fact that Dobbas in no way contributed to the release or threatened release of hazardous substances at the Site.  The basis for DTSC's Complaint against Dobbas is purportedly supported by the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), the Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA"), and other California laws.  However, DTSC fails to acknowledge its own potential for liability under these same laws.

To protect itself against DTSC's claims and to hold DTSC responsible for its own negligent, reckless, wanton, and intentional actions that resulted in contamination at the Site, Dobbas filed a Counterclaim and raised various affirmative defenses in its Answer relating to DTSC's mismanagement of the Site.  DTSC responded by filing a Motion to Dismiss the Counterclaim ("MTD"), and a Motion to Strike Portions of Dobbas's Answer ("MTS").[1]  Dobbas now files this timely opposition to the Motion.

The sole issue for the Court's consideration on the MTD is whether the Counterclaim meets the liberal pleading requirements of Federal Rules of Civil Procedure, Rule 8 ("Rule 8").  To survive the MTD, the Counterclaim must meet only two requirements:  (1) the allegations in the pleadings and exhibits of this case must support plausible claims for relief against DTSC, as those claims are alleged in the Counterclaim; and (2) the allegations must provide DTSC with notice of the claims against it and the grounds for those claims.  When all of the allegations in this case are taken as true and read in favor of Dobbas (as the standard for review requires), it is clear that the claims for relief in the Counterclaim meet these minimal pleading requirements.  Thus, the MTD should be denied.

---

[1] The MTD and MTS are collectively referred to herein as the "Motion," because DTSC filed both in one pleading.

00011924.6

-1-

DOBBAS'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM AND STRIKE ANSWERS
2:14-cv-00595-WBS-EFB

1    The MTS attempts to strike various affirmative defenses, the jury demand, and the request

2  for attorneys' fees from the Answer.  Having had an opportunity to consider the allegations in this

3  case more thoroughly, Dobbas does not oppose DTSC's request to strike certain affirmative

4  defenses (identified herein) and the request for attorneys' fees in its Answer.  Dobbas asserted

5  those affirmative defenses in an abundance of caution and to preserve its rights, due to the limited

6  time it had to assess and identify the potential affirmative defenses in response to the Complaint.

7  The remainder of the affirmative defenses are, however, appropriate and should not be stricken

8  because they have a clear relationship to the controversy and are allowed under CERCLA.

9  Further, Dobbas's jury demand is appropriate inasmuch as the case involves mixed issues of law

10  and equity.   Given that a MTS is disfavored and the Court should err on the side of caution,

11  Dobbas respectfully requests that the Court's order be entered consistent with this opposition.

12                      **II.      THE FACTUAL ALLEGATIONS**

13    DTSC has been actively overseeing and performing contamination response actions at the

14  Site for more than thirty-five years.  Dobbas Counterclaim ("Countercl.") at 2:2-5, ¶ 6.  The

15  contamination resulted from wood treatment and preservation operations at the Site during the

16  1970s, and possibly in the early years of the 1980s.  Countercl. at Ex. B, 10; DTSC and Toxic

17  Substances Control Account ("TSCA") Complaint ("Compl.") at Ex. B, 5-6.  DTSC claims that

18  hazardous substances have been released into the environment at and from the Site "since 1972."

19  Compl. at 6:1-5, ¶ 16.  In 1983, the Department of Health Services ("DHS") (predecessor to

20  DTSC) approved a Remedial Action Plan ("RAP") for the Site.  Countercl. at 2:6-8, ¶ 7, Ex. A.

21  The RAP identified response actions to address the contamination, including soil removal,

22  groundwater extraction and treatment, and installation of an asphalt cap.  *Id.*  DHS ordered

23  Collins & Aikman Products, LLC[2] ("C&A Products"), the then-owner of the Site, to implement

24  the response actions that DHS identified and selected in the RAP.  *Id.*; Compl. at 6:6-11, ¶ 17.

25  / / /

26  _____

27  [2] Collins & Aikman Products, LLC, a cancelled Delaware limited liability company, was formerly known as Collins
& Aikman Products Co. and was the successor by merger to The Wickes Corporation.  For ease of reference, the
28  term "C&A Products" refers collectively to all of the foregoing entities.

00011924.6                                    -2-

1    After several years of implementation of the RAP requirements by C&A Products and

2    DHS/DTSC, DTSC issued a Certification of Remedial Action for the Site in 1996

3    ("Certification"), which "certifie[d] implementation of the final remedial actions" at the Site.

4    Countercl. at 2:12-15, ¶ 9, Ex. B; Compl. at 6:6-11, ¶ 17.  The Certification further contains the

5    following "Certification Statement":

> 6    DTSC has determined that all appropriate removal/remedial actions have been
>      completed and that all acceptable engineering practices were implemented;
> 7    however, the site requires ongoing operation and maintenance (O&M) and
>      monitoring efforts.  The site will be deleted from the "active" site list following (1)
> 8    a trial operation and maintenance period and (2) execution of a formal written
>      settlement between DTSC and the responsible parties, if appropriate.  However,
> 9    the site will be placed on DTSC's list of sites undergoing O&M to ensure proper
>      monitoring of long-term clean-up efforts.
> 10

11    Countercl. at Ex. B, 9.

12    Dobbas purchased the Site from C&A Products in 1997 in reliance on DTSC's

13    representations in the Certification that "all appropriate removal/remedial actions" had already

14    been completed.  Compl. at 6:17-19, ¶ 19.  None of the contaminants at issue in this case were

15    used on the property during Dobass's ownership, and Dobbas in no way contributed to the release

16    or threatened release of hazardous substances at the Site.  Countercl. at 3:13-14, ¶ 19.

17    Following Certification and through 2005, C&A Products performed various actions

18    required in its operation and maintenance agreement with DTSC.  Compl. at 6:6-11, ¶ 17.  After

19    C&A Products declared bankruptcy in 2005 and "stopped operating the groundwater extraction

20    and treatment system, and stopped taking other action," "DTSC began performing the response

21    actions itself."  *Id.* at 6:24-8:2, ¶¶ 21-29; Motion at 2:10-15.

22    DTSC demanded that Dobbas and others perform various activities relating to C&A

23    Products' contractual obligations.  Compl. at 7:1-2, ¶ 22.  In response to DTSC's threat of

24    prosecution, Dobbas "agreed to perform certain actions at the Site, which included limited

25    maintenance of the asphalt cap and repair of a roof drainage system for a building" on the

26    property.  *Id.* at 7:3-7, ¶ 23.  Since 2005, however, DTSC has undertaken "efforts to repair and

27    restart the groundwater extraction and treatment system, completion of a remedial investigation

28

1    for site soils, preparation of the Removal Action Workplan, implementation of the Removal

2    Action Workplan in October and November 2011, groundwater monitoring, and other tasks."

3    Compl. at 7:24-8:2, ¶ 29.  DTSC negligently implemented these tasks, thereby exacerbating the

4    contamination. Countercl. at 2:19-21, ¶ 11.

5        As part of its efforts, "[o]n January 19, 2007, DTSC contracted with Kleinfelder Inc. to

6    resume operation of the [groundwater extraction and treatment system], groundwater monitoring

7    and reporting and maintenance of the asphalt cap." Compl. at Ex. B, 7.  DTSC actively operated

8    the groundwater extraction and treatment system despite its 2001 report stating the "ground water

9    pump and treat system would likely be unsuccessful in meeting the remedial action objectives."

10   *Id.* at Ex. B, 8-9.  The 2001 report also proposed use of an alternative technology, which DTSC

11   apparently disregarded.    *Id.*   Notably, DTSC's 2010 Removal Action Workplan requires

12   demolition of the groundwater extraction and treatment system because it has been unsuccessful.

13   *Id.* at Ex. B, 4-5, 9.  A Site inspection in 2010 also revealed that there were "numerous cracks in

14   the asphalt cap" that DTSC contracted to maintain in 2007. *Id.* at Ex. B, 4-5.

15       In 2008, DTSC contracted with URS Corporation to investigate the soils at the Site.  *Id.* at

16   Ex. B, 7. Despite DTSC's prior Certification of the Site and the fact that no further wood

17   treatment and preservation operations occurred after the Certification, the soils and groundwater

18   analysis at the Site revealed elevated levels of contaminants. *Id.* at Ex. B, 5-9; Countercl. at Ex.

19   B.  DTSC has purportedly spent over $2.2 million "to assess and clean up the Site" from

20   November 2005 to September 2013. *Id.* at 8:6-7, ¶ 31.

21       After more than three decades of DTSC's active oversight and involvement, and its

22   mismanagement of the activities at the Site, DTSC and the TSCA filed the Complaint against

23   Dobbas and others seeking recovery of response costs, declaratory relief, injunctive relief, treble

24   damages, and civil penalties.  In response, Dobbas filed an Answer to the Complaint, and a

25   Counterclaim against DTSC.

26       In the Counterclaim, Dobbas asserts, among other things, that DTSC has liability for

27   damages associated with its selection and implementation of the response actions because it is

28   and has been: (1) an "operator" of the Site under CERCLA; and (2) a "liable person" under the

1   HSAA.  Countercl. at 3:6-8, ¶ 16; 5:19-20, ¶ 36.  Dobbas further alleges that DTSC engaged in

2   negligent, grossly negligent and/or intentional misconduct at or with respect to the Site relating to

3   the selection and implementation of the response actions.  *Id.* at 2:19-21, ¶ 11.  Accordingly,

4   Dobbas seeks contribution, and cost recovery for actions Dobbas already performed and for those

5   future costs that Dobbas may incur.  *Id.* at 2:19-21, ¶ 11; 3:9-12, ¶¶ 17-18.

**III.     MOTION TO DISMISS**

7            Distilled to its core, the MTD contains only two arguments: (1) DTSC claims it is not an

8   "operator" under CERCLA (and, accordingly, not a "liable person" under HSAA); and (2) DTSC

9   argues that the First Counterclaim's claim for relief is defective because it does not specifically

10  allege the response costs Dobbas has incurred relating to the contamination at the Site.  Motion

11  at 5-11.  As explained below, neither of these arguments has merit.  Because the remaining

12  arguments in the MTD are derivative of and rely upon the foregoing two arguments, such

13  arguments are similarly unavailing.

14  **A.  Standard of Review Generally.**

15           A counterclaim generally must satisfy the minimal notice pleading requirements of Rule

16  8 to survive a motion to dismiss for failure to state a claim.  Rule 8 simply requires that the

17  counterclaim include a "short and plain statement of the claim showing that the pleader is

18  entitled to relief," and "a demand for the relief sought."  Fed. R. Civ. P. 8(a)(2).  The statement

19  of the claim does not need to set forth specific facts; rather, the statement need only give the

20  defendant "fair notice of the claim and the grounds upon which it rests."  *Bell Atlantic Corp. v.*

21  *Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*").

22           In assessing a motion to dismiss, the Court must construe the counterclaim liberally,

23  accept the allegations in the counterclaim as true, and draw all reasonable inferences in favor of

24  the pleader.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Rescuecom Corp. v. Google, Inc.*, 562

25  F.3d 123 (2d Cir. 2009).  The Court may consider documents attached to the counterclaim,

26  documents incorporated by reference in the counterclaim, or matters of judicial notice.  *Dichter–*

27  *Mad Family Partners, LLP v. United States,* 709 F.3d 749, 761 (9th Cir. 2013).

28  / / /

00011924.6

-5-

**Exhibit N
Page 111**

1    The Court may not dismiss a counterclaim for failure to state a claim unless it appears

2    beyond a doubt that the pleader can prove no set of facts in support of the claim which would

3    entitle him or her to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). "This simplified

4    notice pleading standard relies on liberal discovery rules and summary judgment motions to

5    define disputed facts and issues and to dispose of unmeritorious claims." *Hobart Corp. v. Waste*

6    *Management of Ohio, Inc.*, 840 F.Supp.2d 1013, 1019 (S.D. Ohio 2011), quoting *Swierkiewicz v.*

7    *Sorema N.A.*, 534 U.S. 506, 512-513 (2002) (internal quotes omitted). If a motion to dismiss is

8    granted, "[the] district court should grant leave to amend even if no request to amend the

9    pleading was made . . . ." *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012).

10   **B. CERCLA Liability Provisions Generally.**

11        CERCLA has three liability provisions pertinent to this action: (1) section 107(a), which

12   imposes strict liability; (2) section 107(d), which imposes liability for costs or damages as a

13   result of negligence, and (3) section 113(f), which allows claimants to seek contribution from

14   any liable or potentially liable party.   These two liability provisions are explained in greater

15   detail below.

16        CERCLA section 107(a) imposes strict liability on the following persons with respect to

17   "any facility at which hazardous substances were disposed of": (1) "the owner or operator" of the

18   facility; and (2) "any person who at the time of disposal of any hazardous substance owned or

19   operated" the facility. 42 U.S.C. § 9607(a)(1)-(2). A state agency, such as DTSC, is expressly

20   included within the definition of "person." *Id.* at § 9601(21), (27). The statute is interpreted

21   liberally in order to achieve the goals of cleaning up hazardous waste sites promptly and

22   ensuring that the responsible parties pay the costs of the clean-up. *Voggenthaler v. Maryland*

23   *Square, LLC,* 724 F.3d 1050, 1061, 1064 (9th Cir. 2013).

24        To establish a prima facie claim for recovery of response costs under section 107(a), a

25   private-party plaintiff must demonstrate: (1) the site on which the hazardous substances are

26   contained is a "facility"; (2) a "release" or "threatened release" of any "hazardous substance"

27   from the facility has occurred; (3) such "release" or "threatened release" has caused the plaintiff

28   to incur response costs that were "necessary" and "consistent with the national contingency plan";

00011924.6                                        -6-

**Exhibit N**
**Page 112**

1   and (4) the defendant is a "potentially responsible party" ("PRP") subject to the liability

2   provisions. *City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1002–03 (9th

3   Cir. 2010); *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 870–71 (9th Cir. 2001).

4   DTSC does not challenge Dobbas's allegations with respect to the first three elements; its sole

5   challenge is with respect to the PRP element and whether DTSC qualifies as an "operator" under

6   that element. Motion at 5:17-9:5.

7        Even if a person does not qualify as a PRP under the strict liability provisions of Section

8   107(a), a person may nonetheless be held liable for costs and damages resulting from his or her

9   negligent acts under Section 107(d), entitled "rendering care or advice." "CERCLA expressly

10  addresses the liability of those who act in a remedial capacity, <u>and who are otherwise not liable as</u>

11  <u>owners or operators</u>, and provides them with protection from strict liability," except for "liability

12  for costs or damages as a result of negligence on the part of such person." *United States v. Iron*

13  *Mountain Mines, Inc.*, 881 F.Supp. 1432, 1443 (E.D. Cal. 1995), citing 42 U.S.C. § 9607(d)(1)

14  (underlining added). "This provision applies to governmental bodies because they are within the

15  definition of 'person.'" *Id*. However, CERCLA provides an additional layer of protection for

16  governmental bodies when they act in response to an emergency – "[i]n such instances, state and

17  local governments are liable only for costs or damages resulting from their 'gross negligence or

18  intentional misconduct.'" *Id*. at 1443-44.

19       In addition to the allowable cost recovery under section 107, a PRP may also recover

20  contribution from another PRP under section 113 for its share of the responsibility for the

21  contamination. Specifically, section 113(f)(1) provides, in pertinent part, that "[a]ny person may

22  seek contribution from any other person who is liable or potentially liable under [section

23  9607(a)], during or following any civil action [under section 9607(a)]." 42 U.S.C. § 9613(f)(1).

24  As the Court explained in *Taylor Farm Ltd. Liability Co. v. Viacom, Inc.*, 234 F.Supp.2d 950,

25  962-63 (S.D. Ind. 2002):

26       Contribution is an action among parties who have been found to be liable for at
         least some portion of the damages alleged in the underlying lawsuit. Of course, an
27       action for contribution may also be initiated by a party who is a defendant in a
         lawsuit (and therefore not yet liable). But once a person is sued, that person's
28       potential liability is not merely hypothetical. A ruling on contribution, or relative

00011924.6
                                                    -7-

**Exhibit N**
**Page 113**

1   fault, will not occur unless the defendant is first found to be liable during the
    course of the lawsuit... section 113(f)(1) of CERCLA does not authorize
2   preemptive contribution actions.  It only authorizes a party who is potentially
    liable to seek contribution during a civil action, or alternatively, a party who is
3   found liable under section 106 or 107(a) to seek contribution following that civil
    action.

4       Based on the foregoing, Dobbas may assert claims for both cost recovery and contribution

5   under CERCLA.

6   **C. DTSC Is Not Immune From Liability Under CERCLA**

7       This Court has held that CERCLA does not provide an "overarching, unexpressed

8   remedial immunity for state or federal agencies." *Iron Mountain Mines, Inc.*, 881 F.Supp. at

9   1444.  CERCLA's legislative history makes clear that "Congress intended that those responsible

10  for problems caused by the disposal of chemical poisons bear the costs and responsibility for

11  remedying the harmful conditions they created." *Dedham Water Co. v. Cumberland Farms*

12  *Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir. 1986) (quotation omitted).  By including governmental

13  entities within the term "persons," while failing to provide an exception for regulatory activity,

14  Congress intended that a governmental entity acting in its regulatory capacity should be held

15  responsible for cleanup costs where it operates a hazardous waste facility.  *See FMC Corp. v. U.S.*

16  *Dep't of Commerce*, 29 F.3d 833, 843 (3d Cir. 1994) (en banc) (noting that the government is in

17  the same position "as any nongovernmental entity").

18      The three cases cited by DTSC that purportedly stand for a proposition to the contrary

19  have expressly been rejected by this Court.  Motion at 7:19-21; *Iron Mountain Mines, Inc.*, 881

20  F.Supp at 1445-49.  Accordingly, DTSC is not immune from liability under CERCLA.

21  **D.   Dobbas's Allegations Plausibly Support a Claim Against DTSC for "Operator"**

22  **Liability Under CERCLA Sections 107 and 113, and Provide Sufficient Notice of the**

23  **Basis for these Claims Under Rule 8.**

24      Under the plain language of the statute, a governmental entity that asserts control over the

25  operations of a facility should not be allowed to escape liability where its negligent operations

26  caused harm.  Here, assuming all of the facts as true and viewing those facts in favor of Dobbas

27  (which the Court must do), the Counterclaim plausibly states a claim that DTSC was and is an

28  "operator" of the Site.

00011924.6
                                         -8-

DOBBAS'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM AND STRIKE ANSWERS
2:14-cv-00595-WBS-EFB

**Exhibit N**
**Page 114**

1    CERCLA defines an "operator" as "any person owning or operating [a] facility." 42

2   U.S.C. § 9601(20)(A).  While the term "operator" expressly excludes a state or local government

3   that involuntarily acquires title to such a facility, the exclusion does not extend to actions taken

4   at privately-owned facilities.  *Id.* at § 9601(20)(D).  The statute further states that this exclusion

5   "shall not apply to any State or local government which has caused or contributed to the release

6   or threatened release of a hazardous substance from the facility and such a State or local

7   government shall be subject to [CERCLA's provisions] in the same manner and to the same

8   extent, both procedurally and substantively, as any nongovernmental entity, including liability

9   under section 9607 of this title."  *Id.*

10    In *United States v. Bestfoods*, 524 U.S. 51, 66-7 (1998), the Supreme Court explained that

11   "an operator must manage, direct, or conduct operations specifically related to pollution," that is,

12   "operations having to do with the leakage or disposal of hazardous waste, or decisions about

13   compliance with environmental regulations."  Courts have struggled to find the dividing line to

14   describe "what general level of operative control over a facility is necessary to make an entity an

15   operator."  *United States v. Township of Brighton*, 153 F.3d 307, 313 (6th Cir. 1998).  This

16   standard "requires a fact-intensive inquiry and consideration of the totality of circumstances."

17   *United States v. Vertac Chem. Corp.*, 46 F.3d 803, 808 (8th Cir. 1995), *cert. denied*.  A motion to

18   dismiss is not the appropriate occasion or method to make a substantive determination regarding

19   whether DTSC was, in fact, an "operator."

20    Based on the allegations identified herein and in the relevant pleadings and exhibits, it is

21   plausible that the operations ordered and performed by DTSC caused or contributed to the

22   release of contamination at the Site.  It is further plausible that a factfinder could determine that

23   DTSC had "authority to control the cause of the contamination at the time the hazardous

24   substances were released into the environment" (*Kaiser Aluminum v. Catellus Dev.*, 976 F.2d

25   1338, 1341 (9th Cir. 1992)), and/or that DTSC's actions and operations at and with regard to the

26   Site "ha[d] to do with the leakage or disposal of hazardous waste, or decisions about compliance

27   with environmental regulations."  *Bestfoods*, 524 U.S. at 66-7.

28   / / /

00011924.6                              -9-

Exhibit N
Page 115

1     The cases cited by DTSC for the proposition that a regulator cannot be an "operator"

2   (Motion at 6-7) were decided prior to the Supreme Court's clarification in *Bestfoods*.  In that

3   case, the Supreme Court clearly established the parameters for "operator" liability.  *Township of*

4   *Brighton*, 153 F.3d at 313.  Further, the factual allegations in this case are very different from

5   those in *Iron Mountain Mine, Inc.* and *United States v. Dart Indus., Inc.*, upon which DTSC so

6   heavily relies.

7     In *Iron Mountain Mines, Inc.*, the Court found that the United States was not an

8   "operator" because its involvement amounted to mere "encouragement and regulation."  *Iron*

9   *Mountain Mine, Inc.*, 881 F.Supp. at 1450.  Specifically, the Court explained that, while the

10   counterclaim alleged that the United States "pa[id] for equipment and operations in conducting

11   explorations for new ore and participating in decisions as to the best methods to search for new

12   ore," it did "not allege that these explorations resulted in any production or release of hazardous

13   wastes, and [it] states that the mining had finished at the end of the war." *Id.* at 1450-51.  This is

14   directly contrary to the specific allegations in this case, which include that: (1) DTSC's orders

15   and activities resulted in the release of hazardous substances; and (2) DTSC was involved in the

16   day-to-day operation and maintenance, and clearly made "decisions about compliance with

17   environmental regulations" before and after C&A Products' activities at the Site.  Thus, *Iron*

18   *Mountain Mine, Inc.* does not support DTSC's position.

19     Similarly, in *Dart Industries, Inc.*, the Court dismissed a third party CERCLA complaint

20   against a state agency because the plaintiffs merely alleged that the state agency issued permits

21   to store wastes at the site, performed inspections, approved the transportation of wastes to the

22   site, and failed to force cleanup despite alleged need for such action.  *United States v. Dart*

23   *Indus., Inc.*, 847 F.2d 144, 146 (4th Cir. 1988).  The Court explained that a state environmental

24   agency was not an operator because the allegations in the third party complaint that the state

25   agency "did not properly monitor the site or facilitate the cleanup fail[ed] to characterize [the

26   state agency] as an owner or operator." *Id.*  Here, again, the allegations in the Counterclaim are

27   significantly more detailed and raise at least the plausibility that DTSC was and is an "operator."

28   / / /

00011924.6

-10-

**Exhibit N
Page 116**

1   Thus, it would be inappropriate to grant the MTD without giving Dobbas the ability to develop

2   the factual allegations further against DTSC.

3   **E.**    **Dobbas's Allegations Plausibly Support a Claim for Relief Under CERCLA Section**

4        **107(d) Based Upon DTSC's Actions, and Provide Sufficient Notice of the Basis for**

5        **this Claim under Rule 8.**

6        In addition to DTSC's strict liability as an "operator," DTSC may also be held liable for

7   its actions under Section 107(d).    DTSC does not address these grounds for Dobbas's

8   counterclaims.    The liability provisions under Section 107(d) apply to persons "who act in a

9   remedial capacity, and who are otherwise not liable as owners or operators." *Iron Mountain*

10  *Mines, Inc.*, 881 F.Supp. at 1443.

11       The standard for liability is: (1) gross negligence or intentional misconduct, if DTSC can

12  prove its actions fall under the "emergency" limitation; or (2) negligence, if DTSC cannot prove

13  its actions fall under this limitation.    *Id.*; 42 U.S.C. § 9607(d).    The Counterclaim meets the

14  requirements of Rule 8, because the Counterclaim, Complaint, and their exhibits set forth a set of

15  facts that plausibly supports Dobbas's counterclaims, and it provides DTSC with sufficient notice

16  of those claims.    Specifically, the allegations include, but are not limited to:

17  1.   DTSC identified, approved, and ordered the implementation of the response actions in the

18       1983 RAP, including the installation of the asphalt cap and the use of a groundwater

19       extraction and treatment system (Countercl. at 2:6-8, ¶ 7, Ex. A; Compl. at 6:6-11, ¶ 17);

20  2.   DTSC's 1996 Certification of the Site stated that the removal/remediation actions had

21       been completed and acceptable engineering practices had been implemented (Countercl. at

22       2:12-15, ¶ 9, Ex. B; Compl. at 6:6-11, ¶ 17);

23  3.   The wood treatment and preservation operations at the Site (the original source of the

24       contamination) ceased prior to the Certification (Countercl. at Ex. B, 10; Compl. at Ex. B,

25       5-6);

26  4.   DTSC "began performing the response actions" that C&A Products previously performed

27       at the Site, in 2005 (Compl. at 6:24-8:2, ¶¶ 21-29; Motion at 2:10-15);

28
    00011924.6
                                            -11-

5.    Despite its knowledge in 2001 that the groundwater extraction and treatment operations were unsuccessful in treating the contamination, DTSC continued to require C&A Products to operate the system, operated the system itself after 2005, and contracted with Kleinfelder to operate the system in 2007 (Compl. at 6:24-8:2, ¶¶ 21-29; *id.* at Ex. B, 7-9; Motion at 2:10-15);

6.    DTSC knew in 2001 that an alternative technology was needed to address the contamination, but it continued to direct operation of the groundwater extraction and treatment system, and operated the system itself after 2005 (Compl. at 6:24-8:2, ¶¶ 21-29; *id.* at Ex. B, 8-9; Motion at 2:10-15);

7.    DTSC required the management of and has actively managed the very groundwater extraction and treatment system at the Site that its 2010 Removal Action Workplan identified for demolition (Compl. at Ex. B, 4-5, 9);

8.    DTSC noticed cracks in the asphalt cap after Kleinfelder contracted with DTSC to maintain the cap (Compl. at Ex. B, 4-5, 9);

9.    The soil and groundwater analysis after 2007 indicated unacceptable levels of contamination at the Site (Compl. at Ex. B; Countercl. at Ex. B); and

10.   DTSC claims that hazardous substances have been released into the environment at and from the Site "since 1972," indicating that the releases of contamination occurred during DTSC's oversight and operations of the Site (Compl. at 6:1-5, ¶ 16).

Based on the foregoing, and assuming these facts are true and read in the light most favorable to Dobbas, as required in ruling on DTSC's MTD, it may reasonably be inferred that DTSC's negligent, reckless, wanton, willful, and intentional conduct in overseeing the clean-up activities and itself conducting such activities at the Site plausibly resulted in the release of or threatened release of the contaminants that form the subject of this action. The totality of the allegations in the pleadings and the attachments are sufficient to put DTSC on notice of the claims against it. Accordingly, Dobbas's Counterclaim survives the MTD.

/ / /

Exhibit N
Page 118

**F. Dobbas Sufficiently Alleges Its Costs Related to the Site's Contamination.**

DTSC claims that Dobbas's CERCLA claims fail for lack of specifying what costs were incurred or would be incurred relating to the Site's contamination. Motion at 9:6-10:2. DTSC is mistaken. Dobbas's allegations need only meet the requirements of Rule 8, which it does.

DTSC's sole authority for this proposition is an inapplicable case, *Ascon Properties, Inc. v. Mobil Oil*, 866 F.2d 1149 (9th Cir. 1989), involving an action with a heightened pleading standard. However, in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), the Supreme Court abrogated the heightened pleading standard that DTSC asks this Court to apply to Dobbas's Counterclaim. It is clear that "CERCLA litigation does not require a higher level of specificity in pleadings." *Hillsborough County v. A&E Road Oiling Service, Inc.*, 853 F.Supp.1402, 1411 (M.D. Fla 1994). The only exceptions to the general rule are averments of fraud or mistake. *Id.* The Counterclaim does not allege fraud or mistake.

Dobbas seeks recovery for costs that it "incurred and/or may, in the future, incur [ ] in response to the release or threatened release of hazardous substances at or from the Site." Countercl. at 3:21-22. Such existing and future costs are cognizable costs recoverable under CERCLA. 42 U.S.C. § 9607(a). Indeed, DTSC indicates its awareness that Dobbas has incurred such costs. Compl. at 7:3-5, ¶ 23 (conceding that Dobbas incurred costs to perform maintenance of the asphalt cap and repair of a roof drainage system for a building at the Site). Accordingly, Dobbas has fulfilled its pleading requirements and DTSC has fair notice of the grounds upon which the Counterclaim is based.

**G. The HSAA Claim Survives in the Same Manner as the CERCLA Claims.**

DTSC's challenge to the HSAA claim solely relies on the success of its arguments on the CERCLA claims. Motion at 10:3-15. Because DTSC's arguments regarding the CERCLA claims do not prevail, its arguments likewise fail with regard to Dobbas's HSAA claim.

**H. Dobbas Properly Seeks Declaratory Relief under the Declaratory Judgment Act.**

Dobbas seeks separate declaratory relief under section 113(g)(2) in the Third Counterclaim, and under the Declaratory Judgment Act in the Fifth Counterclaim. Those two claims seek separate and distinct remedies and are appropriately alleged.

00011924.6                                          -13-

1    The request for declaratory relief under section 113(g)(2) is for future costs associated with

2    DTSC's section 107 liability.  Dobbas also alleges a counterclaim against DTSC for contribution

3    under section 113 (f), and appropriately seeks declaratory relief for future costs under the

4    Declaratory Judgment Act based upon DTSC's section 113(f) liability, as such relief is not

5    available under section 113(g)(2). *New York v. Solvent Chemical Co., Inc.*, 664 F.3d 22, 25 (2d

6    Cir. 2011).

7           Citing *City of Colton*, 614 F.3d 998, DTSC erroneously argues that Dobbas can only

8    assert declaratory relief under CERCLA's "more detailed declaratory judgment provision."

9    Motion at 11:1-2.  DTSC misinterprets *City of Colton*.  That case actually supports Dobbas's

10   Counterclaim because the Court held that declaratory relief associated with Section 107 is

11   properly brought under Section 113 (g)(2).  *City of Colton*, 614 F.3d 998.  Dobbas did just that.

12   Countercl. at 4:26-5:10, ¶¶ 31-33.  *City of Colton* did not address declaratory relief claims

13   brought in connection with a Section 113(f) contribution claim.

14          In the absence of any authority for DTSC's proposition, and because Dobbas's declaratory

15   relief claims are proper, there is no basis for its MTD as it relates to these claims.

16          For all of the above reasons, Dobbas respectfully requests the Court to summarily deny

17   DTSC's MTD.  If, however, the Court is inclined to grant the MTD, Dobbas respectfully requests

18   the Court to grant leave to amend.

19                              **IV.    MOTION TO STRIKE**

20          Although DTSC has been involved with the contamination at this Site for over three

21   decades, Dobbas had limited time to review the voluminous documents relating to the Site, and to

22   assess and identify its potential affirmative defenses in response to the Complaint.  In an

23   abundance of caution and to preserve its rights, Dobbas asserted the affirmative defenses in its

24   Answer with the intent of conducting further inquiry into the allegations in the Complaint.

25   Having had a further opportunity to do so, Dobbas does not oppose DTSC's MTS with regard to

26   the request for attorneys' fees and the following affirmative defenses in its Answer: 10 (Waiver,

27   Equitable Estoppel and Equitable Indemnity), 11 (Laches), 12 (Unclean Hands), 13 (Failure to

28   Join Parties), 14 (Comparative Fault), 18 (Assumption of Risk), 21 (De Minimis Contribution, If

00011924.6                                    -14-

**Exhibit N**
**Page 120**

1    Any), 23 (No Duty), 25 (Reasonableness and Good Faith), 26 (Performance of Duties), 28

2    (Equitable Factors), 33 (Compliance with Laws), 35 (Reasonable Precaution), 38 (Release or

3    Waiver), and 42 (Necessity).    However, Dobbas does oppose DTSC's request to strike the

4    remaining affirmative defenses and Dobbas's jury demand.

5    **1.    Standard of Review Generally**

6        The second portion of the Motion is DTSC's MTS under Federal Rules of Civil

7    Procedure, Rule 12(f) ("Rule 12(f)").  Rule 12(f) allows a Court to "strike from a pleading an

8    insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.

9    Civ. Proc. 12(f).  "Partly because of the practical difficulty of deciding cases without a factual

10   record it is well established that striking a pleading should be sparingly used by courts. It is a

11   drastic remedy to be resorted to only when required for the purposes of justice." *N. Penn*

12   *Transfer, Inc. v. Victaulic Co. of America*, 859 F.Supp. 154, 158 (E.D. Penn. 1994).

13       Courts therefore generally disfavor motions to strike and will usually deny them "unless

14   the allegations in the pleading have no possible relation to the controversy, and may cause

15   prejudice to one of the parties. [Citation omitted.] If the court is in doubt as to whether the

16   challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving

17   an assessment of the sufficiency of the allegations for the adjudication on the merits." *Champlaie*

18   *v. BAC Home Loans Servicing, LP*, 706 F.Supp.2d 1029, 1039 (E.D. Cal. 2009).  Dobbas has

19   asserted sufficient allegations relating to the controversy to survive the MTS its request for a jury

20   trial and the affirmative defenses that it does not willingly strike on its own.

21   **2.    The Jury Demand is Appropriate Because the Counterclaim Involves a Mix of Legal**

22   **and Equitable Claims**

23       The right to a jury trial is fundamental.  "Maintenance of the jury as a fact-finding body is

24   of such importance and occupies so firm a place in our history and jurisprudence that any

25   seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *In re*

26   *Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F.Supp. 994,

27   998 (D. Mass. 1989).  Accordingly, the Court should err on the side of preserving the jury trial.

28   *Viking Resources*, citing *United States v. Williams*, 441 F.2d 637, 644 (5th Cir. 1971) (quoting

**Exhibit N**
**Page 121**

1  *Beacon Theatres Inc. v. Westover*, 359 U.S. 500 (1959) ["When legal and equitable issues are

2  merged in a single case, the trial court's discretion 'is very narrowly limited and must, wherever

3  possible, be exercised to preserve jury trial'"].

4         When legal and equitable claims are combined in the same action, "the right to jury trial

5  on the legal claim, including all issues common to both claims, remains intact." *Lytle v.*

6  *Household Mfg., Inc.*, 494 U.S. 545, 550 (U.S.N.C. 1990), citing *Curtis v. Loether*, 415 U.S. 189,

7  196, n.11 (1974). Further, when legal and equitable claims are both heard, the legal issue is heard

8  first and informs the equitable determination. *Beacon Theatres, Inc.*, 359 U.S. at 510-511

9  ["[O]nly under the most imperative circumstances … can the right to a jury trial of legal issues be

10  lost through prior determination of equitable claims."]; *see also Parklane Hosiery Co. Inc. v.*

11  *Shore*, 439 U.S. 322, 353-55 (1979); and *GTE Sylvania, Inc. v. Continental T.V., Inc.* 537 F.2d

12  980, 986, n.7 (9th Cir. 1976), *aff'd* 433 U.S. 36.

13         It is true that CERCLA cost recovery actions do not provide an express right to trial by

14  jury; however, Courts are split concerning CERCLA contribution claims. *United States v. Vertac*

15  *Chem. Corp.*, 966 F.Supp.1491, 1498 (E.D. Ark. 1997) *aff'd sub nom. United States v. Hercules,*

16  *Inc.*, 247 F.3d 706 (8th Cir. 2001).)   The Counterclaim requests such contributory relief.

17  Moreover, the Counterclaim requests relief pursuant to the Declaratory Judgment Act, 28 U.S.C.

18  § 2201 et al., which preserves the right for a jury. *See, e.g., Beacon Theatres, Inc.*, 359 U.S. 500;

19  *Minnesota Mut. Life Ins. Co. v. Brodish*, 200 F.Supp. 777, 778 (E.D. Penn. 1962); *Chapman v.*

20  *Kleindienst*, 507 F.2d 1246 (7th Cir. 1974).

21         Due to the combination of legal and equitable issues common to the Complaint, Answer,

22  and Counterclaim, it is inappropriate to strike Dobbas's jury demand.  It is more suitable to defer

23  the issue of a jury demand until facts can be established through the discovery process.

24  Maintenance of the jury demand allows the Court to better consider the judicial economy of

25  trying all issues central to the Complaint, Counterclaim, and any other pleadings and ultimately

26  make a more informed decision regarding procedure.  Thus, the Court should decline to strike the

27  jury demand.

28  / / /

00011924.6
-16-
DOBBAS'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM AND STRIKE ANSWERS
2:14-cv-00595-WBS-EFB

Exhibit N
Page 122

1    **3.    The Remaining Affirmative Defenses are Related to the Controversy and Fall within**

2    **CERCLA's Statutory Defenses**

3    The remainder of Dobbas's affirmative defenses comply with CERCLA and the HSAA.

4    Moreover, the Court should decline to strike the remaining affirmative defenses because Dobbas

5    would be prejudiced if they were stricken at this early stage in the proceeding without allowing

6    factual development through the discovery process. *Champlaie*, 706 F.Supp.2d at 1039; *Carolina*

7    *Cas. Ins. Co. v. Oahu Air Conditioning Service, Inc.*, 2014 WL 309557 (E.D. Cal. Jan. 28, 2014).

8    DTSC first claim is that "Dobbas' [sic] affirmative defenses that allege that Plaintiffs are

9    responsible parties are insufficient." Motion at 15:23-24. To the contrary, Dobbas's affirmative

10   defenses each fall squarely within the bounds of the section 107(b)(3) defenses. Each of

11   Dobbas's challenged affirmative defenses allege that DTSC was the third party responsible for

12   the release as contemplated by section 107(b)(3). *See, e.g.*, Answer at 11:8 ("Acts or Omissions

13   of Plaintiffs" which traces the language of 107(b)(3) which states in part: "an act or omission of a

14   third party..."). These defenses are consistent with the burden that Dobbas may need to carry to

15   prove DTSC's responsibility. *See, e.g., City of Detroit v. A.W. Miller, Inc.*, 842 F.Supp. 957

16   (E.D. Mich. 1994.).

17   Additionally, "causation-based affirmative defenses," as characterized by DTSC (Motion

18   at 17:16), are appropriate to at least survive a Rule 12(f) motion, because CERCLA defenses

19   specifically require the defendant to show "evidence that the release or threat or release of a

20   hazardous substances and the damages resulting therefrom were *caused* solely by an act or

21   omission of a third party." 42 U.S.C. § 9607(b)(3) (emphasis added). Moreover, Dobbas's

22   affirmative defenses track the express statutory language in section 107(b)(3). *See, e.g.*, Answer

23   13:7-9, ¶ 17 ("No act or omission by Dobbas, or by any person or entity for which Dobbas is or

24   was responsible, is the cause in fact or proximate cause of any costs or damages alleged in the

25   Complaint.").

26   Courts have interpreted this express causation standard as "incorporat[ing] proximate or

27   legal cause." *Castaic Lake Water Agency v. Whittaker Corp.*, 272 F.Supp. 2d 1053, 1082 (C.D.

28   Cal. 2003); *Adobe Lumber, Inc. v. Hellman*, 658 F.Supp.2d 1188, 1204 (E.D. Cal. 2009) ("If the

**Exhibit N
Page 123**

1   defendant's release was not foreseeable, and if its conduct-including acts as well as omissions—

2   was 'so indirect and insubstantial' in the chain of events leading to the release, then the

3   defendant's conduct was not the proximate cause of the release and the third party defense may

4   be available … The Eastern District of California has continued to apply this standard, and

5   several courts in other districts have also adopted it."). Dobbas has alleged that it has not caused

6   a release, which "at least create[s] a genuine issue of material fact as to sole causation." *Id.*

7   Dobbas, therefore, should be allowed to avail itself of the discovery process and to develop facts

8   supporting its statutory defenses.

9          Similarly, Dobbas's affirmative defenses of "Reliance" and "Undue Delay" are consistent

10  with CERCLA's innocent third-party defense. Dobbas alleges that DTSC was the cause of the

11  release or threatened release and Dobbas only "acted in reliance upon the directions [DTSC gave]

12  it." Answer at 17:3-5, ¶ 36; *id.* at 17:19-22, ¶ 39; 42 U.S.C. § 9607(b)(3). DTSC would suffer no

13  prejudice in allowing Dobbas to pursue these theories, and the extent of discovery is not any

14  farther-reaching than the requests necessary to defend against DTSC's claims. The Court,

15  therefore, should decline to strike these affirmative defenses.

16         Finally, DTSC alleges that "failure to mitigate damages as affirmative defenses is

17  improper." Motion at 19:20-21. This Court has suggested that evidence of government

18  misfeasance or delay may give reason to refuse to strike a failure-to-mitigate defense. *United*

19  *States v. Iron Mountain Mines, Inc.*, 812 F.Supp. 1528, 1543 (E.D. Cal. 1992). Here, Dobbas

20  alleges DTSC failed to take reasonable steps to mitigate the contamination through over thirty

21  years of mismanagement. Therefore, the Court should decline to strike Dobbas's affirmative

22  defense that DTSC failed to mitigate damages.

23                            **V.    CONCLUSION**

24         When the allegations in the Complaint and Counterclaim, including their exhibits, are

25  taken as true and read in favor of Dobbas, it is clear that the Counterclaim meets the Rule 8

26  standards and provides adequate and fair notice of Dobbas's claims to DTSC. Accordingly, the

27  MTD should be denied. However, if the Court grants any of DTSC's requests, Dobbas requests

28  / / /

00011924.6
                                    -18-

**Exhibit N
Page 124**

1   that the Court allow Dobbas leave to amend its claims.  Dobbas further requests that the Court

2   deny the MTS as opposed herein.

3

4   Dated: August 22, 2014                          KING WILLIAMS & GLEASON LLP

5

6                                                   By:  /s/  Jennifer Hartman King
                                                    Jennifer Hartman King
7                                                   Nicole R. Gleason
                                                    Shelby M. Gatlin
8                                                   Attorneys for Defendant JIM DOBBAS, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Joani Wise, declare:

I certify that on August 22, 2014, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **JIM DOBBAS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS DEFENDANT JIM DOBBAS, INC.'S COUNTERCLAIM, AND TO STRIKE PORTIONS OF ANSWERS OF DEFENDANTS JIM DOBBAS, INC., DAVID VAN OVER, AND WEST COAST WOOD PRESERVING, LLC**

☐   by transmitting via facsimile the document(s) listed above to the Attorney for Plaintiff at fax number(s) set forth below on this date.

☑   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California, addressed as set forth below.

☐   I caused such envelope to be delivered via overnight delivery addressed as indicated on the attached service list.  Such envelope was deposited for delivery by Federal Express following the firm's ordinary business practices.

☐   via electronic/e-mail service.  The document(s) listed above were served via e-mail.

# SEE ATTACHED SERVICE LIST

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed by Jennifer Hartman King, a member of the California State Bar, and admitted in this district. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at King Williams & Gleason, LLP ("KWG") for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system of KWG and is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On August 22, 2014, I have caused to be mailed in the internal mail system of KWG, the foregoing document(s) by First-Class Mail, postage prepaid, to the following non-CM/ECF participants:

Executed on August 22, 2014, at Sacramento, California.

Joani Wise

00012264.1

CERTIFICATE OF SERVICE
2:14-cv-00595-WBS-EFB

**Exhibit N
Page 126**



1

<u>SERVICE LIST</u>

2

David van Over                               In Pro Per
3   216 F Street #108
    Davis, CA 95616-4515
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00012264.1                          -2-

**Exhibit N**
**Page 127**