1  Lester O. Brown, Bar No. 160828
   LBrown@perkinscoie.com
2  James G. Bernald, Bar No. 205519
   JBernald@perkinscoie.com
3  PERKINS COIE LLP
   1888 Century Park East, Suite 1700
4  Los Angeles, CA  90067-1721
   Telephone:  310.788.9900
5  Facsimile:  310.788.3399

6  Attorneys for Defendant
   West Coast Wood Preserving, LLC
7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11 | CALIFORNIA DEPARTMENT OF        | Case No. 2:14-cv-00595-WBS-EFB
   | TOXIC SUBSTANCES CONTROL,       |
12 | et al.,                         | **ORDER RE:  REQUEST TO
   |                                 | REMOVE AND REPLACE
13 |              Plaintiffs,        | INCORRECTLY FILED
   |                                 | DOCUMENT: DOCKET NUMBER
14 |      v.                         | 79-3**

15   JIM DOBBAS, INC., et al.,         Judge:      Hon. William B Shubb
                                       Date:       January 26, 2015
16                Defendants.          Time:       2:00 p.m.
                                       Place:      Courtroom 5, 14th Floor
17                                                 501 I Street
                                                   Sacramento, CA 95814
18                                     Trial:      January 4, 2017
                                       Action Filed:      March 3, 2014
19
   AND RELATED CROSS-
20 ACTIONS.

21

22

23

24

25

26

27

28

1   Having considered the Request by Defendant West Coast Wood Preserving,

2   LLC to Remove and Replace Incorrectly Filed Document: Docket Number 79-3

3   (the "Request"), and having considered any and all other papers filed by the parties

4   in support of and in opposition to the Request, and good cause having been shown,

5   IT IS THEREFORE ORDERED that:

6   (1) The Request is granted; and

7   (2) The Clerk of the United States District Court for the Eastern District of

8   California shall remove Docket Number 79-3, and replace it with the corrected

9   version, a copy of which is attached to this Order.

10  Dated:  December 17, 2014

11  _____
    WILLIAM B. SHUBB

12  UNITED STATES DISTRICT JUDGE

13

14                                  Respectfully submitted,

    DATED: December 16, 2014        **PERKINS COIE LLP**
15

16

17                                  By:   /s/Lester O. Brown
                                          Lester O. Brown
18
                                    Attorneys for Defendant
19                                  West Coast Wood Preserving, LLC

20

21

22

23

24

25

26

27

28

# Exhibit A

## AGREEMENT

THIS AGREEMENT, dated this _/2_ day of ~~August~~, *September,* 1979, is between THE WICKES CORPORATION, a Delaware corporation (hereinafter referred to as "Buyer") and PACIFIC WOOD PRESERVING CORPORATION, a California corporation (hereinafter referred to as "Seller").

## RECITALS

This Agreement is entered into with reference to the following facts:

1.   Seller is engaged in the wood preserving pressure treatment of lumber in the City of Elmira, California, and in said business owns and uses certain assets which include real property, inventory, furniture and fixtures, machinery and equipment, motor vehicles, office equipment and supplies and trade names.  All of these assets are hereinafter referred to as the "Assets".

2.   Seller desires to sell the Assets, and Buyer desires to purchase the Assets upon the terms and conditions hereinafter set forth.

3.   The Board of Directors and shareholders of Seller shall adopt resolutions approving the transaction contemplated herein on or before the Closing Date (Article X).  The Board of Directors or Executive Committee thereof, shall approve the expenditure of funds required to complete the transaction contemplated herein.

WCWP000146

## AGREEMENT

NOW, THEREFORE, in consideration of the premises and of the mutual acts and promises hereinafter contained, Buyer and Seller hereby agree, warrant and represent as follows:

## ARTICLE I - SALE OF ASSETS

1.1     Buy - Sell.

On the basis of and in reliance upon the representations and warranties herein contained, subject to the terms and conditions set forth herein, and for the consideration provided for herein, Seller shall sell to Buyer and Buyer shall buy from Seller the Assets.

## ARTICLE II - PURCHASE PRICE.

2.1     Buyer agrees to pay to Seller the sum of Six Hundred Ninety Thousand Dollars ($690,000) ("Purchase Price") for the real property and the improvements located thereon described in Schedule A(1) attached hereto, the machinery and equipment described in Schedule A(2) attached hereto. Buyer agrees to purchase the inventory described in Schedule A(3) which will be attached hereto on the Closing Date upon the completion of the physical inventory provided for in Paragraph 2.2 below and at the value provided in said Paragraph 2.2 below. The value each of the assets is set forth on the respective schedule of assets.

2.2     On or about September 12, 1979, a physical count of the inventory shall be made, so as to establish an identification

-2-

WCWP000147

thereof as of the Closing Date (Article X), and a valuation of such inventory shall be made on or before the closing date. The parties shall use their best efforts to arrive at a mutually acceptable identification and value of the inventory. In valuing the inventory, the following procedures shall be used:

(a)   The physical count of the inventory shall be conducted by representatives of Seller, with observation and audit thereof by representatives of Buyer;

(b)   The inventory shall be priced by representatives of Seller, with observation and audit thereof by representatives of Buyer.  The lumber inventory shall be priced market on the day before the closing date and all other inventory shall be at the lower of Seller's cost or market;

(c)   The inventory value shall be increased by the addition thereto of a premium of Fifty Thousand Dollars ($50,000).

2.3      As additional consideration Buyer hereby agrees to assume the liabilities set forth in Schedule B(1) - Assumed Contracts, Schedule B(2) - Trade Accounts Payable.  Except for these assumed liabilities,  all other liabilities and obligations of Seller, including, but not limited to, all accrued employee benefits (including accrued vacation pay, commissions, pension plan liability, etc.) shall continue to be the obligation of Seller; and Buyer shall not be liable with respect to such liabilities or obligations.

-3-

WCWP000148

## ARTICLE III – ADJUSTMENTS TO PURCHASE PRICE

3.1     The Purchase Price shall be subject to the following adjustments at the Closing:

        (a)  The Purchase Price shall be reduced by the amount of Trade Accounts Payable set forth on Schedule B(2) attached hereto; and

        (b)  ~~The~~ Purchase Price shall be increased ~~or decreased~~ to reflect the amount ~~by which the~~ physical inventory referred to in Paragraph ~~2.2~~ exceeds or is less ~~than the inventory~~ value ~~set forth~~ on Seller's May 31, 1979 Balance Sheet – ~~$307,000~~.   N/k

        (c)  The Purchase Price shall be increased by an amount equal to the actual amount spent by Seller directly to correct the ground pollution problem described in Article XI herein.

The Purchase Price, as adjusted, is hereinafter referred to as the "Adjusted Purchase Price".


## ARTICLE IV – REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer:

4.1     **Organization of Seller.**

        Seller is a corporation duly organized, validly existing, and in good standing under the laws of the State of California.

4.2     **Corporate Power.**

        Seller has full power and authority to convey, assign, transfer and deliver the Assets described and identified in Schedule A(1), Schedule A(2), and Schedule A(3) and to enter into this

-4-

WCWP000149

Agreement; and all corporate acts and other proceedings required to be taken on its part to authorize it to carry out required to be taken on its part to authorize it to carry out this Agreement and to so convey, assign, transfer and deliver the Assets either have been properly taken or will be taken properly prior to Closing Date (subject, however, to the right of the Board of Directors or the shareholders of Seller to not approve or authorize the transaction contemplated herein).

4.3     No Violations or Breaches.

(a)  No Breaches.  Neither the executive of this Agreement nor the consummation of the transaction contemplated herein will (i) result in a breach of any agreement or instrument to which Seller is a party or bound, (ii) constitute or provide a basis upon which a default could mature or a right of termination, cancellation, or acceleration arise, or (iii) give to any other party an interest in or right to the Assets.  All consents to the transaction contemplated herein required under any agreement to which Seller is a party or bound have either been obtained or will be obtained prior to Closing (Article X).

(b)  No Governmental Violation.  Except as set forth on Schedule C attached hereto, the business conducted by Seller is not in violation of any law, statute, rule, governmental regulation or order, nor are there any facts known to the officers of Seller upon which a violation thereunder could be asserted.  Without limiting the generality of the fore-going, Seller is in substantial compliance with Occupational

-5-

WCWP000150

Safety and Health Act, implementing Federal and state regula-
tions thereunder and state environmental controls, standards,
statutes, rules or regulations.  The business conducted by
Seller comports with the practices generally prevailing in the
relevant industries.

(c)  Consent.  All consents or approvals in order to
permit Seller to consummate the transactions of each
person and entity, whose consent or approval is required
under any contractual authorization and which presently
bind or may bind the Assets or the Seller, have been
obtained.

(d)  Statutory Requirements.  The statutory require-
ments, whether local, state or Federal, for the valid
consummation by Seller of the transactions contemplated
herein have been fulfilled; and all authorizations, ap-
provals and consents, if any, of all Federal, state and
local governmental agencies and authorities required to be
obtained in order to permit consummation by Seller of the
transactions herein contemplated have been obtained.

4.4      Employment Related Matters.

(a)  Collective Bargaining Agreements.  Seller is
not a party to any collective bargaining agreements or any
written employment related agreements that contains any
severance pay, liabilities or obligations, or which may
bind the Buyer.

(b)  Absence of Union Activities.  Seller has not

-6-

WCWP000151

-11-

been the subject of any union activity nor do the officers of Seller have any reason to suspect that it may be the subject of any organized union activity.  To the best of Seller's knowledge and belief, it has not violated any applicable Federal or state law relating to labor or committed any unfair labor practices under applicable state and Federal statutes; and Seller is not presently engaged in any labor disputes.

(c)  Compensation and Other Plans.  Except as described in Schedule D, Seller does not have, nor is it bound by, any (a) bonus, deferred compensation, pension, profit sharing, or retirement plans, stock options, or other arrangements (b) group life insurance, hospitalization, or other employee benefit agreements or plans, and (c) any employment agreement, contract or commitment with any employee of Seller, or any consulting contract regarding the business conducted by Seller.  A copy of any insurance policies described in Schedule D has been delivered to Buyer.  Schedule E is a true, correct and complete list of all employees presently employed by Seller, together with their Social Security numbers, date of birth, date of hire, categorizations as salaried or hourly, job titles and present salary commissions and bonuses, if any.

4.5      Title.

Seller has good and marketable title to the Assets and as of the Closing Date the Assets will be subject to no

-7-

WCWP000152

-12-

mortgages, pledge, liens, conditional sales contracts, encum-
brances, charges or any security interest whatsoever, except as
set forth in Paragraph 8.4(a) herein.

4.6     Condition of Assets.

All items of personalty listed in Schedule A(2) are
in good repair, physical condition, working order and condition,
ordinary wear and tear excepted.

4.7     Insurance.

The Assets are insured to the Closing Date against
loss under policies of insurance which are in full force and
effect and the coverages provided thereby are adequate and
reasonable.

4.8     Taxes.

All state and local sales or use taxes, personal
property taxes and real property taxes, state and Federal
income taxes, state and Federal unemployment compensation
taxes which have accrued to the Closing Date shall be paid
by Seller.

4.9     No Litigation or Adverse Events.

Except as set forth in Schedule F there are no
actions, suits, claims, proceedings pending or threatened
against Seller which affect the Assets being purchased by Buyer
or in any way adversely or materially affect the future conduct
of the business presently being conducted by Seller, at law or
in equity or by or before any Federal, state, municipal

-8-

WCWP000153

or other governmental or non-governmental department, commission, bureau, agency or authority; nor is Seller aware of the existence of any facts upon which any suit, action, claim or countersuit may be initiated.

Seller is not aware of any facts which in Seller's opinion would materially and adversely affect the future operation or prospects of the business presently being conducted by it. Without limiting the generality of the foregoing, Seller does not have any information, nor is it aware of any facts, indicating that any of its major customers intend to cease doing business with it (or Buyer) or intend to materially alter the amount of business they are presently doing with Seller. Seller does not have any information, nor is it aware of any facts, indicating that any of its major sources of supply intend to cease doing business with it (or Buyer), or intend to materially alter the amount of business they are presently doing with Seller.

4.10    Absence of Conflicts.

No shareholder of Seller, or any officer, or director or employee of Seller, nor any spouse, child or other relative of any of these persons, owns, or has any interest, directly or indirectly (except as shareholder), in any of the Assets.

4.11    Brokers' or Finders' Fees.

Except for employing the services of a Mr. Morris, Seller has not retained the services of any individual or entity who might be entitled to a brokers' or finders' fee or

-9-

WCWP000154

commission in respect of the transaction proposed herein.
Seller agrees to indemnify and Hold Buyer harmless of and from
any claim for a broker's commission or finder's fee by Mr.
Morris.

4.12      Trade Name.

Except for the name Pacific Wood Preserving Corporation,
Seller has no trade names or trademarks.  From and after the
date hereof, Seller shall not use the name "PACIFIC WOOD
PRESERVING CORPORATION", or any variant thereof for any purpose,
except where such is necessary for it to wind-up and resolve
certain matters relating to the business heretofore conducted
by it and arising out of the conduct of its business, provided
that the use thereof by Seller shall clearly reflect the
transaction contemplated hereby.  Seller shall take such
measures as may be required in order to abandon the name Pacific
Wood Preserving corporation and transfer same to Buyer.  Buyer
acknowledges that Richard Jackson, the principal shareholder of
Seller is involved in a similar business located in Bakersfield,
California and that this Agreement, except as to provisions
dealing with non competition, does not concern the similar
business.

4.13      Access to Information.

Seller has allowed representative of Buyer full
access to its properties, books, records, employees, such
other information pertaining to its business or to the Assets,

-10-

WCWP000155

as requested by Buyer.  The books and records are in all material respect complete and accurate and have been maintained in accordance with good business practice.

4.14     Trade Accounts Payable.  Each of the trade accounts payable set forth on Schedule B(2) attached hereto constitute an obligation incurred by Seller in connection with and in furtherance of Seller's business, and any deliquency, late charge or penalty existing at the time of transfer shall be paid by Buyer and the purchase price shall be reduced by the amount of such deliquency, late charge or penalty.

4.15     Selle- agrees not to engage in any business of any type and character in competition with Buyer in the business of wood preserving treatment of lumber, as such was conducted by Seller at the date hereof for a period of three years and in a circular geographic area determined with a radius Two Hundred and Fifty (250) miles from the real property described in Schedule A(1).

ARTICLE V - REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller:

5.1     Organization.

Buyer is a corporation duly organized, validly existing, and in good standing under the laws of the State of Delaware and is qualified to do business in the State of California.

5.2     Corporate Power.

Buyer has full power and authority to enter into this

-11-

WCWP000156

Agreement; and all corporate acts and other proceedings required to be taken on its part to authorize it to carry out this Agreement either have been properly taken or will be taken properly prior to the Closing Date (subject, however, to the right of the Board of Directors of Buyer to not approve or authorize the transaction contemplated herein).

5.3     No Violation or Breaches.

Neither the execution of this Agreement nor the consummation of the transaction contemplated herein will (i) result in a breach of any agreement or instrument to which Buyer is a party or bound, or (ii) constitute or provide a basis upon which a default could mature or a right of termination, cancellation, or acceleration arise. All consents to the transaction contemplated herein required under any agreement to which Buyer is a party or bound have either been obtained or will be obtained prior to Closing Date.

ARTICLE VI - COVENANTS OF SELLER

6.1     Conduct of Business; Investigation.

From the date hereof to the Closing Date, Seller shall conduct its business only in the ordinary course. The Assets (and risk of loss attendant therewith) owned by, and the liabilities and obligations against, Seller shall continue to be owned by or be against it until the Closing Date.

6.2     Access to Records.

The Closing Date.

For the records relating to the period prior to the

-12-

WCWP000157

Closing Date, Seller agrees to give Buyer full access, access
not to exceed seven (7) years from the Closing Date, to its
premises, books and records, and to furnish Buyer with such
financial and operating data and other information with respect
to the business and properties of Seller as Buyer shall from
time to time request; and Seller shall keep Buyer fully apprised
of all developments of and activities of Seller.  Buyer agrees
to provide storage for such records as Buyer requires.  Such
investigation as shall be made by Buyer in regard thereto shall
be conducted in such manner as not to unreasonably interfere
with the operation of the business of Seller.  In the event
the transaction contemplated herein is not consummated for any
reason, Buyer shall return to Seller, upon Seller's demand, all
of Seller's books, records, operating data and information, and
all copies and notes thereof, furnished or made available to
Buyer hereunder, and Buyer shall keep all information furnished
to it by Seller confidential and shall not reveal any such
information to any third party.  All expenses in connection
with the foregoing shall be borne by Buyer.

6.3      Consents, Etc.

Prior to the Closing Date, Seller shall secure
all written consents to the transaction contemplated herein
required under any contracts to which it is a party or bound,
including, but not limited to License Agreements dated February
21, 1977 and February 26, 1977 between Seller and Koppers
Company, Inc.  Seller shall secure such approvals or consents

-13-

WCWP000158

as may be required under any statute, rule, regulation or law.

6.4        Shareholders Approval.

Prior to the Closing Date, Seller shall submit this Agreement to its shareholders for approval, all as provided by law and its Charter Documents.

## ARTICLE VII - SELLER'S INDEMNITY

7.1        Indemnity.

In the event that the Seller's representations and warranties set forth in Paragraphs 4.3 to 4.15 inclusive, or Seller's Covenants set forth in Paragraphs 6.1, through 6.4, inclusive, are breached by Seller, Buyer shall not be entitled to any remedies against Seller including but not limited to Buyer's refusal to consummate the transaction contemplated herein, provided (a) Seller, upon receipt of written notice from Buyer specifying the particular breach or breaches, shall immediately commence to cure such breaches and shall diligently pursue the curing thereof to completion and Buyer shall sustain no liability, loss, damage or expense as a result of any such breach, or, if Buyer sustains any such liability, loss, damage or expense, it shall be fully reimbursed by Seller therefor and (b) after the Closing Date Buyer's ability to conduct a wood treatment and preserving business at the location the same is being conducted by Seller as of the Closing Date shall not be materially impaired. In the event that an alleged claim, demand, action or cause of action is asserted by any third party which, if established as asserted,

-14-

WCWP000159

constitutes any such breach, the Seller shall have the right to contest any such assertion at Seller's sole expense provided that Buyer, by reason of such contest by Seller, shall not be subject to any liability, loss, damages or expense and such business of Buyer is not materially and adversely affected by Seller undertaking any such contest.

Seller shall indemnify and hold Buyer harmless from and against any liability, loss, damages and expenses (including but not limited to any costs, expenses and attorneys' fees incurred by Buyer in the event any claim or demand is asserted against Buyer, whether or not the same shall be litigated), resulting from any such breach or any undisclosed, unknown or unassumed liabilities of Seller of any nature, whether accrued, absolute, contingent or otherwise, which may be asserted against Buyer.  If Buyer seeks indemnification under this Article as to any claim or demand asserted by any third party, or as to any proceeding, Buyer shall furnish Seller immediate written notice of the claim or proceeding as to which indemnification is sought, and shall forward to Seller every demand, notice, summons, complaint or other process received in connection therewith.  Unless otherwise agreed, the Seller shall have the right to defend against such claim or proceedings and in its sole discretion to settle the same.  Buyer shall cooperate fully with the Seller in such defense and may employ separate counsel, provided unless otherwise agreed such employment shall be at the expense of Buyer.  In the event Buyer fails to

-15-

WCWP000160

forward any such notice or other document as provided above and as a result of such action a default or judgment upon such claim or proceeding is rendered against Buyer, the Buyer fails to have the same reopened or reversed, Seller shall have no liability to Buyer under this Agreement with respect to such claim proceedings, default or judgment.

In the event Seller does not defend, settle or pay the claim, it shall be bound by any result obtained by Buyer; it being understood that Buyer is in no way obligated to defend any such claim, and that in the event Seller does not defend, settle or pay the claim Buyer has the right, in such event, to settle such claim, in its sole discretion, even by payment of the whole thereof.

ARTICLE VIII - CONDITIONS PRECEDENT TO THE
OBLIGATION OF BUYER

The transaction contemplated herein, the sale of the Assets shall be consummated at the Closing (Article X) and Buyer shall be obligated to consummate the sale under Article X if and only if:

8.1     Except as to the representations, warranties and covenants of Seller specifically referred to in Paragraph 7.1 by reference to numbered Paragraphs, the representations and warranties of Seller remain true, accurate and complete in all respects;

8.2     Seller has complied with the provisions of the Unemployment Compensation Act of California in all respects.

-16-

WCWP000161

8.3      The Board of Directors (or Executive Committee thereof) of Buyer has approved this Agreement and the transaction contemplated herein.

8.4      Seller is prepared to deliver the following to Buyer at the Closing:

(a)  A Corporate Grant Deed duly executed by Seller in recordable form vesting title in Buyer; and (ii) at Sellers expense a CLTA policy of title insurance issued by Safeco Title Insurance Company in the amount set forth in Schedule A(1) attached hereto insuring Buyer's title in the real property described in Schedule A(1) subject only to real property taxes which are a lien but not yet payable and to the following exceptions set forth in Safeco Title Insurance Company's preliminary title report No. 40969 dated July 27, 1979 at 7:30 a.m. a copy of which preliminary title report is attached hereto as Schedule B, exceptions numbers: 1 and 5.

(b)  An Assignment of that certain Lease Agreement between Seller and the Southern Pacific Transportation Company dated October 3, 1972 and duly consented to by said railroad.

(c)  A Bill of Sale and/or Assignments, duly executed, in form sufficient to transfer the Assets set forth on Schedule A(2) attached hereto and Schedule A(3) which shall be attached prior to the closing date.

(d)  Duly executed agreements in the form attached

-17-

WCWP000162

hereto as Schedule ▯, acceptable to Buyer by which Richard Jackson agrees to refrain from certain activities.

(e) Duly executed assignments of such certificates of title and documents (including, without limitation, certificates of title) as are necessary to transfer all rights, title and interest to the personalty represented thereby constituting a part of the Assets;

(f) All consents to the transaction contemplated herein from third parties required under any agreements or instruments (i) to which Seller is a party or bound or (ii) which encumbers the Assets or the free transfer-ability thereof and waivers from third parties of any defaults, rights or acceleration thereunder, occasioned by the consummation of the transaction contemplated herein;

(g) A certified copy of a resolution of the share-holders of Seller, authorizing the sale of the Assets as herein set out;

(h) A certified copy of a resolution of the Board of Directors of Seller authorizing the sale of the Assets as herein set out;

(i) A certificate, signed by the President of Seller, dated the Closing Date that (a) all representa-tions and warranties made by Seller herein, or in any written statement delivered to Buyer by the Seller pur-suant to this Agreement are true, accurate and complete on the Closing Date, as if they were made on such date and

-18-

WCWP000163

(b) Seller has duly performed each of the actions and undertakings of it to be performed on or before the Closing Date pursuant to the terms hereof;

(j) Releases and reconveyances of all security interests, liens, mortgages and deeds of trust and pledges encumbering the assets.

(k) The Opinion of Counsel for Seller, dated the Closing Date, addressed to Buyer and in form and substance satisfactory to Buyer, to the effect that:

(1) Seller is a duly organized corporation, is validly existing, and is in good standing, all under the laws of the State of California;

(2) All proceedings necessary under the law, including, Seller's charter documents, or otherwise, to be taken by or on the part of Seller to enable it to carry out all of its obligations under this Agreement have been taken and the Agreement is duly and validly authorized, executed and delivered by Seller and constitutes a binding obligation of Seller specifically enforceable against Seller in accordance with its terms;

### ARTICLE IX - CONDITIONS PRECEDENT TO THE OBLIGATIONS OF SELLER

The sale of the Assets shall be consummated at the Closing (Article X) and Seller shall be obligated to consummate the sale under Article X if and only if:

-19-

WCWP000164

9.1     All proceedings taken and to be taken in connection with the transaction contemplated by this Agreement are in form and substance acceptable to counsel for Seller; and

9.2     Buyer is prepared to deliver:

A certified copy of a resolution of the Board of Directors of Buyer authorizing the purchase of the Assets as herein set out.

9.3     Bulk Sales Notice.

Prior to the Closing Buyer agrees to comply with the provisions of the Bulk Sales Law as set forth in Division 6 of the California Commercial Code.  Seller will cooperate with Buyer in providing the necessary information to enable Buyer to so comply.

9.4     Such assumption agreements as may be required in order to assume the obligations set forth in Schedules B(1) and B(2) attached hereto.

## ARTICLE X - CLOSING

10.1    Date, Location, Time.

A meeting ("Closing") shall be held at the offices of Dobbins, Weir, Thompson and Stephenson, 500 Main Street, Vacaville, California on the 12th day of September, 1979 ("Closing Date"), 1:30 p.m., Pacific Daylight Time, or upon such earlier or later date, or at such other time or place, as shall be agreed upon in writing between Seller and Buyer, for the purpose of ascertaining whether all conditions precedent to consummation have been met and, if all such conditions precedent have been

-20-

WCWP000165

met, to then consummate the transaction.

10.2     Delivery of Indicia of Ownership.

Seller shall deliver to Buyer (a) such deeds, bills
of sale, endorsements, motor vehicle certificates of title,
assignments and other good and sufficient instruments of sale,
conveyance and transfer satisfactory in form and substance to
Buyer and its counsel, as shall be effective to convey to and
to vest in Buyer good and marketable title to the Assets to be
sold, conveyed, transferred and delivered hereunder, and (b)
all of Seller's books, records (including, without limitation,
all accounting and credit records), and date relating to the
Assets and the conduct of its business heretofore conducted and
except records which Seller is required by law to retain in its
possession.

10.3 ▲    Adjusted Purchase Price.

At the Closing, Buyer shall pay to Seller in certified
funds, the sum of Three Hundred Thousand Dollars ($300,000), the
balance of the adjusted purchase price shall be paid to Buyer by
certified funds within seven (7), days from the Closing Date.

## ARTICLE XI - POLLUTION CONTROL CONSTRUCTION

11.1     Seller is the defendant in that certain lawsuit filed
against it by the State of California, described more particularly
in Schedule H concerning the chemical pollution of the soil and
water.  Seller has negotiated a settlement of this lawsuit
which requires certain capital expenditures established by Seller
as being approximately One Hundred Thousand Dollars ($100,000).

-21-

WCWP000166

Completion of the corrective action required by the State of California shall be the responsibility of the Buyer.  In the event the cost of the corrective action is less than One Hundred Thousand Dollars ($100,000), the amount of such savings shall be shared equally by Seller and Buyer.  In the event the cost of the corrective action is more than One Hundred Thousand Dollars ($100,000), Seller shall immediately reimburse Buyer for the full amount of any such overage.

11.2      Seller agrees to indemnify and hold Buyer harmless of and from any and all liability, claims, damages, actions, suits and proceedings of every kind in connection with the pollution of the soil, air or water occurring prior to the closing date and arising out of or in connection with Seller's operation of its business.  Seller also agrees to indemnify and hold Buyer harmless of any from any cost or expenses in connection with the corrective action referred to in Section 11.1 above in excess of One Hundred Thousand Dollars ($100,000).

11.3      Buyer shall withhold from the purchase price the sum of Fifty Thousand Dollars ($50,000) until such time as Seller delivers to Buyer a Dismissal With Prejudice in the lawsuit filed by the State of California described in Schedule E and the corrective action described in Paragraph 11.1 above has been completed.  Buyer may use any or all of the amount so withheld to pay costs and expenses incurred to complete the corrective action referred to in Paragraph 11.1 above in excess of the One Hundred Thousand Dollars ($100,000) to be paid by Buyer.

-22-

WCWP000167

## ARTICLE XII. - PENSION PLAN

12.1     Seller shall give to each of the participants of Pacific Wood Preserving Pension and Profit Sharing Plan the option of receiving the money in cash, transferring monies into another pension or profit sharing plan, or the purchase of an annuity.  Buyer shall have no liability whatsoever arising out of or in connection with the Plan or the termination thereof and Seller shall indemnify and hold Buyer harmless from and against, and reimburse Buyer with respect to any and all loss, damage, liability, claim or expense, known or unknown, contingent or certain arising out of or in connection with the Plan or the termination thereof.

## ARTICLE XIII. - MISCELLANEOUS

13.1     Survival of Warranties.

All warranties, representations and covenants contained herein shall survive the Closing provided for herein.

13.2     Expenses.

Except as set forth herein, Seller and Buyer shall each pay its own expenses incurred by or on its behalf in connection with all matters to which this Agreement relates, including, but not limited to, fees of counsel, accountants, agents and representatives.  Buyer and Seller agree to prorate as of the Closing Date based upon a three hundred sixty (360) day year and thirty (30) day month each of the following:  real property taxes on the real property described in Schedule A(1) attached hereto, personal property taxes on the personal property described in Schedule A(2)

-23-

WCWP000168

attached hereto, rental payments, license fees and other appor-
tionable fixed charges with respect to the liabilities
assumed pursuant to Schedule B(1) attached hereto.   Insurance
premiums covering all real and personal property shall not
be prorated and Seller shall, as of the Closing Date, cancel
all of such policies.

13.3     Entire Agreement.

         This Agreement constitutes the entire agreement of
Seller and Buyer with respect to the subject matter hereof,
superseding all negotiations, prior discussions and any preli-
minary agreements.

13.4     Governing Law.

         This Agreement shall be governed by the laws of the
State of California.

13.5     Notices.

         All notices, requests, demands and any other communi-
cations required or permitted to be given hereunder shall be in
writing and shall be deemed to have been duly given if personally
served, or deposited in the United States Mail, postage prepaid,
certified or registered, addressed as follows:

             If to Buyer:        The Wickes Corporation
                                 1010 Second Avenue
                                 San Diego, California 92101
                                 Attn:  President

             With a copy to:     The Wickes Corporation
                                 1010 Second Avenue
                                 San Diego, California 92101
                                 Attn:  Michael J. McPhee


             If to Seller:       Pacific Wood Preserving Corporation
                                 P.O. Box 128
                                 Elmira, California 95625
                                 Attn:

                                 -24-

WCWP000169

```
        With a copy to:      Donald Stevenson
                             Dobbins Wier Thompson
                               Stevenson
                             P.O. Box 207
                             Vacaville, California 95668
```

or to such address as Seller or Buyer, as the case may be, shall designate in writing; provided, however, notices of changes of address must be received by the addressees.

13.6    Further Documentation and Actions.

Seller and Buyer shall execute and deliver such further documents as may be necessary to affect this Agreement and the transfer of the Assets.  Seller and Buyer agree to make whatever adjustments between themselves, on an equitable and pro rata basis, as may be necessary, for any cash received to be paid out by Seller or Buyer, where such receipt or disbursement is allocable to both Seller and Buyer.

13.7    Sales and Use Tax.

Buyer agrees to pay all sales taxes, use taxes or any transfer taxes arising from the transaction contemplated herein, and Buyer does hereby agree to indemnity Seller for same.

13.8    Binding Effect.

This Agreement shall be binding and shall inure to the benefit of Seller and Buyer and their respective successors and assigns.

-25-

WCWP000170

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date first written above.

Witness:                                    THE WICKES CORPORATION

_____               By _____
                                               C. A. JOHNSON
                                               Executive Vice President

Witness:                                    PACIFIC WOOD PRESERVING CORPORATION

_____               By _____

-26-

WCWP000171

PACIFIC WOOD PRESERVING CORPORATION
Schedule of Buildings

Building #1  -  40' x 60' metal building with air conditioned
offices and lab and including electrical
panels for entire plant (valued at 27,000.)  79,195.

Building #2  -  60' x 100' metal building with bathrooms,
office, and electrical wiring for all
machines.                                      75,224.

Building #3  -  60' x 110' metal building with electrical
wiring for all machines                        46,397.

_____

Total  - buildings                                200,816.


PACIFIC WOOD PRESERVING CORPORATION

Schedule of Real Property

Area:                    A.P. Number 142-010-13  =   4.31  acres
                         A.P. Number 142-010-14  =    .24  acres
                         A.P. Number 142-042-01  =   1.00  acres

Total - acres                                         5.55  acres


Schedule A(1)


WCWP000172

-32-

PACIFIC WOOD PRESERVING CORPORATION
Schedule of Site Improvements

| | |
|---|---|
| Site improvements:  gravel and leveling | 98,929. |
| Roads and concrete: roads, drip pads, loading pads, and bases | 108,954. |
| Railroad tracks | 1,627. |
| Wells and pumps | 20,471. |
| Block wall | 6,860. |
| Septic tanks | 4,917. |
| Total - site improvements | 241,758. |

Schedule A(1)

WCWP000173

EXHIBIT (*A-1*)

The following described parcels of land are located within the County of Solano, State of California.

PARCEL ONE

Beginning at the southeast corner of the Northwest One Quarter of Section Nineteen (19) Township Six (6) North Range One (1) East, Mount Diablo Base and Meridian; running thence North along the Quarter Section line to the Southeasterly boundary of the right of way of the Southern Pacific Railroad; thence Southwesterly along the southeasterly line of the right of way of the Southern Pacific Railroad Company to the Quarter Section line running East and West through said Section Nineteen (19); thence East and along said Quarter Section line to the place of beginning. EXCEPTING THEREFROM, however, all that certain real property as conveyed by Eleanor B. Allison to Southern Pacific Railroad Company, a corporation, by Deed dated May 10th, 1916, and recorded May 23rd, 1916 in Liber "226" of Deeds, Page 104, thereof, and described as follows:  Beginning at the point of intersection of the Southeasterly right of way line of the Southern Pacific Railroad Company's railroad (as it now exists across said Northwest Quarter of Section 19) with the east line of the Northwest Quarter of Section 19, Township 6 North Range 1 East, Mount Diablo Base and Meridian; thence Southwesterly along said Southeasterly right of way line of the Southern Pacific Railroad Company, a distance of 506 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 265 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point on the east line of said Northwest Quarter of Section 19; thence North along said East line of the Northwest Quarter of Section 19, a distance of 50.7 feet to the point of beginning.

PARCEL TWO

Beginning at the intersection of the northerly line of Edwards Street and the westerly line of "A" Street extended northerly; thence running Westerly and along the northerly line of Edwards Street, One Hundred Forty (140) feet, more or less, to the intersection of the easterly line of the right of way of the Southern Pacific Railroad Company; thence Northerly and along the easterly line of the right of way of the Southern Pacific Railroad Company, One Hundred Ninety-One (191) feet more or less to the southerly line of County Road Number Two Hundred Forty-Six (246) sometimes also known as Binghampton Street; thence Easterly and along

CONTINUED

SCHEDULE A(1)

WCWP000174

Order No. 40969

Exhibit "A" Cont'd. (Parcel Two)

the southerly line of County Road Number 246, to the intersection of the westerly line of a street, extended Northerly; thence Southerly and along the westerly line of a street, extended Northerly to the northerly line of Edwards Street and the place of beginning. All as said streets herein referred to are laid down and designated on that certain map entitled: "PLAN OF RESURVEY OF PORTION OF VACA STATION, PROPERTY OF W. C. FARMER, SITUATED ON SOUTH WEST ONE QUARTER (S.W. 1/4) OF SECTION NINETEEN (19) TOWNSHIP VI NORTH RANGE 1 EAST SOLANO COUNTY," surveyed by E. H. Marshall, Deputy County Surveyor, April 8th, 1870 and now appearing of record in Volume "1" of Maps, Page 44 thereof, Solano County Records.

PARCEL THREE

Beginning at the point of intersection of the westerly line of "A" Street, extended Northerly, and the northerly line of County Road Number 246 (Holdener Road, formerly shown as Binghampton Street) in Elmira Townsite, Solano County, California, which point bears North 0° 22' 08' West, 30 feet and South 89° 55' 06" West, 397.80 feet from the southeast corner of the Northwest One-Quarter of Section 19, T6N, R1E, M.D.B. & M.; thence, from said point of beginning, along the northerly line of the aforementioned Binghampton Street South 89° 55' 06" West, 171.67 feet to the easterly right-of-way line of the Southern Pacific Railroad; thence along said easterly right-of-way line South 34° 52' 51" West, 73.21 feet to the southerly line of said Binghampton Street; thence, along said southerly line, North 89° 55' 06" East, 171.67 feet to the westerly line of the aforementioned "A" Street; thence along the prolongation of said westerly line of "A" Street, North 34° 52' 51" East, 73.21 feet to the point of beginning.

WCWP000175

PACIFIC WOOD PRESERVING CORPORATION

Schedule of Machinery & Equipment

| | |
|---|---:|
| Worthington 25 H.P. two stage air compressor with receiver S/N 786223-16 | 2,208. |
| (5) 20,000 Gal. PVC & steel storage tanks | 22,086. |
| (2) 10,000 Gal. Steel storage tanks | 5,887. |
| (3)  5,000 Gal. Fiberglass tanks | 1,104. |
| 100' Retort curing chamber vessel w/hyd. door & receiver | 16,550. |
| 85' Retort curing chamber vessel w/hyd. door & rail | 12,510. |
| 25 H.P. Hyd. unit | 368. |
| (1978) Hyster model H180H, 18,000 lb. cap. pneu tired forklift, diesel engine, side shift S/N C007PO-21524 | 25,756. |
| (1978) Hyster model H200H, 20,000 lb. cap. pneu tired forklift, diesel engine, side shift S/N C007PO1539X | 25,756. |
| (1973) Clark model CHY200S, 20,000 lb. cap. pneu, tired forklift diesel engine, side shift S/N Hy1425D-1162156572 | 25,960. |
| (1974) Hyster model 165, 16,500 lb. cap. pneu tired forklift, diesel engine, side shift | 17,662. |
| Hyster model 60, 6,000 lb. cap. hard tired forklift, side shift | 6,255. |
| (2) (1973) White freightliners, 3 axle C.O.E. truck tractors, 350 Cummins, & sleeper, license #1L72739, 34347V | 25,756. |
| (1972) Trailmobile 40' - 2 axle flatbed trailer S/N J20604, license #XB1255 | 4,415. |
| Fruehauf 40' - 2 axle flatbed trailer, license #UJ2768 | 4,783. |
| 10' Pull roller | 662. |
| Steam cleaner | 220. |
| Breakdown hoise w/drive motor, reducer chain, feed conveyor, incisor & elecs. | 5,151. |
| 80' 5 Strand 78 chain, offeed | 1,840. |
| Dewalt 740 radial arm saw | 128. |
| Breakdown hoise w/drive motor, reducer, chain feed conveyor & elecs. | 3,496. |
| 40 H.P. twin stage air compressor w/receiver | 2,758. |

Schedule A(2)

WCWP000176

Pacific Wood Preserving Co
Schedule of Mach. & Equip.
Page 2

| | |
|---|---|
| (1972) Hyster H90C, 9,000 lb. pneu forklift w/diesel engine & side shift S/N C5D121435 | 919. |
| Lincoln 225 amp. welder | 128. |
| Duracraft drill press | 165. |
| P & H model 1224 top & side Rosser head type incisor w/feed & offeed table S/N 74-1 | 4,045. |
| 30' - 4 Strand chain conveyor w/motor | 588. |
| Radial arm cut off saw w/24" blade & conveyor | 919. |
| Custom cut off saw | 730. |
| Lincoln 225 amp. AC-DC portable gas powered arc welder S/N A775954 | 625. |
| Tram cars | 294. |
| Dewalt radial arm cut off saw w/table | 625. |
| Horizontal drilling machine | 110. |
| Electrical work on installing machinery | 7,251. |
| Miscellaneous shop equipment & tools | 7,552. |
| Dog ear machine | 638. |
| 3/4 T. Chevrolet pickup truck | 1,103. |
| Office equipment | 5,552. |
| Chain saws (2) | 300. |
| Paint-O-Matic | 7,718. |

250,573.

Schedule A(2)

WCWP000177

-37-

PACIFIC WOOD PRESERVING CORPORATION
Schedule of Inventory

| | |
|---|---|
| Total Lumber | 254,221.71 |
| Total Steel Strapping | 9,766.00 |
| Total Chemicals | 36,390.85 |
| | 300,378.56 |

SCHEDULE A (3)

WCWP000178

LIABILITIES ASSUMED

1.  Lease Agreement dated October 3, 1972 between
    Seller and Southern Pacific Transportation Company.

2.  License Agreement dated February 21, 1977, between
    Seller and Koppers Company, Inc. (Wolman).

3.  License Agreement dated February 26, 1977, between
    Seller and Koppers Company, Inc. (Outdoor).

SCHEDULE B(1)

WCWP000179

PACIFIC WOOD PRESERVING CORPORATION
Accounts Payable

| | |
|---|---:|
| AAA Filter Service | 149.62 |
| Adobe Rental | 10.08 |
| American Wood Preservers Institute | 440.13 |
| Asbury & Damon | 1,837.50 |
| Bendix Forest Products | 22,388.84 |
| Big R Stores | 37.80 |
| B & J Drop Box | 742.50 |
| Blue Cross of Northern California | 2,423.52 |
| Bowman Distribution | 14.63 |
| Bowman's Stationers | 68.80 |
| Burgess Lumber Company | 12,651.52 |
| Caldwell Lumber Sales | 965.47 |
| State of California | 7,500.00 |
| California State Automobile Ass'n. | 23.00 |
| California Timber Industries | 407.94 |
| Cal's Mobile Tire Service | 177.28 |
| Channel Lumber Co. | 3,250.60 |
| CH2M Hill | 11,257.28 |
| Coastal Forest Products | 8,564.17 |
| Daily Republic | 145.88 |
| Department of Motor Vehicles | 414.00 |
| DeKellis & Associates | 320.00 |
| Del Norte Box Co. | 3,240.00 |
| Dobbins, Weir, Thompson & Stephenson | 265.00 |
| Don's Auto Parts | 43.05 |
| Forms Management | 128.05 |
| Garry, Dreyfus, McTernan, Brotsky, Herndon & Pesonen | 2,300.00 |
| Great Western Chemical Company | 31,732.08 |
| Green Valley Timbers | 770.10 |
| Hyster Company | 1,927.91 |
| IBM | 2,592.76 |
| Ken's Tire Centers | 34.50 |
| Koppers Company, Inc. | 108,997.79 |
| Lopez Welding Supply | 112.26 |
| Martin's Welding | 31.80 |
| Frank R. Meads | 12.50 |
| Mobil Oil Company | 76.99 |
| Morgan Equipment Company | 3,500.00 |
| Murtishaw's Business Machines | 77.84 |
| National Chemsearch | 131.28 |
| J. C. Nelson Supply Co. | 51.94 |
| Oregon Pacific Industries | 39,588.60 |
| Pacific Hardware | 206.46 |
| Pacific Telephone Company | 1,236.78 |
| Petroleum Tank Line | 4.56 |
| The Printery | 19.43 |
| Fred Rader Mill Supply | 882.44 |
| Ramos Oil Co. | 495.95 |
| REB Transportation Co. | 478.24 |

SCHEDULE 2(B)

WCWP000180

**PACIFIC WOOD PRESERVING CORPORATION**
Accounts Payable

| | |
|---|---:|
| Rodgers Bottling Company | 225.31 |
| Rolando Lumber Company | 5,483.83 |
| Roush Enterprises | 28.00 |
| Sequoia Supply | 654.72 |
| Signode Corporation | (200.90) |
| Simonson Lumber Company | 3,768.57 |
| Siskiyou Forest Products | 7,006.20 |
| Southern Pacific Transportation Co. | 733.56 |
| Trinity Forest Products | 15,870.13 |
| Truck Parts & Equipment Co. | 8.29 |
| Two Ox Traders | 2,013.81 |
| Ulatis Creek Printing | 255.73 |
| Union Oil Co. | 35.14 |
| Utility Trailer Sales | 184.44 |
| Vacaville Reporter | 123.20 |
| Viking Office Products | 30.38 |
| Gene West, Inc. | 739.67 |
| Western Truck Services | 121.50 |
| Westwood Ingram Company | 10,939.63 |
| Yoder Insurance Agency | 165.40 |
| | |
| Total - accounts payable | 320,915.48 |

WCWP000181

GOVERNMENTAL VIOLATION

None, except pollution violation references in Schedule
F.

SCHEDULE C

WCWP000182

COMPENSATION PLANS

A.   Blue Cross of Northern California group benefit
     agreement number 3171

     1.   Endorsement to Group Benefit Agreement
          No. 3171 providing dental care benefits
          dated April 1, 1979.

B.   Pension Plan - description to be added.

SCHEDULE D

WCWP000183

PACIFIC WOOD PRESERVING CORPORATION

LIST OF EMPLOYEES

| Name | Social Security Number | Date of Birth | Date of Hire | Monthly Salary(M) or Hourly Wage (H) | | Job Title |
|---|---|---|---|---|---|---|
| ren Anderson | REDACTED-1497 | REDACTED/59 | 07/27/77 | $4.50 | H | Accts rec. bkkpr/gen'l off. |
| ald R. Arnett | -9306 | /60 | 07/23/79 | $3.25 | H | Lumber handler |
| ic S. Biggs | -7204 | /51 | 07/23/79 | $3.25 | H | Lumber handler |
| rold Brindle | -0364 | /34 | 06/13/79 | $3.50 | H | Forklift driver |
| chard Brinkman | -7645 | /46 | 06/10/73 | $1,480.00 | M | Yard superintendent |
| ryl A. Brittain | -4909 | /61 | 04/27/79 | $3.50 | H | Lumber handler |
| mes S. Carr | -3320 | /56 | 01/05/75 | $4.75 | H | Retail sales supervisor |
| y N. Cobble | -9915 | /54 | 02/01/75 | $5.25 | M | Shipping supervisor |
| lph Debord | -5575 | /49 | 10/09/75 | $5.25 | H | Forklift driver |
| bert J. Garrick | -5101 | /60 | 07/17/79 | $5.00 | H | Lumber handler |
| rk S. Green | -5572 | /53 | 12/18/78 | $5.00 | M | Sales |
| mes P. Harris | -2476 | /23 | 07/28/74 | $2,000.00 | M | Forklift driver |
| bert L. Harris | -5570 | /49 | 06/11/79 | $4.00 | H | Forklift driver |
| rrie Huffman | -9380 | /52 | 09/26/78 | $3.75 | H | Tally Person |
| ristopher Ingram | -6857 | /58 | 12/12/78 | $3.50 | H | Lumber handler |
| ymond Jaramillo | -1379 | /61 | 06/28/79 | $3.25 | H | Lumber handler |
| vid Maunder | -1362 | /55 | 03/29/79 | $3.50 | M | Treating supervisor |
| rjorie Moore | -4222 | /31 | 10/31/75 | $1,180.00 | M | Office manager |
| vid Paiz | -3974 | /61 | 05/01/79 | $3.50 | H | Lumber handler |
| vid Papin | -8554 | /59 | 01/19/78 | $4.50 | H | Forklift driver |
| berto Pequero | -0800 | /60 | 07/23/79 | $3.25 | H | Lumber handler |
| omas Rodriguez | -3020 | /58 | 07/23/79 | $3.25 | H | Lumber handler |
| lph Rovelli | -1163 | /29 | 02/04/76 | $5.00 plus mileage inc. | H | Truck driver |
| bert Viens | -4152 | /50 | 06/05/79 | $4.00 plus mileage inc. | H | Truck driver |
| yne Withers | -4109 | /59 | 06/13/79 | $4.00 | H | Treating dept. |
| thur Zuniga, Sr. | -4684 | /27 | 11/28/78 | $7.50 | H | Mill wright |

Schedule E

WCWP000184

-44-

SAFECO TITLE INSURANCE COMPANY     840 TUOLUMNE STREET
P. O. BOX 553
VALLEJO, CALIFORNIA 94590
(707) 552-4800

The Wickes Inc.
1010 - 2nd Avenue               Property:  APN 142-010-13 & 14;
San Diego, CA  92101                       142-042-01

Attention:   Michael McPhee, A/L

                                Your No:
                                Our No:  40969

---

Dated as of July 27, 1979 at 7:30 a.m.

In response to the above referenced application for a policy of title insurance,

               SAFECO TITLE INSURANCE COMPANY

hereby reports that it is prepared to issue, as of the date hereof, a California Land Title Association Standard Coverage Form Policy of Title Insurance describing the land and the estate or interest therein hereinafter set forth in Schedule A, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception in Schedule B or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said policy form.

This report (and any supplements or amendments thereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby.  If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

BOB HUGHES
---
Title Officer

                                        SCHEDULE G

cr

WCWP000185

Order No. 40969

SCHEDULE A

The estate or interest in the land described or referred to in this schedule covered by this report is:

A FEE

Title to said estate or interest at the date hereof is vested in:

PACIFIC WOOD PRESERVING, a corporation

The land referred to in this report is situated in the State of California, County of Solano, and is described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

WCWP000186

Order No. 40969

EXHIBIT "A"

The following described parcels of land are located within the County of Solano, State of California.

PARCEL ONE

Beginning at the southeast corner of the Northwest One Quarter of Section Nineteen (19) Township Six (6) North Range One (1) East, Mount Diablo Base and Meridian; running thence North along the Quarter Section line to the Southeasterly boundary of the right of way of the Southern Pacific Railroad; thence Southwesterly along the southeasterly line of the right of way of the Southern Pacific Railroad Company to the Quarter Section line running East and West through said Section Nineteen (19); thence East and along said Quarter Section line to the place of beginning. EXCEPTING THEREFROM, however, all that certain real property as conveyed by Eleanor B. Allison to Southern Pacific Railroad Company, a corporation, by Deed dated May 10th, 1916, and recorded May 23rd, 1916 in Liber "226" of Deeds, Page 104, thereof, and described as follows:  Beginning at the point of intersection of the Southeasterly right of way line of the Southern Pacific Railroad Company's railroad (as it now exists across said Northwest Quarter of Section 19) with the east line of the Northwest Quarter of Section 19, Township 6 North Range 1 East, Mount Diablo Base and Meridian; thence Southwesterly along said Southeasterly right of way line of the Southern Pacific Railroad Company, a distance of 506 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 265 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point on the east line of said Northwest Quarter of Section 19; thence North along said East line of the Northwest Quarter of Section 19, a distance of 50.7 feet to the point of beginning.

PARCEL TWO

Beginning at the intersection of the northerly line of Edwards Street and the westerly line of "A" Street extended northerly; thence running Westerly and along the northerly line of Edwards Street, One Hundred Forty (140) feet, more or less, to the intersection of the easterly line of the right of way of the Southern Pacific Railroad Company; thence Northerly and along the easterly line of the right of way of the Southern Pacific Railroad Company, One Hundred Ninety-One (191) feet more or less to the southerly line of County Road Number Two Hundred Forty-Six (246) sometimes also known as Binghampton Street; thence Easterly and along

CONTINUED

WCWP000187

Order No. 40969

Exhibit "A" Cont'd. (Parcel Two)

the southerly line of County Road Number 246, to the intersection of the
westerly line of a street, extended Northerly; thence Southerly and
along the westerly line of a street, extended Northerly to the northerly
line of Edwards Street and the place of beginning.  All as said streets
herein referred to are laid down and designated on that certain map
entitled: "PLAN OF RESURVEY OF PORTION OF VACA STATION, PROPERTY OF
W. C. FARMER, SITUATED ON SOUTH WEST ONE QUARTER (S.W. 1/4) OF SECTION
NINETEEN (19) TOWNSHIP VI NORTH RANGE 1 EAST SOLANO COUNTY," surveyed by
E. H. Marshall, Deputy County Surveyor, April 8th, 1870 and now appearing
of record in Volume "1" of Maps, Page 44 thereof, Solano County Records.

PARCEL THREE

Beginning at the point of intersection of the westerly line of "A"
Street, extended Northerly, and the northerly line of County Road Number
246 (Holdener Road, formerly shown as Binghampton Street) in Elmira
Townsite, Solano County, California, which point bears North 0° 22' 08"
West, 30 feet and South 89° 55' 06" West, 397.80 feet from the southeast
corner of the Northwest One-Quarter of Section 19, T6N, R1E, M.D.B. & M.;
thence, from said point of beginning, along the northerly line of the
aforementioned Binghampton Street South 89° 55' 06" West, 171.67 feet to
the easterly right-of-way line of the Southern Pacific Railroad; thence
along said easterly right-of-way line South 34° 52' 51" West, 73.21 feet
to the southerly line of said Binghampton Street; thence, along said
southerly line, North 89° 55' 06" East, 171.67 feet to the westerly line
of the aforementioned "A" Street; thence along the prolongation of said
westerly line of "A" Street, North 34° 52' 51" East, 73.21 feet to the
point of beginning.

WCWP000188

-48-

Order No. 40969

**SCHEDULE B**

At the date hereof Exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy form would be as follows:

1.   General and special taxes for the fiscal year 1979-1980, a lien not yet payable.

2.   A Lease, as evidenced by a Memorandum of Lease, by and between the parties named herein, for the term and upon and subject to all of the terms, covenants, and provisions contained therein,

| | |
|---|---|
| Dated: | April 14, 1966 |
| Lessor: | JESSIE S. BARNES, a widow |
| Lessee: | TIDEWATER OIL CO., a Delaware corporation |
| Recorded: | July 13, 1966 in Book 1408, Page 109, Official Records, |
| Instrument No. | 19638 |

(Affects Parcels 1 and 2)

3.   A Deed of Trust to secure an indebtedness of the amount stated herein and any other obligations secured thereby,

| | |
|---|---|
| Dated: | June 6, 1972 |
| Amount: | $16,412.50 |
| Trustor: | RICHARD F. JACKSON and JOAN C. JACKSON, his wife as joint tenants as to an individual divided one-half interest; and EVERETT L. JOHNSTON and EVELYN J. JOHNSTON, his wife as joint tenants as an individual one-half interest |
| Trustee: | CALIFORNIA LAND TITLE COMPANY |
| Beneficiary: | SIERRA NATIONAL BANK, a national banking association |
| Recorded: | July 10, 1972 in Book 1762, Page 341, Official Records, |
| Instrument No.: | 15572 |
| Loan No.: | 14551 |
| Address: | Sierra National Bank, P.O. Box 596, Novato, California 94947 |

CONTINUED

WCWP000189

Order No. 40969

4.   A Deed of Trust to secure an indebtedness of the amount stated
herein and any other obligations secured thereby,

Dated:              May 19, 1972
Amount:             $35,000.00
Trustor:            RICHARD F. JACKSON and JOAN C. JACKSON, his wife, as
                    Joint Tenants, as to an undivided 1/2 interest, and
                    EVERETT L. JOHNSTON and CAROLYN J. JOHNSTON, his
                    wife, as Joint Tenants as to an undivided 1/2 interest
Trustee:            CALIFORNIA LAND TITLE COMPANY, a California corporation
Beneficiary:        CAROL LOUISE HIBBERT, ADA E. McQUARY, WILMA F.
                    JACOBS, and MERWIN BARNES, each as to an undivided
                    1/4 interest
Recorded:           June 5, 1972 in Book 1755, Page 265, Official Records,
Instrument No.:     12574
Loan No.:           14551
Address:            Mrs. Carol Louise Hibbert, etal
                    333 Neil Street, Vacaville, Calif.

     The lien or charge of said deed of trust was subordinated to the
lien or charge of the Deed of Trust shown as Item No. 4 by an agreement
recorded July 10, 1972 in Book 1762, Page 337, Official Records, Instrument
No. 15571.

5.   Any existing easement and/or franchise right at any time or from
time to time to maintain, operate, replace, remove, renew and enlarge
any existing public utility facilities, including access to protect the
property from all hazards, in , upon, and over the herein described
parcel 3, as reserved by the County of Solano in that certain Abandonment
of County Highway dated May 21, 1974 and recorded May 24, 1974 in Book
1974, Page 21641.

     (Affects Parcel 3)

6.   A judgment issued out of the MARIN COUNTY SUPERIOR COURT against
RICHARD JACKSON in favor of SCHAPIRO AND THORN, INC., Case No. 68869 for
$4,000.00 plus any additional sums due thereunder, Dated March 14, 1975,
Recorded June 3, 1975 in Book 1975, Page 22218, Official Records, Instrument
No. 14023.

     Said Abstract of Judgement may still affect the herein described
property by reason of the fact that RICHARD JACKSON was a former owner.

CONTINUED

WCWP000190

-50-

Order No. 40969

7.   A Deed of Trust to secure an indebtedness of the amount stated
herein and any other obligations secured thereby,

| | |
|---|---|
| Dated: | March 14, 1977 |
| Amount: | $252,471.00 |
| Trustor: | PACIFIC WOOD PRESERVING, a corporation |
| Trustee: | ALTA CALIFORNIA TITLE COMPANY, a California corporation |
| Beneficiary: | CREDIT AMERICA CORPORATION |
| Recorded: | April 4, 1977 in Book 1977, Page 21951, Official Records, |
| Instrument No.: | 12841 |
| Loan No.: | None Stated |
| Address: | c/o Dobbins, Weir, Thompson & Stephenson, a Professional Corporation, 500 Main Street, P.O. Box 207, Vacaville, CA 95688 |

   NOTE:   As a matter of information we report the 1978-1979 taxes
have been paid and were assessed as follows:

   General and special County and City taxes for the fiscal year 1978-
1979 in the amount of $1,008.22.

| | |
|---|---|
| First Installment: | $504.11 Paid |
| Second Installment: | $504.11 Paid |
| Parcel Number: | 142-010-13 |
| Code: | 91012 |
| Land Value: | $4,510.00 |
| Improvements: | $13,256.00 |
| Homeowners Exemption: | $-0- |

   (Affects Parcel 1)

   General and special County and City taxes for the fiscal year 1978-
1979 in the amount of $6,928.06.

| | |
|---|---|
| First Installment: | $3,464.03 Paid |
| Second Installment: | $3,464.03 Paid |
| Parcel Number: | 142-042-01 |
| Code: | 91012 |
| Land Value: | $2,653.00 |
| Improvements: | $9,003.00 |
| Inv.: | $58,250.00 |
| Personal Property: | $101,269.00 |
| Homeowners Exemption: | $29,125.00 |

   (Affects Parcel 2)

CONTINUED

WCWP000191

Order No. 40969


Taxes Cont'd.

    General and special County and City taxes for the fiscal year 1978-
1979 in the amount of $29.16.

First Installment:        $14.58 Paid
Second Installment:     $14.58 Paid
Parcel Number:        142-010-14
Code:                600.00
Land Value:           $-0-
Improvements:        $-0-
Homeowners Exemption:  $-0-

    (Affects Parcel 3)

    NOTE:  The Assessor has the authority to adjust property
valuations to guidelines defined in Chapters 49 and 242
of the State of California Statutes of 1979.

    INFORMATIVE NOTE:  Vestee herein acquired title on February 14, 1977.

    THE FOLLOWING IS FURNISHED FOR INFORMATION ONLY:
    The only conveyances affecting said land recorded within six (6)
months of the date of this report are as follows:  NONE

8/3/79
NIL

WCWP000192



POR. SW. 1/4 SEC. 19, T. 6 N., R. 1 E., M. D. B.

"THIS PLAT IS FOR YOUR AID IN LOCATING YOUR LAND WITH
REFERENCE TO STREET AND OTHER PARCELS. WHILE THIS PLAT IS
BELIEVED TO BE CORRECT, THE COMPANY ASSUMES NO LIABILITY
FOR ANY LOSS OCCURRING BY REASON OF RELIANCE THEREON.
SAFECO TITLE INSURANCE COMPANY

SAFECO TITLE INSURANCE COMPANY
P. O. BOX 553    840 TUOLUMNE
VALLEJO, CALIFORNIA 94590



NOTE -- Assessor'
Assessor'

**WCWP000193**