# EXHIBIT B

JENNIFER HARTMAN KING (Bar No. 211313)
NICOLE R. GLEASON (Bar No. 199655)
LOUINDA V. LACEY (Bar No. 275888)
KING WILLIAMS & GLEASON LLP
520 Capitol Mall, Suite 750
Sacramento, CA 95814
Telephone:     (916) 379-7530
Facsimile:     (916) 379-7535
jhartmanking@kwgattorneys.com
ngleason@kwgattorneys.com
llacey@kwgattorneys.com

Attorneys for Defendant Jim Dobbas, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,<br><br>    Plaintiffs,<br><br>    v.<br><br>JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; and WEST COAST WOOD PRESERVING, LLC, a Nevada limited liability company,<br><br>    Defendants. | Case No.: 2:14-cv-00595-WBS-EFB<br><br>**JIM DOBBAS, INC.'S FIRST AMENDED CROSS-CLAIM FOR:**<br><br>**1. COST RECOVERY UNDER CERCLA § 107;**<br>**2. CONTRIBUTION UNDER CERCLA § 113(f);**<br>**3. DECLARATORY RELIEF UNDER CERCLA § 113(g);**<br>**4. CONTRIBUTION & INDEMNITY UNDER CALIFORNIA HEALTH AND SAFETY CODE SECTION 25300 ET SEQ.;**<br>**5. CONTINUING PUBLIC NUISANCE UNDER CIVIL CODE §§ 3479 & 3480;**<br>**6. DECLARATORY RELIEF UNDER 28 U.S.C. §2201;**<br>**7. NEGLIGENCE;**<br>**8. EQUITABLE INDEMNITY;**<br>**9. BREACH OF CONTRACT;**<br>**10. BREACH OF CONTRACT;**<br>**11. EXPRESS INDEMNITY;**<br>**12. DECLARATORY RELIEF RE: DUTY TO DEFEND.**<br><br>[DEMAND FOR JURY TRIAL] |

KING WILLIAMS & GLEASON LLP
520 CAPITOL MALL, SUITE 750
SACRAMENTO, CA 95814
TELEPHONE: (916) 379-7530 FAX: (916)379-7535

1 | JIM DOBBAS, INC., a California
corporation,

2 | Action filed: March 3, 2014

3 |       Cross-Claimant,

4 |           v.

5 | CONTINENTAL RAIL, INC., a Delaware
corporation; DAVID VAN OVER,
individually; PACIFIC WOOD

6 | PRESERVING, a dissolved California
corporation, WEST COAST WOOD

7 | PRESERVING, LLC, a Nevada limited
liability company; and COLLINS &

8 | AIKMAN PRODUCTS, LLC, a Delaware
limited liability company,

9 |

10 |       Cross-Defendants.

11       Defendant, Cross-Claimant, and Cross-Defendant Jim Dobbas, Inc. ("DOBBAS") hereby

12 files its First Amended Cross-claim against Defendants, Continental Rail, Inc., David van Over,

13 Pacific Wood Preserving, West Coast Wood Preserving, LLC, and Collins & Aikman Products,

14 LLC (collectively, "CROSS-DEFENDANTS"). DOBBAS makes the following allegations upon

15 information and belief as to all matters, other than those allegations specifically referring to

16 DOBBAS, which it makes based upon its own knowledge:

**I.    JURISDICTION**

18       1.    The Court has jurisdiction over these cross-claims pursuant to 28 United States

19 Code ("U.S.C.") section 1331, and 42 U.S.C. section 9613(b).  The Court has supplemental

20 jurisdiction pursuant to 28 U.S.C. section 1367, because the claims brought under California state

21 law arise from the same nucleus of operative facts.

**II.    VENUE**

23       2.    Venue is proper in this district pursuant to 28 U.S.C. 1391(b) and 42 U.S.C.

24 section 9613(b) because the alleged acts and omissions relate to the alleged hazardous substances

25 releases giving rise to the claims asserted in the First Amended Complaint for Recovery of

26 Response Costs; Declaratory Relief; Injunctive Relief; Treble Damages; and Civil Penalties on

27 file herein and any and all subsequent amendments relating thereto ("Complaint") filed by

28 California Department of Toxic Substances Control ("DTSC") and the Toxic Substances Control

1    Account (collectively, "Plaintiffs"), and relate to the real property located at or near 147 A Street,

2    Elmira, Solano County, California ("Site").

3                            **III.    DEMAND FOR JURY TRIAL**

4        3.    Cross-Claimant, DOBBAS, hereby demands trial by jury in this action.

5                            **IV.    PARTIES**

6        4.    Defendant and Cross-Claimant, DOBBAS, is a privately held California

7    Corporation, located in the County of Placer, in the State of California.

8        5.    Cross-Defendant, Continental Rail, Inc. ("CRI") is a Delaware corporation.  CRI

9    owned an interest in the Site from in or about 1997, to in or about 2011.

10       6.    Cross-Defendant, David van Over ("Van Over") is a citizen of California residing

11   in Solano County, California.  Van Over currently owns and operates the Site.

12       7.    Cross-Defendant, Pacific Wood Preserving ("PWP") is a dissolved California

13   corporation.  It conducted business operations at the Site from in or about 1972 to in or about

14   1979, and owned it from in or about 1977 to in or about 1979.

15       8.    Cross-Defendant, West Coast Wood Preserving, LLC ("West Coast Wood") is a

16   Nevada limited liability company, with its principal place of business in Kern County, California.

17   It is a successor-in-interest to Cross-Defendant PWP.

18       9.    Cross-Defendant, Collins & Aikman Products, LLC ("C&A Products LLC") is a

19   Delaware limited liability company.  C&A Products LLC was formed on or about December 6,

20   2007, as a conversion of Collins & Aikman Products Co., a Delaware corporation.  Collins &

21   Aikman Products Co. was the successor by merger to Collins & Aikman Group, Inc., a Delaware

22   corporation.  Collins & Aikman Group, Inc. was formerly known as Wickes Companies, Inc., and

23   before that, The Wickes Corporation (hereinafter, "Wickes").  Wickes purchased the Site on or

24   around September 12, 1979, and conducted business at the Site until approximately 1982.

25   Wickes and its successor, Collins & Aikman Products Co. (now C&A Products LLC), continued

26   to own the Site until on or around March 20, 1997.  Collins & Aikman Products Co. filed for

27   Chapter 11 bankruptcy on or around May 17, 2005, and, on or around July 18, 2007, the United

28   States Bankruptcy Court for the Eastern District of Michigan entered its "Order Confirming First

00015562.2

-2-

1   Amended Joint Plan of Collins & Aikman Corporation and Its Debtor Subsidiaries" relating to the

2   bankruptcy.  A Certificate of Cancellation for C&A Products LLC was filed with the Delaware

3   Secretary of State on or about August 28, 2013.  On or around December 8, 2014, pursuant to

4   Plaintiffs' motion, the Delaware Court of Chancery appointed a receiver for C&A Products LLC

5   under 6 Delaware Code § 18-805.  Based on the information presently available to DOBBAS, the

6   cross-claims by DOBBAS against Cross-Defendant C&A Products LLC are asserted herein solely

7   for purposes of establishing liability to recover against any available insurance proceeds.  See *In*

8   *re Beeney*, 142 B.R. 360 (9th Cir. B.A.P. 1992).  Any and all allegations contained herein that

9   reference Collins & Aikman Products Co. shall apply equally to and are asserted against its

10  successor-in-interest Cross-Defendant C&A Products LLC, and vice versa.

11                    **V.    GENERAL ALLEGATIONS**

12          10.    DOBBAS did not cause or contribute to any "hazardous substance" "release" or

13  "threatened release" at the Site or emanating from the Site to surrounding properties, as alleged in

14  Plaintiffs' Complaint.  DOBBAS denies any and all liability for Plaintiffs' claims in the

15  Complaint and nothing contained herein with respect to the allegations against CROSS-

16  DEFENDANTS in this Cross-claim shall be deemed or construed to negate DOBBAS' denial of

17  such liability.

18          11.    Although DOBBAS denies any liability upon the operative Complaint, any of its

19  exhibits, and any subsequent amendments thereto, DOBBAS incorporates the operative

20  Complaint and its exhibits herein by this reference to assert the claims herein.

21          12.    Any "hazardous substance" "release" or "threatened release" at or emanating from

22  the Site to surrounding properties, is the direct, legal, and proximate result of CROSS-

23  DEFENDANTS' acts and/or omissions.

24          13.    Accordingly, CROSS-DEFENDANTS are liable for any and all costs incurred as

25  the result of the alleged release and threatened release of hazardous substances at the Site and

26  emanating from the Site to surrounding properties, and any alleged resultant damage to the Site or

27  any other properties.

28  / / /

00015562.2

-3-

## VI.    FIRST CROSS-CLAIM

### (Costs Recovery Under CERCLA § 107 – Against All CROSS-DEFENDANTS)

14.    DOBBAS incorporates by reference each and every paragraph of this pleading necessary to state this cause of action as though fully set forth herein.

15.    Plaintiffs allege that the Site is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. section 9601(9).  If such allegation is true, the Site is a "facility."

16.    Plaintiffs allege that CROSS-DEFENDANTS are "persons" within the meaning of section 101(21) of CERCLA, 42 U.S.C. section 9601(21).  If such allegation is true, CROSS-DEFENDANTS are "persons."

17.    Plaintiffs allege that CROSS–DEFENDANTS are "owners" and/or "operators," or were "owners" and/or "operators," of the Site "at the time of disposal of a[] hazardous substance" there, as those terms are used in section 107(a) of CERCLA, 42 U.S.C. section 9607(a).  If such allegations are true, CROSS-DEFENDANTS are "owners" and/or "operators," or were "owners" and/or "operators," of the Site.

18.    DOBBAS did not cause or contribute to any "hazardous substance" "release" or "threatened release" at or from the Site or surrounding properties.

19.    DOBBAS denies that it is liable for any costs incurred as the result of the alleged release or threatened release of hazardous substances at or from the Site and any alleged resultant damage to the Site or any other properties.  This denial notwithstanding, DOBBAS has incurred and/or may, in the future, incur costs in response to the release or threatened release of hazardous substances at or from the Site in a manner that satisfies the requirements of Section 107(a) of CERCLA, 42 U.S.C. section 9607(a).

20.    Based upon the above allegations, CROSS-DEFENDANTS are jointly and severally liable, without regard to fault, under section 107(a) of CERCLA, 42 U.S.C. section 9607(a), for DOBBAS' costs incurred in response to the release or threatened release of hazardous substances at or from the Site.

///

///

# VII.   SECOND CROSS-CLAIM

## (Contribution under CERCLA § 113(f) – Against All CROSS-DEFENDANTS)

21.   DOBBAS incorporates by reference each and every paragraph of this pleading necessary to state this cause of action as though fully set forth herein.

22.   Plaintiffs allege that the Site is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. section 9601(9).  If such allegation is true, the Site is a "facility."

23.   Plaintiffs allege that CROSS-DEFENDANTS are "persons" within the meaning of section 101(21) of CERCLA, 42 U.S.C. section 9601(21).  If such allegation is true, CROSS-DEFENDANTS are "persons."

24.   Plaintiffs allege that CROSS-DEFENDANTS are "owners" and/or "operators," or were "owners" and/or "operators," of the Site "at the time of disposal of a[] hazardous substance" there, as those terms are used in section 107(a) of CERCLA, 42 U.S.C. section 9607(a).  If such allegations are true, CROSS-DEFENDANTS are "owners" and/or "operators," or were "owners" and/or "operators," of the Site.

25.   DOBBAS did not cause or contribute to any "hazardous substance" "release" or "threatened release" at or from the Site or surrounding properties.

26.   DOBBAS denies that it is liable for any costs incurred as the result of the alleged release or threatened release of hazardous substances at or from the Site and any alleged resultant damage to the Site or any other properties.  This denial notwithstanding, DOBBAS has incurred and/or may, in the future, incur costs in response to the release or threatened release of hazardous substances at or from the Site.

27.   Based upon the above allegations, CROSS-DEFENDANTS are liable to DOBBAS for contribution under CERCLA section 113(f), 42 U.S.C. section 9613(f) for some of all amounts DOBBAS incurred and may, in the future, incur as a result of any release or threatened release of hazardous substances at and from the Site, in that CROSS-DEFENDANTS are liable parties under CERCLA section 107(a), 42 U.S.C. section 9607(a).

/ / /

/ / /

## VIII.   THIRD CROSS-CLAIM

**(Declaratory Relief under CERCLA § 113(g), 42 U.S.C. § 9613(g)
– Against All CROSS-DEFENDANTS)**

28.    DOBBAS incorporates by reference each and every paragraph of this pleading necessary to state this cause of action as though fully set forth herein.

29.    An actual, substantial, and justiciable controversy exists between DOBBAS and CROSS-DEFENDANTS, and each of them, regarding their respective rights and obligations for response costs that DOBBAS may incur to respond to the release and/or threatened release of hazardous substances into the soil and/or groundwater at and from the Site. DOBBAS seeks declaratory judgment against CROSS-DEFENDANTS under CERCLA section 133(g)(2), 42 U.S.C. section 9613(g)(2), that will be binding in any subsequent action to recover further response costs, holding CROSS-DEFENDANTS liable for an equitable share (all or some portion) of any response costs DOBBAS may pay to respond to any release and/or threatened release of hazardous substances into the soil and/or ground water at and from the Site.

## IX. FOURTH CROSS-CLAIM

**(Contribution and Indemnity Under California Health and Safety Code
Section 25300 et seq. – Against All CROSS-DEFENDANTS)**

30.    DOBBAS incorporates by reference each and every paragraph of this pleading necessary to state this cause of action as though fully set forth herein.

31.    Plaintiffs allege that CROSS-DEFENDANTS caused or permitted a release or threatened release of substances governed by the Hazardous Substances Account Act ("HSAA") (California Health and Safety Code section 25300 et seq.) into, on, or about the Site and surrounding properties.

32.    Plaintiffs allege that CROSS-DEFENDANTS are "liable persons" within the meaning of California Health and Safety Code section 25323.5.  If such allegation is true, CROSS-DEFENDANTS are "liable persons."

33.    DOBBAS has not caused or contributed to any release or threatened release of substances governed by the HSAA into, on, about or from the Site or surrounding properties and,

1  therefore, is not a "liable person" as defined by California Health and Safety Code section

2  25323.5.

3      34.    As a direct, legal, and proximate result of CROSS-DEFENDANTS' alleged acts

4  and/or omissions, pursuant to California Health and Safety Code sections 25320 and 25323.5,

5  DOBBAS is entitled to contribution and/or indemnity under California Health and Safety Code

6  section 25363(e) and 25323.5 for some or all the costs DOBBAS has incurred or might incur in

7  the future as a result of the alleged release or threatened release at and from the Site.

8      35.    As a direct, legal, and proximate result of CROSS-DEFENDANT alleged acts

9  and/or omissions, pursuant to California Health and Safety Code sections 25320 and 25323.5,

10  DOBBAS has suffered injury and is entitled to monetary compensation and other relief and

11  remedies.

## X. FIFTH CROSS-CLAIM

### (Continuing Public Nuisance Pursuant to Cal. Civ. Code §§ 3479 & 3480 − Against All CROSS-DEFENDANTS)

15      36.    DOBBAS incorporates by reference each and every paragraph of this pleading

16  necessary to state this cause of action as though fully set forth herein.

17      37.    CROSS-DEFENDANTS' actions have caused, created, maintained, contributed to,

18  and neglected to abate, a public nuisance at, on, and/or near the Site, as defined by California

19  Civil Code section 3479 and 3480.

20      38.    CROSS-DEFENDANTS' actions at, on and/or near the Site, have adversely

21  affected the quality and comfortable enjoyment of the environment by the community by creating

22  the public nuisance conditions and endangering health and property at, on and/or near the Site.

23      39.    DOBBAS is, and has been, specially and adversely affected by the public nuisance

24  conditions caused and/or created by CROSS-DEFENDANTS' actions at, on and/or near the Site.

25      40.    An ordinary person would be reasonably annoyed or disturbed by CROSS-

26  DEFENDANTS' conduct.

27      41.    As a direct, legal, and proximate result of the nuisance created by CROSS-

28  DEFENDANTS, DOBBAS has been, and will be, damaged.  DOBBAS is entitled to monetary

00015562.2                                    -7-

1  compensation and other relief and remedies including, but not limited to, equitable relief in the

2  form of an order requiring CROSS-DEFENDANTS to abate the nuisance.

3  ## XI.  SIXTH CROSS-CLAIM

4  ### (Declaratory Relief under 28 U.S.C. § 2201 – Against All CROSS-DEFENDANTS)

5  42.  DOBBAS incorporates by reference each and every paragraph of this pleading

6  necessary to state this cause of action as though fully set forth herein.

7  43.  An actual controversy exists between DOBBAS and CROSS-DEFENDANTS, and

8  each of them, regarding their respective rights and obligations for response costs that DOBBAS

9  may incur to respond to any release and/or threatened release of hazardous substances into the

10  soil and/or groundwater at and from the Site.  Unless all of the rights, duties and obligations of

11  DOBBAS are determined in this action, there will be a multiplicity of actions.   Judicial

12  determination of the liability of CROSS-DEFENDANTS is necessary and appropriate at this time

13  so that DOBBAS may ascertain its rights as against CROSS-DEFENDANTS.

14  44.  Pursuant to 28 U.S.C. section 2201(a), this Court has jurisdiction to award

15  declaratory relief.  DOBBAS therefore requests a judicial determination of its rights, and the

16  duties and obligations of CROSS-DEFENDANTS, in responding to the release and/or threatened

17  release of hazardous substances into the soil and/or groundwater at and from the Site and any

18  resultant damage to the Site or off-site relating thereto.

19  45.  Pursuant to 28 U.S.C. section 2202, DOBBAS further requests that this Court,

20  after entering the declaratory judgment prayed for herein, retain jurisdiction of this action to grant

21  DOBBAS such further relief against CROSS-DEFENDANTS as necessary and proper to

22  effectuate the Court's declaration.

23  ## XII.  SEVENTH CROSS-CLAIM

24  ### (Negligence – Against All CROSS-DEFENDANTS)

25  46.  DOBBAS incorporates by reference each and every paragraph of this pleading

26  necessary to state this cause of action as though fully set forth herein.

27  47.  CROSS-DEFENDANTS owed a duty to refrain from injuring the Site and

28  surrounding properties.  Specifically, CROSS-DEFENDANTS owed a duty not to cause or allow

00015562.2                                         -8-

1    any releases or threatened releases of environmental contamination at or from the Site.

2          48.    CROSS-DEFENDANTS caused and/or permitted releases or threatened releases

3    of environmental contamination at or from the Site and surrounding properties, causing resultant

4    damage to the Site and other properties, and, therefore, breached their duty and acted negligently

5    in failing to protect such properties.

6          49.    As a direct, legal and proximate result of CROSS-DEFENDANTS' negligent

7    reckless and/or careless acts and/or omissions, DOBBAS has suffered injury and is entitled to

8    monetary compensation and other relief and remedies as requested herein.

9                        **XIII.   EIGHTH CROSS-CLAIM**

10                  **(Equitable Indemnity – Against All Cross-Defendants)**

11         50.    DOBBAS incorporates by reference each and every paragraph of this pleading

12   necessary to state this cause of action as though fully set forth herein.

13         51.    CROSS-DEFENDANTS were negligent, reckless, careless, in breach of duty

14   and/or otherwise legally responsible with respect to the matters and things alleged in this Cross-

15   claim.   Such negligence, breach of duty, or other legal fault or responsibility proximately or

16   legally caused or contributed in whole or in part to the losses and liabilities DOBBAS has

17   suffered and may suffer in the future.

18         52.    DOBBAS has either provided, or does hereby provide, written notice to CROSS-

19   DEFENDANTS of the matters for which DOBBAS is entitled to indemnity and has requested, or

20   does hereby request, defense and indemnity for such matters.

21         53.    DOBBAS has incurred and continues to incur, necessary and reasonable attorneys'

22   fees and other costs and expenses in connection with the matters described in this Cross-claim.

23   As a result, pursuant to California Code of Civil Procedure section 1021.6 and any and all other

24   applicable provisions and principals of law and equity, DOBBAS is entitled to an order requiring

25   CROSS-DEFENDANTS to reimburse DOBBAS in an amount equal to such fees, costs, and

26   expenses.

27         54.    As a direct, legal, and proximate result of CROSS-DEFENDANTS' failure to meet

28   their obligation to hold harmless and indemnify DOBBAS, DOBBAS has suffered injury and is

00015562.2                                    -9-

1    entitled to monetary compensation and other relief and remedies as requested herein.

2    ## XIV.   NINTH CROSS-CLAIM

3    ### (Breach of Contract – Against Cross-Defendant Van Over)

4         55.    DOBBAS incorporates by reference each and every paragraph of this pleading

5    necessary to state this cause of action as though fully set forth herein.

6         56.    On or around February 11, 2011, DOBBAS and Cross-Defendant Van Over

7    entered into an Agreement of Purchase and Sale ("February 2011 Sales Agreement"). A copy of

8    the February 2011 Sales Agreement is attached hereto as **Exhibit A** and incorporated by this

9    reference as though fully stated herein.

10        57.    Cross-Defendant Van Over has breached the February 2011 Sales Agreement by

11   failing and refusing to comply with the provisions of that agreement, including but not limited to

12   failing and refusing to assume responsibility and liability for any hazardous substances on, at, or

13   beneath the Site, and by failing and refusing to indemnify DOBBAS for the same.

14        58.    Cross-Defendant Van Over, through execution of the February 2011 Sales

15   Agreement, assumed all responsibility and liability for the hazardous substances on, at, beneath,

16   or emanating from the Site.

17        59.    Cross-Defendant Van Over, through execution of February 2011 Sales Agreement,

18   also agreed to indemnify, defend, and hold harmless DOBBAS against claims, costs, cost

19   recovery actions, government orders, expenses, fees, losses, penalties, liens, related to or arising

20   from the hazardous substances on, at, beneath or emanating from the Site, regardless of when the

21   claims arose.

22        60.    DOBBAS has delivered a written demand on Cross-Defendant Van Over,

23   demanding his compliance with the February 2011 Sales Agreement.

24        61.    DOBBAS has performed all conditions, covenants and promises required of

25   DOBBAS in accordance with the terms and conditions of the February 2011 Sales Agreement.

26        62.    As a direct and proximate result of Cross-Defendant Van Over's breach of the

27   February 2011 Sales Agreement, DOBBAS has incurred and will continue to incur, costs and

28   expenses and has suffered and will suffer direct, indirect, consequential, general, and special

00015562.2

1    damages, attorneys' fees, and interest thereon in an amount according to proof at trial.

2                      **XV.   TENTH CROSS-CLAIM**

3       **(Breach of Contract – Against Cross-Defendant C&A Products LLC)**

4         63.     DOBBAS incorporates by reference each and every paragraph of this pleading

5    necessary to state this cause of action as though fully set forth herein.

6         64.     On or around March 21, 1997, DOBBAS and Cross-Defendant C&A Products

7    LLC's predecessor-in-interest Collins & Aikman Products Co. entered into an Agreement for

8    Purchase and Sale of Real Property and Escrow Instructions ("March 1997 Sales Agreement"),

9    through which DOBBAS purchased the Site from Collins & Aikman Products Co.

10        65.     DOBBAS is informed and believes and on that basis alleges that the March 1997

11    Sales Agreement contains the following pertinent terms and provisions, among others:

12                 a.   The term "Existing Contamination" is defined as the contamination in the

13                       soil and groundwater at, in, under, or about the Site as described in and

14                       which forms the basis of the following documents: (1) Covenant to Restrict

15                       Use of Property recorded on or around October 27, 1995, in the Official

16                       Records of Solano County, California as Instrument No. 1995-00068154

17                       (the "Restrictive Covenant"); (2) An Agreement for Operation and

18                       Maintenance of the Groundwater Extraction and Treatment System, Storm

19                       Water Control System and The Asphalt Cap at the Former Wickes Forest

20                       Industries Site in Elmira, California executed between Collins & Aikman

21                       Products Co. and DTSC on or about February 26, 1996, and identified as

22                       Docket No. 95/96-038 in DTSC's administrative record for the Site (the

23                       "Operation and Maintenance Agreement"); and (3) Waste Discharge

24                       Requirements for the Wickes Forest Industries Ground Water Treatment

25                       Discharge, Solano County, California Regional Water Quality Control

26                       Board, Central Valley Region Order No. 94-093, NPDES No. CA0081531

27                       (the "Waste Discharge Requirements").

28                 b.   The term "Environmental Documents" is collectively defined as the

00015562.2

Restrictive Covenant, the Operation and Maintenance Agreement, the Waste Discharge Requirements and/or any other reports, studies, orders or other documents pertaining to the Site on file with the California Regional Water Quality Control Board or the DTSC.

c. Following the close of escrow of the Site, DOBBAS and Collins & Aikman Products Co. would enter into an "Access and Remediation Agreement," which would require Collins & Aikman Products Co. to, among other things, retain responsibility for all remediation, mitigation, inspection, testing, monitoring and reporting requirements pertaining to the Existing Contamination in accordance with the Environmental Documents until such time as such activities are no longer required by applicable governmental authority.

d. Collins & Aikman Products Co. agrees to defend, hold harmless and indemnify DOBBAS, its former and present agents, employees, independent contractors, consultants, invitees, subsidiaries, affiliates, parent companies, shareholders, officers, directors, licensees, permittees, successors and assigns, from and against any and all losses, claims, demands, liabilities, fees, damages, expenses and professional fees (including, without limitation, attorneys' fees, appellate attorneys' fees and all costs and expenses related thereto) which relate to, are connected with or arise out of, among other things, any breach by Collins & Aikman Products Co. of the March 1997 Sales Agreement. DOBBAS and Collins & Aikman Products Co. agree that such indemnification shall survive the close of escrow relating to the Site that forms the basis for the March 1997 Sales Agreement.

e. In the event either DOBBAS or Collins & Aikman Products Co. is required to file an action in order to enforce the terms of the March 1997 Sales Agreement, or to recover damages for the violation of same, or for a

00015562.2

-12-

declaration of rights thereunder, the prevailing party, as determined by the court in such action, in addition to whatever other remedies or damages it may be entitled, shall be entitled to recover all of its court costs and reasonable attorneys' fees as a result thereof from the losing party.

66.    On or around March 21, 1997, DOBBAS and Cross-Defendant C&A Products LLC's predecessor-in-interest Collins & Aikman Products Co. and Cross-Defendant CRI entered into an Access and Remediation Agreement to govern certain activities at the Site, as required by the March 1997 Sales Agreement.  The Access and Remediation Agreement was recorded as Instrument No. 1997-00019503 in the Official Records of Solano County, California on or around April 1, 1997.

67.    DOBBAS is informed and believes and on that basis alleges that the Access and Remediation Agreement contains the following pertinent terms and provisions, among others:

        a.    The same or substantially the same definitions for the terms Environmental Documents and Existing Contamination, as those terms are defined in the March 1997 Sales Agreement.

        b.    The term "Remediation Systems" is defined as any and all systems and facilities that have been placed upon or that may be placed upon the Site in connection with the Existing Contamination, including without limitation the asphalt cap and groundwater extraction system and monitoring wells.

        c.    Collins & Aikman Products Co. agrees to retain responsibility for the remediation of the Existing Contamination in accordance with the requirements of applicable law and in accordance with the provisions of the Operation and Maintenance Agreement and the Waste Discharge Requirements, subject to certain exceptions.  The activities for which Collins & Aikman Products Co. assumes responsibility include, but not limited to, all remediation, mitigation, inspection, testing, sampling, monitoring and reporting requirements pertaining to the Existing Contamination in accordance with applicable law and to install, alter,

00015562.2

-13-

1  improve, repair and replace any and all "Remediation Systems," until such

2  time as all such activities and all such facilities and systems are no longer

3  required by applicable governmental authorities.

4      d.  Collins & Aikman Products Co.'s remediation obligations as described in

5          subdivision (c) above only terminates or expires when it receives written

6          notification from DTSC or other appropriate governmental authority that it

7          has achieved completion of the remediation of the Existing Contamination.

8      e.  The parties agree that the "Remediation Systems" belongs to and is the

9        property of Collins & Aikman Products Co., and that Collins & Aikman

10        Products Co. has the right, but not the obligation, to remove all or any

11        portion of the "Remediation Systems" from the Site at such time as those

12        systems are no longer required by applicable governmental authorities.

13      68.    DOBBAS is informed and believes and on that basis alleges that neither Cross-

14  Defendant C&A Products LLC nor its predecessor-in-interest Collins & Aikman Products Co. has

15  obtained written notification from DTSC or any other appropriate governmental authority that it

16  has achieved completion relating to the remediation of the Existing Contamination at the Site.

17      69.    DOBBAS is informed and believes and on that basis alleges that Cross-Defendant

18  C&A Products LLC failed to perform its obligations as set forth in the 1997 March Sales

19  Agreement and the Access and Remediation Agreement, because it has failed to perform in

20  accordance with the Environmental Documents to remediate the Existing Contamination at the

21  Site.

22      70.    Cross-Defendant C&A Products LLC has breached the March 1997 Sales

23  Agreement by failing and refusing to comply with the provisions of that agreement, including but

24  not limited to failing and refusing to perform its responsibilities regarding, and to assume its

25  liability for, the Existing Contamination on, at, or beneath the Site, and by failing or refusing to

26  indemnify DOBBAS for the same.

27      71.    DOBBAS has delivered or through the allegations in this Cross-claim does deliver

28  a written demand on Cross-Defendant C&A Products LLC, demanding that it comply with its

00015562.2

-14-

obligations under the March 1997 Sales Agreement and the Access and Remediation Agreement.

72.    DOBBAS has performed all conditions, covenants and promises required of DOBBAS in accordance with the terms and conditions of the March 1997 Sales Agreement and the Access and Remediation Agreement.

73.    As a direct and proximate result of Cross-Defendant C&A Products LLC's breach of the March 1997 Sales Agreement and the Access and Remediation Agreement, DOBBAS has incurred and will incur, costs and expenses and has suffered and will suffer direct, indirect, consequential, general, and special damages, attorneys' fees, and interest thereon in an amount according to proof at trial.  These damages include, but are not limited to, the loss DOBBAS suffered as a result of the diminution in property value of the Site, as evidenced by the sale of the Site to Cross-Defendant Van Over in or about February 11, 2011 for $2.00.

74.    DOBBAS has defended and continues to defend itself against Plaintiffs' allegations relating to "hazardous substance(s)" "release(s)" or "threatened release(s)" at or from the Site and resultant damages, all of which result from and relate to Cross-Defendant C&A Products LLC's breach of its contractual obligations.

### XVI.    ELEVENTH CROSS-CLAIM

### (Express Indemnity Against Cross-Defendants Van Over and C&A Products LLC)

75.    DOBBAS incorporates by reference each and every paragraph of this pleading necessary to state this cause of action as though fully set forth herein.

76.    Prior to the incidents alleged in Plaintiffs' Complaint, Cross-Defendants Van Over and C&A Products LLC each, respectively, entered into written contracts with DOBBAS.  Each of the contracts is intended for the benefit of DOBBAS.  As set forth therein and identified in preceding paragraphs herein, said contracts require Cross-Defendants Van Over and C&A Products LLC, and each of them respectively, to completely and fully defend, indemnify and hold harmless DOBBAS from and against any and all claims, damages, and resultant damages relating to any "hazardous substance" "release" or "threatened release" at or from the Site and any associated resultant damage.

77.    As a result of the indemnity provisions in their respective contracts, DOBBAS is

1    informed and believes and based thereon alleges that Cross-Defendants Van Over and C&A
2    Products LLC, and each of them respectively, have a present duty to defend and indemnify
3    DOBBAS from the claims asserted by Plaintiffs in the Complaint.

4         78.    If DOBBAS is held liable to Plaintiffs or any other party by way of adjudication,
5    settlement, or otherwise, for the claims in Plaintiffs' Complaint, DOBBAS is entitled to complete
6    express contractual indemnity from Cross-Defendants Van Over and C&A Products LLC, and
7    each of them, for all damages incurred by way of settlement or judgment and for attorneys' fees
8    and costs incurred in the defense of this action and the prosecution of this Cross-claim.

9                       **XVII. TWELFTH CROSS-CLAIM**

10   **(Declaratory Relief Re: Duty to Defend Against Cross-Defendants C&A Products LLC and**
11                              **Van Over)**

12        79.    DOBBAS incorporates by reference each and every paragraph of this pleading
13   necessary to state this cause of action as though fully set forth herein.

14        80.    Cross-Defendants Van Over and C&A Products LLC, and each of them
15   respectively, entered into written contracts with DOBBAS relating to the Site. Each contract was
16   intended for the benefit of DOBBAS.

17        81.    The operative contracts, and each of them, contain indemnity provisions as
18   described herein, which provide, in pertinent part, that Cross-Defendants Van Over and C&A
19   Products LLC, and each of them respectively, will defend, indemnify and hold harmless
20   DOBBAS from and against any and all claims arising out of alleged "hazardous substance"
21   "release" or "threatened release" at or from the Site and any associated resultant damage.

22        82.    A claim within the meaning of each of the respective contracts has arisen by virtue
23   of the fact that Plaintiffs have filed a Complaint against DOBBAS relating to a "hazardous
24   substance" "release" or "threatened release" at or from the Site and associated resultant damage.

25        83.    Cross-Defendants Van Over and C&A Products LLC, and each of them
26   respectively, have a present duty to defend DOBBAS against all claims in this litigation pursuant
27   to the operative contracts, California Civil Code section 2778, and as a result of the assertion of a
28   claim or loss arising out of the performance or non-performance of certain activities by these

00015562.2                                   -16-

1  Cross-Defendants.  DOBBAS has a present legal right to be provided a defense by Cross-

2  Defendants Van Over and C&A Products LLC, and each of them respectively.

3      84.    DOBBAS has tendered or by way of this Cross-claim does tender its defense of

4  this action to Cross-Defendants Van Over and C&A Products LLC, and each of them

5  respectively, pursuant to the applicable contracts.  The foregoing shall in no way reset the

6  pertinent tender date to the extent an earlier tender date was established through prior

7  communication.

8      85.    DOBBAS is informed and believes and based thereon alleges that Cross-

9  Defendants Van Over and C&A Products LLC, and each of them, have or will reject, ignore, or

10  fail to properly accept the tender of defense.

11      86.    A dispute has arisen and an actual controversy now exists between DOBBAS and

12  Cross-Defendants Van Over and C&A Products LLC, and each of them respectively, in that

13  DOBBAS contends that it is entitled to a present defense from Cross-Defendants Van Over and

14  C&A Products LLC, and each of them respectively, while Cross-Defendants Van Over and C&A

15  Products LLC are believed to deny such obligation under the applicable contracts.

16      87.    DOBBAS hereby seeks a declaration by the Court as to its rights on the one hand,

17  and the respective duties and obligations of Cross-Defendants Van Over and C&A Products LLC

18  on the other hand, regarding the present duty to defend in conjunction with the matters herein

19  alleged, and a judgment in DOBBAS' favor relating to any obligations by said Cross-Defendants,

20  and each of them, as to DOBBAS.

21                    **XVIII. PRAYER FOR RELIEF**

22      WHEREFORE, DOBBAS prays that judgment be entered in favor of DOBBAS as

23  follows:

24      1.    For judgment that CROSS-DEFENDANTS, and each of them, are jointly and

25  severally liable without regard to fault pursuant to CERCLA section 107(a), 42 U.S.C. section

26  9607(a), for all response costs incurred as a result of the release and threatened release of

27  hazardous substances at and from the Site, in an amount according to proof;

28      2.    For judgment that CROSS-DEFENDANTS, and each of them, are liable for

00015562.2                    -17-

1    contribution pursuant to CERCLA section 113(f), 42 U.S.C. section 9613(f), in the amount of any

2    judgment entered or settlement approved in favor of CROSS-DEFENDANTS, or any other party,

3    against DOBBAS for costs incurred and/or to be incurred in response to the release and/or

4    threatened release of hazardous substances at or from the Site;

5          3.      For judgment that CROSS-DEFENDANTS, and each of them, are liable for

6    contribution and indemnification pursuant to HSAA section 25300 et seq, for all costs incurred

7    and/or to be incurred by DOBBAS in response to the release and/or threatened release of

8    hazardous substances at or from the Site;

9          4.      For judgment that CROSS-DEFENDANTS, and each of them, are liable for

10    contribution, compensatory damages, and/or consequential damages based upon the respective

11    liability and/or comparative negligence of said CROSS-DEFENDANTS, and each of them,

12    according to proof;

13          5.      For judgment that Cross-Defendants Van Over and C&A Products LLC, and each

14    of them, are liable for compensatory damages for breach of contract;

15          6.      For judgment that DOBBAS is entitled to express indemnity from Cross-

16    Defendants Van Over and C&A Products LLC, and each of them, for all claims in this litigation;

17          7.      For judgment that CROSS-DEFENDANTS are liable for money damages as

18    compensation for economic and non-economic harm in the amount to be determined by proof at

19    trial;

20          8.      For an award of and judgment that CROSS-DEFENDANTS are liable for

21    litigation expenses and costs of suit incurred herein, including reasonable attorney's fees and

22    expert fees;

23          9.      For an award of and judgment that CROSS-DEFENDANTS are liable for interest

24    at the maximum legal rate on any and all damages from the earliest date permitted by law;

25         10.      For a declaration and judgment of this Court in favor of DOBBAS and against all

26    CROSS-DEFENDANTS:

27             a.      Awarding monetary damages to DOBBAS as alleged herein;

28             b.      Requiring CROSS-DEFENDANTS to indemnify and hold harmless

00015562.2

-18-

DOBBAS from and against all claims, losses, liabilities, and expenses incurred by DOBBAS as a result of CROSS-DEFENDANTS' acts and/or omissions, including, but not limited to any and all existing and future claims by third parties relating to such contamination;

    c.    Retaining jurisdiction to effectuate a declaration that CROSS-DEFENDANTS are liable for all costs that DOBBAS may incur to respond to the release and/or threatened release of hazardous substances at and from the Site;

11.    For a judicial declaration that Cross-Defendants Van Over and C&A Products LLC, and each of them, have a present duty to defend DOBBAS against the claims in this litigation;

12.    For a judicial declaration and order requiring CROSS-DEFENDANTS to abate the public nuisance at issue in this litigation; and

13.    For such other and further relief as the Court deems just and proper.

Dated: December 31, 2014        KING WILLIAMS & GLEASON LLP

By:   /s/ Jennifer Hartman King
Jennifer Hartman King
Nicole R. Gleason
Louinda V. Lacey

Attorneys for Defendant JIM DOBBAS, INC.

00015562.2

-19-

# EXHIBIT A

## AGREEMENT OF PURCHASE AND SALE

This Agreement of Purchase and Sale ("**Agreement**"), made this $\underline{11}$ th day of February, 2011(the "**Effective Date**"), is entered into by and between **Jim Dobbas, Inc,** a California corporation ("**Seller**"), and **David van Over, an individual as an unmarried man ("Buyer").**

### Recitals

A. Seller is the owner of an undivided fifty percent (50%) interest in that certain real property located in the unincorporated community of Elmira ("**City**"), Solano County ("**County**"), State of California, commonly known as APNs 0142-042-010, 0142-010-130 and 0142-010-140 and more particularly described on <u>Exhibit A</u> attached hereto (the "**Real Property**"). The Property is adjacent to, or nearby, a Union Pacific Railroad rail spur.

B. The Real Property has constructed thereon two (2) buildings (the "Buildings") containing a total of approximately 18,216 square feet, related improvements (collectively, the "**Improvements**"). If, and to the extent Seller has mineral or other rights in the Property ("**Additional Property Rights**"), such rights are intended to be transferred to Buyer. The Real Property, Improvements and Additional Property Rights are hereinafter collectively referred to as the "**Property**".

C. Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, the Property pursuant to the terms of this Agreement.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants contained herein, the parties agree as follows:

### Agreement

1. <u>Purchase and Sale</u>. Seller agrees to sell and convey to Buyer, and Buyer agrees to purchase from Seller, the Property on the terms set forth in this Agreement.

2. <u>Purchase Price</u>. The purchase price ("**Purchase Price**") for the Property shall be One Dollar ($1.00) and shall be payable at the Transfer of Title (defined below).

3. <u>Transfer of Title</u>. For purposes of this Agreement, "**Transfer of Title**" shall be defined as the date that the Quit Claim Deed is recorded in the Official Records of the County. The Transfer of Title shall occur on the Effective Date unless extended by the mutual written consent of the parties.

4. <u>Condition of Title</u>. Title to the Property shall be conveyed to Buyer by Seller by a quit claim deed, which shall be in the form attached hereto as Exhibit B ("Quit

1141071.4
2/11/11

EXHIBIT A - DOBBAS CROSSCLAIM

Claim Deed").  Buyer agrees and acknowledges that it is taking title subject to the Deed Restriction and Environmental Lien described in Section 8; all real estate taxes and assessments which are liens upon the property; all applicable laws, ordinances, rules; all governmental regulations (including, but not limited to those relative to building, zoning and land use) affecting the development, use, occupancy or enjoyment of the property; all matters apparent from the inspection of the property; and all other title matters affecting the property, whether or not of record (collectively, **"Approved Condition of Title"**).

5.   Costs and Expenses.  Buyer and Seller shall equally share the cost of: (i) any local transfer tax imposed by the City, and (ii) any documentary transfer tax imposed by the County.

6.   Prorations.

(a) Taxes/Assessments.  At the Transfer of Title, Seller shall pay the 2011 second installment of real estate taxes and assessments for the Property.  From and after the Effective Date, Buyer shall be responsible for all real estate taxes, assessments, supplemental taxes or assessment bonds related to the Property and Seller shall be released from any and all obligations thereunder.

(b) Other Expenses.  All other expenses for the Property shall be prorated as of 11:59 p.m. on the day prior to the Transfer of Title between the parties based upon the latest available information.

(c) Corrections.  If any errors or omissions are made regarding adjustments and prorations as set forth herein, the parties shall make the appropriate corrections promptly upon discovery thereof.  If any estimates are made at the Transfer of Title regarding adjustments or prorations, the party shall make the appropriate correction promptly when accurate information becomes available.  Any corrected adjustment or proration shall be paid in cash to the party entitled thereto.

7.   Review of Documents and Materials.  Buyer acknowledges that due to time constraints, Seller cannot provide all of the documents in its possession concerning the Property to Buyer.  Within ten (10) business days following the Effective Date, Seller shall make available to Buyer, those documents which Buyer may reasonably request, such request to be made in writing within five (5) business days following the Effective Date (collectively, **"Documents and Materials"**).  Seller makes no representation or warranty regarding the truth or accuracy of the Documents and Materials. All such documents and materials shall be subject to that certain Bilateral Confidentiality Agreement with an effective date of February 1, 2011 between the parties.

1141071.4
2/11/11

-2-

EXHIBIT A - DOBBAS CROSSCLAIM

8.  Environmental Disclosures.

(a) Deed Restriction.  The Property is subject to that certain Covenant to Restrict Use of Property dated October 27, 1995 ("Deed Restriction").  Buyer acknowledges its receipt of a copy of the Deed Restriction and agrees and acknowledges that it is taking the Property subject to the Deed Restriction.  Buyer agrees and acknowledges that Seller will have no liability for the performance of any obligations required by the Deed Restriction following the Effective Date and that Buyer will assume any liability Seller has related to or arising from the Deed Restriction following the Effective Date. Buyer acknowledges that the land described herein contains hazardous substances.  Such condition renders the land and the owner, lessee, or other possessor of the land subject to requirements, restrictions, provisions, and liabilities contained in Chapter 6.5 and Chapter 6.8 of Division 20 of the Health and Safety Code.  This statement is not a declaration that a hazard exists.

(b) Former Uses/Hazardous Substances.  As previously disclosed in the Letter of Intent dated February 7, 2011, the Property is a former wood treatment facility. Operations at the Property included treating lumber with preservative solutions containing arsenic, chromium and copper.  Investigations by third parties have shown that soils on the Property have been affected by these inorganic metals.  Groundwater beneath the Property and beneath adjacent properties has also been contaminated by chromium, copper and arsenic.  The cost to complete the investigation, remediation and monitoring of the hazardous substances associated with the former wood treatment facilities is uncertain. The California Department of Toxic Substances Control ("DTSC") has jurisdiction over the environmental conditions at the Property and has been providing oversight since approximately 1982.  A Proof of Claim was filed by DTSC in the bankruptcy proceedings of the former owner, Collins and Aikman Products.

(c) Environmental Lien.  On November 22, 2010, a lien was recorded by DTSC against Seller's interest in the Property in the amount of $883,348 ("Environmental Lien").  Buyer acknowledges its receipt of a copy of the Environmental Lien and agrees and acknowledges that it is taking the Property subject to the Environmental Lien.  Buyer agrees and acknowledges that Seller will have no liability for the Environmental Lien following the Effective Date and that Buyer will assume any liability Seller has for the Environmental Lien following the Effective Date.

(d) Environmental Disclosure Documents.  Additional information concerning the above described hazardous substances on and around the Property has been provided by Seller to Buyer, including, but not limited to, the documents listed on Exhibit "C", "Environmental Disclosure Documents." Buyer acknowledges that third parties, rather than Seller, have performed the majority of the investigation, remediation and monitoring activities at the Property and as such Seller does not have many of the technical work plans or reports that describe environmental conditions on the Property

1141071.4
2/11/11

EXHIBIT A - DOBBAS CROSSCLAIM

As required by California Health & Safety Code section 25359.7, Buyer acknowledges that it has been advised in writing that a release of hazardous substances has come to be located on or beneath the Property.

Buyer's Initials: _____

9. **"As-Is" Purchase**. BUYER HEREBY ACKNOWLEDGES AND AGREES THAT IT IS ACQUIRING THE PROPERTY IN ITS PRESENT "AS IS/WHERE IS WITH ALL FAULTS" CONDITION AND WITH ALL DEFECTS (INCLUDING SOIL AND GROUNDWATER CONTAMINATION) AND NEITHER SELLER NOR ANY EMPLOYEE OR AGENT OF SELLER HAS MADE OR WILL MAKE, EITHER EXPRESSLY OR IMPLIEDLY (AND SELLER SPECIFICALLY NEGATES AND DISCLAIMS) ANY REPRESENTATIONS, GUARANTIES, PROMISES, STATEMENTS, ASSURANCES OR WARRANTIES OF ANY KIND CONCERNING THE PROPERTY. BUYER ACKNOWLEDGES AND AGREES THAT BUYER HAS THE RIGHT TO INVESTIGATE THE PROPERTY PRIOR TO THE EFFECTIVE DATE AND TO PERFORM ANY AND ALL REASONABLE TESTS, INCLUDING ENVIRONMENTAL SAMPLING, ON THE PROPERTY TO DETERMINE THE CONDITION OF THE PROPERTY, FEASIBILITY OF THE PROPERTY FOR BUYER'S INTENDED USE THEREOF AND ANY OTHER PAST, PRESENT OR FUTURE MATTER RELATING TO THE PROPERTY WHICH MAY AFFECT THE PROPERTY, BUYER'S LIABILITY OR ITS CURRENT OR FUTURE USE, HABITABILITY, VALUE OR DESIRABILITY.

Buyer's Initials: _____

10. **Buyer's Compliance with Environmental Regulatory Directives, Orders and Applicable Environmental Laws**. Buyer agrees and acknowledges that it is assuming responsibility and liability for the hazardous substances on, at, beneath or emanating from, the Property following the Effective Date and that Seller will have no liability for the hazardous substances on, at, beneath or emanating from, the Property following the Effective Date. Commencing on the Effective Date, Buyer shall, at its sole cost, promptly comply with all applicable environmental laws (whether in existence as of the Effective Date or thereafter promulgated) and all applicable regulatory agency directives, orders and policies pertaining to the Property and/or related to or arising from hazardous substances on, at, beneath or emanating from, the Property. Buyer agrees that it shall promptly provide written notice to DTSC in the form of the letter attached as Exhibit "D", with a copy to Seller, of its interest in the Property, and assumption of responsibility for compliance with all laws as set forth herein.

11. **Buyer's Indemnification of Seller**. Commencing on the Effective Date, Buyer shall indemnify, defend and hold harmless Seller (and its officers, shareholders, directors, employees, representatives and agents) against claims, costs, cost recovery actions, government orders (including, but not limited to, any orders issued or threatened by

-4-

1141071.4
2/11/11

EXHIBIT A - DOBBAS CROSSCLAIM

DTSC even if such orders are issued or threatened on or after the Effective Date, but before the Transfer of Title, expenses, fees (including, but not limited to Attorneys' fees or consultant fees), losses, penalties, liens (including, but not limited to, the Environmental Lien), judgments or damages (collectively, "Claims") related to or arising from the hazardous substances on, at, beneath or emanating from, the Property regardless of whether such Claims arose before or after the Effective Date, the Deed Restriction or challenges by third parties to validity or enforceability of this Agreement. Buyer agrees and acknowledges that the obligations pursuant to this Section 11 shall survive the Transfer of Title.

12. Buyer's Release of Seller. Commencing on the Effective Date, Buyer shall release Seller (and its officers, shareholders, directors, employees, representatives and agents) against claims, costs, cost recovery actions, government orders (including, but not limited to, any orders issued or threatened by DTSC) expenses, fees (including, but not limited to Attorneys' fees or consultant fees), losses, penalties, liens (including, but not limited to, the Environmental Lien), judgments or damages (collectively, "Claims") related to or arising from the hazardous substances on, at, beneath or emanating from, the Property regardless of whether such Claims arose before or after the Effective Date, the Deed Restriction or challenges by third parties to validity or enforceability of this Agreement. This release is intended by Buyer to be a general release. Buyer is aware of the provisions of California Civil Code Section 1542, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

Buyer hereby expressly waives all the benefits of Section 1542 and any other similar law of any jurisdiction. Buyer understands and further agrees that it may later discover facts different from, or in addition to, those which it now believes to be true, but nonetheless agrees herein that this Agreement shall be and remain in effect in all respects notwithstanding such different or additional facts or Buyer's discovery thereof. Nevertheless, Buyer intends to release and forever discharge Seller as set forth above.

To the best of Seller's actual knowledge (without the duty to investigate) at the time of the Effective Date, there are no impending liens or claims against the Property other than those previously described in Section 8 of this Agreement.

13. Notices. All notices or other communications required or permitted hereunder shall be in writing, and shall be personally delivered or sent by registered or certified mail, postage prepaid, return receipt requested, or sent by electronic facsimile and shall be deemed received upon the earlier of (i) if personally delivered, the date of delivery to the address of the person to receive such notice, (ii) if mailed, on the date of

EXHIBIT A - DOBBAS CROSSCLAIM

posting by the United States Post Office, or (iii) if given by electronic facsimile, when received by the other party.

TO SELLER:           Jim Dobbas, Inc.
                             300 Taylor Road
                             Newcastle, CA 95658
                             Attention:  Don Dobbas
                             Facsimile:  (916) 663-4376

                             With a copy to:
                             Nicole R. Gleason
                             Downey Brand LLP
                             621 Capitol Mall, 18th Floor
                             Sacramento, CA 95814
                             Facsimile:  (916) 520-5743

TO BUYER:           David van Over
                             216 F Street #108
                             Davis, CA 95616
                             Facsimile:  (530) 231-6372

      Notice of change of address shall be given by written notice in the manner described in this Section.

      14. Brokers.  Buyer and Seller represent and warrant that neither party has used a real estate broker in connection with the sale of the Property and no real estate brokerage commission is due or payable upon the consummation of the transactions herein.  If any claims for brokers' or finders' fees for the consummation of this Agreement arise, then Buyer hereby agrees to indemnify, hold harmless and defend Seller from and against such claims if they shall be based upon any statement, representation or agreement by Buyer, and Seller hereby agrees to indemnify, hold harmless and defend Buyer if such claims shall be based upon any statement, representation or agreement made by Seller.

      15.  Miscellaneous.

        (a) Partial Invalidity.  If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Agreement shall be valid, and shall be enforced to the fullest extent permitted by law.

        (b) Waivers.  No waiver of any breach of any covenant or provision herein contained shall be deemed a waiver of any preceding or succeeding breach thereof, or of

1141071.4
2/11/11

any other covenant or provision herein contained. No extension of time for performance of any obligation or act shall be deemed an extension of time for performance of any other obligation or act except those of the waiving party, which shall be extended by a period of time equal to the period of the delay.

(c) Discharge of Seller's Obligations. The acceptance of the Quit Claim Deed by Buyer shall be deemed to be a full performance and discharge of every agreement and obligation on the part of Seller to be performed pursuant to the provisions of this Agreement.

(d) Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the parties hereto.

(e) Professional Fees. If either party commences an action against the other to interpret or enforce any of the terms of this Agreement or because of the breach by the other party of any of the terms hereof, the losing party shall pay to the prevailing party reasonable attorneys' fees, costs and expenses and court costs and other costs of action incurred in connection with the prosecution or defense of such action, whether or not the action is prosecuted to a final judgment. For the purpose of this Agreement, the terms "attorneys' fees" or "attorneys' fees and costs" shall mean the fees and expenses of counsel to the parties hereto, which may include printing, photostating, duplicating and other expenses, air freight charges, and fees billed for law clerks, paralegals, librarians and others not admitted to the bar but performing services under the supervision of an attorney. The terms "attorneys' fees" or "attorneys' fees and costs" shall also include, without limitation, all such fees and expenses incurred with respect to appeals, arbitrations and bankruptcy proceedings, and whether or not any action or proceeding is brought with respect to the matter for which said fees and expenses were incurred. The term "attorney" shall have the same meaning as the term "counsel."

(f) Entire Agreement. This Agreement (including the preamble, Recitals and all Exhibits attached hereto) is the final expression of, and contains the entire agreement between, the parties with respect to the subject matter hereof and supersedes all prior understandings with respect thereto with the exception of that certain Bilateral Confidentiality Agreement effective as of February 1, 2011. This Agreement may not be modified, changed, supplemented, superseded, canceled or terminated, nor may any obligations hereunder be waived, except by written instrument signed by the party to be charged or by its agent duly authorized in writing or as otherwise expressly permitted herein. The parties do not intend to confer any benefit hereunder on any person, firm or corporation other than the parties hereto and lawful assignees.

(g) Assignment. Prior to the Transfer of Title, Buyer may not assign its right, title or interest in this Agreement to any other party without prior written notice to Seller.

1141071.4
2/11/11

(h) Time of Essence.  Seller and Buyer hereby acknowledge and agree that time is strictly of the essence with respect to each and every term, condition, obligation and provision hereof.

(i) Construction.  Headings at the beginning of each paragraph and subparagraph are solely for the convenience of the parties and are not a part of the Agreement.  Whenever required by the context of this Agreement, the singular shall include the plural and the masculine shall include the feminine and vice versa.  This Agreement shall not be construed as if it had been prepared by one of the parties, but rather as if both parties had prepared the same.  Buyer acknowledges and agrees that Downey Brand LLP has been retained solely to represent the interests of Seller. Unless otherwise indicated, all references to paragraphs, sections, subparagraphs and subsections are to this Agreement.  All exhibits referred to in this Agreement are attached and incorporated by this reference.

(j) Governing Law.  The parties hereto acknowledge that this Agreement has been negotiated and entered into in the State of California.  The parties hereto expressly agree that this Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of California.

(k) Possession of Property.  Subject to the Approved Condition of Title, Buyer shall be entitled to the possession of the Property immediately following the Effective Date.

(l) Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument. For purposes of executing this Agreement, a facsimile or PDF signature shall have the same force and effect as the original.

1141071.4
2/11/11

(m)   <u>Limited Liability</u>.  The obligations of Seller, its agents, representatives or employees, arising by virtue of this Agreement shall be limited to the interest of Seller in the Property and there shall be no recourse against any other assets of Seller, its agents, representatives or employees.  In the event of a Seller breach, Buyer's sole and absolute remedy (regardless of the nature of the cause of action alleged) shall be specific performance.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

**BUYER:**

David van Over,
an individual as an unmarried man

**SELLER:**

**Jim Dobbas, Inc., a California corporation**

By
Name: Donald James Dobbas
Its: President

1141071.4
2/11/11

-9-

## EXHIBIT A

## Description of Real Property

The following described parcels of land are located within the County of Solano, State of California.

PARCEL ONE

Beginning at the southeast corner of the Northwest One Quarter of Section Nineteen (19) Township Six (6) North Range One (1) East, Mount Diablo Base and Meridian; running thence North along the Quarter Section line to the Southeasterly boundary of the right of way of the Southern Pacific Railroad; thence Southwesterly along the southeasterly line of the right of way of the Southern Pacific Railroad Company to the Quarter Section line running East and West through said Section Nineteen (19); thence East and along said Quarter Section line to the place of beginning. EXCEPTING THEREFROM, however, all that certain real property as conveyed by Eleanor B. Allison to Southern Pacific Railroad Company, a corporation, by Deed dated May 10th, 1916, and recorded May 23rd, 1916 in Liber "226" of Deeds, Page 104, thereof, and described as follows: Beginning at the point of intersection of the Southeasterly right of way line of the Southern Pacific Railroad Company's railroad (as it now exists across said Northwest Quarter of Section 19) with the east line of the Northwest Quarter of Section 19, Township 6 North Range 1 East, Mount Diablo Base and Meridian; thence Southwesterly along said Southeasterly right of way line of the Southern Pacific Railroad Company, a distance of 506 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 265 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point on the east line of said Northwest Quarter of Section 19; thence North along said East line of the Northwest Quarter of Section 19, a distance of 30.7 feet to the point of beginning.

PARCEL TWO

Beginning at the intersection of the northerly line of Edwards Street and the westerly line of "A" Street extended northerly; thence running Westerly and along the northerly line of Edwards Street, One Hundred Forty (140) feet, more or less, to the intersection of the easterly line of the right of way of the Southern Pacific Railroad Company; thence northerly and along the easterly line of the right of way of the Southern Pacific Railroad Company, One Hundred Ninety-One (191) feet more or less to the southerly line of County Road Number Two Hundred Forty-Six (246) sometimes also known as Binghampton Street; thence Easterly and along

CONTINUED

-1-

1141071.4
2/11/11

EXHIBIT A - DOBBAS CROSSCLAIM

Exhibit "A" Cont'd. (Parcel Two)

the southerly line of County Road Number 246, to the intersection of the
westerly line of a street, extended Northerly; thence Southerly and
along the westerly line of a street, extended, Northerly to the northerly
line of Edwards Street and the place of beginning.  All as said streets
herein referred to are laid down and designated on that certain map
entitled: "PLAN OF RESURVEY OF PORTION OF VACA STATION, PROPERTY OF
W. C. FARMER, SITUATED ON SOUTH WEST ONE QUARTER (S.W. 1/4) OF SECTION
NINETEEN (19) TOWNSHIP VI NORTH RANGE 1 EAST SOLANO COUNTY," surveyed by
E. H. Marshall, Deputy County Surveyor, April 8th, 1870 and now appearing
of record in Volume "1" of Maps, Page 44 thereof, Solano County Records.

PARCEL THREE

Beginning at the point of intersection of the westerly line of "A"
Street, extended Northerly, and the northerly line of County Road Number
246 (Holdener Road, formerly shown as Binghampton Street) in Elmira
Townsite, Solano County, California, which point bears North 0° 22' 08"
West, 30 feet and South 89° 55' 06" West, 397.80 feet from the southeast
corner of the Northeast One-Quarter of Section 19, T6N, R1E, M.D.B. & M.;
thence, from said point of beginning, along the northerly line of the
aforementioned Binghampton Street South 89° 55' 06" West, 171.67 feet to
the easterly right-of-way line of the Southern Pacific Railroad; thence
along said easterly right-of-way line South 34° 52' 51" West, 73.21 feet
to the southerly line of said Binghampton Street; thence, along said
southerly line, North 89° 55' 06" East, 171.67 feet to the westerly line
of the aforementioned "A" Street; thence along the prolongation of said
westerly line of "A" Street, North 34° 52' 51" East, 73.21 feet to the
point of beginning.

-2-

EXHIBIT A - DOBBAS CROSSCLAIM

RECORDING REQUESTED BY

and

WHEN RECORDED MAIL TO

Jim Dobbas, Inc.
P.O. Box 177
Newcastle, CA 95658

Recorded in Official Records,
Solano County
Doc#: 201100013729
2/14/2011     3:22 PM

C

*STATE OF CALIFORNIA )
COUNTY OF PLACER )SS

(SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE)

## QUITCLAIM DEED

FOR VALUABLE CONSIDERATION, Jim Dobbas, Inc., a California corporation ("Grantor"), hereby RELINQUISHES, REMISES, RELEASES AND FOREVER QUITCLAIMS to David van Over, an unmarried man ("Grantee"), all of Grantor's right title and interest (subject to that certain Covenant to Restrict Use of Property dated October 27, 1995/Recorders No. 1995-00068154 and including all appurtenant rights, including mineral rights) in and to that certain real property, commonly known as APNs 0142-042-010, 0142-010-130 and 0142-010-140, and more particularly described on Exhibit A attached hereto and incorporated by this reference (the "Property").

IN WITNESS WHEREOF, this Quitclaim Deed was executed on this the 11 day of February, 2011.

Jim Dobbas, Inc., a California
Corporation

*The undersigned grantor(s) declare(s)
DOCUMENTARY TRANSFER TAX IS $101.20
computed on full value of property conveyed or
computation full value less value of liens and
encumbrances remaining at time of sale.
UNINCORPORATED AREA CITY OF*

By _____

Donald James Dobbas

Its:

President

*On FEB 11 2011 before me, R.L. ROGERS, NOTARY PUBLIC
(Name and Title of Officer)

personally appeared DONALD JAMES DOBBAS, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s); or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (NOTARY SEAL)
(Notary Officer)

R. L. ROGERS
Commission # 1835712
Notary Public - California
Placer County
My Comm. Expires Mar 8, 2013

TAX BILL TO:
DAVID VAN OVER
216 F STREET #108
DAVIS, CA. 95616

EXHIBIT A - DOBBAS CROSSCLAIM

## EXHIBIT A

### Description of Real Property

The following described parcels of land are located within the County of Solano, State of California.

PARCEL ONE

Beginning at the southeast corner of the Northwest One Quarter of Section Nineteen (19) Township Six (6) North Range One (1) East, Mount Diablo Base and Meridian; running thence North along the Quarter Section line to the Southeasterly boundary of the right of way of the Southern Pacific Railroad; thence Southwesterly along the southwesterly line of the right of way of the Southern Pacific Railroad Company to the Quarter Section line running East and West through said Section Nineteen (19); thence East and along said Quarter Section line to the place of beginning. EXCEPTING THEREFROM, however, all that certain real property as conveyed by Eleanor R. Allison to Southern Pacific Railroad Company, a corporation, by Deed dated May 10th, 1916, and recorded May 23rd, 1916 in Liber "216" of Deeds, Page 104, thereof, and described as follows: Beginning at the point of intersection of the Southeasterly right of way line of the Southern Pacific Railroad Company's railroad (as it now exists across said Northwest Quarter of Section 19) with the east line of the Northwest Quarter of Section 19, Township 6 North Range 1 East, Mount Diablo Base and Meridian; thence Southwesterly along said Southeasterly right of way line of the Southern Pacific Railroad Company, a distance of 306 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 255 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point on the east line of said Northwest Quarter of Section 19; thence North along said East line of the Northwest Quarter of Section 19, a distance of 30.7 feet to the point of beginning.

PARCEL TWO

Beginning at the intersection of the northerly line of Edwards Street and the westerly line of "A" Street extended northerly; thence running westerly and along the northerly line of Edwards Street, One Hundred Forty (140) feet, more or less, to the intersection of the easterly line of the right of way of the Southern Pacific Railroad Company; thence Northerly and along the easterly line of the right of way of the Southern Pacific Railroad Company, One Hundred Ninety-One (191) feet more or less to the southerly line of County Road Number Two Hundred Forty-Six (246) sometimes also known as Binghampton Street; thence Easterly and along

CONTINUED

11411156.2

2

EXHIBIT A - DOBBAS CROSSCLAIM

Exhibit "A" Cont'd. (Parcel Two)

the southerly line of County Road Number 246, to the intersection of the
westerly line of a street, extended Northerly; thence Southerly and
along the westerly line of a street, extended Northerly to the northerly
line of McHenie Street and the place of beginning. All as said streets
herein referred to are laid down and designated on that certain map
entitled: "PLAN OF RESURVEY OF PORTION OF TRACK SECTION, PROPERTY OF
W. G. FRINGE, SITUATED ON SOUTH WEST ONE QUARTER (S.W. 1/4) OF SECTION
NINETEEN (19) TOWNSHIP VI NORTH RANGE 1 WEST SOLANO COUNTY," surveyed by
R. H. Marshall, Deputy County Surveyor, April 8th, 1870 and now appearing
of record in Volume "1" of Maps, Page 44 thereof, Solano County Records.

PARCEL THREE

Beginning at the point of intersection of the westerly line of "A"
Street, extended Northerly, and the northerly line of County Road Number
246 (McAleneer Road, formerly shown as Binghampton Street) in Elmira
Townsite, Solano County, California, which point bears North 6° 22' 08"
West, 30 feet and South 89° 53' 06" West, 397.60 feet from the southeast
corner of the Northwest One-Quarter of Section 19; THN, XIX, N.D.B. & M.;
thence, from said point of beginning, along the northerly line of the
aforementioned Binghampton Street South 89° 55' 06" West, 171.67 feet to
the easterly right-of-way line of the Southern Pacific Railroad; thence
along said easterly right-of-way line South 34° 52' 51" West, 73.21 feet
to the southerly line of said Binghampton Street; thence, along said
southerly line, North 89° 55' 06" East, 171.67 feet to the westerly line
of the aforementioned "A" Street; thence along the prolongation of said
westerly line of "A" Street, North 34° 52' 51" East, 73.21 feet to the
point of beginning.

**EXHIBIT B**

**Quit Claim Deed**

RECORDING REQUESTED BY

and

WHEN RECORDED MAIL TO

Jim Dobbas, Inc.
P.O. Box 177
Newcastle, CA 95658

(SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE)

**QUITCLAIM DEED**

     FOR VALUABLE CONSIDERATION, Jim Dobbas, Inc., a California corporation ("**Grantor**"), hereby RELINQUISHES, REMISES, RELEASES AND FOREVER QUITCLAIMS to David van Over, an unmarried man ("**Grantee**"), all of Grantor's right title and interest (subject to that certain Covenant to Restrict Use of Property dated October 27, 1995/Recorders No. 1995-00068154 and including all appurtenant rights, including mineral rights) in and to that certain real property, commonly known as APNs 0142-042-010, 0142-010-130 and 0142-010-140 and more particularly described on Exhibit A attached hereto and incorporated by this reference (the "Property").

     IN WITNESS WHEREOF, this Quitclaim Deed was executed on this the ___ day of February, 2011.

     Jim Dobbas, Inc., a California
     Corporation

_____

**By** _____
     Donald James Dobbas
Its: _____
     President _____

On _____ before me, _____,
(Name and Title of Officer)

personally appeared _____, who proved to
me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument

1141071.4
2/11/11

-3-

EXHIBIT A - DOBBAS CROSSCLAIM

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (NOTARY SEAL)

    (Notary Officer)

EXHIBIT A - DOBBAS CROSSCLAIM

**EXHIBIT C**

**Environmental Disclosure Document**

1. Covenant to Restrict Use of Property dated 10.27.95

2. 2007 BEC Appraisal of the Property

3. Settlement Agreement dated 1984

4. Continental Rail Bankruptcy documents

5. Removal Action Workplan, Draft Final dated October 2009

6. Sampling & Analysis Plan - April 2009

7. Remedial Investigation Report - July 2008

8. Imminent &Substantial Endangerment Determination and Cover Letter dated 11.09.06

9. Operation and Maintenance Agreement 2.26.96

10. Wickes Final Lien_11_22_10

11. Collins and Aikman Bankruptcy Amended Disclosure Statement for the First Amended Joint Plan

12. Background documents on Pacific Wood Preserving

13. 2010 Draft Imminent and Substantial Endangerment Determination and Consent Order and letter dated May 10, 2010

14. 2006 Draft Imminent or Substantial Endangerment Determination Order and Remedial Action Order and letter dated July 24, 2006

15. DTSC's Proof of Claim in the Collins and Aikman Bankruptcy dated January 10, 2006

16. DTSC's Supplement Statement in Support of Proof of Claim dated January 10, 2006

17. DTSC's Summary of Site Conditions, "9/6/06 Meeting between DTSC and Property Owners"

1141071.4
2/11/11

EXHIBIT A - DOBBAS CROSSCLAIM

18. Asphalt Cap Report dated March 1, 2005

19. Pilot Study Work Plan dated March 18, 2005

1141071.4
2/11/11

EXHIBIT A - DOBBAS CROSSCLAIM

**EXHIBIT D**

**DTSC Notice Letter**

February __, 2011

**VIA FEDERAL EXPRESS**

Department of Toxic Substances Control
1001 I Street
Sacramento, CA 95814-2828
Attention: Chief,
Northern California – Central Cleanup Operations Branch

Re:      **Former Wickes Forest Industries Site; 147 A Street, Elmira, California**

Dear Sir/Madam:

On February **(insert Transfer of Title date)**, 2011, I acquired Jim Dobbas, Inc.'s fifty percent (50%) interest in the above referenced property for one dollar ($1.00).  On February **(Insert Transfer of Title date)**, 2011, I acquired Continental Rail, Inc.'s fifty percent (50%) interest in the above referenced property for one dollar ($1.00). I also agreed to comply with all applicable environmental laws and all applicable regulatory agency directives pertaining to the property and the releases from the former Wickes facility.  In addition, I agreed to take the property subject to DTSC's lien on Jim Dobbas, Inc.'s interest in the property and assume any liability Jim Dobbas, Inc. has for the lien.  I write to provide my contact information and to request a meeting with DTSC to discuss site conditions, my plans for the property and the agency's expectations.

Best Regards,


David van Over
216 F Street #108
Davis, CA 95616
Cell: 775.830.3888
Fax: 530.231.6372


cc: Elizabeth Yelland, DTSC (via E-Mail: EYelland@dtsc.ca.gov )
      Ray Leclerc, DTSC (via E-Mail: rleclerc@dtsc.ca.gov )
      Marilee Hanson, DTSC (via E-Mail: MHanson@dtsc.ca.gov )
      Don Dobbas, Jim Dobbas, Inc. (via E-Mail)
      Nicole Gleason, Downey Brand (via E-Mail)

1141071.4
2/11/11

-7-

EXHIBIT A - DOBBAS CROSSCLAIM





EXHIBIT A - DOBBAS CROSSCLAIM