Lester O. Brown, Bar No. 160828
LBrown@perkinscoie.com
James G. Bernald, Bar No. 205519
JBernald@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone:  310.788.9900
Facsimile:   310.788.3399

Attorneys for Defendant
West Coast Wood Preserving, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, et al.,<br><br>               Plaintiffs,<br><br>     v.<br><br>JIM DOBBAS, INC., et al.,<br><br>               Defendants.<br><br>AND RELATED COUNTERCLAIMS AND CROSSCLAIMS. | Case No. 2:14-cv-00595-WBS-EFB<br><br>**ANSWER AND AFFIRMATIVE DEFENSES BY DEFENDANT WEST COAST WOOD PRESERVING, LLC TO FIRST AMENDED COMPLAINT**<br><br>Judge:    William B. Shubb |

1  Defendant West Coast Wood Preserving, LLC ("WCWP") files its Answer to

2  the First Amended Complaint ("FAC" or "Complaint") of Plaintiffs California

3  Department of Toxic Substances Control and the Toxic Substances Control

4  Account (collectively "DTSC") as follows:

5  **JURISDICTION**

6  1.  Paragraph 1 contains legal conclusions to which WCWP is not

7  required to respond.  To the extent any allegation in this paragraph may be deemed

8  to require a response, WCWP denies all such allegations.

9  **VENUE**

10  2.  Paragraph 2 contains legal conclusions to which WCWP is not

11  required to respond.  To the extent any allegation in this paragraph may be deemed

12  to require a response, WCWP denies all such allegations.

13  **INTRA-DISTRICT ASSIGNMENT**

14  3.  Paragraph 3 contains legal conclusions to which WCWP is not

15  required to respond.  To the extent any allegation in this paragraph may be deemed

16  to require a response, WCWP denies all such allegations.

17  **STATEMENT OF THE ACTION**

18  4.  WCWP admits that DTSC purports to make a claim against

19  Defendants under section 107(a) of CERCLA, 42 U.S.C. section 9607(a), for the

20  recovery of response costs and interest on such response costs that Plaintiffs have

21  incurred in connection with releases and threatened releases of hazardous

22  substances from the approximately 7.5 acre property located at 147 A Street,

23  Elmira, CA 95625 (the "Elmira Site").  WCWP denies that it is liable to Plaintiffs

24  for any response costs that Plaintiffs have incurred.  WCWP is without knowledge

25  or information sufficient to form a belief regarding the truth of any remaining

26  allegations in Paragraph 4 and therefore denies them.

27  5.  WCWP denies that it is jointly and severally liable to Plaintiffs for

28  future response costs incurred by the Plaintiffs in responding to releases and

-1-

1  threatened releases of hazardous substances at, beneath, and/or from the Elmira

2  Site.  WCWP is without knowledge or information sufficient to form a belief

3  regarding the truth of any remaining allegations in Paragraph 5 and therefore denies

4  them.

5        6.    The allegations set forth in Paragraph 6 concern parties other than

6  WCWP, and therefore no response is required.  To the extent any allegations in this

7  paragraph may be deemed to require a response, WCWP denies all such allegations.

8  **PLAINTIFFS**

9        7.    Paragraph 7 contains legal conclusions to which WCWP is not

10  required to respond.  To the extent any allegation in this paragraph may be deemed

11  to require a response, WCWP denies all such allegations.

12        8.    Paragraph 8 contains legal conclusions to which WCWP is not

13  required to respond.  To the extent any allegation in this paragraph may be deemed

14  to require a response, WCWP denies all such allegations.

15  **DEFENDANTS**

16        9.    WCWP admits the allegations in Paragraph 9.

17        10.    WCWP admits the allegations in Paragraph 10.

18        11.    WCWP admits the allegations in Paragraph 11.

19        12.    WCWP admits the allegations in Paragraph 12.

20        13.    Paragraph 13 contains legal conclusions to which no response is

21  required.  WCWP denies that it is a successor to Defendant Pacific Wood

22  Preserving ("PWP"), as evidenced by the following facts.

23      • PWP incorporated under California law in 1972.

24      • The sole shareholder of PWP was non-party Richard F. Jackson.

25      • PWP operated a wood preserving and treating facility at the Elmira

26        Site from 1972 until September 1979.  At a meeting on

27        September 15, 1978, PWP's Board of Directors discussed the Wickes

28        Corporation's ("Wickes") interest in purchasing PWP.

DEFENDANT WEST COAST WOOD
PRESERVING, LLC's ANSWER TO FAC
2:14-CV-00595-WBS-EFB

- In September 1979, PWP and Wickes entered into a Purchase and Sale Agreement. Under that agreement, substantially all of the property and assets of PWP (including the Elmira Site) were sold to Wickes.

- Prior to the sale to Wickes, PWP was informed by the Central Valley Regional Water Quality Control Board that it had successfully investigated and remediated contamination at the Elmira Site.

- Wickes acquired not only the Elmira Site but also the operations located at the Site. The agreement provided that Wickes acquired "substantially all of the assets used" by PWP in its Elmira business. Pursuant to the agreement, Wickes acquired PWP's machinery, equipment, inventory, leases, licenses, and many of PWP's contractual liabilities. The agreement also required PWP to abandon the "Pacific Wood Preserving Corporation" name and transfer it to Wickes.

- Following the sale of its assets to Wickes, PWP began winding up its affairs and dissolving its corporate existence. On September 11, 1980, PWP was dissolved in accordance with California law. The process was not completed until sometime in late 1981.

- Pacific Wood Preserving of Bakersfield ("PWP-Bakersfield") was incorporated under Nevada law in 1978.

- PWP-Bakersfield's initial directors were Steven Wellingsworth, Jake Deerst, and George Siegel.

- Richard Jackson was never the sole shareholder of PWP-Bakersfield.

- As part of its dissolution process, in September 1981 PWP transferred full ownership via grant deed of the Bakersfield land where PWP-Bakersfield was located.

- In November 2013, PWP-Bakersfield converted into WCWP. At no point did either PWP-Bakersfield or WCWP have anything to do with the Elmira Site operations.

-3-

DEFENDANT WEST COAST WOOD
PRESERVING, LLC's ANSWER TO FAC
2:14-CV-00595-WBS-EFB

- • WCWP is a Nevada Limited Liability Company with its principal place of business in Kern County, California.
- • Before September 2010, neither DTSC nor any other state agency notified or alleged that WCWP was a Potentially Responsible Party ("PRP") for any hazardous waste cleanup at the Elmira Site.

Except as expressly admitted above and to the extent that a response is required, WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 13 and therefore denies them.

## **GENERAL ALLEGATIONS**

14.   WCWP admits the allegations in Paragraph 14.

15.   WCWP admits the allegations in Paragraph 15.

16.   WCWP admits the allegations in Paragraph 16.

17.   WCWP admits the allegations in Paragraph 17.

18.   WCWP admits the allegations in Paragraph 18.

19.   With respect to DTSC's allegation that since 1972, hazardous substances were released into the environment at and from the Elmira Site, WCWP admits the following incidents:

- • In 1978, rain storms caused wood treatment chemicals to overflow from the treatment area into a nearby drainage ditch.  On March 2, 1978 the Central Valley Regional Water Quality Control Board ("Regional Board") issued a Cleanup and Abatement Order.  The cleanup order required PWP to:  (1) clean up and dispose of all the contaminated soil from the spill; and (2) develop and implement methods to contain contaminated storm waters in the future.  PWP performed the work required by the cleanup order, and in 1979, the Regional Board found that PWP satisfied the cleanup order requirements.

DEFENDANT WEST COAST WOOD
PRESERVING, LLC's ANSWER TO FAC
2:14-CV-00595-WBS-EFB

1      •   The events that led to the cleanup order also resulted in a civil

2           enforcement lawsuit against PWP by the State of California.  That

3           action was later settled for $7,500 as PWP had completely complied

4           with the cleanup and investigation requirements.

5      •   While it was under the operation of Wickes, at least two major

6           discharges of hazardous materials occurred.  On December 24, 1979,

7           a green liquid, later determined to be water mixed with arsenic,

8           chromium, and copper, was reported to be flowing over the top of a

9           3-foot containment wall into a ditch near the property.  In

10          November 1980, Wickes discharged approximately 12,000 gallons of

11          reportedly contaminated well water into the drainage ditches.  Testing

12          conducted thereafter revealed that the Elmira Site had concentrations

13          of 120,000 ppb of hexavalent chromium and 200 ppb of arsenic in the

14          groundwater.  The Regional Board also found that Wickes had

15          disposed of hazardous waste on-site without a permit.

16      •   The actions of Wickes prompted the Regional Board to issue Cleanup

17           and Abatement Orders to Wickes dated October 4, 1982 and

18           June 6, 1982.

19      •   These orders resulted in Wickes entering into a settlement agreement

20           with the Regional Board.  In the agreement, the Regional Board found

21           that Wickes (1) disposed of hazardous waste on-site without a permit;

22           (2) did not take steps to ensure that waste was taken to a permitted

23           facility; and (3) did not operate, design, or equip the facility to prevent

24           discharge of hazardous wastes and to prevent hazards to public health,

25           personal safety, and wildlife amongst other violations of the Health

26           and Safety Code.

27      •   Wickes stopped operating on the Elmira Site in 1982 when it

28           commenced bankruptcy proceedings.  Ownership of the Elmira

DEFENDANT WEST COAST WOOD
PRESERVING, LLC's ANSWER TO FAC
2:14-CV-00595-WBS-EFB

facility was transferred to Collins & Aikman Products, LLC ("C&A") in 1982.

- Upon information and belief, although aware of contamination conditions at the Elmira Site at the time C&A took control of the facility in 1982, DTSC failed to require that C&A conduct a comprehensive cleanup of the Site.  Indeed, upon information and belief, DTSC directed C&A to take actions at the Elmira Site that exacerbated the contamination condition caused by Wickes.

- Upon information and belief, although responsible for taking action at the Elmira Site regarding the environmental conditions at the Site, C&A sold the property to Defendants Jim Dobbas and Continental Rail, Inc. in 1997.  Upon information and belief, DTSC was aware of the sale but took no action to stop it.

- Upon information and belief, DTSC took no action to perfect a claim against Wickes when Wickes went into bankruptcy.

- C&A filed for bankruptcy in 2005.  Upon information and belief, after C&A went bankrupt and until 2011, DTSC took no further action to mitigate or clean up contamination at the Elmira Site.  Indeed, DTSC essentially abandoned the Elmira Site, thus allowing other owners Continental Rail, Inc., Jim Dobbas, and David Van Over to conduct activities on the Site that may have resulted in further contamination at the Site.

Except as expressly admitted above, WCWP is without knowledge or information sufficient to form a belief regarding the truth the allegations in Paragraph 19 and therefore denies them.

20.   WCWP admits the allegations in Paragraph 20.

21.   WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 21 and therefore denies them.

DEFENDANT WEST COAST WOOD
PRESERVING, LLC's ANSWER TO FAC
2:14-CV-00595-WBS-EFB

22.     WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 22 and therefore denies them.

23.     WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 23 and therefore denies them.

24.     WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 24 and therefore denies them.

25.     WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 25 and therefore denies them.

26.     To the extent that this paragraph summarizes documents from C&A's bankruptcy case, the documents speak for themselves and WCWP does not dispute their authenticity.  Otherwise, WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 26 and therefore denies them

27.     WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 27 and therefore denies them.

28.     WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 28 and therefore denies them.

29.     WCWP admits the allegations in Paragraph 29.

30.     WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 30 and therefore denies them.

31.     WCWP admits the allegations in Paragraph 31.

32.     WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 32 and therefore denies them.

33.     Paragraph 33 contains legal conclusions and DTSC's characterization of its claims, to which WCWP is not required to respond.  To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

34.    Paragraph 34 contains legal conclusions and DTSC's characterization of its claims, to which WCWP is not required to respond.  To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

35.    WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 35 and therefore denies them.

36.    WCWP is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 36 and therefore denies them.

## FIRST CLAIM FOR RELIEF

### (Claim for Recovery of Response Costs Pursuant to

### Section 107(a) of CERCLA, 42 U.S.C. § 9607(a))

37.    WCWP incorporates by references its answers to Paragraphs 1-36.

38.    Paragraph 38 contains legal conclusions and DTSC's characterization of its claims to which WCWP is not required to respond.  To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

39.    Paragraph 39 contains legal conclusions and DTSC's characterization of its claims to which WCWP is not required to respond.  To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

40.    Paragraph 40 contains legal conclusions and DTSC's characterization of its claims to which WCWP is not required to respond.  To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

41.    Paragraph 41 contains legal conclusions and DTSC's characterization of its claims to which WCWP is not required to respond.  To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

42.    Paragraph 42 contains legal conclusions and DTSC's characterization of its claims to which WCWP is not required to respond.  To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

43.    Paragraph 43 contains legal conclusions and DTSC's characterization of its claims to which WCWP is not required to respond.  To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations.

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief Pursuant to Section 113(g)(2) of CERCLA,

### 42 U.S.C. § 9613(g)(2))

44.    WCWP incorporates by references its answers to Paragraphs 1-43.

45.    Paragraph 45 contains legal conclusions and DTSC's characterization of its claims to which WCWP is not required to respond.  To the extent any allegation in this paragraph may be deemed to require a response, WCWP denies all such allegations and asserts that joint and several liability does not apply here.

## THIRD CLAIM FOR RELIEF

### (Failure and Refusal to Comply with Imminent or Substantial Determination

### Order and Remedial Action Order - California Health and Safety Code

### Sections 25355.5, 25358.3, 25359, 25367)

### (Against Defendants Dobbas, CRI, and Van Over)

46.    WCWP incorporates by references its answers to Paragraphs 1-45.

47.    WCWP is without knowledge or information sufficient to form a belief with regarding to the truth of the allegations in Paragraph 47 and therefore denies them.

48.    Paragraph 48 contains legal conclusions and DTSC's characterization of its claims to which WCWP is not required to respond.  To the extent any

DEFENDANT WEST COAST WOOD
PRESERVING, LLC's ANSWER TO FAC
2:14-CV-00595-WBS-EFB

1  allegation in this paragraph may be deemed to require a response, WCWP denies all

2  such allegations.

3        49.    Paragraph 49 contains legal conclusions and DTSC's characterization

4  of its claims to which WCWP is not required to respond.  To the extent any

5  allegation in this paragraph may be deemed to require a response, WCWP denies all

6  such allegations.

7        50.    Paragraph 50 contains legal conclusions and DTSC's characterization

8  of its claims to which WCWP is not required to respond.  To the extent any

9  allegation in this paragraph may be deemed to require a response, WCWP denies all

10  such allegations.

11        51.    Paragraph 51 contains legal conclusions and DTSC's characterization

12  of its claims to which WCWP is not required to respond.  To the extent any

13  allegation in this paragraph may be deemed to require a response, WCWP denies all

14  such allegations.

15        52.    WCWP is without knowledge or information sufficient to form a belief

16  regarding the truth of the allegations in Paragraph 52 and therefore denies them.

17        53.    WCWP denies that all costs DTSC has incurred since 2005 are a result

18  of the actions or failure to act of Dobbas, CRI, and Van Over.  WCWP asserts that

19  the vast majority of costs are due to actions and inactions taken by Wickes and

20  C&A, as well as DTSC, and WCWP denies that DTSC's costs constitute response

21  costs under CERCLA.

22        54.    The allegations set forth in Paragraph 54 concern parties other than

23  WCWP, and therefore no response is required.  To the extent any allegations in this

24  paragraph may be deemed to require a response, WCWP denies all such allegations.

25                        **AFFIRMATIVE DEFENSES**

26        In asserting the following affirmative defenses, WCWP does not admit that

27  the burden of proving the allegations or denials contained therein is upon WCWP.

28  Rather, the burden of proving the facts relevant to and/or the inverse of the

1   allegations contained in the following defenses and other matters is on the

2   Plaintiffs.  Moreover, WCWP does not admit any liability in asserting the following

3   affirmative defenses and other matters; rather, WCWP specifically denies any and

4   all allegations of liability in the Plaintiffs' lawsuit.

5        Without admitting liability as to any of the Plaintiffs' causes of action and

6   reserving its right to amend its Answer to assert additional defenses as they may

7   become known during discovery, WCWP asserts the following defenses and other

8   matters:

9                       **FIRST AFFIRMATIVE DEFENSE**

10       1.    <u>Discharged by Bankruptcy</u>.  During the late 1980s, PWP-Bakersfield

11   experienced financial difficulty leading it to file a petition for Chapter 11

12   reorganization in 1991 in the United States Bankruptcy Court for the Eastern

13   District of California, Case number 91-28246-A-11, entitled *In re Pacific Wood*

14   *Preserving of Bakersfield*.  The Bankruptcy Court confirmed PWP-Bakersfield's

15   reorganization plan on or about June 8, 1993.

16       2.    The State of California received appropriate notice of

17   PWP-Bakersfield's bankruptcy case and its ability to file a claim against

18   PWP-Bakersfield, whether as an alleged successor to PWP with respect to any

19   environmental liabilities at the Elmira Site, or otherwise.  In particular, the

20   California Office of the Attorney General and other state agencies were served with

21   copies of relevant pleadings and orders in PWP-Bakersfield's bankruptcy case.

22   Pleadings filed with the court evidence direct notice to the Attorney General's

23   Office of:  (1) the Order Approving the Disclosure Statement for Plan of

24   Reorganization; (2) Ballot; (3) the Amended Plan of Reorganization; and (4) the

25   Amended Disclosure Statement.  In addition, the California Department of General

26   Services filed a claim in the bankruptcy proceeding.

27       3.    Because the State was apprised of PWP-Bakersfield's bankruptcy, and

28   DTSC's claim arose before the bankruptcy petition due to the prior cleanup actions

DEFENDANT WEST COAST WOOD
PRESERVING, LLC's ANSWER TO FAC
2:14-CV-00595-WBS-EFB

1  at the Elmira Site, the complaint against WCWP, and each and every purported

2  count and cause of action therein, is barred by PWP-Bakersfield's Chapter 11

3  bankruptcy reorganization.

4  ### SECOND AFFIRMATIVE DEFENSE

5      4.    <u>Failure to state a claim</u>.  The complaint against WCWP, and each and

6  every purported count and cause of action therein, fails to state a claim for which

7  relief can be granted.

8  ### THIRD AFFIRMATIVE DEFENSE

9      5.    <u>No successor liability for PWP</u>.  As described in Paragraph 13 of this

10  Answer, which is realleged and incorporated by this reference, WCWP did not

11  succeed to any of PWP's liabilities related to the Elmira Site, and, as a

12  consequence, DTSC's claims against WCWP are barred.

13  ### FOURTH AFFIRMATIVE DEFENSE

14      6.    <u>Statute of Limitations</u>.  DTSC's claims against WCWP are barred by

15  the applicable statutes of limitations or repose, including, but not limited to,

16  42 U.S.C. section 9613(g)(2).

17  ### FIFTH AFFIRMATIVE DEFENSE

18      7.    <u>Costs inconsistent with National Contingency Plan</u>.  In 1991, rather

19  than removing the contaminated soil, DTSC directed C&A to cover the soils with

20  approximately 6 inches of shotcrete.

21      8.    In 1994, under the approval of DTSC, C&A excavated approximately

22  2,100 cubic yards of contaminated soils from off-site drainage ditches and

23  stockpiled them on the Elmira Site and placed an asphalt cap over these impacted

24  soils.

25      9.    Under DTSC's oversight, C&A maintained and operated a

26  groundwater extraction and treatment system, storm water control system, and

27  asphalt cap ("the System"), but DTSC failed to ensure the System's operation

28  following C&A Product's bankruptcy in 2005 until at least 2007.

-12-

10.     As a result of these misguided remediation actions, the 2008 Remedial Investigation Report revealed that arsenic and hexavalent chromium had continued to leach from the capped soil due to rainwater and groundwater transport and were a persistent source of groundwater contamination.

11.     Consequently, for these and potentially other reasons, DTSC's claims against WCWP are barred in whole or in part insofar as DTSC seeks to recover costs that are not reasonable or necessary response costs or are otherwise inconsistent with the National Contingency Plan.

### SIXTH AFFIRMATIVE DEFENSE

12.     <u>Costs not related to recovery</u>.  For the reasons described in the Sixth Affirmative Defense above, DTSC's claims against WCWP are barred in whole or in part insofar as DTSC seeks to recover costs and expenses other than response costs, as the term is defined in CERCLA.

### SEVENTH AFFIRMATIVE DEFENSE

13.     <u>Third-party</u>.  The discharge, release, and/or disposal of hazardous substances at the Elmira Site, and any resulting harms, were caused by the acts or omissions of other third parties or entities unrelated to WCWP, and WCWP has no liability for such damages under CERCLA.  42 U.S.C. § 9607(b)(3).  To the extent Plaintiffs assert some contamination by PWP, PWP is not responsible for the conditions because it fully cleaned the Elmira Site before the sale to Wickes, and regardless, WCWP is not a successor to PWP.

### EIGHTH AFFIRMATIVE DEFENSE

14.     <u>Several liability</u>.  WCWP denies any liability, but to the extent WCWP is held liable, its liability is divisible and it is only liable for its several share of liability.  Costs should be apportioned accordingly.

**NINTH AFFIRMATIVE DEFENSE**

15.   <u>Lack of Causation</u>.  No act or omission by WCWP, or by any person or entity for which WCWP is or was responsible, is the cause in fact or proximate cause of any costs or damages alleged in the FAC.

**TENTH AFFIRMATIVE DEFENSE**

16.   <u>No Liability for Other's Releases</u>.  If WCWP is deemed liable for any of DTSC's response costs, which WCWP denies, WCWP is not liable for any costs that were not incurred as a direct result of hazardous substance releases by WCWP.

**ELEVENTH AFFIRMATIVE DEFENSE**

17.   <u>Independent, Intervening, and/or Superseding Claims</u>.  Any act or omission of WCWP was not a substantial factor in bringing about DTSC's alleged injuries and was not a contributing cause thereof.  If DTSC sustained losses or injuries, such losses or injuries were the result of independent, intervening, or superseding forces and/or actions or omissions of third parties over which WCWP had no control and did not in any way participate in and for which WCWP is not liable.

**PRAYER FOR RELIEF**

WHEREFORE, WCWP prays for judgment and relief as follows:

1.   Dismissal of DTSC's First Amended Complaint against WCWP with prejudice;

2.   In the event WCWP is found to have any liability, it is liable only for its several share and is entitled to seek contribution from other responsible parties; and

3.   Such other relief as the Court deems equitable and just.

DEFENDANT WEST COAST WOOD
PRESERVING, LLC's ANSWER TO FAC
2:14-CV-00595-WBS-EFB

1    DATED:  January 5, 2015                    Respectfully submitted,

2                                               **PERKINS COIE LLP**

3
                                                /s/ Lester O. Brown
4                                               Lester O. Brown
                                                Attorneys for Defendant
5                                               West Coast Wood Preserving, LLC

6

7
     LEGAL124623750.1
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT WEST COAST WOOD
                                               PRESERVING, LLC's ANSWER TO FAC
                                               2:14-CV-00595-WBS-EFB