KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
SARAH E. MORRISON, State Bar No. 143459
Supervising Deputy Attorney General
LAURA J. ZUCKERMAN, State Bar No. 161896
THOMAS G. HELLER, State Bar No. 162561
Deputy Attorneys General
 1515 Clay Street, 20th Floor
 Oakland, CA 94612
 Telephone: (510) 622-2174
 Fax: (510) 622-2270
 E-mail: Laura.Zuckerman@doj.ca.gov
*Attorneys for Plaintiffs California
Department of Toxic Substances Control and Toxic
Substances Control Account*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,**<br><br>Plaintiffs,<br><br>v.<br><br>**JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,**<br><br>Defendants.<br><br>**AND RELATED COUNTERCLAIMS AND CROSS-CLAIMS** | Case No. 2:14-cv-00595-WBS-EFB<br><br>**RESPONSE OF PLAINTIFFS TO STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT WEST COAST WOOD PRESERVING, LLC**<br><br>Date: March 9, 2015<br>Time: 2:00 p.m.<br>Place: Courtroom 5, 14th Floor<br>   501 I Street<br>   Sacramento, CA 95814<br>Trial: January 4, 2017<br><br>Action Filed: March 3, 2014 |

1

RESPONSE OF PLS. TO STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT BY DEF. WEST COAST WOOD PRESERVING, LLC (2:14-cv-00595-WBS-EFB)

Plaintiffs California Department of Toxic Substances Control and the Toxic Substances Control Account respond to Defendant West Coast Wood Preserving, LLC's (WCWP's) Statement of Undisputed Facts (Docket No. 79-1) as follows:

| WCWP Fact and Cited Evidence | Plaintiffs' Response |
|---|---|
| 1. PWP Corp. was incorporated under California law in 1972 and operated a wood treatment and preserving business at the Wickes Site in Elmira, California until September 1979. (WCWP's Request for Judicial Notice ("RJN"), ¶ 7, Ex. F; Declaration of Stephen Ryan ("Ryan Decl."), ¶¶ 5-7.) | Undisputed. |
| 2. Richard Jackson was PWP Corp.'s sole shareholder and was one of its board members. (Ryan Decl., ¶¶ 4, 23.) | Undisputed. |
| 3. PWP Corp. operated from its single location in Elmira, California. (Ryan Decl., ¶ 5.) | Undisputed. |
| 4. In late 1978, the Wickes Corporation ("Wickes"), a multi-billion dollar corporation, expressed interest in purchasing PWP Corp.'s operations. (Ryan Decl., ¶ 6; Declaration of Lester O. Brown ("Brown Decl."), ¶ 9, Ex. F.) | Undisputed, but the statement that Wickes was a "multi-billion dollar corporation" is immaterial. |

2

| WCWP Fact and Cited Evidence | Plaintiffs' Response |
|---|---|
| 5. Negotiations began in 1979 and concluded with a Purchase Agreement on September 12, 1979. (Ryan Decl., ¶ 7, Ex. A.) | Undisputed. |
| 6. Wickes purchased or assumed from PWP Corp.:<br>• The land in Elmira on which the facility was situated;<br>• The "machinery, equipment, office furniture, [and other] goods and chattels" at the facility;<br>• The buildings and improvements at the facility;<br>• The licenses for the proprietary wood preserving treatment processes utilized by PWP Corp.;<br>• PWP Corp.'s inventory;<br>• PWP Corp.'s trade accounts payable; and<br>• The PWP name and an agreement by PWP Corp. to refrain from using the trade name "Pacific Wood Preserving," except where it is necessary for it to wind-up its operations. (Ryan Decl., ¶ 7, Ex. A at pp. 6-7, 22-24, and 32-41.) | Disputed.<br>As to future use of the name "Pacific Wood Preserving Corporation," the Purchase Agreement provision on trade name use states that "Buyer acknowledges that Richard Jackson…is involved in a similar business located in Bakersfield…and that this Agreement, except as to provisions dealing with non competition, does not concern the similar business." (WCWP Ryan Decl. Ex. A at 15.)<br>The Purchase Agreement also does not include the phrase "machinery, equipment, office furniture, [and other] goods and chattels," as WCWP asserts. It instead states that Wickes purchased "certain assets which include real property, inventory, furniture and fixtures, machinery and equipment, motor vehicles, office equipment and supplies and trade names." (WCWP Ryan Decl. Ex. A at 6.) |

| WCWP Fact and Cited Evidence | Plaintiffs' Response |
|---|---|
| 7. Wickes also retained 26 of PWP Corp.'s employees.<br>(Ryan Decl., ¶ 7, Ex. A at p. 44.) | Disputed.<br>WCWP cites to Schedule E of the Purchase Agreement, but that Schedule does not state the listed employees were retained. The Purchase Agreement states only that Schedule E is a "list of all employees presently employed by Seller …." (WCWP Ryan Decl. Ex. A at 12, 44.) |
| 8. These employees included Marjorie Moore, the office manager and corporate secretary of PWP Corp., and Richard Brinkman, the facility superintendent.<br>(Ryan Decl., ¶ 7, Ex. A at p. 44.) | Disputed.<br>WCWP cites to Schedule E of the Purchase Agreement, but that Schedule does not state the listed employees were retained. The Purchase Agreement states only that Schedule E is a "list of all employees presently employed by Seller …." (WCWP Ryan Decl. Ex. A at 12, 44.) |
| 9. Wickes and PWP Corp. characterized their transaction as a "bulk sale" in the Purchase Agreement, and Wickes agreed to comply with California's Bulk Sales Statutes prior to the closing.<br>(Ryan Decl., ¶ 7, Ex. A at p. 25.) | Undisputed, but immaterial. |
| 10. No stock was transferred to Jackson in exchange for the sale of PWP Corp.'s assets to Wickes.<br>(Ryan Decl., ¶¶ 7 - 8, Exs. A and B.) | Undisputed. |

| WCWP Fact and Cited Evidence | Plaintiffs' Response |
|---|---|
| 11. At the time of the Purchase Agreement, the only other asset that PWP Corp. had, which was not being transferred to Wickes, was an undeveloped parcel of real property located in Bakersfield, California. (Ryan Decl., ¶ 12.) | Disputed. At the time of the Purchase Agreement, PWP Corp. also owned shares of Pacific Wood Preserving of Bakersfield Inc., which were not being transferred to Wickes. (Zuckerman Decl. ¶ 8, Ex. 7 at 32:1-4.) |
| 12. The Purchase Agreement required PWP Corp. to complete an investigation and remediation of the Wickes Site required by the California Regional Water Quality Control Board, Central Valley Region ("Regional Board") resulting from a spill of chemicals. (Ryan Decl., ¶ 7, Ex. A at pp. 26-27.) | Disputed. The Purchase Agreement states that "[c]ompletion of the corrective action required by the State of California shall be the responsibility of the Buyer [i.e. Wickes]." (WCWP Ryan Decl. ¶ 7, Ex. A at p. 27.) It also provides that if completion of the corrective action were to cost more than $100,000, then "Seller [i.e. PWP] shall immediately reimburse Buyer for the full amount of any such overage." *Id.* |
| 13. In 1979, PWP Corp. hired CH2M Hill to do the engineering work and sampling of soils and groundwater at the site. PWP Corp. also hired IT Corporation and other companies to collect and dispose of the contaminated soils. (Brown Decl., ¶¶ 4-5, Ex. A and B.) | Undisputed. |

5

RESPONSE OF PLS. TO STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT BY DEF. WEST COAST WOOD PRESERVING, LLC (2:14-cv-00595-WBS-EFB)

| WCWP Fact and Cited Evidence | Plaintiffs' Response |
|---|---|
| 14. CH2M Hill prepared a report dated May 9, 1979, on behalf of PWP Corp., which was submitted to the Regional Board. (Brown Decl., ¶ 4, Ex. A.) | Undisputed. |
| 15. CH2M Hill and its contractors completed the investigation, clean up and improvements in late summer 1979. (Brown Decl., ¶ 6, Ex. C.) | Undisputed. |
| 16. On November 19, 1979, the Regional Board notified PWP Corp. that the required actions had been satisfactorily completed. (Brown Decl., ¶ 6, Ex. C.) | Undisputed as to the actions required by the Regional Board's March 2, 1978 Cleanup and Abatement Order. (WCWP Brown Decl. ¶ 6, Ex. C.) |
| 17. On September 11, 1980, PWP Corp. filed for dissolution in accordance with California law. (RJN, ¶ 9, Ex. H.) | Disputed. On September 11, 1980, PWP filed a Certificate of Winding Up and Dissolution of Pacific Wood Preserving certifying as of December 1979 "[t]hat said corporation is dissolved." (WCWP RJN ¶ 9, Ex. H.) |
| 18. The dissolution was not complete until sometime in late 1981. (Ryan Decl., ¶ 16.) | Disputed. On September 11, 1980, PWP filed a Certificate of Winding Up and Dissolution of Pacific Wood Preserving certifying as of December 1979 "[t]hat said corporation is dissolved." (WCWP RJN ¶ 9, Ex. H.) |

| WCWP Fact and Cited Evidence | Plaintiffs' Response |
|---|---|
| 19. In October 1978, PWP Corp. had purchased a parcel of property at 5601 District Boulevard, Bakersfield, California for $250,000. (Ryan Decl., ¶¶ 12 – 13; RJN, ¶¶ 10-11, Exs. I & J.) | Undisputed as to the fact of purchase, but WCWP's evidence does not state the purchase price.  (*See* WCWP RJN ¶ 10, Ex. I.) |
| 20. PWP Corp. financed $177,500 of this amount with a mortgage secured by a deed of trust from the seller, Tenneco Realty Development Corporation ("Tenneco"). (Ryan Decl., ¶ 14; RJN, ¶ 11, Ex. J.) | Undisputed that PWP Corp. financed $177,500 of the purchase price, but WCWP's evidence does not state the purchase price.  (*See* WCWP RJN ¶ 10, Ex. I.) |
| 21. On September 19, 1980, Tenneco reconveyed its deed of trust on the Bakersfield property back to PWP Corp. (RJN, ¶ 12, Ex. K.) | Undisputed, except that Tenneco West, Inc. filed the reconveyance, not Tenneco Realty Development Corporation.  (WCWP RJN ¶ 12, Ex. K.) |
| 22. The "Full Reconveyance" that Tenneco filed with the Kern County Recorder's Office states that the debt secured by the deed of trust had been fully paid. (RJN, ¶ 12, Ex. K.) | Undisputed, except that Tenneco West, Inc. filed the reconveyance, not Tenneco Realty Development Corporation.  (WCWP RJN ¶ 12, Ex. K.) |
| 23. Pacific Wood Preserving of Bakersfield, Inc. was incorporated under Nevada law on October 27, 1978. (RJN, ¶ 1, Ex. A.) | Undisputed that the Articles of Incorporation were filed on October 27, 1978.  The Articles of Incorporation were signed on October 20, 1978.  (WCWP RJN ¶ 1, Ex. A.) |

| WCWP Fact and Cited Evidence | Plaintiffs' Response |
|---|---|
| 24. In 1979, Pacific Wood Preserving of Bakersfield, Inc. began operating a wood preserving and treatment plant at 5601 District Boulevard, Bakersfield. (Ryan Decl., ¶ 20.) | Undisputed. |
| 25. On September 19, 1980, Pacific Wood Preserving of Bakersfield, Inc. executed a "Short Form Deed of Trust and Assignment of Rents" in favor of Lloyds Bank California to secure a loan in the amount of $200,000. (RJN, ¶ 13, Ex. L.) | Undisputed. |
| 26. Those monies were used by Pacific Wood Preserving of Bakersfield, Inc. to purchase the property from PWP Corp., as the final payment for the property was due and owing and PWP Corp. no longer had any funds to pay it. (Ryan Decl., ¶ 24.) | Disputed. The grant deed for the property from PWP Corp. to Pacific Wood Preserving of Bakersfield, Inc. was not recorded until September 21, 1981, over a year after the deed of trust was executed. (WCWP RJN ¶ 14, Ex. M.) Only one final payment out of three equal annual payments remained on the Bakersfield property, and the original balance on the deed of trust was $177,500. (WCWP Mot. at 9:2-7; WCWP RJN ¶ 11, Ex. J.) Therefore, the entirety of the $200,000 loan could not have been used for the final payment. |

| WCWP Fact and Cited Evidence | Plaintiffs' Response |
|---|---|
| 27. On September 21, 1981, PWP Corp. filed a "Grant Deed (Corporation)" with the Kern County Recorder's office granting the property at 5601 District Boulevard, Bakersfield, California to Pacific Wood Preserving of Bakersfield, Inc.<br>(RJN, ¶ 14, Ex. M.) | Undisputed. |
| 28. After Wickes took over PWP Corp.'s operations in Elmira, California, several documented chemical spills at the Wickes Site took place resulting in enforcement action by the Regional Board and DTSC's predecessor. For example, on November 7, 1980, a large spill of toxic chemicals occurred at the Wickes Site.<br>(Brown Decl., ¶ 10, Ex. G.) | Undisputed that chemical spills occurred after Wickes took over PWP's Corp. operations in Elmira, California.<br><br>Disputed that chemical spills after Wickes took over PWP Corp.'s operations in Elmira, California were the sole reasons for enforcement action by the Regional Board and DTSC's predecessor. Other contamination that preceded the November 7, 1980 spill is also referenced in the enforcement documents. (Administrative Record ("AR") 11, 14.) |
| 29. The Regional Board issued cleanup and abatement orders on June 7, 1982 and October 4, 1982.<br>(Brown Decl., ¶¶ 10 - 11, Exs. G and H.) | Undisputed. |

9
RESPONSE OF PLS. TO STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEF. WEST COAST WOOD PRESERVING, LLC (2:14-cv-00595-WBS-EFB)

| WCWP Fact and Cited Evidence | Plaintiffs' Response |
|---|---|
| 30. On September 9, 1983, Wickes proposed a Remedial Action Plan ("RAP") for the Wickes Site that required it to, inter alia, construct a groundwater "treatment plant utilizing an ion-exchange system," to construct a subsurface drainage system, to remove soil in the truck loading pad area, and to cap the drying pad area with asphalt, instead of removing contaminated soils. (Brown Decl., ¶ 13, Ex. J at pp. 57-58.) | Undisputed. |
| 31. The Regional Board, with the concurrence of DTSC's predecessor, conceptually approved the RAP on September 19, 1983. (Brown Decl., ¶ 15, Ex. L.) | Disputed. The Regional Board, with the concurrence of DTSC's predecessor, conceptually approved the stormwater management and cleanup aspects of the plan, while requiring additional submittals on other issues. (WCWP Brown Decl., ¶ 15, Ex. L.) |
| 32. In February 1984, Wickes, DTSC, and the Regional Board entered into a Settlement Agreement and Schedule of Compliance regarding Wickes' disposal of hazardous substances at the Site. (Brown Decl., ¶ 12, Ex. I.) | Undisputed. |

| WCWP Fact and Cited Evidence | Plaintiffs' Response |
|---|---|
| 33. Pursuant to this settlement agreement, the State formally approved the 1983 RAP. (Brown Decl., ¶ 12, Ex. I at p. 50.) | Disputed. Under the settlement agreement, the Regional Board and DHS approved "the storm water management, groundwater treatment, and soil removal and containment elements of the plan." (WCWP Brown Decl. ¶ 12, Ex. I at 50.) Other elements of the 1983 RAP were modified, not approved, or subject to later amendment. (*Id.*; *see also* AR 18, 30.) |
| 34. The settlement stated that the goals of the 1983 RAP included the elimination of all groundwater contamination (both on- and off-site) in five to ten years. (Brown Decl., ¶ 12, Ex. I at p. 51.) | Undisputed. |
| 35. Wickes commenced the physical on-site construction of work called for by the 1983 RAP in the fall of 1983, including but not limited to the asphalt paving of the drying pad area. (Brown Decl., ¶¶ 16, 17, Ex. M at p. 97 and Ex. N at p. 109.) | Undisputed. |
| 36. Wickes also constructed the groundwater extraction and ion exchange treatment system, which began operating in April 1984. (Brown Decl., ¶ 16, Ex. M at p. 98.) | Undisputed. |

| WCWP Fact and Cited Evidence | Plaintiffs' Response |
|---|---|
| 37. In November 1986, Wickes purchased the Collins & Aikman Corporation ("C&A") for approximately $1.16 billion. (Brown Decl., ¶ 18, Ex. O.) | Undisputed, but immaterial. Collins & Aikman Corporation is not an entity that performed work at the Site, until Collins & Aikman Group, Inc. merged into Collins & Aikman Corporation, which was renamed Collins & Aikman Products Co. (*See, e.g.*, AR 493, 2230; DTSC Request for Judicial Notice ¶ 5, Ex. 6 at 49-50.) |
| 38. On February 5, 1992, DTSC and C&A entered into an Enforceable Agreement requiring C&A to propose a new RAP for the Wickes Site. (Brown Decl., ¶ 20, Ex. Q.) | Undisputed, except that the Enforceable Agreement was with Collins & Aikman Group, Inc. f/k/a Wickes Companies, Inc., not Collins & Aikman Corporation. (AR 412.) |
| 39. In May 1993, as part of its requirement for approval of this new RAP, the State required C&A to add a preliminary nonbinding allocation of responsibility to the new RAP with regard to the costs of investigating and remediating the Elmira site, assigning 100% of the responsibility to C&A as successor in interest to Wickes, in turn as successor in interest to PWP Corp. (Brown Decl., ¶ 21, Ex. R at p. 147.) | Disputed. The RAP includes different text regarding the preliminary nonbinding allocation of responsibility. (AR 510.) WCWP's cited evidence is a DTSC internal memorandum. (WCWP Brown Decl. ¶ 21, Ex. R at 142.) In addition, this fact is immaterial. The allocation of responsibility is by its terms preliminary and nonbinding. (AR 510.) |
| 40. On February 25, 1994, C&A proposed the new RAP which concentrated on soil contamination in the northern portion of the | Undisputed, except that Collins & Aikman Group, Inc., not Collins & Aikman Corporation, proposed the RAP. (WCWP |

| WCWP Fact and Cited Evidence | Plaintiffs' Response |
|---|---|
| Site.<br><br>(Brown Decl., ¶ 16, Ex. M.) | Brown Decl. ¶ 16, Ex. M.) |
| 41. DTSC's official and published Executive Summary of the 1994 RAP described it as a "Final Remedial Action Plan."<br><br>(Brown Decl., ¶ 16, Ex. M, pp. 87-94.) | Undisputed. |
| 42. The 1994 RAP called for, inter alia, the grading of soil and the installation of an asphalt cap in all areas of the Wickes Site that were not previously sealed, and the recording of a deed restriction.<br><br>(Brown Decl., ¶ 16, Ex. M at p. 92.) | Undisputed. |
| 43. The 1994 RAP also included a Preliminary Nonbinding Allocation of Financial Responsibility ("NBAR") stating that C&A was "[t]he responsible party."<br><br>(Brown Decl., ¶ 16, Ex. M at p. 93.) | Undisputed, except that the statement refers to Collins & Aikman Group, Inc., not Collins & Aikman Corporation.  (WCWP Brown Decl. ¶ 16, Ex. M at 93.)  But this fact is immaterial. The Preliminary Nonbinding Allocation of Financial Responsibility is by its terms preliminary and nonbinding.  *Id.* |
| 44. In a "Final RAP Checklist" from February 1994, DTSC wrote that the response activities associated with the 1994 RAP would "result in a permanent solution to the contamination problem (e.g. total removal)."<br><br>(Brown Decl., ¶ 22, Ex. S at p. 149.) | Undisputed. |

13

| WCWP Fact and Cited Evidence | Plaintiffs' Response |
|---|---|
| 45. In March 1996, DTSC certified implementation of the 1994 RAP at the Wickes Site. (Brown Decl., ¶ 23, Ex. T.) | Undisputed. |
| 46. In this "Remedial Action Certification Form" (the "1996 RAC") which was signed by the DTSC Project Manager, Unit Chief, and Branch Chief, and published to all the interested parties, DTSC confirmed that:<br>• Two Remedial Actions Plans (RAPs) have been completed to address the contamination";<br>• The "Response Action Taken on Site" was a "Final Remedial Action";<br>• The remedial action taken at the site between 1983 and 1996 consisted of soil excavation and off-site disposal, an asphalt cap, groundwater extraction and treatment in an on-site chemical treatment plant, and a deed restriction;<br>• C&A spent approximately $5.5 million in response costs associated with the 1994 RAP; and<br>• "DTSC has determined that all appropriate removal/remedial actions have been completed and that all acceptable | Undisputed. |

| WCWP Fact and Cited Evidence | Plaintiffs' Response |
|---|---|
| engineering practices were implemented." (Brown Decl., ¶ 23, Ex. T at pp. 158, 159, 162, and 163.) | |
| 47. In 2009, DTSC commissioned a Removal Action Workplan ("RAW"), which was finalized in July 2010. This RAW called for soil excavation, off-site disposal, and groundwater monitoring. The RAW does not cite to any post-1982 spills or leaks of hazardous substances at the Wickes Site. (Brown Decl., ¶ 25, Ex. V, at pp. 185, 186, 202, 204, 205, and 207.) | Disputed. DTSC issued a start work order for the preparation of the RAW in October 2008, not 2009. (AR 4972.) The selected alternative (Alternative 3 in the RAW) also called for dust monitoring, confirmation sampling and analysis, treatment system demolition and disposal, preparation of a removal action report, and well abandonment. (AR 6238, 6242.) |
| 48. The July 2010 RAW was implemented by DTSC in 2011-2012. (Brown Decl., ¶ 26, Ex. W.) | Disputed. The RAW was implemented in 2011 and completed in November 2011. (AR 10525.) |
| 49. In its Complaint, DTSC alleges that it has spent in excess of $2 million since 2007 to remediate the Wickes Site. (Complaint, ECF No. 1 at ¶ 31, p. 8.) | Disputed. Plaintiffs allege that their unpaid response costs related to the Site from November 2005 through September 2013 total $2,202,176.92, exclusive of interest. (First Am. Compl. 9:3-7, ¶¶ 35-36, filed Dec. 11, 2014 (Docket No. 77).) |
| 50. With the exception of Jackson, PWP Corp. and Pacific Wood Preserving of Bakersfield, Inc. had different shareholders and board members. | Undisputed. |

15
RESPONSE OF PLS. TO STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEF. WEST COAST WOOD PRESERVING, LLC (2:14-cv-00595-WBS-EFB)

| WCWP Fact and Cited Evidence | Plaintiffs' Response |
|---|---|
| (Ryan Decl., ¶ 23; RJN, ¶¶ 1 and 7, Exs. A and F.) | |
| 51. In September 2010, for the first time, DTSC sent a letter to WCWP alleging that it was a potentially responsible party ("PRP") for the cleanup of hazardous substances at the Wickes Site as the successor to PWP Corp. (Brown Decl., ¶ 27, Ex. X.) | Undisputed, except that the letter was to Pacific Wood Preserving of Bakersfield Inc., because the corporation had not been converted to WCWP. (WCWP Brown Decl. ¶ 27, Ex. X.) |
| 52. WCWP denied any such responsibility. (Brown Decl., ¶ 28, Ex. Y.) | Undisputed, except that the letter was from counsel for Pacific Wood Preserving of Bakersfield Inc., because the corporation had not been converted to WCWP. (WCWP Brown Decl., ¶ 28, Ex. Y.) |
| 53. DTSC's website identifies C&A as the responsible party at the Wickes Site. (Brown Decl., ¶ 29, Ex. Z.) | Undisputed, except that the reference is to "Collins & Aikman Product[s] Company," not Collins & Aikman Corporation. (WCWP Brown Decl. ¶ 29, Ex. Z.) |
| 54. WCWP, both in its official pronouncements and industry reporting, tried to ensure that its operations were not confused with the Wickes' operations in Elmira. (Ryan Decl., ¶ 25, Ex. C.) | Disputed. PWP-B's website and brochures as part of The Pacific Wood Preserving Companies stated that the companies started in 1972 in Elmira. (*E.g.*, MacNicholl Decl. ¶¶ 9-10, Ex. 5 at 26, Ex. 6 at 29; Zuckerman Decl. ¶ 10, Ex. 9 at 45-46.) In addition, PWP-B's website said that the proceeds of PWP's sale of the Elmira facility to Wickes were used to start PWP-B's business in |

| WCWP Fact and Cited Evidence | Plaintiffs' Response |
|---|---|
| | Bakersfield in 1979. (MacNicholl Decl. ¶ 10, Ex. 6 at 29.) |
| 55. Pacific Wood Preserving of Bakersfield, Inc. emphasized in advertisements that it was a "brand new" wood treating company. (Ryan Decl., ¶ 25, Ex. C.) | Disputed. PWP-B's website and brochures as part of The Pacific Wood Preserving Companies stated that the companies started in 1972 in Elmira. (*E.g.*, MacNicholl Decl. ¶¶ 9-10, Ex. 5 at 26, Ex. 6 at 29; Zuckerman Decl. ¶ 10, Ex. 9 at 45-46.) In addition, PWP-B's website said that the proceeds of PWP's sale of the Elmira facility to Wickes were used to start PWP-B's business in Bakersfield in 1979. (MacNicholl Decl. ¶ 10, Ex. 6 at 29.) |
| 56. In November 2013, Pacific Wood Preserving of Bakersfield, Inc. converted from a corporation into a limited liability company entitled West Coast Wood Preserving, LLC ("WCWP"). (RJN, ¶ 4, Ex. E.) | Undisputed. |
| 57. There have been no wood preserving or treatment operations at the Wickes Site since Wickes closed the site in August 1982. (Brown Decl., Exs. V, p. 185, and M, pp. 87 and 101.) | Undisputed. |

17

Dated: February 20, 2015

Respectfully submitted,
KAMALA D. HARRIS
Attorney General of California
SARAH E. MORRISON
Supervising Deputy Attorney General

*/s/ Thomas G. Heller*

LAURA J. ZUCKERMAN
THOMAS G. HELLER
Deputy Attorneys General
*Attorneys for Plaintiffs California Department of Toxic Substances Control and Toxic Substances Control Account*

18

RESPONSE OF PLS. TO STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEF. WEST COAST WOOD PRESERVING, LLC (2:14-cv-00595-WBS-EFB)