Exhibit 12



# DEPARTMENT OF TOXIC SUBSTANCES CONTROL

10151 CROYDON WAY, SUITE 3
SACRAMENTO, CA 95827-2106
**(916) 855-7700**

January 17, 1992

Mr. Donald W. Vagstad
General Counsel - Corporate Division
Wickes Companies, Incorporated
3340 Ocean Park Blvd., Suite 2000
Santa Monica, California 90405

Dear Mr. Vagstad:

WICKES FOREST INDUSTRIES ELMIRA SITE (SITE)

This letter is to inform you of a modification of the Department of Toxic Substances Control's (Department) position regarding the scope of the Remedial Action Plan (RAP) that Wickes Companies, Incorporated (Wickes) must prepare for the Site.

The Department's previous position as stated in our letters of August 29, 1991 and October 18, 1991, was that the RAP must address and re-evaluate the remedial measures previously undertaken by Wickes at the southern portion of the Site pursuant to the 1984 Settlement Agreement (Agreement) between Wickes, the California Regional Water Quality Control Board (CRWQCB), and the Department. The Department's current position is that the required RAP need not re-evaluate those remedial measures (soil cap, containment building, and groundwater extraction and treatment system) that were specifically identified in the Agreement and RAP document referred to therein and were implemented in accordance with the Agreement.

However, all remaining contamination issues at the Site must be addressed through the preparation of a RAP, meeting the requirement of Section 25356.1 of the Health and Safety Code (H&SC). These issues include:

1. Onsite and offsite soil and groundwater contamination at the northern portion of the Site

2. Ex-situ deposits of contaminated soils (drilling and excavation wastes)

3. The potential direct contact risk to human health posed by the presence of exposed soils within the containment building.

The above contamination issues constitute "new facts" within the meaning of Section XV of the Agreement. Accordingly, pursuant to Section XV, the Department finds that a RAP must be prepared to identify and implement additional corrective measures to achieve the goals of elimination of contamination as described in Section X of the Agreement.



Mr. Donald W. Vagstad
January 17, 1992
Page 2


    At our December 20, 1991 meeting, it was suggested by
Wickes' consultants that the extent of contamination at the
northern portion of the Site was known to all parties at the time
of the 1984 Agreement, and that the presence of this
contamination does not present a "new fact".  Our review of file
materials indicates that while significant groundwater
contamination had been detected in former monitoring well M-2
(Dewante and Stowell, 6/29/81), Wickes' consultants had
subsequently discounted that information because that well had
apparent construction defects (Woodward Clyde, 4/28/83).  The
more recent and extensive investigations at the northern portion
of the Site, begun in 1989 and continued through 1991, have
confirmed the magnitude and defined the extent of the groundwater
problem and revealed significant near-surface soil contamination.
Thus, the Department maintains its position that "new facts" have
been discovered with respect to both groundwater and soil
contamination.

    Also while examining file materials, Department staff
reviewed several letters and memorandums prepared by CRWQCB staff
in the late 1970's and early 1980's which described spillages of
processing solutions and waste water into the ditches running
along "A" Street and Holdener Road.  We have not been able to
determine if the contamination resulting from these spills was
adequately cleaned up in the past.  If not, this issue must be
addressed in the RAP.

    The Department's position regarding compliance with the
California Environmental Quality Act (CEQA) remains as stated in
our letters of August 29, 1991 and October 18, 1991.  The
Department is aware of Wickes' position that CEQA procedures are
not applicable when a CEQA "categorical exemption" pertains to
the project to be implemented.  Wickes' position relies upon the
authority of Centinela v. City of Inglewood (1990) 225 Cal.App.3d
1586, 1601, a case cited in your letter of September 10, 1991.
The Centinela case, on its facts, is substantially different from
the situation at the Site.  The Centinela case addressed a
situation involving "public usage and traffic".  The appellate
court upheld a "categorical exemption" on the limited basis that
such "traffic and public health and safety issues" would not
cause any significant environmental effects.  (See Centinela at
p. 1601.)  Thus, the Centinela case did not reach the issue
present at the Elmira site of whether hazardous wastes present
significant or insignificant environmental effects.  The
Department concludes that the Centinela case is not applicable
with regard to the facts at the Site.

Mr. Donald W. Vagstad
January 17, 1992
**Page 3**


    With regard to the granting of a CEQA categorical exemption, the Department believes that the pertinent appellate case is <u>McQueen</u> v. <u>Midpeninsula Open Space District</u> (1988) 202 Cal.App.3d 1136, cited in the 1991 Edition of <u>Guide to the California Environmental Quality Act</u> by Michael H. Remy, et al.  The <u>McQueen</u> case held that the presence of hazardous wastes on the land constituted "unusual circumstances" creating the potential for significant adverse environmental impacts, making use of any of the categorical exemptions <u>improper</u>.  (See Remy, at p. 58.)  In other words, the <u>McQueen</u> case holds that the presence of hazardous wastes at a project such as the Site should be deemed "unusual circumstances" for CEQA purposes so that any CEQA categorical exemptions are not available.

    In any event, the Department will require remedial work at the Site.  The categorical exemption set forth in Section 15308, Public Resources Code (e.g., Categorical Exemption No. 8) does not extend to "construction" projects.  Remedial work required by the Department will be considered "construction" within the meaning of this categorical exemption.  Thus, this CEQA exemption does not apply to corrective measures at the Site.

    Pursuant to Section XV of the Agreement, Wickes has forty-five (45) days to resolve any disagreement with the Department's position, as detailed in this letter.  The above time period will commence upon Wickes' receipt of a facsimile copy of this letter. In view of our scheduled meeting on February 5, 1992, we request that you provide a written response to this letter by January 29, 1992.  That response should identify and explain any differences with the Department's position.

    Please call me at (916) 855-7885 or Mr. Harry Sneh at (916) 855-7895 if you have any questions.

                Sincerely,

                James L. Tjosvold, Chief
                Sacramento Responsible Party Unit
                Site Mitigation Branch
                Region 1

Certified No. P 763 817 172

cc:  See next page.

Mr. Donald W. Vagstad
January 17, 1992
Page 4


      Mr. Bruce Edelson, P.E.
      Wickes Companies, Inc.
      3340 Ocean Park Blvd., Suite 2000
      Santa Monica, California 90405

      Mr. Wayne Pierson
      Regional Water Quality Control Board
      Central Valley Region
      3443 Routier Road, Suite A
      Sacramento, California 95827

Via Fax January 17, 1992:

      Mr. Donald W. Vagstad
      Mr. Bruce Edelson, P.E.

bcc: Mr. Jim Cutright
      Legal Office
      Department of Toxic Substances Control

      Mr. David Henderson
      Legal Office
      Department of Toxic Substances Control