Exhibit 5

8500240278

FILED
2:01 PM
JAN 24
JAN 24 1985
Michael Harkins
SECRETARY OF STATE

## AGREEMENT OF MERGER

AGREEMENT OF MERGER dated January 18, 1985, made by and between The Wickes Corporation ("TWC" or "Surviving Corporation"), Wickes Companies, Inc. ("WCI"), and Gamble-Skogmo, Inc. ("GSK"), such three corporations together being herein sometimes referred to as the "Constituent Corporations").

### WITNESSETH:

WHEREAS, each of the Constituent Corporations is a corporation duly organized and existing under the laws of the State of Delaware; and

WHEREAS, TWC has authorized capitalization consisting of one thousand (1,000) shares of Common Stock, $2.50 par value ("TWC Common Stock"), all of which are issued and outstanding and held by WCI, and two hundred twenty six thousand (226,000) shares of Preferred Stock, $2.50 par value, of which 225,000 are designated $8.75 Cumulative Preferred Stock, Series A ("TWC Preferred Stock") and are issued and outstanding; and

WHEREAS, WCI has an authorized capitalization consisting of thirty-five million (35,000,0000) shares of Common Stock, $2.50 par value ("WCI Common Stock"), of which 14,385,439 shares are issued and outstanding, and five million (5,000,0000) shares of Preferred Stock, none of which is issued and outstanding; and

WHEREAS, GSK has an authorized capitalization consisting of four million (4,000,000) shares of Common Stock, $5.00 par value, all of which are issued and outstanding and held by WCI, two hundred ten thousand (210,000) shares of Cumulative Preferred Stock $40 par value, ("GSK $1.75 Preferred Stock") of which 85,999 shares are issued and outstanding; and five hundred thirty one thousand (531,000) shares of $1.60 Preferred Stock, $5.00 par value, ("GSK $1.60 Preferred Stock") of which 91,989 shares are issued and outstanding; and

WHEREAS, pursuant to the Order Confirming Plan; Fixing Deadline for Filing of Administrative Claims; Establishing Guidelines for Transactions by Debtors Prior to Effective Date of the United States Bankruptcy Court, Central District of California entered September 21, 1984 (the "Order") and the Debtors' Modified Joint Plan of Reorganization of the Constituent Corporations dated June 27, 1984 (the "Joint Plan of Reorganization"), WCI and GSK are to be merged into TWC, effective January 26, 1985 (the "Effective Date");

00013

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, it is agreed that, in accordance with the applicable statutes of the State of Delaware, the Order and the Joint Plan of Reorganization, WCI and GSK shall be and hereby are, at the Effective Date, merged into TWC which shall be the Surviving Corporation, and that the terms and conditions of such merger, the mode of carrying it into effect, the manner of converting shares and the changes in the Certificate of Incorporation of the Surviving Corporation as are desired to be effected by the merger shall be as follows:

### ARTICLE I

#### MERGER

On the Effective Date, WCI and GSK shall be merged into TWC (the "Merger"), the separate existence of WCI and GSK shall cease and TWC shall continue in existence and the Merger shall in all respects have the effect provided for in Section 259 of the General Corporation Law of the State of Delaware.

Prior to and from and after the Effective Date, the Constituent Corporations shall take all such action as shall be necessary or appropriate in order to effectuate the Merger. In case at any time after the Effective Date the Surviving Corporation shall consider or be advised that any further assignments, conveyances or assurances in law are necessary or desirable to carry out the provisions hereof, the proper officers and directors of the Constituent Corporations shall execute and deliver any and all proper deeds, assignments and assurances in law, and do all things necessary or proper to carry out the provisions hereof.

### ARTICLE II

#### TERMS OF TRANSACTION

Upon the Effective Date:

(a) Each share of TWC Common Stock issued and outstanding immediately prior to the Merger shall be cancelled and no shares of the Surviving Corporation shall be issued in exchange therefor; each share of TWC Preferred Stock issued and outstanding immediately prior to the Merger shall be converted into and become 7.45912 shares of Common Stock, $.10 par value, of the Surviving Corporation (the "New Common Stock").

(b) Each share of WCI Common Stock issued and outstanding immediately prior to the Merger shall be converted into and become one share of New Common Stock and a Warrant to

-2-

00014

purchase .2 of one share of New Common Stock, such Warrants to have the terms set forth and described in the Joint Plan of Reorganization.

(c)  Each share of GSK $1.75 Preferred Stock issued and outstanding immediately prior to the Merger shall be converted into and become 4.3212595 shares of the New Common Stock; each share of GSK $1.60 Preferred Stock issued and outstanding immediately prior to the Merger shall be converted into and become 3.7792344 shares of the New Common Stock; and each share of GSK Common Stock issued and outstanding immediately prior to the Merger shall be cancelled and no shares of the Surviving Corporation shall be issued therefor.

## ARTICLE III

### CERTIFICATE OF INCORPORATION AND BYLAWS

(a)  Upon the Effective Date, pursuant to the Order, the Certificate of Incorporation of TWC shall be restated and amended to read as set forth in Exhibit "A" attached hereto and incorporated herein by this reference.

As so restated and amended, the Restated Certificate of Incorporation of TWC shall be the Restated Certificate of Incorporation of the Surviving Corporation and the name of the Surviving Corporation as set forth therein shall be "Wickes Companies, Inc."

(b)  The By-Laws of TWC as restated and amended pursuant to the Order shall, upon the Effective Date of the Merger, be the By-Laws of the Surviving Corporation.

## ARTICLE IV

### DIRECTORS AND OFFICERS

The persons who are directors and officers of WCI immediately before the Merger shall be the directors and officers of the Surviving Corporation and shall hold office as provided in the Certificate of Incorporation and Bylaws of the Surviving Corporation.

## ARTICLE V

### CERTIFICATES

(a)  After the Effective Date, each holder of an outstanding certificate or certificates theretofore representing shares of WCI Common Stock, GSK $1.75 Preferred Stock, GSK $1.60 Preferred Stock or TWC Preferred Stock may, but shall not be required to, surrender the same to the Surviving Corporation for cancellation or transfer, and each such holder or transferee will be entitled to receive certificates

00015            -3-

representing the number of shares of the New Common Stock and
Warrants, if any, of the Surviving Corporation as hereinbefore
provided. Until so surrendered or presented for transfer,
each outstanding certificate which prior to the Effective
Date represented WCI Common Stock, GSK $1.75 Preferred Stock,
GSK $1.60 Preferred Stock or TWC Preferred Stock shall be
deemed and treated for all corporate purposes to represent
the ownership of the shares of the New Common Stock and, in
the case of certificates which prior to the effective date
represented WCI Common Stock, Warrants to purchase shares of
the New Common Stock; provided, however, that the respective
WCI, GSK and TWC shares must be exchanged in order for the
holder to vote or receive payment of any dividends or other
distributions that may subsequently be declared by the
Surviving Corporation or to exercise the Warrants. If any
certificate for such New Common Stock or Warrants is to be
issued in a name other than that in which the certificate
surrendered for exchange is registered, it shall be a condi-
tion of such exchange that the certificate so surrendered
shall be properly endorsed or otherwise in proper form for
transfer and that the person requesting such exchange shall
pay to the Surviving Corporation or its transfer agent any
transfer or other taxes required by reason of the issuance of
certificates for such New Common Stock or Warrants in a name
other than that of the registered holder of the certificate
surrendered, or establish to the satisfaction of the Surviving
Corporation or its transfer agent that such taxes have been
paid or are not applicable.

(b)   Notwithstanding anything herein to the contrary,
fractional shares of New Common Stock and Warrants exercisable
for fractional shares of New Common Stock shall not be issued
or distributed pursuant to this Agreement of Merger to any
class of shareholders exchanging WCI Common Stock, GSK $1.75
Preferred Stock, GSK $1.60 Preferred Stock or TWC Preferred
Stock, respectively.

### ARTICLE VI

#### EFFECTIVE DATE

The Effective Date of the Merger shall be, and this
Agreement of Merger shall become effective on, January 26,
1985, at 11:59 p.m. Eastern Standard Time.

### ARTICLE VII

#### MISCELLANEOUS

This Agreement of Merger shall be binding upon the
heirs, successors and assigns of the parties hereto. This
Agreement of Merger may be executed in counterparts, each of
which when so executed shall be deemed to be an original, and
such counterparts shall together constitute but one and the
same instrument.

00016          -4-

IN WITNESS WHEREOF, TWC, WCI and GSK, have each caused this Agreement of Merger to be executed by its President and attested by its Secretary and hereby certify that such action is being taken in accordance with the Order Authorizing Filing of Agreement of Merger and Restated Certificate of Incorporation and Adoption of Amended Bylaws entered January 22, 1985 of the United States Bankruptcy Court, Central District of California, pursuant to the authority of Section 303 of the Delaware General Corporation Law.

THE WICKES CORPORATION

By: _____
     Sanford C. Sigoloff, President

ATTEST:

_____
Alvin G. Segel, Secretary

WICKES COMPANIES, INC.

By: _____
     Sanford C. Sigoloff, President

ATTEST:

_____
Alvin G. Segel, Secretary

GAMBLE-SKOGMO, INC.

By: _____
     Sanford C. Sigoloff, President

ATTEST:

_____
Alvin G. Segel, Secretary

55-260-1284.7                    -5-

00817

RESTATED CERTIFICATE OF INCORPORATION

OF

THE WICKES CORPORATION

The Wickes Corporation, a corporation originally incorporated on March 17, 1971 under the name Five Fifteen, Inc. and existing under and by virtue of the General Corporation Law of the State of Delaware DOES HEREBY CERTIFY:

1.  That the Certificate of Incorporation of this corporation be amended and restated to read in full as follows:

"RESTATED CERTIFICATE OF INCORPORATION

OF

WICKES COMPANIES, INC.

FIRST:   The name of the Corporation is Wickes Companies, Inc. (hereinafter sometimes called the "Corporation").

SECOND:   The address of the registered office of the Corporation in the State of Delaware is Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle.  The name of the registered agent at that address is The Corporation Trust Company.

THIRD:   The purpose of the Corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of Delaware as set forth in Title 8 of the Delaware Code (the "GCL").

FOURTH:   The total number of shares of all classes of stock which the Corporation shall have authority to issue is One Hundred Eighty Million (180,000,000), consisting of:

(a)  Thirty Million (30,000,000) shares of Preferred Stock of the par value of ten cents ($.10) each (hereinafter referred to as "Preferred Stock"); and

(b)  One Hundred Fifty Million (150,000,000) shares of Common Stock of the par value of ten cents ($.10) each (hereinafter referred to as "Common Stock").

A.   PREFERRED STOCK

Shares of Preferred Stock may be issued from time to

EXHIBIT A

00018

time in one or more series as may from time to time be
determined by the Board of Directors, each of said series to
be distinctly designated.  All shares of any one series of
Preferred Stock shall be alike in every particular, except
that there may be different dates from which dividends, if
any, thereon shall be cumulative, if made cumulative.
The voting powers and the designations, preferences and
relative, participating, optional or other special rights of
each such series, and the qualifications, limitations or
restrictions thereof, if any, may differ from those of any
and all other series at any time outstanding; and there is
hereby expressly vested in the Board of Directors of the
Corporation the authority to issue one or more series of
Preferred Stock and to fix in the resolution or resolutions
providing for the issue of such stock adopted by the Board of
Directors of the Corporation the voting powers and the
designations, preferences and relative, participating,
optional or other special rights, and the qualifications,
limitations or restrictions of such series, including, but
without limiting the generality of the foregoing, the
following:

(1)  The distinctive designation of, and the number of
shares of Preferred Stock which shall constitute, such
series, and such number may be increased (except where
otherwise provided by the Board of Directors) or decreased
(but not below the number of shares thereof then outstanding)
from time to time by like action of the Board of Directors;

(2)  The rate and times at which, and the terms and
conditions upon which, dividends, if any, on Preferred Stock
of such series shall be paid, the extent of the preference
or relation, if any, of such dividends to the dividends
payable on any other class or classes, or series of the same
or other classes of stock and whether such dividends shall
be cumulative or non-cumulative;

(3)  The right, if any, of the holders of Preferred
Stock of such series to convert the same into, or exchange
the same for, shares of any other class or classes or of any
series of the same or any other class or classes of stock of
the Corporation and the terms and conditions of such conver-
sion or exchange;

(4)  Whether or not Preferred Stock of such series
shall be subject to redemption, and the redemption price or
prices and the time or times at which, and the terms and
conditions upon which, Preferred Stock of such series may be
redeemed;

00019                     -2-

(5)  The rights, if any, of the holders of Preferred Stock of such series upon the voluntary or involuntary liquidation, merger, consolidation, distribution or sale of assets, dissolution or winding-up of the Corporation;

(6)  The terms of the sinking fund or redemption or purchase account, if any, to be provided for the Preferred Stock of such series; and

(7)  The extent of the voting powers, of the holders of such series of Preferred Stock which may, without limiting the generality of the foregoing, include the right, voting as a series by itself or together with other series of Preferred Stock or all series of Preferred Stock as a class, to elect one or more directors of the Corporation if there shall have been a default in the payment of dividends on any one or more series of Preferred Stock or under such other circumstances and on such conditions as the Board of Directors may determine; provided, however, that any resolution adopted by the Board of Directors establishing a series of Preferred Stock shall contain provisions to the effect that in the event of a continuing default in the payment of dividends which has not been cured by such payment on the terms and subject to the conditions set forth in such resolution, the holders of each series of Preferred Stock as to which there is such a continuing default shall have the right, as a class, to elect not less than one director as provided in such resolution until such default has been cured by the payment of any dividends so in arrears.

B.  **COMMON STOCK**

(1)  After the requirements with respect to preferential dividends on the Preferred Stock (fixed in accordance with the provisions of Paragraph A of this Article FOURTH), if any, shall have been met and after the Corporation shall have complied with all the requirements (fixed in accordance with the provisions of Paragraph A of this Article FOURTH), if any, with respect to the setting aside of sums as sinking funds or redemption or purchase accounts, and subject further to any other conditions which may be fixed in accordance with the provisions of Paragraph A of this Article FOURTH, then, and not otherwise, the holders of Common Stock shall be entitled to receive such dividends as may be declared from time to time by the Board of Directors out of assets of the Corporation legally available therefor.

(2)  After distribution in full of the preferential amount (fixed in accordance with the provisions of Paragraph A of this Article FOURTH), if any, to be distributed to the

-3-

00020

holders of Preferred Stock in the event of voluntary or involuntary liquidation, distribution or sale of assets, dissolution or winding-up, of the Corporation, the holders of the Common Stock shall be entitled to receive all of the remaining assets of the Corporation, tangible and intangible, of whatever kind available for distribution to stockholders, ratably in proportion to the number of shares of Common Stock held by them respectively.

(3)  Except as may otherwise be required by law or by the provisions of such resolution or resolutions as may be adopted respecting Preferred Stock by the Board of Directors pursuant to Paragraph A of this Article FOURTH, each holder of Common Stock shall have one vote in respect of each share of Common Stock held by such holder on all matters voted upon by the stockholders.

C.   OTHER PROVISIONS

(1)  No holder of any of the shares of any class or series of stock or of options, warrants or other rights to purchase shares of any class or series of stock or of other securities of the Corporation shall have any preemptive right to purchase or subscribe for any unissued stock of any class or series or any additional shares of any class or series to be issued by reason of any increase of the author-ized capital stock of the Corporation of any class or series, or bonds, certificates of indebtedness, debentures or other securities convertible into or exchangeable for stock of the Corporation of any class or series, or carrying any right to purchase stock of any class or series, but any such unissued stock, additional authorized issue of shares of any class or series of stock or securities convertible into or exchangeable for stock, or carrying any right to purchase stock, may be issued and disposed of pursuant to resolution of the Board of Directors to such persons, firms, corporations or associations, whether such holders or others, and upon such terms as may be deemed advisable by the Board of Directors in the exercise of its sole discretion.

(2)  The relative powers, preferences and rights of each series of Preferred Stock in relation to the powers, preferences and rights of each other series of Preferred Stock shall, in each case, be as fixed from time to time by the Board of Directors in the resolution or resolutions adopted pursuant to authority granted in Paragraph A of this Article FOURTH and the consent, by class or series vote or otherwise, of the holders of such of the series of Preferred Stock as are from time to time outstanding shall not be required for the issuance by the Board of Directors

00021       -4-

of any other series of Preferred Stock whether or not the powers, preferences and rights of such other series shall be fixed by the Board of Directors as senior to, or on a parity with, the powers, preferences and rights of such outstanding series, or any of them; provided, however, that the Board of Directors may provide in the resolution or resolutions as to any series of Preferred Stock adopted pursuant to Paragraph A of this Article FOURTH that the consent of the holders of a majority (or such greater proportion as shall be fixed therein) of the outstanding shares of such series voting thereon shall be required for the issuance of any or all other series of Preferred Stock.

(3)  Subject to the provisions of subparagraph 2 of this Paragraph C, shares of any series of Preferred Stock may be issued from time to time as the Board of Directors of the Corporation shall determine and on such terms and for such consideration as shall be fixed by the Board of Directors.

(4)  Shares of authorized Common Stock may be issued from time to time as the Board of Directors of the Corporation shall determine and on such terms and for such consideration as shall be fixed by the Board of Directors.

(5)  Subject to the applicable provisions of the GCL, if any, the authorized number of shares of Common Stock and of Preferred Stock may, without a class or series vote, be increased or decreased from time to time by the affirmative vote of the holders of a majority of the stock of the Corporation entitled to vote thereon.

(6)  The Corporation shall not issue any shares of stock of any class or series without voting rights.

FIFTH:    The name and mailing address of the incor-porator is as follows:

| Name | Mailing Address |
|------|-----------------|
| The Wickes Corporation | 515 North Washington Avenue Saginaw, Michigan |

SIXTH:    The following provisions are inserted for the management of the business and the conduct of the affairs of the Corporation, and for further definition, limitation and regulation of the powers of the Corporation and of its directors and stockholders:

A.    The business and affairs of the Corporation shall

-5-

C0622

be managed by or under the direction of the Board of Directors.  In addition to the powers and authority expressly conferred upon them by the GCL or by this Certificate of Incorporation or the By-laws of the Corporation, the directors are hereby empowered to exercise all such powers and do all such acts and things as may be exercised or done by the Corporation.

B.    The directors of the Corporation need not be elected by written ballot unless the By-laws so provide.

C.    Any action required or permitted to be taken by the stockholders of the Corporation must be effected at a duly called annual or special meeting of stockholders of the Corporation and may not be effected by any consent in writing by such stockholders.  Special meetings of stockholders of the Corporation may be called only by the Board of Directors pursuant to a resolution adopted by a majority of the directors then in office.

SEVENTH:  Meetings of stockholders may be held within or without the State of Delaware, as the By-laws may provide. The books of the Corporation may be kept (subject to any provision contained in the statutes) outside the State of Delaware at such place or places as may be designated from time to time by the Board of Directors or in the By-laws of the Corporation.

EIGHTH:    The number of directors shall be as from time to time fixed by, or in the manner provided in, the By-laws of the Corporation.

NINTH:    The Board of Directors is expressly empowered to adopt, amend or repeal By-laws of the Corporation.  Except as hereinafter provided, any adoption, amendment or repeal of By-laws of the Corporation by the Board of Directors shall require the approval of a majority of the directors then in office.  The stockholders shall also have power to adopt, amend or repeal the By-laws of the Corporation.  In addition to any vote of the holders of any class or series of stock of this Corporation required by law or by this Certificate of Incorporation, the affirmative vote of the holders of at least a majority of the voting power of all of the then-outstanding shares of the capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required to adopt, amend or repeal any provision of the By-laws of the Corporation.

TENTH:  A. Except as provided in Paragraph B below, the

-6-

C0023

affirmative vote of the holders of shares of voting stock of the Corporation representing at least a majority of the Non-Affiliated Shares (as hereinafter defined), voting together as a single class, shall be required for the approval or authorization of a Business Combination (as hereinafter defined) with any Dominant Stockholder (as hereinafter defined) or of any series of related transactions, which if taken together, would constitute a Business Combination with any Dominant Stockholder.  Such affirmative vote shall be required notwithstanding any other provision of this Certificate of Incorporation or any provision of law which might otherwise permit a lesser vote, no vote, or a different voting classification and shall be in addition to any vote of the holders of any class or series of voting stock and any other requirements under Delaware law, this Certificate of Incorporation or the Bylaws.

B.   The voting requirement set forth above shall not be applicable if the definitive agreement or other arrangement to effectuate a Business Combination with a Dominant Stockholder is approved by the Continuing Directors (as hereinafter defined).  Such determination shall be made by a majority of the Continuing Directors even if such a majority does not constitute a quorum of the members of the Board of Directors then in office.  In addition, the voting requirement specified above shall not be applicable if the cash or fair market value of other consideration to be received per share by the holders of each class or series of capital stock of the Corporation in a Business Combination with a Dominant Stockholder is not less than the highest per share price (including brokerage commissions and/or soliciting dealers' fees) paid by such Dominant Stockholder in acquiring any shares of such class or series, respectively, within the twenty-four months preceding the date of any such Business Combination.

C.   The provisions of this Article TENTH shall also apply to a Business Combination with any Person (as hereinafter defined) which at any time within twenty-four months preceding the date of any such Business Combination has been a Dominant Stockholder notwithstanding the fact that such Person is no longer a Dominant Stockholder, if, at the time the definitive agreement or other arrangements relating to a Business Combination with such Person were entered into, it was a Dominant Stockholder or if, as of the record date for the determination of stockholders entitled to notice of and to vote on or consent to the Business Combination, such Person is an "Affiliate" (as hereinafter defined) of the Corporation or of a Dominant Stockholder.

-7-

COC24

D.   For all purposes of this Article TENTH:

(1)  The term "Affiliate" shall mean a Person that directly, or indirectly through one or more interme- diaries, controls, or is controlled by, or is under common control with, the Person specified;

(2)  The term "Associate" used to indicate a rela- tionship with any Person, shall mean (i) any corporation or organization (other than the Corporation or a majority-owned subsidiary of the Corporation) of which such Person is an officer or partner or, directly or indirectly, Beneficially Owns ten percent (10%) or more of any class of equity securi- ties, (ii) any trust or other estate in which such Person has a substantial beneficial interest or as to which such Person serves as trustee or in a similar fiduciary capacity, and (iii) any relative or spouse of such Person, or any relative of such spouse, who has the same home as such Person or who is a director or officer of the Corporation or any of its parents or subsidiaries.

(3)  A Person shall be deemed to "Beneficially Own" any shares of capital stock of the Corporation (i) which it has the right to acquire, hold or vote pursuant to any agreement, arrangement or undertaking or upon exercise of conversion rights, warrants, options or otherwise, or (ii) which are beneficially owned, directly or indirectly (includ- ing shares deemed owned through application of the foregoing clause (i)), by any other Person (A) with which it or its Affiliate or Associate has any agreement, arrangement or understanding for the purpose of acquiring, holding, voting or disposing of shares of capital stock of the Corporation or (B) which is its Affiliate or Associate;

(4)  the term "Business Combination" shall mean (i) any merger or consolidation of the Corporation with or into any other Person, (ii) any sale or lease (or series of sales or leases) of all or any Substantial Part of the assets of the Corporation (including without limitation any voting securities of a Subsidiary), (iii) any sale or lease (or series of sales or leases) of all or any Substantial Part of the assets of any Person to the Corporation or a Subsidiary in exchange for securities of the Corporation or a Subsidiary or (iv) any reclassification or recapitalization of the outstanding shares of any class of capital stock of the Corporation if the effect of such transaction is to increase the relative voting power of a Dominant Stockholder;

(5)  The term "Continuing Directors" shall mean the directors who were in office on the date immediately

-8-

C0025

prior to the date the Dominant Stockholder became a Dominant Stockholder;

(6)  The term "Dominant Stockholder" shall mean any Person which Beneficially Owns, directly or indirectly, shares of capital stock of the Corporation representing ten percent (10%) or more of all votes entitled to be cast in elections of directors (considered for this purpose as one class);

(7)  The term "Non-Affiliated Shares" shall mean all shares of capital stock of the Corporation entitled to be cast in the election of directors, considered for purposes hereof as one class, which are not Beneficially Owned by the Dominant Stockholder;

(8)  The term "other consideration to be received", in the event of a Business Combination in which the Corporation is the surviving corporation, shall include the shares of capital stock of the Corporation retained by its existing public stockholders;

(9)  The term "outstanding shares of any class of capital stock of the Corporation" shall include shares deemed owned through the application of clauses (i) and (ii) of paragraph (3) above but shall not include any other shares which may be issuable pursuant to any agreement, arrangement or understanding or upon exercise of conversion rights, warrants, options or otherwise;

(10)  The term "Person" shall mean any corporation, individual, person, partnership or other person or entity;

(11)  The term "Substantial Part" shall mean more than 25 percent of the fair market value of the total assets of the corporation in question, as determined in good faith by a majority of Continuing Directors, as of the end of its most recent fiscal year ending prior to the time the determination is being made; and

(12)  The term "Subsidiary" shall mean any corporation of which a majority of any class of equity security is owned directly or indirectly by the Corporation and whose assets constitute a Substantial Part of the assets of the Corporation, as determined in good faith by a majority of Continuing Directors.

E.   A majority of the Continuing Directors shall have the power and duty to make all determinations for the purposes of this Article TENTH on the basis of information known to them consistent with their fiduciary obligations.

-9-

C0626

ELEVENTH: Every person who was or is involuntarily made a party or is threatened to be made a party to or is involuntarily involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person or a person of whom such person is the legal representative is or was a director or officer of the Corporation or is or was serving at the request of the Corporation as a director or officer of another corporation, or as its representative in a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such action, suit or proceeding is alleged action in an official capacity as a director, officer or representative, or in any other capacity while serving as a director, officer or representative, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the GCL, as the same exists or may hereafter be amended, against all expenses, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such person in connection therewith.  Such right shall be a contract right and shall include the right to be paid by the Corporation expenses incurred in defending any action, suit or proceeding in advance of its final disposition upon delivery to the Corporation of an undertaking, by or on behalf of such person, to repay all amounts so advanced unless it should be determined ultimately that such person is entitled to be indemnified under this Article ELEVENTH or otherwise.

If a claim under this Article ELEVENTH is not paid in full by the Corporation within ninety days after a written claim has been received by the Corporation, the claimant may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim and if successful in whole or in part, the claimant shall be entitled to be paid also the expense of prosecuting such claim.  It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in defending any action, suit or proceeding in advance of its final disposition where the required undertaking has been tendered to the Corporation) that the claimant has not met the standards of conduct which make it permissible under the GCL for the Corporation to indemnify the claimant for the amount claimed, but the burden of proving such defense shall be on the Corporation.  Neither the failure of the Corporation (including its Board of Directors, independent legal counsel, or its stockholders) to have made a determination prior to the commencement of such action that indemnification of the claimant is proper in the circumstances because the claimant

-10-

C0027

has met the applicable standard of conduct set forth in the
GCL, nor an actual determination by the Corporation (includ-
ing its Board of Directors, independent legal counsel, or its
stockholders) that the claimant had not met such applicable
standard of conduct shall be a defense to the action or
create a presumption that the claimant had not met the
applicable standard of conduct.

The rights conferred by this Article ELEVENTH shall
not be exclusive of any other right which any such director,
officer or representative may have or hereafter acquire under
any statute, provision of the Certificate of Incorporation,
By-law, agreement, vote of stockholders or disinterested
directors or otherwise; provided, however, that the right
to indemnification which any director, officer or repre-
sentative may have to the extent derived from any provision
of the Certificate of Incorporation or By-Laws shall be
limited to those provisions in effect at the time such
director, officer or representative was acting as such.

The Corporation may maintain insurance, at its expense,
to protect itself and any such director, officer or repre-
sentative against any such expense, liability or loss,
whether or not the Corporation would have the power to
indemnify such director, officer or representative against
such expense, liability or loss under the GCL.

TWELFTH:  Whenever a compromise or arrangement is
proposed between this Corporation and its creditors or any
class of them and/or between this Corporation and its
stockholders or any class of them, any court of equitable
jurisdiction within the State of Delaware may, on the
application in a summary way of this Corporation or of
any creditor or stockholder thereof or on the application of
any receiver or receivers appointed for this Corporation
under the provisions of Section 291 of the GCL or on the
application of trustees in dissolution or of any receiver or
receivers appointed for this Corporation under the provisions
of Section 279 of the GCL order a meeting of the creditors
or class of creditors, and/or of the stockholders or class
of stockholders of this Corporation, as the case may be, to
be summoned in such manner as the said court directs.  If a
majority in number representing three-fourths in value of
the creditors or class of creditors, and/or of the stock-
holders or class of stockholders of this Corporation, as the
case may be, agree to any compromise or arrangement and to
any reorganization of this Corporation as a consequence of
such compromise or arrangement, the said compromise or
arrangement and the said reorganization shall, if sanctioned
by the court to which the said application has been made, be

C0028                    -11-

binding on all the creditors or class of creditors, and/or on all the stockholders or class of stockholders, of this Corporation, as the case may be, and also on this Corporation.

THIRTEENTH:  The Corporation reserves the right to amend or repeal any provision contained in this Certificate of Incorporation in the manner prescribed by the laws of the State of Delaware and all rights conferred upon stockholders are granted subject to this reservation; provided, however, that, notwithstanding any other provision of this Certificate of Incorporation or any provision of law which might otherwise permit a lesser vote or no vote, but in addition to any vote of the holders of any class or series of the stock of this Corporation required by law or by this Certificate of Incorpo-ration, the affirmative vote of the holders of at least sixty-six and two-thirds percent (66 2/3%) of the voting power of all of the then-outstanding shares of the capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required to amend or repeal Paragraph C of Article SIXTH of this Certificate of Incorporation and the affirmative vote of the holders of shares of voting stock of the Corpora-tion representing at least a majority of the Non-Affiliated Shares (as defined in Article TENTH), voting together as a single class, shall be required to amend or repeal Article TENTH of this Certificate of Incorporation.  Any amendment of this Article THIRTEENTH which amends or repeals the provisions hereof respecting the vote required to amend or repeal Paragraph C of Article SIXTH or Article TENTH must be approved by a vote at least equal to the vote required herein to amend or repeal said Paragraph C of Article SIXTH or Article TENTH, as the case may be."

2.  That said amendment and restatement was duly adopted in accordance with the provisions of Section 245 and Section 303 of the General Corporation Law of the State of Delaware, pursuant to the Order Authorizing Filing of Agreement of Merger and Restated Certificate of Incorporation and Adoption of Amended Bylaws entered January 22, 1985 of the United States Bankruptcy Court, Central District of California, and that said amendment and restatement shall become effective on January 26, 1985 at 11:59 Eastern Standard Time.

-12-

C0029

DTSC, et al. v. Jim Dobbas, Inc., et al.
Page 045
AGO000408

IN WITNESS WHEREOF, the undersigned corporation has caused this Restated Certificate of Incorporation to be executed by its President and attested to by its Secretary on this 18th day of January, 1985.

THE WICKES CORPORATION

Attest:                           By: _Sanford C. Sigoloff_
                                      Sanford C. Sigoloff, President

By: _Alvin G. Segel_
    Alvin G. Segel, Secretary

55-678-584.11                    -13-

Certificate of Agreement of Merger of the "WICKES COMPANIES, INC." and

"GAMBLE-SKOGMO, INC.", merging with and into "THE WICKES CORPORATION",

under the name of "WICKES COMPANIES, INC.", is received and filed in

this office the twenty-fourth day of January, A.D. 1985, at 2:01 o'clock

P.M.

00051