Lester O. Brown, Bar No. 160828
LBrown@perkinscoie.com
Thomas M. McMahon, Bar No. 106074
TMcmahon@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Defendant
West Coast Wood Preserving, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JIM DOBBAS, INC., et al., <br><br> Defendants. <br><br> AND RELATED CROSS-ACTIONS. | Case No. 2:14-cv-00595-WBS-EFB <br><br> **DECLARATION OF ELAINA JACKSON IN RESPONSE TO PLAINTIFFS' REQUEST PURSUANT TO FED. R. CIV. P. 56(d)** <br><br> Date: March 9, 2015 <br> Time: 2:00 p.m. <br> Place: Courtroom 5, 14th Floor <br> 501 I Street <br> Sacramento, CA 95814 <br><br> Trial: January 4, 2017 <br><br> Action Filed: March 3, 2014 |

I, Elaina Jackson, declare as follows:

1. I am the President and CEO of West Coast Wood Preserving, LLC, a defendant in this action ("WCWP"). I submit this Declaration in response to the Declaration of Laura Zuckerman ("Zuckerman Declaration") requesting that the pending Summary Judgment Motion be denied or deferred pursuant to Federal Rule of Civil Procedure 56(d). I have personal knowledge of the facts recited herein, and if called as a witness could and would testify competently thereto.

2. I first became familiar with Pacific Wood Preserving of Bakersfield, Inc. ("Bakersfield"), WCWP's predecessor, in 1982 when I was working at Commercial Center Bank. During that time I met Richard Jackson. In 1992, I married Richard Jackson. Beginning in 2000, I worked for Bakersfield as its Chief Operating Officer initially, and after my husband's death, as its President and CEO. My husband, Richard Jackson, passed away in 2012 from pancreatic cancer.

3. I have no personal knowledge concerning the issues identified in the Zuckerman Declaration, including, (i) the disposition of Pacific Wood Preserving Corporation ("PWP Corp.")'s proceeds from the Wickes transaction, (ii) the details of the dissolution of PWP Corp., (iii) the early use and transfer of the real property in Bakersfield, California, and (iv) the issuance of stock by Bakersfield to PWP Corp. and its subsequent transfer to Richard Jackson. Any documents relevant to these issues that I, or my late husband, or WCWP had in our collective possession, custody or control have already been turned over to counsel for production in this litigation.

4. I am not aware of any sources of documents, or any witnesses, that would shed light on the issues identified in the Zuckerman Declaration, other than those that have already been investigated and reported upon by counsel.

5. The first time that Bakersfield received any notice that anyone believed that it might have environmental liability at the Wickes Forrest Products Site in Elmira, California ("Elmira Site") was in September of 2010, when

1  Bakersfield received a letter from the State of California's Department of Toxic
2  Substances Control ("DTSC").  At that time, PWP Corp. had already been
3  dissolved for almost thirty (30) years.  Bakersfield's creation, and its initial use and
4  ownership of the real property in Bakersfield, California, had also occurred more
5  than thirty (30) years before.  Since Bakersfield had not been contacted by the State
6  of California with regard to the Elmira Site for over thirty years, neither my
7  husband nor Bakersfield kept many of the documents that might now assist WCWP
8  in disproving DTSC's allegation of CERCLA liability, including potential liability
9  insurance coverage.  Indeed, my husband, who the DTSC was well aware of by at
10 least 2010, could have been interviewed before he passed away in 2012 with regard
11 to these matters.  DTSC never sought to interview him.

12        6.    Bakersfield responded to DTSC's notice letter in November of 2010,
13 provided available documents and information that DTSC requested, and
14 participated in follow-up discussion with the DTSC over a few months.  After those
15 communications, Bakersfield heard nothing from DTSC and believed DTSC was
16 no longer pursuing Bakersfield with regard to the Elmira Site.  Bakersfield was not
17 asked to preserve any documents, nor was it informed about the specific remedial
18 actions DTSC planned and implemented for the Elmira Site.  Indeed, Bakersfield
19 received no notices with regard to public hearings on DTSC's plans.

20        7.    In January 2014, about three years after DTSC had stopped
21 communicating with Bakersfield, I was surprised that WCWP received a letter from
22 DTSC threatening litigation.  WCWP again responded to DTSC's inquiries.  I was
23 taken aback and disappointed when DTSC filed its lawsuit, and included WCWP,
24 in March of 2014.

25        8.    WCWP's counsel has, at enormous expense, defended WCWP in this
26 litigation.  This effort has included thorough legal research into such issues as
27 successor liability and the statute of limitations.  It has also included an exhaustive
28 search for any documents and witnesses relevant to events that are now

approximately *thirty-five* (*35*) years in the past.  As noted, the records of WCWP, as well as any records kept by my late husband, have yielded only some of the proof that would have existed years ago that WCWP is not the successor to PWP Corp.'s CERCLA liability at the Elmira Site.  To obtain additional information, Counsel has also investigated former employees, lawyers, financial institutions, real estate companies, title companies and other third parties that may have had information relevant to this matter, as well as any publically available records.  Counsel also worked with the DTSC to track down and bring into this case Collins & Aikmen, the real successor to PWP Corp.'s operations in Elmira California.  Counsel has also responded to pleadings, answered written discovery requests, arranged for and attended the deposition of Stephen Ryan, and produced this summary judgment motion, all at considerable expense to WCWP.  These may seem to be small matters to an entity as large as the State of California's DTSC, but they are a crushing expense to a small local business like WCWP.

9. To date, WCWP has been forced to incur several hundred thousand dollars to defend itself against DTSC's claims.  This is a horrendous burden on WCWP, a small, family-owned business.  If the litigation continues with additional discovery and other proceedings, this burden could easily exceed a million dollars. Without capital infusions, WCWP could become insolvent due to the costs of defending DTSC's meritless claims in this litigation.  WCWP is a small wood treating company, providing jobs in the Bakersfield community.  The State of California's DTSC should not be permitted to bankrupt WCWP with such ancient and tenuous claims.  WCWP's income statements show significant losses for its December 31, 2014 fiscal year, in large part due to this litigation.  Continuing with this litigation is untenable.

10. The impact of this action has been severe in other ways. After several months of negotiations, and the incurrence of over two hundred thousand dollars in related legal fees, WCWP was in final negotiations with another party for the sale

of its business assets in Bakersfield California when DTSC filed this action. Although the transaction was commercially advantageous to both parties, and would ultimately benefit WCWP's employees, the buyer pulled out of the deal because of DTSC's lawsuit. WCWP was specifically advised by the other party that the sale could not take place until the cloud of this litigation was removed. Every day that DTSC's meritless claims continue to exist prevents WCWP from consummating a transaction that would benefit WCWP, my family, the other party and the Bakersfield community. I implore this Court not to let DTSC's claims, which remained dormant for decades, destroy our family's company and this potential sale.

I declare under penalty under the laws of the United States of America that the foregoing is true and correct.

Executed on this 25TH day of February 2015 at Truckee, California.

_____
Elaina Jackson