1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  SARAH E. MORRISON, State Bar No. 143459
   Supervising Deputy Attorney General
3  DENNIS BECK, State Bar No. 179492
   OLIVIA W. KARLIN, State Bar No. 150432
4  Deputy Attorneys General
     300 South Spring Street, Suite 1702
5    Los Angeles, CA  90013
     Telephone:  (213) 897-0473
6    Fax:  (213) 897-2802
     E-mail:  Laura.Zuckerman@doj.ca.gov
7    E-mail:  Olivia.Karlin@doj.ca.gov
   *Attorneys for Plaintiffs California Department of*
8  *Toxic Substances Control and the Toxic Substances*
   *Control Account*

9

10            IN THE UNITED STATES DISTRICT COURT

11          FOR THE EASTERN DISTRICT OF CALIFORNIA

12                  SACRAMENTO DIVISION

13

| | |
|---|---|
| 14  **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,** | 2:14-cv-00595-WBS-EFB |
| 15 | **[PROPOSED] CONSENT DECREE BETWEEN PLAINTIFFS AND DEFENDANT WEST COAST WOOD PRESERVING, LLC** |
| 16                                   Plaintiffs, | |
| 17            v. | **Judge:  Hon. William B. Shubb** |
| 18 | |
| 19  **JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN** | **Action Filed:  March 3, 2014** |
| 20  **OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California** | Courtroom 5, 14th Floor, 501 I Street, Sacramento, CA  95814 |
| 21  **corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited** | Trial:  January 4, 2017 |
| 22  **liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware** | |
| 23  **limited liability company,** | |
| 24                                   Defendants. | |
| 25 | |
| 26  **AND RELATED COUNTERCLAIMS AND CROSS CLAIMS** | |

27

28

1

**INTRODUCTION**

1.     Plaintiffs, the State of California Department of Toxic Substances Control and the Toxic Substances Control Account (collectively, "DTSC"), filed a Complaint in the above-captioned matter on March 3, 2014, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA"), against several defendants, including Defendant West Coast Wood Preserving, LLC ("WCWP"), and then subsequently filed a First Amended Complaint on December 11, 2014 ("First Amended Complaint"), pursuant to CERCLA, amending to add an additional defendant.  In this action, DTSC seeks to recover response costs incurred or to be incurred by DTSC in responding to releases and/or threatened releases at the property located at 147 A Street, Elmira, Solano County, CA, identified by Solano County Assessor's Parcel Numbers 142-010-130, 142-010-140 and 142-042-010 ("the Site"), pursuant to CERCLA section 107(a), 42 U.S.C. § 9607(a).  DTSC also seeks declaratory relief under 28 U.S.C. § 2201 and CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2), alleging that defendants are jointly and severally liable for future response costs to be incurred by DTSC with respect to the Site.

2.     In the First Amended Complaint, DTSC alleges, in relevant part, that:

     a.     From approximately 1972 to 1982, certain defendants conducted wood preserving operations at the Site.  Wood preserving operations involved the use of hazardous substances, including arsenic, chromium, and copper.

     b.     As a result of the wood preserving operations at the Site, hazardous substances have been, and continue to be, released and/or threatened to be released into the environment at and from the Site.

     c.     Pacific Wood Preserving ("PWP") conducted wood preserving operations at the Site from approximately 1972 to approximately September 12, 1979, and owned the Site from 1972 to approximately September 12, 1979.   On September 12, 1979, PWP sold the Site to The Wickes Corporation.  WCWP is a successor to PWP.  From 1979 to approximately 1982, non-party to this agreement Collins & Aikman Products, LLC (formerly known as Collins & Aikman Products Co., and the successor by merger to The Wickes Corporation) ("C&A Products"),

2

1    conducted wood preserving operations at the Site.  Wood preserving operations at the Site ceased

2    in approximately 1982.

3              d.      From the 1980's through 2005, The Wickes Corporation and its successor,

4    C&A Products, took various response actions under the oversight of DTSC to address

5    environmental contamination at, around, and/or beneath the Site.  Those actions included, among

6    other things, soil excavation, installing an asphalt cap over contaminated soils, constructing a

7    building and a drainage system over another contaminated area of the Site, installing and

8    operating a groundwater extraction and treatment system, and groundwater monitoring.

9              e.      On or about March 20, 1997, C&A Products sold the Site to defendants Jim

10   Dobbas, Inc. ("Dobbas") and Continental Rail, Inc. ("CRI").

11             f.      On or about May 17, 2005, C&A Products filed a Chapter 11 bankruptcy

12   petition in the United States Bankruptcy Court for the Eastern District of Michigan, Case No. 05-

13   55932.  In November  2005, while in Chapter 11 bankruptcy proceedings, C&A Products

14   informed DTSC that it was unwilling to continue to perform response actions at the Site.

15             g.      In 2006, DTSC requested that Dobbas and CRI, the then-owners and operators

16   of the Site, carry out response actions to address contamination at the Site.  Dobbas and CRI

17   refused.  As a result, DTSC issued an Imminent and Substantial Endangerment Determination on

18   November 9, 2006, and entered into state-funded contracts to evaluate response actions.

19             h.      DTSC tried in 2007 and 2008 to resume operating the Wickes/C&A Products

20   remedy that DTSC had approved in 1996.  But the groundwater treatment system had already

21   reached a point at which it was evident that it would not clean up the groundwater to remediation

22   goals in a timely manner.  Ultimately, the idled groundwater treatment system would require too

23   many repairs to make it cost-effective to restart.  But until DTSC discovered the system could not

24   be fixed, DTSC viewed re-starting it as an interim measure to contain the "plume" (i.e.

25   underground area of groundwater contamination) until alternative cleanup approaches could be

26   evaluated, which it eventually did.

27             i.      In July 2010, DTSC finalized a Removal Action Workplan for the Site that

28   called for contaminated soil excavation, off-site disposal, backfilling, confirmation sampling,

3

1    demolition of the groundwater extraction and treatment system, and long-term groundwater

2    monitoring.  In the Removal Action Workplan it was reported that contaminated groundwater had

3    migrated from beneath the Site to the residential area, which created the potential for irrigation

4    wells located there to extract and distribute contaminated groundwater.

5             j.       On or about February 11, 2011,  Dobbas and CRI sold the Site to defendant

6    David Van Over ("Van Over").

7             k.       On March 16, 2011, DTSC issued an Imminent and Substantial Endangerment

8    Determination Order and Remedial Action Order ("I/SE Order") ordering Dobbas, CRI, and Van

9    Over to conduct the actions described in the Removal Action Workplan and to take additional

10   response actions at the Site.  Dobbas, CRI, and Van Over failed to complete the actions described

11   in the Removal Action Workplan, or to take other response actions described in the I/SE Order.

12        3.    From 2005 to the present, DTSC took response actions to address the abandonment of

13   environmental work at the Site.  That abandonment created an imminent risk that contaminated

14   groundwater would spread to nearby wells and further contaminate the drinking water aquifer,

15   and that the asphalt cap would fail and allow direct human contact with contaminated soil or

16   contribute more to surface water or groundwater contamination.   DTSC's response actions were

17   necessary to remove the hazardous substances released and/or threatened to be released at and

18   from the Site.  The response actions included, but were not limited to, the following activities:

19   efforts to repair and restart the groundwater extraction and treatment system, completion of a

20   removal investigation for site soils, preparation of the Removal Action Workplan, implementation

21   of the Removal Action Workplan, and groundwater monitoring.

22        4.    As of December 31, 2014, DTSC's unreimbursed response costs related to the Site

23   exceeded $2.4 million, exclusive of interest.  DTSC will continue to incur response costs related

24   to the Site, including costs to litigate the First Amended Complaint.

25        5.    DTSC contends that WCWP is a responsible party pursuant to section 107(a) of

26   CERCLA, 42 U.S.C. § 9607(a), and is jointly and severally liable under CERCLA for response

27   costs incurred and to be incurred by DTSC at the Site.

28   ///

4

6. WCWP filed an answer to the Complaint on June 10, 2014, and an answer to the First Amended Complaint on January 5, 2015. WCWP filed a counterclaim against DTSC on October 27, 2014, alleging that DTSC negligently selected and implemented response actions at the Site and thus that WCWP was entitled to contribution from DTSC for any recoverable response costs. On December 15, 2014 WCWP filed a Motion for Summary Judgment requesting that the Court dismiss DTSC's complaint against WCWP and alleging that WCWP is not the successor in interest to PWP, there was no basis for DTSC's complaint against WCWP, and DTSC's complaint against WCWP was untimely and violated the statute of limitations for such actions under CERCLA.

7. On February 20, 2015, DTSC filed an Opposition disputing the allegations in WCWP's Motion for Summary Judgment. Because DTSC and WCWP (collectively "the Parties") reached a settlement in principle regarding WCWP's liability, the Court ordered that the hearing on the Motion for Summary Judgment be continued to July 27, 2015.

8. The Parties agree, and this Court finds by entering this Consent Decree, that this Consent Decree has been negotiated by the Parties in good faith, the settlement of this matter will avoid prolonged and complicated litigation, and that this Consent Decree is fair, reasonable, in the public interest, and consistent with the purpose of CERCLA.

THEREFORE, the Court, with the consent of the Parties to this Consent Decree, hereby ORDERS, ADJUDGES, AND DECREES as follows:

## I. JURISDICTION.

9. The Court has subject matter jurisdiction over the matters alleged in this action pursuant to 28 U.S.C. § 1331 and CERCLA section 113(b), 42 U.S.C. § 9613(b), and the Court has personal jurisdiction over each of the Parties.

10. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) and CERCLA section 113(b), 42 U.S.C. § 9613(b), because the claims asserted in the First Amended Complaint and the releases and/or threatened releases of hazardous substances occurred in this judicial district.

///

5

11.     WCWP waives all objections and defenses that it may have to the jurisdiction of the Court or to venue in this district in the above-captioned action.  WCWP agrees not to challenge this Court's jurisdiction to enter and enforce this Consent Decree.

12.     The Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree, if necessary.

## II.  SETTLEMENT OF DISPUTED CLAIMS.

13.     This Consent Decree resolves DTSC's claims against WCWP in the above-captioned action under section 107 of CERCLA, 42 U.S.C. § 9607.  DTSC agrees to settlement of WCWP's liability in this action in exchange for consideration from WCWP, including payment by WCWP to reimburse a portion of the response costs incurred and to be incurred by DTSC at or in connection with releases and/or threatened releases of hazardous substances at, beneath, and/or from the Site.

14.     Except as otherwise expressly provided in this Consent Decree, this Consent Decree shall not prejudice, waive, or impair any right, remedy or defense that WCWP may have in any other or further legal proceeding.

15.     The Parties consent to, and shall not challenge entry of, this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

16.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Parties.

## III.  DEFINITIONS.

17.     Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in the regulations promulgated under CERCLA shall have the meaning assigned to them therein.  Whenever terms listed below are used in this Consent Decree, the definitions below shall apply.

18.     "DTSC" shall mean, collectively, the State of California Department of Toxic Substances Control ("the Department") and the Toxic Substances Control Account, and their predecessors and successors.  The Department is a public agency of the State of California organized and existing under and pursuant to California Health and Safety Code § 58000, et seq.

6

1  Under California law, the Department is the state agency responsible for determining whether

2  there has been a release and/or threatened release of hazardous substances into the environment,

3  and for determining the actions to be taken in response thereto.  The Toxic Substances Control

4  Account is an account within the State of California General Fund.  Under California Health and

5  Safety Code section 24361(a), the account shall be a party in any action for recovery of response

6  costs or expenditures incurred from the account under Chapter 6.8 of Division 20 of the

7  California Health and Safety Code.

8      19.   "Effective Date" shall mean the date of entry of this Consent Decree by this Court.

9      20.   "Parties" shall mean DTSC and WCWP, collectively.

10     21.   "Response Costs" shall mean all costs of "removal," "remedial action," or "response"

11  as those terms are defined by CERCLA section 101, 42 U.S.C.§ 9601, subsections 23-25, related

12  to the release and/or threatened release of hazardous substances at or from the Site, including the

13  soils and groundwater.

14     22.   "Site" shall mean the property at 147 A Street, Elmira, Solano County, CA, identified

15  by Solano County Assessor's Parcel Number(s) 142-010-130, 142-010-140 and 142-042-010.

16  For purposes of this Consent Decree, the Site includes the vertical and areal extent of the

17  hazardous substance contamination that is or has been present at, beneath, and/or from the Site.

18                    **IV.  WCWP'S SETTLEMENT OBLIGATIONS.**

19     23.   WCWP shall pay to DTSC the sum of three hundred fifty thousand dollars

20  ($350,000) in three installment payments, as follows:  the first payment of one hundred thousand

21  dollars ($100,000) is due within thirty (30) days of the Effective Date;  the second installment of

22  one hundred fifty thousand dollars ($150,000) is due within twelve (12) months of the Effective

23  Date; and the third installment of one hundred thousand dollars ($100,000) is due within twenty

24  four (24) months of the Effective Date.  However, if WCWP sells its business known as Pacific

25  Wood Preserving of Bakersfield ("PWP Bakersfield"), located at 5601 District Boulevard,

26  Bakersfield, California, and/or the assets of PWP Bakersfield after the Effective Date, WCWP

27  shall pay all amounts still owing to DTSC pursuant to this paragraph within sixty (60) days of the

28  completion of that sale or twenty-four months after the Effective Date, whichever date is earlier.

1    WCWP shall notify DTSC of the completion of the sale within three (3) business days of the

2    sale's completion.

3        24.    The payments required in paragraph 23 shall be made by certified check, cashier's

4    check, or money order made payable to "Cashier, California Department of Toxic Substances

5    Control," and each shall bear on its face both the docket number of this action, and the phrase

6    "Site Code 100164."  The payments shall be sent to:

7            Cashier
             Department of Toxic Substances Control
8            Accounting Office, MS-21A
             1001 I Street
9            P.O. Box 806
             Sacramento, CA 95812-0806
10

11       A copy of each check shall be mailed to:

12           Office of Legal Counsel
             California Department of Toxic Substances Control
13           1001 I Street, 23rd Floor
             P.O. Box 806
14           Sacramento, CA 95812-0806

15           Or e-mailed to Marilee.Hanson@dtsc.ca.gov in .pdf or .jpg format.

16

17                              **V.  ACCESS TO INFORMATION.**

18       25.    Within thirty (30) calendar days of the Effective Date, WCWP shall provide to DTSC

19   copies of any and all records, documents, and information within its possession or control, or that

20   of its agents, relating to:  (a) the ownership, operation, or control of the Site; (b) the purchase,

21   storage, use, handling, generation, treatment, transportation, or disposal of hazardous substances

22   in connection with the Site; (c) releases and/or threatened releases of hazardous substances at or

23   from the Site, including the Site's soil and groundwater; and (d)  response actions conducted by

24   any person at the Site, to the extent such non-privileged records, documents, and information

25   within its possession or control has not already been provided in disclosure or discovery in this

26   action.

27       26.    If, after the Effective Date, WCWP discovers or obtains any records, documents or

28   information described in paragraph 25 not previously provided to DTSC, WCWP agrees to

                                           8

1    provide DTSC with copies of the additional records, documents, or information within ten (10)

2    calendar days of the date WCWP discovers or obtains the records, documents, or information.

3         27.    WCWP may assert confidentiality claims covering part or all of the documents or

4    information submitted to DTSC under this Consent Decree to the extent permitted by, and in

5    accordance with, California Health and Safety Code section 25358.2.  Documents or information

6    determined to be confidential by DTSC will be afforded the protection specified in California

7    Health and Safety Code section 25358.2.  WCWP may also assert that certain documents,

8    records, and other information are privileged under the attorney-client privilege or any other

9    privilege recognized by federal law.  If WCWP asserts such a privilege in lieu of providing

10   documents, WCWP shall provide DTSC with a description of the documents withheld and the

11   basis for asserting the privilege.

12                    **VI.  COVENANT NOT TO SUE BY DTSC.**

13        28.    Except as expressly provided in Section VII (Reservation of Rights) of this Consent

14   Decree, DTSC covenants not to sue WCWP pursuant to CERCLA, the California Hazardous

15   Substances Account Act ("HSAA"), California Health and Safety Code § 25300, et seq., to:  (a)

16   recover DTSC's Response Costs related to the Site; or (b) require WCWP to conduct response

17   actions, including investigation, removal or remedial actions, in response to the release or

18   threatened release of hazardous substances at the Site, including into the soils and groundwater.

19   This Covenant Not to Sue is conditioned upon the complete and satisfactory performance by

20   WCWP of all of its obligations under this Consent Decree.  This Covenant Not to Sue shall be

21   revoked and deemed not effective if WCWP fails to make any of the payments required by

22   paragraph 23 of this Consent Decree.

23                     **VII.  RESERVATION OF RIGHTS.**

24        29.    Claims Regarding Other Matters.  DTSC reserves, and this Consent Decree is without

25   prejudice to, all rights against WCWP with respect to all matters not expressly included within

26   DTSC's Covenant Not to Sue (Section VI).

27        30.    Reservation of Claims.  DTSC reserves, and this Consent Decree is without prejudice

28   to, all rights against WCWP with respect to:

1          a.       Claims based on a failure of WCWP to meet a requirement of this Consent

2   Decree;

3          b.       Liability arising from past, present, or future disposal, release, and/or threat of

4   release of a hazardous substance, pollutant, or contaminant outside of the Site; and

5          c.       Criminal liability.

6       31.     Unknown Conditions/New Information.  Notwithstanding any other provision in the

7   Consent Decree, DTSC reserves, and this Consent Decree is without prejudice to, its right to

8   institute proceedings in this action or in a new action, and/or to issue an administrative order

9   seeking to compel WCWP to perform response activities at the Site and/or to pay DTSC for

10  additional Response Costs, if:

11         a.       Either of the following occurs: (i) conditions at the Site previously unknown to

12  DTSC are discovered, or (ii) information previously unknown to DTSC is received in whole or in

13  part; and

14         b.       DTSC determines that the previously unknown conditions or new information,

15  together with other relevant information, indicate that the response actions at the Site are not

16  sufficiently protective of human health or the environment.

17      32.     Reservation of Rights.   Except as expressly provided in this Consent Decree, WCWP

18  reserves its rights to oppose any claim brought by DTSC against WCWP pursuant to paragraphs

19  30 and 31 of this Consent Decree.  WCWP reserves the right to bring a claim against DTSC for

20  failure to meet the requirements of this Consent Decree.

21      33.     Claims against Other Persons.  DTSC reserves, and this Consent Decree is without

22  prejudice to, all rights, claims, and causes of action DTSC may have against any person other

23  than WCWP.  Nothing in this Consent Decree is intended to be, nor shall be construed as, a

24  release, covenant not to sue, or compromise of any claim or cause of action which DTSC may

25  have against any person or other entity not a signatory to this Consent Decree.

26      34.     Government Authority.  Except as expressly provided in this Consent Decree, nothing

27  in this Consent Decree is intended, or shall be construed, to preclude DTSC from exercising its

28  authority under any law, statute, or regulation with respect to the Site.  Furthermore, except as

1  expressly provided in this Consent Decree, nothing in this Consent Decree is intended, nor shall

2  be construed, to preclude any state agency, department, board, or entity, or any federal or local

3  agency, department, board, or entity, from exercising its authority under any law, statute, or

4  regulation.

5                    **VIII.  COVENANT NOT TO SUE BY WCWP.**

6        35.    WCWP covenants not to sue and agrees not to assert any claims or causes of action

7  against DTSC or its contractors or employees arising out of the transaction or occurrence that is

8  the subject matter of the First Amended Complaint, or for any injuries, losses, costs, or damages

9  caused or incurred as a result of the performances or requirements of this Consent Decree or

10  DTSC's response actions at the Site.  This Covenant not to sue is without prejudice to WCWP's

11  reservation of rights as noted in Paragraph 32 herein.

12                    **IX.  CONTRIBUTION PROTECTION.**

13        36.    With regard to claims for contribution against WCWP, WCWP is entitled to

14  contribution protection pursuant to section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and by

15  state statutory and common law for the "Matters Addressed" in this Consent Decree, except for

16  actions and claims identified in DTSC's Reservation of Rights (Section VII).

17        37.    The "Matters Addressed" in this Consent Decree include:  (a) all past and future

18  Response Costs incurred by or on behalf of DTSC with respect to the Site, including DTSC's

19  oversight costs; and (b) all past and future Response Costs that have been and/or may be incurred

20  by or on behalf of any other person, including any past, present, or future Site owner or operator,

21  with respect to the Site.

22        38.    The contribution protection provided in this Section is conditioned upon WCWP's

23  full performance of its obligations under this Consent Decree.

24        39.    Nothing in this Consent Decree limits or impairs the right of DTSC to pursue any

25  other person for unrecovered Response Costs incurred by DTSC.

26                    **X.  NOTIFICATION.**

27        40.    Notification to or communication among the Parties as required by or provided for

28  in this Consent Decree shall be addressed as follows:

[Proposed] Consent Decree Between Plaintiffs and Defendant WCWP (2:14-cv-00595-WBS-EFB)

For DTSC:

Charlie Ridenour, Branch Chief
Brownsfield and Environmental Restoration Program
California Department of Toxic Substances Control
8800 Cal Center Drive
Sacramento, CA  95826

Marilee Hanson, Senior Staff Counsel
Office of Chief Counsel
California Department of Toxic Substances Control
1001 I Street
P.O. Box 806
Sacramento, CA 95812-0806

For WCWP:

Lester Brown
Perkins Coie LLP
1888 Century Park East, Suite 1700
Los Angeles, CA  90067

## XI.  GENERAL PROVISIONS.

41.    **Parties Bound.**  This Consent Decree shall apply to, be binding upon, and inure to the benefit of the Parties and their representatives, successors, heirs, legatees, and assigns.

42.    **No Waiver of Enforcement.**  The failure of DTSC to enforce any provision of this Consent Decree shall in no way be deemed a waiver of such provision or in any way affect the validity of this Consent Decree.  The failure of DTSC to enforce any such provision shall not preclude it from later enforcing the same or any other provision of this Consent Decree.

43.    **Costs.**   Except as provided in this Consent Decree, the Parties will not seek to recover attorneys' fees and/or litigation costs against each other.

44.    **Modification.**  This Consent Decree may be modified upon written approval of the Parties and with the consent of the Court.

45.    **Integration.**  This Consent Decree constitutes the final, complete, and entire agreement between the Parties with respect to the settlement embodied in this Consent Decree.

46.    **Lodging and Public Comment.**  This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment.  DTSC shall file with the Court any written comments received and DTSC's responses thereto.  DTSC reserves the right to withdraw or withhold its consent to entry of the Consent Decree if comments regarding

1   the Consent Decree disclose facts or considerations that indicate that this Consent Decree is

2   inappropriate, improper, or inadequate.  WCWP consents to the entry of this Consent Decree

3   without further notice.

4       47.   If the Court should decline to approve this Consent Decree in the form presented, this

5   agreement is voidable at the discretion of either of the Parties, and the terms of the agreement

6   may not be used as evidence in any litigation between the Parties.

7       48.   **Counterparts.** This Consent Decree may be executed in two or more counterparts,

8   each of which shall be deemed an original, but all of which together shall constitute one and the

9   same instrument.

10      49.   **Signatories.** Each signatory to this Consent Decree certifies that he or she is fully

11  authorized by the party he or she represents to enter into the terms and conditions of this Consent

12  Decree, to execute it on behalf of the party represented, and to legally bind that party to all the

13  terms and conditions of this Consent Decree.

14                    **XII.  APPROVALS OF PARTIES.**

15  DTSC consents to this Consent Decree by its duly authorized representative as follows:

16  **FOR THE DEPARTMENT OF TOXIC SUBSTANCES CONTROL and TOXIC**
17  **SUBSTANCES CONTROL ACCOUNT**

18  Date: 6/2/2015

19                              Charlie Ridenour, Branch Chief
20                              Brownfields and Environmental Restoration
                                Program

21  WCWP consents to this Consent Decree by its duly authorized representative as follows:

22  **FOR WEST COAST WOOD PRESERVING, LLC:**

23

24  Date: 5-20-15

25                              Elaina Jackson
26                              President, and Chief Executive Officer,
                                West Coast Wood Preserving, ~~Inc.~~
                                                               LLC

27

28

                              13

1    **IT IS SO ORDERED, ADJUDGED, AND DECREED.**

2

3    Dated: _____                    _____

4                                              The Honorable R. William B. Shubb
                                               United States District Court Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28