1  KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
2  SARAH E. MORRISON, State Bar No. 143459
Supervising Deputy Attorney General
3  OLIVIA W. KARLIN, State Bar No. 150432
LAURA J. ZUCKERMAN (Counsel for service)
4  State Bar No. 161896
Deputy Attorneys General
5   1515 Clay Street, 20th Floor
   Oakland, CA 94612
6   Telephone: (510) 622-2174
   Fax: (510) 622-2270
7   E-mail: Laura.Zuckerman@doj.ca.gov
*Attorneys for Plaintiffs California*
8  *Department of Toxic Substances Control and Toxic*
*Substances Control Account*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,**<br><br>Plaintiffs,<br><br>v.<br><br>**JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,**<br><br>Defendants.<br><br>**AND RELATED COUNTERCLAIMS AND CROSS CLAIMS** | 2:14-cv-00595-WBS-EFB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDICIAL APPROVAL OF CONSENT DECREE BETWEEN PLAINTIFFS AND DEFENDANT WEST COAST WOOD PRESERVING, LLC; DECLARATION OF PETER MACNICHOLL WITH EXHIBITS IN SUPPORT THEREOF**<br><br>Judge: Hon. William B. Shubb<br><br>Date: August 24, 2015<br>Time: 2:00 p.m.<br>Courtroom 5, 14th Floor, 501 I Street, Sacramento, CA 95814 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................... 1
II. FACTUAL BACKGROUND ................................................................................. 1
    A. Site History ................................................................................................. 1
    B. Response Actions at the Site ...................................................................... 2
    C. The First Amended Complaint .................................................................. 3
III. SUMMARY OF CONSENT DECREE PROVISIONS ......................................... 4
    A. Terms of the Consent Decree ..................................................................... 4
        1. Payment to DTSC. ............................................................................... 4
        2. Access to Information .......................................................................... 4
        3. Covenant Not to Sue by DTSC ............................................................ 4
        4. Contribution Protection. ...................................................................... 5
        5. Covenant Not to Sue by Settling Defendant. ...................................... 5
    B. Public Notice and Opportunity for Comment ........................................... 5
IV. ARGUMENT .......................................................................................................... 6
    A. Standard of Review for Entry of CERLA Settlements. ............................ 6
        1. The Consent Decree is Procedurally Fair............................................ 7
        2. The Consent Decree is Substantively Fair. ......................................... 8
        3. The Consent Decree is Reasonable. ................................................... 10
        4. The Consent Decree Is Consistent with the Purposes of CERCLA ... 11
V. CONCLUSION ..................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Arizona v. City of Tucson*
   761 F.3d 1005 (9th Cir. 2014) .................................................................................. 6, 7, 8

*Arizona v. Nucor Corp.*
   825 F.Supp. 1452 (D. Ariz. 1992), *aff'd*, 66 F.3d 213 (9th Cir. 1995) ............................ 10, 11

*United States v. Akzo Coatings of Am.*
   949 F.2d 1409 (6th Cir. 1991) ................................................................................ 6

*United States v. Cannons Engineering Corp.*
   899 F.2d 79 (1st Cir. 1990) ............................................................................. passim

*United States v. Comunidades Unidas Contra la Contaminacion*
   204 F.3d 275, 280 (1st Cir. 2000) ............................................................................. 7

*United States v. Fort James Operating Co.*
   313 F.Supp.2d 902 (E.D. Wis. 2004) ........................................................................ 9

*United States v. Montrose Chem. Corp.*
   50 F.3d 741 (9th Cir. 1995) .................................................................................. 6, 7, 8

*United States v. State of Oregon*
   913 F.2d 576 (9th Cir. 1990) ................................................................................ 6

**STATUTES**

Comprehensive Environmental Response, Compensation, and Liability Act
42 U.S.C. § 9601 ("CERCLA") ............................................................................... passim

CERCLA § 101(25), 42 U.S.C. § 9601(25) .................................................................. 3

CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2) ............................................................. 4

Hazardous Substance Account Act, California Health and Safety Code § 25300 ("HSAA") ........ 7

ii

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant West Coast Wood Preserving, LLC (2:14-cv-00595-WBS-EFB)

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs, the State of California Department of Toxic Substances Control and the Toxic Substances Control Account (collectively, "DTSC"), respectfully submit this Memorandum of Points and Authorities in support of DTSC's motion for judicial approval of the proposed Consent Decree between Plaintiffs and Defendant West Coast Wood Preserving, LLC ("Settling Defendant") concerning the property located at 147 A Street, Elmira, Solano County, CA, identified by Solano County Assessor's Parcel Numbers 142-010-130, 142-010-140 and 142-042-010 ("the Site"). DTSC filed a Complaint in the above-captioned matter on March 3, 2014, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 ("CERCLA"), against several defendants, including Settling Defendant, and then subsequently filed a First Amended Complaint on December 11, 2014 ("First Amended Complaint"), pursuant to CERCLA, amending to add an additional defendant. In this action, DTSC seeks to recover response costs it incurred or expects to incur in response to the release and/or threatened release of hazardous substances at, around, and/or beneath the Site. DTSC negotiated a settlement agreement with Settling Defendant resolving its liability in this action. The settlement agreement is embodied in the proposed Consent Decree lodged with the Court on June 2, 2015. ECF No. 131. Because the proposed Consent Decree between DTSC and Settling Defendant is fair, reasonable, and consistent with the purposes of CERCLA, DTSC requests that the Court approve the Consent Decree and enter it as a judgment of the Court.

## II. FACTUAL BACKGROUND

### A. Site History

The defendants in this action are Settling Defendant, Jim Dobbas, Inc. ("Dobbas"), Continental Rail, Inc. ("CRI"), David Van Over ("Van Over"), Pacific Wood Preserving ("PWP"), and Collins & Aikman Products, LLC ("C & A Products").

At different periods of time, each defendant in this action owned and/or operated the Site. From approximately 1972 to 1982, wood preserving operations were conducted at the Site. PWP conducted wood preserving operations at the Site from approximately 1972 to approximately

1

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant West Coast Wood Preserving, LLC (2:14-cv-00595-WBS-EFB)

September 12, 1979, and owned the Site from 1977 to approximately September 12, 1979, when it sold the Site to the Wickes Corporation. Declaration of Peter MacNicholl ("MacNicholl Decl."), ¶ 5. DTSC alleges that Settling Defendant is a successor to PWP.

The wood preserving operations at the Site involved the use of hazardous substances, including arsenic, chromium, and copper. MacNicholl Decl., ¶ 4. As a result of the wood preserving activities at the Site, hazardous substances have been, and continue to be, released and/or threatened to be released into the environment at and from the Site. MacNicholl Decl., ¶ 4.

**B.  Response Actions at the Site**

From the 1980's through 2005, the Wickes Corporation and its successor, C&A Products, under the oversight of DTSC, took various response actions to address environmental contamination at, around, and/or beneath the Site. Those actions included, among other things, soil excavation, installing an asphalt cap over contaminated soils, constructing a building and a drainage system over another contaminated area of the Site, installing and operating a groundwater extraction and treatment system, and groundwater monitoring. On or about March 20, 1997, C&A Products sold the Site to Dobbas and CRI. On or about May 17, 2005, C&A Products filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Michigan, Case No. 05-55932. In November 2005, while in Chapter 11 bankruptcy proceedings, C&A Products informed DTSC that it was unwilling to continue to perform response actions at the Site. MacNicholl Decl., ¶ 6.

In 2006, DTSC requested that Dobbas and CRI, the owners of the Site, carry out response actions to address contamination at the Site. Dobbas and CRI refused. As a result, DTSC issued an Imminent or Substantial Endangerment Determination Order on November 9, 2006, and initiated state-funded contracts to evaluate response actions. MacNicholl Decl.,¶ 7.

In 2007, DTSC tried to resume operating the groundwater treatment system at the Site, but the system would have required too many repairs to achieve remediation goals in a timely manner. Because of the treatment system failure, DTSC reevaluated response actions for the Site. In July 2010, DTSC finalized a Removal Action Workplan (RAW) for the Site that called for

2

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant West Coast Wood Preserving, LLC (2:14-cv-00595-WBS-EFB)

contaminated soil excavation, off-site disposal, backfilling, confirmation sampling, demolition of the groundwater extraction and treatment system, and long-term groundwater monitoring.  The RAW noted that contaminated groundwater had migrated from beneath the Site to the nearby residential area, which created the potential for irrigation wells located in the residential area to extract and distribute contaminated groundwater.  MacNicholl Decl., ¶ 8.

On or about February 11, 2011, Dobbas and CRI sold the Site to defendant Van Over.  On March 16, 2011, DTSC issued an Imminent or Substantial Endangerment Determination Order and Remedial Action Order ("I/SE Order") ordering Dobbas, CRI, and Van Over to conduct the response actions described in RAW and to take additional response actions at the Site.  Dobbas, CRI, and Van Over failed to comply with the I/SE Order.  MacNicholl Decl., ¶ 9.

DTSC has incurred costs of "response," as that term is defined in CERCLA section 101(25), 42 U.S.C. § 9601(25), in taking actions related to the release and/or threatened release of hazardous substances at, around, and/or beneath the Site.  MacNicholl Decl., ¶ 10.  DTSC's response actions include, but are not limited to, the following activities:  efforts to repair and restart the groundwater extraction and treatment system, completion of a removal investigation for site soils, preparation of the RAW, implementation of the RAW, and stormwater and groundwater monitoring.  MacNicholl Decl., ¶ 10.

As of May 5, 2015, DTSC's unreimbursed response costs related to the Site exceeded $2.65 million, exclusive of interest.  DTSC is in the process of remediating the Site and continues to incur response costs related to the Site.  DTSC currently estimates that total response costs for future investigation and remediation of the contaminated soil, along with stormwater and groundwater monitoring at the Site, could reach approximately $3.5 million over the next ten years.  MacNicholl Decl., ¶ 13.

### C. The First Amended Complaint

The First Amended Complaint alleges that defendants, as owners and/or operators of the Site, are jointly and severally liable for DTSC's costs incurred responding to releases of hazardous substances into the soil and groundwater at and around the Site.  The First Amended Complaint also requests a declaration that defendants are liable for DTSC's future response costs

3

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant West Coast Wood Preserving, LLC (2:14-cv-00595-WBS-EFB)

incurred at the Site pursuant to section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2).

### III. SUMMARY OF CONSENT DECREE PROVISIONS

#### A. Terms of the Consent Decree

After engaging in arms'-length, good faith settlement negotiations, DTSC and Settling Defendant resolved Settling Defendant's liability in the above-referenced action. MacNicholl Decl., ¶ 15. The parties executed a proposed Consent Decree that includes the following terms.

**1. Payment to DTSC.** Settling Defendant shall pay to DTSC the sum of three hundred fifty thousand dollars ($350,000). The payment shall be made in three installments, as follows: the first installment, of one hundred thousand dollars ($100,000), is due within thirty days (30) of the Effective Date of the Consent Decree; the second installment, of one hundred fifty thousand dollars ($150,000), is due within twelve (12) months of the Effective Date; and the third installment, of one hundred thousand dollars ($100,000), is due within twenty-four (24) months of the Effective Date. Consent Decree, p. 7, ¶ 23. In addition, if Settling Defendant sells the business known as Pacific Wood Preserving of Bakersfield ("PWP Bakersfield"), located at 5601 District Boulevard, Bakersfield, California, and/or the assets of PWP Bakersfield, after the Effective Date, Settling Defendant shall pay all amounts still owing to DTSC pursuant to this paragraph within sixty (60) days of the completion of that sale, or twenty-four months after the Effective Date, whichever date is earlier. Consent Decree, p. 7, ¶ 23.

**2. Access to Information.** Settling Defendant shall provide to DTSC, within thirty (30) calendar days of the Effective Date, copies of any and all records, documents, and information within its possession or control, or that of its agents, relating to: (a) the ownership, operation, or control of the Site; (b) the purchase, storage, use, handling, generation, treatment, transportation, or disposal of hazardous substances in connection with the Site; (c) releases and/or threatened releases of hazardous substances at or from the Site, including the soil and groundwater; and (d) removal, remedial, or response actions conducted by any person at the Site. Consent Decree, p. 8, ¶ 25.

**3. Covenant Not to Sue by DTSC.** In exchange for the actions to be performed and the payments that will be made pursuant to the Consent Decree, DTSC covenants

4

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant West Coast Wood Preserving, LLC (2:14-cv-00595-WBS-EFB)

not to sue Settling Defendant (a) for response costs related to the Site, or (b) to require Settling Defendant to conduct response actions at the Site. The covenant not to sue is subject to certain reservations of DTSC's rights, including, but not limited to, the right to reopen this action or institute a new action based on new information relating to Settling Defendant's liability or previously unknown conditions relating to the Site, and also upon Settling Defendant's satisfactory performance of its payment obligations. Consent Decree, p. 9, ¶ 28 and pp. 9-10, ¶¶ 29-31.

   **4**.  **Contribution Protection.** Settling Defendant will receive contribution protection to the extent permitted by law for "Matters Addressed" by the Consent Decree. Consent Decree, pp. 11, ¶¶ 36-37. If the Consent Decree is not approved by the Court, the agreement is voidable at the discretion of either of the parties, and the terms of the agreement may not be used as evidence in any litigation between the parties. Consent Decree, p. 13, ¶ 47.

   **5**.  **Covenant Not to Sue by Settling Defendant.** Settling Defendant covenants not to sue and agrees not to assert any claims against DTSC or its contractors or employees that arise out of the transaction or occurrence that is the subject matter of DTSC's First Amended Complaint for any injuries, losses, costs, or damages caused as a result of the performances or requirements of the Consent Decree or DTSC's response actions at the Site. Consent Decree, p. 11, ¶ 35.

  **B.** **Public Notice and Opportunity for Comment**

   DTSC lodged the proposed Consent Decree with the Court on June 2, 2015. ECF No. 131. On June 19, 2015, DTSC published notice of the proposed Consent Decree in the California Regulatory Notice Register (2015, Volume No. 25-Z), page 1060 ("Notice"), and invited the public to comment on the proposed Consent Decree. The Notice requested that comments on the Consent Decree be submitted to DTSC no later than July 20, 2015. MacNicholl Decl., ¶ 16. DTSC also published notice of the proposed Consent Decree in a local newspaper, the Dixon Tribune. Additionally, on July 20, 2015, DTSC informed defendants and/or their counsel about the proposed Consent Decree and commencement of the public comment period. MacNicholl Decl., ¶ 16.

5

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant West Coast Wood Preserving, LLC (2:14-cv-00595-WBS-EFB)

## IV. ARGUMENT

For the reasons stated below, DTSC is now requesting that the Court approve and sign the proposed Consent Decree, ECF No. 131-1.

### A. Standard of Review for Entry of CERCLA Settlements.

A district court reviewing a CERCLA consent decree must "satisfy itself that the settlement is reasonable, fair, and consistent with the purposes that CERCLA is intended to serve." *United States v. Cannons Engineering Corp.* ("*Cannons*"), 899 F.2d 79, 85 (1st Cir. 1990) (quoting the legislative history to the 1986 CERCLA amendments); *accord United States v. Montrose Chem. Corp.* ("*Montrose*"), 50 F.3d 741, 746 (9th Cir. 1995). "The relevant standard is not . . . whether the settlement is one which the court itself might have fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute." *Cannons*, 899 F.2d at 84. Further, a "district court has an 'obligation to independently scrutinize the terms of [such agreements],' by, *inter alia*, comparing the 'proportion of total projected costs to be paid by the [settling parties] with the proportion of liability attributable to them." *Arizona v. City of Tucson,* 761 F.3d 1005, 1008 (9th Cir. 2014) (quoting *Montrose*, 50 F.3d at 747). Accordingly, the district court should engage in a "comparative analysis." *Id.* at 1012 (quoting *Montrose*, 50 F.3d at 747).

Approval of a proposed consent decree is committed to the discretion of the district court. *United States v. State of Oregon*, 913 F.2d 576, 580 (9th Cir. 1990). The court's discretion should be guided by CERCLA's express policy of encouraging early settlements. *Montrose*, 50 F.3d at 746. Moreover, where the settlement has been negotiated by a governmental agency with expertise in enforcing environmental laws, a district court should "give a proper degree of deference to the agency's expertise." *United States v. Akzo Coatings of Am.*, 949 F.2d 1409, 1426 (6th Cir. 1991); *Montrose*, 50 F.3d at 746 ("[W]here state agencies have environmental expertise they are entitled to 'some deference' with regard to questions concerning their area of expertise.") Since DTSC has expertise concerning the cleanup of the Site, the Court may afford "some deference" to DTSC's judgment concerning the environmental issues underlying the CERCLA

6

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant West Coast Wood Preserving, LLC (2:14-cv-00595-WBS-EFB)

Consent Decree in this case. *See City of Tucson*, 761 F.3d at 1014. In *Montrose*, the Ninth Circuit noted that:

> CERCLA's settlement policy of encouraging early settlement is strengthened when a government agency charged with protecting the public interest "has pulled the laboring oar in constructing the proposed settlement."

*Montrose*, 50 F.3d at 746 (quoting *Cannons*, 899 F.2d at 84); *see also United States v. Comunidades Unidas Contra la Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000). Certain state agencies may have more expertise concerning the enforcement of environmental laws, which a district court may properly take into account in assessing the deference owed to an agency's expertise. *City of Tucson*, 761 F.3d at 1014 n.8. Here, DTSC is the lead state agency responsible for enforcing the Hazardous Substance Account Act, California Health and Safety Code section 25300 ("HSAA"), and for investigating and remediating releases of hazardous substances in California. The HSAA is the state analog to the federal CERCLA statute. Accordingly, within the confines of fulfilling its duty to independently scrutinize the parties' agreement as required by *Montrose*, the Court may consider DTSC's expertise in the enforcement of environmental laws. *See City of Tucson*, 761 F.3d at 1014.

Courts exercising their duties to independently scrutinize consent decrees under CERCLA have considered the following factors: (1) procedural fairness; (2) substantive fairness; (3) reasonableness; and (4) fidelity to CERCLA. *Cannons*, 899 F.2d at 85-93. As set forth below, all these criteria are satisfied by the proposed Consent Decree. Accordingly, even if the Court were to accord no deference to DTSC's expertise, the Court should nonetheless approve and enter the Consent Decree.

### 1. The Consent Decree is Procedurally Fair.

"[F]airness in the CERCLA settlement context has both procedural and substantive components." *Cannons*, 899 F.2d at 86. "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness and bargaining balance." *Id*.

Here, the proposed Consent Decree is the product of arms'-length settlement negotiations

7

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant West Coast Wood Preserving, LLC (2:14-cv-00595-WBS-EFB)

that took place over many months between Settling Defendant and DTSC. MacNicholl Decl., ¶ 14. Settling Defendant was represented by counsel throughout these negotiations, and Settling Defendant participated in drafting the terms of the proposed Consent Decree. MacNicholl Decl., ¶ 15.

In a further attempt to ensure procedural fairness, DTSC published notice of the lodging of the proposed Consent Decree in the California Regulatory Notice Register, published notice in a local newspaper, gave notice to the other defendants in this action, and invited comments on the proposed Consent Decree. MacNicholl Decl., ¶ 16. DTSC did not receive comment letters on the proposed Consent Decree. MacNicholl Decl., ¶ 17. DTSC has thus ensured procedural fairness by engaging in arms'-length negotiations, and providing the public with notice and an opportunity to comment on the proposed Consent Decree.

### 2. The Consent Decree is Substantively Fair.

To determine whether a proposed consent decree is substantively fair, a district court must scrutinize it to determine whether the estimates of responsibility and damages were fairly proportioned among the settling defendants. *Cannons*, 899 F.2d at 87-89. In assessing substantive fairness, courts often "compare the proportion of total projected costs to be paid by the settlors with the proportion of liability attributable to them, and then . . . factor into the equation any reasonable discounts for litigation risks, time savings, and the like that may be justified." *Montrose,* 50 F.3d at 747. A district court reviewing consent decrees negotiated by a state government agency may give the state agency's expertise "some deference" when weighing substantive fairness. *City of Tucson*, 761 F.3d at 1014. Such deference is appropriate here because DTSC is a state agency with the necessary expertise in this area. However, DTSC has provided the Court with the information necessary to make a reasoned assessment of the Consent Decree. As set forth below, even if the Court does not defer to DTSC's judgment on substantive fairness, the facts support an independent finding of fairness.

The settlement requires that Settling Defendant, as a former owner and operator of the Site reimburse DTSC for its response costs in the amount of $350,000. This sum reflects Settling Defendant's proportionate liability at the Site, Settling Defendant's commitment to early

settlement, and DTSC's avoided litigation costs and risks. With respect to Settling Defendant's share of liability, taking into account years of ownership and years of operation at the Site, Settling Defendant's proportionate liability for DTSC's response costs at the Site is approximately one third of DTSC's response costs at the Site, because while some of the other defendants merely owned the Site, Settling Defendant was both an owner and operator at the Site. Under this Consent Decree, Settling Defendant will pay approximately fourteen percent of DTSC's past response costs.

With respect to litigation risk and avoided costs, Settling Defendant filed a motion for summary judgment asserting that DTSC's CERCLA claim was time-barred by the statute of limitations, and that Settling Defendant had no CERCLA liability because it was not a successor in interest to PWP. DTSC filed an opposition to this motion, disputing both of these assertions. Litigating the statute of limitations and successor liability claims and conducting discovery would have been costly and time consuming and a risk to DTSC. *See Fort James Operating Co.*, 313 F.Supp.2d at 909 (litigation risks include the possibility that the statute of limitations would bar any recovery).

The following factors support the substantive fairness of the settlement. DTSC and Settling Defendant engaged in arms'-length settlement negotiations. MacNicholl Decl., ¶ 14. Settling Defendant was represented by counsel throughout those negotiations. *Id.* Those negotiations included a day-long mediation with a neutral mediator, who has years of experience both as a mediator and in the field of environmental law. *Id.* By engaging in mediation and reaching an early settlement, the parties were able to avoid lengthy, complex, and costly litigation that would have entailed significant discovery, pre-trial research and filings, and a trial. *See United States v. Fort James Operating Co.*, 313 F.Supp.2d 902, 909 (E.D. Wis. 2004) ("Given CERCLA's joint and several liability scheme, the government may find it appropriate to offer relatively favorable terms to early settlers.").

The settlement reflects the Settling Defendant's proportionate liability at the Site, DTSC's assessments of the strengths and weaknesses of the evidence supporting DTSC's claim of Settling Defendant's liability at the Site, and the litigation risks and costs of going to trial in this case.

9

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant West Coast Wood Preserving, LLC (2:14-cv-00595-WBS-EFB)

DTSC has ample basis for determining that Settling Defendant's settlement is substantively fair. For the above reasons, the Court should give some deference to DTSC's evaluation and find that the proposed Consent Decree is substantively fair.

### 3. The Consent Decree is Reasonable.

Determining whether a proposed consent decree is reasonable is a "multifaceted exercise." *Cannons*, 899 F.2d at 89. "The court's role is not to determine whether the [settlement] is the best possible settlement that the State could have achieved, but rather whether the settlement is within the reaches of the public interest." *Arizona v. Nucor Corp*. ("*Nucor*"), 825 F.Supp. 1452, 1464 (D. Ariz. 1992), *aff'd*, 66 F.3d 213 (9th Cir. 1995) (citation omitted). The *Cannons* court recognized that:

> [T]he reasonableness of a proposed settlement must take into account foreseeable risks of loss. . . . [E]ven if the government's case is sturdy, it may take time and money to collect damages or to implement private remedial measures through litigatory success. To the extent that time is of essence or that transaction costs loom large, a settlement which nets less than full recovery of cleanup costs is nonetheless reasonable.

*Cannons*, 899 F.2d at 90. In determining whether a settlement is reasonable, courts look to: (1) whether the proposed settlement will be effective in ensuring a cleanup of the property; (2) whether it satisfactorily compensates the public for the costs of cleanup; and (3) whether the settlement reflects the relative strengths of the parties' bargaining positions. *Id*. at 89-90.

<u>Effectiveness</u>. The proposed Consent Decree will be effective in ensuring cleanups of contaminated sites, because under the settlement Settling Defendant will contribute significant funds toward the reimbursement of DTSC's past response costs incurred cleaning up the Site.

<u>Benefit to the Public</u>. The proposed Consent Decree satisfactorily compensates the public for response costs incurred, because the proposed Consent Decree requires Settling Defendant to pay a share of DTSC's costs incurred cleaning up the Site.

<u>Relative Strengths of the Parties' Positions</u>. The proposed Consent Decree reflects the relative strengths of the parties' bargaining positions. Although DTSC believes Settling Defendant has liability as an owner and operator of a contaminated site, there are litigation risks

10

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant West Coast Wood Preserving, LLC (2:14-cv-00595-WBS-EFB)

to pursuing this case to trial. Litigation risks include the possibilities that a court would not agree that Settling Defendant was a successor to PWP, and/or that the statute of limitations would bar any recovery by DTSC against Settling Defendant. Accordingly, DTSC acknowledges that there is a risk that it may not be able to achieve a complete recovery against Settling Defendant, and that litigating the matter will entail substantial expense. The proposed Consent Decree requires Settling Defendant to pay a portion ($350,000) of DTSC's response costs incurred to clean up the Site, without the long delays and costs associated with litigation. The settlement payment required by the proposed Consent Decree properly reflects the relative bargaining positions of DTSC and Settling Defendant. For the reasons set forth above, the proposed Consent Decree is reasonable.

**4.     The Consent Decree Is Consistent with the Purposes of CERCLA**

A consent decree must also be consistent with the "overarching principles" of CERCLA, namely, "accountability, the desirability of an unsullied environment, and the promptness of response activities." *Nucor*, 825 F.Supp. at 1464 (quoting *Cannons*, 899 F.2d at 90). CERCLA's twin goals are: (1) to create a prompt and effective response to hazardous waste problems; and (2) to ensure that those responsible for the problems their disposal caused bear the costs and responsibility for remedial action. *Cannons*, 899 F.2d at 90-91.

The proposed Consent Decree requires Settling Defendant to pay DTSC $350,000 to reimburse DTSC for a portion of the costs it incurred cleaning up the Site. The Consent Decree requires Settling Defendant to bear responsibility for the response costs caused by releases and/or threatened releases of hazardous substances at the Site. The proposed Consent Decree holds Settling Defendant accountable, and it also preserves funds for DTSC to enable it to effectuate prompt and effective responses to hazardous waste problems in order to protect the environment. In the present case, the proposed Consent Decree satisfies the two goals of CERCLA. It is therefore consistent with the principles of CERCLA, and should be approved.

V.     CONCLUSION

The proposed Consent Decree is the result of arms'-length settlement negotiations between DTSC and Settling Defendant. The Consent Decree requires Settling Defendant to pay a portion of DTSC's response costs for the investigation and cleanup at the Site. It is reasonable,

11

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant West Coast Wood Preserving, LLC (2:14-cv-00595-WBS-EFB)

fair, and consistent with the purposes that CERCLA is intended to serve. For the reasons described above, DTSC respectfully requests that the Court approve and enter the proposed Consent Decree as a judgment of the Court.

Dated: July 24, 2015

                                     Respectfully submitted,

                                     KAMALA D. HARRIS
                                     Attorney General of California

                                     ___/s/_____
                                     OLIVIA W. KARLIN
                                     Deputy Attorney General
                                     *Attorneys for Plaintiffs*

12

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant West Coast Wood Preserving, LLC (2:14-cv-00595-WBS-EFB)