KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
SARAH E. MORRISON, State Bar No. 143459
Supervising Deputy Attorney General
OLIVIA W. KARLIN, State Bar No. 150432
LAURA J. ZUCKERMAN (Counsel for service)
State Bar No. 161896
Deputy Attorneys General
 1515 Clay Street, 20th Floor
 Oakland, CA 94612
 Telephone: (510) 622-2174
 Fax: (510) 622-2270
 E-mail: Laura.Zuckerman@doj.ca.gov
*Attorneys for Plaintiffs California*
*Department of Toxic Substances Control and Toxic*
*Substances Control Account*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,**<br><br>Plaintiffs,<br><br>v.<br><br>**JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,**<br><br>Defendants.<br><hr>**AND RELATED COUNTERCLAIMS AND CROSS CLAIMS** | 2:14-cv-00595-WBS-EFB<br><br>**DECLARATION OF PETER MACNICHOLL IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDICIAL APPROVAL OF CONSENT DECREE BETWEEN PLAINTIFFS AND DEFENDANT WEST COAST WOOD PRESERVING, LLC**<br><br>Judge:      William B. Shubb<br><br>**Date: August 24, 2015**<br>**Time: 2:00 p.m.**<br>Courtroom 5, 14th Floor, 501 I Street, Sacramento, CA 95814 |

### DECLARATION OF PETER MACNICHOLL

I, Peter MacNicholl, declare:

1.     I make this declaration in support of the Motion for Judicial Approval of Consent Decree between Plaintiffs State of California Department of Toxic Substances Control and the Toxic Substances Control Account ("Plaintiffs," or "DTSC") and Defendant West Coast Wood Preserving, LLC ("Settling Defendant"). The facts stated in this declaration are based on my personal knowledge and on my review of files kept by DTSC. If called as a witness, I would and could competently testify hereto.

2.     I have been employed with DTSC as a Project Manager for fourteen years, and in this capacity have overseen the cleanup process at many sites throughout the State. At DTSC, I am assigned to the National Priorities List Unit within the Cleanup Program and have worked in the Unit for over five years. The National Priorities List Unit conducts and oversees response actions at the former Wickes Industries Site, located at 147 A Street, Elmira, Solano County, CA, identified by Solano County Assessor's Parcel Numbers 142-010-130, 142-010-140 and 142-042-010. ("the Site"). As Project Manager, I have been actively involved with the Site since approximately March 2010. I am familiar with the Site's history, and I am knowledgeable about DTSC's work at the Site.

3.     I have visited the Site on many occasions. I have participated in, among other things, Site inspections, oversight of groundwater sampling, preparation of the Removal Action Workplan ("RAW") in 2010, and implementation and oversight of the soil excavation activity in 2011, described in the RAW. I have obtained and reviewed historical documents concerning the Site from the files of the California Regional Water Control Board, Central Valley Region ("Regional Board") and DTSC's files. As the Project Manager for the Site, I have also managed contracts and the staff of environmental engineering firms who have worked at the Site on behalf of DTSC.

### Site History

4.     The Site is a former wood treatment and preserving facility where past operations have contaminated the soil and groundwater with arsenic, chromium and copper. As a result of

1

1  the wood preserving operations at the Site, hazardous substances have been, and continue to be,

2  released and/or threatened to be released into the environment at and from the Site.

3       5.     At different periods of time, each defendant in this action owned and/or operated

4  the Site.  From approximately 1972 to 1982, wood preserving operations were conducted at the

5  Site.  Pacific Wood Preserving ("PWP") conducted wood preserving operations at the Site from

6  approximately 1972 to approximately September 12, 1979, and owned the Site from 1977 to

7  approximately September 12, 1979, when it sold the Site to the Wickes Corporation.  DTSC

8  alleges that Settling Defendant is a successor to PWP.

9  **Response Actions and Response Costs at the Site**

10       6.     From the 1980's through 2005, the Wickes Corporation and its successor,

11  defendant Collins & Aikman Products, LLC ("C&A Products"), under the oversight of DTSC,

12  took various response actions to address environmental contamination at, around, and/or beneath

13  the Site.  Those actions included, among other things, soil excavation, installing an asphalt cap

14  over contaminated soils, constructing a building and a drainage system over another contaminated

15  area of the Site, installing and operating a groundwater extraction and treatment system, and

16  groundwater monitoring.  On or about March 20, 1997, C&A Products sold the Site to Jim

17  Dobbas, Inc. ("Dobbas"), and Continental Rail, Inc. ("CRI").  On or about May 17, 2005, C&A

18  Products filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District

19  of Michigan, Case No. 05-55932.  In November 2005, while in Chapter 11 bankruptcy

20  proceedings, C&A Products informed DTSC that it was unwilling to continue to perform

21  response actions at the Site.

22       7.     In 2006, DTSC requested that Dobbas and CRI, the owners of the Site, carry out

23  response actions to address contamination at the Site.  Dobbas and CRI refused.  As a result,

24  DTSC issued an Imminent or Substantial Endangerment Determination on November 9, 2006,

25  and initiated state-funded contracts to evaluate response actions.

26       8.     In 2007, DTSC tried to resume operating the groundwater treatment system at the

27  Site, but the system would have required too many repairs to clean up the groundwater to

28  remediation goals in a timely manner.  Because of the treatment system failure, DTSC

2

1  reevaluated response actions for the Site.  In July 2010, DTSC finalized the RAW for the Site

2  calling for contaminated soil excavation, off-site disposal, backfilling, confirmation sampling,

3  demolition of the groundwater extraction and treatment system, and long-term groundwater

4  monitoring.  The RAW noted that contaminated groundwater had migrated from beneath the Site

5  to the nearby residential area, which created the potential for private irrigation wells located in the

6  residential area to extract and distribute contaminated groundwater.

7      9.      On or about February 11, 2011, Dobbas and CRI sold the Site to defendant Van

8  Over.  On March 16, 2011, DTSC issued an Imminent or Substantial Endangerment

9  Determination Order and Remedial Action Order ("I/SE Order") ordering Dobbas, CRI, and Van

10  Over to conduct the response actions described in the RAW and to take additional response

11  actions at the Site.  Dobbas, CRI, and Van Over failed to comply with the I/SE Order.

12      10.     DTSC has incurred costs for "response" as that term is defined in CERCLA

13  section 101(25), 42 U.S.C. § 9601(25), in taking actions related to the release and/or threatened

14  release of hazardous substances at, around, and/or beneath the Site.  DTSC's response actions

15  included, but were not limited to, the following activities:  efforts to repair and restart the

16  groundwater extraction and treatment system, completion of a removal investigation for site soils,

17  preparation of the RAW, implementation of the RAW, and monitoring of stormwater and

18  groundwater.

19      11.     Presently, DTSC is monitoring the condition of the asphalt cap at the Site, and is

20  conducting periodic stormwater monitoring and quarterly groundwater monitoring and reporting

21  to evaluate contaminant trends and ensure the protection of the off-site private irrigation wells.

22  Continued monitoring of stormwater and evaluating the condition of the asphalt cap is necessary

23  to make sure contaminants below the cap are not mobilized by storm water run-off, to prevent

24  discharges to the drainage ditches near the Site, and to block direct exposure of contaminated soil

25  to humans or environmental receptors.  Continued groundwater monitoring and reporting is

26  necessary to make certain that the Site is not causing further groundwater contamination and to

27  ensure that contaminant concentrations at the four off-site private irrigation wells do not exceed

28  drinking water standards.

3

Declaration Of Peter MacNicholl In Support Of Plaintiffs' Motion For Judicial Approval Of Consent Decree
Between Plaintiffs  And Defendant West Coast Wood Preserving, LLC)

1       12.    Continued stormwater and groundwater monitoring is also necessary to further

2   assess the performance of the 2011 soil excavation, and to assist with preparing a Five-Year

3   Review Report (preparation scheduled to begin in Fall 2016) that will evaluate the effectiveness

4   of the 2011 soil removal action conducted pursuant to the 2010 RAW.  It is premature to

5   determine the efficacy of that 2011 removal action until the Five-Year Review process is

6   complete and DTSC receives and evaluates additional stormwater and groundwater monitoring

7   data.  Therefore, at this time, DTSC cannot conclude that all Site actions are finished and

8   complete, or that further response actions at the Site will not be necessary.

9       13.    As of May 5, 2015, DTSC's unreimbursed response costs related to the Site

10   exceeded $2.65 million, exclusive of interest.  DTSC is in the process of remediating the Site, and

11   continues to incur response costs related to the Site.  DTSC currently estimates that total response

12   costs for future investigation and remediation of the contaminated soil, surface water, and

13   groundwater at the Site could reach approximately $3.5 million over the next ten years.

**Settlement Negotiations**

14       14.    I have been informed of the settlement negotiations between the parties regarding

15   the liability of Settling Defendant for DTSC's response costs incurred and to be incurred at the

16   Site. Settling Defendant engaged in arms'-length settlement negotiations.  Settling Defendant was

17   represented by counsel throughout those negotiations.  Those negotiations included a day-long

18   mediation with a neutral mediator, who has years of experience both as a mediator and in the field

19   of environmental law.

20       15.    After arms'-length, good faith settlement negotiations over many months, DTSC

21   and Settling Defendant reached a settlement resolving Settling Defendant's liability in this action.

22   The settlement was incorporated into the Proposed Consent Decree.  DTSC and Settling

23   Defendant participated in drafting the proposed Consent Decree.  DTSC lodged the proposed

24   Consent Decree with the Court on June 2, 2015.

**Publication of Notice of Proposed Consent Decree**

25       16.    On June 19, 2015, DTSC published notice of the proposed Consent Decree in the

26   California Regulatory Notice Register (2015, Volume No. 25-Z), page 1060 ("Notice") and

4

1   invited the public to comment on the proposed Consent Decree.  The Notice requested that

2   comments on the proposed Consent Decree be submitted to DTSC no later than July 20, 2015.  A

3   true and correct copy of the Notice is attached as Exhibit 1.  DTSC also published notice of the

4   Proposed Consent Decree in a local newspaper, the Dixon Tribune.  A true and correct copy of

5   the newspaper publication is attached as Exhibit 2.  Additionally, on July 20, 2015, DTSC

6   informed all defendants and/or their counsel by e-mail about the execution of the proposed

7   Consent Decree and the commencement of the public comment period.  A true and correct copy

8   of this e-mail is attached at Exhibit 3.

9        17.     DTSC did not receive comments on the proposed Consent Decree.

10        I declare under penalty of perjury that the foregoing is true and correct.

11   Executed on July 24, 2015, at Sacramento, California.

12

13                       PETER MACNICHOLL, P.E.

14                       Project Manager
                    National Priorities List Unit

15                       Cleanup Program – Sacramento Office

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            5

EXHIBIT 1

result, the Department implemented the All Patient Refined Diagnosis–Related Group (APR–DRG) reimbursement methodology.

Under the APR–DRG methodology, a hospital's reimbursement for a particular patient is based on a wage–adjusted statewide base price, wage–adjusted rural remote base price, or transition base price, and a numeric value for the APR–DRG code for the patient's described condition. The final APR–DRG payment may include the application of payment adjustors, add–on payments and subtraction of other health coverage and other share of cost, as applicable.

Title 42, Code of Federal Regulations, Section 431.52(b)(4), and Title 22 California Code of Regulations, Section 51006, subdivision (a)(4) recognize that it may be common practice for Medi–Cal recipients residing in some areas of California to obtain medical services in adjacent areas in the states of Oregon, Nevada, and/or Arizona. In recognition of the role that border hospitals may play in providing services to those Medi–Cal beneficiaries, the Department intends to submit a SPA to further align payment standards applicable to California hospitals and OOS border hospitals to the greatest extent reasonably practicable. Specifically, the proposed SPA will provide that in calculating payment for border hospitals under the APR–DRG methodology, the Department will apply:

1) The most recent hospital–specific wage area index values published by CMS and used by the federal Medicare program, adjusted by a budget neutrality factor of 0.9797 which the Department is also proposing to apply to the hospital–specific wage index values for California hospitals beginning July 1, 2015.

2) The rural remote base price if the hospital is defined as a rural hospital by the federal Medicare program and meets the California State Plan definition of "remote".

3) A Cost–to–Charge (CCR) ratio for determining eligibility for outlier payments that is equal to the unweighted average of the Medicare urban CCR and the Medicare rural CCR, including operating and capital components for the state in which the border hospital is located.

4) The enhanced Neonatal Intensive Care Unit (NICU) policy adjustment for a hospital stay assigned to the neonate care category if the California Children's Services (CCS) program determines that the hospital qualifies as a Regional NICU pursuant to CCS Manual of Procedures, Chapter 3.25.1, or that it qualifies as a Community NICU pursuant to CCS Manual of Procedures Chapter 3.25.2, and meets CCS standards for neonatal surgery. A border hospital that wishes to qualify for the 1.75 NICU policy adjustment must submit an application to the CCS program in accordance with CCS Manual Chapter 3.25.1 or Chapter 3.25.2.

The Department estimates that these changes will result in an annual increase in Medi–Cal fee–for–service expenditures of approximately $1.4 million annually (federal and state dollars) assuming similar utilization and patients' casemix as in recent years.

PUBLIC REVIEW AND COMMENTS

Copies of this public notice will be available at welfare offices in every county of the State.

Copies of the State Plan Amendment that amends California's Medicaid State Plan may be requested, in writing, from Mr. John Mendoza, Department of Health Care Services, Safety Net Financing Division, MS 4518, P.O. Box 997436, Sacramento, CA 95899–7436.

Written comments concerning the proposal may be mailed to Mr. Mendoza at the above address and must be received on or before August 3, 2015.

## DEPARTMENT OF TOXIC SUBSTANCES CONTROL

### Former Wickes Forest Industries Site Proposed Consent Decree

### 147 A Street, Elmira, Solano County, California 91792

**NOTICE OF PUBLIC COMMENT PERIOD: June 19, 2015 through July 20, 2015**

**Si usted desea informacion en espanol sobre este aviso, favor de llamar a Jesus Cruz sin costo al (866) 495–5651.**

The Department of Toxic Substances Control ("DTSC") invites you to review and comment on a proposed consent decree (the "Consent Decree") with West Coast Wood Preserving, LLC ("WCWP") regarding the former Wickes Forest Industries site located at 147 A Street, Elmira, Solano County, California 91792 (the "Site"). The Consent Decree resolves DTSC's claims against WCWP under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. section 9601, et seq., for the Site. On March 3, 2014, DTSC filed a CERCLA lawsuit against several parties, including WCWP, to recover DTSC's costs of investigating and cleaning up hazardous substances releases at the Site. In its lawsuit, DTSC alleges that WCWP is a successor in interest to a prior owner/operator of the Site. Under the Consent Decree, WCWP will pay $350,000 to reimburse DTSC for a

portion of its cleanup and oversight costs, subject to certain conditions and reservations.

DTSC will consider comments received during the public comment period on the Consent Decree and file with the Court any written comments received and DTSC's responses thereto. The Court may then enter or approve the Consent Decree. DTSC also reserves the right to withdraw or withhold its consent to entry (approval) of the Consent Decree if comments regarding the Consent Decree disclose facts or considerations that indicate the Consent Decree is inappropriate, improper or inadequate.

#### WHERE DO I SUBMIT MY COMMENTS?

DTSC will consider comments that are postmarked or received by July 20, 2015. Please submit comments by July 20, 2015 to:

Marilee Hanson
DTSC Office of Legal Counsel
P.O. Box 806
Sacramento, CA 95812
Marilee.Hanson@dtsc.ca.gov

#### You may view documents at the following locations:

The Consent Decree and background documents maybe examined on the DTSC EnviroStor website at: https://www.envirostor.dtsc.ca.gov/public/profile_report.asp?global_id=48240001.

You may also review documents in the File Room at DTSC's Cal Center office (by appointment only) located at:

Department of Toxic Substances Control
8800 Cal Center Drive
Sacramento, California 95826–3200
Call (916) 255–3758 for an appointment

#### For questions on the Wickes Forest Industries Site or the proposed Consent Decree:

Jesus Cruz
Department of Toxic Substances Control
Public Participation Specialist
8800 Cal Center Drive
Sacramento, CA 95826–3200
(916) 255–3315; 1–866–495–5651
Jesus.Cruz@dtsc.ca.gov

Peter MacNicholl, Project Manager
Department of Toxic Substances Control
Cleanup Program
8800 Cal Center Drive
Sacramento, CA 95826–3200
(916) 255–3657
Peter.MacNicholl@dtsc.ca.gov

---

## PROPOSITION 65

### OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT

### SAFE DRINKING WATER AND TOXIC ENFORCEMENT ACT OF 1986 (PROPOSITION 65) NOTICE OF INTENT TO LIST

### TERIPARATIDE

### JUNE 19, 2015

The California Environmental Protection Agency's Office of Environmental Health Hazard Assessment (OEHHA) intends to list teriparatide as known to the state to cause cancer under the Safe Drinking Water and Toxic Enforcement Act of 1986[1]. This action is being proposed under the "Formally Required to Be Labeled or Identified" listing mechanism.[2]

| Chemical | CAS No. | Toxicological Endpoint | Reference |
|----------|---------|------------------------|-----------|
| Teripara–tide | 52232–67–4 | Cancer | FDA (2013) |

**Background on listing via the formally required to be labeled or identified mechanism:** A chemical must be listed under Proposition 65[3] and its implementing regulations (Section 25902[4]) when a state or federal agency has formally required it to be labeled or identified as causing cancer or reproductive toxicity.

---

[1] Commonly known as Proposition 65, the Safe Drinking Water and Toxic Enforcement Act of 1986 is codified in Health and Safety Code section 25249.5 *et seq.*
[2] See Health and Safety Code section 25249.8(b) and Title 27, Cal. Code of Regs., section 25902.
[3] See Health and Safety Code section 25249.8(b).
[4] All referenced regulatory sections are from Title 27 of the Cal. Code of Regulations.

EXHIBIT 2

EXHIBIT 3

# PROOF OF PUBLICATION
## (2015.5 C.C.P.)

(This space is for the County Clerk's Filing Stamp)

STATE OF CALIFORNIA,
COUNTY OF SOLANO, ss.

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years, and not a party to or interested in the above-entitled matter. I am the principal clerk of the printer of the DIXON TRIBUNE, a newspaper of general circulation, printed and published weekly in the City of Dixon, County of Solano, and which newspaper has been adjudged a newspaper of general circulation by the Superior Court of the County of Solano, State of California, under the date of April 21, 1952, Case Number 25594; that the notice, of which the annexed is a printed copy (set in type not smaller than nonpareil) has been published in each regular and entire issue of said newspaper and not in any supplement thereof on the following dates, to wit: *June*

*19*

all the year *2015*

I certify (or declare) under penalty of perjury that the foregoing is true and correct.

Dated at DIXON, California, this *19th*

day of *June 2015*

*Kathy Ayala*
(Signature)

**Proof of Publication of**

PUBLIC NOTICE

Department of Toxic Substances Control                                      June 2015

# Public Notice

The mission of DTSC is to protect California's people and environment from harmful effects of toxic substances through the restoration of contaminated resources, enforcement, regulation and pollution prevention.

**Former Wickes Forest Industries Site**
**Proposed Consent Decree**
147 A Street, Elmira, Solano County, California 91792

**NOTICE OF PUBLIC COMMENT PERIOD:** June 19, 2015 through July 20, 2015

Si usted desea información en español sobre este aviso, favor de llamar a Jesus Cruz sin costo al (866) 495-5651.

The Department of Toxic Substances Control ("DTSC") invites you to review and comment on a proposed consent decree (the "Consent Decree") with West Coast Wood Preserving, LLC ("WCWP") regarding the former Wickes Forest Industries site located at 147 A Street, Elmira, Solano County, California 91792 (the "Site"). The Consent Decree resolves DTSC's claims against WCWP under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. section 9601, et seq., for the Site. On March 3, 2014, DTSC filed a CERCLA lawsuit against several parties, including WCWP, to recover DTSC's costs of investigating and cleaning up hazardous substances releases at the Site. In its lawsuit, DTSC alleges that WCWP is a successor in interest to a prior owner/operator of the Site. Under the Consent Decree, WCWP will pay $350,000 to reimburse DTSC for a portion of its cleanup and oversight costs, subject to certain conditions and reservations.

DTSC will consider comments received during the public comment period on the Consent Decree and file with the Court any written comments received and DTSC's responses thereto. The Court may then enter or approve the Consent Decree. DTSC also reserves the right to withdraw or withhold its consent to entry (approval) of the Consent Decree if comments regarding the Consent Decree disclose facts or considerations that indicate the Consent Decree is inappropriate, improper or inadequate.

**WHERE DO I SUBMIT MY COMMENTS?**
DTSC will consider comments that are postmarked or received by July 20, 2015. Please submit comments by July 20, 2015 to:

Marilee Hanson
DTSC Office of Legal Counsel
P.O. Box 806
Sacramento, CA 95812
Marilee.Hanson@dtsc.ca.gov

**You may view documents at the following locations:**
The Consent Decree and background documents may be examined on the DTSC EnviroStor website at: https://www.envirostor.dtsc.ca.gov/public/profile_report.asp?global_id=48240001

You may also review documents in the File Room at DTSC's Cal Center office (by appointment only) located at:

Department of Toxic Substances Control
8800 Cal Center Drive
Sacramento, California 95826-3200
Call (916) 255-3758 for an appointment

**For questions on the Wickes Forest Industries Site or the proposed Consent Decree:**

Jesus Cruz
Department of Toxic Substances Control
Public Participation Specialist
8800 Cal Center Drive
Sacramento, CA 95826-3200
(916) 255-3315, 1-866-495-5651
Jesus.Cruz@dtsc.ca.gov

Peter MacNicholl, Project Manager
Department of Toxic Substances Control
Cleanup Program
8800 Cal Center Drive
Sacramento, CA 95826-3200
(916) 255-3657
Peter.MacNicholl@dtsc.ca.gov

 

Cal/EPA          DTSC          State of California

CNS#2763405

PROOF OF PUBLICATION

| From: | Hanson, Marilee@DTSC |
|---|---|
| To: | "david.vanover@gmail.com"; "ngleason@kwgattorneys.com"; "jhartmanking@kwgattorneys.com"; "lbrown@perkinscoie.com"; "BRostocki@ReedSmith.com" |
| Cc: | dennis.beck@doj.ca.gov; Olivia W. Karlin (Olivia.Karlin@doj.ca.gov); laura.zuckerman@doj.ca.gov |
| Subject: | Public Comment Period for Proposed DTSC Settlement with Jim Dobbas, Inc. re Former Wickes Forest Industries Site, Elmira, Solano County, California |
| Date: | Friday, July 17, 2015 12:20:00 PM |
| Attachments: | Wickes Dobbas CD Public Notice Final 7-7-15.pdf |
| | Wickes Dobbas CD-Lodged 7-15-17.pdf |

Dear Counsel and Mr. Van Over:

Attached please find the public notice of DTSC's proposed Consent Decree with West Coast Wood Preserving, LLC (WCWP) regarding the former Wickes Forest Industries Site in Elmira, Solano County, California (the Consent Decree).  The notice was published today in the California Regulatory Notice Register at pages 1210-1211 and is available online at http://www.oal.ca.gov/res/docs/pdf/notice/29z-2015.pdf.  A copy of the Consent Decree is also attached.

The public comment period runs from July 17, 2015 through August 17, 2015.

Thank you for your attention to this matter.

Sincerely,

Marilee Hanson
Senior Staff Counsel
Office of Legal  Counsel
Department of Toxic Substances Control
(o) 916-327-0979