1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  SARAH E. MORRISON, State Bar No. 143459
   Supervising Deputy Attorney General
3  OLIVIA W. KARLIN, State Bar No. 150432
   LAURA J. ZUCKERMAN (Counsel for service)
4  State Bar No. 161896
   Deputy Attorneys General
5    1515 Clay Street, 20th Floor
     Oakland, CA 94612
6    Telephone:  (510) 622-2174
     Fax:  (510) 622-2270
7    E-mail:  Laura.Zuckerman@doj.ca.gov
   *Attorneys for Plaintiffs California*
8  *Department of Toxic Substances Control and Toxic*
   *Substances Control Account*

9

IN THE UNITED STATES DISTRICT COURT

10

FOR THE EASTERN DISTRICT OF CALIFORNIA

11

SACRAMENTO DIVISION

12

13

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,**<br><br>Plaintiffs,<br><br>v.<br><br>**JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,**<br><br>Defendants.<br><br>―――――――――<br><br>**AND RELATED COUNTERCLAIMS AND CROSS CLAIMS** | 2:14-cv-00595-WBS-EFB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDICIAL APPROVAL OF CONSENT DECREE BETWEEN PLAINTIFFS AND DEFENDANT JIM DOBBAS, INC.**<br><br>Date:         October 19, 2015<br>Time:        2:00 p.m.<br>Place:       Courtroom 5, 14th Floor<br>               501 I Street<br>               Sacramento, CA  95814<br>Trial:         January 4, 2017<br><br>Action Filed:  March 3, 2014 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................. 1

     A.    Site History ............................................................................... 1

     B.    Response Actions at the Site ..................................................... 2

     C.    The First Amended Complaint................................................... 3

III.   SUMMARY OF CONSENT DECREE PROVISIONS ......................... 4

     A.    Terms of the Consent Decree .................................................... 4

         1.    Payment to DTSC ......................................................... 4

         2.    Access to Information .................................................... 4

         3.    Covenant Not to Sue by DTSC ..................................... 4

         4.    DTSC's Reservations of Rights ..................................... 5

         5.    Contribution Protection................................................. 5

         6.    Covenant Not to Sue by Settling Defendant ...................... 5

     B.    Public Notice and Opportunity for Comment ........................... 5

IV.   ARGUMENT ........................................................................................ 6

     A.    Standard of Review for Entry of CERCLA Settlements............. 6

         1.    The Consent Decree is Procedurally Fair............................ 8

         2.    The Consent Decree is Substantively Fair ......................... 8

         3.    The Consent Decree is Reasonable .................................. 10

         4.    The Consent Decree Is Consistent with the Purposes of CERCLA ...................................................................... 11

V.    CONCLUSION .................................................................................. 12

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Arizona v. City of Tucson*
761 F.3d 1005 (9th Cir. 2014)..........................................................................6, 7, 8

*Arizona v. Nucor Corp.*
("*Nucor*"), 825 F.Supp. 1452 (D. Ariz. 1992), *aff'd*, 66 F.3d 213 (9th Cir. 1995)..... 10, 11, 12

*United States v. Akzo Coatings of Am.*
949 F.2d 1409 (6th Cir. 1991) ................................................................................. 7

*United States v. Cannons Engineering Corp.*
("*Cannons*"), 899 F.2d 79 (1st Cir. 1990)....................................................*passim*

*United States v. Comunidades Unidas Contra la Contaminacion*
204 F.3d 275 (1st Cir. 2000) ................................................................................... 7

*United States v. Fort James Operating Co.*
313 F.Supp.2d 902 (E.D. Wis. 2004)..................................................................... 10

*United States v. Montrose Chem. Corp.*
("*Montrose*"), 50 F.3d 741 (9th Cir. 1995) ......................................................6, 7, 8

*United States v. State of Oregon*
913 F.2d 576 (9th Cir. 1990)................................................................................... 6

**STATUTES**

Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §
9601 ("CERCLA")......................................................................................*passim*

Hazardous Substance Account Act, California Health and Safety Code § 25300 ("HSAA")........ 7

ii

## I.    INTRODUCTION

Plaintiffs, the State of California Department of Toxic Substances Control and the Toxic Substances Control Account (collectively, "DTSC"), respectfully submit this Memorandum of Points and Authorities in support of DTSC's motion for judicial approval of the proposed Consent Decree between DTSC and Defendant Jim Dobbas, Inc. ("Settling Defendant") concerning the property located at 147 A Street, Elmira, Solano County, CA, identified by Solano County Assessor's Parcel Numbers 142-010-130, 142-010-140 and 142-042-010 ("the Site"). DTSC filed a Complaint in the above-captioned matter on March 3, 2014, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 ("CERCLA"), against several defendants, including Settling Defendant, and then subsequently filed a First Amended Complaint on December 11, 2014 ("First Amended Complaint"), pursuant to CERCLA, amending to add an additional defendant.  In this action, DTSC seeks to recover response costs it incurred or expects to incur in response to the release and/or threatened release of hazardous substances at, around, and/or beneath the Site.  DTSC negotiated a settlement agreement with Settling Defendant resolving its liability in this action.  The settlement agreement is embodied in the proposed Consent Decree lodged with the Court on July 15, 2015.  ECF Nos. 135, 135-1.  Because the proposed Consent Decree between DTSC and Settling Defendant is fair, reasonable, and consistent with the purposes of CERCLA, DTSC requests that the Court approve the Consent Decree and enter it as a judgment of the Court.

## II.   FACTUAL BACKGROUND

### A.    Site History

The defendants in this action are Settling Defendant, West Coast Wood Preserving, LLC ("WCWP"), Continental Rail, Inc. ("CRI"), David Van Over ("Van Over"), Pacific Wood Preserving ("PWP"), and Collins & Aikman Products, LLC ("C & A Products").

At different periods of time, each defendant in this action owned and/or operated the Site. From approximately 1972 to 1982, wood preserving operations were conducted at the Site.  From 1997 to 2011, Settling Defendant owned an undivided fifty percent interest in the Site. Declaration of Peter MacNicholl ("MacNicholl Decl."), ¶ 5.

1

The wood preserving operations at the Site involved the use of hazardous substances, including arsenic, chromium, and copper.  *See* MacNicholl Decl., ¶ 4.   As a result of the wood preserving activities at the Site, hazardous substances have been, and continue to be, released and/or threatened to be released into the environment at and from the Site.  *Id.*

**B.     Response Actions at the Site**

From the 1980's through 2005, the Wickes Corporation and its successor, C&A Products, under the oversight of DTSC, took various response actions to address environmental contamination at, around, and/or beneath the Site.  Those actions included, among other things, soil excavation, installing an asphalt cap over contaminated soils, constructing a building and a drainage system over another contaminated area of the Site, installing and operating a groundwater extraction and treatment system, and groundwater monitoring.  On or about March 20, 1997, C&A Products sold the Site to Settling Defendant and CRI.  On or about May 17, 2005, C&A Products filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Michigan, Case No. 05-55932.  In November 2005, while in Chapter 11 bankruptcy proceedings, C&A Products informed DTSC that it was unwilling to continue to perform response actions at the Site.  MacNicholl Decl., ¶ 6.

In 2006, DTSC requested that Settling Defendant and CRI, the owners of the Site, carry out response actions to address contamination at the Site.  Settling Defendant and CRI refused. As a result, DTSC issued an Imminent or Substantial Endangerment Determination on November 9, 2006, and initiated state-funded contracts to evaluate response actions.  MacNicholl Decl.,¶ 7.

In 2007, DTSC tried to resume operating the groundwater treatment system at the Site, but the system would have required too many repairs to achieve remediation goals in a timely manner.  Because of the treatment system failure, DTSC reevaluated response actions for the Site. In July 2010, DTSC finalized a Removal Action Workplan ("RAW") for the Site that called for contaminated soil excavation, off-site disposal, backfilling, confirmation sampling, demolition of the groundwater extraction and treatment system, and long-term groundwater monitoring.  The RAW noted that contaminated groundwater had migrated from beneath the Site to the nearby residential area, which created the potential for irrigation wells located in the residential area to

2

1   extract and distribute contaminated groundwater.  MacNicholl Decl., ¶ 8.

2       On or about February 11, 2011, Settling Defendant and CRI sold the Site to defendant

3   Van Over.   On March 16, 2011, DTSC issued an Imminent or Substantial Endangerment

4   Determination Order and Remedial Action Order ("I/SE Order") ordering Settling Defendant,

5   CRI, and Van Over to conduct the response actions described in the RAW and to take additional

6   response actions at the Site.  Settling Defendant, CRI, and Van Over failed to comply with the

7   I/SE Order.  MacNicholl Decl., ¶ 9.

8       DTSC has incurred costs of "response," as that term is defined in CERCLA section

9   101(25), 42 U.S.C. § 9601(25), in taking actions related to the release and/or threatened release of

10  hazardous substances at, around, and/or beneath the Site.  MacNicholl Decl., ¶ 10.   DTSC's

11  response actions included, but were not limited to, the following activities:  efforts to repair and

12  restart the groundwater extraction and treatment system, completion of a removal investigation

13  for site soils, preparation of the RAW, implementation of the RAW, and stormwater and

14  groundwater monitoring.  MacNicholl Decl., ¶ 10.

15      As of May 5, 2015, DTSC's unreimbursed response costs related to the Site exceeded

16  $2.65 million, exclusive of interest.  DTSC is in the process of remediating the Site and continues

17  to incur response costs related to the Site.  DTSC currently estimates that total unreimbursed

18  response costs for investigation and remediation of the contaminated soil, along with stormwater

19  and groundwater monitoring at the Site, could reach approximately $3.5 million by 2025 if DTSC

20  has to continue conducting response actions at the Site.  MacNicholl Decl., ¶  13.

21      **C.     The First Amended Complaint**

22      The First Amended Complaint alleges that defendants, as owners and/or operators of the

23  Site, are jointly and severally liable for DTSC's costs incurred responding to releases of

24  hazardous substances into the soil and groundwater at and around the Site.  The First Amended

25  Complaint also requests a declaration that defendants are liable for DTSC's future response costs

26  incurred at the Site pursuant to section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2).

27  ///

28  ///

3

III.     SUMMARY OF CONSENT DECREE PROVISIONS

A.     Terms of the Consent Decree

After engaging in arms'-length, good faith settlement negotiations, DTSC and Settling Defendant resolved Settling Defendant's liability in the above-referenced action.  MacNicholl Decl., ¶ 15.  The parties executed a proposed Consent Decree that includes the following terms.

1.     **Payment to DTSC.**  Settling Defendant shall pay to DTSC the sum of two hundred sixty-five thousand dollars ($265,000) on or before the tenth business day after DTSC and Settling Defendant execute the Consent Decree.   Consent Decree, p. 7, ¶ 22.[1]

2.     **Access to Information.**  Settling Defendant shall provide to DTSC, within thirty (30) calendar days of the Effective Date, copies of any and all records, documents, and information within its possession or control, or that of its agents, relating to:  (a) the ownership, operation, or control of the Site; (b) the purchase, storage, use, handling, generation, treatment, transportation, or disposal of hazardous substances in connection with the Site; (c) releases and/or threatened releases of hazardous substances at or from the Site, including the soil and groundwater; and (d) response actions conducted by any person at the Site.  Consent Decree, p. 7, ¶ 24.

3.     **Covenant Not to Sue by DTSC.**  In exchange for the actions to be performed and the payments that will be made pursuant to the Consent Decree, DTSC covenants not to sue or take administrative action against Settling Defendant pursuant to any theory, whether under any federal or state statute, regulation, or common law, including, but not limited, to CERCLA, the Resource Conservation Recovery Act, the California Hazardous Substances Account Act, California Health and Safety Code § 25300, *et seq*., to do either of the following: (a) recover DTSC's past or future response costs related to the Site; or (b) require Settling Defendant to conduct response actions, including removal or remedial actions, in response to the release or threatened release of hazardous substances in the soils and groundwater at and beneath the Site.

---

[1]  If the Court does not approve the proposed Consent Decree, all funds paid to DTSC by Settling Defendant shall be returned to Settling Defendant.  Consent Decree, p. 12, ¶ 44.

4

1    **4.    DTSC's Reservations of Rights.**  The covenant not to sue undertaken by

2    DTSC is conditioned upon the complete and satisfactory performance by Settling Defendant of all

3    of its obligations under the Consent Decree.  The covenant not to sue is also subject to certain

4    reservations of DTSC's rights, including the right to reopen this action or institute a new action.

5    Such new action could be an action for liability arising from releases and/or threatened release of

6    hazardous substances outside of the Site, and/or an action for criminal liability.  Consent Decree,

7    p. 8, ¶ 27, and p. 9, ¶¶ 28-29.

8    DTSC also reserves its right to bring an action against Settling Defendant if Settling

9    Defendant voluntarily acquires title to the Site after the Effective Date.  Consent Decree, p. 8, ¶

10   27.  Settling Defendant shall make all reasonable good faith efforts to oppose any attempt by a

11   third party to vest Settling Defendant with title to the Site.  *Id*.  If Settling Defendant's sale of its

12   interest in the Site to Van Over is held to have been a sham, for example, then Van Over might

13   seek to reconvey the interest to Settling Defendant after the entry of this Consent Decree.

14   **5**.    **Contribution Protection.**  Settling Defendant will receive contribution

15   protection to the extent permitted by law pursuant to section 113(f)(2) of CERCLA, 42 U.S.C.

16   section 9613(f)(2), and applicable federal and state statutory common law, for "Matters

17   Addressed" in the Consent Decree.   Consent Decree, pp. 10, ¶¶ 33-34.

18   **6.    Covenant Not to Sue by Settling Defendant.**  Settling Defendant

19   covenants not to sue and agrees not to assert any claims against DTSC or its contractors or

20   employees arising out of the transaction or occurrence that is the subject matter of DTSC's First

21   Amended Complaint or Settling Defendant's Counterclaim filed on June 10, 2014, or for any

22   injuries, losses, costs, or damages caused as a result of the performance or requirements of the

23   Consent Decree or DTSC's response actions at the Site.  Consent Decree, p. 10, ¶ 32.

24   **B.    Public Notice and Opportunity for Comment**

25   DTSC lodged the proposed Consent Decree with the Court on July 15, 2015.  ECF Nos.

26   135, 135-1.  On July 17, 2015, DTSC published notice of the proposed Consent Decree in the

27   California Regulatory Notice Register (2015, Volume No. 29-Z), page 1060 ("Notice"), and

28   invited the public to comment on the proposed Consent Decree.  MacNicholl Decl., ¶ 16.  The

5

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between
Plaintiffs and Defendant Jim Dobbas, Inc. (2:14-cv-00595-WBS-EFB)

1  Notice requested that comments on the Consent Decree be submitted to DTSC no later than

2  August 17, 2015.  MacNicholl Decl., ¶ 16, and Ex. 1.  DTSC also published notice of the

3  proposed Consent Decree in a local newspaper, the Dixon Tribune.   MacNicholl Decl., ¶ 16, and

4  Ex. 2.  Additionally, on July 17, 2015, DTSC informed defendants and/or their counsel about the

5  proposed Consent Decree and commencement of the public comment period.   MacNicholl Decl.,

6  ¶ 16, and Ex. 3.  No comments were received.  MacNicholl Decl., ¶ 17.

7  **IV.    ARGUMENT**

8      For the reasons stated below, DTSC is now requesting that the Court approve and sign the

9  proposed Consent Decree, ECF No. 135-1.

10     **A.    Standard of Review for Entry of CERCLA Settlements.**

11     A district court reviewing a CERCLA consent decree must "satisfy itself that the

12  settlement is reasonable, fair, and consistent with the purposes that CERCLA is intended to

13  serve." *United States v. Cannons Engineering Corp*. ("*Cannons*"), 899 F.2d 79, 85 (1st Cir. 1990)

14  (quoting the legislative history to the 1986 CERCLA amendments); *accord United States v.*

15  *Montrose Chem. Corp*. ("*Montrose*"), 50 F.3d 741, 746 (9th Cir. 1995).  "The relevant standard is

16  not . . . whether the settlement is one which the court itself might have fashioned, or considers as

17  ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the

18  governing statute." *Cannons*, 899 F.2d at 84.  Further, a "district court has an 'obligation to

19  independently scrutinize the terms of [such agreements],' by, *inter alia*, comparing the

20  'proportion of total projected costs to be paid by the [settling parties] with the proportion of

21  liability attributable to them." *Arizona v. City of Tucson*, 761 F.3d 1005, 1008 (9th Cir. 2014)

22  (quoting *Montrose*, 50 F.3d at 747).   Accordingly, the district court should engage in a

23  "comparative analysis." *Id.* at 1012 (quoting *Montrose*, 50 F.3d at 747).

24     Approval of a proposed consent decree is committed to the discretion of the district court.

25  *United States v. State of Oregon*, 913 F.2d 576, 580 (9th Cir. 1990).  The court's discretion

26  should be guided by CERCLA's express policy of encouraging early settlements.  *Montrose*, 50

27  F.3d at 746.  Moreover, where the settlement has been negotiated by a governmental agency with

28  expertise in enforcing environmental laws, a district court should "give a proper degree of

1  deference to the agency's expertise." *United States v. Akzo Coatings of Am.*, 949 F.2d 1409, 1426

2  (6th Cir. 1991); *Montrose*, 50 F.3d at 746 ("[W]here state agencies have environmental expertise

3  they are entitled to 'some deference' with regard to questions concerning their area of expertise.")

4  Since DTSC has expertise concerning the cleanup of the Site, the Court may afford "some

5  deference" to DTSC's judgment concerning the environmental issues underlying the CERCLA

6  Consent Decree in this case. *See City of Tucson*, 761 F.3d at 1014.  In *Montrose*, the Ninth

7  Circuit noted that:

8       CERCLA's settlement policy of encouraging early settlement is strengthened when a
        government agency charged with protecting the public interest "has pulled the laboring
9       oar in constructing the proposed settlement."

10  *Montrose*, 50 F.3d at 746 (quoting *Cannons*, 899 F.2d at 84); *see also United States v.*

11  *Comunidades Unidas Contra la Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000).  Certain state

12  agencies may have more expertise concerning the enforcement of environmental laws, which a

13  district court may properly take into account in assessing the deference owed to an agency's

14  expertise.  *City of Tucson*, 761 F.3d at 1014 n.8.  Here, DTSC is the lead state agency responsible

15  for enforcing the Hazardous Substance Account Act, California Health and Safety Code section

16  25300 ("HSAA"), and for investigating and remediating releases of hazardous substances in

17  California.  The HSAA is the state analog to the federal CERCLA statute.  Accordingly, within

18  the confines of fulfilling its duty to independently scrutinize the parties' agreement as required by

19  *Montrose*, the Court may consider DTSC's expertise in the enforcement of environmental laws.

20  *See City of Tucson*, 761 F.3d at 1014.

21       Courts exercising their duties to independently scrutinize consent decrees under CERCLA

22  have considered the following factors: (1) procedural fairness; (2) substantive fairness; (3)

23  reasonableness; and (4) fidelity to CERCLA.  *Cannons*, 899 F.2d at 85-93.  As set forth below, all

24  these criteria are satisfied by the proposed Consent Decree.  Accordingly, even if the Court were

25  to accord no deference to DTSC's expertise, the Court should nonetheless approve and enter the

26  Consent Decree.

27  ///

28

### 1.      The Consent Decree is Procedurally Fair.

"[F]airness in the CERCLA settlement context has both procedural and substantive components." *Cannons*, 899 F.2d at 86.  "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness and bargaining balance." *Id*.

Here, the proposed Consent Decree is the product of arms'-length settlement negotiations that took place over many months between Settling Defendant and DTSC.  MacNicholl Decl., ¶ 14.  Settling Defendant was represented by counsel throughout these negotiations, and Settling Defendant participated in drafting the terms of the proposed Consent Decree.  MacNicholl Decl., ¶ 15.

In a further attempt to ensure procedural fairness, DTSC published notice of the lodging of the proposed Consent Decree in the California Regulatory Notice Register, published notice in a local newspaper, gave notice to the other defendants in this action, and invited comments on the proposed Consent Decree.  MacNicholl Decl., ¶ 16.   DTSC received no comments on the proposed Consent Decree.  MacNicholl Decl., ¶ 17.  DTSC has thus ensured procedural fairness by engaging in arms'-length negotiations, and providing the public with notice and an opportunity to comment on the proposed Consent Decree.

### 2.      The Consent Decree is Substantively Fair.

To determine whether a proposed consent decree is substantively fair, a district court must scrutinize it to determine whether the estimates of responsibility and damages were fairly proportioned among the settling defendants.  *Cannons*, 899 F.2d at 87-89.  In assessing substantive fairness, courts often "compare the proportion of total projected costs to be paid by the settlors with the proportion of liability attributable to them, and then . . . factor into the equation any reasonable discounts for litigation risks, time savings, and the like that may be justified." *Montrose,* 50 F.3d at 747.  A district court reviewing consent decrees negotiated by a state government agency may give the state agency's expertise "some deference" when weighing substantive fairness. *City of Tucson*, 761 F.3d at 1014.  Such deference is appropriate here because DTSC is a state agency with the necessary expertise in this area.  However, DTSC has

8

provided the Court with the information necessary to make a reasoned assessment of the Consent Decree.  As set forth below, even if the Court does not defer to DTSC's judgment on substantive fairness, the facts support an independent finding of fairness.

The settlement requires that Settling Defendant, as a former partial owner of the Site, reimburse DTSC for its response costs in the amount of $265,000.  This sum reflects DTSC's view of Settling Defendant's proportionate liability at the Site, taking into account state law claims as well as federal, discounted to take into consideration Settling Defendant's commitment to early settlement, and DTSC's avoided litigation costs and risks.  Because none of the defendants in this case is similarly situated, DTSC estimated proportionate liability for each defendant, including Settling Defendant, by looking at the totality of the circumstances, taking into account such factors as years of ownership at the Site, percentage of property ownership, status as an operator, compliance with DTSC's cleanup orders, payment of past response costs, and timing of settlement.

Although Settling Defendant owned the Site for fourteen years, Settling Defendant was the owner of only a fifty percent interest in the property.  Moreover, Settling Defendant was never an operator, having never conducted wood preserving operations at the Site, and thus did not cause the contamination at the Site.[2]  On the other hand, Settling Defendant had potential exposure to damages under state law, unlike certain other defendants, because it violated DTSC's I/SE Order, which required it to conduct response actions at the Site.  Taking all of these factors into consideration, DTSC assessed Settling Defendant's proportionate liability at approximately 20% of DTSC's unreimbursed response costs, then discounted this figure to take into consideration the avoidance of litigation costs and risks this early settlement makes possible.  Under the proposed Consent Decree, Settling Defendant will pay approximately ten percent of DTSC's current unreimbursed response costs, or 7.6% of DTSC's total estimated unreimbursed costs if DTSC has to continue conducting all the response actions at the Site through 2025.

---

[2] By contrast, WCWP, which DTSC estimated had 33% liability as a successor to Pacific Wood Preserving, owned the site for approximately seven years, and conducted wood preserving operations at the Site during that time.

The following factors support the substantive fairness of the settlement.  DTSC and Settling Defendant engaged in arms'-length settlement negotiations.  MacNicholl Decl., ¶ 14.  Settling Defendant was represented by counsel throughout those negotiations.  *Id.*  Settling Defendant filed a motion for summary judgment asserting that DTSC's CERCLA claim was time-barred by the statute of limitations.  DTSC filed an opposition to this motion, disputing this assertion.  Litigating the statute of limitations claim and conducting discovery would have been costly and time-consuming, and represented a risk to DTSC.  *See United States v. Fort James Operating Co.*, 313 F.Supp.2d 902, 909 (E.D. Wis. 2004) (litigation risks include the possibility that the statute of limitations would bar any recovery).  Indeed, by reaching an early settlement, the parties were able to avoid lengthy, complex, and costly litigation that would have entailed significant discovery, pre-trial research and filings, and a trial.  *See id.* ("Given CERCLA's joint and several liability scheme, the government may find it appropriate to offer relatively favorable terms to early settlers.").

The settlement reflects the Settling Defendant's proportionate liability at the Site, DTSC's assessments of the strengths and weaknesses of the evidence supporting DTSC's claim of Settling Defendant's liability at the Site, and the litigation risks and costs of going to trial in this case.  DTSC has ample basis for determining that Settling Defendant's settlement is substantively fair.  For the above reasons, the Court should give some deference to DTSC's evaluation, and find that the proposed Consent Decree is substantively fair.

### 3.     The Consent Decree is Reasonable.

Determining whether a proposed consent decree is reasonable is a "multifaceted exercise."  *Cannons*, 899 F.2d at 89.  "The court's role is not to determine whether the [settlement] is the best possible settlement that the State could have achieved, but rather whether the settlement is within the reaches of the public interest."  *Arizona v. Nucor Corp.* ("*Nucor*"), 825 F.Supp. 1452, 1464 (D. Ariz. 1992), *aff'd*, 66 F.3d 213 (9th Cir. 1995) (citation omitted).  The *Cannons* court recognized that:

> [T]he reasonableness of a proposed settlement must take into account foreseeable risks of loss. . . . [E]ven if the government's case is sturdy, it may take time and

money to collect damages or to implement private remedial measures through litigatory success.  To the extent that time is of essence or that transaction costs loom large, a settlement which nets less than full recovery of cleanup costs is nonetheless reasonable.

*Cannons*, 899 F.2d at 90.  In determining whether a settlement is reasonable, courts look to:  (1) whether the proposed settlement will be effective in ensuring a cleanup of the property; (2) whether it satisfactorily compensates the public for the costs of cleanup; and (3) whether the settlement reflects the relative strengths of the parties' bargaining positions.  *Id*. at 89-90.

Effectiveness.  The proposed Consent Decree will be effective in ensuring cleanups of contaminated sites, because under the settlement Settling Defendant will contribute significant funds toward the reimbursement of DTSC's past response costs incurred cleaning up the Site.

Benefit to the Public.  The proposed Consent Decree satisfactorily compensates the public for response costs incurred, because the proposed Consent Decree requires Settling Defendant to pay a share of DTSC's costs incurred cleaning up the Site.

Relative Strengths of the Parties' Positions.  The proposed Consent Decree reflects the relative strengths of the parties' bargaining positions.  Although DTSC believes Settling Defendant has liability as an owner of a contaminated site, there are litigation risks inherent in pursuing this case to trial.  Litigation risks include the possibility that a court would find that the statute of limitations would bar any recovery by DTSC against Settling Defendant.  Accordingly, DTSC acknowledges that there is a risk that it may not be able to achieve a complete recovery against Settling Defendant, and that litigating the matter will entail substantial expense.  The proposed Consent Decree requires Settling Defendant to pay a portion ($265,000) of DTSC's response costs incurred to clean up the Site, while avoiding the long delays and costs associated with litigation. The settlement payment required by the proposed Consent Decree properly reflects the relative bargaining positions of DTSC and Settling Defendant.  For the reasons set forth above, the proposed Consent Decree is reasonable.

**4.     The Consent Decree Is Consistent with the Purposes of CERCLA**

A consent decree must also be consistent with the "overarching principles" of CERCLA, namely, "accountability, the desirability of an unsullied environment, and the promptness of

11

1    response activities." *Nucor*, 825 F.Supp. at 1464 (quoting *Cannons*, 899 F.2d at 90).  CERCLA's

2    twin goals are:  (1) to create a prompt and effective response to hazardous waste problems; and

3    (2) to ensure that those responsible for the problems their disposal caused bear the costs and

4    responsibility for remedial action.  *Cannons*, 899 F.2d at 90-91.

5           The proposed Consent Decree requires Settling Defendant to pay DTSC $265,000 to

6    reimburse DTSC for a portion of the costs it incurred cleaning up the Site.  The Consent Decree

7    requires Settling Defendant to bear responsibility for the response costs caused by releases and/or

8    threatened releases of hazardous substances at the Site.  The proposed Consent Decree holds

9    Settling Defendant accountable, and it also preserves funds for DTSC to enable it to effectuate

10   prompt and effective responses to hazardous waste problems in order to protect the environment.

11   In the present case, the proposed Consent Decree satisfies the two goals of CERCLA.  It is

12   therefore consistent with the principles of CERCLA, and should be approved.

13   **V.     CONCLUSION**

14          The proposed Consent Decree is the result of arms'-length settlement negotiations

15   between DTSC and Settling Defendant.  The Consent Decree requires Settling Defendant to pay a

16   portion of DTSC's response costs for the investigation and cleanup at the Site.  It is reasonable,

17   fair, and consistent with the purposes that CERCLA is intended to serve.  For the reasons

18   described above, DTSC respectfully requests that the Court approve the proposed Consent

19   Decree, and enter it as a judgment of the Court.

20

21   Dated:  September 18, 2015                    Respectfully submitted,

22                                                KAMALA D. HARRIS
                                                  Attorney General of California
23

24                                                /S/_____
                                                  OLIVIA W. KARLIN
25                                                Deputy Attorney General
                                                  *Attorneys for Plaintiffs*
26

27

28

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between
Plaintiffs and Defendant Jim Dobbas, Inc. (2:14-cv-00595-WBS-EFB)