KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
SARAH E. MORRISON, State Bar No. 143459
Supervising Deputy Attorney General
DENNIS L. BECK, JR. State Bar No. 179492
OLIVIA W. KARLIN, State Bar No. 150432
Deputy Attorney General
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 897-0473
  Fax:  (213) 897-2802
  E-mail:  Olivia.Karlin@doj.ca.gov
*Attorneys for Plaintiffs*
*California Department of Toxic Substances Control*
*and the Toxic Substances Control Account*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,**<br><br>**Defendants.** | 2:14-cv-00595-WBS-EFB<br><br><br>**CONSENT DECREE BETWEEN PLAINTIFFS AND DEFENDANT JIM DOBBAS, INC.** |
| **AND RELATED COUNTERCLAIMS AND CROSS CLAIMS** | |

**INTRODUCTION**

1. Plaintiffs, the State of California Department of Toxic Substances Control and the Toxic Substances Control Account (collectively "DTSC"), filed a Complaint in the above-captioned matter on March 3, 2014, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., against several defendants, including Defendant Jim Dobbas, Inc. ("Dobbas"), and then subsequently filed a First Amended Complaint on December 11, 2014 ("First Amended Complaint"), pursuant to CERCLA, amending to add an additional defendant. In this action, DTSC seeks the recovery of response costs incurred or to be incurred by DTSC in responding to releases and/or threatened releases at the property located at 147 A Street, Elmira, Solano County, CA, identified by Solano County Assessor's Parcel Numbers 142-010-130, 142-010-140 and 142-042-010 ("the Site"), pursuant to CERCLA section 107(a), 42 U.S.C. § 9607(a). DTSC also seeks declaratory relief under 28 U.S.C. § 2201 and CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2), alleging that defendants are jointly and severally liable for future response costs to be incurred by DTSC with respect to the Site. DTSC also seeks injunctive relief, treble damages, and civil penalties against certain defendants, including Dobbas, pursuant to a supplemental state law claim under the Hazardous Substances Account Act, California Health and Safety Code section 25300 et seq. ("HSAA"), for those defendants' failure to comply with an Imminent and Substantial Endangerment Determination Order and Remedial Action Order that DTSC issued to those defendants concerning the releases and threatened releases of hazardous substances at the Site.[1]

2. In the First Amended Complaint, DTSC alleges, in relevant part that:

   a. From approximately 1972 to 1982, certain defendants conducted wood preserving operations at the Site. Wood preserving operations involved the use of hazardous substances, including arsenic, chromium, and copper.

---

[1] DTSC also sued David Van Over ("Van Over") for his use of the Site as a residence, in violation of the Imminent and Substantial Endangerment Order and the 1995 Land Use Covenant that restricted the permissible uses of the Site based on environmental conditions there.

b.   As a result of the wood preserving operations at the Site, hazardous substances have been, and continue to be released and/or threatened to be released into the environment at and from the Site.

c.   Pacific Wood Preserving ("PWP") conducted wood preserving operations at the Site from approximately 1972 to approximately September 12, 1979, and owned the Site from 1977 to approximately September 12, 1979.  On September 12, 1979, PWP sold the Site to The Wickes Corporation.  WCWP is a successor to PWP.  From 1979 to approximately 1982, non-party to this agreement Collins & Aikman Products, LLC (formerly known as Collins & Aikman Products Co., and the successor by merger to the Wickes Corporation ("C&A Products"), conducted wood preserving operations at the Site.  Wood preserving operations at the Site ceased in approximately 1982.

d.   From the 1980's through 2005, The Wickes Corporation and its successor, C&A Products, took various response actions under the oversight of DTSC to address environmental contamination at, around, and/or beneath the Site.  Those actions included, among other things, soil excavation, installing an asphalt cap over contaminated soils, constructing a building and a drainage system over another contaminated area of the Site, installing and operating a groundwater extraction and treatment system, and groundwater monitoring.

e.   On or about March 20, 1997, C&A Products sold the Site to Dobbas and Continental Rail, Inc. ("CRI").

f.   On or about May 17, 2005, C&A Products filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Michigan, Case No. 05-55932.  In November 2005, while in Chapter 11 bankruptcy proceedings, C&A Products informed DTSC that it was unwilling to continue to perform response actions at the Site.

g.   In 2006, DTSC requested that Dobbas and CRI, the then-owners and operators of the Site, carry out response actions to address contamination at the Site.  Dobbas and CRI refused.  As a result, DTSC issued an Imminent and Substantial Endangerment Determination on November 9, 2006, and initiated state-funded contracts to evaluate response actions.

h. DTSC initially tried in 2007 and 2008 to resume operating the Wickes/C&A Products remedy that DTSC had approved in 1996. But the groundwater treatment system had already reached a point at which it was evident that it would not clean up the groundwater to remediation goals. Ultimately, the idled groundwater treatment system would require too many repairs to make it cost-effective to restart. But until DTSC discovered the system could not be fixed, DTSC viewed re-starting it as an interim measure to contain the "plume" (i.e. underground area) of groundwater contamination until alternative cleanup approaches could be evaluated, which it eventually did.

i. In July 2010, DTSC finalized a Removal Action Workplan for the Site that called for contaminated soil excavation, off-site disposal, backfilling, confirmation sampling, demolition of the groundwater extraction and treatment system, and long-term groundwater monitoring. The Removal Action Workplan reported that contaminated groundwater had migrated from beneath the Site to the residential area, which created the potential for irrigation wells located there to extract and distribute contaminated groundwater.

j. On or about February 11, 2011, Dobbas and CRI sold the Site to defendant Van Over.

k. On March 16, 2011, DTSC issued an Imminent and Substantial Endangerment Determination Order and Remedial Action Order ("I/SE Order") ordering Dobbas, CRI, and Van Over to conduct the actions described in the Removal Action Workplan and to take additional response actions at the Site. Dobbas, CRI, and Van Over failed to complete the actions described in the Removal Action Workplan, or to take other response actions described in the I/SE Order.

3. From 2005 to the present, DTSC contends it took response actions at the Site to address the abandonment of environmental work at the Site, which created an imminent risk that contaminated groundwater would spread to nearby wells and further contaminate the drinking water aquifer, and that the asphalt cap would fail and allow direct human contact with contaminated soil or contribute more to surface water or groundwater contamination. DTSC believes that its response actions were necessary to remove and remedy the hazardous substances

3

released and/or threatened to be released at and from the Site. The response actions included, but were not limited to, the following activities: efforts to repair and restart the groundwater extraction and treatment system, completion of a removal investigation for site soils, preparation of the Removal Action Workplan, implementation of the Removal Action Workplan, and groundwater monitoring.

4. As of December 31, 2014, DTSC claims its unreimbursed response costs related to the Site exceed $2.4 million, exclusive of interest. DTSC believes that it will continue to incur response costs related to the Site, including DTSC's enforcement costs to litigate the First Amended Complaint.

5. DTSC contends that Dobbas is a responsible party pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and is jointly and severally liable under CERCLA for response costs incurred and to be incurred by DTSC at the Site.

6. Dobbas filed an answer to the Complaint on June 10, 2014, and an answer to the First Amended Complaint on December 24, 2015.

7. DTSC and Dobbas ("the Parties") agree, and this Court, by entering this Consent Decree, finds, that this Consent Decree has been negotiated by the Parties in good faith, the settlement of this matter will avoid prolonged and complicated litigation, benefits the environment and community and that this Consent Decree is fair, reasonable, in the public interest and is consistent with the purpose of CERCLA.

**THEREFORE,** the Court, with the consent of the Parties to this Consent Decree, hereby **ORDERS, ADJUDGES AND DECREES**, as follows:

## I. JURISDICTION

8. The Court has subject matter jurisdiction over the matters alleged in this action pursuant to 28 U.S.C. § 1331 and CERCLA section 113(b), 42 U.S.C. § 9613(b), and the Court has personal jurisdiction over each of the Parties.

9. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) and CERCLA section 113(b), 42 U.S.C. § 9613(b), because the claims asserted in the First

Amended Complaint and the releases and/or threatened releases of hazardous substances occurred in this judicial district.

10. Dobbas waives all objections and defenses that it may have to the jurisdiction of the Court or to venue in this district in the above-captioned action. Dobbas agrees not to challenge this Court's jurisdiction to enter and enforce this Consent Decree.

11. The Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree if necessary.

## II. SETTLEMENT OF DISPUTED CLAIMS

12. This Consent Decree resolves the claims against Dobbas in the First Amended Complaint. DTSC agrees to settlement of Dobbas' liability in this action in exchange for consideration from Dobbas, including payment by Dobbas to reimburse a portion of DTSC's response costs incurred and to be incurred by DTSC at or in connection with releases and/or threatened releases of hazardous substances at, beneath, and/or from the Site.

13. Except as otherwise expressly provided in this Consent Decree, this Consent Decree shall not prejudice, waive, or impair any right, remedy or defense that Dobbas may have in any other or further legal proceeding. Further, Dobbas does not admit any allegations, findings, determinations or conclusions contained in the First Amended Complaint or this Consent Decree. Dobbas' entry into this Consent Decree and compliance with its terms shall not be construed as an admission of liability or any issue of law or fact with respect to the Site.

14. The Parties consent to, and shall not challenge entry of, this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

15. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Parties.

## III. DEFINITIONS

16. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in the regulations promulgated under CERCLA shall have the meaning assigned to them therein. Whenever terms listed below are used in this Consent

Decree, the definitions below shall apply.

17. "DTSC" shall mean, collectively, the State of California Department of Toxic Substances Control ("the Department") and the Toxic Substances Control Account, and their predecessors and successors. The Department is a public agency of the State of California organized and existing under and pursuant to California Health and Safety Code § 58000, et seq. Under California law, the Department is the state agency responsible for determining whether there has been a release and/or threatened release of hazardous substances into the environment, and for determining the actions to be taken in response thereto. The Toxic Substances Control Account is an account within the State of California General Fund. Under California Health and Safety Code section 25361(a), the account shall be a party in any action for recovery of response costs or expenditures incurred from the account under Chapter 6.8 of Division 20 of the California Health and Safety Code.

18. "Effective Date" shall mean the date of entry of this Consent Decree by this Court.

19. "Parties" shall mean DTSC and Dobbas, collectively.

20. "Response Costs" shall mean all costs of "removal," "remedial action," or "response" as those terms are defined by CERCLA section 101, 42 U.S.C.§ 9601, subsections 23-25, related to the release and/or threatened release of hazardous substances at or from the Site, including the soils and groundwater.

21. "Site" shall mean the property at 147 A Street, Elmira, Solano County, CA, identified by Solano County Assessor's Parcel Number(s) 142-010-130, 142-010-140 and 142-042-010. For purposes of this Consent Decree, the Site includes the vertical and areal extent of the hazardous substance contamination that is or has been present at, beneath, and from the Site, including those areas outside the described parcels where hazardous substances released and/or disposed of at the parcels have come to be located.

/ / /

/ / /

### IV. DOBBAS' SETTLEMENT OBLIGATIONS

22.    **Payment**.  Dobbas shall pay to DTSC the sum of two hundred sixty five thousand dollars ($265,000) on or before the tenth business day after the Parties execute this Consent Decree.

23.    The payment required in paragraph 22 shall be made by certified check, cashier's check, or money order made payable to "Cashier, California Department of Toxic Substances Control," and each shall bear on its face both the docket number of this action, and the phrase "Site Code 100164."  The payment shall be sent to:

> Cashier
> Department of Toxic Substances Control
> Accounting Office, MS-21A
> 1001 I Street
> P.O. Box 806
> Sacramento, CA 95812-0806

A copy of the check shall be mailed to:

> Office of Legal Counsel
> California Department of Toxic Substances Control
> 1001 I Street, 23rd Floor
> P.O. Box 806
> Sacramento, CA 95812-0806

> Or e-mailed to Marilee.Hanson@dtsc.ca.gov in .pdf or .jpg format.

### V. ACCESS TO INFORMATION

24.    Within thirty (30) calendar days of the Effective Date, Dobbas shall provide to DTSC copies of any and all records, documents, and information within its possession or control, or that of its agents, relating to:  (a) the ownership, operation or control of the Site; (b) the purchase, storage, use, handling, generation, treatment, transportation, or disposal of hazardous substances in connection with the Site; (c) releases and/or threatened releases of hazardous substances at or from the Site, including the Site's soil and groundwater; and (d) response actions conducted by any person at the Site.

25.    If, after the Effective Date, Dobbas discovers or obtains any records, documents or information described in paragraph 24 not previously provided to DTSC, Dobbas agrees to

provide DTSC with copies of the additional records, documents, or information within thirty (30) calendar days of the date Dobbas discovers or obtains the records, documents, or information.

26. Dobbas may assert confidentiality claims covering part or all of the documents or information submitted to DTSC under this Consent Decree to the extent permitted by, and in accordance with, California Health and Safety Code § 25358.2.  Documents or information determined to be confidential by DTSC will be afforded the protection specified in California Health and Safety Code § 25358.2.  Dobbas may also assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Dobbas asserts such a privilege in lieu of providing documents, Dobbas shall provide DTSC with a description of the documents withheld and the basis for asserting the privilege.

## VI.  COVENANT NOT TO SUE BY DTSC

27. Except as expressly provided in Section VII (Reservation of Rights) of this Consent Decree, DTSC covenants not to sue or take administrative action against Dobbas pursuant to any theory whether under any federal or state statute, regulation or common law including, but not limited to CERCLA, the Resource Conservation Recovery Act ("RCRA"),the California Hazardous Substances Account Act ("HSAA"), California Health and Safety Code § 25300, et seq., to:  (a) recover DTSC's past or future Response Costs related to the Site; or (b) require Dobbas to conduct response actions, including removal or remedial actions, in response to the release or threatened release of hazardous substances at the Site, including the soils and groundwater.  This Covenant Not to Sue is conditioned upon the complete and satisfactory performance by Dobbas of all of its obligations under this Consent Decree.  This Covenant Not to Sue shall be revoked and deemed not effective if Dobbas fails to make the payment required by paragraph 22 of this Consent Decree, or if Dobbas voluntarily acquires title to the Site after the Effective Date.  Dobbas shall make all reasonable, good faith efforts to oppose any attempt by a third party to vest Dobbas with title to the Site.  Dobbas shall notify DTSC within five (5)

days of becoming aware of any such attempt to vest Dobbas with title to the Site.

## VII.  RESERVATION OF RIGHTS

28.     **Claims Regarding Other Matters.**  DTSC reserves, and this Consent Decree is without prejudice to, all rights against Dobbas with respect to all matters not expressly included within DTSC's Covenant Not to Sue (Section VI).

29.     **Reservation of Claims.**  DTSC reserves, and this Consent Decree is without prejudice to, all rights against Dobbas with respect to:

    a.     Claims based on a failure of Dobbas to meet a requirement of this Consent Decree;

    b.     Liability arising from past, present, or future disposal, release and/or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site; and

    c.     Criminal liability.

30.     **Claims against Other Persons.**  DTSC reserves, and this Consent Decree is without prejudice to, all rights, claims, and causes of action DTSC may have against any person other than Dobbas.  Nothing in this Consent Decree is intended to be, nor shall be construed as, a release, covenant not to sue, or compromise of any claim or cause of action which DTSC may have against any person or other entity not a signatory to this Consent Decree.

31.     **Government Authority.**   Except as expressly provided in this Consent Decree, nothing in this Consent Decree is intended, or shall be construed, to preclude DTSC from exercising its authority under any law, statute, or regulation with respect to the Site. Furthermore, except as expressly provided in this Consent Decree, nothing in this Consent Decree is intended, nor shall be construed, to preclude any state agency, department, board, or entity, or any federal or local agency, department, board, or entity, from exercising its authority under any law, statute, or regulation.

/ / /

/ / /

### VIII.  COVENANT NOT TO SUE BY DOBBAS

32. Without compromising or waiving its rights to seek judicial enforcement of the terms of this Consent Decree, Dobbas covenants not to sue and agrees not to assert any claims or causes of action against DTSC or its contractors or employees that arise out of the transaction or occurrence that is the subject matter of the First Amended Complaint or Dobbas' Counterclaim filed on June 10, 2014, or for any injuries, losses, costs, or damages caused or incurred as a result of the performances or requirements of this Consent Decree or DTSC's response actions at the Site.

### IX.  CONTRIBUTION PROTECTION

33. With regard to claims for contribution against Dobbas, Dobbas is entitled to contribution protection pursuant to section 113(f)(2) of CERCLA, 42 U.S.C. section 9613(f)(2), and applicable federal and state statutory and common law for the "Matters Addressed" in this Consent Decree, to the extent provided by law, except for actions and claims identified in DTSC's Reservation of Rights (Section VII).

34. The "Matters Addressed" in this Consent Decree include:  (1) any and all civil and/or administrative liabilities for reimbursement of any past, present, or future Response Costs; and/or (2) any and all civil and/or administrative liabilities and/or Response Costs as a result of or pursuant to any claims for or relating to declaratory relief, civil penalties, administrative penalties and/or injunctive relief, under CERCLA, the HSAA, the California Hazardous Waste Control Law and/or common law or statutory claims, including but not limited to nuisance, with regard to releases or threatened releases of solid wastes and/or hazardous substances and/or wastes, as those terms are defined pursuant to CERCLA, the HSAA, the California Hazardous Waste Control Law, and/or federal or State statutes and regulations, in, at or from the Site.

35. The contribution protection provided in this Section is conditioned upon Dobbas' full performance of its obligations under this Consent Decree.

/ / /

36. Nothing in this Consent Decree limits or impairs the right of DTSC to pursue any other person for unrecovered Response Costs incurred by DTSC.

## X.  NOTIFICATION

37. Notification to or communication among the Parties as required by or provided for in this Consent Decree shall be addressed as follows:

For DTSC:

> Charlie Ridenour, Branch Chief
> Brownfields and Environmental Restoration Program
> California Department of Toxic Substances Control
> 8800 Cal Center Drive
> Sacramento, CA  95826
>
> Marilee Hanson, Senior Staff Counsel
> Office of Chief Counsel
> California Department of Toxic Substances Control
> 1001 I Street
> P.O. Box 806
> Sacramento, CA 95812-0806

For Dobbas:

> Donald J. Dobbas
> Jim Dobbas, Inc.
> P.O. Box 177
> Newcastle, CA 95658
>
> Nicole Gleason
> King Williams & Gleason LLP
> 520 Capitol Mall Ste 750
> Sacramento, CA  95814

## XI.  GENERAL PROVISIONS

38. **Parties Bound.** This Consent Decree shall apply to, be binding upon, and inure to the benefit of the Parties and their representatives, successors, directors, officers, shareholders, and assigns.

39. **No Waiver of Enforcement.**  The failure of DTSC to enforce any provision of this Consent Decree shall in no way be deemed a waiver of such provision or in any way affect the validity of this Consent Decree.  The failure of DTSC to enforce any such provision shall not preclude it from later enforcing the same or any other provision of this Consent Decree.

40. **Costs.** Except as provided in this Consent Decree, the Parties will not seek to recover attorneys' fees and/or litigation costs against each other.

41. **Modification.** This Consent Decree may be modified upon written approval of the Parties and with the consent of the Court.

42. **Integration.** This Consent Decree constitutes the final, complete, and entire agreement between the Parties with respect to the settlement embodied in this Consent Decree.

43. **Lodging and Public Comment.** This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment. DTSC shall file with the Court any written comments received and DTSC's responses thereto. DTSC reserves the right to withdraw or withhold its consent to entry of the Consent Decree if comments regarding the Consent Decree disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate and agrees to return to Dobbas all funds paid by Dobbas to it. Dobbas consents to the entry of this Consent Decree without further notice.

44. If the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the discretion of either of the Parties, all funds paid to DTSC shall be returned to Dobbas and the terms of the agreement may not be used as evidence in any litigation between the Parties.

45. **Counterparts.** This Consent Decree may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

46. **Signatories.** Each signatory to this Consent Decree certifies that he or she is fully authorized by the party he or she represents to enter into the terms and conditions of this Consent Decree, to execute it on behalf of the party represented, and to legally bind that party to all the terms and conditions of this Consent Decree.

///

///

## XII.  APPROVALS OF PARTIES.

DTSC consents to this Consent Decree by its duly authorized representative as follows:

FOR THE DEPARTMENT OF TOXIC SUBSTANCES CONTROL and TOXIC SUBSTANCES CONTROL ACCOUNT

/s/                                                                                    Date   6/30/2015
Charlie Ridenour
Branch Chief, Brownfields and Environmental Restoration Program

Dobbas consents to this Consent Decree by its duly authorized representative as follows:

FOR JIM DOBBAS, INC.:

/s/                                                                                    Date   6/30/2015
Donald J. Dobbas,
President

**IT IS SO ORDERED, ADJUDGED, AND DECREED.**

Dated:  November 17, 2015

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE