1  Xavier Becerra
   Attorney General of California
2  Sarah E. Morrison, State Bar No. 143459
   Supervising Deputy Attorney General
3  Olivia W. Karlin, State Bar No. 150432
   Laura J. Zuckerman (Counsel for service)
4  State Bar No. 161896 Deputy Attorneys General
    1515 Clay Street, 20th Floor
5    Oakland, CA 94612
     Telephone: (510) 879-1299
6    Fax: (510) 622-2270
     E-mail: Laura.Zuckerman@doj.ca.gov
7  *Attorneys for Plaintiffs California*
   *Department of Toxic Substances Control and the*
8  *Toxic Substances Control Account*

9              IN THE UNITED STATES DISTRICT COURT

10          FOR THE EASTERN DISTRICT OF CALIFORNIA

11                    SACRAMENTO DIVISION

12

13
   | | |
   |---|---|
14 **CALIFORNIA DEPARTMENT OF TOXIC**    2:14-cv-00595-WBS-EFB
   **SUBSTANCES CONTROL and the TOXIC**
15 **SUBSTANCES CONTROL ACCOUNT,**    **DECLARATION OF DEENA STANLEY**
                                    **IN SUPPORT OF PLAINTIFFS'**
16                     Plaintiffs,    **MOTION FOR PARTIAL SUMMARY**
                                    **JUDGMENT ON THE LIABILITY OF**
17          v.                      **DEFENDANT DAVID VAN OVER;**
                                    **EXHIBITS**
18                     Defendants.

   Date:  June 12, 2017
19 **JIM DOBBAS, INC., a California**   Time:  1:30 p.m.
   **corporation; CONTINENTAL RAIL, INC.,**   Place: Courtroom 5, 14th Floor
20 **a Delaware corporation; DAVID VAN**            501 I Street
   **OVER, individually; PACIFIC WOOD**             Sacramento, CA 95814
21 **PRESERVING, a dissolved California**   Trial: September 13, 2017
   **corporation; WEST COAST WOOD**
22 **PRESERVING, LLC., a Nevada limited**   Action Filed: March 3, 2014
   **liability company; and COLLINS &**
23 **AIKMAN PRODUCTS, LLC, a Delaware**
   **limited liability company,**
24                     Defendants.

25
26 **AND RELATED COUNTERCLAIMS AND**
   **CROSS-CLAIMS**

27

28
                              1

1   I, Deena Stanley, declare as follows:

2   1.      I make this declaration in support of Plaintiffs State of California Department of

3   Toxic Substances Control and Toxic Substances Control Account's (DTSC) Motion for Partial

4   Summary Judgment on the Liability of David Van Over.  The facts set forth in this declaration are

5   based on my personal knowledge and on my review of files which DTSC maintains in the regular

6   course of business, and which were created at or near the time of the event.  If called as a witness,

7   I could and would competently testify to the following:

8   2.      I have been employed by DTSC since September 23, 2013, and am currently

9   employed by DTSC as an Engineering Geologist.  My job duties include working in the National

10   Priorities List Unit within the Brownfields and Environmental Restoration Program.  The

11   National Priorities List Unit conducts and oversees response actions under the Hazardous

12   Substances Account Act, California Health and Safety Code section 25300 et seq. and its federal

13   counterpart, the Comprehensive Environmental Response, Compensation and Liability Act of

14   1980, 42 U.S.C. section 9601 et seq. ("CERCLA").

15   3.      DTSC is the state agency responsible for enforcing California Health and Safety

16   Code Section 25300 et seq., and for investigating and remediating hazardous substances releases

17   at sites in California.

18   4.      As part of my responsibilities at DTSC, I oversee the investigation and cleanup of

19   contaminated sites in California.  I am currently the Project Manager for a contaminated site

20   known as at the former Wickes Forest Industries Site, located at the intersection of A Street and

21   Holdener Road in the unincorporated community of Elmira, Solano County, California, identified

22   by Solano County Assessor/Recorder's Parcel Numbers 142-010-130, 142-010-140, and 142-042-

23   010 (the "Site").  I have visited the Site on many occasions, and have participated in, among

24   other things, Site inspections and oversight of groundwater sampling.  I have obtained and

25   reviewed historical documents concerning the Site from DTSC's files.  As the Project Manager

26   for the Site, I have also managed contracts and the staff of environmental engineering firms who

27   have worked at the Site on behalf of DTSC.

28   5.      David Van Over purchased the Site on or about February 11, 2011.  *See* Quitclaim

2

1   Deeds, and Agreement of Purchase and Sale, true and correct copies of which are attached hereto

2   as Exhibits A and B.  On April 26, 2017, I confirmed with the Solano County Assessor's office

3   by telephone and by reviewing material on the Solano County Assessor's Office web site, a true

4   and correct copy of which material is attached hereto as Exhibit C, that Van Over remains the

5   current owner of the Site.

6                                      **Site History**

7        6.    The Site is a former wood treatment and preserving facility where past operations

8   have contaminated the soil and groundwater with arsenic, chromium, and copper, which have

9   been detected or have come to be located in the soil and groundwater at the Site.  Releases,

10  including leaking, emitting, discharging, escaping, leaching, or disposing of hazardous

11  substances, including chromium, copper, and arsenic occurred at the Site.  As a result of the wood

12  preserving operations at the Site, these hazardous substances have been, and continue to be,

13  released and/or threatened to be released into the environment at and from the Site.  *See* the

14  Removal Action Completion Report dated April 24, 2012, a true and correct copy of which is

15  attached hereto as Exhibit D, at 7-8, 14-17, and 21-22, and the Final Semi-Annual Groundwater

16  Monitoring Report dated December 2016, a true and correct copy of which is attached hereto as

17  Exhibit E, at 6-8 and Table 3.

18                      **Response Actions and Response Costs at the Site**

19       7.     From the 1980's through 2005, the Wickes Corporation and its successor,

20  defendant Collins & Aikman Products, LLC ("C&A Products"), under the oversight of DTSC,

21  took various response actions to address environmental contamination at, around, and/or beneath

22  the Site.  Those actions included, among other things, soil excavation, installing an asphalt cap

23  over contaminated soils, constructing a building and a drainage system over another contaminated

24  area of the Site, installing and operating a groundwater extraction and treatment system, and

25  groundwater monitoring.  On or about March 20, 1997, C&A Products sold the Site to Jim

26  Dobbas, Inc. ("Dobbas"), and Continental Rail, Inc. ("CRI").  On or about May 17, 2005, C&A

27  Products filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District

28  of Michigan, Case No. 05-55932.  In November 2005, while in Chapter 11 bankruptcy

1  proceedings, C&A Products informed DTSC that it was unwilling to continue to perform the

2  response actions set forth in the October 16, 1995 Operation and Maintenance Manual at the Site.

3    8.    In 2006, DTSC requested that Dobbas and CRI, the then-owners of the Site, carry out

4  response actions to address contamination at the Site.  Despite having entered into an Access and

5  Remediation Agreement with DTSC in 1997 that required them to perform response actions,

6  Dobbas and CRI refused.  As a result, DTSC issued an Imminent or Substantial Endangerment

7  Determination on November 9, 2006, and initiated state-funded contracts to evaluate response

8  actions.

9    9.    In 2007 and 2008, DTSC tried to resume operating the groundwater treatment system

10  at the Site, but the system would have required too many repairs to clean up the groundwater to

11  remediation goals in a timely manner.  Because of the treatment system failure, DTSC

12  reevaluated response actions for the Site.  In July 2010, DTSC finalized a Removal Action

13  Workplan ("RAW") for the Site calling for contaminated soil excavation, off-site disposal,

14  backfilling, confirmation sampling, demolition of the groundwater extraction and treatment

15  system, and long-term groundwater monitoring.  The RAW noted that contaminated groundwater

16  had migrated from beneath the Site to the nearby residential area, which created the potential for

17  private irrigation wells located in the residential area to extract and distribute contaminated

18  groundwater.

19    10.    On or about February 11, 2011, Dobbas and CRI sold the Site to defendant Van Over.

20  *See* Exhibits A and B.  On March 16, 2011, DTSC issued an Imminent or Substantial

21  Endangerment Determination Order and Remedial Action Order ("I/SE Order") ordering Dobbas,

22  CRI, and Van Over to conduct the response actions described in the RAW and to take additional

23  response actions at the Site.  Dobbas, CRI, and Van Over failed to comply with the I/SE Order.

24    11.    DTSC has incurred costs for "response" as that term is defined in CERCLA section

25  101(25), 42 U.S.C. § 9601(25), in taking actions related to the release and/or threatened release of

26  hazardous substances at, around, and/or beneath the Site.  DTSC's response actions included, but

27  were not limited to, the following activities:  efforts to repair and restart the groundwater

28

4

1  extraction and treatment system, completion of a removal investigation for site soils, preparation

2  of the RAW, implementation of the RAW, and monitoring of stormwater and groundwater.

3      12.    Presently, DTSC is monitoring the condition of the asphalt cap at the Site, and is

4  conducting periodic stormwater monitoring and quarterly groundwater monitoring and reporting

5  to evaluate contaminant trends and ensure the protection of the off-site private irrigation wells.

6  *See* Exhibit E at 3. Continued stormwater monitoring and evaluation of the condition of the

7  asphalt cap is necessary to make sure contaminants below the cap are not mobilized by infiltration

8  of precipitation, and to block direct exposure of contaminated soil to humans or environmental

9  receptors. *See* the 2016 Five-Year Review Report, a true and correct copy of which is attached

10  hereto as Exhibit F, at 17. Continued groundwater monitoring and reporting is necessary to

11  further assess the performance of the 2011 soil excavation, to make certain that the Site is not

12  causing further groundwater contamination, and to ensure that contaminant concentrations at the

13  four off-site private irrigation wells do not exceed drinking water standards.

14      13.    I have visited the Site multiple times, and currently direct and oversee the

15  groundwater monitoring at the Site. Groundwater monitoring includes groundwater sampling and

16  reporting on a quarterly basis to evaluate contaminant trends and ensure the protection of the

17  public. Exhibit E at 8. Groundwater samples are collected from monitoring wells located on the

18  Site and off-site within the surrounding neighborhood. Exhibit E at 3-4. Several wells used by

19  residents for landscape irrigation are also sampled. *Ibid.* Recent sampling results from wells on

20  the Site and off-site are still above Remedial Action Levels, which were set for the Site at

21  drinking water standards. *See* Exhibit E at 6-8 and Table 3.

22      14.    DTSC's contractor recently evaluated the effectiveness of the 2011 soil removal

23  action and other remedial actions undertaken at the Site as part of the 2016 Five-Year Review

24  Report. The Protectiveness Statement in the Five-Year Review Report identifies lack of

25  maintenance of the cap and surface drainage systems as issues that could compromise the

26  integrity of the cap and its ability to function as a barrier to exposure. *See* Exhibit F at 18. The

27  Five-Year Review Report indicated that once cracks in the cap are mitigated, the surface

28  drainages cleared of weeds, and the cap maintained as specified, the remedy should be protective.

5

1    *Ibid.* Until the cap is regularly maintained, however, and DTSC receives and evaluates additional

2    groundwater sampling data, DTSC cannot conclude that all Site actions are complete, or that

3    further response actions will not be necessary.

4        15.        As of December 31, 2016, DTSC's unreimbursed response costs related to the Site

5    exceeded $2.3 million, inclusive of interest but not including attorneys' fees.  DTSC is still in the

6    process of evaluating the need for additional remediation at the Site, and conducting response

7    actions related to the Site.  DTSC currently estimates that response costs for investigation and

8    possible remediation of the contaminated soil, along with stormwater and groundwater

9    monitoring at the Site, could reach approximately $1.76 million, over the next ten years,

10   exclusive of interest, if DTSC has to continue conducting all the response actions at the Site.

11       I declare under penalty of perjury that the foregoing is true and correct to the best of my

12   knowledge and that this declaration was executed in Sacramento, California on May 5, 2017.

13

14

15   Deena Stanley
     Engineering Geologist
16   Brownfields and Environmental Restoration
     Program
17   Dept. of Toxic Substances Control

18

19

20

21

22

23

24

25

26

27

28

DECL. OF DEENA STANLEY IN SUPPORT OF PLFS.' MOTION FOR PARTIAL SUMMARY JUDGMENT ON