XAVIER BECERRA
Attorney General of California
ED OCHOA, State Bar No. 144842
Supervising Deputy Attorney General
OLIVIA W. KARLIN, State Bar No. 150432
LAURA J. ZUCKERMAN (Counsel for service)
State Bar No. 161896
Deputy Attorneys General
 1515 Clay Street, 20th Floor
 Oakland, CA 94612
 Telephone: (510) 879-1299
 Fax: (510) 622-2270
 E-mail: Laura.Zuckerman@doj.ca.gov
*Attorneys for Plaintiffs California
Department of Toxic Substances Control and the
Toxic Substances Control Account*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,**<br><br>Plaintiffs,<br><br>v.<br><br>Defendants.<br><br>**JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,**<br><br>Defendants.<br><br>**AND RELATED COUNTERCLAIMS AND CROSS-CLAIMS** | 2:14-cv-00595-WBS-EFB<br><br>**DECLARATION OF WILLIAM BECKMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDICIAL APPROVAL OF CONSENT DECREE BETWEEN PLAINTIFFS AND DEFENDANT DAVID VAN OVER**<br><br>Date:     March 19, 2018<br>Time:    1:30 p.m.<br>Courtroom:  5<br>Judge:   The Honorable William B. Shubb<br>Trial Date:  June 5, 2018<br>Action Filed: March 3, 2014 |

I, William Beckman, declare as follows:

1. I make this declaration in support of the Motion for Judicial Approval of Consent Decree between Plaintiffs State of California Department of Toxic Substances Control and the Toxic Substances Control Account (collectively, "DTSC") and Defendant David Van Over ("Settling Defendant"). The facts set forth in this declaration are based on my personal knowledge and on my review of all files and records kept by DTSC relating to this case. If called as a witness, I could and would competently testify to the following:

2. I have been employed by DTSC since November 1, 2000. Initially, I joined DTSC as a Hazardous Substances Engineer to work on Regulation Development and Hazardous Waste Treatment Facility capacity analysis. I am currently employed by DTSC as a Supervising Hazardous Substances Engineer I, and have been since May 21, 2012. My job duties include supervising and assisting my staff in the National Priorities List Unit within the Brownfields and Environmental Restoration Program in Sacramento. The National Priorities List Unit conducts and oversees response actions under the Hazardous Substances Account Act, California Health and Safety Code section 25300 et seq., and its federal counterpart, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. section 9601 et seq. ("CERCLA").

3. DTSC is the state agency responsible for enforcing California Health and Safety Code section 25300 et seq., and for investigating and remediating hazardous substances releases at sites in California.

4. As part of my responsibilities at DTSC, I supervise project managers who oversee the investigation and cleanup of contaminated sites in California. I currently supervise the Project Manager assigned to the contaminated site known as the former Wickes Forest Industries Site, located at the intersection of A Street and Holdener Road in the unincorporated community of Elmira, Solano County, California, identified by Solano County Assessor/Recorder's Parcel Numbers 142-010-130, 142-010-140, and 142-042-010 (the "Site"). I am familiar with the Site's history, and I am knowledgeable about DTSC's work at the Site.

5. At different periods of time, each defendant in this action owned and/or operated the

1

Site. David Van Over purchased the Site on or about February 11, 2011, and is the current owner of the Site.

### Site History

6. The Site is a former wood treatment and preserving facility where past operations have contaminated the soil and groundwater with arsenic, chromium, and copper, which have been detected or have come to be located in the soil and groundwater at the Site. Releases, including leaking, emitting, discharging, escaping, leaching, or disposing of hazardous substances, including chromium, copper, and arsenic, occurred at the Site. As a result of the wood preserving operations at the Site, these hazardous substances have been, and continue to be, released and/or threatened to be released into the environment at and from the Site.

### Response Actions and Response Costs at the Site

7. From the 1980's through 2005, the Wickes Corporation and its successor, defendant Collins & Aikman Products, LLC ("C&A Products"), under the oversight of DTSC, took various response actions to address environmental contamination at, around, and/or beneath the Site. Those actions included, among other things, soil excavation, installing an asphalt cap over contaminated soils, constructing a building and a drainage system over another contaminated area of the Site, installing and operating a groundwater extraction and treatment system, and groundwater monitoring. On or about March 20, 1997, C&A Products sold the Site to Jim Dobbas, Inc. ("Dobbas"), and Continental Rail, Inc. ("CRI"). On or about May 17, 2005, C&A Products filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Michigan, Case No. 05-55932. In November 2005, while in Chapter 11 bankruptcy proceedings, C&A Products informed DTSC that it was unwilling to continue to perform the response actions set forth in the October 16, 1995 Operation and Maintenance Manual at the Site.

8. In 2006, DTSC requested that Dobbas and CRI, the then-owners of the Site, carry out response actions to address contamination at the Site. Despite having entered into an Access and Remediation Agreement with DTSC in 1997 that required them to perform response actions, Dobbas and CRI refused. As a result, DTSC issued an Imminent or Substantial Endangerment

2

Decl. of William Beckman in Support of Plaintiffs' Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)

Determination on November 9, 2006, and initiated state-funded contracts to evaluate response actions.

9. In 2007 and 2008, DTSC tried to resume operating the groundwater treatment system at the Site, but the system would have required too many repairs to clean up the groundwater to remediation goals in a timely manner. Because of the treatment system failure, DTSC reevaluated response actions for the Site. In July 2010, DTSC finalized a Removal Action Workplan ("RAW") for the Site calling for contaminated soil excavation, off-site disposal, backfilling, confirmation sampling, demolition of the groundwater extraction and treatment system, and long-term groundwater monitoring. The RAW noted that contaminated groundwater had migrated from beneath the Site to the nearby residential area, which created the potential for private irrigation wells located in the residential area to extract and distribute contaminated groundwater.

10. On or about February 11, 2011, Dobbas and CRI sold the Site to defendant Van Over. On March 16, 2011, DTSC issued an Imminent or Substantial Endangerment Determination Order and Remedial Action Order ("I/SE Order") ordering Dobbas, CRI, and Van Over to conduct the response actions described in the RAW and to take additional response actions at the Site. Dobbas, CRI, and Van Over failed to comply with the I/SE Order.

11. DTSC has incurred costs for "response" as that term is defined in CERCLA section 101(25), 42 U.S.C. § 9601(25), in taking actions related to the release and/or threatened release of hazardous substances at, around, and/or beneath the Site. DTSC's response actions included, but were not limited to, the following activities: efforts to repair and restart the groundwater extraction and treatment system, completion of a removal investigation for site soils, preparation of the RAW, implementation of the RAW, and monitoring of stormwater and groundwater.

12. Presently, DTSC is monitoring the condition of the asphalt cap at the Site, and is conducting periodic stormwater monitoring and quarterly groundwater monitoring and reporting to evaluate contaminant trends and ensure the protection of the off-site private irrigation wells. Continued stormwater monitoring and evaluation of the condition of the asphalt cap is necessary to make sure contaminants below the cap are not mobilized by infiltration of precipitation, and to

3

Decl. of William Beckman in Support of Plaintiffs' Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)

block direct exposure of contaminated soil to humans or environmental receptors. Continued groundwater monitoring and reporting is necessary to further assess the performance of the 2011 soil excavation, to make certain that the Site is not causing further groundwater contamination, and to ensure that contaminant concentrations at the four off-site private irrigation wells do not exceed drinking water standards.

13. Past DTSC project managers have visited the Site multiple times, and most recently oversaw the groundwater monitoring at the Site. Groundwater monitoring includes groundwater sampling and reporting on a quarterly basis to evaluate contaminant trends and ensure the protection of the public. Groundwater samples are collected from monitoring wells located on the Site and off-site within the surrounding neighborhood. Several wells used by residents for landscape irrigation are also sampled. Recent sampling results from several onsite wells and one off-site well are still above Remedial Action Levels, which were set for the Site at drinking water standards.

14. DTSC's contractor recently evaluated the effectiveness of the 2011 soil removal action and other remedial actions undertaken at the Site as part of the 2016 Five-Year Review Report. The Protectiveness Statement in the Five-Year Review Report identifies lack of maintenance of the cap and surface drainage systems as issues that could compromise the integrity of the cap and its ability to function as a barrier to exposure. The Five-Year Review Report indicated that once cracks in the cap are mitigated, the surface drainages cleared of weeds, and the cap maintained as specified, the remedy should be protective. Until the cap is regularly maintained, however, and DTSC receives and evaluates additional groundwater sampling data, DTSC cannot conclude that all Site actions are complete, or that further response actions will not be necessary.

15. DTSC uses its Cost Recovery Billing System to track costs and payments received for its cleanup sites. At my direction, staff have checked for any new payments received for this Site's billing code, 100164, and discovered that no new cost reimbursements have been received between November of 2012 and December 31, 2017.

16. As of December 31, 2017, DTSC's unreimbursed response costs related to the Site

4

Decl. of William Beckman in Support of Plaintiffs' Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)

exceeded approximately $3.18 million, including interest and attorneys' fees. DTSC is still in the process of evaluating the need for additional remediation at the Site, and conducting response actions related to the Site. DTSC currently estimates that additional response costs for investigation and possible remediation of the contaminated soil, along with stormwater and groundwater monitoring at the Site, could reach approximately $1.76 million over the next ten years, exclusive of interest, bringing the cumulative total to approximately $4.94 million, if DTSC has to continue conducting all the response actions at the Site. Based on my experience in this field and familiarity with the facts at this Site, I agree with this estimate.

## Settlement Negotiations

17.   I have been informed of the settlement negotiations between the parties regarding the liability of Settling Defendant for DTSC's response costs incurred and to be incurred at the Site. Settling Defendant engaged in arms'-length settlement negotiations. Settling Defendant acted as his own counsel during those negotiations.

18.   DTSC has reviewed the financial information submitted by Van Over and determined that Van Over is presently not able to pay penalties or a significant portion of the past response costs incurred, or the future response costs to be incurred, at the Site. By signing the Consent Decree, Van Over affirms under penalty of perjury that the financial information provided to DTSC is true and correct. In making this initial determination of Van Over's inability to pay and in entering into this settlement, DTSC has relied on the financial information provided by Van Over.

19.   After arms'-length, good faith settlement negotiations, DTSC and Settling Defendant reached a settlement resolving Settling Defendant's liability in this action. The settlement was incorporated into the Proposed Consent Decree. DTSC and Settling Defendant participated in drafting multiple revisions of the proposed Consent Decree. DTSC lodged the proposed Consent Decree with the Court on November 27, 2017.

## Publication of Notice of Proposed Consent Decree

20.   On November 17, 2017, DTSC published notice of the proposed Consent Decree in the California Regulatory Notice Register (2017, Volume No. 46-Z), pages 1781-1782 ("Notice")

5

Decl. of William Beckman in Support of Plaintiffs' Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)

and invited the public to comment on the proposed Consent Decree. The Notice requested that comments on the proposed Consent Decree be submitted to DTSC no later than December 18, 2017. A true and correct copy of the Notice is attached as Exhibit 1. DTSC also published notice of the Proposed Consent Decree in a local newspaper, the Vacaville Reporter, on November 21, 2017. A true and correct copy of the newspaper publication is attached as Exhibit 2. Additionally, on November 27, 2017, DTSC informed all defendants and/or their counsel by e-mail about the execution of the proposed Consent Decree and the commencement of the public comment period. A true and correct copy of this e-mail is attached at Exhibit 3.

21. As of January 3, 2018, DTSC did not receive comments on, or objections to, the proposed Consent Decree.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge and that this declaration was executed in Sacramento, California on February 5, 2018.

/s/ William Beckman (original signature retained by attorney Laura J. Zuckerman)

William Beckman
Supervising Hazardous Substances Engineer I
Brownfields and Environmental Restoration Program
Department of Toxic Substances Control

6

Decl. of William Beckman in Support of Plaintiffs' Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)