1  XAVIER BECERRA
   Attorney General of California
2  EDWARD H. OCHOA, State Bar No. 144842
   Supervising Deputy Attorney General
3  OLIVIA W. KARLIN, State Bar No. 150432
   LAURA J. ZUCKERMAN (Counsel for service)
4  State Bar No. 161896
   Deputy Attorneys General
5    1515 Clay Street, 20th Floor
     Oakland, CA 94612
6    Telephone:  (510) 879-1299
     Fax:  (510) 622-2270
7    E-mail:  Laura.Zuckerman@doj.ca.gov
   *Attorneys for Plaintiffs California
8  Department of Toxic Substances Control and Toxic
   Substances Control Account*

9

10              IN THE UNITED STATES DISTRICT COURT

11              FOR THE EASTERN DISTRICT OF CALIFORNIA

12                        SACRAMENTO DIVISION

13

| | |
|---|---|
| 14  **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,** | 2:14-cv-00595-WBS-EFB |
| 15 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDICIAL APPROVAL OF CONSENT DECREE BETWEEN PLAINTIFFS AND DEFENDANT DAVID VAN OVER; DECLARATION OF WILLIAM BECKMAN WITH EXHIBITS IN SUPPORT THEREOF** |
| 16                           Plaintiffs, | |
| 17      v. | |
| 18  **JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,** | |
| 19 | |
| 20 | |
| 21 | Date:        March 19, 2018<br>Time:        1:30 p.m.<br>Courtroom:   5<br>Judge:       The Honorable William B. Shubb<br>Trial Date:  June 5, 2018<br>Action Filed: March 3, 2014 |
| 22 | |
| 23 | |
| 24                           Defendants. | |
| 25 | |
| 26  **AND RELATED COUNTERCLAIMS AND CROSS CLAIMS** | |
| 27 | |

28

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 1
    I.  INTRODUCTION ................................................................................................................ 1
    II. FACTUAL BACKGROUND ............................................................................................. 2
        A.  Site History ................................................................................................................. 2
        B.  Response Actions at the Site ..................................................................................... 2
        C.  The First Amended Complaint ................................................................................ 4
    III. SUMMARY OF CONSENT DECREE PROVISIONS ..................................................... 4
        A.  Terms of the Consent Decree .................................................................................... 4
            1.  Payment to DTSC. .............................................................................................. 4
            2.  Response Actions by Settling Defendant ......................................................... 5
            3.  Access and Institutional Controls .................................................................... 6
            4.  Access to Information. ....................................................................................... 6
            5.  Covenant Not to Sue by DTSC. ......................................................................... 7
            6.  Contribution Protection. .................................................................................... 7
            7.  Covenant Not to Sue by Settling Defendant. .................................................. 7
        B.  Public Notice and Opportunity for Comment ....................................................... 8
    IV.  ARGUMENT ..................................................................................................................... 8
        A.  Standard of Review for Entry of CERCLA Settlements. .................................... 9
            1. The Consent Decree is Procedurally Fair. ..................................................... 10
            2. The Consent Decree is Substantively Fair. .................................................... 11
            3. The Consent Decree is Reasonable. ................................................................ 13
            4. The Consent Decree is Consistent with the Purposes of CERCLA ...... 14
    V.  CONCLUSION .................................................................................................................. 15

i

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Arizona v. City of Tucson*
    761 F.3d 1005 (9th Cir. 2014)......................................................................................9, 10, 11

*State of Arizona ex rel. Woods v. Nucor Corp.*
    825 F. Supp. 1452 (D. Ariz. 1992)........................................................................................13, 14

*United States v. Akzo Coatings of Am.*
    949 F.2d 1409 (6th Cir. 1991)..................................................................................................9

*United States v. Cannons Engineering Corp.*
    899 F.2d 79 (1st Cir. 1990) ............................................................................................. *passim*

*United States v. Comunidades Unidas Contra la Contaminacion*
    F.3d 275, 280 (1st Cir. 2000) ..................................................................................................9

*United States v. Fort James Operating Co.*
    313 F. Supp. 2d 902 (E.D. Wis. 2004)....................................................................................12

*United States v. Montrose Chem. Corp. of California*
    50 F.3d 741 (9th Cir. 1995)................................................................................................9, 10

*United States v. State of Oregon*
    913 F.2d 576 (9th Cir. 1990)....................................................................................................9

**STATUTES**

42 U.S.C.

    § 9601..........................................................................................................................................1

    § 9601(25) ...............................................................................................................................3, 5

    § 9613(g)(2) ................................................................................................................................4

    §§ 9622(e)(3)(A), (f)(7)(B) ......................................................................................................11

California Health and Safety Code

    § 25300......................................................................................................................................10

ii

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between
Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs, the State of California Department of Toxic Substances Control and the Toxic Substances Control Account (collectively, "DTSC"), respectfully submit this Memorandum of Points and Authorities in support of DTSC's motion for judicial approval of the proposed consent decree between Plaintiffs and Defendant David Van Over ("Settling Defendant") concerning the property located at 147 A Street, Elmira, Solano County, CA, identified by Solano County Assessor's Parcel Numbers 142-010-130, 142-010-140, and 142-042-010 ("the Site"). DTSC filed a Complaint in the above-captioned matter on March 3, 2014, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 ("CERCLA"), against several defendants, including Settling Defendant, and then subsequently filed a First Amended Complaint on December 11, 2014 ("First Amended Complaint"), pursuant to CERCLA, adding an additional defendant. In this action, DTSC seeks to recover response costs it incurred or expects to incur in response to the release and/or threatened release of hazardous substances at, around, and/or beneath the Site. DTSC negotiated a settlement agreement with Settling Defendant resolving his liability in this action. The settlement agreement is embodied in the proposed consent decree lodged with the Court on February 15, 2018 ("Consent Decree"). ECF No. 176-1. An earlier version of the proposed consent decree was lodged with the Court on October 30, 2017. ECF No. 173-1 (*see infra*, section III(B), for a discussion of the differences between the two versions). Because the Consent Decree is fair, reasonable, and consistent with the purposes of CERCLA, DTSC requests that the Court approve the Consent Decree and enter it as a judgment of the Court.

///
///
///
///
///

1

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)

## II. FACTUAL BACKGROUND

### A. Site History

The defendants in this action are Settling Defendant, Jim Dobbas, Inc. ("Dobbas"), West Coast Wood Preserving, LLC ("WCWP"), Continental Rail, Inc. ("CRI"), Pacific Wood Preserving ("PWP"), and Collins & Aikman Products, LLC ("C&A Products").[1]

At different periods of time, each defendant in this action owned and/or operated the Site. From approximately 1972 to 1982, wood preserving operations were conducted at the Site. From approximately 2011 to the present, Settling Defendant owned the Site. Settling Defendant remains the current owner of the Site. Declaration of William Beckman ("Beckman Decl."), ¶ 5.

The wood preserving operations at the Site involved the use of hazardous substances, including arsenic, chromium, and copper. Beckman Decl., ¶ 6. As a result of the wood preserving activities at the Site, hazardous substances have been, and continue to be, released and/or threatened to be released into the environment at and from the Site. *Id*.

### B. Response Actions at the Site

From the 1980's through 2005, the Wickes Corporation and its successor, C&A Products, under the oversight of DTSC, took various response actions to address environmental contamination at, around, and/or beneath the Site. Those actions included, among other things, soil excavation, installing an asphalt cap over contaminated soils, constructing a building and a drainage system over another contaminated area of the Site, installing and operating a groundwater extraction and treatment system, and groundwater monitoring. On or about March 20, 1997, C&A Products sold the Site to Dobbas and CRI. On or about May 17, 2005, C&A Products filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Michigan, Case No. 05-55932. In November 2005, while in Chapter 11 bankruptcy proceedings, C&A Products informed DTSC that it was unwilling to continue to perform response actions at the Site. Beckman Decl., ¶ 7.

---

[1] DTSC reached settlements with WCWP and Dobbas, which were embodied in signed Consent Decrees. *See* ECF Nos. 141 and 150, respectively. DTSC obtained default judgments against CRI, PWP and C&A Products. *See* ECF Nos. 18, 19 and 129, respectfully. Settling Defendant is the last remaining defendant in this action.

2

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)

In 2006, DTSC requested that Dobbas and CRI, the then-owners of the Site, carry out response actions to address contamination at the Site. Dobbas and CRI refused. As a result, DTSC issued an Imminent or Substantial Endangerment Determination Order on November 9, 2006, and initiated state-funded contracts to evaluate response actions. Beckman Decl., ¶ 8.

In 2007, DTSC tried to resume operating the groundwater treatment system at the Site, but the system would have required too many repairs to achieve remediation goals in a timely manner. Because of the treatment system failure, DTSC reevaluated response actions for the Site. In July 2010, DTSC finalized a Removal Action Workplan ("RAW") for the Site that called for contaminated soil excavation, off-site disposal, backfilling, confirmation sampling, demolition of the groundwater extraction and treatment system, and long-term groundwater monitoring. The RAW noted that contaminated groundwater had migrated from beneath the Site to the nearby residential area, which created the potential for irrigation wells located in the residential area to extract and distribute contaminated groundwater. Beckman Decl., ¶ 9.

On or about February 11, 2011, Dobbas and CRI sold the Site to Settling Defendant. On March 16, 2011, DTSC issued an Imminent or Substantial Endangerment Determination Order and Remedial Action Order ("I/SE Order") ordering Dobbas, CRI, and Settling Defendant to conduct the response actions described in the RAW and to take additional response actions at the Site. Dobbas, CRI, and Settling Defendant failed to comply with the I/SE Order. Beckman Decl., ¶ 10.

DTSC has incurred costs of "response," as that term is defined in CERCLA section 101(25), 42 U.S.C. § 9601(25), in taking actions related to the release and/or threatened release of hazardous substances at, around, and/or beneath the Site. Beckman Decl., ¶ 11. DTSC's response actions include, but are not limited to, the following activities: efforts to repair and restart the groundwater extraction and treatment system, completion of a removal investigation for site soils, preparation of the RAW, implementation of the RAW, and stormwater and groundwater monitoring. Beckman Decl., ¶ 11.

As of December 31, 2017, DTSC's unreimbursed response costs related to the Site exceeded $3.1 million, including interest and attorneys' fees. Beckman Decl., ¶ 16. DTSC is in

3
Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between
Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)

the process of remediating the Site and continues to incur response costs related to the Site. DTSC currently estimates that response costs for future investigation and remediation of the contaminated soil, along with stormwater and groundwater monitoring at the Site, could reach approximately $1.76 million over the next ten years.  Beckman Decl., ¶ 16.

### C. The First Amended Complaint

The First Amended Complaint alleges that defendants, as owners and/or operators of the Site, are jointly and severally liable for DTSC's costs incurred responding to releases of hazardous substances into the soil and groundwater at and around the Site.  The First Amended Complaint also requests a declaration that defendants are liable for DTSC's future response costs incurred at the Site pursuant to section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2).

## III.   SUMMARY OF CONSENT DECREE PROVISIONS

### A. Terms of the Consent Decree

After obtaining a judgment on liability against Settling Defendant (Order for Partial Summary Judgment against David Van Over, July 6, 2017 [Docket No. 170]), DTSC engaged in arms'-length, good faith settlement negotiations with Settling Defendant for over a year, eventually resolving the remaining issues against Settling Defendant.  Beckman Decl., ¶ 19. Settling Defendant, who is in pro per, has demonstrated to DTSC's satisfaction that he is unable to pay his proportional share of DTSC's past response costs.  Beckman Decl. ¶ 18.  Taking this into consideration, as well as the fact that Settling Defendant is the current property owner, the parties executed the Consent Decree includes the following terms:

#### 1. Payment to DTSC.

Settling Defendant shall pay to DTSC the sum of two hundred fifty thousand dollars ($250,000) in multiple installments as follows:

 a. Payment of five thousand dollars ($5,000) must be made within thirty (30) days of the Consent Decree's effective date;

 b. Additional payment(s) totaling up to two hundred forty-five thousand ($245,000) shall be made as follows:  (i) within 10 days of each sale of all or a portion of the property, in an amount equal to the Net Sale Proceeds, as defined in the Consent Decree, of such

4

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)

sale; and/or (ii) within 10 days of receipt by Settling Defendant of an Ability to Pay Determination, as defined in the Consent Decree, in an amount equal to the amount demanded by DTSC in the Ability to Pay Determination.

      c. Within sixty (60) days of the effective date of the Consent Decree, DTSC shall ensure that the existing $883,347 statutory lien on the property is replaced by a judgment lien for $245,000 to secure a portion of the Response Costs. This $245,000 judgment lien will remain in effect, accruing statutory interest, until paid in full. Consent Decree, ¶ 26.

      d. Settling Defendant has represented to DTSC that he is financially unable to pay the balance of the $250,000 settlement at this time. To substantiate his claim of ongoing inability to pay, Settling Defendant shall provide periodic verification of his income to DTSC in accordance with the provisions set forth in the Consent Decree. Consent Decree ¶¶ 25, 28.

      e. If Settling Defendant sells any portion of the property, 100% of the Net Sale Proceeds, as defined in the Consent Decree, of each such sale up to a total of $245,000 shall be paid to DTSC to satisfy the judgment lien recorded pursuant to paragraph 26 of the Consent Decree. If the total net sale proceeds of such sale(s) exceed $245,000, DTSC shall receive 80% of the Excess Sale Proceeds, as defined in the Consent Decree. In no event shall Settling Defendant be required to pay DTSC more than a total of $2.89 million in excess sale proceeds. Payment to DTSC of its portion of the net sale proceeds shall be made in accordance with the provisions set forth in the Consent Decree. Consent Decree, ¶ 29.

### 2. Response Actions by Settling Defendant

Settling Defendant agrees to take all response actions at the Site, as defined in 42 U.S.C. § 9601(25), required by CERCLA and as directed by DTSC between the effective date of the Consent Decree and Settling Defendant's voluntary or involuntary transfer of title to the property, including, but not limited to, response actions required by the I/SE Order and Exhibit A to the Consent Decree, if he is financially able to do so. Settling Defendant acknowledges that he is liable for all future response costs at the Site between the effective date of the Consent Decree and Settling Defendant's voluntary or involuntary transfer of title to the Site. Consent Decree, ¶ 27.

5

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)

**3. Access and Institutional Controls**

a. Settling Defendant shall provide DTSC and its representatives with access to the Site for the purpose of conducting any response activity relating to the Site.  Consent Decree, ¶ 32.

b. Settling Defendant shall refrain from using the Site in any manner that would interfere with or adversely affect the implementation, integrity or protectiveness of the response actions to be performed at the Site.  Settling Defendant shall remove any vehicle, trailer or container on the Site as recommended by any DTSC-approved plan or report, signed and stamped by a qualified professional engineer licensed in the State of California.  Consent Decree, ¶ 33.

c. Within thirty (30) days of a written request from DTSC to record an Environmental Restrictive Covenant on the property, Settling Defendant shall execute and record in the Recorder's Office in Solano County, California, an Environmental Restrictive Covenant approved by DTSC, running with the land, that grants a right of access to DTSC and its representatives to conduct response activities at the Site, and which grants DTSC and its representatives the right to enforce use restrictions that DTSC determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the removal or remedial measures to be performed at the Site.  Settling Defendant shall provide DTSC with a certified copy of the recorded Environmental Restrictive Covenant within ten days of recording the document.  Consent Decree, ¶ 34.

**4. Access to Information.**

Settling Defendant shall provide to DTSC, within thirty (30) calendar days of the effective date of the Consent Decree copies of any and all records, documents, and information within its possession or control, or that of its agents, relating to:  (a) the ownership, operation, or control of the Site; (b) the purchase, storage, use, handling, generation, treatment, transportation, or disposal of hazardous substances in connection with the Site; (c) releases and/or threatened releases of hazardous substances at or from the Site, including the soil and groundwater; and (d) removal, remedial, or response actions conducted by any person at the Site.  Consent Decree, ¶ 35.

6

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)

**5. Covenant Not to Sue by DTSC.**

In exchange for the actions to be performed and the payments that will be made pursuant to the Consent Decree, DTSC covenants not to sue Settling Defendant (a) for past response costs related to the Site or to recover penalties for Settling Defendant's conduct occurring prior to the effective date of the Consent Decree; or (b) to recover future response costs incurred after Settling Defendant's voluntary or involuntary transfer of title to the property to another individual or entity.  Consent Decree, ¶ 38.  The covenant not to sue is subject to certain reservations of DTSC's rights, including, but not limited to, Settling Defendant's satisfactory performance of his obligations under the Consent Decree, DTSC's right to sue for future response costs accrued between the effective date of the Consent Decree and the involuntary or voluntary transfer of title to the property to another individual or entity, and the right to reopen this action or institute a new action based on new information relating to Settling Defendant's liability or previously unknown conditions relating to the Site.  Consent Decree, ¶¶ 38-41.

**6. Contribution Protection.**

Settling Defendant will receive contribution protection to the extent permitted by law for "Matters Addressed" by the Consent Decree, except for actions and claims identified by DTSC's Reservation of Rights.  Consent Decree, Section VII; Consent Decree, ¶¶ 46-49.  If the Consent Decree is not approved by the Court, the agreement is voidable at the discretion of either of the parties, and the terms of the agreement may not be used as evidence in any litigation between the parties.  Consent Decree, ¶ 57.

**7. Covenant Not to Sue by Settling Defendant.**

Settling Defendant covenants not to sue and agrees not to assert any claims against DTSC or its contractors or employees that arise out of the transaction or occurrence that is the subject matter of DTSC's First Amended Complaint for any injuries, losses, costs, or damages caused as a result of the performance or requirements of the Consent Decree or DTSC's response actions at the Site.  Consent Decree, ¶ 45.

7

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)

### B. Public Notice and Opportunity for Comment

DTSC lodged an earlier version of the Consent Decree with the Court on October 30, 2017. ECF No. 173. On November 17, 2017, DTSC published notice of this proposed consent decree in the California Regulatory Notice Register (2017, Volume No. 46-Z), page 1781 ("Notice"), and invited the public to comment on the proposed consent decree. The Notice requested that comments be submitted to DTSC no later than December 18, 2017. Beckman Decl., ¶ 20. DTSC also published notice of the proposed consent decree in a local newspaper, the Vacaville Reporter. Additionally, on November 27, 2017, DTSC informed defendants and/or their counsel about the proposed consent decree and commencement of the public comment period. *Id*. No comments were received. Beckman Decl., ¶ 21.

After signing the proposed consent decree, DTSC became aware of a drafting error that created an ambiguity that did not reflect the intent of DTSC and Settling Defendant. DTSC and Settling Defendant discussed this error, and agreed to the following corrections. In paragraph 20, p. 8 of the consent decree that had been lodged with the Court on October 30, the parties agreed to (1) delete "by Van Over of the Property" from lines 3-4, and (2) substitute "property sold" for "Property" on line 5. The parties agreed to delete "all or any portion of" from paragraph 23, p. 8, line 16, and to add "all or a portion of the" to paragraph 29, p. 10, line 6. The parties agreed to delete "all of" from paragraph 47, p. 15, line 5. Finally, reflecting a recent staffing change, Edward H. Ochoa was substituted for Sarah Morrison as the Supervising Deputy Attorney General in the caption.

Settling Defendant executed the Consent Decree on February 12, 2018, and DTSC executed the Consent Decree on February 13, 2018. The Consent Decree was lodged with the Court on February 15, 2018. ECF No. 176-1. With the exception of the drafting error changes listed above, the recently-lodged Consent Decree is identical to the version that was made available for public comment.

### IV. ARGUMENT

For the reasons stated below, DTSC is now requesting that the Court approve and sign the Consent Decree lodged with the Court on February 15, 2018.

### A. Standard of Review for Entry of CERCLA Settlements.

A district court reviewing a CERCLA consent decree must "satisfy itself that the settlement is reasonable, fair, and consistent with the purposes that CERCLA is intended to serve." *United States v. Cannons Engineering Corp.*, 899 F.2d 79, 85 (1st Cir. 1990) ("*Cannons*") (quoting the legislative history to the 1986 CERCLA amendments); *accord United States v. Montrose Chem. Corp. of California*, 50 F.3d 741, 746 (9th Cir. 1995) ("*Montrose*"). "The relevant standard is not . . . whether the settlement is one which the court itself might have fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute." *Cannons*, 899 F.2d at 84. Further, a "district court has an 'obligation to independently scrutinize the terms of [such agreements],' by, *inter alia*, comparing the 'proportion of total projected costs to be paid by the [settling parties] with the proportion of liability attributable to them." *Arizona v. City of Tucson,* 761 F.3d 1005, 1008 (9th Cir. 2014) (quoting *Montrose*, 50 F.3d at 747). Accordingly, the district court should engage in a "comparative analysis." *Id.* at 1012 (quoting *Montrose*, 50 F.3d at 747).

Approval of a proposed consent decree is committed to the discretion of the district court. *United States v. State of Oregon*, 913 F.2d 576, 580 (9th Cir. 1990). The court's discretion should be guided by CERCLA's express policy of encouraging early settlements. *Montrose*, 50 F.3d at 746. Moreover, where the settlement has been negotiated by a governmental agency with expertise in enforcing environmental laws, a district court should "give a proper degree of deference to the agency's expertise." *United States v. Akzo Coatings of Am.*, 949 F.2d 1409, 1426 (6th Cir. 1991); *City of Tucson*, 761 F.3d at 1014 ("[W]here state agencies have environmental expertise they are entitled to 'some deference' with regard to questions concerning their area of expertise.") In *Montrose*, the Ninth Circuit noted that:

> CERCLA's settlement policy of encouraging early settlement is strengthened when a government agency charged with protecting the public interest "has pulled the laboring oar in constructing the proposed settlement."

*Montrose*, 50 F.3d at 746 (quoting *Cannons*, 899 F.2d at 84); *see also United States v. Comunidades Unidas Contra la Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000). Since DTSC

9

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)

has expertise concerning the cleanup of the Site, the Court may afford "some deference" to DTSC's judgment concerning the environmental issues underlying the CERCLA Consent Decree in this case. *See City of Tucson*, 761 F.3d at 1014 & n.8. DTSC is the lead state agency responsible for enforcing the Hazardous Substance Account Act, California Health and Safety Code section 25300 ("HSAA"), and for investigating and remediating releases of hazardous substances in California. The HSAA is the state analog to the federal CERCLA statute. Accordingly, within the confines of fulfilling its duty to independently scrutinize the parties' agreement as required by *Montrose*, the Court may consider DTSC's expertise in the enforcement of environmental laws. *See City of Tucson*, 761 F.3d at 1014.

Courts exercising their duties to independently scrutinize consent decrees under CERCLA have considered the following factors: (1) procedural fairness; (2) substantive fairness; (3) reasonableness; and (4) fidelity to CERCLA. *Cannons*, 899 F.2d at 85-93. As set forth below, all these criteria are satisfied by the Consent Decree. Accordingly, even if the Court were to accord no deference to DTSC's expertise, the Court should nonetheless approve and enter the Consent Decree.

**1. The Consent Decree is Procedurally Fair.**

"[F]airness in the CERCLA settlement context has both procedural and substantive components." *Cannons*, 899 F.2d at 86. "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness and bargaining balance." *Id*.

Here, the Consent Decree is the product of arms'-length settlement negotiations that took place over many months between Settling Defendant and DTSC. Beckman Decl., ¶ 19. Even though Settling Defendant represented himself, Settling Defendant participated in drafting the terms of the Consent Decree, and the parties exchanged multiple draft consent decrees. Beckman Decl., ¶ 19.

In a further attempt to ensure procedural fairness, DTSC published notice of the lodging of the Consent Decree that was lodged with the court on October 30 in the California Regulatory Notice Register, published notice in a local newspaper, gave notice to the other defendants in this

10

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)

action, and invited comments on the Consent Decree. Beckman Decl., ¶ 20. DTSC did not receive comments on the Consent Decree. Beckman Decl., ¶ 21. DTSC has thus ensured procedural fairness by engaging in arms'-length negotiations, and providing the public with notice and an opportunity to comment on the Consent Decree.

### 2. The Consent Decree is Substantively Fair.

To determine whether a proposed consent decree is substantively fair, a district court must scrutinize it to determine whether the estimates of responsibility and damages were fairly proportioned among the settling defendants. *Cannons*, 899 F.2d at 87-89. In assessing substantive fairness, courts often "compare the proportion of total projected costs to be paid by the settlors with the proportion of liability attributable to them, and then . . . factor into the equation any reasonable discounts for litigation risks, time savings, and the like that may be justified." *Montrose,* 50 F.3d at 747. A district court reviewing consent decrees negotiated by a state government agency may give the state agency's expertise "some deference" when weighing substantive fairness. *City of Tucson*, 761 F.3d at 1014. Such deference is appropriate here because DTSC is a state agency with the necessary expertise in this area. However, DTSC has provided the Court with the information necessary to make a reasoned assessment of the Consent Decree. As set forth below, even if the Court does not defer to DTSC's judgment on substantive fairness, the facts support an independent finding of fairness.

The settlement requires that Settling Defendant, as the current owner of the Site, reimburse DTSC for its response costs by paying DTSC as follows: 1) the amount of $5,000; and 2) additional payment(s) totaling up to $245,000 if all or a portion of the property is sold, or up to $2.89 million in Excess Sale Proceeds, or if Settling Defendant's financial condition improves. DTSC evaluated and considered Settling Defendant's financial condition in arriving at the settlement. Beckman Decl., ¶ 18. CERCLA expressly permits the government to take ability to pay into consideration when fashioning a settlement with a potentially responsible party. *See* 42 U.S.C. §§ 9622(e)(3)(A), (f)(7)(B).

Because none of the defendants in this case is similarly situated, DTSC estimated proportionate liability for each defendant, including Settling Defendant, by looking at the totality

of the circumstances, taking into account factors such as years of ownership at the Site, status as an operator, compliance with DTSC's cleanup orders, and inability to pay.

Wood preserving operations began at the Site in 1972. Settling Defendant became an owner relatively recently, in 2011. Settling Defendant was never an operator, having never conducted wood preserving operations at the Site, and thus did not cause the contamination at the Site.[2] On the other hand, Settling Defendant had potential exposure to damages under state law, unlike certain other defendants, because he violated DTSC's I/SE Order, which required him to conduct response actions at the Site. Taking all of these factors into consideration, DTSC assessed Settling Defendant's proportionate liability at approximately 15% of DTSC's unreimbursed response costs, then discounted this figure to take into consideration Settling Defendant's financial condition and the avoidance of litigation costs and risks this early settlement makes possible. Under the Consent Decree, Settling Defendant will pay approximately 8% of DTSC's current unreimbursed response costs, or approximately 5% of DTSC's total estimated unreimbursed costs if DTSC has to continue conducting all the response actions at the Site through 2025.

DTSC evaluated and considered Settling Defendant's ability to pay response costs in arriving at the settlement. A higher settlement figure was not supported by the financial information available to DTSC. Beckman Decl. ¶ 18. DTSC may consider Settling Defendant's ability to pay in reaching a CERCLA settlement. *See* 42 U.S.C. §§ 9622(e)(3)(A), (f)(7)(B).

By reaching a negotiated settlement, the parties were able to avoid lengthy, complex, and costly litigation that would have entailed significant discovery, pre-trial research and filings, and a trial. *See United States v. Fort James Operating Co.*, 313 F. Supp. 2d 902, 909 (E.D. Wis. 2004).

---

[2] By contrast, WCWP, which DTSC estimated had 33% liability as a successor to Pacific Wood Preserving, owned the Site for approximately seven years, and conducted wood preserving operations at the Site during that time. Also in comparison, Dobbas, which DTSC estimated had 20% proportionate liability, was a partial owner of the Site for fourteen years, and had potential exposure to damages under state law because it violated DTSC's I/SE Order, which required it to conduct response actions at the Site.

12

Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)

The settlement reflects the Settling Defendant's proportional liability at the Site, Settling Defendant's commitment to settlement, Settling Defendant's financial condition, DTSC's assessments of the strengths and weaknesses of the evidence supporting DTSC's claim for response costs at the Site, and the litigation risks and costs of going to trial in this case. DTSC has ample basis for determining that Settling Defendant's settlement is substantively fair. For the above reasons, the Court should give some deference to DTSC's evaluation and find that the Consent Decree is substantively fair.

### 3. The Consent Decree is Reasonable.

Determining whether a proposed consent decree is reasonable is a "multifaceted exercise." *Cannons*, 899 F.2d at 89. "The court's role is not to determine whether the [settlement] is the best possible settlement that the State could have achieved, but rather whether the settlement is within the reaches of the public interest." *State of Arizona ex rel. Woods v. Nucor Corp.* ("*Nucor*"), 825 F. Supp. 1452, 1464 (D. Ariz. 1992), *aff'd*, 66 F.3d 213 (9th Cir. 1995) (citation omitted). The *Cannons* court recognized that:

> [T]he reasonableness of a proposed settlement must take into account foreseeable risks of loss. . . .. [E]ven if the government's case is sturdy, it may take time and money to collect damages or to implement private remedial measures through litigatory success. To the extent that time is of essence or that transaction costs loom large, a settlement which nets less than full recovery of cleanup costs is nonetheless reasonable.

*Cannons*, 899 F.2d at 90. In determining whether a settlement is reasonable, courts look to: (1) whether the proposed settlement will be effective in ensuring a cleanup of the property; (2) whether it satisfactorily compensates the public for the costs of cleanup; and (3) whether the settlement reflects the relative strengths of the parties' bargaining positions. *Id*. at 89-90.

Effectiveness. The Consent Decree will be effective in ensuring cleanups of contaminated sites, because under the settlement Settling Defendant has agreed to contribute funds toward the reimbursement of DTSC's past response costs incurred cleaning up the Site. Settling Defendant also acknowledges that he is liable for all future response costs at the Site between the effective

13

date of the Consent Decree and Settling Defendant's voluntary or involuntary transfer of title to the property, should he have the ability to pay those costs.

<u>Benefit to the Public</u>.  The Consent Decree satisfactorily compensates the public for response costs incurred, because the Consent Decree requires Settling Defendant to pay the maximum share he can afford of DTSC's costs incurred cleaning up the Site.

<u>Relative Strengths of the Parties' Positions</u>.  The Consent Decree reflects the relative strengths of the parties' bargaining positions.  While DTSC believes that it would prevail against Settling Defendant should this matter proceed to trial, DTSC acknowledges that there is a risk it will not be able to achieve a complete recovery against Settling Defendant, particularly considering Settling Defendant's current financial condition, and even a victory at trial will entail substantial expense.  The Consent Decree requires Settling Defendant to pay a portion of DTSC's response costs to clean up the Site, without the long delays and costs associated with litigation.  The settlement payment required by the Consent Decree reflects the relative bargaining positions of DTSC and Settling Defendant.  For the reasons set forth above, the Consent Decree is reasonable.

### 4. The Consent Decree Is Consistent with the Purposes of CERCLA

A consent decree must also be consistent with the "overarching principles" of CERCLA, namely, "accountability, the desirability of an unsullied environment, and the promptness of response activities." *Nucor*, 825 F. Supp. at 1464 (quoting *Cannons*, 899 F.2d at 90).  CERCLA's goals are twofold:  (1) to create a prompt and effective response to hazardous waste problems; and (2) to ensure that those responsible for the problems their disposal caused bear the costs and responsibility for remedial action.  *Cannons*, 899 F.2d at 90-91.

The Consent Decree requires Settling Defendant to pay DTSC $5,000 plus the net sale proceeds of the sale(s) of all or a portion of the Site in an amount up to $245,000.  Settling Defendant is bearing responsibility for the problems caused by releases and/or threatened releases of hazardous substances at the Site.  The Consent Decree holds Settling Defendant accountable, and it also preserves funds for DTSC to enable it to effectuate prompt and effective responses to hazardous waste problems in order to protect the environment.  In the present case, the Consent

14

Decree satisfies the twin goals of CERCLA. It is therefore consistent with the principles of CERCLA, and should be approved.

**V.    CONCLUSION**

The Consent Decree is the result of arms'-length settlement negotiations between DTSC and Settling Defendant. The Consent Decree requires Settling Defendant to pay a portion of DTSC's response costs for the investigation and cleanup at the Site. It is reasonable, fair, and consistent with the purposes that CERCLA is intended to serve. For the reasons described above, DTSC respectfully requests that the Court approve and enter the Consent Decree as a judgment of the Court.

Dated:  February 16, 2018

Respectfully submitted,

XAVIER BECERRA
Attorney General of California


 /s/ Laura J. Zuckerman
LAURA J. ZUCKERMAN
Deputy Attorney General
*Attorneys for Plaintiffs California Department of Toxic Substances Control and Toxic Substances Control Account*

15
Memorandum of Points and Authorities in Support of Motion for Judicial Approval of Consent Decree Between Plaintiffs and Defendant David Van Over (2:14-cv-00595-WBS-EFB)