| 1 | XAVIER BECERRA
Attorney General of California
| 2 | EDWARD H. OCHOA, State Bar No. 144842
Supervising Deputy Attorney General
| 3 | LAURA J. ZUCKERMAN, State Bar No. 161896
OLIVIA W. KARLIN, State Bar No. 150432
| 4 | Deputy Attorneys General
 300 South Spring Street, Suite 1702
| 5 |  Los Angeles, CA  90013
 Telephone:  (213) 897-0473
| 6 |  Fax:  (213) 897-2802
 E-mail:  Laura.Zuckerman@doj.ca.gov
| 7 |  E-mail:  Olivia.Karlin@doj.ca.gov
*Attorneys for Plaintiffs California Department of*
| 8 | *Toxic Substances Control and the Toxic Substances*
*Control Account*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,**<br><br>Plaintiffs,<br><br>v.<br><br>**JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC.,  a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,**<br>Defendants. | 2:14-cv-00595-WBS-EFB<br><br>**CONSENT DECREE BETWEEN PLAINTIFFS AND DEFENDANT DAVID VAN OVER; EXHIBIT A** |
| **AND RELATED COUNTERCLAIMS AND CROSS CLAIMS** | |

1

[Proposed] Consent Decree Between Plaintiffs and Defendant Van Over (2:14-cv-00595-WBS-EFB)

## INTRODUCTION

1. Plaintiffs, the State of California Department of Toxic Substances Control and the Toxic Substances Control Account (collectively, "DTSC"), filed a Complaint in the above-captioned matter on March 3, 2014, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA"), against several defendants, including Defendant David Van Over ("Van Over"), and then subsequently filed a First Amended Complaint on December 11, 2014 ("First Amended Complaint"), pursuant to CERCLA, which added a defendant. In this action, DTSC seeks to recover response costs incurred or to be incurred by DTSC in responding to releases and/or threatened releases at the property located at 147 A Street, Elmira, Solano County, CA, identified by Solano County Assessor's Parcel Numbers 142-010-130, 142-010-140 and 142-042-010 ("the Site"), pursuant to CERCLA section 107(a), 42 U.S.C. § 9607(a). DTSC also seeks declaratory relief under 28 U.S.C. § 2201 and CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2), alleging that defendants are jointly and severally liable for Future Response Costs to be incurred by DTSC with respect to the Site. DTSC also seeks injunctive relief, treble damages, and civil penalties against certain defendants, including Van Over, pursuant to a supplemental state law claim under the Hazardous Substances Account Act, California Health and Safety Code section 25300 et seq. ("HSAA"), for those defendants' failure to comply with an Imminent and Substantial Endangerment Determination Order and Remedial Action Order ("I/SE Order"), discussed *infra* at paragraph 2k, that DTSC issued to those defendants in 2011 concerning the releases and threatened releases of hazardous substances at the Site.[1]

2. In the First Amended Complaint, DTSC alleges, in relevant part, that:

   a. From approximately 1972 to 1982, certain defendants conducted wood preserving operations at the Site. Wood preserving operations involved the use of hazardous substances, including arsenic, chromium, and copper.

---

[1] DTSC also sued Van Over for his use of the Site as a residence, in violation of the I/SE Order and the 1995 Land Use Covenant that restricted the permissible uses of the Site based on environmental conditions there.

b. As a result of the wood preserving operations at the Site, hazardous substances have been, and continue to be, released and/or threatened to be released into the environment at and from the Site.

c. Pacific Wood Preserving ("PWP") conducted wood preserving operations at the Site from approximately 1972 to approximately September 12, 1979, and owned the Site from 1972 to approximately September 12, 1979. On September 12, 1979, PWP sold the Site to The Wickes Corporation. West Coast Wood Preserving ("WCWP") is a successor to PWP. From 1979 to approximately 1982, non-party to this agreement Collins & Aikman Products, LLC (formerly known as Collins & Aikman Products Co., and the successor by merger to The Wickes Corporation) ("C&A Products"), conducted wood preserving operations at the Site. Wood preserving operations at the Site ceased in approximately 1982.

d. From the 1980's through 2005, The Wickes Corporation and its successor, C&A Products, took various response actions under the oversight of DTSC to address environmental contamination at, around, and/or beneath the Site. Those actions included, among other things, soil excavation, installing an asphalt cap over contaminated soils, constructing a building and a drainage system over another contaminated area of the Site, installing and operating a groundwater extraction and treatment system, and groundwater monitoring.

e. On or about March 20, 1997, C&A Products sold the Site to defendants Jim Dobbas, Inc. ("Dobbas") and Continental Rail, Inc. ("CRI").

f. On or about May 17, 2005, C&A Products filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Michigan, Case No. 05-55932. In November 2005, while in Chapter 11 bankruptcy proceedings, C&A Products informed DTSC that it was unwilling to continue to perform response actions at the Site.

g. In 2006, DTSC requested that Dobbas and CRI, the then-owners and operators of the Site, carry out response actions to address contamination at the Site. Dobbas and CRI refused. As a result, DTSC issued an Imminent and Substantial Endangerment Determination on November 9, 2006, and entered into state-funded contracts to evaluate response actions.

///

3

h. DTSC tried in 2007 and 2008 to resume operating the Wickes/C&A Products remedy that DTSC had approved in 1996. But the groundwater treatment system had already reached a point at which it was evident that it would not clean up the groundwater to remediation goals in a timely manner. Ultimately, the idled groundwater treatment system would require too many repairs to make it cost-effective to restart. But until DTSC discovered the system could not be fixed, DTSC viewed re-starting it as an interim measure to contain the "plume" (i.e., the underground area of groundwater contamination) until alternative cleanup approaches could be evaluated, which it eventually did.

i. In July 2010, DTSC finalized a Removal Action Workplan for the Site that called for contaminated soil excavation, off-site disposal, backfilling, confirmation sampling, demolition of the groundwater extraction and treatment system, and long-term groundwater monitoring. In the Removal Action Workplan it was reported that contaminated groundwater had migrated from beneath the Site to the residential area, which created the potential for irrigation wells located there to extract and distribute contaminated groundwater.

j. On or about February 11, 2011, Dobbas and CRI sold the Site to Van Over, who, as the new owner of the Site, agreed in the Agreement of Purchase and Sale dated February 11, 2011 to assume responsibility and liability for the hazardous substances on, at, beneath, or emanating from the Site, and to promptly comply with all applicable environmental laws, all applicable regulatory agency directives, orders and policies pertaining to the Site and arising from hazardous substances on, at, beneath or emanating from the Site.

k. On March 16, 2011, DTSC issued the I/SE Order ordering Dobbas, CRI, and Van Over to conduct the actions described in the Removal Action Workplan, and to take additional response actions at the Site. Dobbas, CRI, and Van Over failed to complete the actions described in the Removal Action Workplan, or to take other response actions described in the I/SE Order.

3. Defendants' failure to complete response actions at the Site created an imminent risk that contaminated groundwater would spread to nearby wells and further contaminate the drinking water aquifer, and that the asphalt cap would fail and allow direct human contact with

4

contaminated soil or contribute more to surface water or groundwater contamination. DTSC took response actions to address the releases of hazardous substances at the Site. DTSC's response actions were necessary to remove the hazardous substances released and/or threatened to be released at and from the Site. The response actions included, but were not limited to, the following activities: efforts to repair and restart the groundwater extraction and treatment system, completion of a removal investigation for site soils, preparation of the Removal Action Workplan, implementation of the Removal Action Workplan, and groundwater monitoring.

4. As of September 30, 2016, DTSC's unreimbursed response costs related to the Site exceeded $2.7 million, exclusive of interest. DTSC will continue to incur response costs related to the Site, including costs to litigate the claims in the First Amended Complaint.

5. This Court has ruled that Van Over is a responsible party pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and is jointly and severally liable under CERCLA for recoverable response costs incurred and to be incurred by DTSC at the Site.

6. DTSC has reviewed the financial information submitted by Van Over and determined that Van Over is presently not able to pay penalties or a significant portion of the Past Response Costs incurred, or the Future Response Costs to be incurred, at the Site. By signing this Consent Decree, Van Over affirms under penalty of perjury that the financial information provided to DTSC is true and correct. In making this initial determination of Van Over's inability to pay and in entering into this settlement, DTSC has relied on the financial information provided by Van Over.

7. The Parties agree, and this Court finds by entering this Consent Decree, that this Consent Decree has been negotiated by the Parties in good faith, that the settlement of this matter will avoid prolonged and complicated litigation, and that this Consent Decree is fair, reasonable, in the public interest, and consistent with the purpose of CERCLA.

**THEREFORE**, the Court, with the consent of the Parties to this Consent Decree, hereby ORDERS, ADJUDGES, AND DECREES as follows:

///

///

# I. JURISDICTION.

8. The Court has subject matter jurisdiction over the matters alleged in this action pursuant to 28 U.S.C. § 1331 and CERCLA section 113(b), 42 U.S.C. § 9613(b), and the Court has personal jurisdiction over each of the Parties.

9. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) and CERCLA section 113(b), 42 U.S.C. § 9613(b), because the claims asserted in the First Amended Complaint and the releases and/or threatened releases of hazardous substances occurred in this judicial district.

10. Van Over waives all objections and defenses that he may have to the jurisdiction of the Court or to venue in this district in the above-captioned action. Van Over agrees not to challenge this Court's jurisdiction to enter and enforce this Consent Decree.

11. The Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree, if necessary.

# II. SETTLEMENT OF DISPUTED CLAIMS.

12. This Consent Decree resolves DTSC's claims against Van Over in the above-captioned action under section 107 of CERCLA, 42 U.S.C. § 9607. DTSC agrees to settlement of Van Over's liability in this action in exchange for consideration from Van Over, including payment by Van Over to reimburse a portion of DTSC's Past Response Costs and Future Response Costs incurred by DTSC at or in connection with releases and/or threatened releases of hazardous substances at, beneath, and/or from the Site.

13. The Parties consent to, and shall not challenge entry of, this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

14. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Parties.

# III. DEFINITIONS.

15. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in the regulations promulgated under CERCLA shall have the meaning assigned to them therein. Whenever terms listed below are used in this Consent Decree,

the definitions below shall apply.

16. "Ability to Pay Determination" shall mean the tri-annual written determination by DTSC's Ability to Pay Unit, pursuant to Paragraph 28 below, regarding the extent to which Van Over has the ability to pay all or a portion of the then-outstanding balance of his obligations under Paragraph 25. The Ability to Pay Determination will be made based on documents provided by Van Over pursuant to Paragraph 28, including any additional documents requested by DTSC's Ability to Pay Unit, and will request payment of a specified amount, if payment is demanded.

17. "DTSC" shall mean, collectively, the State of California Department of Toxic Substances Control and the Toxic Substances Control Account, and their predecessors and successors. The Department is a public agency of the State of California organized and existing under and pursuant to California Health and Safety Code § 58000, et seq. Under California law, the Department is the state agency responsible for determining whether there has been a release and/or threatened release of hazardous substances into the environment, and for determining the actions to be taken in response thereto. The Toxic Substances Control Account is an account within the State of California General Fund. Under California Health and Safety Code section 25361(a), the account shall be a party in any action for recovery of response costs or expenditures incurred from the account under Chapter 6.8 of Division 20 of the California Health and Safety Code.

18. "Effective Date" shall mean the date of entry of this Consent Decree by this Court.

19. "Future Response Costs" shall mean all costs of "removal," "remedial action," or "response" as those terms are defined by CERCLA section 101, 42 U.S.C.§ 9601, subsections 23-25, related to the release and/or threatened release of hazardous substances at or from the Site, including the in soils and groundwater, that are incurred after the Effective Date.

20. "Net Sale Proceeds" shall mean, for any sale of all or a portion of the property at 147 A Street, Elmira, Solano County, CA, identified by Solano County Assessor's Parcel Number(s) 142-010-130, 142-010-140 and 142-042-010, the gross sale price, less costs of sale (including but not limited to customary commissions, finders' fees, attorneys' fees related to negotiation and documentation of the transactions, escrow costs, title fees and costs, including those for any

7

endorsements required by the buyer or title company, City, State, and County documentary transfer taxes and similar items), taxes (including but not limited to property taxes and assessments of all types, and income taxes and capital gains taxes due as a result of the sale), all customary prorations of any property expenses, and amounts needed to satisfy any liens, encumbrances or other items recorded against the property sold, and any amounts required by the buyer or title company to be held back at closing to satisfy an unresolved issue or contingency (provided, however, that if the conditions for release of such holdback amount have been met, and any funds remain in Van Over's account, such remainder shall be included in the Net Sale Proceeds and paid over to DTSC). "Excess Sale Proceeds" shall mean any Net Sale Proceeds in excess of $245,000.

21. "Parties" shall mean DTSC and Van Over, collectively.

22. "Past Response Costs" shall mean all costs of "removal," "remedial action," or "response" as those terms are defined by CERCLA section 101, 42 U.S.C.§ 9601, subsections 23-25, related to the release and/or threatened release of hazardous substances at or from the Site, including in the soils and groundwater, that DTSC has incurred prior to the Effective Date.

23. "Property" shall mean the property located at 147 A Street, Elmira, Solano County, CA, identified by Solano County Assessor's Parcel Number(s) 142-010-130, 142-010-140, and 142-042-010.

24. "Site" shall mean the property at 147 A Street, Elmira, Solano County, CA, identified by Solano County Assessor's Parcel Number(s) 142-010-130, 142-010-140 and 142-042-010. For purposes of this Consent Decree, the Site includes the vertical and areal extent of the hazardous substance contamination that is or has been present at, beneath, and/or from the Site.

### IV. VAN OVER'S SETTLEMENT OBLIGATIONS.

25. Van Over shall pay to DTSC the sum of two hundred fifty thousand dollars ($250,000) in multiple installments as follows:

    a.    payment of five thousand dollars ($5,000) must be made within thirty (30) days of the Effective Date;

///

b.　　additional payment(s) totaling up to two hundred forty-five thousand ($245,000) shall be made (i) within 10 days of each sale of all or a portion of the Property, as set forth in Paragraph 29 below, in an amount equal to the Net Sale Proceeds of such sale; and/or (ii) within 10 days of receipt of an Ability to Pay Determination, in an amount equal to the amount demanded in the Ability to Pay Determination.

26.　　Within sixty (60) days of the Effective Date, DTSC shall ensure that the existing $883,347 statutory lien on the Property is replaced by a judgment lien for $245,000 to secure a portion of the Past Response Costs. This $245,000 judgment lien will remain in effect, accruing statutory interest, until paid in full.

27.　　Van Over undertakes to take all response actions at the Site, as defined in 42 U.S.C. § 9601(25), required by CERCLA and as directed by DTSC between the Effective Date and prior to Van Over's voluntary or involuntary transfer of title to the Property, including but not limited to response actions required by the I/SE Order, and the attached Exhibit A, if he is financially able to do so. Van Over acknowledges that he is liable for all Future Response Costs at the Site between the Effective Date and prior to Van Over's voluntary or involuntary transfer of title to the Property.

28.　　Van Over represents that he is an entrepreneur with fluctuating levels of income, and that he will be redeveloping the Site to increase its value. To substantiate his claim of ongoing inability to pay the balance of the sum due pursuant to Paragraph 25(b), unless Van Over has made a payment of $50,000 or more within the prior thirty-six (36) months, Van Over shall provide periodic verification of his income by June 30 of every third year from the Effective Date, without the need for any request by DTSC. Such verifying documents to be provided to DTSC shall include, but not be limited to, all of the following: complete copies of the last three years' personal and business income taxes; the last twelve (12) months of bank statements for all deposit accounts, lines of credit, and mortgages; a list of all real properties owned, bought or sold during those prior three years; and documentation of all property tax payments made during those prior three years.

///

29. If Van Over sells any portion or all of the Property, 100% of the Net Sale Proceeds up to $245,000 shall be paid to DTSC to satisfy the judgment lien recorded pursuant to Paragraph 26. Van Over shall notify DTSC of the completion of any sale within three (3) business days of the sale's completion. Van Over shall provide both an estimated seller's closing statement within one week of accepting any property purchase offer, and the final closing statement for any property sale. If the Net Sale Proceeds of any sale of all or a portion of the Property exceeds $245,000, DTSC shall receive 80% of the Excess Sale Proceeds. In no event shall Van Over be required to pay to DTSC pursuant to this Paragraph more than a total of $2.89 million in Excess Sale Proceeds.

30. If Van Over fails to pay when due the $5,000 payment required by Paragraph 25(a), or to pay when due any portion of the $245,000 balance required by Paragraph 25(b), then Van Over shall immediately pay the entire unpaid balance of the $250,000 due to DTSC, with interest accruing from the due date of the payment until the full remaining balance is paid. This Paragraph does not limit or waive any other remedies available to DTSC by virtue of Van Over's failure to comply with the requirements of this Consent Decree.

31. The payment(s) required in Paragraphs 25 and 26 shall be made by certified check, cashier's check, or money order made payable to "Cashier, California Department of Toxic Substances Control," and shall bear on its face both the docket number of this action, and the phrase "Site Code 100164-SM." The payment shall be sent to:

> Cashier
> Department of Toxic Substances Control
> Accounting Office, MS-21A
> 1001 I Street
> P.O. Box 806
> Sacramento, CA 95812-0806

A copy of the check shall be mailed to:

> Wickes Lumber Site (Elmira) Attorney (Site Code 100164 SM)
> Office of Legal Counsel, MS-23A
> California Department of Toxic Substances Control
> 1001 I Street
> P.O. Box 806
> Sacramento, CA 95812-0806

and e-mailed to Vivian.Murai@dtsc.ca.gov in .pdf or .jpg format.

32. **Access and Institutional Controls.** Van Over shall provide DTSC and its representatives with access to the Site for the purpose of conducting any response activity relating to the Site.

33. Van Over shall refrain from using the Site in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the response actions, including removal or remedial measures to be performed at the Site, and shall comply with the recorded Environmental Restrictive Covenant (Land Use Covenant) referenced in Paragraph 34, below. Van Over shall promptly remove any vehicle, trailer or container on the Site as recommended by any DTSC-approved plan or report, signed and stamped by a qualified professional engineer licensed in the State of California.

34. **Environmental Restrictive Covenant.** Within thirty (30) days of a written request by DTSC to record an Environmental Restrictive Covenant (Land Use Covenant) on the Property, Van Over shall execute and record in the Recorder's Office in Solano County, State of California, an Environmental Restrictive Covenant approved by DTSC, running with the land, that grants a right of access to DTSC and its representatives for the purpose of conducting response activities at the Site, and grants DTSC and its representatives the right to enforce use restrictions that DTSC determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the removal or remedial measures to be performed at the Site. Van Over shall provide DTSC with a certified copy of the recorded Environmental Restrictive Covenant within ten days of recording such document.

## V. ACCESS TO INFORMATION.

35. Within thirty (30) calendar days of the Effective Date, Van Over shall provide to DTSC copies of any and all records, documents, and information within its possession or control, or that of its agents, relating to: (a) the ownership, operation, or control of the Site; (b) the purchase, storage, use, handling, generation, treatment, transportation, or disposal of hazardous substances in connection with the Site; (c) releases and/or threatened releases of hazardous substances at or from the Site, including the Site's soil and groundwater; and (d) response actions

11

conducted by any person at the Site, to the extent such non-privileged records, documents, and information within his possession or control that has not already been provided in disclosure or discovery in this action.

36. If, after the Effective Date, Van Over discovers or obtains any records, documents or information described in Paragraph 35 not previously provided to DTSC, Van Over agrees to provide DTSC with copies of the additional records, documents, or information within ten (10) calendar days of the date Van Over discovers or obtains the records, documents, or information.

37. Van Over may assert confidentiality claims covering part or all of the documents or information submitted to DTSC under this Consent Decree to the extent permitted by, and in accordance with, California Health and Safety Code section 25358.2. Documents or information determined to be confidential by DTSC will be afforded the protection specified in California Health and Safety Code section 25358.2. Van Over may also assert that certain documents, records, and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Van Over asserts such a privilege in lieu of providing documents, Van Over shall provide DTSC with a description of the documents withheld and the basis for asserting the privilege.

## VI. COVENANT NOT TO SUE BY DTSC.

38. Except as expressly provided in Section VII (Reservation of Rights) of this Consent Decree, DTSC covenants not to sue Van Over pursuant to CERCLA, the HSAA, or any other statutory or common law claim arising from the allegations of the First Amended Complaint, to recover DTSC's Past Response Costs related to the Site or to recover penalties for Van Over's conduct occurring prior to the Effective Date. DTSC also covenants not to sue Van Over to recover Future Response Costs incurred after Van Over's voluntary or involuntary transfer of title to the Property to another individual or entity. This Covenant Not to Sue is conditioned upon the complete and satisfactory performance by Van Over of all of his obligations under this Consent Decree. Consequently, this Covenant Not to Sue shall be deemed not effective if Van Over fails to comply with any of his obligations under this Consent Decree.

///

## VII. RESERVATION OF RIGHTS.

39. Claims Regarding Other Matters. DTSC reserves, and this Consent Decree is without prejudice to, all rights against Van Over with respect to all matters not expressly included within DTSC's Covenant Not to Sue (Section VI).

40. Reservation of Claims. DTSC reserves, and this Consent Decree is without prejudice to, all rights against Van Over with respect to:

    a. Claims based on a failure of Van Over to meet a requirement of this Consent Decree, including but not limited to any efforts to enforce this Consent Decree or otherwise address, make up for or arrange substitute work for any failed performance by Van Over;

    b. Liability arising from past, present, or future disposal, release, and/or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site and not emanating from the Site;

    c. Criminal liability; and

    d. DTSC's right to sue Van Over for Future Response Costs accrued between the Effective Date and the involuntary or voluntary transfer of title to the Property to another individual or entity.

41. Unknown Conditions/New Information. Notwithstanding any other provision in the Consent Decree, DTSC reserves, and this Consent Decree is without prejudice to, its right to institute proceedings in this action or in a new action, and/or to issue an administrative order seeking to compel Van Over to perform response activities at the Site and/or to pay DTSC for additional Future Response Costs, if:

    a. Either of the following occurs: (i) conditions at the Site previously unknown to DTSC are discovered, or (ii) information previously unknown to DTSC is received in whole or in part; and

    b. DTSC determines that the previously unknown conditions or new information, together with other relevant information, indicate that the response actions at the Site are not sufficiently protective of human health or the environment.

13

42. Reservation of Rights. Except as expressly provided in this Consent Decree, Van Over reserves his right to oppose any claim brought by DTSC against Van Over pursuant to paragraphs 39 and 40 of this Consent Decree. Van Over reserves the right to bring a claim against DTSC for failure to meet the requirements of this Consent Decree.

43. Claims Against Other Persons. DTSC reserves, and this Consent Decree is without prejudice to, all rights, claims, and causes of action DTSC may have against any person other than Van Over. Nothing in this Consent Decree is intended to be, nor shall be construed as, a release, covenant not to sue, or compromise of any claim or cause of action which DTSC may have against any person or other entity not a signatory to this Consent Decree.

44. Government Authority. Except as expressly provided in this Consent Decree, nothing in this Consent Decree is intended, or shall be construed, to preclude DTSC from exercising its authority under any law, statute, or regulation with respect to the Site. Furthermore, except as expressly provided in this Consent Decree, nothing in this Consent Decree is intended, nor shall be construed, to preclude any state agency, department, board, or entity, or any federal or local agency, department, board, or entity, from exercising its authority under any law, statute, or regulation.

## VIII. COVENANT NOT TO SUE BY VAN OVER.

45. Van Over covenants not to sue and agrees not to assert any claims or causes of action against DTSC or its contractors or employees arising out of the transaction or occurrence that is the subject matter of the First Amended Complaint, or for any injuries, losses, costs, or damages caused or incurred as a result of the performances or requirements of this Consent Decree or for DTSC's past or future response actions at the Site. This Covenant not to sue is without prejudice to Van Over's reservation of rights as noted in Paragraph 42 herein.

## IX. CONTRIBUTION PROTECTION.

46. With regard to claims for contribution against Van Over, Van Over is entitled to contribution protection pursuant to section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and by

state statutory and common law for the "Matters Addressed" in this Consent Decree, except for actions and claims identified in DTSC's Reservation of Rights (Section VII).

47. The "Matters Addressed" in this Consent Decree include: all Past Response Costs incurred by or on behalf of DTSC with respect to the Site and all Future Response Costs incurred after the transfer of title to the Property from Van Over to another individual or entity.

48. The contribution protection provided in this Section is conditioned upon Van Over's full performance of his obligations under this Consent Decree, including the attached Exhibit A.

49. Nothing in this Consent Decree limits or impairs the right of DTSC or Van Over to pursue any other person not a party to this Consent Decree for unrecovered Past Response Costs or Future Response Costs incurred by DTSC or Van Over.

## X. NOTIFICATION.

50. Notification to or communication among the Parties as required by or provided for in this Consent Decree shall be addressed as follows:

For DTSC:

> Charlie Ridenour, Branch Chief
> Brownfields and Environmental Restoration Program
> California Department of Toxic Substances Control
> 8800 Cal Center Drive
> Sacramento, CA  95826
>
> Vivian Murai, Senior Attorney
> Office of Legal Counsel, MS-23A
> California Department of Toxic Substances Control
> 1001 I Street
> P.O. Box 806
> Sacramento, CA 95812-0806

For Van Over:

> David Van Over
> 216 F Street #108
> Davis, CA 95616-4515

## XI. GENERAL PROVISIONS.

51. **Parties Bound.** This Consent Decree shall apply to, be binding upon, and inure to the benefit of the Parties and their representatives, successors, heirs, legatees, and assigns.

15

[Proposed] Consent Decree Between Plaintiffs and Defendant Van Over (2:14-cv-00595-WBS-EFB)

52. **No Waiver of Enforcement.** The failure of DTSC to enforce any provision of this Consent Decree shall in no way be deemed a waiver of such provision or in any way affect the validity of this Consent Decree. The failure of DTSC to enforce any such provision shall not preclude it from later enforcing the same or any other provision of this Consent Decree.

53. **Costs.** Except as provided in this Consent Decree, the Parties will not seek to recover attorneys' fees and/or litigation costs against each other.

54. **Modification.** This Consent Decree may be modified upon written approval of the Parties and with the consent of the Court.

55. **Integration.** This Consent Decree constitutes the final, complete, and entire agreement between the Parties with respect to the settlement embodied in this Consent Decree.

56. **Lodging and Public Comment.** This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment. DTSC shall file with the Court any written comments received and DTSC's responses thereto. DTSC reserves the right to withdraw or withhold its consent to entry of the Consent Decree if comments regarding the Consent Decree disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate. Van Over consents to the entry of this Consent Decree without further notice.

57. If the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the discretion of either of the Parties, and the terms of the agreement may not be used as evidence in any litigation between the Parties.

58. **Counterparts.** This Consent Decree may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

59. Signatories. Each signatory to this Consent Decree certifies that he or she is fully authorized by the party he or she represents to enter into the terms and conditions of this Consent Decree, to execute it on behalf of the party represented, and to legally bind that party to all the terms and conditions of this Consent Decree.

///

## XII. APPROVALS OF PARTIES.

DTSC consents to this Consent Decree by its duly authorized representative as follows:

**FOR THE DEPARTMENT OF TOXIC SUBSTANCES CONTROL and TOXIC SUBSTANCES CONTROL ACCOUNT**

Date: __2/13/2018_____        ___/s/_____
                               Mohsen Nazemi, Deputy Director
                               Brownfields and Environmental Restoration Program
                               California Department of Toxic Substances Control

Van Over consents to this Consent Decree as follows:

**FOR DAVID VAN OVER:**

Date: ___2/12/2018__        ____/s/_____
                            David Van Over, an Individual

**IT IS SO ORDERED, ADJUDGED, AND DECREED.**

Dated:  March 27, 2018        _____
                              WILLIAM B. SHUBB
                              UNITED STATES DISTRICT JUDGE

**EXHIBIT A**

Settling Defendant agrees that the purpose of the asphalt cap on the Wickes property is to act as a barrier to prevent contact with and the dispersion of the underlying contaminated soil. The cap is also intended to prevent infiltration of rain and surface water that may mobilize and disperse the hazardous contaminants within the soil.

As of August 1, 2017, Settling Defendant has stored or placed on the cap the following items: Two office coaches, two mobile home/trailers, two cargo containers and numerous blades for wind turbines. Based on the current conditions of the cap, including exceedance of cap design life and the absence of annual maintenance and cap repair, Settling Defendant agrees that no additional equipment, trailers, containers or vehicles shall be stored, placed, or operated on the cap until such time as the cap is upgraded to accommodate the load and wear parameters of the future use and the operation and maintenance of the cap is performed in accordance with the 1995 Operation and Maintenance Manual and/or in accordance with an Operation and Maintenance Manual developed pursuant to a DTSC approved cap upgrade. Settling Defendant may not store, place or operate additional equipment on the cap until he has approval from DTSC, and he has shown to DTSC that the cap has been appropriately upgraded.

Any cap upgrade shall be preapproved by DTSC. Settling Defendant shall submit to DTSC a Work Plan for the design and implementation of any cap upgrade. The Work Plan shall provide future use and load assumptions, load and wear calculations, water infiltration analysis, and a complete set of design drawings. The Work Plan shall be signed and stamped by a qualified engineer licensed in the State of California. Upon its approval by DTSC, the Work Plan shall be incorporated into and become enforceable under this Consent Decree. No construction work shall be performed prior to DTSC approval of the Work Plan. Any changes in the design and construction of the cap upgrade found to be necessary during the construction process shall be submitted for DTSC approval prior to the commencement of the construction of those modifications. Upon completion of any cap upgrade, Settling Defendant shall submit to DTSC a Completion Report including as-built drawings signed and stamped by a qualified engineer

licensed in the State of California documenting the final construction details and noting any deviations from the design documented in the approved Work Plan.