XAVIER BECERRA
Attorney General of California
EDWARD H. OCHOA
Supervising Deputy Attorney General
OLIVIA W. KARLIN, State Bar No. 150432
LAURA J. ZUCKERMAN (Counsel for service)
State Bar No. 161896
Deputy Attorneys General
 1515 Clay Street, 20th Floor
 Oakland, CA 94612
 Telephone:  (510) 879-1299
 Fax:  (510) 622-2270
 E-mail:  Laura.Zuckerman@doj.ca.gov
*Attorneys for Plaintiffs California
Department of Toxic Substances Control and the
Toxic Substances Control Account*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,**<br><br>        **Plaintiffs,**<br><br>   **v.**<br><br>**JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,**<br><br>        **Defendants.**<br><br>_____<br>**AND RELATED COUNTERCLAIMS AND CROSS CLAIMS** | **2:14-cv-00595-WBS-EFB**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' APPLICATION FOR ENTRY OF DEFAULT JUDGMENT BY COURT AGAINST DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC**<br><br>FED. R. CIV. P. 55(b)<br><br>Date:  September 23, 2019<br>Time: 1:30 p.m.<br>Place: Courtroom 5, 14th Floor<br>   501 I Street, Sacramento, CA  95814<br><br>Action Filed:  March 3, 2014 |

1

**TABLE OF CONTENTS**

2

**Page**

3    INTRODUCTION ................................................................................................ 1

4    STATEMENT OF FACTS ................................................................................. 2

     I.    SITE HISTORY .................................................................................. 2

5         II.   PROCEDURAL HISTORY. ................................................................ 4

6    ARGUMENT ....................................................................................................... 5

7         I.    C&A PRODUCTS IS LIABLE FOR DTSC'S RESPONSE COSTS UNDER
            CERCLA SECTION 107................................................................. 5

8              A.   DTSC Has Established Its Prima Facie Case Under CERCLA. ............... 6

9                   1.    The Site Is a "Facility."................................................ 6

               2.    A Release or Threatened Release of Hazardous Substances
10                       Occurred at the Site....................................................... 7

11                  3.    DTSC Incurred Costs in Response to the Releases and
                    Threatened Releases at the Site....................................... 7

12                  4.    C&A Products Was an Owner or Operator or Both of the
                    Site at the Time of Disposal of Hazardous Substances at the
13                       Site, and Thus Is a Responsible Party Under CERCLA. ............... 9

          B.   CERCLA Imposes Strict Liability on Responsible Parties..................... 10
14
          C.   None of The Three Statutory Affirmative Defenses to Liability Is
15                 Available Here. ........................................................................ 10

16             D.   CERCLA Imposes Joint and Several Liability on Responsible
              Parties................................................................................... 10

17        II.   DTSC IS ENTITLED TO DECLARATORY RELIEF UNDER CERCLA ON C&A
            PRODUCTS'S LIABILITY FOR FUTURE RESPONSE COSTS........................... 11

18        III.  DTSC'S RESPONSE COSTS ARE RECOVERABLE UNDER CERCLA. ...................... 11

19             A.   DTSC Is Presumed to Have Acted Consistently with the NCP............... 11

20             B.   DTSC's Costs Are Response Costs of the Type Recoverable under
              CERCLA. ............................................................................... 12

21             C.   DTSC Response Costs Are Adequately Documented, Calculated,
22                 and Presented. ......................................................................... 13

          D.   DTSC Is Entitled to Prejudgment Interest on its Unreimbursed
23                 Response Costs Plus Attorneys' Fees. ........................................... 14

24             E.   C&A Products Cannot Show That DTSC's Response Costs Were
              Inconsistent with the National Contingency Plan. ............................ 15

25   CONCLUSION .................................................................................................. 16

26

27

28

i

# TABLE OF AUTHORITIES

**Page**

CASES

*3550 Stevens Creek Associates v. Barclays Bank*
  915 F.2d 1355 (9th Cir. 1990).................................................................6, 10

*Asarco LLC v. Atlantic Richfield Co.*
  866 F.3d 1108 (9th Cir. 2017)...................................................................5

*Burlington Northern & Santa Fe Ry Co. v. United States*
  556 U.S. 599 (2009) ..........................................................................11, 15

*California ex rel. Cal. Dept. of Toxic Substances Control v. Neville Chem. Co.*
  213 F.Supp. 2d 1134 (C.D. Cal. 2002)................................................12, 13

*California ex. rel. Cal. Dept. of Toxic Substances Control v. Neville Chem. Co.*
  358 F.3d 661 (9th Cir. 2004)..........................................................8, 10, 12

*Carson Harbor Village, Ltd. v. Unocal Corp.*
  270 F.3d 863 (9th Cir. 2001)..........................................................6, 9, 10

*Carson Harbor Village Ltd. v. Unocal Corp.*
  287 F.Supp.2d 1118 (C.D. Cal. 2003)..................................................10

*In re First T.D. & Invest., Inc.*
  253 F.3d 520 (9th Cir. 2001)..............................................................2

*Levin Metals Corp. v. Parr-Richmond Terminal Co.*
  799 F.2d 1312 (9th Cir. 1986)..........................................................10

*Lincoln Property Ltd. v. Higgens*
  823 F.Supp. 1528 (E.D. Cal. 1992).....................................................7

*Louisiana-Pacific Corp. v. Beazer Materials & Services*
  811 F.Supp. 1421 (E.D. Cal. 1993).....................................................8

*O'Neil v. Picillo*
  682 F.Supp. 706 (D.R.I. 1988)..........................................................15

*State of Cal. Dept. of Toxic Substances Control v. Snydergeneral Corp.*
  876 F.Supp. 222 (E.D. Cal. 1994).......................................................8

*Uniroyal Chemical Co., Inc. v. Deltech Corp.*
  160 F.3d 238 (5th Cir. 1998)............................................................6

*United States v. American Cyanamid*
  786 F.Supp. 153 (D.R.I. 1992)..........................................................15

ii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*United States v. Carolina Transformer Co.*
739 F.Supp. 1030 (E.D.N.C. 1989)..................................................................7

*United States v. Chapman*
146 F.3d 1166 (9th Cir. 1998)...........................................................6, 8, 12, 13, 15

*United States v. Chromalloy Am. Corp.*
158 F.3d 345 (5th Cir. 1998).........................................................................13

*United States v. Findett Corp.*
220 F.3d 842 (8th Cir. 2000).........................................................................13

*United States v. Gurley*
43 F.3d 1188 (8th Cir. 1994)..........................................................................12

*United States v. Hunter*
70 F.Supp.2d 1100 (C.D. Cal. 1999) ..................................................................6

*United States v. R.W. Meyer, Inc.*
889 F.2d 1497 (6th Cir. 1989)........................................................................14

*United States v. W.R. Grace & Co.*
280 F.Supp. 2d 1149 (D. Mont. 2003) ................................................................14

*United States v. W.R. Grace & Co.*
429 F.3d 1224 (9th Cir. 2006)........................................................................15

*Washington State Dept. of Transp. v. Washington Natural Gas Co.*
59 F.3d 793 (9th Cir. 1995).......................................................................6, 15

**STATUTES**

Delaware Code
§ 18-805 ..........................................................................................5

42 United States Code
§ 9601(8) ..........................................................................................7
§ 9601(9) ..........................................................................................6
§ 9601(22) .........................................................................................7
§ 9601(23) .........................................................................................8
§ 9601(24) .........................................................................................8
§ 9601(25) ...................................................................................3, 7, 12
§ 9607(a) .....................................................................................12, 15
§ 9607(a)(2).......................................................................................9
§ 9607(a)(4)...................................................................................12, 15

iii

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3   42 United States Code

      § 9607(a)(4)(A) ..................................................................................6, 8, 11, 12

4      § 9613(g)(2) ....................................................................................................11

5      § 9613(j)(2) .....................................................................................................15

6   **OTHER AUTHORITIES**

7   40 C.F.R., § 300.1 ...................................................................................................12

8   40 C.F.R., § 302.4 .....................................................................................................7

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLTFS' APPLIC. FOR ENTRY OF DEFAULT
JUDGMENT AGAINST DEF. COLLINS & AIKMAN PRODUCTS, LLC (2:14-cv-00595-WBS-EFB)

**INTRODUCTION**

Plaintiffs California Department of Toxic Substances Control and the Toxic Substances Control Account (collectively, "DTSC") have spent over $3 million in unreimbursed taxpayer funds responding to soil and groundwater contamination at a privately-owned, former wood treatment and preserving facility in Elmira, California. This property, located at the intersection of A Street and Holdener Road, Elmira, Solano County, California, and identified by Solano County Assessor's Parcel Numbers 142-010-130, 142-010-140, and 142-042-010 (the "Site"), was contaminated by spills of hazardous substances used at the Site. As the state agency with authority to address the release or threatened release of hazardous substances, DTSC took action at the Site because the contamination threatened public health and the environment, and because one of the companies responsible, Collins & Aikman Products Co., the predecessor to defendant Collins & Aikman Products LLC ("C&A Products"), filed for bankruptcy in 2005 and stopped its environmental cleanup of the Site.

DTSC had ordered C&A Products to clean up the Site, but C&A Products failed to complete the task after entering bankruptcy in 2005. Because subsequent owners also refused to do the necessary cleanup, DTSC had to expend public funds to stabilize the Site, excavate soil, install an asphalt cap over the contaminated soil, construct a building and a drainage system over another contaminated area of the Site, install and operate a groundwater extraction and treatment system, and perform groundwater monitoring. DTSC seeks recovery of these past expenditures, as well as future costs it may be required to incur at the Site.

Having spent public funds on privately-created contamination on private property, in 2014 DTSC filed this action seeking cost recovery under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601-9675 ("CERCLA"), and under state environmental law. DTSC settled with all the solvent defendants in the case. Defendant C&A Products never appeared in this action, and DTSC duly sought and obtained entry from the clerk of C&A Products's default.[1] DTSC now seeks judgment in the amount of $3,219,449.85 for its

---

[1] The clerk entered the default against C&A Products on March 26, 2015. Docket No. 129. After the clerk entered the default, DTSC obtained settlements from the remaining solvent

unreimbursed response costs, including attorneys' fees, and interest, together with a declaration that C&A Products is jointly and severally liable for DTSC's future response costs related to the Site.

## STATEMENT OF FACTS

**I.   SITE HISTORY**

From approximately 1972 to 1982, wood-preserving operations were conducted at the Site. At various times since 1972, including in 1979 and 1980, hazardous substances within the definition of CERCLA section 101(22) were released at the Site. These hazardous substances included arsenic, chromium, and copper, which are constituents of the wood preserving chemicals used at the Site. *See* Imminent or Substantial Endangerment Determination Order and Remedial Action Order, Docket Number I/SE 10/11-008 ("ISE Order"), attached as Exhibit L to the Declaration of McKinley Lewis ("Lewis Decl."), ¶ 16.

On approximately September 12, 1979, The Wickes Corporation ("Wickes") purchased the Site and conducted business operations at the Site until approximately 1982. First Amended Complaint, Docket No. 77 ("FAC"), ¶ 16. Wickes and its eventual successor, defendant C&A Products, continued to own the Site until about March 20, 1997. *Id.* From the 1980s through 2005, Wickes and its successor Collins & Aikman Products Co., under the oversight of DTSC, took various response actions to address environmental contamination at, around, and/or beneath the Site. FAC, ¶ 20. Those actions included, among other things, soil excavation, installing an asphalt cap over contaminated soils, constructing a building and a drainage system over another contaminated area of the Site, installing and operating a groundwater extraction and treatment

_____

defendants. The settlement for the last remaining defendant, David Van Over, was approved by this Court on March 27, 2018. Docket No. 182. Because there are multiple defendants in this case, DTSC did not seek a default judgment against C&A Products until all defendants had settled. *See In re First T.D. & Invest., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) (where a complaint alleges defendants are jointly and severally liable, and one of them defaults, a default judgment should not be entered against the defaulting defendant until the matter has been adjudicated with respect to all defendants). After the case was closed, DTSC received information on some old insurance policies, and has been investigating whether C&A Products has insurance policies that may provide coverage for unreimbursed response costs in this case. DTSC now seeks to reopen the case to file this motion for default judgment, because a default judgment is a prerequisite for a suit against an insurance company for recovery, and there is no deadline for filing a motion for default judgment in the Eastern District.

2

system, and groundwater monitoring.  *Ibid.*  Collins & Aikman Products Co. paid DTSC's

oversight costs until it entered bankruptcy.  Declaration of Jason Xiao ("Xiao Decl."), ¶ 16; FAC,

¶ 24.

In 2005, while in Chapter 11 bankruptcy proceedings, Collins & Aikman Products Co., the

predecessor to C&A Products, stopped performing response actions at the Site.  FAC, ¶ 24.  In

2006, DTSC requested that defendants Jim Dobbas, Inc. ("Dobbas") and Continental Rail, Inc.

("CRI"), the then-current owners of the Site, carry out the response actions to address the

contamination at the Site.  FAC, ¶ 25.  However, Dobbas and CRI failed and refused to perform

any of the actions formerly conducted by Collins & Aikman Products Co.  FAC, ¶ 27.  As a

result, DTSC issued Imminent and Substantial Endangerment Determination, Docket Number

I/SE 06/07-011 on November 9, 2006, and reevaluated the necessary response actions at the Site.

Lewis Decl., ¶ 14.  In July 2010, DTSC finalized a Removal Action Work Plan for the Site that

called for contaminated soil excavation, off-site disposal, backfilling, confirmation sampling,

demolition of the groundwater extraction and treatment system, and long-term groundwater

monitoring.  FAC, ¶ 29.  Contaminated groundwater had migrated from beneath the Site to the

nearby residential area, which created the potential for exposure to contaminants if groundwater

were used for irrigation or if crop or orchard tree roots contacted shallow groundwater.  Lewis

Decl., ¶ 15.

On or about February 11, 2011, defendants Dobbas and CRI sold the Site to defendant

David Van Over ("Van Over") for $2.00.  FAC, ¶ 30.  On March 16, 2011, DTSC issued the ISE

Order to Dobbas, CRI, and Van Over to conduct response actions at the Site.  FAC, ¶ 31.

Because Dobbas, CRI, and Van Over failed and refused to comply with this order, DTSC had to

expend public funds to take response actions at the Site.  FAC, ¶¶ 32-36.

DTSC has incurred costs for "response," as that term is defined in CERCLA section

101(25), 42 U.S.C. § 9601(25), in taking actions related to the release or threatened release, or

both, of hazardous substances at, around, and/or beneath the Site.  FAC, ¶¶ 33-34.  To date,

DTSC's response actions include, but are not limited to, the following activities:  efforts to repair

and restart the groundwater extraction and treatment system, completion of a remedial

1   investigation for site soils, preparation and implementation of the Removal Action Work Plan,

2   and groundwater monitoring.  FAC, ¶ 33.

3        At present, DTSC's ongoing work at the Site includes monitoring the condition of the

4   asphalt cap and conducting groundwater monitoring and reporting.  Lewis Decl., ¶ 17.  Continued

5   monitoring of stormwater and evaluation of the condition of the asphalt cap are necessary to

6   prevent exposure of contaminated soil to humans and environmental receptors.  *Ibid.*  Continued

7   groundwater monitoring and reporting is necessary to ensure that the Site is not causing further

8   groundwater contamination, and that contaminant concentrations at the four off-site private

9   irrigation wells do not exceed drinking water standards.  *Ibid.*

10        DTSC's unreimbursed response costs through May 31, 2019, including interest and

11   attorneys' fees, total $3,219,449.85.  Xiao Decl., ¶ 20; Declaration of Anthony Westlake, ¶ 14.

12   DTSC is conducting ongoing monitoring at the Site, continues to incur response costs related to

13   the Site, and may incur response costs related to the Site in the future.  *See* Lewis Decl., ¶¶ 18-20.

14   **II.   PROCEDURAL HISTORY.**

15        On December 11, 2014, DTSC filed the FAC for recovery of response costs and declaratory

16   relief under CERCLA, alleging C&A Products and the other defendants, as former owners or

17   operators or both of the Site, were jointly and severally liable under CERCLA section 107(a) for

18   costs incurred and to be incurred by DTSC in response to the release of hazardous substances into

19   the soil and groundwater at and from the Site.  Docket No. 77.  The FAC also seeks a declaratory

20   judgment against the defendants for DTSC's future response costs incurred at the Site pursuant to

21   CERCLA section 113(g)(2).  FAC, ¶¶ 44, 45.

22        Defendant C&A Products is a Delaware limited liability company.  FAC, ¶ 14.  According

23   to the records of the Delaware Secretary of State, Defendant C&A Products was formed on or

24   about December 6, 2007, from the different Delaware corporation Collins & Aikman Products

25   Co.  FAC, ¶ 15.  Collins & Aikman Products Co. was the successor by merger to Collins &

26   Aikman Group., Inc.  *Ibid.*  Collins & Aikman Group, Inc. was formerly known as Wickes

27   Companies, Inc., and, before that, The Wickes Corporation.  *Ibid.*  A Certificate of Cancelation

28   for defendant C&A Products was filed with the Delaware Secretary of State on or about August

28, 2013.  FAC, ¶ 14.  On November 13, 2014, DTSC petitioned the Delaware Court of Chancery for appointment of a receiver for the company under Delaware Code § 18-805.  FAC, ¶ 14.  The petition was granted and the receiver appointed on or about December 8, 2014.  Declaration of Laura J. Zuckerman ("Zuckerman Decl."), ¶ 2.

DTSC served the receiver for defendant C&A Products with the FAC.  Docket No. 92. C&A Products never responded to the FAC.  The clerk of the Court entered C&A Products's default on March 26, 2015.  Docket No. 129, attached as Exhibit A to the Zuckerman Decl.

Defendants West Coast Wood Preserving, LLC, Dobbas, and Van Over settled their liability as alleged in the FAC.  The settlements are embodied in consent decrees approved by the Court on September 16, 2015, November 18, 2015, and March 27, 2018.  Docket Nos. 141, 150, 182.  The defaults of the remaining defendants, CRI and Pacific Wood Preserving ("PWP") were entered by the clerk of the Court on June 22, 2014.  Docket Nos. 18, 19.[2]

## ARGUMENT

### I.   C&A PRODUCTS IS LIABLE FOR DTSC'S RESPONSE COSTS UNDER CERCLA SECTION 107.

As set forth below, there is undisputed evidence that C&A Products's predecessor Wickes, as a former owner and operator of the Site during the time of disposal of hazardous substances, is liable under CERCLA section 107 for DTSC's costs of responding to the releases and potential releases of hazardous substances at the Site.

Congress enacted CERCLA for two primary purposes:  (1) to ensure that hazardous substances released to the environment are promptly and properly cleaned up; and (2) to ensure cleanup costs are borne by those parties responsible for the releases rather than by the public. *Asarco LLC v. Atlantic Richfield Co.*, 866 F.3d 1108, 1115 (9th Cir. 2017).  DTSC has undertaken a response action at the Site and filed this lawsuit to recover its expenses from the defendants, who are liable parties pursuant to CERCLA section 107.

---

[2] At this time, DTSC does not intend to seek default judgments against CRI or PWP because DTSC does not believe that CRI or PWP has insurance coverage available to reimburse it for any response costs.

To establish a defendant's liability under CERCLA section 107, a plaintiff must prove the following elements: "(1) the site is a 'facility;' (2) a 'release' or 'threatened release' of a hazardous substance occurred; (3) the government incurred costs in responding to the release or threatened release; and (4) the defendant is a liable party." *United States v. Chapman,* 146 F.3d 1166, 1169 (9th Cir. 1998).  The fourth element is met by establishing that a defendant falls into one of the categories of "persons" set forth in CERCLA section 107(a), which includes being a past owner of the facility at the time of disposal of hazardous substances.  *Id.*  Defendants are jointly and severally liable under CERCLA for DTSC's response costs incurred, and future costs to be incurred, at the Site.  *United States v. Hunter*, 70 F.Supp.2d 1100, 1106 (C.D. Cal. 1999).  CERCLA imposes strict liability without regard to the party's fault or state of mind.  *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 870 (9th Cir. 2001); *3550 Stevens Creek Associates v. Barclays Bank*, 915 F.2d 1355, 1357 (9th Cir. 1990).  Once the four elements of CERCLA liability are established, CERCLA authorizes the recovery of "all costs of removal or remedial action incurred by . . . a State . . . not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A).[3]

### A.   DTSC Has Established Its Prima Facie Case Under CERCLA.

#### 1.   The Site Is a "Facility."

The first element of CERCLA section 107(a) liability requires that the Site be a "facility." CERCLA defines "facility" as "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed or otherwise come to be located . . . ." 42 U.S.C. § 9601(9).  *See also 3550 Stevens Creek Assoc.*, 915 F.2d at 1360 n.10 (term "facility" has been broadly construed by the courts); *Uniroyal Chemical Co., Inc. v. Deltech Corp.,* 160 F.3d 238, 245 (5th Cir. 1998) ("facility is defined in the broadest possible terms, encompassing far more than traditional waste sites").

---

[3] Whether DTSC's costs are "not inconsistent" with the National Contingency Plan ("NCP") is not an element of DTSC's prima facie case, but rather a factual issue affecting damages.  *Washington State Dept. of Transp. v. Washington Natural Gas Co.*, 59 F.3d 793, 798 (9th Cir. 1995).

6

1   Investigations conducted at the Site showed that soil and groundwater were contaminated

2   with arsenic, chromium, and copper, and that impacted groundwater had migrated offsite to the

3   south and east.  Lewis Decl., ¶ 11.  These contaminants are designated hazardous substances

4   under CERCLA section 101(14) and 40 C.F.R., § 302.4 (designation of CERCLA hazardous

5   substances).

6       The Site is a facility as defined in CERCLA section 101(9), because there is undisputed

7   evidence that hazardous substances have come to be located at the Site.

8           **2.    A Release or Threatened Release of Hazardous Substances Occurred
                    at the Site.**
9

10  The second element of liability under CERCLA section 107(a) is that there has been a

11  release or threatened release of hazardous substances from the facility.  The term "release" means

12  "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping,

13  leaching, dumping, or disposing into the environment . . . ."  42 U.S.C. § 9601(22).

14  "Environment" is defined broadly to include "surface water, ground water, drinking water supply,

15  land surface or subsurface strata, or ambient air . . . ."  42 U.S.C. § 9601(8).  These expansive

16  definitions, taken together, provide that a release is established whenever hazardous substances

17  are present in the soil.  *United States v. Carolina Transformer Co.*, 739 F.Supp. 1030, 1036

18  (E.D.N.C. 1989), *aff'd.*, 978 F.2d 832 (4th Cir. 1992); *see also Lincoln Property Ltd. v. Higgens*,

19  823 F.Supp. 1528, 1536 (E.D. Cal. 1992) ("The statutory definition [of release] is broad and

20  deliberately so.  It uses a profusion of terms, all slight variations on much the same theme, to

21  encompass the entire universe of ways in which hazardous substances may come to exist in the

22  environment.").  During wood preserving operations, hazardous substances were released at the

23  Site.  Lewis Decl., ¶¶ 8-10 & Exs. B-H; FAC, ¶ 18.

24          **3.    DTSC Incurred Costs in Response to the Releases and Threatened
                    Releases at the Site.**
25

26  The third element of CERCLA liability is that DTSC incurred costs in response to the

27  release of hazardous substances at the Site.  "Response" is broadly defined as "remove, removal,

28  remedy and remedial action."  42 U.S.C. § 9601(25).  CERCLA defines these terms to include the

7

1  cleanup or removal of released hazardous substances from the environment, actions taken in the

2  event of the threat of release of hazardous substances, actions to monitor, assess, and evaluate the

3  release or threat of release of hazardous substances, the disposal of removed material, and actions

4  consistent with a permanent remedy.  42 U.S.C. § 9601(23), (24).

5  　　　CERCLA authorizes the recovery of "all costs of removal or remedial action incurred by . .

6  . a State . . . not inconsistent with the national contingency plan."  42 U.S.C. § 9607(a)(4)(A).

7  Recoverable "response costs" have been held to include oversight costs incurred by a government

8  agency in an effort to ensure that a site is being adequately investigated and remediated by

9  responsible parties.  *State of Cal. Dept. of Toxic Substances Control v. Snydergeneral Corp.*, 876

10  F.Supp. 222, 224-25 (E.D. Cal. 1994); *California ex. rel. Cal. Dept. of Toxic Substances Control*

11  *v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004).  DTSC is also entitled to recover

12  attorneys' fees as part of its response costs expended for the enforcement of this matter, as well as

13  indirect costs, or overhead.  *United States v. Chapman,* 146 F.3d 1166, 1175 (9th Cir. 1988);

14  *Neville Chem. Co.*, 358 F.3d at 673.

15  　　　It is the fact of the response costs, not the amount, which constitutes an element of liability

16  under CERCLA.  *Chapman*, 146 F.3d at 1169.  Where the government shows "some connection"

17  between the release at the site and the incurrence of response costs, those costs are recoverable.

18  *Louisiana-Pacific Corp. v. Beazer Materials & Services,* 811 F.Supp. 1421, 1430 (E.D. Cal.

19  1993).

20  　　　There is indisputable evidence that DTSC has incurred costs in response to the releases of

21  hazardous substances at the Site.  Lewis Decl., ¶ 18.  DTSC has incurred response costs related to

22  its efforts to repair and restart the groundwater extraction and treatment system, completion of a

23  removal investigation for site soils, preparation and implementation of the Removal Action

24  Workplan, groundwater monitoring, and monitoring the condition of the asphalt cap.  *Ibid.*

25  ///

26  ///

27  ///

28

8

### 4. C&A Products Was an Owner or Operator or Both of the Site at the Time of Disposal of Hazardous Substances at the Site, and Thus Is a Responsible Party Under CERCLA.

The final element of liability under CERCLA is that C&A Products falls within one of the four classes of responsible parties in CERCLA. Under CERCLA section 107(a)(2), "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of . . ." is a liable party. 42 U.S.C. § 9607(a)(2). "Disposal" is defined as "discharge, deposit, injection, dumping, spilling, leaking or placing." *Carson Harbor Village, Ltd. v. Unocal Corporation*, 270 F.3d 863, 885 (9th Cir. 2001).

C&A Products's ownership of the Site is through its predecessor Wickes. Wickes bought the assets of PWP, including the Site, on or about September 12, 1979, and operated at the Site thereafter as Wickes Companies, Inc. until 1982, when the facility closed. FAC, ¶ 16. Wickes changed its name to Collins & Aikman Group, Inc., and later merged into Collins & Aikman Products Co. FAC, ¶ 15. Collins & Aikman Products Co. owned the Site until 1997. FAC, ¶ 16. C&A Products was formed in 2007 from Collins & Aikman Products Co. FAC, ¶ 15.

Hazardous substances, including arsenic, chromium, and copper, were used in wood preserving operations at the Site, and were released into the environment at and from the Site, from the beginning of operations in 1972. FAC, ¶¶ 12, 17-19. Spills of hazardous substances occurred at the Site and were documented during Wickes's and C&A Products's ownership and operation. FAC, ¶ 19. For example, on December 24, 1979, a large amount of green liquid flowed from a large tank located in the yard at the Site. Lewis Decl., ¶ 9. The wind blew the liquid beyond a safety trough around the tank and onto the driveway of the company's building and flowed down the driveway onto A Street into the drainage ditch running along A Street. *Ibid.* This liquid flowed down the drainage ditch for approximately 150 yards where it entered the drainage ditch. *Ibid.* The Site manager admitted that the substance that had flowed into the drainage was a mixture of water, copper, chromium, and arsenic. *Ibid.* A second large spill occurred on November 7, 1980, when a well water supply valve malfunctioned, causing water to flow into a mixing tank that had about 1.5 feet of sludge in it. Lewis Decl., ¶ 10. The mixture overflowed onto the surrounding soil and travelled through a drainage ditch in front of the Site on

9

1    A Street.  *Ibid.*  The spill travelled along the A Street ditch, both east and west of the Site

2    entrance.  *Ibid.*  Because there were disposals of hazardous substances during C&A Products's

3    ownership and operation of the facility, the final element of liability under CERCLA has been

4    satisfied.

5         **B.    CERCLA Imposes Strict Liability on Responsible Parties.**

6         CERCLA imposes strict liability, without regard to the party's fault or state of mind.

7    *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 870 (9th Cir. 2001); *3550 Stevens*

8    *Creek Associates*, 915 F.2d at 1357.  "In the case of an actual release, the plaintiff need only

9    prove that the defendant's hazardous materials were deposited at the site, that there was a release

10   at the site, and that the release caused it to incur response costs."  *Carson Harbor Village Ltd. v.*

11   *Unocal Corp.*, 287 F.Supp.2d 1118, 1186 (C.D. Cal. 2003).  The CERCLA plaintiff "need not

12   show that defendant's waste was the source of the release or that defendant's waste caused it to

13   incur response costs."  *Ibid.* (citations omitted).  Thus, C&A Products is strictly liable for response

14   actions at the Site.

15        **C.    None of The Three Statutory Affirmative Defenses to Liability Is Available
16               Here.**

17        CERCLA section 107(b) sets forth three statutory affirmative defenses to liability under

18   section 107(a):  an act of God; an act of war; and "an act or omission of a third party" who is not

19   related to the defendant by any sort of "contractual relationship."  These are the only cognizable

20   defenses to liability under section 107(a).  *See Levin Metals Corp. v. Parr-*

21   *Richmond Terminal Co.*, 799 F.2d 1312, 1316-17 (9th Cir. 1986).  "Every court of appeals that

22   has considered the precise question whether § 9607 permits equitable defenses has concluded that

23   it does not, as the statutory defenses are exclusive."  *Neville Chem. Co.*, 358 F.3d at 672.  C&A

24   Products has not produced, and DTSC is not aware of, any evidence that could support a finding

25   that any of the statutory defenses to CERCLA are available to C&A Products.

26        **D.    CERCLA Imposes Joint and Several Liability on Responsible Parties.**

27        CERCLA imposes joint and several liability, and each responsible party is jointly and

28   severally liable under CERCLA for all costs unless the responsible party can carry its burden of

10

1  proving that a reasonable basis for apportionment exists. *Burlington Northern & Santa Fe Ry Co.*

2  *v. United States*, 556 U.S. 599, 614-15 (2009). As stated above, there is undisputed evidence that

3  C&A Products is liable under CERCLA section 107(a)(1) as the owner and operator of the Site at

4  the time of disposal of hazardous substances. Lewis Decl., ¶¶ 9-10. Therefore, C&A Products is

5  jointly and severally liable for DTSC's unreimbursed response costs.

6  **II.  DTSC IS ENTITLED TO DECLARATORY RELIEF UNDER CERCLA ON C&A
       PRODUCTS'S LIABILITY FOR FUTURE RESPONSE COSTS.**

7

8      CERCLA section 113(g)(2) states, "[i]n any such action [for recovery of costs] described in

9  this subsection, the court shall enter a declaratory judgment on liability for response costs or

10  damages that will be binding on any subsequent action or actions to recover future response costs

11  or damages." 42 U.S.C. § 9613(g)(2). DTSC is conducting ongoing monitoring at the Site,

12  continues to incur response costs related to the Site, and expects to incur response costs related to

13  the Site in the future. Lewis Decl., ¶¶ 18-20. Based on the undisputed facts underlying C&A

14  Products's liability under CERCLA section 107(a), and given the fact that CERCLA imposes

15  joint and several liability on responsible parties, DTSC requests that this Court issue a declaration

16  stating that C&A Products is liable for all future response costs incurred by DTSC at the Site. *See*

17  42 U.S.C. § 9613(g)(2).

18  **III.  DTSC'S RESPONSE COSTS ARE RECOVERABLE UNDER CERCLA.**

19      As set forth below, DTSC's unreimbursed response costs through May 31, 2019, including

20  interest and attorneys' fees, total $3,219,449.85. It is undisputed that DTSC has incurred these

21  costs and that they are of the type recoverable under CERCLA. C&A Products cannot show

22  arbitrary and capricious action by DTSC in its role as the CERCLA lead agency for the Site.

23  Accordingly, as discussed further below, the Court should order that DTSC is entitled to recover

24  these costs.

25      **A.  DTSC Is Presumed to Have Acted Consistently with the NCP.**

26      DTSC is empowered by CERCLA section 107 to recover all costs of removal or remedial

27  action that are "not inconsistent with the [NCP]." 42 U.S.C. § 9607(a)(4)(A). The NCP is the

28  "road map" for toxic site analysis, remedy selection, cleanup, long-term maintenance, and

11

monitoring.  It "provide[s] the organizational structure and procedures for preparing for and responding to . . . releases of hazardous substances, pollutants, and contaminants."  40 C.F.R. § 300.1.  Significantly, "[w]hen a state is seeking recovery of response costs, *consistency with the [NCP] is presumed*."  *Neville Chem. Co.*, 358 F.3d at 673 (emphasis added).  Once DTSC establishes a prima facie case that its response costs were incurred in connection with the release or threatened release of hazardous substances, the burden shifts to the defendant(s) to prove inconsistency with the NCP.  *Chapman*, 146 F.3d at 1169.

**B.    DTSC's Costs Are Response Costs of the Type Recoverable under CERCLA.**

CERCLA section 107(a) makes responsible parties liable for "all costs of removal or remedial action incurred by the United States Government or a State . . . ."  42 U.S.C. § 9607(a).  The broad remedial purpose of CERCLA supports a liberal interpretation of the term "all costs."  *See Chapman*, 146 F.3d at 1175; *United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1503 (6th Cir. 1989).

Courts have found that recoverable response costs include the following: (1) direct costs, such as those incurred assessing, investigating, monitoring, testing, and evaluating contamination at a site, as well as costs of designing and implementing a response action, *see* 42 U.S.C. § 9601(23); *Meyer*, 889 F.2d at 1502-04; (2) indirect costs, such as overhead costs incurred in administering the Superfund program and litigating enforcement actions, *see Meyer*, 889 F.2d at 1503-1504; *California ex rel. Cal. Dept. of Toxic Substances Control v. Neville Chem. Co.*, 213 F.Supp. 2d 1134, 1137 (C.D. Cal. 2002); (3) enforcement costs, including reasonable attorneys' fees, administrative costs, and investigative costs related to the response action, *see* 42 U.S.C. §§ 9601(25), 9607(a)(4)(A); *Chapman*, 146 F.3d at 1175; *United States v. Gurley*, 43 F.3d 1188, 1199-1200 (8th Cir. 1994) (Department of Justice attorneys' fees and litigation expenses recoverable); and (4) interest incurred on the recoverable costs, *see* 42 U.S.C. § 9607(a)(4), *Meyer*, 889 F.2d at 1505.  The costs incurred by DTSC at the Site and documented in the declarations of Jason Xiao, Robin McGinnis, McKinley Lewis, Jr., and Anthony Westlake fall within these categories of costs recoverable under CERCLA.

12

C. **DTSC Response Costs Are Adequately Documented, Calculated, and Presented.**

DTSC presents its response costs in the form of DTSC and Department of Justice ("DOJ") declarations and supporting exhibits that describe the costs incurred and the accounting methods used to calculate and verify costs. Courts have held that such evidence is admissible and suffices to establish the amount of these costs. *See Chapman*, 146 F.3d at 1172; *United States v. Findett Corp.*, 220 F.3d 842, 849 (8th Cir. 2000); *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 352 (5th Cir. 1998); *Neville*, 213 F.Supp.2d 1134, 1139-42.

The Declaration of McKinley Lewis, Jr., the Project Manager for the Site, provides an overview of DTSC's response activities at the Site that have resulted in unrecovered response costs, beginning with DTSC's oversight of Wickes's and Collins & Aikman Products Co.'s actions to address environmental contamination at, around, and beneath the Site, FAC, ¶ 20, and ending with current activities at the Site. Lewis Decl., ¶¶ 12-20. Declarant Jason Xiao, the Supervisor for DTSC's Cost Recovery Billing Unit, and his staff prepared the DTSC Summary by Activity Report ("SBA") that is attached to the Xiao Declaration as Exhibit A. In his declaration, Mr. Xiao documents, calculates, and explains the unreimbursed response costs that DTSC incurred in connection with the Site through May 31, 2019. Xiao Decl., ¶¶ 9-20. Mr. Xiao supervised the review of the underlying cost records and documentation, and reconciled DTSC's SBA against those underlying cost documents to confirm the accuracy of the SBA. *See id.*, ¶¶ 9-15.

Mr. Xiao's Declaration accounts for "direct" costs incurred by DTSC in connection with the Site. DTSC's direct costs include DTSC employee payroll costs, travel expenses, and contractor costs. *See* Xiao Decl., ¶¶ 11-14.

Mr. Xiao's Declaration also accounts for "indirect" costs incurred by DTSC. DTSC's indirect costs represent the cost of administrative overhead, and they are calculated by applying the indirect cost rates, which are determined by the indirect cost allocation plans, to the direct labor costs. Xiao Decl., ¶¶ 11, 15. DTSC uses an indirect rate methodology to allocate the indirect costs associated with DTSC's Site Mitigation and Restoration Program to sites within

13

1    that program, and it complies with relevant accounting standards.  *See United States v. W.R.*

2    *Grace & Co.*, 280 F.Supp. 2d 1149, 1185-87 (D. Mont. 2003) (EPA's indirect cost methodology

3    was in compliance with accounting standards).

4        With respect to reimbursements, DTSC received payments for its oversight costs totaling

5    $287,193.37 from Wickes Forest Industries and Collins & Aikman Products Co. between

6    November 8, 1989 and December 2, 2004.  Xiao Decl., ¶ 16.  DTSC received a payment of

7    $1,869.64 on October 16, 2012 from the Collins & Aikman Litigation Trust.  Xiao Decl., ¶ 18.

8    DTSC received settlement payments from other defendants in this case in the following amounts:

9    $265,000 from Dobbas; $350,000 from West Coast Wood Preserving, LLC; and $5,000 from Van

10   Over.  *Ibid*.

11       DTSC's attorneys' fees related to enforcement, another category of response costs, are

12   documented, calculated, and explained in the Declaration of Robin McGinnis, Senior Staff

13   Counsel at DTSC's Office of Legal Counsel ("OLC") ("McGinnis Decl."), and Anthony

14   Westlake ("Westlake Decl."), a Senior Accounting Supervisor at the State of California

15   Department of Justice ("DOJ"), Accounting and Reimbursements Division.  Ms. McGinnis's

16   declaration describes the work of OLC attorneys that is included in DTSC's unrecovered response

17   costs.  McGinnis Decl., ¶¶ 2-6.  This work includes OLC's support of response activities and cost

18   recovery efforts.  *See id*., ¶ 2.  The Westlake Declaration and Exhibits A-B thereto summarize the

19   underlying timesheets and other accounting records for the costs incurred by DOJ in prosecuting

20   this case.  *See generally* Westlake Decl. and Exhibits A and B thereto.  Mr. Westlake and his staff

21   collected and reviewed this documentation, which is generated and maintained by DOJ in the

22   ordinary course of business.  *See* Westlake Decl., ¶¶ 6-8, 10-13.

23       **D.    DTSC Is Entitled to Prejudgment Interest on its Unreimbursed Response
              Costs Plus Attorneys' Fees.**

24

25       Prejudgment interest that has accrued on response costs incurred by DTSC is recoverable

26   by DTSC pursuant to CERCLA section 107(a), which provides a formula for calculating the

27   interest.  42 U.S.C. § 9607(a).  Interest accrues on the later of the demand date or the date the cost

28

14

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLTFS' APPLIC. FOR ENTRY OF DEFAULT
JUDGMENT AGAINST DEF. COLLINS & AIKMAN PRODUCTS, LLC (2:14-cv-00595-WBS-EFB)

1    was incurred.  *Id.*  DTSC sent four (4) invoices to defendant C& A Products between November

2    2, 2004 and August 17, 2005 that were not paid.  Xiao Decl., ¶ 17.

3         For costs that were invoiced to Collins & Aikman Products Co., which remain unpaid,

4    interest was calculated from the date of the invoice through May 31, 2019.  Xiao Decl., ¶ 19.  For

5    costs incurred from July 1, 2005 through December 17, 2014, interest was calculated from

6    December 18, 2014, which is the date the FAC was served on C&A Products, through May 31,

7    2019.  *Ibid.*  For costs incurred after December 18, 2014, interest was calculated from the end of

8    the fiscal year when the costs were incurred through May 31, 2019.  *Ibid.*  The use of these dates

9    and the accrual of interest are in accordance with CERCLA, 42 U.S.C. § 9607(a)(4).

10        DTSC's unreimbursed costs through May 31, 2019, including interest and attorneys' fees,

11   total $3,219,449.85.  Xiao Decl., ¶ 20; Westlake Decl., ¶ 14.

12        **E.    C&A Products Cannot Show That DTSC's Response Costs Were**
             **Inconsistent with the National Contingency Plan.**
13

14        DTSC has established a prima facie case for recovery of $3,219,449.85 in response costs in

15   connection with the Site, and the burden now shifts to C&A Products to prove that DTSC's

16   response actions were inconsistent with a specific provision of the NCP.  *See United States v.*

17   *W.R. Grace & Co.*, 429 F.3d 1224, 1232 n.13 (9th Cir. 2006); *Chapman*, 146 F.3d at 1169-71.

18   C&A Products has a "difficult burden" of showing that DTSC acted in an arbitrary and capricious

19   manner.  *Washington State Dept. of Transp.*, 59 F.3d at 800; 42 U.S.C. § 9613(j)(2).  NCP

20   inconsistency is only a defense to the amount of C&A Products's liability, and the amount may

21   only be reduced if C&A Products demonstrates that a specific response action was inconsistent

22   with the NCP *and* actually increased costs.  *Burlington Northern R.R. Co.*, 200 F.3d at 695;

23   *United States v. American Cyanamid*, 786 F.Supp. 153, 161 (D.R.I. 1992); *see also O'Neil v.*

24   *Picillo,* 682 F.Supp. 706, 729 (D.R.I. 1988) (defendants must prove "that the clean-up, because of

25   some variance from the [NCP], resulted in demonstrable excess costs").  C&A Products has not,

26   and cannot, meet this burden.

27

28

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLTFS' APPLIC. FOR ENTRY OF DEFAULT
JUDGMENT AGAINST DEF. COLLINS & AIKMAN PRODUCTS, LLC (2:14-cv-00595-WBS-EFB)

**CONCLUSION**

DTSC asks this Court to enter judgment for DTSC and against C&A Products in the amount of $3,219,449.85 for its unreimbursed response costs, including interest and attorneys' fees, through May 31, 2019.  DTSC further requests that the Court issue a declaratory judgment finding C&A Products jointly and severally liable to DTSC for all response costs that DTSC did and will incur after May 31, 2019, responding to releases and threatened releases of hazardous substances at, beneath, and/or from the Site.

Dated:  August 20, 2019                     Respectfully Submitted,

                                            XAVIER BECERRA
                                            Attorney General of California
                                            EDWARD H. OCHOA
                                            Supervising Deputy Attorney General
                                            OLIVIA W. KARLIN
                                            Deputy Attorney General


                                            /S/  *Laura J. Zuckerman*


                                            LAURA J. ZUCKERMAN
                                            Deputy Attorney General
                                            *Attorneys for Plaintiffs California*
                                            *Department of Toxic Substances Control*
                                            *and the Toxic Substances Control Account*

LA2012602448
91140738.docx

16