1  XAVIER BECERRA
   Attorney General of California
2  EDWARD H. OCHOA
   Supervising Deputy Attorney General
3  OLIVIA W. KARLIN, State Bar No. 150432
   LAURA J. ZUCKERMAN  (Counsel for service)
4  State Bar No. 161896
   Deputy Attorneys General
5    1515 Clay Street, 20th Floor
     Oakland, CA 94612
6    Telephone:  (510) 879-1299
     Fax:  (510) 622-2270
7    E-mail:  Laura.Zuckerman@doj.ca.gov
   *Attorneys for Plaintiffs California*
8  *Department of Toxic Substances Control and the*
   *Toxic Substances Control Account*
9
                IN THE UNITED STATES DISTRICT COURT
10
              FOR THE EASTERN DISTRICT OF CALIFORNIA
11
                        SACRAMENTO DIVISION
12

13

14  **CALIFORNIA DEPARTMENT OF TOXIC**      2:14-cv-00595-WBS-EFB
    **SUBSTANCES CONTROL and the TOXIC**
15  **SUBSTANCES CONTROL ACCOUNT,**         **DECLARATION OF JASON XIAO IN**
                                            **SUPPORT OF PLAINTIFFS'**
16                              Plaintiffs, **APPLICATION FOR ENTRY OF**
                                            **DEFAULT JUDGMENT BY COURT**
17                    v.                    **AGAINST DEFENDANT COLLINS &**
                                            **AIKMAN PRODUCTS, LLC**
18                             Defendants.

19                                          FED. R. CIV. P. 55(b)

20  **JIM DOBBAS, INC., a California**
    **corporation; CONTINENTAL RAIL, INC.,** Date:    September 23, 2019
21  **a Delaware corporation; DAVID VAN**   Time:    1:30 p.m.
    **OVER, individually; PACIFIC WOOD**    Place:   Courtroom 5, 14th Floor
22  **PRESERVING, a dissolved California**           501 I Street
    **corporation; WEST COAST WOOD**                 Sacramento, CA  95814
23  **PRESERVING, LLC., a Nevada limited**
    **liability company; and COLLINS &**    Action Filed:  March 3, 2014
24  **AIKMAN PRODUCTS, LLC, a Delaware**
    **limited liability company,**
25                             Defendants.

26  **AND RELATED COUNTERCLAIMS AND**
    **CROSS-CLAIMS**
27

28
                                      1

I, Jason Xiao, declare as follows:

1.      I make this declaration in support of the Application for Entry of Default Judgment Against Defendant Collins & Aikman Products, LLC ("C&A Products"), filed by Plaintiffs California Department of Toxic Substances Control and the Toxic Substances Control Account (collectively, "DTSC").  The facts stated in this declaration are based on my personal knowledge and on my review of files which DTSC maintains in the regular course of business.  If called as a witness, I could and would competently testify to the following:

**Background and Qualifications**

2.      I am employed by DTSC as the Accounting Administrator I (Supervisor) for DTSC's Cost Recovery Billing Unit.  I have held this position since January 2014.  My business address is 1001 "I" Street, Sacramento, CA 95812.

3.      I received a Bachelor of Science in Business Administration with a concentration in Accounting from California State University in Sacramento in 2006.

4.      I have 12 years of experience in the field of government accounting.

5.      Prior to being hired by DTSC, I worked for the State Controller's Office from 2008 to 2014.  While employed by the State Controller's Office (Accounting and Reporting Division), I held the position of Associate Accounting Analyst.  My primary duties included the following:  the analysis of complex financial transaction reports submitted by local government agencies to ensure their compliance with laws, regulations, and uniform accounting procedures; the review and reconciliation of financial statements as required to publish the State Controller's financial reports; and the creation of narratives and data for publications based on table-runs, working documents provided by local governmental agencies, and ad-hoc queries of the Local Government Reporting System Oracle Database.

6.      From December 2006 to June 2007, I worked for the State Controller's Office (Unclaimed Property Division) as an accountant trainee.  My primary duties included analyzing and reconciling securities posted in the Securities Asset Accounting System and in the Security Asset Tracking System; and researching and determining the past activities and status of each security posted to the accounting system.  In late June 2007, I was transferred to the Department

2

of General Services.  Also working as an accountant trainee, I audited invoices for accuracy and secured payments.  In addition, I reviewed travel expense claims and validated requests in the Asset Based Management System.  In January 2008, I received a promotion and returned to the State Controller's Office (Unclaimed Property Division).  Working as an Accounting Analyst, I conducted research on corporate actions for the unclaimed securities held by the State Controller's Office; posted corporate actions (e.g., stock splits, spin-offs, mergers, etc.) to the accounts in the database; calculated dividends and interest for each security; and posted shares or revenue under the corresponding accounts.

7.      Currently, in the DTSC Cost Recovery Billing Unit, my primary responsibilities include supervising the following activities:  the development and implementation of policies and procedures for invoicing; the accounting and recording of payments, receivables, and receipts; the reconciliation of cost data; the issuance of collection letters; and the documentation and recovery of DTSC's costs related to site mitigation, corrective action, and activities conducted pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601-9675 ("CERCLA").

8.      I provide litigation support for DTSC for actions taken by the Office of the Attorney General to recover DTSC's costs incurred for site cleanup and oversight work in actions against responsible parties.  The Cost Recovery Billing Unit is responsible for billing responsible parties for site cleanup and oversight costs incurred by DTSC.  The Cost Recovery Billing Unit maintains documentation supporting costs incurred by DTSC for site cleanup and oversight costs.

**Tracking DTSC's Response Costs for the Site**

9.      I have obtained cost information for the real properties located at the intersection of A Street and Holdener Road, Elmira, Solano County, CA, identified by Solano County Assessor's Parcel Numbers 142-010-130, 142-010-140, and 142-042-010 (the "Site"), also known as the Wickes Forest Industries-Solano site, from DTSC's Cost Recovery Billing and Accounting Receivable Units in order to review and analyze information related to DTSC's unreimbursed costs incurred at the Site.  DTSC's response costs for a given site are included with each invoice on a document called a Summary By Activity Report ("SBA").  At the Site, there is one Project

3

1    Number and Project Name for activities within the Site, and therefore there is one SBA for the

2    Site.  A true and correct copy of the SBA is attached hereto as Exhibit A.

3            10.     My review of the SBA for the Site indicates that DTSC's response costs at the Site

4    consist of the types of costs typically incurred when DTSC performs oversight work on site

5    cleanup or corrective action projects.  These costs include direct labor (which includes salaries),

6    travel costs, electricity costs, contractor costs, and indirect costs.  Documentation supporting

7    these different costs is maintained by DTSC and includes, but is not limited to, employee time

8    sheets, travel claims, and contract billing invoices.

9            11.     For the purposes of tracking costs relating to the Site, as with other sites, DTSC

10   used the California State Accounting & Reporting System ("CALSTARS") for expenses incurred

11   up to, and including, June 30, 2015, and uses the Financial Information System for California

12   ("FI$Cal") for expenses incurred from July 1, 2015, to the present.  CALSTARS had its own

13   series of codes that identify the type of each cost, the activity to which the cost is related, and, if

14   appropriate, the specific site or project where the cost was incurred.  The type of cost and the

15   activity to which the cost is related are defined by the Project Cost Account ("PCA") code.  Each

16   DTSC program has its own series of direct and indirect PCAs.  A direct PCA is one that can be

17   identified with a specific direct program activity, contract, or project.  An indirect PCA defines an

18   activity which is necessary to support direct activities, benefits more than one direct activity, and

19   cannot be easily attributed to specific direct activities.  These indirect costs are allocated back to

20   direct activities by DTSC's indirect cost allocation plan.  The site/project code identifies costs

21   with a specific site, or a project within a Site.  FI$Cal collects and identifies cost data in the same

22   way CALSTARS does.  However, there are two changes in the naming convention in FI$Cal.

23   PCA and Project ID, used in CALSTARS, have been replaced by Activity ID and Customer ID in

24   FI$Cal.

25           12.     Employee time sheets form the basis for direct labor charges to specific sites or

26   projects.  DTSC employees record time in the daily log system (through December 31, 2017) and

27   Tempo (January 1, 2018 through the present) using the appropriate PCA and site codes for all the

28   various activities performed during the pay period, including direct activities, indirect activities,

and paid time off.  At the end of the pay period, the daily log system or Tempo generates a time sheet.  Employees certify the accuracy of their time sheets by their signatures, and the time sheets are reviewed by the employees' direct supervisors, who also certify the time sheets with their signatures.  The certified time sheets are then forwarded to DTSC's Fiscal Systems Unit, which enters the time sheet data into CALSTARS and FI$Cal.  The CALSTARS and FI$Cal systems' labor distribution process then distributes the cost of the individual salaries to those activities and sites identified on the time sheets.

13.    Travel claims form the basis for travel charges to specific sites or projects.  DTSC staff generally complete travel claims on a monthly basis.  The travel claims indicate the purpose of the trip, identify the costs incurred, and are coded with the appropriate PCA and site codes.  Original receipts to support the travel costs are attached to the travel claims as necessary.  The claimant incurring the travel charges certifies the costs by signing the travel claim, and the claimant's direct supervisor also reviews and certifies the travel claim with his or her signature.  The certified travel claim is then forwarded to DTSC's Accounts Payable Unit, which reviews the travel claim for compliance with State travel policies and reimbursement rates and adjusts the claim as necessary.

14.    Contract charges are supported by billing invoices received from DTSC contractors.  The invoices are submitted to the Business Contracts & Business Management Unit, which reviews the invoices to ensure that the amounts charged are consistent with the contract terms.  The Business Contracts & Business Management Unit forwards a copy of the invoice to DTSC's Contract Manager, who reviews the invoice and certifies that the costs were incurred for work performed in accordance with the contract's statement of work.  The Contract Manager also puts the appropriate CALSTARS or FI$Cal coding on the billing invoice.  The Contract Manager then forwards the approved invoice to the Accounting Unit, and the Accounting Unit enters the invoice into the CALSTARS or FI$Cal system for payment.

15.    Indirect costs charged to the Site are calculated by applying the indirect cost rates, which are determined by the indirect cost allocation plans, to the direct labor costs.  The indirect rate and allocation process are reasonable and based on generally accepted accounting practices.

DTSC's Fiscal Systems Unit is responsible for the development of the indirect cost allocation plans and the calculation of the indirect cost rates.  Indirect cost rates are calculated every six months and are based on the prior 12 months of accounting data.  Indirect costs are grouped into logical, homogenous cost pools representing the various levels of overhead and indirect costs incurred to maintain DTSC's ability to perform its functions.  Each cost pool is allocated to the appropriate direct activities benefiting from that cost pool based on relative ratio of direct labor costs.  After all the cost pools are allocated to direct activities, an indirect cost rate for each of the three direct DTSC programs is calculated by dividing total indirect costs allocated to each program by the total direct labor costs for each program.  This leads to the indirect cost rate which is applied to the site-specific direct labor costs to allocate an appropriate share of indirect costs to each site.  DTSC's Cost Recovery Billing Unit maintains and operates the Cost Recovery Billing System ("CRBS"), which takes the site-specific cost data from the CALSTARS and/or FI$Cal system and generates SBAs for each site cleanup project and bills the responsible parties for each site on a quarterly basis.  The costs are reconciled by DTSC's Cost Recovery Billing Unit to CALSTARS or FI$Cal accounting reports to ensure that all the site-specific costs in CALSTARS or FI$Cal are accounted for in the CRBS database.

**Unreimbursed Response Costs for the Site Incurred by DTSC between July 1, 2004, and May 31, 2019**

16.     DTSC received payments for its oversight costs totaling $287,193.37 from Wickes Forest Industries and Collins & Aikman Products Co. between November 8, 1989 and December 2, 2004.  DTSC applied these payments to invoices issued before July 1, 2004.

17.     DTSC sent four (4) invoices to defendant C&A Products's predecessor between November 2, 2004, and August 17, 2005, that the company never paid.  Each invoice attached the SBA report and demanded payment of DTSC's response costs for the Site.  These invoiced amounts total $25,346.03, and are set forth in the table below.  True and correct copies of these four (4) invoices are attached hereto as Exhibit B.  After the bankruptcy, DTSC stopped invoicing Collins & Aikman Products Co.

| Site or Project Code | Invoice No. | Invoice Date | Billing Period | Amount Invoiced |
|---|---|---|---|---|
| 100164 | 04SM0973 | 11/2/2004 | 7/2004-9/2004 | $9,958.98 |
| 100164 | 04SM1655 | 1/25/2005 | 10/2004-12/2004 | $2,693.57 |
| 100164 | 04SM2576 | 4/27/2005 | 1/2005-3/2005 | $6,998.59 |
| 100164 | 05SM0033 | 8/17/2005 | 4/2005-6/2005 | $5,694.89 |

18.     DTSC received a payment of $1,869.64 on October 16, 2012, from the Collins & Aikman Litigation Trust, and received the following settlement payments from other defendants in this case between December 16, 2015, and April 11, 2018:  $265,000 from Jim Dobbas, Inc., on December 16, 2015; $350,000 from West Coast Wood Preserving, LLC, on February 24, 2016; and $5,000 from David Van Over on April 11, 2018.  These payments were applied to outstanding unreimbursed response costs, both invoiced and non-invoiced.

**Interest**

19.     I have also overseen the calculation of interest for the Site under CERCLA, which provides that recoverable response costs include interest, which accrues from the later of the date payment was demanded, or the date the cost was incurred.  There are three different interest accrual dates for DTSC's response costs for the Site:  the date the costs were invoiced; the date the First Amended Complaint was served; and the end of the fiscal year in which the costs were incurred.  For costs that were invoiced to Collins & Aikman Products Co., which remain unpaid, my staff calculated interest from the date of the invoice through May 31, 2019.  For costs incurred from July 1, 2005, through December 17, 2014, my staff calculated interest from December 18, 2014 (the date the First Amended Complaint was served on C&A Products), through May 31, 2019.  For costs incurred after December 18, 2014, my staff calculated interest from the end of the fiscal year that the costs were incurred through May 31, 2019.  The use of these dates and the accrual of interest are in accordance with CERCLA, 42 U.S.C. § 9607(a)(4).  A true and correct copy of the interest calculations is attached as Exhibit C hereto.  The total amount of interest on DTSC's unreimbursed response costs is $97,427.75.

**Total Unreimbursed Response Costs for the Site**

20.     Based on my review of the SBA for the Site and the other documents and systems referenced in this declaration, total response costs for the Site from July 1, 2004 through May 31, 2019, including interest under CERCLA, but exclusive of attorneys' fees for representation by the Attorney General's Office in prosecuting this cost recovery action, totaled $3,185,115.62.  As of May 31, 2019, taking into account all payments made by other defendants who have settled their liability in this case, the 2012 payment by the Collins & Aikman Litigation Trust, and other offsets and adjustments, including a $359.84 credit for a labor cost adjustment in August 2014, DTSC's unreimbursed response costs for the Site totaled $2,564,755.78, exclusive of the attorneys' fees and costs set out in the Declaration of Anthony Westlake filed herewith.  A true and correct copy of this calculation is attached as Exhibit D hereto.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that this declaration was executed in Sacramento, California on August 19 , 2019.


Jason Xiao
Accounting Administrator I
Cost Recovery Billing Unit
Dept. of Toxic Substances Control