1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CLYDE & CO US LLP**
Alexander E. Potente, State Bar No. 208240
alex.potente@clydeco.us
Hyunki ("John") Jung, State Bar No. 318887
john.jung@clydeco.us
101 Second Street, 24th Floor
San Francisco, CA  94105
Telephone:  415.365.9800
Facsimile:   415.365.9801

Attorney for Proposed Intervenor
THE TRAVELERS INDEMNITY COMPANY

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, et al., | Case No. 2:14-CV-00595-WBS-EFB |
|---|---|
| Plaintiffs, | **NOTICE OF MOTION AND MOTION TO INTERVENE AND TO VACATE DEFAULT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE AND TO VACATE DEFAULT** |
| v. | |
| JIM DOBBAS, INC., a California corporation, et al. | |
| Defendants, | [Pursuant to F.R.C.P. 24, 55(c)] |

Date:        October 21, 2019
Time:        01:30 p.m.
Ctrm:        Courtroom 5, 14th Floor
                 501 I Street
                 Sacramento, CA 95814
Judge:       Hon. William B. Shubb

Complaint Filed:        March 3, 2014

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 21, 2019, at 01:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of the above Court, located at 14th Floor, 501 I Street, Sacramento, CA 95814, the proposed intervenor, The Travelers Indemnity Company

1  ("Travelers"), as putative insurer of underlying defendant Collins & Aikman Products, LLC

2  ("C&A Products, LLC"), a cancelled Delaware limited liability company, will move for an order

3  permitting Travelers to intervene in the above-captioned action, vacate default and oppose entry of

4  judgment against C&A Products, LLC.  Travelers does not seek to litigate coverage as part of this

5  intervention.  It has asserted its coverage position as to this action regarding C&A Products, LLC

6  and the California Department of Toxic Substances Control ("DTSC") in a separate declaratory

7  relief complaint, filed and served concurrently herewith.

8        This motion is made pursuant to Federal Rules of Civil Procedure, Rule 24, on the grounds

9  that Travelers has a direct interest in this litigation because C&A Products, LLC is a cancelled

10  Delaware limited liability company and lacks the resources or capacity to defend itself in this

11  matter, and because DTSC has indicated that it seeks to recover any default judgment against

12  Travelers as a putative insurer of C&A Products, LLC.  Pursuant to Federal Rules of Civil

13  Procedure, Rule 55(c), good cause also exists to vacate the default taken by DTSC against C&A

14  Products, LLC.

15        This motion is based on the accompanying memorandum of points and authorities, and all

16  pleadings and papers filed in this action.

17  Dated:  September 18, 2019                    CLYDE & CO US LLP

18

19

20  By: _____

21        Alexander E. Potente
       Hyunki (John) Jung
22        Attorneys for Proposed Intervenor
       THE TRAVELERS INDEMNITY COMPANY

23

24

25

26

27

28

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

II.   FACTUAL BACKGROUND ............................................................................... 1

    A.   The Site And The Potentially Responsible Parties ..................................... 1

    B.   Wickes' Coverage Litigation Against Travelers Related To The Site ................. 2

    C.   C&A Products Co.'s 1997 Action Against Travelers ................................ 2

    D.   C&A Products Co.'s Bankruptcy And The Cessation Of Its Remedial Activities At The Site ................................................................... 3

    E.   The DTSC's 2014 Action Under CERCLA .......................................... 4

III.   ARGUMENT ................................................................................................ 6

    A.   As The Putative Insurer of C&A Products, LLC, Travelers Is Entitled To Intervene As A Matter Of Right To Protect Its Own Interests ....................... 6

        1.   Travelers' Motion For Intervention Is Timely ................................. 6

        2.   Travelers Has A Significant Protectable Interest ........................... 8

        3.   Travelers' Interests May Be Impaired If Intervention Is Not Permitted ..................................................................... 10

        4.   The Existing Parties Do Not Represent Travelers' Interests ................ 11

    B.   Alternatively, Travelers Should Be Permitted To Intervene Pursuant to Rule 24(b) ........................................................................................ 11

    C.   Travelers Has Shown Good Cause To Vacate The Entry of Default ................ 12

        1.   Travelers Did Not Engage In Culpable Conduct ........................... 13

        2.   Travelers Has a Meritorious Defense To Assert Against DTSC In Favor of C&A Products, LLC .............................................. 14

        3.   DTSC Will Not Be Prejudiced By Setting Aside The Entry of Default ..................................................................... 17

IV.   CONCLUSION ........................................................................................... 19

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*B.G.N. Fremont Square LTD. v. Chung*
  CV 10-9749 GAF (RZx), 2011 WL 13129968 (C.D. Cal. Sep. 27, 2011) ............................... 9

*Bonita Packing Co. v. O'Sullivan*,
  165 F.R.D. 610 (C.D. Cal. 1995) ........................................................................... 12

*Brady v. U.S.*,
  211 F.3d 499 (9th Cir. 2000) ................................................................................ 12

*Brandt v. American Bankers Ins. Co. of Florida*,
  653 F.3d 1108 (9th Cir. 2011) .............................................................................. 12

*Carson Harbor Village v. County of Los Angeles*,
  433 F.3d 1260 (9th Cir. 2006) .............................................................................. 15

*Choice Hotels Int'l, Inc. v. Kusum Vali, Inc.*,
  11CV1277 BTM (WMc), 2012 WL 1570844 (S.D. Cal. May 3, 2012) ................................. 16

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) ........................................................................ 6, 8, 10

*City of Colton v. American Promotional Events, Inc.-West*,
  614 F.3d 998 (9th Cir. 2010) ................................................................................ 15

*City of Emeryville v. Robinson*,
  621 F.3d 1251 (9th Cir. 2010) .............................................................................. 10

*In re Collins & Aikman Prods., LLC*,
  No. 10348-CB, 2014 WL 6907689 (Del. Ch. Dec. 8, 2014) ........................................ 4, 5, 14

*Collins & Aikman Products Co. v. The Travelers Indemnity Company*,
  Case No. 97-3639 MEJ ...................................................................................... 2, 3

*Coon v. Grenier*,
  867 F.2d 73 (1st Cir. 1989) .................................................................................. 14

*E.Digital Corporation v. Ivideon LLC*,
  No. 15-cv-00691-JST, 2016 WL 4728550 (N.D. Cal. Sep. 12, 2016) ................................... 12

*Falk v. Allen*,
  739 F.2d 461 (9th Cir. 1984) ................................................................................ 17

*Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*,
   375 F.3d 922 (9th Cir. 2004)........................................................................ 17

*Joe Hand Promotions, Inc. v. Williams*,
   No. 2:14–cv–02663–JAM–AC, 2015 WL 5923611 (E.D. Cal. Oct. 9, 2015) ................ 11, 12

*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.*,
   136 Cal. App. 4th 212 (2006) ...................................................................... 9

*Key Bank of Maine v. Tablecloth Textile Co. Corp.*,
   74 F.3d 349 (1st Cir. 1996) ....................................................................... 14

*Key Tronic Corp. v. U.S.*,
   511 U.S. 809 (1994) ............................................................................... 16

*Meadows v. Dominican Republic*,
   817 F.2d 517 (9th Cir. 1987) ..................................................................... 13

*Mendoza v. Wight Vineyard Management*,
   783 F.2d 941 (9th Cir. 1986) ................................................................. 12, 14

*NAACP v. New York*,
   413 U.S. 345 (1973) ................................................................................ 7

*Nw. Forest Res. Council v. Glickman*,
   82 F.3d 825 (9th Cir. 1996) ........................................................................ 6

*O'Connor v. Nevada*,
   27 F.3d 357 (9th Cir. 1994) ................................................................... 12, 17

*Pena v. Seguros La Comercial, S.A.*,
   770 F.2d 811 (9th Cir. 1985) ..................................................................... 12

*Reliance Ins. Co. v. Superior Court*,
   84 Cal. App. 4th 383 (2000) ....................................................................... 8

*Sosa v. Bridge Store, Inc.*,
   1:10-CV-01494-OWW, 2011 WL 1332049 (E.D. Cal. Apr. 6, 2011) ................................... 17

*Southwest Center for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) ...................................................................... 8

*TCI Group Life Ins. Plan v. Knoebber*,
   244 F.3d 691 (9th Cir. 2001) ................................................................. 13, 17

*Thompson v. American Home Assur. Co.*,
   95 F.3d 429 (6th Cir. 1996) ...................................................................... 17

*Tozer v. Charles A. Krause Milling Co.*,
   189 F.2d 242 (3rd Cir. 1951)...................................................................... 17

*U.S. Commodity Futures Trading Com'n v. American Bullion Exchange ABEX, Corp.*,
    No. SACV 10–1876 DOC (RNBx), 2011 WL 4946810 (C.D. Cal. Oct. 17, 2011) .............. 11

*U.S. v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) ....................................................................................... 9

*U.S. v. Oregon*,
    913 F.2d 576 (9th Cir. 1990) ....................................................................................... 6

*U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*,
    615 F.3d 1085 (9th Cir. 2010) ................................................................................... 14

*United States v. Consolidation Coal Co.*,
    345 F.3d 409 (6th Cir. 2003) ..................................................................................... 16

*Utica Mut. Ins. Co. v. Hamilton Supply Co.*,
    No. C 06-07846 SI, 2007 WL 3256485 (N.D. Cal. Nov. 5, 2007) ................................ 7, 9, 17

*WildEarth Guardians v. U.S. Forest Service*,
    573 F.3d 992 (10th Cir. 2009) ................................................................................... 10

**Statutes**

CERCLA, 42 U.S.C. § 9607 ...................................................................................... 4

CERCLA, 42 U.S.C. § 9613(g) ................................................................................. 4

Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) ................................................... 15, 16

Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2) .......................................... 15

Code of Civil Procedure § 473 ................................................................................. 9

Hazardous Substance Account Act, Cal. Health & Safety Code §§ 25300 *et seq.* ......... 4

Insurance Code § 11580 ........................................................................................ 8, 9

Fed. R. Civ. Proc. 24 .......................................................................................... 7, 8, 9

Fed. R. Civ. Proc. 24(a) .................................................................................. 1, 2, 5, 6

Fed. R. Civ. Proc. 24(b) ......................................................................................... 11

Fed. R. Civ. Proc. 55 ......................................................................................... 11, 14

Fed. R. Civ. Proc. 55(c) ....................................................................................*passim*

Fed. R. Civ. Proc. 55(a) ........................................................................................... 4

Fed. R. Civ. Proc. 60(b) ..................................................................................... 11, 12

Fed. R. Civ. Proc. 60(b)(1) .............................................................................................................. 13

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Travelers moves to intervene in this action to protect its interests as C&A Products, LLC's putative insurer and to vacate the default against C&A Products, LLC.  Any rulings or judgment made against C&A Products, LLC in this case may impact Travelers' obligations, if any, to DTSC, if DTSC becomes a judgment creditor of C&A Products, LLC.

C&A Products, LLC is a cancelled Delaware limited liability company against which DTSC has obtained entry of default.  As C&A Products, LLC's putative insurer, Federal Rules of Civil Procedure, Rule 24(a) and substantive California law allow Travelers to intervene as a matter of right.  Travelers' request is timely within the meaning of Rule 24(a), Travelers has a "significantly protectable" interest regarding C&A Products, LLC's exposure in this action, disposition of this action without intervention may impair Travelers' interest, and Travelers' interest is not represented by any party to the action.  Pursuant to Federal Rules of Civil Procedure, Rule 55(c), good cause also exists to vacate the default taken by DTSC against C&A Products, LLC.  Travelers respectfully requests that this Court grant Travelers' motion to intervene and to vacate the default against C&A Products, LLC.

## II.   FACTUAL BACKGROUND

### A.   The Site And The Potentially Responsible Parties

From 1972 until September 12, 1979, Pacific Wood Preserving conducted wood preserving operations at the property located at 147A Street, Elmira, California 95625 ("Site").  (ECF No. 77, ¶ 17.)[1]  In September 1979, Pacific Wood Preserving sold the Site and wood preserving business to The Wickes Corporation ("Wickes").  (ECF No. 77, ¶ 16.)  Wickes operated the Site from 1979 to 1982.  (*Id.*)  Wickes and its successor Collins & Aikman Products Co. ("C&A Products Co."), owned and operated the Site until March 20, 1997.  (ECF No. 77, ¶¶ 15, 16.)  DTSC claims C&A Products Co. became known as the defendant C&A Products, LLC on December 6, 2007.  (ECF No. 77, ¶ 15.)

---

[1] ECF Numbers referred here in are to pleadings within the above entitled action.

1   DTSC claims that during their respective wood preserving operations, Pacific Wood

2   Preserving and Wickes released hazardous substances, including arsenic, chromium, and copper.

3   (ECF No. 77, ¶ 19.)  From the 1980s through 2005, DTSC claims that Wickes and then C&A

4   Products, Co. took responsive actions under oversight of the DTSC and its predecessor agency to

5   address environmental contamination at the Site.  (ECF No. 77, ¶ 20.)  Those actions included soil

6   excavation, installing an asphalt cap over contaminated soils, constructing a building and a

7   drainage system over another contaminated area of the Site, installing and operating a groundwater

8   extraction and treatment system, and groundwater monitoring.  (*Id.*)

9   In March 1996, DTSC and C&A Products Co. entered into the "Operation and

10  Maintenance Agreement," which certified implementation of the final remedial action at the Site.

11  [ECF No. 23-3.]  C&A Products Co. agreed to perform soil excavation and off-site disposal,

12  install an asphalt cap, and conduct ground water extraction and treatment in an on-site chemical

13  treatment plant.  (ECF No. 23-3, ¶ 7.A.)  As part of the post-closure activities, C&A Products Co.

14  was required to continue to extract, treat, sample, and analyze ground water, sample and analyze

15  procedures associated with the on-site chemical treatment system and asphalt cap from the Site.

16  (ECF No. 23-3, ¶ 12.A.)  On March 20, 1997, C&A Products Co. allegedly sold the Site to

17  defendants Jim Dobbas, Inc. and Continental Rail, Inc., while continuing to address environmental

18  contamination at the Site.  (ECF No. 77, ¶ 22.)

19  **B.    Wickes' Coverage Litigation Against Travelers Related To The Site**

20  On January 3, 1991, Wickes tendered a claim for coverage with respect to the

21  environmental conditions at the Site to Travelers.  It alleged that Wickes had received a notice of

22  potential liability with regard to hazardous waste disposal at the Site, resulting from a consent

23  order that had been entered into between Wickes and DTSC.  Wickes contended that any liability

24  for damages with respect to said claim may be covered by policies of insurance issued by

25  Travelers, and Travelers disputed this contention.

26  **C.    C&A Products Co.'s 1997 Action Against Travelers**

27  On October 3, 1997, C&A Products Co. (as successor to Wickes) filed a complaint for

28  breach of contract and declaratory relief against Travelers in the United States District Court,

1  Northern District of California, captioned *Collins & Aikman Products Co. v. The Travelers*

2  *Indemnity Company*, Case No. 97-3639 MEJ ("1997 Action").  C&A Products Co. asserted that

3  the DTSC's claims for the cost of investigation and remediating the alleged environmental

4  conditions at the Site were covered under Travelers' insurance policies.  Travelers and C&A

5  Products Co. settled the 1997 Action, entering into a confidential settlement agreement and

6  release, effective June 2000 ("Confidential Settlement Agreement").  Under the terms of that

7  Confidential Settlement Agreement, Travelers made a settlement payment to C&A Products Co,

8  which, in exchange for that payment, released Travelers from certain claims, including the claims

9  DTSC has now asserted against C&A Products, LLC arising out of or relating to the Site.  As part

10  of the Confidential Settlement Agreement, C&A Products Co. dismissed its coverage action

11  against Travelers with prejudice on July 10, 2000.

12  **D.**     **C&A Products Co.'s Bankruptcy And The Cessation Of Its Remedial Activities At**

13          **The Site**

14          On May 17, 2005, C&A Products Co. filed a Chapter 11 petition in the United States

15  Bankruptcy Court for the Eastern District of Michigan, Case No. 05-55932, jointly administered

16  with the bankruptcy cases of other debtors under Case No. 05-55927.  (ECF No. 77, ¶ 23.)  In the

17  summer of 2005, while in Chapter 11 bankruptcy proceedings, C&A Products Co. stopped its

18  remediation efforts.  (ECF No. 77, ¶ 24.)

19          In 2006, DTSC claims to have requested that Jim Dobbas, Inc. and Continental Rail, Inc.,

20  as the then owners of the Site, resume remediation efforts at the Site.  (ECF No. 77, ¶ 25.)  C&A

21  Products, LLC was formed on or about December 6, 2007, as a conversion of the Delaware

22  corporation Collins & Aikman Products Co.  (ECF No. 77, ¶ 15.)  In December 2007, after

23  agreeing to perform certain remedial actions, Jim Dobbas, Inc. and Continental Rail, Inc. failed

24  and refused to perform most of the actions formerly conducted by C&A Products Co. to address

25  contamination at the Site.  (ECF No. 77, ¶ 27.)  After Jim Dobbas, Inc. and Continental Rail, Inc.

26  sold the Site to defendant David Van Over in 2011, DTSC allegedly issued an Imminent or

27  Substantial Endangerment Determination Order and Remedial Action Order requiring Jim

28  Dobbas, Inc., Continental Rail, Inc., and David Van Over to conduct additional remediation

1    activities.  (ECF No. 77, ¶¶ 30 – 31, and Ex. D.)  All three of those defendants allegedly failed to

2    comply with these orders.  (ECF No. 77, ¶ 32.)  As a result, the DTSC claims to have itself

3    undertaken the responsive actions to remediate the Site, thereby incurring unreimbursed

4    remediation costs.  (ECF No. 77, ¶¶ 33 - 36.)  Specifically, the response actions DTSC claims to

5    have taken included efforts to repair and restart the groundwater extraction and treatment system,

6    completion of a remedial investigation for site soils, preparation of the "Removal Action

7    Workplan," implementation of the that plan in October and November 2011, and groundwater

8    monitoring.   (ECF No. 77, ¶ 33.)

9    **E.**    **The DTSC's 2014 Action Under CERCLA**

10    On March 3, 2014, the DTSC filed the present action (the "*DTSC* Action"), seeking cost

11    recovery under CERCLA, 42 U.S.C. § 9607, declaratory relief under CERCLA, 42 U.S.C. §

12    9613(g), and damages, injunctive relief, and civil penalties under the Hazardous Substance

13    Account Act, Cal. Health & Safety Code §§ 25300 *et seq.* against potentially responsible parties at

14    the Site.

15    On December 8, 2014, Delaware Court of Chancery appointed Brian Rostocki the receiver

16    for C&A Products, LLC "for the limited purpose of allowing Collins & Aikman Products, LLC to

17    be sued [in the *DTSC* Action], and with the power, but not the obligation, to defend, in the name

18    of Collins & Aikman Products, LLC, any claims made against it [in the *DTSC* Action]."  *See In re*

19    *Collins & Aikman Prods., LLC*, No. 10348-CB, 2014 WL 6907689, *1-2 (Del. Ch. Dec. 8, 2014).

20    As receiver, Mr. Rostocki "act[ed] as registered agent in the State of Delaware for service of

21    process on Collins & Aikman Products, LLC, including, without limitation, for service of process

22    [in the *DTSC* Action].  *Id.* at *1.

23    On December 11, 2014, DTSC filed its First Amended Complaint (the "Amended

24    Complaint") against C&A Products, LLC and other potentially responsible parties in the *DTSC*

25    Action.  DTSC served Mr. Rostocki with the Amended Complaint, and C&A Products, LLC did

26    not respond or appear.  Travelers received no notice of the original or Amended Complaint or

27    service of the Amended Complaint when it was filed and served on C&A Products, LLC.

28

1    DTSC took the defaults of Continental Rail, Inc. and Pacific Wood Preserving on June 2,

2    2014.  (ECF Nos. 18 and 19.)  On March 25, 2015, without notice to Travelers, DTSC took the

3    default, under Federal Rules of Civil Procedure, Rule 55(a), of C&A Products, LLC for having

4    failed to answer the complaint in the *DTSC* Action.  (ECF No. 126.)  On March 26, 2015, the clerk

5    entered default against C&A Products, LLC in the *DTSC* Action.  (ECF No. 129.)  Likewise,

6    Travelers did not receive notice of such default at that time.

7    DTSC then settled with defendants West Coast Wood Preserving for $350,000, Jim

8    Dobbas, Inc., for $265,000, and David Van Over for $250,000, entering into public settlements

9    and consent decrees with each of them.  (ECF No. 185, p. 10 of 21, ECF No. 141, ¶¶ 13, 23; ECF

10   No. 150, ¶¶ 12, 22.; ECF No. 182, ¶¶ 12, 25.)  The Court approved these consent decrees on

11   September 16, 2015, November 18, 2015, and March 28, 2018, respectively, again all long before

12   Travelers received notice of the *DTSC* Action.  (ECF Nos. 141, 150, 182.)

13   DTSC for the first time provided notice to Travelers of the *DTSC* Action on June 11, 2018,

14   almost four years after DTSC filed suit and more than three years after it took C&A Products,

15   LLC's default.  DTSC provided notice by serving Travelers with a demand letter dated June 7,

16   2018 for payment of C&A Products, LLC's liabilities in the *DTSC* Action.  Alexander E. Potente

17   Declaration ("Potente Decl."), ¶ 2; Exh. A.  After receiving this letter, Travelers promptly engaged

18   in discussions with DTSC, explaining that Collins & Aikman Products Co. had released Travelers

19   from certain claims, including the claims DTSC has now asserted against C&A Products, LLC

20   arising out of or relating to the Site.  Potente Decl., ¶ 3; Exh. B.

21   On August 21, 2019, DTSC moved for application for entry of default judgment against

22   C&A Products, LLC.  (ECF No. 184.)  DTSC served the application for entry of default judgment

23   against C&A Products, LLC on Rostocki, but neither it nor Rostocki notified Travelers of the

24   application.  Travelers, which only recently learned of this application for entry of default

25   judgment by monitoring the docket, is now submitting this motion to intervene without delay.

26

27

28

MOTION TO INTERVENE AND TO VACATE DEFAULT

1

### III.   ARGUMENT

2 **A.**      **As The Putative Insurer Of C&A Products, LLC, Travelers Is Entitled To Intervene**

3          **As A Matter Of Right To Protect Its Own Interests**

4          Federal Rule of Civil procedure 24(a) provides the criteria for intervention as a matter of

5 right, and it allows for intervention here because DTSC intends to attempt to have Travelers pay

6 any judgment against C&A Products, LLC:

7          **(a) Intervention of Right.** On timely motion, the court must permit anyone to
           intervene who: (1) is given an unconditional right to intervene by a federal statute;
8          or (2) claims an interest relating to the property or transaction that is the subject of
           the action, and is so situated that disposing of the action may as a practical matter
9          impair or impede the movant's ability to protect its interest, unless existing parties
           adequately represent that interest.

10

11 Fed. R. Civ. P. 24(a).

12          As the putative insurer of C&A Products, LLC, Travelers can establish the four elements

13 needed for intervention as a matter of right:

14          (1) the intervention application is timely; (2) the applicant has a significant
           protectable interest relating to the property or transaction that is the subject of the
15          action; (3) the disposition of the action may, as a practical matter, impair or impede
           the applicant's ability to protect its interest; and (4) the existing parties may not
16          adequately represent the applicant's interest.

17 *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (reversing

18 district court's denial of intervention in the ongoing litigation because the proposed intervenor

19 satisfied the four elements for intervention as of right under Fed. R. Civ. P. 24(a)).  In determining

20 whether to permit intervention, a court is "guided primarily by practical considerations, not

21 technical distinctions," and "the requirements are broadly interpreted in favor of intervention."

22 *Citizens for Balanced Use*, 647 F.3d at 897 (emphasis added).

23          **1.      Travelers' Motion For Intervention Is Timely**

24          Travelers' motion to intervene is timely.  DTSC has merely taken C&A Products, LLC's

25 default.  DTSC has not otherwise advanced this litigation, and DTSC delayed almost four years in

26 notifying Travelers of the default.  In deciding whether a movant's motion is timely, the Ninth

27 Circuit considers the following three factors: (1) the stage of the proceeding; (2) whether the

28 parties would be prejudiced; and (3) the reason for the delay, if any, in moving to intervene.  *See*

1    *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836-37 (9th Cir. 1996).  The mere lapse of

2    time alone does not necessarily preclude intervention.  *See U.S. v. Oregon*, 913 F.2d 576, 588 (9th

3    Cir. 1990) (holding that although the underlying action "had been underway for nearly twenty

4    years when [the intervenor] sought to intervene, the length of time that has passed since a suit was

5    filed does not alone determine timeliness") (emphasis added).  Timeliness is to "be determined

6    from all the circumstances," and is in the court's "sound discretion."  *NAACP v. New York*, 413

7    U.S. 345, 366 (1973).

8         Furthermore, DTSC has not materially advanced this action against C&A Products, LLC;

9    it has merely filed a complaint, sought default, and filed an application for a default judgment

10   against C&A Products, LLC.  *Utica Mut. Ins. Co. v. Hamilton Supply Co.*, No. C 06-07846 SI,

11   2007 WL 3256485 (N.D. Cal. Nov. 5, 2007) supports Travelers' position.  That, "although default

12   was entered against [the insured] prior to the [insurer's] application to intervene," the court found

13   that "this is not dispositive" because "plaintiff would suffer little to no prejudice if the Court were

14   to grant [insurer's] motion to intervene because plaintiff has done little up to this point other than

15   file a motion for default judgment." *Id.* at *3 - 4.

16        Moreover, no discovery has been conducted against C&A Products, LLC, nor have any

17   dispositive motions been filed, heard, and decided.  DTSC has taken no discovery and has not

18   proven the merits of any its claims against C&A Products, LLC.  Travelers' intervention would

19   therefore not "prejudice" DTSC within the meaning of Rule 24, as intervention would merely

20   require DTSC to prove its claims against C&A Products, LLC.  This does not create "prejudice"

21   under Rule 24.  *See Utica*, 2007 WL 3256485 at *5 (holding that an insurer's intervention on

22   behalf of an insured and setting aside an entry of default did not prejudice plaintiff "in any

23   meaningful way" under Rule 24 because granting insurer's motion to intervene "will not hamper

24   discovery," which had not yet commenced).

25        Likewise, although DTSC filed suit on December 11, 2014, it did not provide notice of suit

26   and entry of default against C&A Products, LLC to Travelers for almost four years, until June 11,

27   2018, when DTSC served Travelers with its demand letter dated June 7, 2018 in connection with

28   the *DTSC* Action.  Potente Decl., ¶ 2; Exh. A.  After receiving notice of the default of DTSC and

1   its expectations that Travelers would be liable to DTSC for any judgment entered against C&A

2   Products, LLC, Travelers promptly engaged in discussions with DTSC, explaining that the

3   putative predecessor to C&A Products, LLC, C&A Products Co., had released Travelers from

4   certain claims, including the claims DTSC has now asserted against C&A Products, LLC arising

5   out of or relating to the Site.  Potente Decl., ¶ 3; Exh. B.  After Travelers explained in a letter

6   dated January 15, 2019 why the Confidential Settlement Agreement precluded coverage for any

7   claim by DTSC against Travelers as a potential judgment creditor of C&A Products, LLC, and

8   after providing DTSC with a copy of the Confidential Settlement Agreement pursuant to an

9   agreement to keep it confidential, Travelers heard nothing further from DTSC.  Potente Decl., ¶4;

10  Exh. C.  Despite claiming that Travelers was C&A Products, LLC's insurer for any future

11  judgment, DTSC provided no notice to Travelers that it intended to seek entry of default judgment

12  against C&A Products, LLC.  Travelers only learned of DTSC's application for entry of default

13  judgment because it was monitoring the docket.  Potente Decl., ¶ 5.

14          Without notice to Travelers, three weeks ago on August 28, 2019, DTSC filed an

15  application for entry of default judgment against C&A Products, LLC.  (ECF No. 184.)  Travelers

16  now moves to intervene.  Under the liberal standard for intervention of right under Rule 24,

17  Travelers' motion to intervene is timely.

18          **2.       Travelers Has A Significant Protectable Interest**

19          To warrant intervention as of right, Travelers must have a significant protectable interest

20  relating to the property or transaction that is the subject of the action.  *See Citizens for Balanced*

21  *Use*, 647 F.3d at 897 (holding that "[t]o demonstrate a significant protectable interest, an applicant

22  must establish that the interest is protectable under some law and that there is a relationship

23  between the legally protected interest and the claims at issue") (reversing district court's denial of

24  intervention in the ongoing litigation).  An applicant for intervention has a significantly

25  protectable interest if "the interest is protectable under some law, and there is a relationship

26  between the legally protected interest and the claims at issue." *Southwest Center for Biological*

27  *Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (reversing district court's denial of motion for

28  intervention).

1    Travelers has a significant protectable interest in the property and transaction that are the

2  subject matter of this litigation.  Although default has been entered, judgment has not yet been

3  entered against C&A Products, LLC.  If Travelers is not allowed to intervene into this *DTSC*

4  Action, DTSC has stated it will seek to enforce its judgment against Travelers under Insurance

5  Code Sec. 11580.  Potente Decl., ¶ 6; Exh. D.  Under such circumstances, both California and

6  federal courts allow insurers to intervene.  *See Reliance Ins. Co. v. Superior Court*, 84 Cal. App.

7  4th 383, 386-87 (2000) (reversing trial court's refusal to allow insurer to intervene to vacate

8  default of insured reasoning, "where the insurer may be subject to a direct action under Insurance

9  Code section 11580 by a judgment creditor who has or will obtain a default judgment in a third

10  party action against the insured, intervention is appropriate" and noting the "insurer may either

11  intervene in that action prior to judgment or move under Code of Civil Procedure section 473 to

12  set aside the default judgment."); *Utica*, 2007 WL 3256485,  at *3 (permitting insurer proceeding

13  under reservation of rights to preserve its coverage defenses to intervene under Rule 24 and

14  granting request of insurer to vacate default judgment against insured); *B.G.N. Fremont Square*

15  *LTD. v. Chung*, CV 10-9749 GAF (RZx), 2011 WL 13129968, *4 (C.D. Cal. Sep. 27, 2011)

16  (holding, "[i]n short, California law provides that an insurer has a protectable interest in litigation

17  brought against its suspended insured, that its failure to intervene could subject it to liability for

18  default judgment subject to any coverage defenses that it may have, and that it can intervene

19  without waiving those coverage defenses by giving notice of its reservation of rights.").  Allowing

20  Travelers to intervene now avoids Travelers from having to challenge the default judgment after it

21  is entered, reducing inefficient and duplicative litigation between DTSC and Travelers.  *See U.S.*

22  *v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) ("By allowing parties with a practical

23  interest in the outcome of a particular case to intervene, we often prevent or simplify future

24  litigation involving related issues . . . ."); *Kaufman & Broad Communities, Inc. v. Performance*

25  *Plastering, Inc.*, 136 Cal. App. 4th 212, 216 (2006) (holding that an insurer must intervene or

26  challenge the default judgment after it is entered to protect its interest or risk waiver of such a

27  challenge).  Allowing Travelers to intervene now also allows it to challenge the default under the

28  more liberal standard to vacate a default under Fed. R. Civ. Proc. 55(c), as opposed to vacating a

1  default judgment under Fed. R. Civ. Proc. 60.[2]  Under California law, both fairness and efficiency

2  dictate that Travelers be allowed to intervene in this action and defend its interests against any

3  potential judgment DTSC seeks against C&A Products, LLC as DTSC has indicated that it intends

4  to enforce any such judgment against Travelers.  Potente Decl., ¶ 6; Exh. D.

5         **3.**     **Travelers' Interests May Be Impaired If Intervention Is Not Permitted**

6         It is Travelers' position that the Confidential Settlement Agreement applies to DTSC's

7  claims.  However, in the event that the Court determines that the Confidential Settlement

8  Agreement does not apply to DTSC's claims, and further DTSC is able to establish coverage

9  under Travelers policies of insurance, as it has indicated it hopes to do, Travelers' interests would

10  be significantly impaired if it were not allowed to intervene in this *DTSC* Action because it would

11  be potentially liable for any judgment against C&A Products, LLC.  "A party has a sufficient

12  interest for intervention purposes if it will suffer a practical impairment of its interests as a result

13  of the pending litigation."  *City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010).

14  As a proposed intervenor, Travelers "must show only that impairment of its substantial legal

15  interest is <u>possible</u> if intervention is denied.  This burden is minimal."  *WildEarth Guardians v.*

16  *U.S. Forest Service*, 573 F.3d 992, 995 (10th Cir. 2009) (emphasis added); *see also Citizens for*

17  *Balanced Use*, 647 F.3d at 898 (the standard is whether "the disposition of this action <u>may</u>, as a

18  practical matter, impair or impede Applicants' ability to protect their interest [and] '[i]f an

19  absentee would be substantially affected in a practical sense by the determination made in an

20  action, he should, as a general rule, be entitled to intervene . . . .'") (emphasis added).  Again, if

21  DTSC obtains a judgment against C&A Products, LLC, it may try to enforce that judgment against

22

23  [2]     The Ninth Circuit applies a "good cause" standard for vacating both an entry of default under Rule 55(c) and

24  for vacating a default judgment under Rule 60(b), but the test for setting aside entry of default is less rigid
and is more generous to the party in default.  *See U.S. Commodity Futures Trading Com'n v. American*

25  *Bullion Exchange ABEX, Corp.*, No. SACV 10–1876 DOC (RNBx), 2011 WL 4946810 at *1, 2 (C.D. Cal.
Oct. 17, 2011) (granting motion to set aside entry of default, reasoning that "[t]he 'good cause' standard

26  under Rule 55(c) is an easier burden for the allegedly defaulting party than the excusable neglect standard
required to obtain relief from default judgment under Rule 60(b)"); *E.Digital Corporation v. Ivideon LLC*,
No. 15-cv-00691-JST, 2016 WL 4728550 at *1 (N.D. Cal. Sep. 12, 2016) (granting motion to vacate entry of

27  default, reasoning " '[W]hile the same test applies for motions seeking relief from default judgment under
both Rule 55(c) and Rule 60(b), the test is more liberally applied in the Rule 55(c) context,' as where no

28  judgment has been entered, 'there is no interest in the finality of the judgment with which to contend'").

1  Travelers if the Court determines that the Confidential Settlement Agreement does not apply to

2  DTSC's claims and DTSC establishes coverage under Travelers policies of insurance, in which

3  case Travelers will not be able to challenge the existence or amount of the judgment.

4  Accordingly, Travelers should be allowed to intervene.

5  **4.**    **The Existing Parties Do Not Represent Travelers' Interests**

6  Travelers also satisfies the fourth requirement for intervention of right.  None of the parties

7  present in this action represent Travelers' interests.  In determining adequacy of representation,

8  courts consider the following factors in assessing adequate representation:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

12  *Citizens for Balanced Use*, 647 F.3d at 898 (noting, "[t]he 'most important factor' in assessing the

13  adequacy of representation is 'how the interest compares with the interests of existing parties'").

14  The existing parties do not represent Travelers' interests.  DTSC is adverse to Travelers

15  and C&A Products, LLC.  C&A Products, LLC has no assets and made no effort to defend itself,

16  let alone even appear.  Furthermore, as noted above, DTSC has represented that it "will not seek

17  enforcement of the judgment directly against C&A Products, LLC, but only as a means to pursue a

18  direct action against the company's historic insurers."  Potente Decl., ¶ 6; Exh. D.

19  **B.**    **Alternatively, Travelers Should Be Permitted To Intervene Pursuant To Rule 24(b)**

20  If the Court determines that Travelers is not entitled to intervene as a matter of right, the

21  Court should nonetheless exercise its discretion to allow Travelers to intervene under Rule 24(b)

22  which allows a permissive intervention.   Rule 24(b) provides:

> **(b) Permissive Intervention.** (1) *In General.* On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) <u>has a claim or defense that shares with the main action a common question of law or fact . . . .</u> In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

27  Fed. R. Civ. P. 24(b) (emphasis added).

28

1    Here, Travelers' defense for entry of judgment against C&A Products, LLC and DTSC's

2    claims against C&A Products, LLC share common questions of law and fact.  DTSC seeks to

3    establish C&A Products, LLC's liability in the *DTSC* Action.  Travelers seeks to challenge C&A

4    Product, LLC's liability and the amount of the proposed judgment.  As such, Travelers fulfills the

5    threshold requirement for the Court to allow Travelers' permissive intervention under Rule 24(b).

6    **C.**    **Travelers Has Shown Good Cause To Vacate The Entry of Default**

7    Rule 55 provides that a "court may set aside an entry of default for good cause . . . ."  Fed.

8    R. Civ. Pro. 55(c).  The Ninth Circuit's good cause standard for vacating entry of default is the

9    same as that for vacating default judgments under Rule 60(b), but the test for vacating an entry of

10   default is much less rigid and is more generous to the party in default.  *See Joe Hand Promotions,*

11   *Inc. v. Williams*, No. 2:14–cv–02663–JAM–AC, 2015 WL 5923611 at * 2 (E.D. Cal. Oct. 9, 2015)

12   (granting motion to set aside the entry of default and default judgment, reasoning that "'judgment

13   by default is a drastic step appropriate only in extreme circumstances; a case should, whenever

14   possible, be decided on the merits.'"); *U.S. Commodity Futures Trading Com'n v. American*

15   *Bullion Exchange ABEX, Corp.*, No. SACV 10–1876 DOC (RNBx), 2011 WL 4946810 at *1-2

16   (C.D. Cal. Oct. 17, 2011) (granting a motion to set aside entry of default, reasoning that "[t]he

17   'good cause' standard under Rule 55(c) is an easier burden for the allegedly defaulting party than

18   the excusable neglect standard required to obtain relief from default judgment under Rule 60(b)");

19   *E.Digital Corporation v. Ivideon LLC*, No. 15-cv-00691-JST, 2016 WL 4728550 at *1 (N.D. Cal.

20   Sep. 12, 2016) (granting motion to vacate entry of default, reasoning " '[W]hile the same test

21   applies for motions seeking relief from default judgment under both Rule 55(c) and Rule 60(b),

22   the test is more liberally applied in the Rule 55(c) context,' as where no judgment has been

23   entered, 'there is no interest in the finality of the judgment with which to contend'").   In

24   evaluating relief from an entry of default against C&A Products, LLC, the "court's discretion is

25   'especially broad'" to grant relief.  *Brady v. U.S.*, 211 F.3d 499, 504 (9th Cir. 2000) (emphasis

26   added) (finding that the district court did not abuse its discretion in granting a motion to set aside

27   the default); *see also Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 945 (9th Cir. 1986)

28

1    (holding that a "decision on a motion to set aside a default is not an abuse of discretion unless the

2    court is 'clearly wrong' in its determination of good cause").

3          To determine "good cause," a court must "consider [ ] three factors: (1) whether [the party

4    seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether

5    [the moving party] had [no] meritorious defense; or (3) whether reopening the default judgment

6    would prejudice the other party". *Joe Hand Promotions*, 2015 WL 5923611 at *2 (internal

7    citation omitted) *Brandt v. American Bankers Ins. Co. of Florida*, 653 F.3d 1108, 1111 (9th Cir.

8    2011) (setting forth same factors and affirming the district court's decision to grant insurer's

9    motion to set aside default judgment).

10         In addition, "[t]he law does not favor defaults," and "therefore, any doubts as to whether a

11   party is in default should be decided in favor of the defaulting party." *Bonita Packing Co. v.

12   O'Sullivan*, 165 F.R.D. 610, 614 (C.D. Cal. 1995); *Pena v. Seguros La Comercial, S.A.*, 770 F.2d

13   811, 814 (9th Cir. 1985) ("[D]efault judgments are generally disfavored. Whenever it is

14   reasonably possible, cases should be decided upon their merits."); *O'Connor v. Nevada*, 27 F.3d

15   357, 364 (9th Cir. 1994) (holding same).

16         **1.    <u>Travelers Did Not Engage In Culpable Conduct</u>**

17         In the Ninth Circuit, analysis of "culpability" for the purposes of demonstrating "good

18   cause" under Rule 55(c) overlaps with the standard for "excusable neglect" under Rule 60(b)(1).

19   *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695-96 (9th Cir. 2001); *see also Meadows v.

20   Dominican Republic*, 817 F.2d 517, 522 (9th Cir. 1987).  The Ninth Circuit finds a negligent

21   failure to respond <u>excusable</u> if the defaulting party offers a credible, good-faith explanation for the

22   delay that negates "any intention to take advantage of the opposing party, interfere with judicial

23   decision making, or otherwise manipulate the legal process." *TCI*, 244 F.3d at 697-98.

24         Here, Travelers had no notice that DTSC sued C&A Products, LLC in the 2014 *DTSC

25   Action* until June 11, 2018, when DTSC served Travelers with its demand letter dated June 7,

26   2018 in connection with the *DTSC* Action.  Potente Decl., ¶ 2; Exh. A.  This was more than <u>three

27   years</u> after DTSC obtained a default against C&A Products, LLC on March 25, 2015.  (ECF No.

28   126.)

1   Without knowledge of the *DTSC* Action or entry of default against C&A Products, LLC,

2   Travelers was not willful in failing to intervene and moving to vacate the default sooner.  When

3   Travelers learned of the default, it engaged with DTSC in discussions, explaining that in June

4   2000, C&A Products Co., which DTSC claims is now known as the defendant C&A Products,

5   LLC, had released Travelers from certain claims, including the claims DTSC has now asserted

6   against C&A Products, LLC arising out of or relating to the Site.  Potente Decl., ¶ 3; Exh. B.

7   After Travelers responded to DTSC's January 3, 2019 letter, in which DTSC disputed the binding

8   effects of the Confidential Settlement Agreement, DTSC did not respond further, leading

9   Travelers to reasonably believe that DTSC would take no further action against C&A Products,

10  LLC and ultimately Travelers as its putative insurer.  *See* Potente Decl., ¶ 3; Exh. B.

11  When DTSC did file its application for entry of default judgment against C&A Products,

12  LLC on August 21, 2019, counsel for Travelers – with notice only because Travelers was

13  monitoring the docket – contacted DTSC on September 6, 2019 to request that it continue the

14  hearing on its motion for entry of judgement against C&A Products, LLC and requested that

15  DTSC stipulate to allowing Travelers to intervene.  Potente Decl., ¶ 7; Exh. E.  On September 12,

16  2019, DTSC refused.  Potente Decl., ¶ 7; Exh. E.   On September 18, 2019, Travelers filed this

17  motion to intervene and vacate the default.  Given these facts, Travelers has not engaged in

18  "culpable conduct" within the meaning of Rule 55.  Travelers has not sought to take unfair

19  advantage of DTSC or to interfere with or otherwise to manipulate the judicial decision-making

20  process.

21       **2.      Travelers Has A Meritorious Defense To Assert Against DTSC In Favor Of**

22              **C&A Products, LLC**

23  The "meritorious defense" component of test for setting aside an entry of default pursuant

24  to Rule 55(c) does not require that movant demonstrate likelihood of success on merits.  Rather,

25  "[a]ll that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts

26  that, if true, would constitute a defense . . . [at] the later litigation."  *U.S. v. Signed Personal Check*

27  *No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010) (finding that good cause

28  warranted setting aside default); *see also Coon v. Grenier*, 867 F.2d 73, 77 (1st Cir. 1989)

1    (holding "[t]he 'meritorious defense' component of the test for setting aside a default does not go

2    so far as to require that the movant demonstrate a likelihood of success on the merits.  Rather, a

3    party's averments need only plausibly suggest the existence of facts which, if proven at trial,

4    would constitute a cognizable defense," and reversing the district court's denial of a motion to set

5    aside default).  When "the movant has a meritorious defense, doubt, if any, should be resolved in

6    favor of the motion to set aside the default so that cases may be decided on their merits."

7    *Mendoza*, 783 F.2d at 945-46 (finding that the district court did not err in setting aside the default).

8    The meritorious defense can be to the issue of liability or amount of damages.  *See Key Bank of*

9    *Maine v. Tablecloth Textile Co. Corp.*, 74 F.3d 349, 354–55 (1st Cir. 1996) (holding that the

10   defendants possessed a potentially meritorious defense that the figures upon which the default

11   judgment was premised were erroneous).

12         DTSC's essential claim against C&A Products, LLC is that C&A Products, LLC's alleged

13   predecessors entered an operation and maintenance agreement in which they agreed to maintain

14   the cap and operation of the ground water extraction and treatment system to treat contaminated

15   groundwater.  DTSC further alleges that after C&A Products Co. sought Chapter 11 bankruptcy,

16   its successors in interest stopped remediating the Site.  DTSC allegedly advanced the clean-up

17   costs, and it now alleges, in its first claim for relief, that each of the defendants, including C&A

18   Products, LLC is jointly and severally liable, without regard to fault, under section 107(a) of

19   CERCLA, 42 U.S.C. section 9607(a), for DTSC's costs allegedly incurred in response to the

20   alleged release or threatened release of hazardous substances at or from the Site.  (ECF No. 77, ¶

21   43.)  DTSC also contends, in its second claim for relief, that under section 113(g)(2) of CERCLA,

22   42 U.S.C. section 9613(g)(2), DTSC is entitled to a declaratory judgment that each of the

23   defendants, including C&A Products, LLC, is jointly and severally liable in any subsequent action

24   or actions by the DTSC to recover any further costs incurred in response to the release and/or

25   threatened release of hazardous substances into the environment at or from the Site.  (ECF No. 77,

26   ¶ 45.)

27         To establish a claim for recovery of response costs under Section 107(a), plaintiff must

28   demonstrate:

1    (1) the property at issue is a "facility" as defined in 42 U.S.C. § 9601(9); (2) a
     "release" or "threatened release" of a "hazardous substance" has occurred; (3) the
2    "release" or "threatened release" has caused the plaintiff to incur response costs
     that were "necessary" and "consistent with the national contingency plan,"; and (4)
3    the defendants are in one of four classes of persons subject to the liability.

4   *Carson Harbor Village v. County of Los Angeles*, 433 F.3d 1260, 1265 (9th Cir. 2006) (affirming

5   the district court's decision that does not allow a party to recover its response cost for cleanup).

6   CERCLA also contains a provision for declaratory relief.  Section 9613(g)(2) provides that in any

7   initial cost-recovery action under section 107, "the court shall enter a declaratory judgment on

8   liability for response costs or damages that will be binding on any subsequent action or actions to

9   recover further response costs or damages."  42 U.S.C. § 9613(g)(2).

10          Here, C&A Products, LLC has a meritorious defense as to whether the response costs were

11   necessary and consistent with the national contingency plan.  Furthermore, if DTSC cannot show

12   that it is entitled to recover any of its past costs, its claim for declaratory relief as to its future costs

13   necessarily fails.  *See e.g., City of Colton v. American Promotional Events, Inc.-West*, 614 F.3d

14   998, 1002-03 (9th Cir. 2010) (holding that past response costs were not recoverable since the City

15   failed to establish Section 107 liability in its initial cost-recovery action; CERCLA declaratory

16   relief as to future response costs was unavailable absent recoverable past costs).

17          Moreover, C&A Products, LLC also has a meritorious defense to DTSC's alleged amount

18   of damages.  In its June 7, 2018 letter to Travelers, DTSC asserts that it has unreimbursed

19   response costs that exceed $3,400,000.  *See* Potente Decl., ¶ 2; Exh. A.  This amount is disputed,

20   and DTSC should be required to prove this amount.  *See, e.g., Choice Hotels Int'l, Inc. v. Kusum*

21   *Vali, Inc.*, 11CV1277 BTM(WMc), 2012 WL 1570844, at *4 (S.D. Cal. May 3, 2012) (finding a

22   meritorious defense where defendants "estimate[d]" that the monetary sums contained in the

23   complaint, upon which plaintiff based its cause of action, were wrong; and explaining that

24   "[w]hether [d]efendants' figures are accurate need not be decided by the Court at this time

25   [because] [d]efendants have alleged sufficient facts to support a potentially meritorious defense

26   regarding the amount of damages").

27          Furthermore, C&A Products, LLC also has a meritorious defense to prejudgment interest

28   DTSC seeks.  The Amended Complaint seeks interest on the response costs DTSC allegedly

1    incurred from each defendant as provided under Section 107(a) of CERCLA, 42 U.S.C. section

2    9607(a).  Prejudgment interest is only available if DTSC demanded a sum certain from each

3    defendant.  *See United States v. Consolidation Coal Co.*, 345 F.3d 409, 416 (6th Cir. 2003)

4    (holding that complaint was not sufficient to satisfy Section 107(a)'s written demand requirement

5    because it did not specify the specific amount sought from each defendant).

6          Here, C&A Products, LLC was added as a defendant to DTSC's Amended Complaint in

7    the *DTSC* Action on December 18, 2014, which named many defendants.  C&A Products, LLC

8    has a meritorious defense, under *Consolidation*, that prejudgment interest is not available because

9    DTSC's Amended Complaint was not sufficient to satisfy Section 107(a)'s written demand

10   requirement in that the amount DTSC seeks from C&A Products, LLC is not specific enough.

11   Further, even if the DTSC is entitled to prejudgment interests, the amount is disputed, and DTSC

12   should be required to prove this amount at trial.

13         Finally, C&A Products, LLC also has a meritorious defense to attorney's fees DTSC seeks.

14   Neither Section 107, the liabilities and defenses provision, nor Section 113, which authorizes

15   contribution claims, "expressly calls for the recovery of attorney's fees by the prevailing party."

16   *See Key Tronic Corp. v. U.S.*, 511 U.S. 809, 817 (1994) (holding that litigation-related attorney's

17   fees were not recoverable in a CERCLA litigation).  Further, even if DTSC is entitled to attorney's

18   fees, the amount is disputed, and DTSC should be required to prove this amount at trial.

19         Since Travelers has stated a factual and cognizable defense, it has met the second

20   requirement to vacate the entry of default in this action.  *See Sosa v. Bridge Store, Inc.*, 1:10-CV-

21   01494-OWW, 2011 WL 1332049, *3 (E.D. Cal. Apr. 6, 2011) (holding that, that "[d]efendants

22   have no obligation to prove their contentions to establish a meritorious defense for purposes of

23   being relieved from an entry of default [and] [d]efendant's factual allegation . . . is an allegation

24   that will be tested for truth and accuracy later in the litigation.") (citations omitted).

25         **3.      <u>DTSC Will Not Be Prejudiced By Setting Aside The Entry of Default</u>**

26         Because relief from a default entry or judgment essentially is a matter of fairness and

27   judicial discretion, the single most persuasive reason for denying a Rule 55(c) motion is prejudice

28   to the non-defaulting party caused by reopening the action.  *See Tozer v. Charles A. Krause*

1   *Milling Co.*, 189 F.2d 242 (3rd Cir. 1951); *Franchise Holding II, LLC v. Huntington Rests. Group,*

2   *Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004); *O'Connor*, 27 F.3d at 364.  To be prejudicial, courts

3   have determined that the setting aside of a judgment must result in greater harm than simply

4   requiring plaintiff to try the case on the merits or delaying resolution of the case.  *See Falk v.*

5   *Allen*, 739 F.2d 461, 463 (9th Cir. 1984) ("the standard is whether [plaintiff's] ability to pursue his

6   claim will be hindered"); *Thompson v. American Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir.

7   1996) (to be considered prejudicial, "the delay must result in tangible harm such as loss of

8   evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion");

9   *Franchise Holding II,* 75 F.3d at 925-26; *O'Connor,* 27 F.3d at 364.  "To be prejudicial, the

10  setting aside of a judgment must result in greater harm than simply delaying resolution of the

11  case."  *TCI,* 244 F.3d at 701 ; *Utica*, 2007 WL 32566485,  at \*3 (N.D. Cal. 2007) (granting request

12  of insurer to vacate default judgment against insured and finding that delay in intervening and

13  requesting to vacate default did not constitute prejudice before mere delay in entering judgment

14  did not constitute prejudice).

15          DTSC would not be prejudiced if the Court vacated the default against C&A Products,

16  LLC.  DTSC filed this action more than five years ago, and it has not attempted to advance this

17  litigation against C&A Products, LLC since 2015.  DTSC's ability to pursue its claims will not be

18  hindered.  No discovery has been conducted, and DTSC has done nothing except for filing a

19  complaint, obtaining a default, and filing an application for a default judgment.  No dispositive

20  motions have been filed, heard, and decided.  Since DTSC would not be prejudiced by the Court's

21  decision to vacate the entry of default of C&A Products, LLC, Travelers has also met the third

22  requirement to vacate the entry of default in this action.[3]

23

24

25

---

26  [3]    In DTSC's letter dated September 13, 2019, DTSC claimed that it would be prejudiced by continuing hearing
    on its application for default judgment because the C&A Products Receivership is set to expire in October

27  2019.  This is not correct.  The Receiver confirmed, pursuant to the Delaware Court of Chancery's December
    14, 2014 order granting DTSC's petition for the appointment of a receiver, that his appointment does not

28  expire until the conclusion of the *DTSC* Action and any appeals thereof.  Potente Decl., ¶7.

IV.    **CONCLUSION**

For the foregoing reasons, Travelers respectfully requests this Court allow Travelers to intervene and to vacate the default against C&A Products, LLC.

Dated:  September 18, 2019                              CLYDE & CO US LLP

By:  _____
     Alexander E. Potente
     Hyunki (John) Jung
     Attorneys for Proposed Intervenors THE
     TRAVELERS INDEMNITY COMPANY

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

3

At the time of service, I was over 18 years of age and not a party to this action. I am

4

employed in the County of San Francisco, State of California. My business address is 101 Second Street, 24th Floor, San Francisco, CA 94105.

5

On September 18, 2019, I served true copies of the following document(s) described as **NOTICE**

6

**OF MOTION AND MOTION TO INTERVENE AND TO VACATE DEFAULT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO**

7

**INTERVENE AND TO VACATE DEFAULT** on the interested parties in this action as follows:

8

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the

9

document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the

10

court rules.

11

I declare under penalty of perjury under the laws of the United States of America that the

12

foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

13

Executed on September 18, 2019, at San Francisco, California.

14

15

*/s/ Trish Marwedel*

16

Trish Marwedel

17

18

19

20

21

22

23

24

25

26

27

28

4700673