XAVIER BECERRA
Attorney General of California
EDWARD H. OCHOA
Supervising Deputy Attorney General
OLIVIA W. KARLIN, State Bar No. 150432
LAURA J. ZUCKERMAN (Counsel for service)
State Bar No. 161896
Deputy Attorneys General
 1515 Clay Street, 20th Floor
 Oakland, CA 94612
 Telephone: (510) 879-1299
 Fax: (510) 622-2270
 E-mail: Laura.Zuckerman@doj.ca.gov
*Attorneys for Plaintiffs California
Department of Toxic Substances Control and the
Toxic Substances Control Account*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,<br><br>Plaintiffs,<br><br>v.<br><br>JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS AND CROSS CLAIMS | 2:14-cv-00595-WBS-EFB<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TRAVELERS INDEMNITY COMPANY'S EX PARTE APPLICATION FOR AN ORDER TO CONTINUE HEARING ON MOTION FOR DEFAULT JUDGMENT, OR, ALTERNATIVELY, FOR AN ORDER SHORTENING TIME FOR HEARING ON TRAVELERS' PROPOSED MOTION TO INTERVENE AND TO VACATE DEFAULT**<br><br>Chief Magistrate Judge Edmund F. Brennan<br><br>Action Filed: March 3, 2014 |

## INTRODUCTION

The Travelers Indemnity Company ("Travelers") has known that Plaintiffs Department of Toxic Substances Control and the Toxic Substances Control Account (collectively, "DTSC") would seek default judgment for more than a year, and yet it waited until a few weeks before the hearing to seek to intervene, after having disclaimed all coverage for its insured. The Court should deny Travelers' ex parte application for relief because it is untimely, will cause prejudice to DTSC, and is futile.

## ARGUMENT

### I.  TRAVELERS' MOTION IS NOT TIMELY, AND WOULD PREJUDICE DTSC.

Travelers has been aware of this lawsuit, and of the March 2015 clerk's entry of default, since at least June 7, 2018, yet waited until shortly before the upcoming hearing to take steps to seek intervention. *See* Docket No. 197, Declaration of Alexander E. Potente ("Potente Decl."), ¶ 2 and Ex. A. DTSC never indicated to Travelers, either then or at any other time, that it would *not* exercise its right following entry of default to seek to obtain a default judgment.[1] DTSC gave Travelers notice of the lawsuit, and Travelers responded by disclaiming coverage. Potente Decl., ¶ 2 and Ex. A; Declaration of Laura J. Zuckerman ("Zuckerman Decl."), ¶ 6 and Ex. E. Accordingly, DTSC did not believe it was necessary to notify Travelers in advance of its filing of the motion for default judgment. If Travelers believed it had an interest to protect in this action, it should have moved to intervene and to set aside the default shortly after it was notified of the lawsuit, in June 2018. Potente Decl., ¶ 2 and Ex. A. Instead, it waited more than a year to seek to intervene. Travelers' motion is not timely as required by Rule 24 of the Federal Rules of Civil Procedure.

Further, postponing the hearing would prejudice DTSC because of the possibility the receivership, created in order for DTSC to sue Collins & Aikman Products, LLC ("C&A

---

[1] Further, it would not have been appropriate for DTSC to file such a motion until after the final settlement was reached on March 27, 2018. *See In re First T.D. & Invest., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) (where a complaint alleges defendants are jointly and severally liable, and one of them defaults, a default judgment should not be entered against the defaulting defendant until the matter has been adjudicated with respect to all defendants).

1

Products"), will terminate in October 2019 or shortly thereafter. There is no dispute that the receivership is due to expire at the conclusion of DTSC's lawsuit against C&A Products under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. 9601-9674 ("CERCLA") *or when the Delaware court terminates the receivership upon motion.* See Potente Declaration, ¶ 7 (emphasis added). The receiver filed such a motion to terminate the receivership on April 9, 2019, *see* Zuckerman Decl., Ex. A, and only agreed to withdraw the motion and postpone filing a new motion to terminate the receivership for six months – i.e., until October 15, 2019 – to permit DTSC to "complete its determination of whether there exists any viable insurance policies that would justify [DTSC's] filing a motion for default judgment against Collins & Aikman Products, LLC." Zuckerman Decl., Ex. B, April 15, 2019 Letter to the Honorable Andre G. Bouchard from Brian Rostocki, at 2; see additional e-mail correspondence attached as Exhibit C to the Zuckerman Decl. Per the minute order in the docket, the Delaware court approved of this course of action. Zuckerman Decl., Ex. D. It is thus incumbent upon DTSC to perfect its claims in this action by October 15, 2019, when the receiver has indicated it may re-file the termination motion. DTSC filed its default judgment motion on August 21, 2019, and sent tenders to a number of insurance companies with potential coverage on September 10, 2019. Zuckerman Decl., ¶ 7.

## II. THERE ARE NO VALID GROUNDS TO SET ASIDE C&A PRODUCTS'S DEFAULT.

Nor does Travelers have any valid grounds for a motion to set aside the default under Rule 55(c) of the Federal Rules of Civil Procedure. Even assuming Travelers could assert defenses on its insured's behalf, C&A Products had no viable defense to liability it could have asserted under CERCLA, meaning that even if Travelers were to intervene to litigate the matter on the merits, the outcome would be the same.

DTSC has spent over $3 million in unreimbursed taxpayer funds responding to soil and groundwater contamination at the privately-owned, former wood treatment and preserving facility in Elmira, California, located at the intersection of A Street and Holdener Road, and identified by Solano County Assessor's Parcel Numbers 142-010-130, 142-010-140, and 142-042-010 (the

2

"Site"). C&A Products is a liable party for the contamination under CERCLA. CERCLA provides that where there is a release or threatened release of a hazardous substance from a facility that results in the incurrence of response costs, responsible parties are liable to DTSC for all response costs it incurred that are not inconsistent with the National Contingency Plan. 42 U.S.C. § 9607(a); 40 C.F.R. 300. Section 107(a) of CERCLA sets forth the basic elements of liability. The first element of CERCLA liability is that the Site must be a facility. The Site is a facility because a release or threatened release of hazardous substances occurred at the Site. CERCLA defines "facility" as "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed or otherwise come to be located. . . ." 42 U.S.C. 9601(9). The soil and groundwater at the Site were contaminated with arsenic, chromium, and copper, and thus the Site is a facility as defined in CERCLA. *See* Docket No. 189, Declaration of McKinley Lewis, Jr. ("Lewis Decl."), ¶ 11.

The second element of liability under CERCLA is that there has been a release or threatened release of hazardous substances from the facility. Release is defined broadly, and encompasses the entire universe of ways in which hazardous substances may come to exist in the environment. *United States v. Carolina Transformer Co.*, 739 F.Supp. 1030, 1036 (E.D. N.C. 1989). Here, during wood preserving operations, hazardous substances were released at the Site. *See* Docket No. 189, Lewis Decl., ¶¶ 8-10 & Exs. B-H; FAC, Docket No. 77, ¶ 12, 16-19.

The third element of CERCLA liability is that DTSC incurred costs in response to the release of hazardous substances at the Site. "Response" is broadly defined, and includes cleanup actions at the Site. 42 U.S.C. 9601(25). DTSC incurred costs related to its efforts to clean up the Site. Docket No. 189, Lewis Decl., ¶ 18 and accompanying exhibits.

CERCLA section 107(b) sets forth three statutory affirmative defenses to liability under section 107(a): an act of God; an act of war; and "an act or omission of a third party" who is not related to the defendant by any sort of "contractual relationship." These are the only cognizable defenses to liability under section 107(a), *see Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1316-17 (9th Cir. 1986), and none are relevant here.

3

MEMO. OF POINTS AND AUTHORITIES IN OPP. TO TRAVELERS INDEMNITY COMPANY'S EX PARTE APPLICATION FOR AN ORDER TO CONTINUE HEARING ON MOTION FOR DEFAULT JUDGMENT (2:14-cv-00595-WBS-EFB)

Even if C&A Products had a valid defense to liability, which it does not, a delay at this point would prejudice DTSC, as the receiver has only agreed to suspend its motion to terminate the receivership for six months, and this period is due to expire on October 15, 2019. Even if this were not the case, the case is essentially over, and its termination should not be delayed.

### III. THE CASE LAW TRAVELERS CITES IS INAPPOSITE, AS TRAVELERS HAS DISCLAIMED COVERAGE, AND HAS NO ASSERTED INTEREST TO PROTECT.

The authorities Travelers cites are not relevant to this case: many of the published cases concern intervention under different regulatory schemes, or situations where there were questions regarding the insured's liability; and the unpublished CERCLA case does not have a fact pattern similar to DTSC's case. None of the cases involves an insurer that disclaimed coverage, as Travelers did in its letter to DTSC dated July 25, 2018, when it stated, "DTSC cannot assert a claim under the Travelers policies for this Site and has no right to reimbursement as a judgment creditor or otherwise for the sums it allegedly incurred . . . ." July 25, 2018, Letter from Alexander E. Potente to Olivia W. Karlin, at 3, attached as Exhibit E to the Zuckerman Decl.

Moreover, DTSC has *not* "stated in legal filings that it will seek to enforce its judgment against Travelers under Insurance Code Sec. 11580," as Travelers misleadingly asserts. Potente Decl., ¶ 6. Rather, its petition for appointment of receiver clearly states that DTSC will seek enforcement of the judgment not against C&A Products, LLC, but "only as a means to pursue a direct action against *the company's historic insurers*." Potente Decl., Ex. D (emphasis added). As indicated above, tenders have been sent to multiple insurance companies, not just to Travelers. *See* Zuckerman Decl., ¶ 7.

### IV. IN THE EVENT THE COURT GRANTS ALTERNATIVE REQUEST, DTSC REQUESTS THAT THE COURT SET A BRIEFING SCHEDULE.

Travelers has requested, in the alternative, an order shortening time for hearing on Travelers' Proposed Motion to Intervene and to Vacate the Default. In the event the Court grants Travelers' alternative request for an order shortening time, DTSC requests that the Court set a briefing schedule that will allow DTSC sufficient time to oppose the motion.

4

MEMO. OF POINTS AND AUTHORITIES IN OPP. TO TRAVELERS INDEMNITY COMPANY'S EX PARTE APPLICATION FOR AN ORDER TO CONTINUE HEARING ON MOTION FOR DEFAULT JUDGMENT
(2:14-cv-00595-WBS-EFB)

## CONCLUSION

Because Travelers disclaimed coverage and waited 1-1/4 years to file its motion to intervene in this CERCLA case, because postponing the hearing would prejudice DTSC and merely delay the resolution of the action, and because Travelers cannot assert a valid defense to liability under CERCLA on behalf of its insured, the ex parte application should be denied.

Dated:  September 19, 2019

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
EDWARD H. OCHOA
Supervising Deputy Attorney General
OLIVIA W. KARLIN
Deputy Attorney General

/S/  Laura J. Zuckerman

LAURA J. ZUCKERMAN
Deputy Attorney General
*Attorneys for Plaintiffs California Department of Toxic Substances Control and the Toxic Substances Control Account*

LA2012602448
Opp to Ex Parte Motion.docx

5