SARA M. THORPE (SBN: 146529)
sthorpe@nicolaidesllp.com
RANDALL P. BERDAN (SBN: 199623)
rberdan@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
101 Montgomery Street, Suite 2300
San Francisco, CA 94104
Telephone:   (415) 745-3770
Facsimile:   (415) 745-3771

Attorneys for Proposed Intervenor
THE CONTINENTAL INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,<br><br>Plaintiffs,<br><br>v.<br><br>JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS AND CROSS CLAIMS. | 2:14-cv-00595-WBS-EFB<br><br>**THE CONTINENTAL INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AND TO SET ASIDE DEFAULT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE AND TO SET ASIDE DEFAULT**<br><br>[Pursuant to F.R.C.P. 24, 55(c)]<br><br>Date:        October 21, 2019<br>Time:        1:30 p.m.<br>Place:       Courtroom 5, 14th Floor<br>                501 I Street<br>                Sacramento, CA 95814<br>Judge:      Hon. William B. Shubb<br><br>Action Filed: March 3, 2014 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 21, 2019 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of the above Court located at 501 I Street, Sacramento, California 95814, the proposed intervenor The Continental Insurance Company ("Continental"), as putative insurer of defendant Collins & Aikman Products, LLC ("C&A Products"), will

move for an order permitting Continental to intervene in the above-captioned action, setting aside the entry of default, and opposing entry of judgment against C&A Products. Continental does not seek to litigate insurance coverage as part of this intervention.

This motion is made pursuant to Federal Rules of Civil Procedure, Rule 24, on the grounds that Continental has a direct interest in this litigation because C&A Products is a canceled Delaware limited liability company and lacks the resources or capacity to defend itself in this lawsuit, and because Plaintiffs California Department of Toxic Substances Control and the Toxic Substances Control Account (collectively, "DTSC") have indicated that they seek to recover any default judgment against C&A Products from its insurers. Pursuant to Federal Rules of Civil Procedure, Rule 55(c), good cause exists to set aside the default taken by the DTSC against C&A Products.

This motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Randall P. Berdan, as well as the complete files and records in this matter and such other matters as may be presented to the Court at or before the time of hearing on this motion.

Dated:   September 20, 2019            NICOLAIDES FINK THORPE
                                       MICHAELIDES SULLIVAN LLP

                                       By:  _____/s/ Sara M. Thorpe_____
                                            Sara M. Thorpe
                                            Randall P. Berdan
                                       Attorneys for Proposed Intervenor
                                       The Continental Insurance Company

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND .......................................................................................... 1

    A. C&A Products and Potential Predecessors ........................................................... 1

    B. DTSC's Lawsuit .................................................................................................... 2

    C. Notice to Continental and Alleged Policies .......................................................... 3

III. ARGUMENT .................................................................................................................... 4

    A. Continental Is Entitled To Intervene As A Matter Of Right To Protect Its Own Interests ................................................................................................................. 4

        1. Continental's Motion To Intervene Is Timely .......................................... 5

        2. Continental Has A Significant Protectable Interest .................................. 6

        3. Continental's Interest May Be Impaired If Intervention Is Not Permitted 7

        4. The Existing Parties Do Not Represent Continental's Interests ................ 8

    B. Continental Should Be Permitted to Intervene Pursuant to Rule 24(b) ................. 8

    C. Continental Has Shown Good Cause To Set Aside The Entry Of Default ............ 9

        1. The Entry Of Default Was Not The Result Of Continental's Willful Conduct ...................................................................................................... 9

        2. DTSC Will Not Be Prejudiced By Setting Aside The Entry Of Default . 10

        3. Continental Has A Meritorious Defense Against DTSC In Favor Of C&A Products ................................................................................................... 11

IV. CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

**CASES**

*Bonita Packing Co. v. O'Sullivan*,
    165 F.R.D. 610 (C.D. Cal. 1995) ........................................................................... 9

*Brandt v. American Bankers Ins. Co. of Florida*,
    653 F.3d 1108 (9th Cir. 2011) ............................................................................... 9

*Carson Harbor Village v. County of Los Angeles*,
    433 F.3d 1260 (9th Cir. 2006) ............................................................................. 12

*Choice Hotels Int'l, Inc. v. Kusum Vali, Inc.*,
    2012 WL 1570844 (S.D. Cal. May 3, 2012) ....................................................... 12

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
    647 F.3d 893 (9th Cir. 2011) ............................................................................ 4, 8

*City of Colton v. American Promotional Events, Inc.-West*,
    614 F.3d 998 (9th Cir. 2010) ............................................................................... 12

*City of Emeryville v. Robinson*,
    621 F.3d 1251 (9th Cir. 2010) ............................................................................... 7

*Cutting v. Town of Allenstown*,
    936 F.2d 18 (1st Cir. 1991) ................................................................................. 10

*Effjohn Intern. Cruise Holdings, Inc. v. A&L Sales, Inc.*,
    346 F.3d 552 (5th Cir. 2003) ................................................................................. 9

*Forest Conservation Council v. United States Forest Service*,
    66 F.3d 1489 (9th Cir. 1995) ................................................................................. 4

*Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*,
    375 F.3d 922 (9th Cir. 2004) ............................................................................... 11

*Heartwood, Inc v. U.S. Forest Service, Inc.*,
    316 F.3d 694 (7th Cir. 2003) ................................................................................. 6

*In re Collins & Aikman Prods., LLC*, WL 6907689,
    (Del. Ch. Dec. 8, 2014) ......................................................................................... 3

*Key Tronic Corp. v. U.S.*,
    511 U.S. 809 (1994) ............................................................................................ 13

*Kootenai Tribe of Idaho v. Veneman*,
    313 F.3d 1094 (9th Cir. 2002) ............................................................................... 9

*Lacy v. Sitel Corp.*,
    227 F.3d 290 (5th Cir. 2000) .................................................................................................. 10

*Mach v. Florida Casino Cruise, Inc.*,
    (D. Mass. 1999) 187 F.R.D. 15 ................................................................................................ 10

*NAACP v. New York*,
    413 U.S.345 (1973) .................................................................................................................... 5

*Nw. Forest Res. Council v. Glickman*,
    82 F.3d 825 (9th Cir. 1996) ....................................................................................................... 5

*Pellegrino v. Nesbit,*
    203 F.2d 463 (9th Cir. 1953) ..................................................................................................... 5

*Pena v. Seguros La Comercial, S.A.*,
    770 F.2d 811 (9th Cir. 1985) ..................................................................................................... 9

*Rasmussen v. W. E. Hutton & Co.*,
    (N.D. Ga. 1975) 68 F.R.D. 231 ................................................................................................. 9

*Reliance Ins. Co. v. Superior Court*,
    84 Cal. App. 4th 383 (2000) ...................................................................................................... 7

*Securities & Exchange Comm'n v. McNulty*,
    137 F.3d 732 (2nd Cir. 1998) .................................................................................................. 11

*Southwest Center for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ..................................................................................................... 6

*Spangler v. Pasadena City Board of Education,*
    552 F.2d 1326 (9th Cir. 1977) ................................................................................................... 9

*Stallworth v. Monsanto Co.*,
    558 F.2d 257 (5th Cir. 1977) ................................................................................................ 5, 8

*U.S. v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) ..................................................................................................... 7

*U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*,
    615 F.3d 1085 (9th Cir. 2010) ................................................................................................. 11

*United States v. British American Tobacco Australia Services, Ltd.,*
    437 F.3d 1235 (D.C. Cir. 2006) ................................................................................................. 5

*United States v. Consolidation Coal Co.*,
    345 F.3d 409 (6th Cir. 2003) ................................................................................................... 13

*United States v. Oregon,*
    745 F.2d 550 (9th Cir. 1984) ..................................................................................................... 5

*Whelan v. Abell*,
  48 F.3d 1247 (D.C. Cir. 1995) .................................................................................. 10

*Wild Earth Guardians v. U.S. Forest Service*,
  573 F.3d 992 (10th Cir. 2009) ..................................................................................... 7

**<u>STATUTES</u>**

42 U.S.C. § 9607 ............................................................................................................. 2

42 U.S.C. § 9613(g) ........................................................................................................ 2

42 U.S.C. section 9607(a) ....................................................................................... 11, 13

42 U.S.C. section 9613(g)(2) .................................................................................. 11, 12

CERCLA section 107(a) ......................................................................................... 11, 13

CERCLA section 113(g)(2) .......................................................................................... 11

CERCLA Section 9613(g)(2) ........................................................................................ 12

Federal Rule of Civil Procedure 24 ............................................................................. 4, 5

Federal Rule of Civil Procedure 24 (a) ............................................................... 1, 4, 7, 8

Federal Rule of Civil Procedure 24(b) ........................................................................... 8

Federal Rule of Civil Procedure 55 ................................................................................ 9

Federal Rule of Civil Procedure 60(b) ........................................................................... 9

Federal Rules of Civil Procedure, Rule 55(c) ................................................................ 1

Hazardous Substance Account Act, Cal. Health & Safety Code §§ 25300 .................. 2

Insurance Code Section 11580 ....................................................................................... 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Continental moves to intervene in this action to protect its interests as C&A Products' putative insurer and to set aside the default entered by DTSC against C&A Products. Any rulings or judgments made against C&A Products may affect Continental's obligations, if any, to DTSC, if DTSC becomes a judgment creditor of C&A Products.

C&A Products is a canceled Delaware limited liability company against which DTSC has obtained entry of default. As C&A Products' putative insurer, Federal Rules of Civil Procedure, Rule 24(a) and substantive California law allow Continental to intervene as a matter of right. Continental's request is timely within the meaning of Rule 24(a) as DTSC only provided notice on September 10, 2019 to Continental of this lawsuit and that an Application for Default Judgment is pending against defendant C&A Products. Continental has a "significantly protectable" interest regarding C&A Products' exposure in this action, disposition of this action without intervention may impair Continental's interest, and Continental's interest is not represented by any party to the action.

Pursuant to Federal Rules of Civil Procedure, Rule 55(c), good cause also exists to set aside the default taken by DTSC against C&A Products because Continental was unaware of the lawsuit brought by DTSC against C&A Products until recently, DTSC will not be prejudiced by setting aside the default, and Continental has a meritorious claim against DTSC.

Continental respectfully requests that this Court grant Continental's motion to intervene and to set aside the default against C&A Products.

## II. FACTUAL BACKGROUND

### A. C&A Products and Potential Predecessors

From 1979 to 1982, alleged predecessor of C&A Products, The Wickes Corporation ("Wickes") conducted wood preserving operations at the property located at 147 A Street, Elmira, California 95625 (the "Site"). (ECF No. 77, ¶ 16.)[1] Wickes and its successor Collins & Aikman Products Co. ("C&A Products Co."), owned and operated the site until March 20,

---

[1] ECF Numbers referred here are to papers filed within this action.

1997. (ECF No. 77, ¶¶ 15,16.) DTSC claims C&A Products Co. became known as defendant C&A Products on December 6, 2007. (ECF No. 77, ¶ 15.)

DTSC claims that during Wickes' wood preserving operations, Wickes released hazardous substances, including arsenic, chromium, and copper. (ECF No. 77, ¶ 19.) From the 1980s through 2005, DTSC claims that Wickes and then C&A Products Co. took responsive actions under oversight of the DTSC and its predecessor agency to address environmental contamination at the Site. (ECF No. 77, ¶20.) Those actions included soil excavation, installing an asphalt cap over contaminated soils, constructing a building and a drainage system over another contaminated area of the Site, installing and operating a groundwater extraction and treatment system, and groundwater monitoring. (*Id*.)

On May 17, 2005, C&A Products Co. filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Michigan, Case No. 05-55932, jointly administered with the bankruptcy cases of other debtors under Case No. 05-55927. (ECF No. 77, ¶ 23.) In the summer of 2005, while in Chapter 11 bankruptcy proceedings, C&A Products Co. discontinued its remediation efforts. (ECF No. 77, ¶ 24.)

**B.     DTSC's Lawsuit**

DTSC filed this action on March 3, 2014, seeking the recovery of costs under CERCLA, 42 U.S.C. § 9607, declaratory relief under CERCLA, 42 U.S.C. § 9613(g), and damages, injunctive relief, and civil penalties under the Hazardous Substance Account Act, Cal. Health & Safety Code §§ 25300 *et seq*. against potentially responsible parties at the Site ("DTSC Action").

On November 14, 2014, DTSC filed a petition for appointment of receiver for C&A Products in Delaware Court of Chancery in which DTSC represents that it "will not seek enforcement of the judgment directly against C&A Products, LLC, but only as a means to pursue a direct action against the company's historic insurers." (ECF No. 197, ¶ 6, Exh. D [Declaration of Alexander E. Potente in Support of Proposed Intervenor The Travelers Indemnity Company's *Ex Parte* Application].) On December 8, 2014, Delaware Court of Chancery appointed Brian Rostocki the receiver for C&A Products "for the limited purpose of

1  allowing Collins & Aikman Products, LLC to be sued [in the DTSC Action], and with the
2  power, but not the obligation, to defend, in the name of Collins & Aikman Products, LLC, any
3  claims made against it [in the DTSC Action]." See *In re Collins & Aikman Prods., LLC*, WL
4  6907689, * 1-2 (Del. Ch. Dec. 8, 2014).  As receiver, Mr. Rostocki "act[ed] as registered agent
5  in the State of Delaware for service of process on Collins & Aikman Products, LLC, including,
6  without limitation, for service of process [in the DTSC Action]."  *Id*. at * 1.
7      On December 11, 2014, DTSC filed its First Amended Complaint ("FAC") against C&A
8  Products and other potentially responsible parties in the DTSC Action.  DTSC served Mr.
9  Rostocki with the FAC.  C&A Products did not respond or appear and DTSC filed a request for
10 entry of default on March 20, 2015.  (ECF No. 125.)  The Court entered default as to C&A
11 Products on March 26, 2015, without DTSC having to prove any portion of its case.  (ECF No.
12 129.)  On August 21, 2019, DTSC moved for an Application for Entry of Default Judgment
13 against C&A Products.  (ECF No. 184.)  DTSC served the Application for Entry of Default
14 Judgment against C&A Products on Rostocki, but neither DTSC nor Rostocki timely notified
15 Continental of the Application or even this lawsuit.
16      **C.    Notice to Continental and Alleged Policies**
17      On September 10, 2019, Resolute Management, Inc. ("Resolute"), which is the claims
18 administrator for Continental, received notice from DTSC's agent, Arcina Risk Group, about
19 this lawsuit and DTSC's Application for Default Judgment against C&A Products.  Declaration
20 of Randall P. Berdan ("Berdan Decl."), ¶ 3, Exh. A; ECF No. 200, ¶ 7 (Declaration of Laura J.
21 Zuckerman in Support of Plaintiffs' Memorandum of Points and Authorities in Opposition to
22 The Travelers Indemnity Company's *Ex Parte* Application).  Arcina Risk Group alleges that
23 several insurance policies were issued to "Wickes Corporation and Wickes Companies, Inc., et
24 al" by Continental and Transcontinental Insurance Company.  Berdan Decl., ¶ 4, Exh. A.
25 Continental is conducting searches for insurance policies in response to the letter from Arcina
26 Risk Group and continues to investigate.  Berdan Decl., ¶ 5.  Shortly after it received notice,
27 Continental requested that DTSC continue the hearing set for September 25, 2019 on its
28

Application for Default Judgment against C&A Products and requested that DTSC allow Continental to intervene in this lawsuit, but DTSC refused.  Berdan Decl., ¶ 6.

Having just received notice of this action and the Application for Default Judgment, Continental is now submitting this motion to intervene and set aside the default without delay.

## III.    ARGUMENT

### A.    Continental Is Entitled To Intervene As A Matter Of Right To Protect Its Own Interests

DTSC is expected to seek to have Continental pay any judgment against C&A Products as its alleged insurer.  Federal Rule of Civil Procedure 24 ("Rule 24") authorizes the Court to grant a non-party's timely motion to intervene in pending litigation.  Rule 24 is to be broadly interpreted in favor of allowing intervention.  *See Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1493 (9th Cir. 1995).  Rule 24(a) provides that a non-party shall be permitted to intervene as of right:

> **(a) Intervention of Right**. On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter 9 impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

A motion to intervene under Rule 24(a) is subject to the following four-part test:

> (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (reversing district court's denial of intervention in the ongoing litigation because the proposed intervenor satisfied the four elements for intervention as of right under Fed. R. Civ. P. 24(a)).  In determining whether to permit intervention, a court is "guided primarily by practical

considerations, not technical distinctions," and "the requirements are broadly interpreted in favor of intervention." *Id*. at 897.

### 1. Continental's Motion To Intervene Is Timely

Continental's motion to intervene is timely, particularly because DTSC only provided notice to Continental of the lawsuit and Application for Default Judgment on September 10, 2019 and shortly thereafter DTSC refused to allow Continental to intervene. "Timeliness is a prerequisite to any claim for intervention under Rule 24." *United States v. British American Tobacco Australia Services, Ltd.,* 437 F.3d 1235, 1238 (D.C. Cir. 2006). Timeliness is to "be determined from all the circumstances," and is in the court's "sound discretion." *NAACP v. New York*, 413 U.S.345, 366 (1973). Courts are required to be more lenient in applying the timeliness requirement where intervention is sought as a matter "of right," than where it is merely "permissive" because of the likelihood of more serious harm. *United States v. Oregon,* 745 F.2d 550, 552 (9th Cir. 1984).

In deciding whether a movant's motion is timely, the Ninth Circuit considers the following three factors: (1) the stage of the proceeding; (2) whether the parties would be prejudiced; and (3) the reason for the delay, if any, in moving to intervene. *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836-37 (9th Cir. 1996).

Here, as it pertains to C&A Products, DTSC has merely taken a default against C&A Products. No discovery has been conducted against C&A Products, nor have any dispositive motions been decided. *See Stallworth v. Monsanto Co*., 558 F.2d 257, 266 (5th Cir. 1977) (entry of judgment does not alone disqualify application for intervention). DTSC has not proven the merits of its claims against C&A Products. DTSC would not be prejudiced by Continental's entrance into the case since the addition of Continental would not cause DTSC to relitigate matters. Instead, allowing Continental to intervene would simply require DTSC to prove its case rather than obtain a default judgment against a defunct corporation.

Intervention after judgment is disfavored, but may be granted where it is the only way to protect the intervenor's rights. *Pellegrino v. Nesbit,* 203 F.2d 463 (9th Cir. 1953) (where stockholder allowed to intervene after company decided not to appeal judgment in the lower

court). Although default has been entered, judgment has not yet been entered against C&A Products. The entry of default should not preclude Continental from intervening in the action since Continental has an interest in the request for a default judgment and will seek to set aside the default. If Continental is not allowed to intervene, DTSC has already represented that it seeks to "pursue a direct action against [C&A Products'] historic insurers." (ECF No. 197, ¶ 6, Exh. D [Declaration of Alexander E. Potente in Support of Proposed Intervenor The Travelers Indemnity Company's *Ex Parte* Application].) Intervention now will eliminate the possibility of inefficient and duplicative litigation between DTSC and Continental. The case has not proceeded so far as to justify precluding Continental from intervening and fairness dictates that Continental be allowed to defend its interests.

Continental acted in a prompt manner to protect its interest in the present litigation by filing this motion to intervene less than two weeks after it learned of this lawsuit and that DTSC intends to seek a default judgment against C&A Products. "A prospective intervenor must move promptly to intervene as soon as it knows or has reason to know that its interests might be adversely affected by the outcome of the litigation." *Heartwood, Inc v. U.S. Forest Service, Inc*. 316 F.3d 694 (7th Cir. 2003).

Under the liberal standard for intervention as a matter of right under Rule 24(a), Continental's motion to intervene is timely.

### 2. Continental Has A Significant Protectable Interest

Continental has a significant protectable interest relating to the property or transaction that is subject to the DTSC Action. An applicant for intervention has a significantly protectable interest if "the interest is protectable under some law, and there is a relationship between the legally protected interest and the claims at issue." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001).

Here, Continental has a significant protectable interest in the property and transaction that are the subject matter as an alleged insurer of Wickes, the alleged predecessor of C&A Products. Although default judgment has not yet been entered against C&A Products, it is very likely that DTSC will seek to enforce any judgment against C&A Products against Continental.

1  Under such circumstances, both California and federal courts allow insurers to intervene. *See*
2  *Reliance Ins. Co. v. Superior Court*, 84 Cal. App. 4th 383, 386-87 (2000) (reversing trial court's
3  refusal to allow insurer to intervene to vacate default of insured reasoning, "where the insurer
4  may be subject to a direct action under Insurance Code section 11580 by a judgment creditor
5  who has or will obtain a default judgment in a third party action against the insured, intervention
6  is appropriate.").

7  Allowing Continental to intervene now avoids Continental from having to challenge the
8  default judgment after it is entered, reducing inefficient and duplicative litigation between
9  DTSC and Continental. See *U.S. v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) ("By
10  allowing parties with a practical interest in the outcome of a particular case to intervene, we
11  often prevent or simplify future litigation involving related issues . . . ."). As further discussed
12  below, "a party has sufficient interest for intervention purposes if it will suffer a practical
13  impairment of its interests as a result of the pending litigation." *City of Emeryville v. Robinson*,
14  621 F.3d 1251, 1259 (9th Cir. 2010).

### 3.  Continental's Interest May Be Impaired If Intervention Is Not Permitted

17  Continental's interest would be significantly impaired if intervention is not permitted
18  because it would potentially be liable for any judgment against C&A Products. "A party has a
19  sufficient interest for intervention purposes if it will suffer a practical impairment of its interests
20  as a result of the pending litigation." *Robinson*, 621 F.3d at 1259.

21  As a proposed intervenor, Continental "must show only that impairment of its
22  substantial legal interest is possible if intervention is denied. This burden is minimal." *Wild*
23  *Earth Guardians v. U.S. Forest Service*, 573 F.3d 992, 995 (10th Cir. 2009). Again, DTSC has
24  represented that it will seek to enforce the judgment against C&A Products against its
25  "historical insurers" – including allegedly, Continental. Therefore, Continental satisfies the
26  third element required for intervention under Rule 24(a).

27  / / /
28  / / /

### 4. The Existing Parties Do Not Represent Continental's Interests

Continental's interests are not adequately protected by the current parties to the DTSC Action. In determining adequacy of representation, courts consider the following factors in assessing adequate representation:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Citizens for Balanced Use*, 647 F.3d at 898 (noting, "[t]he 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of existing parties'").

The existing parties do not represent Continental's interests. DTSC is adverse to Continental and C&A Products. C&A Products is defunct, has no assets, cannot defend itself, and has failed to appear in this suit. Furthermore, as noted above, DTSC has represented that it will "pursue a direct action against the company's historic insurers." Therefore, Continental satisfies the fourth element required for intervention under Rule 24(a).

### B. Continental Should Be Permitted to Intervene Pursuant to Rule 24(b)

Alternatively, this Court should allow Continental to intervene as a matter of permissive intervention. Rule 24(b) provides:

> **(b) Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: ...(2) when an applicant's claim or defense and the main action have a question of law or fact in common. ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b)

Once the intervenor proves the existence of the common questions of law or fact, the court must then exercise its discretion in deciding whether intervention should be allowed. *Stallworth*, 588 F.2d at 269. The existence of a "common question" is liberally construed.

*Kootenai Tribe of Idaho v. Veneman,* 313 F.3d 1094, 1108-1109 (9th Cir. 2002) ("significant protectable interest" not required for intervention under Rule 24(b)).

Continental's claims present common questions of law and/or fact. DTSC seeks to establish C&A Products' liabilities in the DTSC Action. Whereas Continental seeks to challenge C&A Products' liability and damages. Also, Continental's intervention would "significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Board of Education,* 552 F.2d 1326, 1329 (9th Cir. 1977). As such, Continental fulfills the threshold requirement for the Court to allow Continental to intervene.

### C. Continental Has Shown Good Cause To Set Aside The Entry Of Default

Federal Rule of Civil Procedure 55 regulates default judgments and states that an entry of default can be set aside for good cause or a judgment by default can be set aside in accordance with Rule 60(b). Factors the Court considers in determining whether "good cause" exists for setting aside entry of default include: (1) whether the failure to act was willful; (2) whether setting the default aside would prejudice the adversary; and (3) whether a meritorious claim has been presented. *Effjohn Intern. Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552 (5th Cir. 2003); *Brandt v. American Bankers Ins. Co. of Florida*, 653 F.3d 1108, 1111 (9th Cir. 2011) (setting forth same factors and affirming the district court's decision to grant insurer's motion to set aside default judgment).

In addition, "[t]he law does not favor defaults," and "therefore, any doubts as to whether a party is in default should be decided in favor of the defaulting party." *Bonita Packing Co. v. O'Sullivan*, 165 F.R.D. 610, 614 (C.D. Cal. 1995); *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) ("[D]efault judgments are generally disfavored. Whenever it is reasonably possible, cases should be decided upon their merits.").

#### 1. The Entry Of Default Was Not The Result Of Continental's Willful Conduct

Although it is not always necessary that the default be excusable, the default must not be the product of gross neglect or willful misconduct. *Rasmussen v. W. E. Hutton & Co.* 68 F.R.D.

231, 235 (N.D. Ga. 1975); *see also Mach v. Florida Casino Cruise, Inc.* (D. Mass. 1999) 187 F.R.D. 15.

Here, Continental was given no notice that DTSC filed this lawsuit against C&A Products until ***the week before this filing***, and over four years after the default was entered. Without knowledge of the lawsuit, Continental was not willful in failing to intervene and moving to set aside the default sooner. Continental acted to protect its interest immediately after receiving notice that DTSC intends to move forward with its Application for Entry of Default Judgment against C&A Products. Consequently, there was no willful conduct or gross negligence by Continental that resulted in the entry of default.

### 2. DTSC Will Not Be Prejudiced By Setting Aside The Entry Of Default

The party opposing the motion to set aside the default must show that the delay resulted in the loss of evidence, that it increased the difficulty of discovery, or that it thwarted plaintiffs' ability to obtain relief. *See Cutting v. Town of Allenstown*, 936 F.2d 18, 22 (1st Cir. 1991) (plaintiff died in intervening period); *Whelan v. Abell*, 48 F.3d 1247, 1258-59 (D.C. Cir. 1995) (trial completed against other defendants). "There is no prejudice to the plaintiff where the setting aside of the default has done no harm to plaintiff except to require it to prove its case." *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000).

Here, as it pertains to C&A Products, DTSC has done nothing except file a complaint over five years ago, request to enter default and only recently file an application for default judgment. No evidence has been lost nor have any witnesses become unavailable. No party discovery has been conducted. No dispositive motions have been filed, heard, and decided. DTSC will not be prejudiced by Continental's entrance into the case since DTSC seeks monetary compensation from potential insurance policies for which the evidence has not changed since DTSC filed its case. Therefore, DTSC would not be prejudiced by the Court's decision to vacate the entry of default. Consequently, the Court should set aside the default.

///

///

///

### 3. Continental Has A Meritorious Defense Against DTSC In Favor Of C&A Products

The party seeking relief from default bears the burden of showing a defense that might make the result at trial different than that reached by default. *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004) (litigant must present "specific facts that would constitute a defense"). The standard is not a likelihood of success. Rather, defendant need only show that the allegations, if proven, would constitute a complete defense. *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010) (finding that good cause warranted setting aside default); *see also Securities & Exchange Comm'n v. McNulty*, 137 F.3d 732, 740 (2nd Cir. 1998).

Here, DTSC alleges that C&A Products' alleged predecessors entered an operation and maintenance agreement in which they agreed to maintain the cap and operation of the ground water extraction and treatment system to treat contaminated groundwater. DTSC further alleges that after C&A Products Co. sought Chapter 11 bankruptcy, its successors in interest stopped remediating the Site. In response, DTSC allegedly advanced the clean-up costs, and it now alleges, in its first claim for relief, that each of the defendants, including C&A Products is jointly and severally liable, without regard to fault, under section 107(a) of CERCLA, 42 U.S.C. section 9607(a), for DTSC's costs allegedly incurred in response to the alleged release or threatened release of hazardous substances at or from the Site. (ECF No. 77, ¶ 43.) DTSC also contends, in its second claim for relief, that under section 113(g)(2) of CERCLA, 42 U.S.C. section 9613(g)(2), DTSC is entitled to a declaratory judgment that each of the defendants, including C&A Products, is jointly and severally liable in any subsequent action or actions by the DTSC to recover any further costs incurred in response to the release and/or threatened release of hazardous substances into the environment at or from the Site. (ECF No. 77, ¶ 45.)

To establish a claim for recovery of response costs under Section 107(a), DTSC must demonstrate:

> (1) the property at issue is a "facility" as defined in 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of a "hazardous substance" has occurred; (3)

CONTINENTAL'S MOTION TO INTERVENE AND TO SET ASIDE DEFAULT
11

   the "release" or "threatened release" has caused the plaintiff to incur response
   costs that were "necessary" and "consistent with the national contingency
   plan,"; and (4) the defendants are in one of four classes of persons subject to
   the liability.

*Carson Harbor Village v. County of Los Angeles*, 433 F.3d 1260, 1265 (9th Cir. 2006) (affirming the district court's decision that does not allow a party to recover its response cost for cleanup). CERCLA also contains a provision for declaratory relief. Section 9613(g)(2) provides that in any initial cost-recovery action under section 107, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2).

  C&A Products has a meritorious defense as to whether the response costs were necessary and consistent with the national contingency plan. Furthermore, if DTSC cannot show that it is entitled to recover any of its past costs, its claim for declaratory relief as to its future costs necessarily fails. *See e.g., City of Colton v. American Promotional Events, Inc.-West*, 614 F.3d 998, 1002-03 (9th Cir. 2010) (holding that past response costs were not recoverable since the City failed to establish Section 107 liability in its initial cost-recovery action; CERCLA declaratory relief as to future response costs was unavailable absent recoverable past costs).

  C&A Products, LLC also has a meritorious defense to DTSC's alleged amount of damages. DTSC should be required to prove this amount. *See, e.g., Choice Hotels Int'l, Inc. v. Kusum Vali, Inc.,* 2012 WL 1570844, at *4 (S.D. Cal. May 3, 2012) (finding a meritorious defense where defendants "estimate[d]" that the monetary sums contained in the complaint, upon which plaintiff based its cause of action, were wrong; and explaining that "[w]hether [d]efendants' figures are accurate need not be decided by the Court at this time [because] [d]efendants have alleged sufficient facts to support a potentially meritorious defense regarding the amount of damages").

/ / /

/ / /

Furthermore, C&A Products, LLC also has a meritorious defense to prejudgment interest DTSC seeks.  The FAC seeks interest on the response costs DTSC allegedly incurred from each defendant as provided under Section 107(a) of CERCLA, 42 U.S.C. section 9607(a).

Prejudgment interest is only available if DTSC demanded a sum certain from each defendant. *See United States v. Consolidation Coal Co.*, 345 F.3d 409, 416 (6th Cir. 2003) (holding that complaint was not sufficient to satisfy the Section 107(a) written demand requirement because it did not specify the specific amount sought from each defendant). Here, C&A Products has a meritorious defense that prejudgment interest is not available because the FAC is not sufficient specific enough to satisfy Section 107(a)'s written demand requirement in that the amount DTSC seeks from C&A Products.

Finally, C&A Products also has a meritorious defense to attorneys' fees.  Neither Section 107, the liabilities and defenses provision, nor Section 113, which authorizes contribution claims, "expressly calls for the recovery of attorney's fees by the prevailing party." *See Key Tronic Corp. v. U.S.*, 511 U.S. 809, 817 (1994) (holding that litigation-related attorney's fees were not recoverable in a CERCLA litigation).

Under these circumstances, Continental's claims are meritorious, and the default should be set aside.

## IV. CONCLUSION

For the foregoing reasons, Continental respectfully requests this Court allow Continental to intervene and grant Continental's motion to set aside the default against C&A Products.

Dated:   September 20, 2019

NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP

By: */s/ Sara M. Thorpe*
Sara M. Thorpe
Randall P. Berdan
Attorneys for Proposed Intervenor
The Continental Insurance Company