1  Xavier Becerra, State Bar No. 118517
   Attorney General of California
2  EDWARD H. OCHOA
   Supervising Deputy Attorney General
3  OLIVIA W. KARLIN, State Bar No.
   150432
4  LAURA J. ZUCKERMAN (Counsel for
   service)
5  State Bar No. 161896
   Deputy Attorneys General
6  1515 Clay Street, 20th Floor
   Oakland, CA 94612
7  Telephone:  (510) 879-1299
   Fax:  (510) 622-2270
8  E-mail:  Laura.Zuckerman@doj.ca.gov
   *Attorneys for Plaintiffs California*
9  *Department of Toxic Substances*
   *Control and the Toxic Substances*
10 *Control Account*

11                IN THE UNITED STATES DISTRICT COURT

12            FOR THE EASTERN DISTRICT OF CALIFORNIA

13                    SACRAMENTO DIVISION

14

15 CALIFORNIA DEPARTMENT OF TOXIC          2:14-cv-00595-WBS-EFB
   SUBSTANCES CONTROL and the TOXIC
16 SUBSTANCES CONTROL ACCOUNT,            PLAINTIFFS' MEMORANDUM OF
                                          POINTS AND AUTHORITIES IN
17                        Plaintiffs,     OPPOSITION TO THE
                                          TRAVELERS INDEMNITY
18            v.                          COMPANY'S MOTION TO
                                          INTERVENE AND TO VACATE
19 JIM DOBBAS, INC., a California         DEFAULT
   corporation; CONTINENTAL RAIL, INC.,
20 a Delaware corporation; DAVID VAN      Date: October 21, 2019
   OVER, individually; PACIFIC WOOD       Time: 1:30 p.m.
21 PRESERVING, a dissolved California     Judge:Hon. William B.Shubb
   corporation; WEST COAST WOOD               Courtroom 5
22 PRESERVING, LLC., a Nevada limited         501 I Street
   liability company; and COLLINS &          Sacramento, CA 95814
23 AIKMAN PRODUCTS, LLC, a Delaware
   limited liability company,            Action Filed:March 3, 2014
24
                          Defendants.
25

26 AND RELATED COUNTERCLAIMS AND CROSS
   CLAIMS
27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................... 1

Legal Standard ................................................ 7

    I.   Motion to Intervene Under Rule 24 of the Federal
        Rules of Civil Procedure ........................... 7

    II.  Motion to Set Aside Default Under Rule 55(c)of the
        Federal Rules of Civil Procedure ................... 8

Argument ...................................................... 9

    I.   Travelers Should Not Be Permitted to Intervene,
        Either as of Right or Permissively. ................. 9

        A.   Travelers' Motion is Untimely, and Prejudices
           DTSC. ......................................... 9

        B.   Having Disclaimed Coverage, and the Duty to
           Defend, Travelers Cannot Argue It Has a
           Protectable Interest Conferring a Right to
           Intervene ..................................... 11

        C.   Travelers Cannot Show That Its Ability to
           Protect its Interests Will Be Impaired, or
           that Its Interests Are Not Adequately
           Represented ................................... 13

    II.  Travelers Has Not Established Good Cause to Set
        Aside C&A Products' Default. ....................... 13

        A.   DTSC Has Established Its Prima Facie Case
           Against C&A Products Under CERCLA, and C&A
           Products Has No Viable Defense. ............... 14

           1.   The Site is a "Facility." ................. 15

           2.   A Release or Threatened Release of
               Hazardous Substances Occurred at the
               Site. ................................... 16

           3.   DTSC Incurred Costs in Response to the
               Releases and Threatened Releases at the
               Site. ................................... 17

           4.   C&A Products Was an Owner or Operator or
               Both of the Site at the Time of Disposal
               of Hazardous Substances at the Site, and
               Thus Is a Responsible Party Under
               CERCLA. ................................. 20

           5.   C&A Products Has No Defense to CERCLA
               Liability. .............................. 21

        B.   DTSC Will Be Prejudiced by Setting Aside the
           Default. ...................................... 23

CONCLUSION ................................................... 24

i

**TABLE OF AUTHORITIES**

Page

CASES

*3550 Stevens Creek Associates v. Barclays Bank*
   915 F.2d 1355 (9th Cir. 1990)................................15

*Asarco LLC v. Atlantic Richfield Co.*
   866 F.3d 1108 (9th Cir. 2017)...............................15

*California Department of Toxic Substances Control v.*
   *Commercial Realty Projects, Inc.*
   309 F.3d 1113 (9th Cir. 2002)............................7, 8

*Carson Harbor Village, Ltd. v. Unocal Corp.*
   270 F.3d 863 (9th Cir. 2001)................................15

*Fox Hollow of Turlock Owner's Ass'n v. Sinclair*
   No. 1:03-CV-5439, 2013 WL 1628260 (E.D. Cal. April
   15, 2013)....................................................4

*Franchise Holding II, LLC v. Huntington Restaurants*
   *Group, Inc.*
   375 F.3d 922 (9th Cir. 2004)................................8

*Gray v. Begley*
   182 Cal. App. 4th 1509 (2010)..............................11

*Haw. Carpenters' Trust Funds v. Stone*
   794 F.2d 508 (9th Cir. 1986)...............................14

*Hyundai Motor America v. National Union Fire Insurance*
   *Co. of Pittsburgh, PA*
   No. SACV 08-00020-JVS, 2010 WL 1468348 (C.D. Cal.
   Oct. 26, 2010).............................................11

*In re First T.D. & Invest., Inc.*
   253 F.3d 520 (9th Cir. 2001)............................4, 10

*Key Bank of Maine v. Tablecloth Textile Co. Corp.*
   74 F.3d 349 (1st Cir. 1996)................................23

*Levin Metals Corp. v. Parr-Richmond Terminal Co.*
   799 F.2d 1312 (9th Cir. 1986)..............................21

*Louisiana-Pacific Corp. v. Beazer Materials & Services*
   811 F.Supp. 1421 (E.D. Cal. 1993)..........................18

ii

1                    **TABLE OF AUTHORITIES**
                           (continued)
2                                                            <u>Page</u>

3   *Matthew v. Laudamiel*
        C.A. No. 5957-VCN, 2012 WL 605589 (Del. Ch. Feb. 21,
4       2012)...........................................................4

5   *Parker v. Dean Transp., Inc.*
        No. CV 13-02621, 2013 WL 7083269 (C.D. Cal. Oct. 15,
6       2013)...........................................................4

7   *State of Cal. Dept. of Toxic Substances Control v.*
        *Snydergeneral Corp.*
8       876 F.Supp. 222 (E.D. Cal. 1994)..............................18
9
    *State of California ex. rel. Cal. Dept. of Toxic*
10      *Substances Control v. Neville Chem. Co.*
        358 F.3d 661 (9th Cir. 2004)..............................18, 19
11
12  *U.S. v. Aguilar*
        782 F.3d 1101 (9th Cir. 2015).................................14
13
    *U.S. v. Signed Personal Check No. 730 of Yubran Mesle*
14      615 F.3d 1085 (9th Cir. 2010).........................8, 14, 23

15  *U.S. v. State of Oregon*
        745 F.2d 550 (9th Cir. 1984)...............................7, 11
16
17  *Uniroyal Chemical Co., Inc. v. Deltech Corp.*
        160 F.3d 238 (5th Cir. 1998).................................16
18
19  *United States v. Carolina Transformer Co.*
        739 F.Supp. 1030 (E.D.N.C. 1989).............................17

20  *United States v. Chapman*
        146 F.3d 1166 (9th Cir. 1998)...........................*passim*
21
22  *United States v. Hardage*
        982 F.2d 1436 (10th Cir. 1992)...............................19
23
    *United States v. Hunter*
24      70 F.Supp.2d 1100 (C.D. Cal. 1999)...........................15

25  *United States v. W.R. Grace & Co.*
        429 F. 3d 1224 (9th Cir. 2005)...............................19
26
    *Washington State Dept. of Transp. v. Washington Natural*
27      *Gas Co.*
        59 F.3d 793 (9th Cir. 1995)..............................19, 22
28

                                iii

**TABLE OF AUTHORITIES**
(continued)

Page

**STATUTES**

6 Delaware Code
§ 18-805..................................................................4

Comprehensive Environmental Response, Compensation, and
Liability Act of 1980, 42 United States Code
§ 9601....................................................................1
§ 9601(8)................................................................16
§ 9601(9)................................................................16
§ 9601(22)...............................................................16
§ 9601(23)...............................................................17
§ 9601(24)...............................................................17
§ 9601(25)...............................................................17
§ 9607(a)(2).............................................................20
§ 9607(a)(4)(A).....................................................17, 21
§ 9613(i)................................................................7
§ 9613(j)...............................................................19


California Corporations Code
§ 17708.01(a)............................................................3

**COURT RULES**

Federal Rules of Civil Procedure
Rule 17(b)(3)............................................................3
Rule 24.................................................................9
Rule 24(a)........................................................1, 2, 12
Rule 24(a)(2)............................................................7
Rule 24(a)(3)...........................................................13
Rule 24(b)..........................................................2, 7
Rule 24(b)(1)..........................................................11
Rule 55(b)..............................................................5
Rule 55(b)(2)...........................................................5
Rule 55(c)..........................................................8, 13
Rule 60(b)..............................................................8

**OTHER AUTHORITIES**

40 Code of Federal Regulations § 302.4 ........................16

iv

1                         **INTRODUCTION**

2        Plaintiffs Department of Toxic Substances Control and the

3   Toxic Substances Control Account (collectively, DTSC) have been

4   forced to spend in excess of $3.4 million in unreimbursed

5   taxpayer funds to clean up a hazardous waste site in Elmira,

6   California, formerly the site of a wood treatment and preserving

7   facility. One of the parties originally responsible for the

8   contamination under the Comprehensive Environmental Response,

9   Compensation, and Liability Act of 1980, 42 U.S.C. § 9601

10  (CERCLA), is Collins & Aikman Products, LLC (C&A Products),

11  against whom a default was entered in March 2015, prior to the

12  resolution of the issues against the other defendants.  The

13  Travelers Indemnity Company (Travelers), one of C&A Products'

14  historical insurers, despite having been aware of the lawsuit and

15  of the entry of default against its insured for over a year, has

16  waited until now to seek to intervene and to vacate C&A Products'

17  default, after having disclaimed all coverage for its insured.

18       Pursuant to Federal Rule of Civil Procedure (24)(a), a

19  litigant may move to intervene in an action, but only under

20  certain conditions.  The first is that the motion to intervene be

21  timely. Fed.R.Civ.P. 24(a)(2).  Travelers' motion is untimely,

22  because despite being given notice of DTSC's claim against C&A

23  Products and of the litigation in 2018, it waited over a year to

24  seek to involve itself in this litigation.  The second

25  requirement for a motion to intervene under Rule 24(a) is that

26  Travelers must have an interest to protect regarding C&A

27  Products' exposure in this action.  Here, Travelers does not have

28  a protectable interest in this matter because Travelers has

                                   1

disclaimed coverage, and has denied any duty to defend or indemnify C&A Products.  Third, Travelers must show that disposition of this action may, as a practical matter impair Travelers' ability to protect its interests.  Travelers cannot meet this third requirement, because Travelers has no protectable interest at this stage: Travelers has not been sued in a direct insurance action by DTSC.  If DTSC ultimately sues Travelers in a direct action to cover C&A Products' liability, Travelers can protect its interest at that time.  Indeed, Travelers has already moved to protect its interests by bringing a declaratory relief action in federal court against DTSC, which, in and of itself, proves that its intervention in this case is not necessary. Fourth, Travelers cannot show that the existing parties do not adequately represent its interest, because it has no protectable interest at this stage.  Because it cannot make the necessary showing under Rule 24(a) (or under the permissive intervention standard of Rule 24(b), given the untimeliness of its motion), Travelers' motion to intervene should be denied.

In addition, Travelers has not shown "good cause" for the Court to vacate C&A Products' default.  Travelers' unjustified delay in filing its motion has caused prejudice to DTSC, as it may have caused it to incur significant unnecessary costs; and granting the motion would be futile, and a waste of judicial resources, as Travelers has no cognizable defense to CERCLA liability, or met its burden of showing DTSC's response costs are inconsistent with the National Contingency Plan (NCP).  Accordingly, the Court should deny Travelers' motion to intervene and to vacate the default.

2

1

**FACTUAL BACKGROUND**

2      DTSC generally does not dispute the summary of facts in

3  Travelers' motion as it relates to the contamination at the site,

4  a former wood treatment and preserving facility in Elmira,

5  California, located at the intersection of A Street and Holdener

6  Road, and identified by Solano County Assessor's Parcel Numbers

7  142-010-130, 142-010-140, and 142-042-010 (the Site), and the

8  dealings among third parties.  A more comprehensive summary of

9  facts is set forth in DTSC's Memorandum of Points and Authorities

10  in support of its recently-filed Motion for Default Judgment, ECF

11  No. 185, and is incorporated herein by reference.  DTSC also sets

12  forth below certain information not included in Travelers'

13  summary, and corrects Travelers' mischaracterization of its delay

14  in seeking to intervene.

15      As the Court is aware, DTSC filed this CERCLA action in 2014

16  to recover unreimbursed taxpayer funds it was forced to spend to

17  respond to soil and groundwater contamination at the Site because

18  all of the responsible parties were defunct, stopped doing the

19  cleanup, or refused to do it in the first instance.  C&A

20  Products, a Delaware cancelled corporation and Travelers'

21  insured, is one of these responsible parties.

22      In late 2014, DTSC successfully petitioned the Delaware Court

23  of Chancery to appoint a receiver for C&A Products so that the

24  company would have the capacity to be sued under Rule 17(b)(3) of

25  the Federal Rules of Civil Procedure.[1]  Under Delaware law, a

26      [1] Rule 17(b)(3) provides in pertinent part that capacity to
be sued is determined "by the law of the state where the court is
27  located . . . ."  Fed. R. Civ. P. 17(b)(3).  California law in
turn provides that "[t]he law of the state or other jurisdiction
28

3

1   cancelled limited liability company can be sued if the Delaware

2   Court of Chancery appoints a trustee or receiver for the company

3   under 6 Delaware Code section 18-805, or nullifies the

4   certificate of cancellation.[2]  *Matthew v. Laudamiel*, C.A. No.

5   5957-VCN, 2012 WL 605589, *21 (Del. Ch. Feb. 21, 2012); see also

6   6 Del. C. § 18-805.

7      After the Delaware Court of Chancery granted DTSC's petition

8   and appointed Mr. Brian Rostocki as the receiver for C&A Products

9   on December 8, 2014, ECF No. 73-1, with the right (but not the

10  obligation) to defend it in this action, DTSC added C&A Products

11  to its complaint as a defendant.  ECF No. 77.  In March 2015,

12  when C&A Products failed to answer the First Amended Complaint,

13  DTSC obtained a clerk's entry of default.  ECF No. 129.  DTSC did

14  not, however, move for a default judgment against C&A Products at

15  that time, since such a motion is appropriate in a multi-

16  defendant case only after resolution of the case as to all

17  defendants.  *See In re First T.D. & Invest., Inc.*, 253 F.3d 520,

18  532 (9th Cir. 2001) (where a complaint alleges defendants are

19  jointly and severally liable, and one of them defaults, a default

20  judgment should not be entered against the defaulting defendant

21  _____

22  under which a foreign limited liability company [such as C&A
    Products, LLC] is formed governs . . . [t]he organization of the
    limited liability company, its internal affairs, and the

23  authority of its members and managers."  Cal. Corp. Code §
    17708.01(a).  Therefore, Delaware law governs the capacity of a

24  Delaware limited liability company to be sued in federal court in
    California.  *Parker v. Dean Transp., Inc.*, No. CV 13-02621, 2013

25  WL 7083269, *12 (C.D. Cal. Oct. 15, 2013), *abrogated on other
    grounds by Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir.

26  2014).

27      [2] By contrast, under California law, a cancelled California
    limited liability company may not be sued.  *See Fox Hollow of

28  Turlock Owner's Ass'n v. Sinclair*, No. 1:03-CV-5439, 2013 WL
    1628260, *4 (E.D. Cal. April 15, 2013).

4

1  until the matter has been adjudicated with respect to all

2  defendants).

3      Three years later, once DTSC had concluded its case against

4  the solvent defendants through the entry of consent judgments by

5  the Court, ECF Nos. 141, 150, 182, in June 2018, DTSC sent a

6  tender to Travelers, ECF No. 197 (Declaration of Alexander E.

7  Potente (Potente Decl.), Ex. A), and the Hartford Insurance

8  Company, two of C&A Products' historical insurers.  It

9  simultaneously continued its research into the existence of

10  insurance policies that could cover the period during which C&A

11  Products and its predecessors were operational, making it worth

12  the significant expenditure of funds required for DTSC to file a

13  motion for default judgment.[3]

14      After exchanging two more letters, in one of which Travelers

15  asserted that DTSC could not maintain a claim under the

16  Travelers' policies for the Site, and in the other Travelers

17  sought assurance from DTSC that it would not pursue Travelers

18  (which assurance DTSC never provided), Travelers disclaimed

19  coverage in a final communication dated January 15, 2019.[4]

20  Potente Decl., Ex. C, ECF No. 197.  Subsequently, DTSC turned its

21  focus to further researching C&A Products' historical insurance

22  
_____

23  [3] Because the prayer for relief in the First Amended
Complaint did not set forth a sum certain or a sum that could be
made certain by computation, the clerk could not enter default

24  judgment in the case.  Fed. R. Civ. P. 55 (b).  Default judgment
in this case will have to be entered by the Court, and the Court

25  may hold a "prove-up" hearing. See Fed. R. Civ. P. 55(b)(2).
DTSC has filed its motion for default judgment, together with

26  declarations relating to the response costs incurred.  ECF Nos.
184-190.

27  [4] Indeed, Travelers does not even admit to being C&A
Products' insurer, describing itself repeatedly only as its

28  "putative" insurer.

1  policies and preparing its motion for default judgment.

2  Consistent with its disclaimer of coverage, Travelers took no

3  steps to intervene in the litigation to assist in C&A Products'

4  defense, or to set aside the default, **for over a year**, until a

5  month after DTSC filed its motion for default judgment (which has

6  since been taken off calendar, ECF No. 206), and shortly after

7  DTSC's insurance consultant sent tenders to ten (10) additional

8  insurance companies.

9      DTSC has made clear to counsel for Travelers that it is still

10  in the process of determining which of C&A Products' insurers, if

11  any, to proceed against, and that it is not clear that DTSC will

12  be proceeding against Travelers.[5]  *See* Declaration of Laura J.

13  Zuckerman filed herewith (Zuckerman Decl.), ¶ 2.  DTSC suggested

14  that Travelers agree to postpone the hearing on its motion to

15  intervene until the additional insurers contacted had an

16  opportunity to determine their positions on coverage; it offered

17  to withdraw its tender to Travelers until a later point in time;

18  and it offered to stipulate to Travelers' intervention if

19  Travelers accepted coverage under a reservation of rights.

20  Zuckerman Decl., ¶ 2.  Counsel for Travelers refused.  Zuckerman

21  Decl., ¶ 2.

22

23      [5] Travelers' repeated assertion to the contrary, *see* Motion
    at 6, 9, 10, and Potente Decl., ¶ 6 and Ex. D, is incorrect:
24  DTSC has stated only that it will seek enforcement of a default
    judgment not against C&A Products but "only as a means to pursue
25  a direct action against *the company's historic insurers*."
    Potente Decl., Ex. D, ECF No. 197 (emphasis added).  The
26  investigation into the old insurance policies is still ongoing;
    tenders have been sent to multiple insurance companies, not just
27  to Travelers; and DTSC has not yet determined which insurers to
    proceed against if its default judgment motion is granted.
28  Zuckerman Decl., ¶ 7, ECF No. 200.

6

**LEGAL STANDARD**

I.   **MOTION TO INTERVENE UNDER RULE 24 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, which provides for intervention as of right, a person is permitted to intervene in an action, "upon timely application," ". . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."[6]  These are the four requirements an applicant must meet to satisfy Rule 24(a).

Under the permissive intervention provision of Rule 24(b), *on timely motion*, the court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact.  Fed.R.Civ.P. 24(b)(1).

In determining timeliness, the court looks to three factors: the stage of the proceedings, the prejudice to other parties, and the reason for and the length of the delay.  *U.S. v. State of Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).  Under the applicable Ninth Circuit case law, "A party seeking to intervene must act as

---

[6] CERCLA has a nearly identical intervention provision:  the only difference is that under CERCLA, the burden to show that existing parties adequately represent the prospective intervenor's interests is allocated to the President or the State, as applicable, whereas under Rule 24(a)(2) the party seeking to intervene has the burden to show that existing parties do not adequately represent its interests.  *California Department of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1118-19 (9th Cir. 2002) (citing Fed. R. Civ. P. 24(a)(2) and CERCLA § 113(i), 42 U.S.C. § 9613(i)).

soon as he knows *or has reason to know* that his interests might
be adversely affected by the outcome of the litigation." *Id*. at
589 (emphasis added, citation and internal quotation marks
omitted); *accord Commercial Realty Projects, Inc*., 309 F.3d at
1120.

**II. Motion to Set Aside Default Under Rule 55(c) of the Federal Rules of Civil Procedure**

Pursuant to Rule 55(c) of the Federal Rules of Civil
Procedure, "the court may set aside an entry of default for good
cause, and it may set aside a final default judgment under Rule
60(b)." Many courts have held that the "good cause" standard
applicable to Rule 55(c) is the same standard that applies to
vacating a default judgment under Rule 60(b). *E.g., Franchise
Holding II, LLC v. Huntington Restaurants Group, Inc*., 375 F.3d
922, 925 (9th Cir. 2004); *U.S. v. Signed Personal Check No. 730
of Yubran Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).

In either case, three factors are relevant to the analysis:
(1) whether the party seeking to set aside the default engaged in
culpable conduct leading to the default, (2) whether no
meritorious defense exists, and (3) whether reopening the
[default] would prejudice the other party. *Mesle*, 615 F.3d at
1092. Because the standard is disjunctive, the district court
may deny the motion to set aside the default if any one of these
conditions exists. *Ibid*. Although a movant need not prove the
defense by a preponderance of the evidence, it must present
"specific facts that would constitute a defense." *Id*. at 1094.

8

1                                **ARGUMENT**

2   **I.   Travelers Should Not Be Permitted to Intervene, Either as of Right or**
        **Permissively.**

3

4       As indicated above, DTSC is willing either to stipulate to

5   intervention if Travelers accepts coverage with a reservation of

6   rights, or to withdraw its tender to Travelers until such time as

7   it decides to proceed against that insurer.  If Travelers

8   continues to deny that it has a coverage obligation, however, its

9   motion should be denied, for the reasons set forth below.

10      **A.   Travelers' Motion is Untimely, and Prejudices DTSC.**

11      Travelers' representation of the facts attempts to obscure

12  its unjustified delay in seeking to intervene and set aside the

13  default of C&A Products, its insured, and the resulting

14  untimeliness of its motion under Rule 24 of the Federal Rules of

15  Civil Procedure.  As Travelers admits, DTSC made it aware both of

16  the existence of the litigation and of DTSC's claim against

17  Travelers on June 7, 2018, well over a year before Travelers

18  finally decided to seek to involve itself in this litigation.

19  *See* Potente Decl., Ex. A, ECF No. 197.  Instead, Travelers sent

20  letters to DTSC dated July 25, 2018, and January 15, 2019, in

21  which it denied all responsibility for covering the response

22  costs owed by C&A Products.[7]  Potente Decl., Exs. B and C, ECF

23  No. 197.

24      None of the underlying facts has changed since June 7, 2018,

25  and none of Travelers' claimed defenses arose after that date.

26  _____

27      [7] Travelers tries to spin its denial of responsibility as
    "engag[ing] in discussions with DTSC."  Motion at 8.  DTSC sent a
    demand and Travelers unambiguously rejected it. Potente Decl.,
28  Exs. B and C, ECF No. 197.

                                    9

1   If Travelers believed there was a potential for coverage

2   (presumably the reason it filed this motion), it had no excuse

3   for sitting on its hands for over a year.  DTSC never indicated

4   to Travelers, at any time, that it would not seek to obtain a

5   default judgment.  If Travelers believed it had an interest to

6   protect in this action, it could have and should have moved to

7   intervene and to set aside the default shortly after it was

8   notified of the lawsuit, in June 2018.  Potente Decl., Ex. A, ECF

9   No. 197.

10      Here, after five years of litigation with multiple

11  defendants, the case is essentially over.[8]  Travelers has been

12  aware of the litigation, and of all the pertinent facts (none of

13  which have changed), since June of 2018, but took no action to

14  intervene until over a year later.  Travelers' untimely motion to

15  intervene has prejudiced DTSC by causing it to incur the cost of

16  filing a motion for default judgment, which it would not have

17  done had Travelers moved to intervene and to set aside the entry

18  of default in 2018.  Because Travelers did not act timely, as

19  soon as it had reason to know that its interests might be

20  adversely affected by the litigation; because it had no good

21  reason to delay filing this motion, and DTSC has been prejudiced

22  as a result; and because the litigation in its final stages,

23  _____

24      [8] Travelers makes much of the fact that DTSC did not file
    its motion for default judgment against C&A Products for four
25  years after the entry of default, but in that time DTSC engaged
    into negotiations and consent decrees with the remaining solvent
    defendants, as was appropriate.  *See In re First T.D. & Invest.,*
26  *Inc.*, 253 F.3d at 532 (where a complaint alleges defendants are
    jointly and severally liable, and one of them defaults, a default
27  judgment should not be entered against the defaulting defendant
    until the matter has been adjudicated with respect to all
28  defendants).

10

1   Travelers' intervention motion is untimely. *See U.S. v. State of*

2   *Oregon*, 745 F.2d at 552, 589.

3       **B.   Having Disclaimed Coverage, and the Duty to Defend,**
         **Travelers Cannot Argue It Has a Protectable Interest**
4        **Conferring a Right to Intervene.**

5       Even if Travelers' motion were timely, which it is not,

6   Travelers should not be permitted to intervene, because it has no

7   legitimate interest in the litigation.  The basis of Travelers'

8   argument that it should be permitted to intervene as of right

9   appears to be that, because it is C&A Products' "putative"

10  insurer, and its legal defense to coverage may fail, it has an

11  interest in the litigation, and its ability to protect this

12  interest may be impaired by the disposition of the action.  **But**

13  **Travelers has disclaimed coverage, as well as any duty to defend**

14  **or indemnify**.  *See* Potente Decl., Exs. B & C, ECF No. 197. Thus,

15  under California and federal law, Travelers does not have a

16  direct interest in the litigation sufficient to entitle it to

17  intervention.[9]  *Gray v. Begley*, 182 Cal. App. 4th 1509, 1522

18  (2010) ("if the insurer denies coverage *and* refuses to provide a

19  defense, the insurer does not have a direct interest in the

20  litigation between the plaintiff and the insured to warrant

21  intervention") (citation and internal quotation marks omitted);

22  *accord Hyundai Motor America v. National Union Fire Insurance Co.*

23  *of Pittsburgh, PA*, No. SACV 08-00020-JVS (RNBx), 2010 WL 1468348,

24  at *3 (C.D. Cal. Oct. 26, 2010) (*citing Gray*, 182 Cal. App. 4th

25  at 1523-24 ("In contrast to the insurer that refuses to defend,

26       [9] Although Travelers argues, in the alternative, for
    permissive intervention under Rule 24(b)(1), it has no right to
27  it: permissive intervention is in the discretion of the court.
    Despite the alleged existence of common questions of law or fact,
28  again, the untimeliness of its motion defeats it.

11

1    an insurer providing a defense under a reservation of rights has

2    not lost its right to control the litigation, ... and therefore

3    retains a direct interest in the case") (internal quotation marks

4    and citation omitted)).[10]  Under either Rule 24(a) of the Federal

5    Rules of Civil Procedure, or CERCLA § 113(i), as Travelers has no

6    protectable interest in the litigation, it cannot make the

7    necessary showing to entitle it to intervene as of right.[11]

8         The authorities Travelers cites in support of its argument to

9    the contrary are inapposite.  Many of the cases concern

10   intervention under different regulatory schemes, or situations

11   where there were questions regarding the insured's liability; and

12   the unpublished CERCLA case does not have a fact pattern remotely

13   similar to this one.  None of the cases involves an insurer that

14   disclaimed coverage, as Travelers did in its letter to DTSC dated

15   July 25, 2018, where it stated, "DTSC cannot assert a claim under

16   the Travelers policies for this Site and has no right to

17   reimbursement as a judgment creditor or otherwise for the sums it

18   allegedly incurred . . . ."  *See* July 25, 2018, Letter from

19   Alexander E. Potente to Olivia W. Karlin, at 3, Potente Decl.,

20   Ex. B, ECF No. 197.

21

22

23

24       [10] It is for this reason that DTSC has offered to stipulate
     to Travelers' intervention if it provides a defense under a
25   reservation of rights.  Zuckerman Decl., ¶ 2.

26       [11] To the extent other tendered insurers accept the duty to
     defend and indemnify (even with a reservation of rights), such
27   insurers will be better positioned to intervene in the litigation
     on behalf of the insured than an insurer like Travelers which has
28   disclaimed liability.

                                    12

### C.  Travelers Cannot Show That Its Ability to Protect its Interests Will Be Impaired, or that Its Interests Are Not Adequately Represented

Because Travelers has no interest in the present litigation to start with, it cannot meet the remaining requirements of Rule 24(a).  It has no interest to be impaired by the disposition of this action, and any interests it has in a determination of coverage will be adequately represented in its recently-filed declaratory relief action.  Indeed, the issue Travelers raised in its brief – whether DTSC's claims against it are barred by the confidential settlement agreement with its insured – is better addressed in Travelers' separate declaratory relief action, as it is irrelevant to this CERCLA cost recovery action.  Not only is Travelers' intervention unnecessary for its protection, but it is premature, and affirmatively inadvisable – it will not lead to the orderly distribution of funds to pay to remediate the Site. To the extent other tendered insurers accept the duty to defend and indemnify (even with a reservation of rights), such insurers will be better positioned to intervene in the litigation on behalf of the insured than an insurer like Travelers which has disclaimed liability.  Because Travelers has no interest in this litigation, because it has affirmatively disclaimed any interest, the Court need not assess whether its interests will be impaired by the disposition of this action or are adequately represented in this case.  *See* Fed.R.Civ.P. 24(a)(3), (4).

### II.  TRAVELERS HAS NOT ESTABLISHED GOOD CAUSE TO SET ASIDE C&A PRODUCTS' DEFAULT.

Travelers does not have good cause for its motion to set aside the default under Rule 55(c) of the Federal Rules of Civil

13

1   Procedure.   Travelers' breach of contract argument is completely

2   misplaced:   C&A Products' joint and several liability here for

3   response costs is founded in CERCLA, not in the breach of

4   contract cause of action Travelers erroneously appears to suggest

5   DTSC is claiming.   *See* Mot. at 15.   As set forth below, even

6   assuming Travelers could assert defenses on its insured's behalf,

7   C&A Products has no viable defense to liability it could have

8   asserted under CERCLA, meaning that even if Travelers were to

9   intervene to litigate the matter on the merits, its intervention

10   would be futile – the outcome would be the same.   In such a case,

11   the motion should be denied.   *See, e.g., U.S. v. Aguilar*, 782

12   F.3d 1101, 1106-07 (9th Cir. 2015) (if "the defendant presents no

13   meritorious defense, then nothing but pointless delay can result

14   from reopening the judgment") (citation and internal quotation

15   marks omitted); accord, e.g., *Haw. Carpenters' Trust Funds v.*

16   *Stone*, 794 F.2d 508, 513 (9th Cir. 1986).

17   Moreover, vacating the default would prejudice DTSC and delay

18   the complete resolution of the case.   Because the three-factor

19   standard for setting aside a default is disjunctive, even though

20   one of the factors is not present here (Travelers was not

21   responsible for C&A Products' default), the Court may and should

22   deny the motion to set aside the default because of the presence

23   of these two factors alone.   *E.g., Mesle*, 615 F.3d at 1092.

24   **A.   DTSC Has Established Its Prima Facie Case Against C&A**
    **Products Under CERCLA, and C&A Products Has No Viable**
25   **Defense.**

26   Congress enacted CERCLA for two primary purposes: (1) to

27   ensure that hazardous substances released to the environment are

28   promptly and properly cleaned up; and (2) to ensure cleanup costs

14

1    are borne by those parties responsible for the releases rather

2    than by the public.  *Asarco LLC v. Atlantic Richfield Co.*, 866

3    F.3d 1108, 1115 (9th Cir. 2017).  DTSC undertook a response

4    action at the Site and filed this lawsuit to recover its expenses

5    from the defendants, who are liable parties pursuant to CERCLA

6    section 107, and, as applicable here, their historical insurers.

7        To establish a defendant's liability under CERCLA section

8    107, a plaintiff must prove the following elements: "(1) the site

9    is a 'facility;' (2) a 'release' or 'threatened release' of a

10   hazardous substance occurred; (3) the government incurred costs

11   in responding to the release or threatened release; and (4) the

12   defendant is a liable party."  *United States v. Chapman,* 146 F.3d

13   1166, 1169 (9th Cir. 1998).  The fourth element is met by

14   establishing that a defendant falls into one of the categories of

15   "persons" set forth in CERCLA section 107(a), which includes

16   being a past owner of the facility at the time of disposal of

17   hazardous substances.  *Id.*

18       Defendants are jointly and severally liable under CERCLA for

19   DTSC's response costs incurred, and future costs to be incurred,

20   at the Site.  *United States v. Hunter*, 70 F.Supp.2d 1100, 1106

21   (C.D. Cal. 1999).  CERCLA imposes strict liability without regard

22   to the party's fault or state of mind.  *Carson Harbor Village,*

23   *Ltd. v. Unocal Corp.*, 270 F.3d 863, 870 (9th Cir. 2001); *3550*

24   *Stevens Creek Associates v. Barclays Bank*, 915 F.2d 1355, 1357

25   (9th Cir. 1990).

26       **1.  The Site is a "Facility."**

27       The first element of CERCLA section 107(a) liability requires

28   that the Site be a "facility."  CERCLA defines "facility" as "any

                                    15

site or area where a hazardous substance has been deposited,
stored, disposed of, or placed or otherwise come to be located .
. . .” 42 U.S.C. § 9601(9).  *See also 3550 Stevens Creek Assoc.*,
915 F.2d at 1360 n.10 (term “facility” has been broadly construed
by the courts); *Uniroyal Chemical Co., Inc. v. Deltech Corp.,* 160
F.3d 238, 245 (5th Cir. 1998) (“facility is defined in the
broadest possible terms, encompassing far more than traditional
waste sites”).  Investigations conducted at the Site showed that
the soil and groundwater at the Site were contaminated with
arsenic, chromium, and copper.  *See* Declaration of McKinley
Lewis, Jr. (“Lewis Decl.”), ¶ 11, ECF No. 189.  These
contaminants are designated hazardous substances under CERCLA
section 101(14) and 40 C.F.R., Part 302.4 (designation of CERCLA
hazardous substances).  The Site is a facility as defined in
CERCLA section 101(9), because there is undisputed evidence that
hazardous substances have come to be located at the Site.

### 2.   A Release or Threatened Release of Hazardous Substances Occurred at the Site.

The second element of liability under CERCLA section 107(a)
is that there has been a release or threatened release of
hazardous substances from the facility.  The term “release” means
“any spilling, leaking, pumping, pouring, emitting, emptying,
discharging, injecting, escaping, leaching, dumping, or disposing
into the environment . . . .”  42 U.S.C. § 9601(22).
“Environment” is defined broadly to include “surface water,
ground water, drinking water supply, land surface or subsurface
strata, or ambient air . . . .”  42 U.S.C. § 9601(8).  These
expansive definitions, taken together, provide that a release is

16

1   established whenever hazardous substances are present in the

2   soil.  *United States v. Carolina Transformer Co.*, 739 F.Supp.

3   1030, 1036 (E.D.N.C. 1989), *aff'd.*, 978 F.2d 832 (4th Cir. 1992)

4   (release defined broadly to encompass the entire universe of ways

5   in which hazardous substances may come to exist in the

6   environment). Here, during wood preserving operations, hazardous

7   substances were released at the Site.  *See* Lewis Decl., ¶¶ 8-10 &

8   Exs. B-H, ECF No. 189; FAC, ¶ 12, 16-19, ECF No. 77.  Again,

9   there is indisputable evidence that there has been a release or

10  threatened release of hazardous substances at the Site.

11          **3.   DTSC Incurred Costs in Response to the Releases**
                 **and Threatened Releases at the Site.**
12

13      The third element of CERCLA liability is that DTSC incurred

14  costs in response to the release of hazardous substances at the

15  Site.  "Response" is broadly defined as "remove, removal, remedy

16  and remedial action."  42 U.S.C. § 9601(25).  CERCLA defines

17  these terms to include the cleanup or removal of released

18  hazardous substances from the environment, actions taken in the

19  event of the threat of release of hazardous substances, actions

20  to monitor, assess, and evaluate the release or threat of release

21  of hazardous substances, the disposal of removed material, and

22  actions consistent with a permanent remedy.  42 U.S.C. §

23  9601(23), (24).

24      CERCLA authorizes the recovery of "all costs of removal or

25  remedial action incurred by . . . a State . . . *not inconsistent*

26  *with the national contingency plan*."  42 U.S.C. § 9607(a)(4)(A)

27  (emphasis added).  Recoverable "response costs" have been held to

28  include oversight costs incurred by a government agency in an

                                    17

1  effort to ensure that a site is being adequately investigated and

2  remediated by responsible parties.  *State of Cal. Dept. of Toxic*

3  *Substances Control v. Snydergeneral Corp.*, 876 F.Supp. 222, 224-

4  25 (E.D. Cal. 1994); *State of California ex. rel. Cal. Dept. of*

5  *Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 673

6  (9th Cir. 2004).  DTSC is also entitled to recover attorneys'

7  fees as part of its response costs expended for the enforcement

8  of this matter, as well as indirect costs, or overhead.  *United*

9  *States v. Chapman,* 146 F.3d 1166, 1175 (9th Cir. 1988); *Neville*

10  *Chem. Co.*, 358 F.3d at 673.  However, it is the fact of the

11  response costs, not the amount, which constitutes an element of

12  liability under CERCLA.  *Chapman*, 146 F.3d at 1169.  Where the

13  government shows "some connection" between the release at the

14  site and the incurrence of response costs, those costs are

15  recoverable.  *Louisiana-Pacific Corp. v. Beazer Materials &*

16  *Services,* 811 F.Supp. 1421, 1430 (E.D. Cal. 1993).

17      There is an abundance of uncontestable evidence, submitted in

18  support of DTSC's motions to approve the consent decrees, its

19  motion for partial summary judgment, and its motion for default

20  judgment (currently taken off calendar), that DTSC has incurred

21  costs in response to the releases of hazardous substances at the

22  Site and related to its efforts to clean up the Site.  *See* ECF

23  Nos. 137-2, 144, 158, 161, 178, and 186-90; Lewis Decl., ¶ 18 and

24  accompanying exhibits, ECF No. 189.  DTSC has incurred response

25  costs related to its efforts to repair and restart the

26  groundwater extraction and treatment system, completion of a

27  removal investigation for site soils, preparation and

28  implementation of the Removal Action Workplan, groundwater

18

1  monitoring, and monitoring the condition of the asphalt cap.

2  *Ibid.*  Indeed, the Court has entered three consent decrees

3  acknowledging DTSC's having incurred these necessary response

4  costs.  ECF Nos. 141, 150, 182.

5      Once DTSC establishes a prima facie case that its response

6  costs were incurred in connection with the release or threatened

7  release of hazardous substances from a site, as it has done here,

8  the costs are presumed consistent with the NCP, and the burden

9  shifts to the defendants to prove otherwise.  *Chapman*, 146 F.3d

10  at 1170-71.  Pursuant to Section 113(j) of CERCLA and established

11  Ninth Circuit precedent, defendants have the burden of proving

12  that DTSC's choice of a particular response action is "arbitrary

13  and capricious" based on the administrative record to maintain an

14  assertion that the action was inconsistent with the NCP.  42

15  U.S.C. § 9613(j); *Chapman*, 146 F.3d at 1170; *United States v.*

16  *W.R. Grace & Co.*, 429 F. 3d 1224 (9th Cir. 2005).  *See also*

17  *California Dept. of Toxic Substances Control v. Neville Chem.*

18  *Co.*, 358 F. 3d 661, 673 (9th Cir. 2004) (emphasizing that

19  opposing party must prove that the government acted "arbitrarily

20  and capriciously in choosing a particular response action")

21  (emphasis in original).  The arbitrary and capricious standard is

22  justified "because determining the appropriate removal and

23  remedial action involves specialized knowledge and expertise,

24  [and therefore] the choice of a particular cleanup method is a

25  matter within the discretion of the [government]."  *Washington*

26  *State Dept. of Transp. V. Washington Natural Gas Co.*, 59 F.3d

27  793, 798-99 (*quoting United States v. Hardage*, 982 F.2d 1436,

28  1442 (10th Cir. 1992) (whether response costs were necessary and

19

"not inconsistent" with the NCP is not an element of the plaintiff's prima facie case).

As discussed further below in Section II.A(5), Travelers claims it has a meritorious defense by asserting that the response costs were not necessary and were inconsistent with the NCP.  However, it offers no specific facts or evidence to contest the ample evidence provided by DTSC.

> **4.  C&A Products Was an Owner or Operator or Both of the Site at the Time of Disposal of Hazardous Substances at the Site, and Thus Is a Responsible Party Under CERCLA.**

The final element of liability under CERCLA is that C&A Products falls within one of the four classes of responsible parties in CERCLA.  Under CERCLA section 107(a)(2), "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of . . ." is a liable party.  42 U.S.C. § 9607(a)(2).

C&A Products' ownership of the Site is through its predecessor Wickes.  Wickes bought the assets of PWP, including the Site, on or about September 12, 1979, and operated at the Site thereafter as Wickes Companies, Inc. until 1982, when the facility closed.  FAC ¶ 16.  Wickes changed its name to Collins & Aikman Group, Inc., and later merged into Collins & Aikman Products Co.  FAC, ¶ 15.  Collins & Aikman Products Co. owned the Site until 1997.  *Ibid.*  C&A Products was formed in 2007 from Collins & Aikman Products Co.  *Ibid.*

As set forth above, hazardous substances, including arsenic, chromium, and copper, were used in wood preserving operations at the Site, and were released into the environment at and from the

Site, from the beginning of operations in 1972.  FAC, ¶¶ 12, 17,

19.  These spills of hazardous substances were documented during

Wickes's and C&A Products' ownership and operation.[12]  FAC, ¶ 19.

Because there were disposals of hazardous substances during C&A

Products' ownership and operation of the facility, the final

element of liability under CERCLA has been satisfied.

### 5.  C&A Products Has No Defense to CERCLA Liability.

Strict liability applies to this right of recovery, except

for in three limited situations not present in this action.[13]

Further, a party found liable under Section 107 of CERCLA is

liable for "all costs of removal or remedial action incurred by .

. . a State . . . not inconsistent with the national contingency

plan."  42 U.S.C. § 9607(a)(4)(A).  As discussed above, once DTSC

establishes a prima facie case that its response costs were

incurred in connection with the release or threatened release of

---

[12] For example, on December 24, 1979, a large amount of green liquid flowed from a large tank located in the yard at the Site. Lewis Decl., ¶ 9, ECF No. 189.  The wind blew the liquid beyond a safety trough around the tank and onto the driveway of the company's building and flowed down the driveway onto A Street into the drainage ditch running along A Street.  Ibid.  This liquid flowed down the drainage ditch for approximately 150 yards where it entered the drainage ditch.  Ibid.  The Site manager admitted that the substance that had flowed into the drainage was a mixture of water, copper, chromium, and arsenic.  Ibid.  A second large spill occurred on November 7, 1980, when a well water supply valve malfunctioned, causing water to flow into a mixing tank that had about 1.5 feet of sludge in it.  Lewis Decl., ¶ 10, ECF No. 189.  The mixture overflowed onto the surrounding soil and travelled through a drainage ditch in front of the Site on A Street.  Ibid.  The spill travelled along the A Street ditch, both east and west of the Site entrance.  Ibid.

[13] CERCLA section 107(b) sets forth three statutory affirmative defenses to liability under section 107(a):  an act of God; an act of war; and "an act or omission of a third party" who is not related to the defendant by any sort of "contractual relationship."  These are the only cognizable defenses to liability under section 107(a), see Levin Metals Corp. v. Parr-Richmond Terminal Co., 799 F.2d 1312, 1316-17 (9th Cir. 1986), and none are relevant here.

21

1   hazardous substances from a site, the costs are presumed

2   consistent with the NCP, and the burden shifts to the defendant

3   to prove otherwise.  *Chapman,* 146 F.3d at 1170-1171.

4       Travelers has produced no evidence that DTSC's costs were

5   inconsistent with the NCP.  Whether all or only some of DTSC's

6   costs are "not inconsistent" with the NCP (and the other

7   arguments Travelers makes in support of its assertion that

8   Travelers has a meritorious defense to assert in favor of C&A

9   Products) is a factual issue affecting only the amount of

10  damages.  *Washington State Dept. of Transp. v. Washington Natural*

11  *Gas Co.*, 59 F.3d 793, 798 (9th Cir. 1995).  Travelers' arguments

12  on pages 14-17 of its Memorandum of Points and Authorities have

13  no relevance to the issue whether C&A Products has a valid

14  defense to liability.  It does not.

15      Moreover, Travelers' challenges to the appropriateness of

16  DTSC's response costs incurred do not go any further than

17  speculation.  Travelers has not submitted with its motion either

18  a proposed answer or affidavits or declarations alleging facts

19  that would support an assertion that any of the response costs

20  incurred were unnecessary or inconsistent with the NCP.  This

21  despite having all the information it needed to do so:  all of

22  DTSC's evidence relating to response costs has already been

23  submitted to the Court with the motion for default judgment on

24  August 21, 2019.  ECF Nos. 186-90.

25      If Travelers could allege facts that would provide a defense

26  if true, it has failed to do so.  Instead, without addressing any

27  specifics, Travelers merely *questions* whether DTSC has met its

28  burden to establish this aspect of its entitlement to relief.

1   *E.g.*, Motion at 16.  Because Travelers has presented no "specific

2   facts that would constitute a defense," much less any form of

3   evidence, it has not established the existence of a meritorious

4   defense that would justify setting aside the clerk's entry of

5   default under applicable Ninth Circuit law.[14]   *See Mesle*, 615 F.3d

6   at 1094.

7        **B.   DTSC Will Be Prejudiced by Setting Aside the Default.**

8        As set forth above in Section I.A, if Travelers' motion to

9   set aside the default is granted, DTSC will be prejudiced by

10  having had to prepare and file a motion and supporting

11  declarations that may turn out not to be necessary, and having to

12  litigate multiple times when Travelers can assert no meritorious

13  defense to liability.  C&A Products is liable under CERCLA:

14  Travelers has provided no evidence that C&A Products can assert a

15  defense under CERCLA to DTSC's claims, or any evidence that

16  DTSC's response costs are inconsistent with the NCP.  Having to

17  litigate such a motion, after having filed a motion for default

18  judgment (unaware that Travelers would wait a year to file its

19  motion to vacate the default), will not only cause DTSC to incur

20  unnecessary expense but prejudice DTSC by requiring it to

21  litigate in two different cases simultaneously, given Travelers'

22  recent filing of a declaratory relief action related to the issue

23  of coverage.

24

25        [14] By contrast, in the cases cited by Travelers, the moving
    party submitted evidence to establish the existence of a
26  meritorious defense.  E.g., *Mesle*, 615 F.3d at 1092 (sworn
    assertions submitted); *Key Bank of Maine v. Tablecloth Textile*
27  *Co. Corp.*, 74 F.3d 349, 354 (1st Cir. 1996) ("strong evidence"
    presented); *Choice Hotels Intern., Inc. v. Kusum*, 11CV1277BTM
28  (WMc), 2012 WL 1570844, at *4 (S.D. Cal. May 3, 2012).

23

1

**CONCLUSION**

2      For all the foregoing reasons, Travelers' motion to intervene

3  and to vacate the default of C&A Products should be denied.

4  Dated:   October 7, 2019            Respectfully Submitted,

5                                      XAVIER BECERRA
                                       Attorney General of California
6                                      EDWARD H. OCHOA
                                       Supervising Deputy Attorney
7                                      General
                                       OLIVIA W. KARLIN
8                                      Deputy Attorney General

9
                                       /S/   Laura J. Zuckerman
10

11                                     LAURA J. ZUCKERMAN
                                       Deputy Attorney General
12                                     *Attorneys for Plaintiffs*
                                       *California*
13                                     *Department of Toxic Substances*
                                       *Control and the Toxic*
14                                     *Substances Control Account*

15
   Docket No.:   LA2012602448
16 D53797949.docxocument No.:   53797949.docx

17

18

19

20

21

22

23

24

25

26

27

28