1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE EASTERN DISTRICT OF CALIFORNIA

3                  SACRAMENTO DIVISION

4                     ---oOo---

5  CALIFORNIA DEPARTMENT OF TOXIC) Case No 2:14-cv-00595-WBS-EFB
   SUBSTANCES CONTROL, and the  )
6  TOXIC SUBSTANCES CONTROL      )
   ACCOUNT,                      )
7                                )
                Plaintiffs, )
8                                )
   vs.                           )
9                                )
   JIM DOBBAS, INC., a           )
10 California corporation;       )
   CONTINENTAL RAIL, INC, a      )
11 Delaware corporation;         )
   DAVID VAN OVER, individually; )
12 PACIFIC WOOD PRESERVING, a    )
   dissolved California          )
13 corporation; WEST COAST WOOD  )
   PRESERVING, LLC, a Nevada     )
14 limited liability company; and)
   COLLINS & AIKMAN PRODUCTS, LLC)
15 a Delaware limited liability  )
   company,                      )
16                                )
                Defendants. )
17 _____)

18                     ---oOo---

19       BEFORE THE HONORABLE WILLIAM B. SHUBB, JUDGE OF
   THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF
20 CALIFORNIA, COURTROOM 5, AND ON OCTOBER 21, 2019, AT
   1:30 P.M.

21
        REPORTER'S TRANSCRIPT OF PROCEEDINGS
22
        THE TRAVELERS INDEMNITY COMPANY'S
23    MOTION TO INTERVENE AND TO VACATE DEFAULT

24                     ---oOo---

25 Reported By:  VICKI L. BRITT, CSR No. 13170, RPR

<pre>
 1                         APPEARANCES

 2                         ---oOo---

 3   For the Plaintiffs, California Department of Toxic
     Substances Control, et al.:
 4
             LAURA J. ZUCKERMAN, DEPUTY ATTORNEY GENERAL
 5           DEPARTMENT OF JUSTICE
             OFFICE OF THE ATTORNEY GENERAL
 6           Public Rights Division
             Environment Section
 7           1515 Clay Street, 20th Floor
             Oakland, CA 94612-1413
 8           (510)622-2174

 9   For the Proposed Intervenor, The Travelers Indemnity
     Company:
10
             ALEXANDER E. POTENTE, PARTNER
11           CLYDE & CO US LLP
             101 Second Street, Suite 2400
12           San Francisco, CA 94105
             (415)365-9800
13

14   ALSO PRESENT:

15   For the Proposed Intervenor, Allstate Insurance Company, as
     successor in interest to Northbrook Insurance Company:
16
             MARIA S. QUINTERO, PARTNER
17           HINSHAW & CULBERTSON, LLP
             One California Street, 18th Floor
18           San Francisco, CA 94111
             (415)362-6000
19

20

21

22

23

24

25
</pre>

1        MONDAY, OCTOBER 21, 2019, AT THE HOUR OF 1:30 P.M.

2                THE HONORABLE WILLIAM B. SHUBB

3                        ---oOo---

4        THE CLERK:  Calling civil case 14-0595, California

5   Department of Toxic Substances Control, et al. v. Jim

6   Dobbas, Inc., et al.  Your Honor, this matter's on the

7   calendar for Travelers Indemnity Company's motion to

8   intervene and to vacate default.

9        MS. ZUCKERMAN:  Good morning, Your Honor.  Laura

10  Zuckerman on behalf of the Department Of Toxic Substances

11  Control and the Toxic Substances Control Account.

12       MR. POTENTE:  Good morning, Your Honor.  Alex

13  Potente for proposed intervener, Travelers Indemnity

14  Company.

15       THE COURT:  Why don't you both step up to the

16  microphones here?  Mr. Potente, I understand that your

17  client insures the defendant, but what grounds do you have

18  to intervene either as a matter of right or as a matter of

19  discretion?

20       MR. POTENTE:  The basis for our intervention

21  request, Your Honor, is that this is a canceled Delaware

22  corporation.  It has no employees.  It has no documents.

23  And in that circumstance, we've cited the four cases in

24  which defunct corporations require intervention by an

25  insurer to protect its interest and reassert arguments on

1    behalf of a defendant, substantive defense arguments, in an

2    environmental matter.

3            THE COURT:  Well, I think those cases usually

4    contemplate that the motion is made before the party has

5    defaulted.

6            MR. POTENTE:  Your Honor, we did not receive

7    notice of this lawsuit before the party had defaulted, so

8    that would not have been possible.

9            THE COURT:  The cases also presuppose that there's

10   coverage, and that's the reason you would want to intervene.

11   You take the position there is no coverage, so why should

12   you be permitted to intervene?

13           MR. POTENTE:  The cases allow carriers to

14   intervene when they contest coverage, and they characterize

15   it as reserving rights.  What we want to do --

16           THE COURT:  Which of the cases are those?

17           MR. POTENTE:  All four of them take that same

18   position, Your Honor, as to the cases that they've cited.

19           THE COURT:  Hold on.  Every insurance company in

20   the country denies coverage because they don't cover this.

21   Now, there's no nobody claiming that you cover this.  Nobody

22   asserted a claim that your client covers this accident.

23           MR. POTENTE:  Well, that's not true, Your Honor.

24   The DTSC wrote us a letter, and they said that you are an

25   insurer of Collins and -- or the predecessor of Collins &

1  Aikman Products, LLC.  And, normally, we would cover that, a

2  pollution type event under a general liability policy, but

3  for the fact that we paid a lot of money almost 20 years ago

4  to the predecessor of this entity to settle this type of

5  case.

6          THE COURT:  Why didn't you intervene timely?

7          MR. POTENTE:  Your Honor, by the time we got

8  notice of this, the default had already been entered.

9  Nothing has happened since the time that we received notice;

10 nothing.

11         THE COURT:  Well, what's happened is that the

12 plaintiff has assumed that your insurer is in default.

13 Isn't that between you and your insured?  If your insured

14 failed to notify you of this lawsuit, I'm sure that's a

15 violation of the insurance policy express terms.  If not, at

16 least it implied covenant of good faith and fair dealing.

17 Now, isn't that between you and the insured?

18         MR. POTENTE:  No, Your Honor.  And the reason for

19 that is the insured does not exist.  The insured is a

20 canceled Delaware corporation.  There is no insured.

21 There's been a receiver appointed, who allowed the default

22 to be taken, but other than that --

23         THE COURT:  Then that's between you and the

24 receiver.

25         MR. POTENTE:  The receiver has no obligation to

1  us.  That's at least DTSC's position.  They accepted service

2  of the complaint.

3           THE COURT:  What grounds -- let's say you can

4  intervene.  What grounds do you have to set-aside the

5  default?

6           MR. POTENTE:  Your Honor, we have challenged both

7  substantively on the basis of requiring the state to prove

8  that what they've done is consistent with the national

9  contingency plan.  We have a divisibility defense.

10          THE COURT:  No.  No.  I'm talking about setting

11 aside the default.  The receiver was served.  He did nothing

12 apparently.

13          MR. POTENTE:  Correct.

14          THE COURT:  You say you have no claim against him

15 for that.  I doubt that.  But there would be a defense if

16 the service was somehow defective or if there was some

17 excuse that the receiver may have had, a misunderstanding,

18 or whatever.  Those are the grounds to set-aside a default.

19 What are the grounds here?

20          MR. POTENTE:  Your Honor, the cases that we've

21 cited indicate that if it's timely -- in other words, if

22 there's a good reason why we acted when we did, and we think

23 we've laid out grounds that it was a good reason we acted

24 when we did.  Again, the default had already been entered.

25 Two, there's a meritorious defense.  We've articulated some

1   meritorious defenses.

2         THE COURT:  What's the defense?

3         MR. POTENTE:  So we have defenses both to

4   liability and damages, and either of those warrant vacation

5   of default.  And then, finally --

6         THE COURT:  I doubt that, but go ahead.  Just

7   because you have a good defense it doesn't excuse you not

8   responding to the complaint and come in later and say, oh, I

9   had a good defense.  I don't think that that's contemplated

10  as good cause.

11        MR. POTENTE:  That is what the cases say is good

12  cause, Your Honor.

13        THE COURT:  There's never any reason to respond

14  timely to a service of process if you always had good cause

15  because you had a good defense.  That's not the way I read

16  the rule, but go ahead.

17        MR. POTENTE:  If it's timely.  If there's a reason

18  for it, that's the timely requirement.  Two, if there is a

19  meritorious defense that you can allege, and, again, that

20  can apply to both liability or to damages, and if there's no

21  prejudice to the plaintiff.  And there's no prejudice to the

22  plaintiff here because, again, the plaintiff has done

23  nothing since it took the default.  There hasn't been

24  depositions that we've missed.  The only thing that it's

25  done is move for entry of default judgment.

1                   THE COURT:  So if I let you intervene you become

2       the party?

3                   MR. POTENTE:  Yes, correct.

4                   THE COURT:  Your insurance company becomes the

5       party.

6                   MR. POTENTE:  Travelers becomes a party.

7                   THE COURT:  Becomes the defendant.

8                   MR. POTENTE:  That's correct.

9                   THE COURT:  Doesn't the plaintiff -- okay.  Let's

10      find out what the plaintiff has to say here.

11                  MS. ZUCKERMAN:  Thank you, Your Honor.  Let me

12      just touch on a couple of points with respect to the two

13      motions.  First on the motion to intervene.  You are quite

14      correct, Your Honor, that Travelers does not have a

15      protectable interest under state law to warrant

16      intervention.  It's interest in this litigation is not

17      sufficiently direct under, as long established California

18      precedent, to warrant intervention.

19                  This is a federal case, and the Federal Rules of

20      Civil Procedure govern intervention, but the substantive law

21      of California related to insurance makes very clear that an

22      insurer who denies coverage does not have a direct interest

23      in litigation.

24                  And the cases that Travelers has cited all involve

25      insurers who have accepted coverage with a reservation of

1    rights.  That is not the position that we are in.  Travelers

2    has refused to provide -- has stated --

3           THE COURT:  What's the difference between

4    accepting insurance but reserving rights and denying

5    insurance?

6           MS. ZUCKERMAN:  They're treated differently in the

7    case law, Your Honor.  Travelers has asserted it has no duty

8    to indemnify.  It has filed a lawsuit against us and against

9    the receiver that is also before this Court.  This is not

10   the fact situation that the other cases contemplate.

11          Now, I will say DTSC's view is that there are

12   probably insurance companies that will have enough of an

13   interest to warrant intervention.  And if there is an

14   insurance company of the 10 or 11 that we've sent tenders to

15   that accepts coverage, with even a reservation of rights, we

16   will stipulate to their intervention.

17          We've told Travelers, and we will say again, we

18   believe this motion is premature.  It is not at all clear

19   that Travelers is the right insurance company to intervene

20   here and attempt to set-aside the default.

21          There may be other insurance companies who do have

22   protectable interests, and who are entitled to intervene,

23   and they would be in a better position to defend the

24   insured.

25          THE COURT:  So if you're taking the position that

1   you acknowledge Travelers does not cover this incident --

2   are you?

3          MS. ZUCKERMAN:  We are not, Your Honor.

4          THE COURT:  Are you still claiming that they cover

5   it?

6          MS. ZUCKERMAN:  We do not know the answer to that.

7   We are trying to get that information.  We are waiting to

8   hear from Travelers about its St. Paul insurance policy

9   that, to our knowledge, is not covered by a settlement

10  agreement.

11         And we did make a statement to the effect that we

12  are seeking coverage from historical insurers, but we don't

13  know which insurer or insurers we will pursue.  And in order

14  to do that, we need position letters from all of the

15  carriers with claims history and impairment information.

16  We're all in the process of trying to get this information.

17         THE COURT:  So you've sent the demand letters to

18  how many insurance companies?

19         MS. ZUCKERMAN:  It's either 10 or 11, Your Honor.

20         THE COURT:  So if I went along with -- let me just

21  go back to Mr. Potente.  We have 10 or 15 defendants in this

22  case, right?

23         MR. POTENTE:  Your Honor, there are primary

24  insurers.

25         THE COURT:  She said she sent out letters to how

1    many?

2             MR. POTENTE:  Several of those are access

3    carriers, Your Honor.  They don't have defense obligations.

4    There are three primary insurers.  They all have settlement

5    agreements with DTSC.  We're all similarly situated.  I

6    don't represent the other carriers.

7             But the issue here is we want to intervene, and we

8    are required to intervene to protect the interests of an

9    insured -- no question it's an insured -- against a default

10   judgment.  That once entered, they are -- they have said

11   they're going to pursue that.  They told us that in a letter

12   in July of last year.

13            THE COURT:  You're not protecting the insured;

14   you're protecting yourself?

15            MR. POTENTE:  Correct.  The insured does not

16   exist.  There is no insured.

17            THE COURT:  So you say you're required to

18   intervene for what purpose?  To help protect yourself?

19            MR. POTENTE:  To protect our interests.  The cases

20   say that.  We have to intervene to protect our interests.

21            THE COURT:  The cases say you have to protect

22   yourself.

23            MR. POTENTE:  Or risk entry of a default judgment

24   against us, and then we cannot attack the amount --

25            THE COURT:  There's no default judgment being

1    requested against you.  There's a default judgment being

2    requested against the insured and --

3              MR. POTENTE:  Absolutely correct.

4              THE COURT:  -- you're denying coverage.

5              MR. POTENTE:  But, Your Honor, the point is the

6    application of that settlement agreement is not a clear

7    question under California law.  It's not.  And we have had

8    this dispute with DTSC as part of our settlement

9    discussions, or correspondence, whatever you call it.  And

10   they took the position that under this case called

11   *Shapiro* -- it's a 1959 California Supreme Court case -- that

12   they have rights under the settlement agreement, and we

13   cannot cut off those rights.  We think we can.

14             THE COURT:  If I don't let you intervene here, and

15   I don't set-aside the default, you still have that other

16   action.  You can litigate exactly what you're talking about

17   right now in that other action.

18             MR. POTENTE:  No, we cannot.  We will be precluded

19   from challenging the determination that our insured, C&A

20   Products, LLC, or its successor, is liable and the amount of

21   that liability.  We cannot attack that judgment.  And that's

22   a problem for us because you can't collaterally attack a

23   judgment entered against your insured --

24             THE COURT:  You can't attack the judgment entered

25   against the insured, but you can certainly argue that you

1    don't have coverage.

2          MR. POTENTE:  Correct.  But we also have the right

3    to intervene, to protect our insured's interest, which is

4    our interest -- they're the same.  They're one in the same

5    here because the only interest the insured has is that of

6    its carrier because there is no insured.  And if we're not

7    allowed to intervene here, then they get to take a default

8    judgment against the insured, and they get to do it without

9    any opposition, and they get to enter an amount, and the

10   Court will approve it, subject to any proof they make,

11   without any opposition, and then we would fight of whether

12   or not there's coverage.

13         THE COURT:  Yes, that's what it's all about.

14         MR. POTENTE:  No.  But the amount and the actual

15   liability determination is not something we can challenge.

16         THE COURT:  But if there's no coverage, you don't

17   worry about the amount or the liability determination.

18         MR. POTENTE:  Well, we're entitled to challenge

19   both.

20         THE COURT:  If you were timely you might have

21   been.

22         MR. POTENTE:  Your Honor, under the law, we are --

23   she has not cited a case in which a court has denied a

24   vacation of default under these circumstances or anything

25   similar to it.

1              THE COURT:  I can think of a lot of cases outside

2      of the insurance context where somebody comes in after a

3      default has been entered but before the judgment has been

4      entered on the default and has been denied the request to

5      set-aside the default because they didn't show good cause.

6              MR. POTENTE:  But we didn't get notice, Your

7      Honor.  And we're ultimately going to be asked to pay.

8              THE COURT:  Your client got good notice.  Your

9      insured got good notice.

10             MR. POTENTE:  But let's be clear here.  So the

11     insured was hired by DTSC.  DTSC went in to appoint the

12     receiver.  They were paying the receiver's bills.  They were

13     controlling what the receiver did.  So to say that the

14     receiver didn't do something, that's on DTSC.

15             So to say that we are now responsible for that

16     liability and those damages if there's coverage, which is a

17     disputed issue in our separate coverage action, that denies

18     us due process --

19             THE COURT:  You're suggesting that the receiver

20     was the agent of the plaintiff?

21             MR. POTENTE:  The receiver was paid for by DTSC,

22     the plaintiff, yes, Your Honor.

23             THE COURT:  Who appointed the receiver?

24             MR. POTENTE:  The Court appointed the receiver.

25             THE COURT:  The Court.  Doesn't the receiver have

1   an independent fiduciary obligation?

2           MR. POTENTE:  The receiver allowed its default to

3   be taken.  I don't know Delaware law well enough to be able

4   to state what the receiver's obligations are.  But the

5   receiver did allow its default to be taken, and its bills

6   are paid for by DTSC, the plaintiff in this case.

7           THE COURT:  Well, that may be a little different

8   in my experience, so you may be right there.  I assume the

9   receiver had a fiduciary obligation to the defunct

10  corporation?

11          MS. ZUCKERMAN:  Your Honor --

12          THE COURT:  -- and its creditors.

13          MS. ZUCKERMAN:  -- I'm not aware of Delaware law

14  on that issue.  I do know that the order appointing the

15  receiver gave it the right but not the obligation to defend

16  in this action.  But we'd be happy to submit additional

17  briefing on that.

18          I just would like to touch on a couple of things

19  raised here.  Your Honor was correct that Travelers is not

20  representing or defending the interests of its insured but

21  it's own interest.  If, in fact, it were defending with a

22  reservation of rights, it would have a conflict of interest.

23  It would have to appoint independent counsel.

24          A case that they cited, the *Choice International*

25  case, is one in which there was a similar delay.  After the

1   insurance company heard about entry of default, it waited

2   over a year to file a motion to set aside the default

3   because it was waiting, as Travelers was, to see if a

4   default judgment motion would be filed.  And the Court had

5   held that that was prejudicial, and that, therefore, it

6   needed to be addressed.

7          THE COURT:  How is it prejudicial in this case?

8   He's correct that there are three factors to consider.  One

9   of them is prejudice to you if the Court were to grant the

10  motion.

11         MS. ZUCKERMAN:  That's right.  The three

12  factors -- the standard under Rule 55(c) is -- one of the

13  factors is culpable conduct.  We're not alleging culpable

14  conduct.  Two, prejudice to the opposing party.

15         THE COURT:  Well, you know, there is culpable

16  conduct on the part of the receiver.  You got this summons

17  and did nothing with it.

18         MS. ZUCKERMAN:  Well, the party that is moving to

19  set aside the default --

20         THE COURT:  There's not a party to this case.

21         MS. ZUCKERMAN:  True.  I meant the entity that is

22  moving to set aside.

23         THE COURT:  Is not a party to the case.

24         MS. ZUCKERMAN:  That is true.

25         THE COURT:  They want to intervene, and after they

1    intervene, they want to claim that they weren't culpable.

2    Well, the party that allowed the default to be taken was

3    culpable.

4           MS. ZUCKERMAN:  It is true that the typical

5    situation involves the actual defendant moving to set aside

6    its own default rather than a situation like this one.  But

7    in this case you asked about prejudice to the opposing

8    party.  If we had known a year ago that Travelers was

9    planning to move to intervene and to vacate the default, we

10   would not have spent all the time and attorneys' fees we did

11   on filing our default judgment motion, which has now been

12   taken off calendar and may never be heard.

13          But the most critical factor in the standard under

14   Rule 55(c) for setting aside a default, and, granted, the

15   Court would have to grant the motion to intervene to even

16   get to the issue of whether the default should be set aside,

17   the most critical factor is existence of a meritorious

18   defense because it would make no sense to have a whole trial

19   or summary judgment motion when a party has no defense to

20   liability.  And so there would be no reason to set aside the

21   default.  That is what we have here.

22          With respect to damages, it is possible that some

23   insurance company could allege facts or provide evidence

24   suggesting that the amount of damages DTSC is seeking to

25   recover is incorrect.  That is not something that Travelers

1   has done, but it is certainly possible.  But that's the

2   motion for default judgment sort of piece of this

3   proceeding.  Any entity that's granted the right to

4   intervene in the litigation can oppose the motion for

5   default judgment if it is ever put back on calendar.  That's

6   the damages piece if you will.  But CERCLA is a strict

7   liability statute, as you are well aware, and there are no

8   defenses to liability.

9          THE COURT:  No, but damages is a can of worms.  So

10  if they do intervene, I'm sure there's going to be a lot to

11  talk about in terms of not just damages but their share of

12  the damages.

13         MS. ZUCKERMAN:  That is true, although, again,

14  that is not a defense to liability.  That's a matter to be

15  dealt with between insurers.  A portion of it is made among

16  and between liable parties.  But that's why we filed all of

17  those declarations and evidence in connection with our

18  default judgment motion because it is not a rubber stamp,

19  and the Court does not just grant the default judgment

20  motion without a sufficient showing on our part.

21         But even if the Court were to grant the motion to

22  intervene, Travelers has provided no facts that suggest that

23  it has a defense to liability or even that the amount of

24  damages is incorrect.

25         THE COURT:  Anything else?

1          MR. POTENTE:  On that point, Your Honor, we're not

2    required to present evidence or even facts to set-aside a

3    default.  We just need to make an argument that if accepted

4    challenges what the state alleges.  And that argument can be

5    either for liability -- I mean, we've articulated two

6    reasons why liability does not attach here, and then, most

7    importantly, damages.  As you point out, damages are a can

8    of worms, and we are entitled to challenge and force the

9    state to prove, subject to cross-examination, their damage

10   claim.

11         THE COURT:  If I did grant your request to

12   intervene, do you think it would be fair to require you to

13   pay the plaintiff for time and attorneys' fees incurred in

14   making the motion for default judgment and relying upon the

15   determination of liability?

16         MR. POTENTE:  No, Your Honor.  And the reason for

17   that is because we were engaged in discussions with them as

18   recently --

19         THE COURT:  I think you just talked yourself out

20   of something.  Go ahead.

21         MR. POTENTE:  If the state were really interested

22   in avoiding those costs, they could have just asked us, are

23   you going to intervene if we move for a default judgment?

24   The state knew we were there and didn't do that.  And

25   there's no procedure in the code that shifts defense costs

1    at this stage.

2             THE COURT:  All right.  Thank you.

3             MR. POTENTE:  But, Your Honor, if that's the only

4    rationale --

5             THE COURT:  No, it's not the only rationale.

6             MS. ZUCKERMAN:  Your Honor, just two quick points.

7    One is the *TCI* case that they cited does say that on damages

8    they need to at least provide facts suggesting that the

9    amount sought to be recovered is not appropriate.  But then

10   our request is, regardless of how the Court rules, we would

11   request that the Court consider issuing some type of order

12   or directive to the other insurance companies asking them to

13   provide position statements, claims history --

14            THE COURT:  No.  That request is denied.

15            MS. ZUCKERMAN:  Okay.  Thank you, Your Honor.

16            THE COURT:  The motion's taken under submission.

17   Thank you.

18            (The proceedings were concluded at 1:55 p.m.)

19                         ---oOo---

20

21

22

23

24

25

```
 1                    REPORTER'S CERTIFICATE

 2                         ---oOo---

 3  STATE OF CALIFORNIA  )
                          )ss.
 4  COUNTY OF SACRAMENTO  )

 5          I, VICKI L. BRITT, do hereby certify that I was

 6  the official Court Reporter, and that I reported verbatim in

 7  shorthand writing the foregoing proceedings; that I

 8  thereafter caused my shorthand writing to be reduced to

 9  typewriting, and that pages 1 through 20, inclusive,

10  constitute a complete, true and correct record of said

11  proceedings:

12
                COURT:   United States District Court
13                       Eastern District of California

14              JUDGE:   THE HONORABLE WILLIAM B. SHUBB

15              CAUSE:   In re: California Department of
                         Toxic Substances Control, et al. v.
16                       Jim Dobbas, Inc., et al.
                         Case No. 2:14-cv-00595-WBS-EFB
17
                DATE:    Monday, October 21, 2019
18

19          IN WITNESS WHEREOF, I have subscribed this

20  certificate at Sacramento, California, on the 13th day of

21  November, 2019.

22

23
                            /s/Vicki L. Britt
24              _____
                VICKI L. BRITT, CSR NO. 13170, RPR
25
```