1  Xᴀᴠɪᴇʀ Bᴇᴄᴇʀʀᴀ
   Attorney General of California
2  EDWARD H. OCHOA
   Supervising Deputy Attorney General
3  OLIVIA W. KARLIN, State Bar No.
   150432
4  LAURA J. ZUCKERMAN (Counsel for
   service)
5  State Bar No. 161896
   Deputy Attorneys General
6  1515 Clay Street, 20th Floor
   Oakland, CA 94612
7  Telephone:  (510) 879-1299
   Fax:  (510) 622-2270
8  E-mail:  Laura.Zuckerman@doj.ca.gov

9  Tɪᴍᴏᴛʜʏ M. Tʜᴏʀɴᴛᴏɴ, Jʀ., State Bar
   No. 106413
10 GRAY-DUFFY, LLP
   15760 Ventura Blvd, 16th Fl.
11 Encino, CA 91436-3027
   Telephone:   (818) 907-4000
12 Fax:  (818) 783-4551
   E-mail:  tthornton@grayduffylaw.com
13
   *Attorneys for Plaintiffs California*
14 *Department of Toxic Substances*
   *Control and the Toxic Substances*
15 *Control Account*

16              IN THE UNITED STATES DISTRICT COURT

17           FOR THE EASTERN DISTRICT OF CALIFORNIA

18                      SACRAMENTO DIVISION

19 CALIFORNIA DEPARTMENT OF TOXIC      | 2:14-cv-00595-WBS-EFB
   SUBSTANCES CONTROL and the          |
20 TOXIC SUBSTANCES CONTROL            | PLAINTIFFS' MEMORANDUM OF
   ACCOUNT,                            | POINTS AND AUTHORITIES IN
21                                     | OPPOSITION TO ALLIANZ,
                          Plaintiffs,  | ALLSTATE, CENTURY, and
22                                     | CONTINENTAL'S MOTIONS TO
                    v.                 | INTERVENE AND TO VACATE
23                                     | DEFAULT
   JIM DOBBAS, INC., et al.,           |
24                                     | Date:   December 2, 2019
                          Defendants.  | Time:   1:30 p.m.
25                                     | Judge:  Hon. William Shubb
                                       | Place:  Courtroom 5
26 AND RELATED COUNTERCLAIMS AND       | Action Filed: March 3, 2014
   CROSS CLAIMS                        |
27
28

1

**TABLE OF CONTENTS**

2
**Page**

3
INTRODUCTION ...................................................... 1

FACTUAL BACKGROUND ................................................ 3

LEGAL STANDARD .................................................... 7

    I.   Motion to Intervene Under Rule 24 of the Federal
       Rules of Civil Procedure ........................... 7

    II.  Motion to Set Aside Default Under Rule 55(c) of the
       Federal Rules of Civil Procedure ................... 7

ARGUMENT .......................................................... 8

    I.   The Insurers Should Not Be Permitted to Intervene,
       Either as of Right or Permissively. ................ 8

       A.   Having Failed Either to Accept Coverage or
           Acknowledge Potential Coverage and Agree to
           Defend Their Insured Under a Reservation of
           Rights, the Insurers Have No Protectable
           Interests Sufficient to Permit Intervention
           as of Right. .................................. 12

       B.   The Insurers Cannot Show That Their Ability
           to Protect Their Interests Will Be Impaired,
           or that Their Interests Are Not Adequately
           Represented, as They Have No Such Interests. ... 13

       C.   The Insurers Do Not Meet the Test for
           Permissive Intervention ....................... 14

    II.  None of the Insurers Has Established Good Cause to
       Set Aside C&A Products' Default. .................... 15

       A.   DTSC Has Established Its Prima Facie Case
           Against C&A Products Under CERCLA, and C&A
           Products Has No Viable Defense. ................ 16

           1.   The Site is a "Facility." ................. 17

           2.   A Release or Threatened Release of
               Hazardous Substances Occurred at the
               Site. ..................................... 17

           3.   DTSC Incurred Costs in Response to the
               Releases and Threatened Releases at the
               Site. ..................................... 18

           4.   C&A Products Was an Owner or Operator or
               Both of the Site at the Time of Disposal
               of Hazardous Substances at the Site, and
               Thus Is a Responsible Party Under
               CERCLA. ................................... 21

           5.   C&A Products Has No Defense to CERCLA
               Liability. ................................ 23

i

**TABLE OF CONTENTS**
(continued)

**Page**

B.    DTSC Will Be Prejudiced by Setting Aside the
       Default. ...................................... 25

CONCLUSION .................................................... 25

ii

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*3550 Stevens Creek Associates v. Barclays Bank*
  915 F.2d 1355 (9th Cir. 1990).................................17

*Asarco LLC v. Atlantic Richfield Co.*
  866 F.3d 1108 (9th Cir. 2017).................................16

*California Department of Toxic Substances Control v. Commercial Realty Projects, Inc.*
  309 F.3d 1113 (9th Cir. 2002)..................................7

*Carson Harbor Village, Ltd. v. Unocal Corp.*
  270 F.3d 863 (9th Cir. 2001)..................................17

*Choice Hotels Intern., Inc. v. Kusum*
  11CV1277BTM (WMC), 2012 WL 1570844 (S.D. Cal. May 3, 2012)......................................................25

*Continental Vinyl Products Corp. v. Mead Corp*
  27 Cal. App. 3d 543 (1972)....................................9

*Fox Hollow of Turlock Owner's Ass'n v. Sinclair*
  No. 1:03-CV-5439, 2013 WL 1628260 (E.D. Cal. April 15, 2013).....................................................5

*Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*
  375 F.3d 922 (9th Cir. 2004)..................................8

*Freedom from Religion Found., Inc. v. Geithner*
  644 F.3d 836 (9th Cir. 2011).................................12

*Gray v. Begley*
  182 Cal. App. 4th 1509 (Cal. Ct. App. 2010).............10, 11

*Gray v. Zurich Ins. Co.*
  65 Cal.2d 263 (Cal. 1966).....................................6

*Haw. Carpenters' Trust Funds v. Stone*
  794 F.2d 508 (9th Cir. 1986).................................15

*Hinton v. Beck*
  176 Cal. App. 4th 1378 (Cal. Ct. App. 2009)...............9, 11

**TABLE OF AUTHORITIES**
(continued)

*In re First T.D. & Invest., Inc.*
  253 F.3d 520 (9th Cir. 2001)..................................5

*Key Bank of Maine v. Tablecloth Textile Co. Corp.*
  74 F.3d 349 (1st Cir. 1996)..............................24, 25

*Levin Metals Corp. v. Parr-Richmond Terminal Co.*
  799 F.2d 1312 (9th Cir. 1986)................................23

*Louisiana-Pacific Corp. v. Beazer Materials & Services*
  811 F.Supp. 1421 (E.D. Cal. 1993)...........................19

*Matthew v. Laudamiel*
  C.A. No. 5957-VCN, 2012 WL 605589 (Del. Ch. Feb. 21,
  2012).......................................................5

*Nabisco, Inc. v. Transport Indemnity Co.*
  143 Cal. App. 3d 831 (Cal. Ct. App. 1983)...................2

*Noya v. A.W. Coulter Trucking*
  143 Cal. App. 4th 838 (Cal. Ct. App. 2006).................11

*Olden v. Hagerstown Cash Register, Inc.*
  619 F.2d 271 (3rd Cir. 1980).................................9

*Parker v. Dean Transp., Inc.*
  No. CV 13-02621, 2013 WL 7083269 (C.D. Cal. Oct. 15,
  2013).......................................................4

*Reliance Ins. Co. v. Superior Court*
  84 Cal. App. 4th 383 (Cal. Ct. App. 2000)..................10

*State of Cal. Dept. of Toxic Substances Control v.
  Snydergeneral Corp.*
  876 F.Supp. 222 (E.D. Cal. 1994)...........................19

*State of California ex. rel. Cal. Dept. of Toxic
  Substances Control v. Neville Chem. Co.*
  358 F.3d 661 (9th Cir. 2004)............................19, 20

*Travelers Indem. Co. v. Dingwell*
  884 F.2d 629 (1st Cir. 1989).................................11

*U.S. v. Aguilar*
  782 F.3d 1101 (9th Cir. 2015)...............................15

iv

**TABLE OF AUTHORITIES**
(continued)

Page

*U.S. v. Signed Personal Check No. 730 of Yubran Mesle*
  615 F.3d 1085 (9th Cir. 2010).........................8, 16, 24

*Uniroyal Chemical Co., Inc. v. Deltech Corp.*
  160 F.3d 238 (5th Cir. 1998)..................................17

*United States v. Carolina Transformer Co.*
  739 F.Supp. 1030 (E.D.N.C. 1989).............................18

*United States v. Chapman*
  146 F.3d 1166 (9th Cir. 1998)....................16, 19, 20, 23

*United States v. Hunter*
  70 F.Supp.2d 1100 (C.D. Cal. 1999)...........................16

*United States v. W.R. Grace & Co.*
  429 F. 3d 1224 (9th Cir. 2005)...............................20

*Washington State Dept. of Transp. V. Washington Natural*
  *Gas Co.*
  59 F.3d 793 (9th Cir. 1995)..............................21, 23

**STATUTES**

6 Delaware Code
  § 18-805....................................................4, 5

Comprehensive Environmental Response, Compensation, and
  Liability Act of 1980, 42 United States Code
  § 9601(8)....................................................18
  § 9601(9)....................................................17
  § 9601(14)...................................................17
  § 9601(22)...................................................18
  § 9601(23)...................................................19
  § 9601(24)...................................................19
  § 9601(25)...................................................18
  § 9607...................................................16, 23
  § 9607(a)............................................16, 17, 23
  § 9607(a)(2).............................................21, 22
  § 9607(a)(4)(A)..........................................18, 23
  § 9607(b)....................................................22
  § 9613(j)....................................................20

California Code of Civil Procedure
  § 387.....................................................9, 11

# TABLE OF AUTHORITIES
## (continued)

Page

California Corporations Code
   § 17708.01(a)..............................................4

COURT RULES

Federal Rules of Civil Procedure
   Rule 17(b)(3)..............................................4
   Rule 24.................................................7, 9
   Rule 24(a)...........................................2, 3, 7, 13
   Rule 24(a)(2).........................................7, 11
   Rule 24(a)(3)............................................14
   Rule 24(a)(4)............................................14
   Rule 24(b)..........................................3, 7, 14
   Rule 24(b)(1)............................................7
   Rule 55(b)..............................................6
   Rule 55(b)(2)...........................................6
   Rule 55(c)......................................3, 7, 8, 14
   Rule 60(b)...........................................7, 8

OTHER AUTHORITIES

40 Code of Federal Regulations
   §302.4..................................................17

**INTRODUCTION**

Plaintiffs California Department of Toxic Substances Control and the Toxic Substances Control Account (collectively, DTSC) have been forced to spend in excess of $3.4 million in unreimbursed taxpayer funds to clean up a hazardous waste site in Elmira, California, formerly the site of a wood treatment and preserving facility (the Site).  One of the parties originally responsible for the contamination under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 (CERCLA), is defendant Collins & Aikman Products, LLC (C&A Products), against whom a default was entered in March 2015, prior to the resolution of the issues against the other defendants.

Allianz Underwriters Insurance Company, Chicago Insurance Company, and Fireman's Fund Insurance Company (collectively, Allianz), Allstate Insurance Company (Allstate), and Century Indemnity Company (Century), successors in interest to several of C&A Products' historical insurers, and The Continental Insurance Company (Continental) (collectively, the "Insurers") now seek to intervene and to vacate C&A Products' default.[1]

Pursuant to Federal Rule of Civil Procedure (24)(a), a

---

[1] Allstate did not file a motion to intervene and vacate C&A Products' default.  Instead, it filed a joinder in "The Travelers Indemnity Company's Ex Parte Application for an Order to Continue Hearing on Plaintiffs' Motion for Default Judgment, or Alternatively, for an Order Shortening Time for Hearing on Travelers' Proposed Motion to Intervene and to Vacate Default," Docket Nos. 218, 218-1.  Because Allstate's joinder was set for hearing on the same date as Travelers' Motion to Intervene and Vacate Default (which the Court denied), the title of the document may have been in error.  In the interests of caution, DTSC treats Allstate's joinder as a joinder in the arguments of the insurers filing motions to intervene and to vacate C&A Products' default.

1

1  litigant may move to intervene in an action, but only under

2  certain conditions.  First, the critical requirement for a motion

3  to intervene under Rule 24(a) is that the party seeking to

4  intervene must have an interest to protect.  Here, none of the

5  Insurers has a protectable interest in this matter.  Century

6  asserts that it has been released from claims that DTSC asserts

7  against C&A Products in this lawsuit.  Docket No. 217-1

8  (Declaration of Natalie Jacobs), ¶ 5.  Allianz reserves all of

9  its rights, including the right to deny coverage entirely.[2]

10 Neither Allstate nor Continental has taken a position on

11 coverage, and thus neither company has identified a protectable

12 interest.

13     Second, under Rule 24(a), the Insurers must show that

14 disposition of this action may, as a practical matter, impair

15 their respective abilities to protect their interests.  Having no

16 protectable interests at this point, they cannot meet this

17 requirement. Denying the Insurers' premature motions to intervene

18 would not materially impair their abilities to protect any

19 _____

20     [2] Unlike Century, which insured C&A Products as a primary
insurer, Allianz insured C&A Products as an excess insurer. *See*

21 Declaration of Laura J. Zuckerman in Support of Plaintiffs' MPA
in Opp. To Allianz, Allstate, Century, and Continental's Motions

22 to Intervene and to Vacate Default (Zuckerman Decl.), ¶ 2 and Ex.
A.  Allstate, too, as successor in interest to one of C&A

23 Products' historical insurers, Northbrook Excess and Surplus
Insurance Company (formerly known as Northbrook Insurance

24 Company), issued excess level policies of insurance to C&A
Products' predecessors.  Notice of Joinder, Docket No. 218, at 2.

25 Given these facts, even if Allianz or Allstate acknowledged
coverage, they would not have a protectable interest at this

26 point to justify intervention. "Generally, an *excess* insurer has
no duty to participate in the insured's defense or contribute to

27 a settlement on its behalf until primary coverages are
exhausted." *Nabisco, Inc.* v. *Transport Indemnity Co.*, 143 Cal.

28 App. 3d 831, 836 (Cal. Ct. App. 1983) (emphasis added) (citations
omitted).

2

interests they may ultimately have, for two reasons: first, if a default judgment is entered, the Insurers can move to set it aside on a showing of good cause; and, second, if DTSC files a direct action against one or more of the Insurers, they can assert all their coverage defenses in that action at that time.

Third, the Insurers cannot show that the existing parties do not adequately represent their interests, because none of them has a protectable interest at this stage.  Because the Insurers cannot make the necessary showing under Rule 24(a) (or under the permissive intervention standard of Rule 24(b)), their motions to intervene should be denied.

In addition, the Insurers have not shown "good cause" for the Court to vacate C&A Products' default, as required by Rule 55(c) of the Federal Rules of Civil Procedure.  Their motions will cause prejudice to DTSC, and will result in DTSC's having incurred significant unnecessary costs.  Most critically, granting the Insurers' motions would be futile, and a waste of judicial resources, as the Insurers cannot show that C&A Products has any cognizable defense to CERCLA liability, or that DTSC's response costs are inconsistent with the National Contingency Plan.  Accordingly, the Court should deny the Insurers' motions to intervene and to vacate the default.

**FACTUAL BACKGROUND**

DTSC generally does not dispute the summary of facts in the Insurers' motions as it relates to the contamination at the Site, a former wood treatment and preserving facility in Elmira, California, located at the intersection of A Street and Holdener Road, and identified by Solano County Assessor's Parcel Numbers

3

142-010-130, 142-010-140, and 142-042-010 (the Site), and the dealings among third parties.  A more comprehensive summary of facts is set forth in DTSC's Memorandum of Points and Authorities in support of its recently-filed Motion for Default Judgment, Docket No. 185, and is incorporated herein by reference.  DTSC also sets forth below certain information not included in the Insurers' summaries.

As the Court is aware, DTSC filed this CERCLA action in 2014 to recover unreimbursed taxpayer funds which DTSC was forced to spend to respond to soil and groundwater contamination at the Site because all of the responsible parties were defunct, stopped doing the cleanup, or refused to do it in the first instance. C&A Products, a cancelled Delaware corporation and the insured of the Insurers, is one of these responsible parties.

In late 2014, DTSC successfully petitioned the Delaware Court of Chancery to appoint a receiver for C&A Products so that the company would have the capacity to be sued under Rule 17(b)(3) of the Federal Rules of Civil Procedure.[3]  Under Delaware law, a cancelled limited liability company can be sued if the Delaware Court of Chancery appoints a trustee or receiver for the company

_____

[3] Rule 17(b)(3) provides in pertinent part that capacity to be sued is determined "by the law of the state where the court is located . . . ."  Fed. R. Civ. P. 17(b)(3).  California law in turn provides that "[t]he law of the state or other jurisdiction under which a foreign limited liability company [such as C&A Products, LLC] is formed governs . . . [t]he organization of the limited liability company, its internal affairs, and the authority of its members and managers."  Cal. Corp. Code § 17708.01(a).  Therefore, Delaware law governs the capacity of a Delaware limited liability company to be sued in federal court in California.  *Parker v. Dean Transp., Inc.*, No. CV 13-02621, 2013 WL 7083269, *12 (C.D. Cal. Oct. 15, 2013), *abrogated on other grounds by Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014).

4

1  under 6 Delaware Code section 18-805, or nullifies the

2  certificate of cancellation.[4]  *Matthew v. Laudamiel*, C.A. No.

3  5957-VCN, 2012 WL 605589, *21 (Del. Ch. Feb. 21, 2012); *see also*

4  6 Del. C. § 18-805.

5      After the Delaware Court of Chancery granted DTSC's petition

6  and appointed Mr. Brian Rostocki as the receiver for C&A Products

7  on December 8, 2014, Docket No. 73-1, with the right (but not the

8  obligation) to defend it in this action, DTSC added C&A Products

9  to its complaint as a defendant.  Docket No. 77.  In March 2015,

10 when C&A Products failed to answer the First Amended Complaint,

11 DTSC obtained a clerk's entry of default.  Docket No. 129.  DTSC

12 did not, however, move for a default judgment against C&A

13 Products at that time, since such a motion is appropriate in a

14 multi-defendant case only after resolution of the case as to all

15 defendants.  *See In re First T.D. & Invest., Inc.*, 253 F.3d 520,

16 532 (9th Cir. 2001) (where a complaint alleges defendants are

17 jointly and severally liable, and one of them defaults, a default

18 judgment should not be entered against the defaulting defendant

19 until the matter has been adjudicated with respect to all

20 defendants).

21     Three years later, once DTSC had concluded its case against

22 the solvent defendants through the entry of consent judgments by

23 the Court, Docket Nos. 141, 150, 182, in June 2018, DTSC sent a

24 tender to Travelers and the Hartford Insurance Company, two of

25 C&A Products' historical insurers.  DTSC simultaneously continued

26 _____

27         [4] By contrast, under California law, a cancelled California
   limited liability company may not be sued.  *See Fox Hollow of*
   *Turlock Owner's Ass'n v. Sinclair*, No. 1:03-CV-5439, 2013 WL

28 1628260, *4 (E.D. Cal. April 15, 2013).

5

1  its research into the existence of insurance policies that could

2  cover the period during which C&A Products and its predecessors

3  were operational, making it worth the significant expenditure of

4  funds required for DTSC to file a motion for default judgment.[5]

5  Thereafter, DTSC located additional coverage and gave notice to

6  ten other insurers, including the Insurers, by letters dated

7  September 10, 2019.

8      DTSC is still in the process of determining which of C&A

9  Products' insurers, if any, to proceed against.[6]  DTSC offered to

10  stipulate to the intervention of (1) any insurer that accepts

11  coverage for C&A Products' liability without a reservation of

12  rights, or (2) any insurer who agrees that there is a potential

13  for coverage, as defined by *Gray v. Zurich Ins. Co.*, 65 Cal.2d

14  263 (Cal. 1966), so that (if a primary insurer) it has a duty to

15  defend C&A Products, subject to a reservation of rights.

16  Zuckerman Decl., ¶ 4 and Ex. B.  To date, none of the Insurers

17  has agreed. Zuckerman Decl., ¶ 4.

18

19  ───────────────

20      [5] Because the prayer for relief in the First Amended
    Complaint (FAC), Docket No. 77, did not set forth a sum certain
21  or a sum that could be made certain by computation, the clerk
    could not enter default judgment in the case.  Fed. R. Civ. P. 55
22  (b).  Default judgment in this case will have to be entered by
    the Court, and the Court may hold a "prove-up" hearing. See Fed.
    R. Civ. P. 55(b)(2).  DTSC has filed its motion for default
23  judgment, together with declarations relating to the response
    costs incurred.  Docket Nos. 184-190.
24      [6] DTSC has stated that it will seek enforcement of a default
    judgment, not against C&A Products, but "only as a means to
25  pursue a direct action against *the company's historic insurers*."
    Zuckerman Decl., ¶ 3; *see* Docket No. 197-4.  The investigation
26  into the old insurance policies is still ongoing; tenders have
    been sent to multiple insurance companies, not just to Allianz,
27  Allstate, Century, and Continental; and DTSC has not yet
    determined which insurers to proceed against if its default
28  judgment motion is granted.  Zuckerman Decl., ¶ 3.

6

**LEGAL STANDARD**

**I.    MOTION TO INTERVENE UNDER RULE 24 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, which provides for intervention as of right, a person is permitted to intervene in an action, "upon timely application," ". . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."[7]  These are the four requirements an applicant must meet to satisfy Rule 24(a).

Under the permissive intervention provision of Rule 24(b), on timely motion, the court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact.  Fed. R. Civ. P. 24(b)(1).

**II.   MOTION TO SET ASIDE DEFAULT UNDER RULE 55(C) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, "the court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule

---

[7] CERCLA has a nearly identical intervention provision:  the only difference is that under CERCLA, the burden to show that existing parties adequately represent the prospective intervenor's interests is allocated to the President or the State, as applicable, whereas under Rule 24(a)(2) the party seeking to intervene has the burden to show that existing parties do not adequately represent its interests.  *California Department of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1118-19 (9th Cir. 2002) (citing Fed. R. Civ. P. 24(a)(2) and CERCLA § 113(i), 42 U.S.C. § 9613(i)).

7

60(b)."  Many courts have held that the "good cause" standard applicable to Rule 55(c) is the same standard that applies to vacating a default judgment under Rule 60(b).  *E.g., Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925 (9th Cir. 2004); *U.S. v. Signed Personal Check No. 730 of Yubran Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).

In either case, three factors are relevant to the analysis: (1) whether the party seeking to set aside the default engaged in culpable conduct leading to the default, (2) whether no meritorious defense exists, and (3) whether reopening the [default] would prejudice the other party.  *Mesle*, 615 F.3d at 1092.  Because the standard is disjunctive, the district court may deny the motion to set aside the default if any one of these conditions exists.  *Ibid*.  Although a movant need not prove the defense by a preponderance of the evidence, it must present "specific facts that would constitute a defense."  *Id*. at 1094.

**ARGUMENT**

**I.   The Insurers Should Not Be Permitted to Intervene, Either as of Right or Permissively.**

The Insurers have moved to intervene.[8]  As indicated above, DTSC is willing to stipulate to intervention if the Insurers who do not agree to accept coverage acknowledge a potential for coverage and accept a duty to defend (if primary insurers), subject to a reservation of rights. If the Insurers continue to not accept any coverage, defense, or indemnification obligation as insurers for C&A Products, however, their motions should be

---

[8] Continental also joined in Travelers' motion to intervene, which was denied on October 22, 2019 (Docket No. 221).

8

1  denied, for the reasons set forth below and in the Court's Order

2  denying The Travelers Indemnity Company's Motion to Intervene and

3  Set Aside Default, Docket No. 221.  Unless the Insurers accept

4  coverage, or acknowledge a potential for coverage and state that

5  they will accept a duty to defend subject to a reservation of

6  rights, they cannot show a protectable interest to support either

7  intervention as of right or permissive intervention, and their

8  motions should be denied, for the reasons set forth below.

9      Not every interest in the outcome of litigation gives to its

10  possessor the right to intervene in a lawsuit.  *Continental Vinyl*

11  *Products Corp. v. Mead Corp*, 27 Cal. App. 3d 543, 549 (Cal. Ct.

12  App. 1972); *Hinton v. Beck,* 176 Cal. App. 4th 1378, 1383 (Cal.

13  Ct. App. 2009).[9]  The interest must be direct and not

14  consequential, and it must be an interest that is proper to be

15  determined in the action in which the intervention is sought.

16  *Continental Vinyl, supra,* 27 Cal. App. 3d at 549.  A person has a

17  direct interest justifying intervention in litigation where the

18  judgment in the action of itself adds to or detracts from his or

19  her legal rights without reference to rights and duties not

20  involved in the litigation.  *Ibid.*  A consequential interest, one

21  that is insufficient for intervention, occurs when the action in

22  which intervention is sought does not directly affect it,

23  _____

24      9 These California cases interpret California Code of Civil
Procedure section 387, not Rule 24 of the Federal Rules of Civil
Procedure.  Procedural issues such as timing and manner of

25  intervention are governed by Federal law. But the scope of the
intervenor's interest is determined by the law that creates those

26  rights, and with regard to this matter of insurance coverage,
those rights are determined by state law.  *See Olden v.*

27  *Hagerstown Cash Register, Inc.*, 619 F.2d 271, 273-74 (3rd Cir.
1980).

28

9

1   although the results of the action may indirectly benefit or harm

2   its owner.  *Id.* at 550.

3       When an action asserting a claim for property damage is

4   brought against an insured, and the insured tenders the defense

5   to the insurer, there are three possible positions the insurer

6   can take towards the request for coverage and a defense.[10]  *Gray*

7   *v. Begley,* 182 Cal. App. 4th at 1522 (Cal. Ct. App. 2010).  It

8   can (1) admit coverage and provide a defense; (2) deny coverage

9   and refuse to provide a defense; or (3) provide a defense under a

10  reservation of rights to contest coverage.  *Id.* at 1522.

11      Which of these three courses is taken by the insurer

12  determines if it has a protectable interest that would support a

13  right to intervene.  *Gray, supra,* 182 Cal. App. 4th at 1522-25.

14      If an insurer admits coverage, it clearly has a direct and

15  immediate interest in the outcome of the action against its

16  insured and may intervene.  *Id.; see also Reliance Ins. Co. v.*

17  *Superior Court,* 84 Cal. App. 4th 383 (Cal. Ct. App. 2000)

18  (permitting intervention where no denial of coverage or

19  reservation of rights).

20      If an insurer does not accept coverage or acknowledge

21  potential coverage and agree to defend its insured under a

22  reservation of rights (***as the Insurers have not done here***), it

23  _____

24      [10] As Allstate and Continental have taken no positions on
    coverage as of the date of this filing, but at the same time have
    neither acknowledged a potential for coverage nor agreed to
25  defend (with or without a reservation of rights), DTSC treats
    them for purposes of this motion as if they have denied coverage
26  and refused to defend their insured.  As moving parties, Allstate
    and Continental have the burden of proof, and until they
27  acknowledge coverage or agree to defend because there is a
    potential for coverage, they cannot show that they have
28  protectable interests.

does not have a direct interest in the litigation between the
plaintiff and the insured sufficient to warrant intervention.
*Gray v. Begley, supra,* 182 Cal. App. 4th at 1522 (citing *Hinton
v. Beck, supra,* 176 Cal. App. 4th at 1384); *Noya v. A.W. Coulter
Trucking*, 143 Cal. App. 4th 838, 842 (Cal. Ct. App. 2006) (while
insurer had "a direct and immediate interest in the lawsuit,
because it may ultimately be required to pay the judgment," it
was "in no position to complain about this circumstance when it
has consistently denied coverage and refused to provide [the
insured] with any defense."); *Order*, Docket No. 221, at 3 (by
disclaiming coverage and any duty to defend C&A Products,
"Travelers forfeited any direct interest in the action," and its
motion to intervene was denied).  By its denial, the insurer has
lost its right to control the litigation.  *Gray v. Begley, supra,*
182 Cal. App. 4th at 1522.[11]

Finally, if an insurer agrees to defend the insured under a
reservation of rights, it arguably has a protectable interest
that would support a right to intervene.  *Gray v. Begley, supra,*
182 Cal. App. 4th at 1523-24.  It has that right because the
reservation of rights will state that it may pay a judgment under
one set of facts, but not pay it under another set of facts
(e.g., if the insurer reserves rights under an expected and
intended injury or damage exclusion, it may pay the judgment if

---

[11] Some courts find the asserted interest when an insurer has
reserved rights is not a cognizable protected interest for
purposes of Rule 24(a)(2).  *E.g.,Travelers Indem. Co. v. Dingwell,*
884 F.2d 629, 638 (1st Cir. 1989). But California state cases
interpreting Code of Civil Procedure section 387 find there is a
cognizable protected interest where the insurer is defending
under reservation of rights.

11

1 the injury or damage is found by the jury not to be expected or

2 intended, but will not pay the judgment if the injury or damage

3 is found by the jury to have been expected or intended).  Of

4 course, if it "reserves its rights" because it will pay a

5 judgment under *no* set of facts, then the insurer is in effect

6 denying coverage, and it would have no significant protectable

7 interest to support a right to intervene.

8     **A.   Having Failed Either to Accept Coverage or**
       **Acknowledge Potential Coverage and Agree to Defend**
9      **Their Insured Under a Reservation of Rights, the**
       **Insurers Have No Protectable Interests Sufficient to**
10     **Permit Intervention as of Right.**

11     The Insurers have not issued reservation of rights letters,

12 accepted coverage, or acknowledged a potential for coverage and

13 agreed to defend C&A Products under a reservation of rights.  As

14 they have done none of these things, they have not shown that

15 they have protectable interests sufficient to permit intervention

16 as of right.[12]

17     As the moving parties, the Insurers have the burden of

18 showing that they have a significant protectable interest. *See*

19 *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841

20 (9th Cir. 2011).

21     The Insurers have not met their burden.  At best, the

22 Insurers' motions are premature, since none of the Insurers has

23 issued a formal coverage position. Each needs to take a formal

24 position of accepting coverage, or accepting coverage with a

25

26     [12] Century is in a slightly different position because it has
also asserted it has no liability under a confidential settlement
27 agreement, and further asserts that there was a dismissal with
prejudice of a prior lawsuit against it.  Docket No. 217 (Century
28 Mot.), at 6, 14.

                                    12

1   reservation of rights, and agreeing to defend under such

2   acceptance or reservation, to show a protectable interest.

3        The authorities cited by the Insurers in support of their

4   argument to the contrary are inapposite.  Many of the cases

5   concern intervention under different regulatory schemes, or

6   situations where there were questions regarding the insured's

7   liability; and the unpublished CERCLA case does not have a fact

8   pattern remotely similar to this one.  None of the cases involves

9   an insurer that disclaimed liability, as Century did, or had

10  failed to take a coverage position at all, as is the case for all

11  the Insurers.

12       The Insurers, as moving parties, must establish a significant

13  protected interest.  To do this, they must show that they have

14  accepted coverage, or accepted coverage under a reservation of

15  rights. That is to say, they must show that they will have to pay

16  the judgment if the insured is liable, or that they will have to

17  pay the judgment if the insured is liable and if the reserved

18  rights do not apply to such judgment. The Insurers have not made,

19  and cannot make, such a showing.

20       **B.   The Insurers Cannot Show That Their Ability to
          Protect Their Interests Will Be Impaired, or that**
21       **Their Interests Are Not Adequately Represented, as
          They Have No Such Interests.**
22

23       Because the Insurers have no protectable interests in the

24  present litigation to start with, they cannot meet the remaining

25  requirements of Rule 24(a) for intervention as of right.  The

26  insurers have no interests to be impaired by the disposition of

27  this action.  Not only is intervention unnecessary for protection

28  of their coverage defenses, but it is premature, and

                                13

affirmatively inadvisable – it will not lead to the orderly distribution of funds to pay to remediate the Site.  To the extent other tendered insurers accept the duty to defend and indemnify (even with a reservation of rights), such insurers will be better positioned to intervene in the litigation on behalf of the insured than insurers like Allianz, Allstate, Century, and Continental, who have not accepted coverage, or acknowledged a potential for coverage and agreed to defend C&A Products under a reservation of rights.  Because the Insurers have no protectable interests in this litigation, the Court need not assess whether their interests will be impaired by the disposition of this action or are adequately represented in this case.  *See* Fed. R. Civ. P. 24(a)(3),(4).

> **C. The Insurers Do Not Meet the Test for Permissive Intervention**

Intervention may be permitted in the court's discretion when the moving party's claim or defense and the main action involve a common question of law or fact.  *See* Fed. R. Civ. P. 24(b).  But the Insurers have identified no common questions of law or fact that would support intervention.  Thus, intervention by the Insurers here "would only serve to prolong the action."  Order, Docket No. 221, at 4 (court may consider the "'nature and extent of the intervenors' interest'" and "'whether intervention will prolong or unduly delay the litigation'" (quoting *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011) (per curiam))).

**II.  NONE OF THE INSURERS HAS ESTABLISHED GOOD CAUSE TO SET ASIDE C&A PRODUCTS' DEFAULT.**

Nor do the Insurers have good cause for their motion to set aside the default under Rule 55(c) of the Federal Rules of Civil Procedure.  Allianz's and Century's breach of contract argument is simply wrong:  C&A Products' joint and several liability for response costs here is founded in CERCLA, not in the breach of contract cause of action Alliance and Century erroneously suggest DTSC is claiming.  *See* Docket No. 222 (Allianz Mot.) at 23; Century Mot. at 19.  As set forth below, even assuming the Insurers could assert defenses on their insured's behalf, C&A Products has no viable defense to liability it could have asserted under CERCLA, meaning that even if the Insurers were to intervene to litigate the matter on the merits, their intervention would be futile – the outcome would be the same.  In such a case, the motion should be denied.  *See, e.g., U.S. v. Aguilar*, 782 F.3d 1101, 1106-07 (9th Cir. 2015) (if "the defendant presents no meritorious defense, then nothing but pointless delay can result from reopening the judgment") (citation and internal quotation marks omitted); *accord, e.g., Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986).

Moreover, vacating the default would prejudice DTSC and delay the complete resolution of the case.  Because the three-factor standard for setting aside a default is disjunctive, even though one of the factors is not present here (none of the Insurers was responsible for C&A Products' default), the Court may and should

1   deny the motion to set aside the default because of the presence

2   of the two other factors alone.   *E.g., Mesle*, 615 F.3d at 1092.

3       **A.   DTSC Has Established Its Prima Facie Case Against C&A**
           **Products Under CERCLA, and C&A Products Has No Viable**
4          **Defense.**

5       Congress enacted CERCLA for two primary purposes: (1) to

6   ensure that hazardous substances released to the environment are

7   promptly and properly cleaned up; and (2) to ensure cleanup costs

8   are borne by those parties responsible for the releases rather

9   than by the public.   *Asarco LLC v. Atlantic Richfield Co.*, 866

10  F.3d 1108, 1115 (9th Cir. 2017).   DTSC undertook a response

11  action at the Site and filed this lawsuit to recover its expenses

12  from the defendants, liable parties pursuant to CERCLA section

13  107, and, as applicable here, their historical insurers.

14      To establish a defendant's liability under CERCLA section

15  107, a plaintiff must prove the following elements: "(1) the site

16  is a 'facility;' (2) a 'release' or 'threatened release' of a

17  hazardous substance occurred; (3) the government incurred costs

18  in responding to the release or threatened release; and (4) the

19  defendant is a liable party."   *United States v. Chapman,* 146 F.3d

20  1166, 1169 (9th Cir. 1998).   The fourth element is met by

21  establishing that a defendant falls into one of the categories of

22  "persons" set forth in CERCLA section 107(a), which includes

23  being a past owner of the facility at the time of disposal of

24  hazardous substances.   *Id.*

25      Defendants are jointly and severally liable under CERCLA for

26  DTSC's response costs incurred, and future costs to be incurred,

27  at the Site.   *United States v. Hunter*, 70 F.Supp.2d 1100, 1106

28  (C.D. Cal. 1999).   CERCLA imposes strict liability without regard

                                    16

1  to the party's fault or state of mind.  *Carson Harbor Village,*

2  *Ltd. v. Unocal Corp.*, 270 F.3d 863, 870 (9th Cir. 2001); *3550*

3  *Stevens Creek Associates v. Barclays Bank*, 915 F.2d 1355, 1357

4  (9th Cir. 1990).

5        **1.  The Site is a "Facility."**

6      The first element of CERCLA section 107(a) liability requires

7  that the Site be a "facility."  CERCLA defines "facility" as "any

8  site or area where a hazardous substance has been deposited,

9  stored, disposed of, or placed or otherwise come to be located .

10  . . ." 42 U.S.C. § 9601(9); *see also 3550 Stevens Creek Assoc.*,

11  915 F.2d at 1360 n.10 (term "facility" has been broadly construed

12  by the courts); *Uniroyal Chemical Co., Inc. v. Deltech Corp.,* 160

13  F.3d 238, 245 (5th Cir. 1998) ("facility is defined in the

14  broadest possible terms, encompassing far more than traditional

15  waste sites").  Investigations conducted at the Site showed that

16  the soil and groundwater at the Site were contaminated with

17  arsenic, chromium, and copper.  *See* Declaration of McKinley

18  Lewis, Jr. (Lewis Decl.), ¶ 11, Docket No. 189.  These

19  contaminants are designated hazardous substances under CERCLA

20  section 101(14) and 40 C.F.R., Part 302.4 (designation of CERCLA

21  hazardous substances).  The Site is a facility as defined in

22  CERCLA section 101(9) because there is undisputed evidence that

23  hazardous substances have come to be located at the Site.

24        **2.  A Release or Threatened Release of Hazardous**
           **Substances Occurred at the Site.**

25

26      The second element of liability under CERCLA section 107(a)

27  is that there has been a release or threatened release of

28  hazardous substances from the facility.  The term "release" means

1   "any spilling, leaking, pumping, pouring, emitting, emptying,

2   discharging, injecting, escaping, leaching, dumping, or disposing

3   into the environment . . . ."  42 U.S.C. § 9601(22).

4   "Environment" is defined broadly to include "surface water,

5   ground water, drinking water supply, land surface or subsurface

6   strata, or ambient air . . . ."  42 U.S.C. § 9601(8).  These

7   expansive definitions, taken together, provide that a release is

8   established whenever hazardous substances are present in the

9   soil.  *United States v. Carolina Transformer Co.*, 739 F.Supp.

10  1030, 1036 (E.D.N.C. 1989), *aff'd.*, 978 F.2d 832 (4th Cir. 1992)

11  (release defined broadly to encompass the entire universe of ways

12  in which hazardous substances may come to exist in the

13  environment). Here, during wood preserving operations, hazardous

14  substances were released at the Site.  *See* Lewis Decl., ¶¶ 8-10 &

15  Exs. B-H, Docket No. 189; FAC, ¶ 12, 16-19, Docket No. 77.

16  Again, there is indisputable evidence that there has been a

17  release or threatened release of hazardous substances at the

18  Site.

19          **3.   DTSC Incurred Costs in Response to the Releases
                   and Threatened Releases at the Site.**

20

21      The third element of CERCLA liability is that DTSC incurred

22  costs in response to the release of hazardous substances at the

23  Site.  "Response" is broadly defined as "remove, removal, remedy

24  and remedial action."  42 U.S.C. § 9601(25).  CERCLA defines

25  these terms to include the cleanup or removal of released

26  hazardous substances from the environment, actions taken in the

27  event of the threat of release of hazardous substances, actions

28  to monitor, assess, and evaluate the release or threat of release

                                18

1  of hazardous substances, the disposal of removed material, and

2  actions consistent with a permanent remedy.  42 U.S.C. §

3  9601(23), (24).

4      CERCLA authorizes the recovery of "all costs of removal or

5  remedial action incurred by . . . a State . . . *not inconsistent*

6  *with the national contingency plan*."  42 U.S.C. § 9607(a)(4)(A)

7  (emphasis added).  Recoverable "response costs" have been held to

8  include oversight costs incurred by a government agency in an

9  effort to ensure that a site is being adequately investigated and

10  remediated by responsible parties.  *State of Cal. Dept. of Toxic*

11  *Substances Control v. Snydergeneral Corp.*, 876 F.Supp. 222, 224-

12  25 (E.D. Cal. 1994); *State of California ex. rel. Cal. Dept. of*

13  *Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 673

14  (9th Cir. 2004).  DTSC is also entitled to recover attorneys'

15  fees as part of its response costs expended for the enforcement

16  of this matter, as well as indirect costs, or overhead.  *United*

17  *States v. Chapman,* 146 F.3d 1166, 1175 (9th Cir. 1988); *Neville*

18  *Chem. Co.*, 358 F.3d at 673.  However, it is the fact of the

19  response costs, not the amount, which constitutes an element of

20  liability under CERCLA.  *Chapman*, 146 F.3d at 1169.  Where the

21  government shows "some connection" between the release at the

22  site and the incurrence of response costs, those costs are

23  recoverable.  *Louisiana-Pacific Corp. v. Beazer Materials &*

24  *Services,* 811 F.Supp. 1421, 1430 (E.D. Cal. 1993).

25      There is an abundance of uncontestable evidence, submitted in

26  support of DTSC's motions to approve the consent decrees, its

27  motion for partial summary judgment, and its motion for default

28  judgment (currently taken off calendar), that DTSC has incurred

19

1   costs in response to the releases of hazardous substances at the

2   Site and related to its efforts to clean up the Site.  *See* Docket

3   Nos. 137-2, 144, 158, 161, 178, and 186-90; Lewis Decl., ¶ 18 and

4   accompanying exhibits, Docket No. 189.  DTSC has incurred

5   response costs related to its efforts to repair and restart the

6   groundwater extraction and treatment system, completion of a

7   removal investigation for site soils, preparation and

8   implementation of the Removal Action Workplan, groundwater

9   monitoring, and monitoring the condition of the asphalt cap.

10  *Ibid.*  Indeed, the Court has entered three consent decrees

11  acknowledging DTSC's having incurred these necessary response

12  costs.  Docket Nos. 141, 150, 182.

13       Once DTSC establishes a prima facie case that its response

14  costs were incurred in connection with the release or threatened

15  release of hazardous substances from a site, as it has done here,

16  the costs are presumed consistent with the National Contingency

17  Plan (NCP), and the burden shifts to the defendants to prove

18  otherwise.  *Chapman*, 146 F.3d at 1170-71.  Pursuant to Section

19  113(j) of CERCLA and established Ninth Circuit precedent,

20  defendants have the burden of proving that DTSC's choice of a

21  particular response action is "arbitrary and capricious" based on

22  the administrative record to maintain an assertion that the

23  action was inconsistent with the NCP.  42 U.S.C. § 9613(j);

24  *Chapman*, 146 F.3d at 1170; *United States v. W.R. Grace & Co.*, 429

25  F. 3d 1224 (9th Cir. 2005); *see also California Dept. of Toxic*

26  *Substances Control v. Neville Chem. Co.*, 358 F. 3d 661, 673 (9th

27  Cir. 2004) (emphasizing that opposing party must prove that the

28  government acted "arbitrarily and capriciously in choosing a

20

1   particular response action") (emphasis in original).  The

2   arbitrary and capricious standard is justified "because

3   determining the appropriate removal and remedial action involves

4   specialized knowledge and expertise, [and therefore] the choice

5   of a particular cleanup method is a matter within the discretion

6   of the [government]."  *Washington State Dept. of Transp. V.*

7   *Washington Natural Gas Co.*, 59 F.3d 793, 798-99 (9th Cir. 1995)

8   (quoting *United States v. Hardage*, 982 F.2d 1436, 1442 (10th Cir.

9   1992) (whether response costs were necessary and "not

10  inconsistent" with the NCP is not an element of the plaintiff's

11  prima facie case)).

12      As discussed further below in Section II.A(5), two of the

13  Insurers claim they have a meritorious defense by asserting that

14  the response costs were not necessary and were inconsistent with

15  the NCP.  Century Mot. at 20; Docket No. 205 (Continental Mot.),

16  at 12.  However, they offer no specific facts or evidence to

17  rebut DTSC's showing.  Simply pointing out that DTSC has the

18  burden to establish its response costs, which DTSC does in its

19  motion for default judgment and supporting declarations, does not

20  suffice to establish a viable defense either to liability or

21  damages.

22          **4.   C&A Products Was an Owner or Operator or Both of
              the Site at the Time of Disposal of Hazardous**
23            **Substances at the Site, and Thus Is a Responsible
              Party Under CERCLA.**
24

25      The final element of liability under CERCLA is that C&A

26  Products falls within one of the four classes of responsible

27  parties in CERCLA.  Under CERCLA section 107(a)(2), "any person

28  who at the time of disposal of any hazardous substance owned or

                                    21

1  operated any facility at which such hazardous substances were

2  disposed of . . ." is a liable party.  42 U.S.C. § 9607(a)(2).

3      C&A Products' ownership of the Site is through its

4  predecessor Wickes.  Wickes bought the assets of Pacific Wood

5  Preserving, a dissolved California corporation, including the

6  Site, on or about September 12, 1979, and operated at the Site

7  thereafter as Wickes Companies, Inc. until 1982, when the

8  facility closed.  FAC, ¶ 16, Docket No. 77.  Wickes changed its

9  name to Collins & Aikman Group, Inc., and later merged into

10  Collins & Aikman Products Co.  FAC, ¶ 15, Docket No. 77.  Collins

11  & Aikman Products Co. owned the Site until 1997.  *Ibid.*  C&A

12  Products was formed in 2007 from Collins & Aikman Products Co.

13  *Ibid.*

14      As set forth above, hazardous substances, including arsenic,

15  chromium, and copper, were used in wood preserving operations at

16  the Site, and were released into the environment at and from the

17  Site, from the beginning of operations in 1972.  FAC, ¶¶ 12, 17,

18  19, Docket No. 77.  These spills of hazardous substances were

19  documented during Wickes's and C&A Products' ownership and

20  operation.[13]  FAC, ¶ 19, Docket No. 77.  Because there were

21      [13] For example, on December 24, 1979, a large amount of green
liquid flowed from a large tank located in the yard at the Site.
22  Lewis Decl., ¶ 9, Docket No. 189.  The wind blew the liquid
beyond a safety trough around the tank and onto the driveway of
23  the company's building and flowed down the driveway *onto A Street
into the drainage ditch running along A Street.*  Ibid.  This
24  liquid flowed down the drainage ditch for approximately 150 yards
where it entered the drainage ditch.  *Ibid.*  The Site manager
25  admitted that the substance that had flowed into the drainage was
a mixture of water, copper, chromium, and arsenic.  *Ibid.*  A
26  second large spill occurred on November 7, 1980, when a well
water supply valve malfunctioned, causing water to flow into a
27  mixing tank that had about 1.5 feet of sludge in it.  Lewis
Decl., ¶ 10, Docket No. 189.  The mixture overflowed onto the

28

1  disposals of hazardous substances during C&A Products' ownership

2  and operation of the facility, the final element of liability

3  under CERCLA has been satisfied.

4          **5.   C&A Products Has No Defense to CERCLA Liability.**

5          Strict liability applies to this right of recovery, except

6  for in three limited situations not present in this action.[14]

7  Further, a party found liable under Section 107 of CERCLA is

8  liable for "all costs of removal or remedial action incurred by .

9  . . a State . . . not inconsistent with the national contingency

10  plan."  42 U.S.C. § 9607(a)(4)(A).  As discussed above, once DTSC

11  establishes a prima facie case that its response costs were

12  incurred in connection with the release or threatened release of

13  hazardous substances from a site, the costs are presumed

14  consistent with the NCP, and the burden shifts to the defendant

15  to prove otherwise.  *Chapman,* 146 F.3d at 1170-1171.

16          The Insurers have produced no evidence that DTSC's costs were

17  inconsistent with the NCP.  Even if they had, whether some or all

18  of DTSC's costs are "not inconsistent" with the NCP (and the

19  other arguments the Insurers make in support of their assertion

20  that they have a meritorious defense to assert in favor of C&A

21  Products) is a factual issue affecting only the amount of

22  damages.  *Washington State Dept. of Transp.*, 59 F.3d at 798.

23  surrounding soil and travelled through a drainage ditch in front
    of the Site on A Street.  *Ibid.*  The spill travelled along the A

24  Street ditch, both east and west of the Site entrance.  *Ibid.*

         [14] CERCLA section 107(b) sets forth three statutory

25  affirmative defenses to liability under section 107(a): an act of
    God; an act of war; and "an act or omission of a third party" who

26  is not related to the defendant by any sort of "contractual
    relationship."  These are the only cognizable defenses to

27  liability under section 107(a), *see Levin Metals Corp. v. Parr-
    Richmond Terminal Co.*, 799 F.2d 1312, 1316-17 (9th Cir. 1986),

28  and none are relevant here.

                                  23

1  Thus, Century's and Continental's arguments, *see* Century Mot. at

2  20; Continental Mot. at 12, have no relevance to the issue

3  whether C&A Products has a valid defense to liability.  C&A

4  Products does not.

5      Moreover, the Insurers' challenges to the appropriateness of

6  DTSC's response costs incurred go no further than speculation.

7  The Insurers have not submitted with their motions proposed

8  answers, affidavits, or declarations alleging facts that would

9  support an assertion that any of the response costs incurred were

10  unnecessary or inconsistent with the NCP.  This despite having

11  all the information they needed to do so:  *all of DTSC's evidence*

12  *relating to response costs has already been submitted to the*

13  *Court with the motion for default judgment on August 21, 2019.*

14  Docket Nos. 186-90.

15      If the Insurers could allege facts that would provide a

16  defense if true, they have failed to do so.  Instead, without

17  addressing any specifics, the Insurers merely *question* whether

18  DTSC has met its burden to establish this aspect of its

19  entitlement to relief.  *E.g.*, Allianz Mot. at 23-25; Century Mot.

20  at 18-22.  Because the Insurers have presented no "specific facts

21  that would constitute a defense," much less any form of evidence,

22  they have not established the existence of a meritorious defense

23  that would justify setting aside the clerk's entry of default

24  under applicable Ninth Circuit law.[15]  *See Mesle*, 615 F.3d at

25  1094.

26      [15] By contrast, in the cases cited by the Insurers, the
    moving party submitted evidence to establish the existence of a

27  meritorious defense.  *E.g.*, *Mesle*, 615 F.3d at 1092 (sworn
    assertions submitted); *Key Bank of Maine v. Tablecloth Textile*

28

1        **B.   DTSC Will Be Prejudiced by Setting Aside the Default.**

2        If the Insurers' motions to set aside C&A Products' default

3   are granted, DTSC will be prejudiced by having had to prepare and

4   file a motion for default judgment and supporting declarations

5   that may turn out not to be necessary, and having to litigate

6   multiple times when the Insurers can assert no meritorious

7   defense to liability.  C&A Products is liable under CERCLA: the

8   Insurers have provided no evidence that C&A Products can assert a

9   defense under CERCLA to DTSC's claims, or any evidence that

10  DTSC's response costs are inconsistent with the NCP.  Having to

11  litigate these motions after having drafted and filed a motion

12  for default judgment will cause DTSC to incur unnecessary

13  expense.

14                            **CONCLUSION**

15       For all the foregoing reasons, the Insurers' motions to

16  intervene and to vacate the default of C&A Products should be

17  denied.

18

19

20

21

22

23

24

25

26

27  *Co. Corp.*, 74 F.3d 349, 354 (1st Cir. 1996) ("strong evidence"
    presented); *Choice Hotels Intern., Inc. v. Kusum*, 11CV1277BTM
28  (WMc), 2012 WL 1570844, at *4 (S.D. Cal. May 3, 2012).

                                  25

1

2

Dated:  November 18, 2019                Respectfully Submitted,

3                                              XAVIER BECERRA
                                             Attorney General of California
                                             EDWARD H. OCHOA
4                                              Supervising Deputy Attorney
                                             General
5                                              OLIVIA W. KARLIN
                                             Deputy Attorney General

6

7                                              /S/  *Laura J. Zuckerman*

8

9                                              LAURA J. ZUCKERMAN
                                             Deputy Attorney General
                                             *Attorneys for Plaintiffs*
10                                             *California Department of*
                                             *Toxic Substances Control and*
11                                             *the Toxic Substances Control*
                                             *Account*

12

13   Docket No.:  LA2012602448

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28