|  |  |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT, | No. 2:14-CV-00595 WBS EFB |
| Plaintiffs, | ORDER RE: MOTIONS TO INTERVENE AND TO VACATE DEFAULT |
| v. | |
| JIM DOBBAS, INC. a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company, | |
| Defendants. | |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

----oo0oo----

Plaintiffs Department of Toxic Substances Control and the Toxic Substances Control Account (collectively "DTSC") sought recovery of costs and interest incurred during the cleanup of a

1

wood preserving operation in Elmira, California against multiple defendants under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq. (First Am. Compl. ("FAC") at ¶ 19.) In 2015, DTSC obtained entry of default against a canceled Delaware corporation, defendant Collins & Aikman Products, LLC ("C&A Products") after it failed to respond to DTSC's First Amended Complaint. (Docket No. 129.) Presently before the court are motions to intervene and vacate C&A Products' default filed by The Continental Insurance Company ("Continental"), Century Indemnity Company ("Century"), and Allianz Underwriters Insurance Company, Chicago Insurance Company, and Fireman's Fund Insurance Company (collectively, "Allianz"), insurers of C&A Products. (Docket Nos. 205, 217, 222.)

This is not the first time an insurance company has moved to intervene and set aside default in this matter. The Travelers Insurance Company ("Travelers") previously attempted to do so (Docket No. 196), but this court denied the motion after finding that Travelers' refusal to defend C&A Products under a reservation of rights forfeited its interest in the litigation and it could not establish good cause to set aside C&A Products' default.[1] (Order Re: Mot. to Intervene and Set Aside Default at 3-4 (Docket No. 221).) The moving parties before the court now offer many of the same arguments Travelers did in its motion,

---

[1] Allstate Insurance Company filed a notice of joinder (Docket No. 218) to Travelers' motion to intervene and did not file a separate motion to intervene. (Docket No. 196.) Traveler's motion to intervene was denied on October 22, 2019. (Docket No. 221.) Accordingly, Allstate's joinder fails.

2

with some important differences. (Compare Docket Nos. 205, 217, 222, with Docket No. 196.) Each will be discussed in turn.

First, the court will consider Continental's motion. Continental's position is distinguishable from that of Travelers in that it did not become aware of this lawsuit until after C&A Products' default was entered. However, it is substantially indistinguishable in that Continental has neither admitted coverage nor agreed to defend C&A Products on a reservation of rights. DTSC offered to stipulate to Continental's intervention if it either (1) accepted coverage without a reservation of rights or (2) defended C&A Products with a reservation of rights. (Decl. of Laura Zuckerman ("Zuckerman Decl."), Ex. B (Docket No. 228).) This was the same stipulation DTSC offered to Travelers before its motion was heard. Just as in Travelers' case, Continental did not stipulate, although instead of affirmatively refusing the stipulation, it failed to respond to plaintiffs' offer. (Zuckerman Decl. ¶ 4.) Continental also does not advance any new argument to establish good cause to set aside C&A Products' default. (Compare Docket No. 205, with Docket No. 196.) Accordingly, Continental's motion will be denied.

Next, the court considers Century's motion. Century, too, offers the same arguments Travelers did in its motion to intervene and set aside default. (Compare Docket No. 217, with Docket No. 196.) Indeed, just like Travelers, Century disclaimed coverage of any claims arising from the DTSC litigation, citing a settlement agreement Century purportedly signed with C&A Products in 2000. (Century Mot. to Intervene at 6 (Docket No. 217).) Like Continental, Century failed to respond to plaintiffs'

proposed stipulation, and by implication refuses to offer a defense under a reservation of rights. (Zuckerman Decl. ¶ 4.) Because it has both disclaimed coverage and refused to defend C&A Products under a reservation of rights, Century's motion to intervene and set aside default will also be denied. Finally, the court will consider Allianz's motion. In California, "where the insured is unable to assert its rights, an insurer who seeks to intervene and protect its coverage defenses may provide an explicit reservation of rights to its client and allege that reservation of rights within its pleading to put the plaintiff on notice that the insurance company is reserving those rights and asserting coverage defenses." <u>Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.</u>, 136 Cal. App. 4th 212, 222 (3d Dist. 2006). Allianz expressly stated in its motion that it has "reserved all rights to decline coverage on any applicable ground and expressly ha[s] not waived or otherwise forfeited any direct interest in the instant action that would serve to defeat Allianz Intervenors' claim for intervention of right." (Allianz Mot. to Intervene at 11 (Docket No. 222).) Furthermore, unlike Century and Travelers, Allianz has not disclaimed coverage. Instead, it is purportedly "gathering information regarding coverage and or duties" in the present action.[2] (<u>Id.</u>)

However, Allianz was C&A Products' excess insurer. (Opp. to Mot. to Intervene and Vacate Default at 2 n.2 (Docket No. 227); <u>see also</u> Allianz Reply to Opp. to Mot. to Intervene at

---

[2] Like Continental and Century, Allianz failed to respond to DTSC's proposed stipulation to allow them to intervene. (Zuckerman Decl. ¶ 4.)

2 (Docket No. 230).) California law recognizes a distinction between primary and excess insurance coverage. "Primary coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to the liability . . . "excess" or "secondary" insurance is coverage whereby, under the terms of that policy, liability attaches only after a predetermined amount of primary coverage has been exhausted." Residence Mut. Ins. Co. v. Travelers Indem. Co. of Conn., 26 F. Supp. 3d 965, 972-73 (C.D. Cal. 2014) (quoting Am. Cas. Co. v. Gen. Star Indem. Co., 125 Cal. App. 4th 1510, 1521 (2d Dist. 2005) (emphasis omitted)).

Normally, the policy limits of the underlying primary policy must be exhausted before excess insurers have the "right or duty to participate in the defense" of the insured. Ticor Title Ins. Co. v. Employers Ins. of Wausau, 40 Cal. App. 4th 1699, 1707 (1st Dist. 1995) (citing Signal Companies, Inc. v. Harbor Ins. Co., 27 Cal. 3d 359, 365 (1980)). In some instances, excess insurers may assume the obligations of the primary insurer before exhaustion occurs. Id. at 1708-09 (finding excess insurer could defend when the primary insurer was insolvent or refused to defend). But in the environmental context, primary coverage cannot be exhausted "until a remediation plan is approved which clearly establishes that the costs of remediation will exceed the primary indemnity limits." Cty. of Santa Clara v. USF & G, 868 F. Supp. 274, 280 (N.D. Cal. 1994).

While DTSC vaguely seeks to recover cleanup costs from C&A Products' "historic insurers" (Docket No. 197-4), DTSC has yet to obtain judicial approval for C&A Products' portion of the

1  remediation plan[3] and failed to determine "which of C&A Products'
2  insurers, if any, to proceed against." (Opp. to Mot. to
3  Intervene and Vacate Default at 6 n.5.)  Consequently, because
4  DTSC has yet to determine which primary insurer, if any, will be
5  responsible for C&A Products' damages, the parties and the court
6  do not know what the "primary indemnity limits" are.  Absent this
7  information, the court cannot conclude that primary coverage is
8  exhausted and that excess insurers can properly intervene.  See
9  Cty. of Santa Clara, 868 F. Supp. at 280.  Accordingly, Allianz's
10 motion to intervene and set aside default will also be denied.
11           IT IS THEREFORE ORDERED that the motions to intervene
12 and vacate default filed Continental (Docket No. 205), Century
13 (Docket No. 217), and Allianz (Docket No. 222), be, and the same
14 thereby are, DENIED.

Dated:  December 3, 2019

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiffs did not include the amount they sought to recover in their First Amended Complaint, but have since asserted C&A Products owes them $3,219,449.85 in their motion for default judgment. (Mot. for Default J. ¶ 5(a) (Docket No. 184).) This court expresses no opinion as to the merit of that determination and may hold a "prove-up" hearing in the future.