```
 1                    IN THE UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF CALIFORNIA
 2                     BEFORE THE HONORABLE WILLIAM B. SHUBB

 3    CALIFORNIA DEPARTMENT OF
      TOXIC SUBSTANCES CONTROL and
 4    the TOXIC SUBSTANCES CONTROL
      ACCOUNT,
 5
                        Plaintiffs,
 6    vs.                                Sacramento, California
                                         No. 2:14-CV-00595
 7    JIM DOBBAS, INC., a California     Monday, December 2, 2019
      corporation; CONTINENTAL RAIL,     2:58 p.m.
 8    INC., a Delaware corporation;
      DAVID VAN OVER, individually;
 9    PACIFIC WOOD PRESERVING, LLC.,
      a Nevada limited liability
10    company; and COLLINS & AIKMAN
      PRODUCTS, LLC, a Delaware
11    limited liability company,

12                        Defendants.
      _____/
13

14                              --oOo--
                      REPORTER'S TRANSCRIPT OF PROCEEDINGS
15                          MOTIONS TO INTERVENE
                                --oOo--
16    APPEARANCES:

17    For the Plaintiffs:        OFFICE OF THE ATTORNEY GENERAL
                                 LAURA J. ZUCKERMAN
18                               Deputy Attorney General
                                 TIMOTHY THORNTON
19                               Deputy Attorney General
                                 1515 Clay Street, 20th Floor
20                               Oakland, CA  94612

21    (Appearances continued on page 2.)

22    Official Reporter:         KACY PARKER BARAJAS
                                 CSR No. 10915, RMR, CRR, CRC
23                               501 I Street
                                 Sacramento, CA  95814
24                               kbarajas.csr@gmail.com

25    Proceedings recorded by mechanical stenography.  Transcript
      produced by computer-aided transcription.
```

(Appearances continued on page 2.)

```
1    APPEARANCES (Continued):

2    For the Intervenors Century    WOOD SMITH HENNING & BERMAN LLP
     Indemnity Company,             THOMAS VANDENBURG
3    Allianz Underwriters           Attorney at Law
     Insurance Company,             10960 Wilshire Blvd., 18th Floor
4    Chicago Insurance Company,     Los Angeles, CA  90024
     Fireman's Fund Insurance
5    Company:

6    For the Intervenor             NICOLAIDES FINK THORPE
     Continental Insurance          MICHAELIDES SULLIVAN LLP
7    Company:                       RANDALL BERDAN
                                    Attorney at Law
8                                   101 Montgomery Street, Suite 2300
                                    San Francisco, CA  94104

9

10                                 --oOo--

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          SACRAMENTO, CALIFORNIA, MONDAY, DECEMBER 2, 2019, 2:58 PM

2                              --oOo--

3          THE CLERK:  Calling civil case 14-0595, California

4     Department of Toxic Substances Control, et al. versus Jim

5     Dobbas, Inc., et al.  Your Honor, this matter is on calendar

6     for Continental Insurance Company's motion to intervene and to

7     vacate default, Century Indemnity Company's motion to

8     intervene, Allianz Underwriters Insurance Company's motion to

9     intervene and to vacate default.

10         THE COURT:  Please state your appearances.

11         MR. VANDENBURG:  Good afternoon, your Honor.  Thomas

12    Vandenburg for Century Indemnity Company, for Allianz

13    Underwriters Insurance Company, for Chicago Insurance Company,

14    and Fireman's Fund Insurance Company.

15         MR. BERDAN:  Good afternoon, your Honor.  Randall

16    Berdan for the Continental Insurance Company.

17         MS. ZUCKERMAN:  Good afternoon, your Honor.  Laura

18    Zuckerman from the California Attorney General's Office on

19    behalf of the Department of Toxic Substances Control, and I

20    have with me my colleague Mr. Timothy Thornton who will be

21    assisting us on insurance issues as needed.

22         THE COURT:  All right.  Mr. Vandenburg, let's start

23    with you.  The Court has already denied Travelers' motion to

24    set aside the default and to intervene.  How are you or any of

25    your several clients in any different position?

1          MR. VANDENBURG:  Your Honor, we're in a very different

2     position for one important reason.  We did not receive notice

3     from DTSC about this lawsuit until after they filed their

4     application for default judgment.

5          There's four very important dates, your Honor.  The

6     default was entered by the clerk March 26th of 2015.  On

7     August 21st of 2019, DTSC filed its application for default

8     judgment.  On September 10th an entity called Arcina, which is

9     an agent of DTSC, gave notice to all my clients that they were

10    at issue in this case and that they were -- DTSC was seeking a

11    default judgment.

12         That hearing -- that default judgment was to be heard

13    on September 25th.  It was to be heard 15 days after my clients

14    were given notice.  The notice issue, your Honor, means that we

15    had no delay on bringing this matter before the Court.  We had

16    no delay in seeking intervention.  It puts us in a completely

17    different position, I would assert, your Honor, than

18    Travelers.

19         THE COURT:  On one prong it may because there are two

20    prongs to Travelers' problems.  First was that they let the

21    default be taken.  The other one was that they didn't accept

22    coverage or agree to defend on a reservation of rights.  They

23    denied coverage.

24         Now on that second prong, are you in any different

25    position than they were?

1          MR. VANDENBURG:  Your Honor, I think that what DTSC

2      has tried to do in this case is DTSC has tried to make us pay

3      an admission price for intervention, and the admission price

4      they want us to pay is to make a concession on coverage, and I

5      would contend, your Honor, that the case law does not support

6      that position.

7          DTSC has argued to the Judge -- argued to your

8      Honor.

9          THE COURT:  You can defend on a reservation of rights.

10         MR. VANDENBURG:  Your Honor, in this case I don't

11     think that that applies because there's nothing to defend.

12     The --

13         THE COURT:  Well, you want to set aside the default,

14     and then you want to defend it.

15         MR. VANDENBURG:  Right.  But we --

16         THE COURT:  But you're not going to defend it.  If I

17     set aside the default, you're not going to defend it.  You're

18     going to say, we don't have any coverage.

19         MR. VANDENBURG:  The coverage issues are going to be

20     decided by another judge, your Honor.

21         THE COURT:  No, they're not.

22         MR. VANDENBURG:  I'm asking to intervene solely to

23     address liability, which is divisibility that your Honor

24     addressed in the previous case, and damages.

25         THE COURT:  Were you here when we had the discussion

1      with Travelers?

2              MR. VANDENBURG:  I've read the transcript, your

3      Honor.

4              THE COURT:  I made the point facetiously that every

5      insurance company in the world could come in here and say we

6      don't cover this, so we want to intervene because we don't

7      cover it.  We want to get some sort of a declaration from the

8      Court that we don't cover it.  Right now these plaintiffs are

9      not asking for anything from either of your clients.

10              MR. VANDENBURG:  Your Honor, I'm solely asking to

11      intervene to address the issues that are addressed in the

12      default and their application for default judgment.

13              THE COURT:  But the default judgment is not against

14      your client.

15              MR. VANDENBURG:  Right.  But they've made it very

16      clear that they intend to take that default judgment and then

17      file a separate action and go after my clients.

18              THE COURT:  And then when they do that, you can make

19      all these arguments you want.

20              MR. VANDENBURG:  I can't, your Honor.  I'm precluded

21      at that point from arguing against the default judgment.  I

22      have to come before your Honor --

23              THE COURT:  No.  Of course you're precluded from

24      arguing against a default judgment, but you're not precluded

25      from arguing that you don't cover the risk.

1          MR. VANDENBURG:  Yes, your Honor.  But I'm not going

2     to address any coverage issues with your Honor in this case.

3     I'm solely going to come in and address liability and

4     damages.

5          THE COURT:  Liability and damages?

6          MR. VANDENBURG:  Yes.

7          THE COURT:  So anybody can come in out of the blue --

8     and I had this discussion with Travelers' counsel -- anybody

9     can come to me out of the blue and say I want to intervene

10    because I want to set aside that judgment of default against

11    somebody else.

12         MR. VANDENBURG:  Only if you have a protectable

13    interest, your Honor.  That's what the case law says.

14         THE COURT:  Everybody has a protectable interest by

15    your definition of it.

16         MR. VANDENBURG:  I don't believe so, your Honor.  DTSC

17    says in their opposition papers that they are seeking a default

18    judgment solely so they can enforce it against the parties that

19    they think are carriers.  So those are the only parties, and my

20    clients are amongst those that they assert are potentially

21    insurance carriers for the defaulted entity.  Those -- that's

22    the universe of parties that can come before your Honor, and

23    we've chosen to do that and say, your Honor, we're here.  We

24    want to step in.  We want to address the liability, which is

25    mainly divisibility, and especially the damages.  We want to

1  address are there response costs inconsistent with the NCP.

2          THE COURT:  You can get together with the lawyers that

3  were just in here.  You can talk about divisibility together.

4          MR. VANDENBURG:  Yes, your Honor.  But the issues that

5  we see with the response costs go to the amount of prejudgment

6  interest and the -- whether or not the -- sorry, your Honor,

7  one moment -- whether or not the costs that DTSC are claiming

8  their fixed costs are reasonably necessary and incidental to

9  implementation of the response actions.

10          So we would address those specific issues, and we

11  would have the right to question their witnesses, the

12  individuals that put forward declarations, to make sure that

13  those costs were incurred in a manner that were not -- that was

14  not inconsistent with the NCP.

15          THE COURT:  One of your clients is Allianz?

16          MR. VANDENBURG:  Yes, your Honor, Allianz Underwriters

17  Insurance Company.

18          THE COURT:  They're an excess carrier.

19          MR. VANDENBURG:  Yes.  There's three excess carriers.

20  There's one primary and three excess carriers.

21          THE COURT:  Who were the other excess, Chicago and

22  Fireman's Fund?

23          MR. VANDENBURG:  Chicago and Fireman's Fund, yes, your

24  Honor.

25          THE COURT:  They're in a little different position,

1    aren't they?

2           MR. VANDENBURG:  Well, your Honor, I think that for

3    them, the rationale of *Gray versus Begley* is even less strong

4    because they have the duty to defend.  DTSC has told your Honor

5    that *Gray versus Begley* controls.  I would like to submit to

6    your Honor that the case of *Reliance Insurance Company versus*

7    *Superior Court* controls this instance.  That case cite is 84

8    Cal. App. 4th 383.  And there's two main reasons why *Gray*

9    *versus Begley* doesn't control this case in this context.

10   Number one, there's no insured at jeopardy in this case.

11   There's no party that -- and DTSC has admitted this again in

12   its opposition that it's not going after the insured.  It's

13   only going after the insurers.

14          THE COURT:  I understand your argument, but I don't

15   think it's less.  I think it's more depending on how you look

16   at it.  They don't have a duty to defend yet, and so there's no

17   need for them to intervene.  There's no need for them to have

18   the judgment set aside.  There's no exposure to those excess

19   carriers unless and until there's a finding of liability and

20   damages, right?

21          MR. VANDENBURG:  Your Honor, I would submit that they

22   are part of that -- that part of the universe of limited scope

23   of folks that have exposure to that default judgment.  And if

24   your Honor decides that the primary carriers -- if your Honor

25   decides that *Gray versus Begley* controls and that the primary

1    carriers don't have a protectable right to intervene because

2    they did not agree to defend, then the only parties that can

3    step in, the only parties that have the ability to be -- to

4    dispute anything are the excess carriers because they don't

5    have that duty to defend.

6         THE COURT:  I see what you're saying.  You're saying

7    if I rule the way you think I'm going to rule on the other

8    insurers, then your client has more of a concern because now

9    they are the ones that, A, should come in, and B, couldn't come

10   in earlier.

11        MR. VANDENBURG:  Correct.

12        THE COURT:  Okay.

13        MR. VANDENBURG:  Your Honor, I would also like to

14   address permissive intervention under Rule 24(b).  Your Honor

15   has broad discretion under 24(b).  Your Honor only needs to

16   find that there are common questions of law and fact -- law or

17   fact.  I believe that those exist in this case.  And again, I

18   want to distinguish my client's position from Travelers.  My

19   clients have had no delay.  They found out about this on

20   September 10th, and we're before your Honor today within two

21   and a half months of that date.

22        So we are not in the same position as Travelers in

23   terms of coming to your Honor and saying, your Honor, we think

24   under these circumstances we should have the right to

25   intervene.  Similarly, to vacate default --

1      THE COURT:  Your clients had a duty, though, to tell

2  you this if they were sued.  I'm sure that's a term and

3  condition of each one of those policies.

4      MR. VANDENBURG:  Your Honor, the party that was served

5  was the receiver.  The receiver was set up as a result of

6  DTSC's application in the chancery court in Delaware.

7      THE COURT:  So you're saying the receiver didn't have

8  the same obligation as the insured?

9      MR. VANDENBURG:  I don't know on the coverage side

10  whether they did or they didn't, your Honor.

11      THE COURT:  They're stepping into the shoes of the

12  insured, and I would wonder whether they had the same

13  obligation that the insured did to inform every potential

14  carrier of the existence of the lawsuit.

15      MR. VANDENBURG:  Your Honor, I would like to note that

16  in the opposition papers, DTSC also takes the position that the

17  insurers are not responsible for the default of CNA Products,

18  LLC.  They specifically state that.  So I believe that's a

19  judicial admission, your Honor.  I don't believe that my

20  clients stand in the shoes of the receiver.  The receiver was

21  not my insurer -- our insurer.

22      THE COURT:  No, no.  I'm sorry.  I meant to say the

23  receiver stood in the shoes of the insured.  Not the insurer,

24  the insured.

25      MR. VANDENBURG:  Right.  But they were only given --

1  they were given certain rights but not obligations.

2  THE COURT:  Well, that was my question.  You're saying

3  they didn't have the same obligation that the insured did to

4  inform the insurer of the existence of the lawsuit.

5  MR. VANDENBURG:  That's what the order from the

6  chancery court in Delaware says, your Honor.

7  THE COURT:  Is that what it said?

8  MR. VANDENBURG:  That's what it says.  It's my

9  understanding.  I haven't read the actual order, but every time

10  I've seen that referenced, the specific language -- and counsel

11  can correct me if I'm wrong about that -- but the specific

12  language that says the right but not the obligation, I believe

13  that was an important part of that.

14  THE COURT:  I see.

15  MR. VANDENBURG:  Your Honor, I would like to address

16  the issue of vacating default under FRCP 55.  There's three

17  elements whether or not we engaged in culpable conduct.  Again,

18  we've had no delay.  We came as quickly as we could to your

19  Honor's courtroom to request intervention, and we don't believe

20  that we -- that we are -- that the receiver is our agent.

21  Second, whether or not there's a meritorious defense,

22  and I've addressed for your Honor --

23  THE COURT:  No.  But that question -- that means

24  whether or not there is a meritorious defense to the action

25  against the insured, not whether or not you have a meritorious

1    defense.  According to you, you're not being sued for anything.

2    You don't need a defense.

3              MR. VANDENBURG:  Right.  I would come in and argue

4    that the judgment --

5              THE COURT:  If you want to make that point, you have

6    to come in and tell the Court what the meritorious defense is

7    that your insured would have had or whatever.

8              MR. VANDENBURG:  The insured would have been able to

9    come into this court and argue, your Honor, that DTSC is not

10   entitled to recover prejudgment interest.  The insured would

11   come in and argue that they're not entitled to recover their

12   fixed costs that have nothing to do -- there's no relation to

13   the site.

14             THE COURT:  Have you briefed that?

15             MR. VANDENBURG:  I'm sorry?

16             THE COURT:  Have you briefed that?

17             MR. VANDENBURG:  We've brought it here to your Honor

18   this morning.  I don't believe -- I believe the prejudgment

19   interest issue was addressed in our reply brief, your Honor.

20   So if your Honor wants supplemental briefing on the meritorious

21   defense issue, we would be happy to provide that to your

22   Honor.

23             THE COURT:  Well, it's just that I think you were

24   addressing the wrong issue when you were talking about your

25   meritorious defense as opposed to their meritorious defense.

1          MR. VANDENBURG:  Yes, your Honor.

2          THE COURT:  So what was the other issue?

3          MR. VANDENBURG:  The last point is no prejudice.  And

4    again we've undertaken no action that has prejudiced DTSC.  The

5    delay was caused by DTSC failing to give us notice.  It wasn't

6    delay where we were given notice and we sat on our rights.

7          THE COURT:  It was caused by the insured or the

8    receiver not informing you about the pendency of the lawsuit.

9          MR. VANDENBURG:  Or DTSC, either party.  And counsel's

10   declaration specifically says that the receiver is DTSC's

11   agent.

12         THE COURT:  What says that?

13         MR. VANDENBURG:  The declaration of Ms. Zuckerman,

14   your Honor.

15         MS. ZUCKERMAN:  I'm sorry, Counsel.  Where does it say

16   that?

17         THE COURT:  The receiver is DTSC's agent?

18         MS. ZUCKERMAN:  I don't recall that.

19         MR. VANDENBURG:  Oh, I'm sorry, your Honor.  They paid

20   them.  That was what was asserted in the previous hearing

21   before your Honor.

22         THE COURT:  Who paid?

23         MR. VANDENBURG:  DTSC paid the receiver's costs.  So

24   our argument would be that they were an agent of DTSC, not an

25   agent of us.

1          THE COURT:  They paid DTSC's costs?

2          MR. VANDENBURG:  No.  I'm sorry.  The receiver's

3   costs.  DTSC paid the receiver's costs.

4          THE COURT:  Is that right?

5          MS. ZUCKERMAN:  Yes, your Honor.  In order to sue

6   Collins & Aikman in Delaware, since it's a canceled

7   corporation, we had to appoint a receiver, and we had to pay

8   for it.

9          THE COURT:  Is that the receiver that accepted

10  service?

11         MS. ZUCKERMAN:  That's right.

12         THE COURT:  Okay.  Go ahead.  What would you like to

13  say in response?

14         MS. ZUCKERMAN:  Just a couple points.  First of all,

15  I'll just address the intervention motion first, and then we'll

16  get to the default issue.  The insurers here have it backward.

17  They're asking the Court to assume that they have some sort of

18  protectable interest so they can control the litigation in case

19  it turns out later on that they do have a protected interest.

20  But that's not how Federal Rule 24 works.  They have to show

21  that they have a protectable interest before they are allowed

22  to intervene.  And their arguments about delay and prejudice

23  really only go to the issue of setting aside the default.  They

24  don't go to the issue of intervention.

25         We sent an email to these insurers before this hearing

1    reiterating our offer to stipulate to intervention for any

2    insurer who either accepted coverage or alternatively

3    acknowledged that there was at least a potential for coverage

4    and agreed to defend under a reservation of rights.

5              THE COURT:  One of them said that they were

6    investigating.  They didn't go so far as to say they would

7    defend under a reservation of rights.

8              MS. ZUCKERMAN:  That's right, your Honor.  These

9    insurance companies have had three months since they were

10   notified of this litigation.  They have had plenty of time to

11   do a lot of investigation.  Century, one of the insurers filing

12   this motion, has essentially said -- has essentially denied

13   coverage.  The other two apparently are still investigating.

14   But no one has taken a position that would entitle them to any

15   type of protectable interest.  And in our view, at least at

16   this point in time, there's no protectable interest that would

17   entitle them to intervene.

18             THE COURT:  What I'm gathering just from this argument

19   today is that, if they're permitted to intervene, they will

20   contest the prejudgment interest and what else?

21             MR. VANDENBURG:  Whether or not the fixed costs that

22   DTSC are claiming, they have certain fixed costs as a

23   governmental entity that addresses environmental contamination,

24   whether or not some of those fixed costs can be applied to this

25   site.

1      THE COURT:  And what amount are you talking about,

2  percentagewise or total amount?

3      MR. VANDENBURG:  I don't know the percentage, your

4  Honor, because I haven't been able to depose --

5      THE COURT:  Were they a substantial part of the fixed

6  costs?

7      MR. VANDENBURG:  I can tell you this, your Honor, that

8  the response costs that they claim for this site are on the

9  order of 2.6 million, and then they have attorneys' fees and

10  other costs that they -- I believe the numbers are

11  approximately 654,000.

12      THE COURT:  So which number would you be contesting

13  don't relate to this case?

14      MR. VANDENBURG:  I would contest all of them, your

15  Honor.

16      THE COURT:  Percentage of them.

17      MR. VANDENBURG:  I would like to contest all -- I

18  would like to contest all of them, your Honor, because I've had

19  no discovery rights to be able to depose any of these

20  individuals.  I'm not talking about decades of litigation, your

21  Honor.  I'm talking about a reasonable period of time to take

22  depositions of the people that gave the declarations --

23      THE COURT:  See, that's the prejudice.  That's the

24  prejudice.  You said there's no prejudice.  That's the

25  prejudice.  We let you intervene.  You take a long time.  You

1    take depositions.  You contest every issue.

2              MR. VANDENBURG:  Your Honor, I'll sit down with

3    counsel and negotiate a schedule today.

4              MS. ZUCKERMAN:  Your Honor, I would just like to

5    address the motion to set aside the default.  As you are aware,

6    it's a dysjunctive standard.  There are three different prongs,

7    and any one -- a finding on any one of those prongs disallows

8    them from setting aside the default.

9              The default in this case that they are trying to set

10   aside is essentially a finding of liability.  It does not have

11   anything to do with damages.  Because we only had a clerk's --

12             THE COURT:  Your point is that if we allow the default

13   to stay, to remain, there will still be a subsequent hearing to

14   determine damages.

15             MS. ZUCKERMAN:  That's right.  And that's on file.

16             THE COURT:  Is it further a part of your position that

17   they would be allowed to be heard at that hearing?

18             MS. ZUCKERMAN:  No, your Honor -- I mean, yes, if they

19   acknowledge a potential for coverage, agree to defend their

20   insured, accept a duty to defend and perhaps with a reservation

21   of rights which incidentally is not impossible here.  They

22   could hire a defense firm to fight the default or review the

23   costs and negotiate a settlement with DTSC.  I mean, there are

24   things that could be done, but what they don't get to do is say

25   we have no responsibility here.

1          THE COURT:  If they defend under a reservation of

2    rights, the only thing they would be out would be their

3    attorneys' fees.  Then they could prevail if they don't have

4    coverage, and you wouldn't be able to recover from them, right?

5          MS. ZUCKERMAN:  If they don't have coverage?

6          THE COURT:  Right.

7          MS. ZUCKERMAN:  If they -- well, we are confident that

8    we can prove our case because there's no defense to liability

9    here.  And even the issues that they have raised in their

10   motion, which they have not submitted any evidence to support,

11   all relate to damages, not to liability.  And all that's at

12   issue here is whether there's a meritorious defense to

13   liability, and we do not believe that there is.

14          So for them to set aside the default, even assuming

15   the Court were to grant the motion to intervene, it would be a

16   waste of judicial resources and the parties' resources to try

17   to move to set aside, have a big trial --

18          THE COURT:  The question I was asking is, if I rule in

19   your favor and a default remains, eventually there would be a

20   hearing on the damages.

21          MS. ZUCKERMAN:  That's correct, your Honor.

22          THE COURT:  And are you agreeing that they would be

23   allowed to participate in that hearing if they do so on a

24   reservation of rights?

25          MS. ZUCKERMAN:  If they accept or if they acknowledge

1    there is a possibility of coverage, they accept a duty to

2    defend with a reservation of rights, we would stipulate to

3    their intervention, and then they could oppose the motion for

4    default judgment.

5           THE COURT:  On damages, they could contest the

6    damages.

7           MS. ZUCKERMAN:  That's right.  That's right.

8           And another alternative is they've had three months to

9    look at all the evidence we've submitted relating to the

10   spills.  They have their own files.  They have -- they could

11   have asked us for information.  Allianz has not asked us for

12   anything.  There's a lot of investigation they could do.

13   They've had three months to do it.  And they could take a

14   position and say there's a potential for coverage here, and

15   therefore, we should be able to intervene.

16          Did you have anything --

17          THE COURT:  Not to set aside the default but to

18   intervene on the damages?

19          MS. ZUCKERMAN:  That's right, your Honor.

20          THE COURT:  Right.  Did you want to add anything?

21          MR. THORNTON:  Sure, your Honor.  Just in terms of a

22   reservation of rights, the reason that Ms. Zuckerman's offer is

23   framed as accept coverage or agree that there's potential for

24   coverage is because the DTSC wants it to be a true reservation

25   of rights, that they have coverage for the judgment if there is

1    a judgment or that they may have coverage for a judgment if

2    there is a judgment.  Maybe an exclusion applies.  Maybe an

3    exclusion does not apply.

4         THE COURT:  When an insurer defends on a reservation

5    of rights, they don't usually have to make a showing to the

6    other side that there's a potential for coverage.  The reason

7    that language is used at all is because that's the language you

8    use to tell them when they have to defend on a reservation of

9    rights.  They don't usually have to make that showing to the

10   other side.

11        MR. THORNTON:  That is the standard for determining

12   the duty to defend, but they have to reserve rights.

13        THE COURT:  I understand.

14        MR. THORNTON:  They have to say, we'll defend you,

15   but, hey, there's a pollution exclusion.  We may not have to

16   cover you.

17        THE COURT:  I know.  But that language about potential

18   for coverage is in there because it's when there's a potential

19   for coverage, you have to defend, and then you can have a

20   reservation of rights.  See there's no showing that I'm aware

21   of that they have to satisfy you or represent to you that

22   there's a potential for coverage.  That's between them and

23   their client.  That's the way I understand it.

24        MR. THORNTON:  But they have to show significant

25   protectable interest.

1          THE COURT:  They don't have to show that to you.

2          MR. THORNTON:  They have to show it to the Court.

3          MS. ZUCKERMAN:  To the Court.

4          THE COURT:  Well, if they didn't have this motion,

5     they could do it on their own.  They wouldn't have to show it

6     to anybody if a default hadn't already been entered.

7          MR. THORNTON:  Yeah.  But they have to -- I think they

8     have to show it to establish a protectable interest.  In other

9     words, there's some set of facts under which we might have to

10    pay this judgment; therefore, we have a significant protectable

11    interest.  And those scenarios are either we've accepted

12    coverage, or we think that there's potential coverage;

13    therefore, we have a duty to defend.

14         THE COURT:  The point is, if they said we will defend

15    on a reservation of rights, that's enough.  They don't have to

16    come in and show me what their protectable interest is.  If an

17    insurance company comes in and says we will defend on a

18    reservation of rights, I let them do it.

19         Now it's another story when they've already had a

20    default entered.  Now that's a different issue.  But just to

21    defend on a reservation of rights, they have to say they'll

22    defend.

23         I don't ask -- if I have two parties in here and I'm

24    not dealing with the question of setting aside a default and an

25    insurance company wants to provide the defense to the

1   defendant, they don't have to show the Court that there's a

2   possibility or that they've got a policy or anything.  They

3   could just be doing it out of the goodness of their heart, and

4   they could do it.

5          MS. ZUCKERMAN:  Your Honor, might I address that just

6   briefly and then let Mr. Thornton add anything.  The reason

7   that this is an issue here is that we sent a notice to 11

8   different insurers.  These are very old policies.  DTSC, as

9   we've said multiple times both to the insurance companies and

10  stated in our papers, does not yet know in part because it has

11  not received position statements, it does not yet know which if

12  any of these insurance companies it will proceed against.

13         THE COURT:  I understand all that.  But what I'm

14  saying is, if it wasn't for the default, you sent that letter

15  out.  They don't have to tell you we have a potential for

16  coverage or we have a protectable interest or anything.  If any

17  one of those insurance companies before the default was entered

18  had come in here and said we'll defend this case on a

19  reservation of rights, you would -- the Court, nobody could

20  stop them, right?

21         MR. THORNTON:  You mean, for instance, if CNA was

22  solvent and they were just dealing with them, we as the

23  plaintiff couldn't inquire into that?

24         THE COURT:  Right.  Even if they weren't solvent, even

25  if they were in bankruptcy, if somebody wants to come in and

1    defend them, nobody's going to stop them, right?

2            MR. THORNTON:  I think if -- you know, they have an

3    interest to do it.  It can't be any insurer in the world,

4    right?

5            THE COURT:  I don't know.

6            MR. THORNTON:  They have to have some interest.

7            THE COURT:  I don't know.  Nobody would ask a question

8    if somebody comes in and defends them.  Maybe somebody would

9    ask a question.  Maybe you would say we want to disqualify

10   counsel because they don't have a protectable interest in here.

11   They're an officious intermeddler, maybe.

12           MS. ZUCKERMAN:  Because it does seem to make the most

13   sense for the insurance company that has the significant

14   interest to be the one controlling the litigation.

15           THE COURT:  I just don't want you to think that you

16   can use that letter that you sent out to 11 different insurance

17   companies as a way to smoke out which one is going to admit

18   coverage.  That's not the purpose of that, and I don't want you

19   to think that's a legitimate purpose.

20           MS. ZUCKERMAN:  That's right, your Honor.

21           THE COURT:  So if they had wanted to come in and say

22   we'll defend, but we're not going to tell you -- we've got a

23   reservation of rights, we're not going to tell you what our

24   contractual relationship is, that would be enough.  That's my

25   position.  But it didn't happen.  So it's moot.

1        MS. ZUCKERMAN:  And in fact, one of the companies has

2    already announced that there's no coverage.

3        THE COURT:  Right.

4        MS. ZUCKERMAN:  Just one -- two last items.  One is on

5    the issue of whether the receiver is required to do -- to

6    notify, it seems to me that the policy would control.  We have

7    not researched this issue but --

8        THE COURT:  Apparently the Court made some

9    determination that the receiver did not inherit the

10   obligations, only the rights under the contract.

11       MS. ZUCKERMAN:  Not exactly, your Honor.  The Court

12   did say that the receiver had the right but not the obligation

13   to defend, but it's not clear and neither side --

14       THE COURT:  Oh, that's a different story, whether or

15   not the obligation to defend.

16       MS. ZUCKERMAN:  Right.

17       THE COURT:  And not the obligations of the contract.

18       MS. ZUCKERMAN:  That's all the order says, your

19   Honor.

20       THE COURT:  Okay, sure, sure.

21       MS. ZUCKERMAN:  The only other issue I promised I

22   would raise is we have found out from counsel for Allstate that

23   there is no Allstate motion to intervene.  It has not filed a

24   motion to intervene.  It's not at issue today.  We weren't

25   sure, and so we addressed it in our brief.

1          THE COURT:  I see.  So there's a company somewhere in

2     the world that's not in this case.

3          MS. ZUCKERMAN:  So there are only the three moving

4     parties here.

5          THE COURT:  Well, I didn't realize we've got Chicago

6     and Fireman's Fund as well.

7          MS. ZUCKERMAN:  Well, they're considered a part of

8     Allianz; is that correct?

9          MR. VANDENBURG:  That's correct, your Honor.

10          THE COURT:  I see.  All right.

11          MR. VANDENBURG:  Your Honor, counsel mentioned 11

12     carriers.  I want to make sure the Court is aware there are

13     three primary carries.  There's Travelers that your Honor heard

14     back in October, then there's Century Indemnity and

15     Continental.  Those are the three purported primary carriers,

16     and two of those three are before your Honor, and the other was

17     already heard back in October.

18          THE COURT:  I understand.  Anything else?

19          MR. VANDENBURG:  Your Honor, I would just ask the

20     Court to take a look at the *Reliance Insurance Company* case.  I

21     strongly believe that that's more on point for this particular

22     circumstance.  I'll give your Honor that cite again, 84 Cal

23     App. 4th 383.

24          THE COURT:  And what did you cite it for?

25          MR. VANDENBURG:  Cited for the proposition that our

1    right to intervene is not based upon the duty to defend or the

2    agreement to defend where we have a defunct entity and there's

3    no insured to defend and the insured is not at risk.  And

4    there's also been --

5              THE COURT:  Didn't I address that in the previous

6    case?

7              MS. ZUCKERMAN:  Yes, your Honor.

8              THE COURT:  I think I did.

9              MR. VANDENBURG:  Well, your Honor, I just want to

10   distinguish *Gray versus Begley* on two important facts.  There's

11   been no tender by the insured, and there's no insured at

12   jeopardy.  Both of those are significant facts that I believe

13   takes us outside of *Gray versus Begley*.

14             THE COURT:  All right.  Thank you.

15             MR. VANDENBURG:  Thank you, your Honor.

16             MR. THORNTON:  Thank you, your Honor.

17             MS. ZUCKERMAN:  Thank you, your Honor.

18             MR. BERDAN:  Thank you.

19             THE COURT:  Motion is taken under submission.

20             THE CLERK:  Court's adjourned.

21             (The proceedings adjourned 2:58 p.m.)

22                         --oOo--

23

24

25

1   I certify that the foregoing is a correct transcript from the

2   record of proceedings in the above-entitled matter.

3                                   /s/ Kacy Parker Barajas

4                                   _____
                                    KACY PARKER BARAJAS
                                    CSR No. 10915, RMR, CRR, CRC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25