**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 1 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL; TOXIC SUBSTANCES CONTROL ACCOUNT, | No.   20-15029 |
| Plaintiffs-Appellees, | D.C. No. 2:14-cv-00595-WBS-EFB |
| v. | |
| JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC, a Nevada limited liability company; COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company, | OPINION |
| Defendants, | |
| v. | |
| CENTURY INDEMNITY COMPANY; ALLIANZ UNDERWRITERS INSURANCE COMPANY; CHICAGO INSURANCE COMPANY; FIREMAN'S FUND INSURANCE COMPANY; THE CONTINENTAL INSURANCE COMPANY, Proposed Intervenors, | |
| Movants-Appellants. | |

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted November 9, 2021
Pasadena, California

Before: Daniel P. Collins and Kenneth K. Lee, Circuit Judges, and M. Miller Baker,[*]
Judge.

Opinion by Judge Baker;
Concurrence by Judge Collins

---

[*]     The Honorable M. Miller Baker, Judge for the United States Court of
International Trade, sitting by designation.

# SUMMARY[**]

## Environmental Law / Intervention

The panel reversed the district court's order denying insurers' motions to intervene to defend their defunct insured in an environmental tort action, dismissed the insurers' appeal of the denial of their motions to set aside default, and remanded.

In 2014, the California Department of Toxic Substances Control and the Toxic Substances Control Account ("DTSC") brought suit under the Comprehensive Environmental Response, Compensation, and Liability Act and state law relating to the remediation of hazardous materials alleged to be present at a site in Elmira, California. In 2013, a certificate of cancellation had been filed with the Delaware Secretary of State, cancelling the legal existence of defendant Collins & Aikman Products. The Delaware Court of Chancery granted DTSC's petition to appoint a receiver empowered to defend claims made against Collins & Aikman. The receiver declined to file an answer to DTSC's complaint, and the district court clerk entered default under Federal Rule of Civil Procedure 55(a). DTSC later moved for a default judgment. Two primary insurers and an excess insurer of Collins & Aikman moved to intervene as of right under Rule 24(a)(2) and also moved to set aside the entry of default. The district court denied the insurers' motions.

In Parts I and II of its opinion, the panel addressed the factual and procedural history and its jurisdiction to review the denial of intervention. In Part III, the panel held that the insurers sought relief that no existing party to the case sought and therefore were required to establish constitutional standing in order to intervene as of right. The panel concluded that the insurers satisfied the requirements of constitutional standing because DTSC's suit against their insured, Collins & Aikman, created an imminent threat of injury, and the district court's denial of any relief to DTSC would redress that injury.

In Part IV of its opinion, the panel addressed intervention. The panel held that Rule 24(a)(2) requires an applicant for intervention to show that (1) it has a significant protectable interest as to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or

---

[**]  This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately meet the applicant's interest.

Here, there was no dispute that the insurers timely sought to intervene, nor was there any dispute as to the second factor.  Thus, whether the insureds could intervene as of right turned on whether they had an "interest" under Rule 24(a)(2).  The panel held that, under *Donaldson v. United States*, 400 U.S. 517 (1971), and *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc), the word "interest" must be read in a specifically legal sense, to mean a right or other advantage that the law gives one person as against another person, rather than read more broadly to refer to anything that a person wants, whether or not the law protects that desire.  The panel concluded that the source of any interest of the insureds must be state law.  Under *Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502 (2022), the panel applied federal common law choice-of-law rules, under which the choice-of-law principles of the forum state, California, applied.  Under those principles, the panel applied California substantive law to determine whether the insureds had a legally protected interest for purposes of Rule 24(a)(2).  In Part IV(B)(3) of its opinion, the panel held that under California's direct action statute, Cal. Ins. Code § 11580, a primary or excess insurer that seeks to timely intervene in a tort action for the stated purpose of defending its insured that is either unwilling or incapable of defending itself has a protectable interest for purposes of rule 24(a)(2), no matter what position, if any, the insurer has taken as to coverage.  Accordingly, the insureds here had a protectable interest.

In Part V, dismissing in part, the panel held that it lacked appellate jurisdiction over the insureds' appeal from the district court's denial of their Rule 55(c) motions to set aside the clerk's entry of default against Collins & Aikman because the district court's order was interlocutory.  The panel wrote that on remand the district court could reconsider its denial of those motions.

Concurring in part and concurring in the judgment, Judge Collins wrote that he joined Parts I, II, IV(B)(3), and V of the court's opinion and concurred in the court's judgment.  Parts III, IV(A), IV(B)(1), and IV(B)(2) of the majority opinion addressed issues regarding standing, the development of the law leading up to the court's articulation of Rule 24's standards in the en banc opinion in *Wilderness Society*, and choice-of-law principles.  Judge Collins wrote that he did not join these parts of the majority opinion because they discussed matters that were not raised, briefed, or contested by the parties on appeal.

## COUNSEL

Nicholas M. Gedo (argued) and Thomas F. Vandenburg, Wood Smith Henning & Berman LLP, Glendale, California; Stratton P. Constantinides, Wood Smith Henning & Berman LLP, Los Angeles, California, for Movants-Appellants Century Indemnity Company, Allianz Underwriters Insurance Company, Chicago Insurance Company, and Fireman's Fund Insurance Company.

Sara M. Thorpe and Randall P. Berdan, Nicolaides Fink Thorpe Michaelides Sullivan LLP, San Francisco, California, for Movant-Appellant The Continental Insurance Company.

Laura J. Zuckerman (argued), Deputy Attorney General; Dennis L. Beck Jr., Supervising Deputy Attorney General; Rob Bonta, Attorney General of California; Office of the California Attorney General, Oakland, California; Timothy M. Thornton Jr., Gray Duffy LLP, Encino, California; for Plaintiffs-Appellees.

BAKER, Judge:

In this environmental tort action, two primary insurers and an excess insurer timely sought to intervene in the district court to defend their defunct insured and set aside its default. The district court denied their motions to intervene as of right under Federal Rule of Civil Procedure 24(a)(2), reasoning that they lacked any protected interest because the primary carriers didn't reserve their rights and the excess insurer had no duty or right to defend. The court then denied their motions to set aside the clerk's default for reasons that are unclear.

We hold that under the California direct action statute, *see* Cal. Ins. Code § 11580, all three insurers had a legally protected interest in defending their helpless insured and preventing the entry of default judgment. We therefore reverse the district court's denial of intervention as of right. We lack jurisdiction, however, over the insurers' appeal from the denial of their motions to set aside the default. On remand, the district court may reconsider that order given our decision today.

## I

In 2014, the California Department of Toxic Substances Control and the Toxic Substances Control Account (collectively DTSC or the Department) filed suit in the district court against the current and various former owners of land in Elmira, California, as well as others who conducted operations on the site. The complaint sought relief under both state law and the Comprehensive Environmental Response,

Compensation, and Liability Act, 42 U.S.C. §§ 9601–75 (CERCLA), relating to the remediation of hazardous materials alleged to be present at the site due to business operations since 1972.

A former owner of the property during the relevant time but missing from the suit was a defunct Delaware limited liability company, Collins & Aikman Products (Collins & Aikman). In 2005, Collins & Aikman filed a Chapter 11 bankruptcy petition.

In the Collins & Aikman bankruptcy, DTSC filed a claim against the estate based on the Elmira site. To resolve that claim, the bankruptcy court's final order approving a plan of reorganization in 2007 included a stipulation preserving the Department's ability to sue Collins & Aikman in the future for the sole purpose of securing a judgment to "be paid from insurance proceeds."

Under that stipulation, the estate agreed to carve out from the bankruptcy stay an exception for "any action filed against [Collins & Aikman] to establish liability and to seek recovery of insurance proceeds." DTSC agreed that if it obtained any judgment against Collins & Aikman, the former would not "collect any money or other forms of remuneration or relief" from the latter. The bankruptcy court's approval of this stipulation thus cleared a path for DTSC to sue Collins & Aikman to access the latter's insurance coverage while leaving no skin in the game for the insured.

In 2013, a certificate of cancellation filed with the Delaware Secretary of State terminated Collins & Aikman's legal existence. *See also* 6 Del. Code § 18-203(a) (providing for filing such a certificate "upon the dissolution and the completion of winding up of a limited liability company").

The following year, DTSC brought this litigation. Shortly after doing so, the Department petitioned the Delaware Court of Chancery to appoint a receiver "to allow DTSC to add [Collins & Aikman] as an additional defendant" in this suit.[1] The Department explained that it wanted

> to add [Collins & Aikman] as a defendant . . . as the first step in pursuing historic insurance coverage of [Collins & Aikman] for DTSC's costs of cleaning up a contaminated property in California. Under California law, a judgment against [Collins & Aikman] is necessary before DTSC can pursue a direct action against the company's historic insurers. DTSC seeks to add [Collins & Aikman] as a defendant in *DTSC v. Dobbas* to obtain such a judgment, which in turn would allow a direct action against the company's historic insurers. *DTSC will not seek enforcement of the judgment directly against [Collins & Aikman], but only as a means to pursue a direct action against the company's historic insurers*. To ensure that [Collins & Aikman] has the capacity to be sued in *DTSC v. Dobbas*, DTSC requests that a receiver be appointed for the company under 6 *Del. C.* § 18-805.

---

[1] *See* 6 Del. Code § 18-805 (allowing the Court of Chancery "on application of any creditor" of any cancelled LLC to appoint a "receiver[ ] . . . to take charge of the [LLC]'s property, and to collect the debts and property due and belonging to the [LLC], with the power to prosecute and defend, in the name of the [LLC] . . . all such suits as may be necessary or proper . . . for the final settlement of the unfinished business of the" LLC).

(Emphasis added).[2] Because Collins & Aikman had no known assets, DTSC proposed "to pay the reasonable costs of the receiver appointed by the Court, unless and until an insurer of [Collins & Aikman] begins defending the company."

On December 8, 2014, the Court of Chancery granted the Department's petition and appointed a receiver with "the power, *but not the obligation*, to defend, in the name of [Collins & Aikman], any claims made against it in *DTSC v. Dobbas*." *In re: Collins & Aikman Prods., LLC*, C.A. No. 10348-CB, 2014 WL 6907689, at *1 (Del. Ch.) (emphasis added). The order (drafted by DTSC) further provided that the Department would pay the receiver, "unless and until [DTSC] shows good cause why [it] should no longer be required to pay that cost." *Id*.

Three days later, DTSC amended its complaint to add Collins & Aikman as a defendant. After being served, the receiver—unsurprisingly as he was appointed at the behest of, and paid by, the Department—declined to file an answer or otherwise defend the suit on behalf of Collins & Aikman. DTSC promptly moved under Federal Rule of Civil Procedure 55(a) for entry of default. The clerk entered the default on March 26, 2015.

---

[2] The California direct action statute referenced in the Department's petition provides that when a "judgment is secured against the insured . . . in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." Cal. Ins. Code § 11580(b)(2).

More than four years later—and after settling with the other defendants in the meantime—DTSC moved for a default judgment of around $3.2 million against Collins & Aikman on August 21, 2019. In so doing, DTSC also asked the district court to enter a declaratory judgment that Collins & Aikman "is jointly and severally liable . . . for all [remediation] costs incurred after May 31, 2019, and future response costs incurred by [the Department]" in cleaning up contamination at the site.

A few weeks later, the Department's insurance consultant and agent, the Arcina Risk Group, notified the three liability insurers involved in this appeal—Allianz,[3] Century, and Continental—that the Department had applied for a default judgment "against your insured [Collins & Aikman]." This notice ostensibly requested that the insurers "defend and indemnify your insured immediately" and directed them to respond to both the receiver and DTSC. It was only then—over four years after DTSC filed its initial complaint—that the insurers learned that the Department had sued Collins & Aikman in this case.

The insurers immediately moved to intervene as of right under Rule 24(a)(2) on the theory that they had an "interest" in the case—preventing the entry of default judgment as to their insured—that would likely be impaired by their absence. Fed.

---

[3] This opinion refers to Appellees Allianz Underwriters Insurance Company, Chicago Insurance Company, and Fireman's Fund Insurance Company collectively as "Allianz."

R. Civ. P. 24(a)(2).[4] They also moved to set aside the district court clerk's entry of default as to Collins & Aikman. DTSC opposed these motions, all of which the district court denied. *See generally Cal. Dep't of Toxic Substances Ctrl. v. Jim Dobbas, Inc.*, No. 2:14-CV-00595 WBS EFB, 2019 WL 6528954 (E.D. Cal. Dec. 4, 2019).

In denying intervention as of right, the district court first observed that it had previously denied intervention by another of Collins & Aikman's insurers, Travelers, after finding that the latter's disclaimer of coverage and "refusal to defend [Collins & Aikman] under a reservation of rights forfeited its interest in the litigation" for purposes of intervention as of right under Rule 24(a)(2). *Id.* at *1 (citing *Cal. Dep't of Toxic Substances Ctrl. v. Jim Dobbas, Inc.*, No. 2:14-CV-00595 WBS EFB, 2019 WL 5390551, at *1–2 (E.D. Cal. Oct. 22, 2019)).[5]

The district court then noted that in moving to intervene, Continental, Century, and Allianz "offer[ed] many of the same arguments Travelers did in its

---

[4] The insurers also moved to intervene permissively on the theory that they had a "defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The district court denied intervention on that ground as well, which the insurers have also appealed. Because we reverse the district court's denial of intervention as of right, we have no need to consider this question, including our jurisdiction to do so.

[5] The district court also denied Travelers' bid for permissive intervention, reasoning that the insurer did not "have an interest in this litigation and its intervention would only serve to prolong the action." *Id.* at *2.

motion." *Id.* The court then rejected Continental's and Century's arguments for largely the same reasons that it rejected those made by Travelers.

As to Continental—which, unlike Travelers, did not disclaim coverage—the district court found it critical that DTSC "offered to stipulate to Continental's intervention" if Continental either accepted coverage or agreed to defend Collins & Aikman under a reservation of rights, but Continental did neither and "failed to respond to plaintiffs' offer." *Id.*

As to Century, the district court noted that it, like Travelers, had disclaimed coverage based on a prior settlement agreement; the court found that "by implication [Century] refuses to offer a defense under a reservation of rights." *Id.* at *2.

Finally, the district court turned to Allianz, which had reserved its rights. *Id.*[6] The court observed that Allianz had only issued excess policies. *Id.* The court then noted that under California law, the policy limits of an underlying primary policy must be exhausted before an excess carrier has the right or duty to defend. *Id.* Because DTSC had not determined which primary carrier(s) would be responsible, "the court [could not] conclude that primary coverage is exhausted and that excess insurers can properly intervene," and so the court denied Allianz's motion as well. *Id.*

---

[6] The Department disputes whether Allianz properly reserved its rights. We express no view on this question.

The district court also denied the insurers' motions to set aside the entry of default. *Id.* at *3. Its reasoning as to Century and Allianz was not entirely clear, although the court's order at one point suggested that Century's motion to set aside default was denied "[b]ecause it has both disclaimed coverage and refused to defend [Collins & Aikman] under a reservation of rights. *Id.* at *2. As to Continental, the district court's reasoning was limited to stating that the company "does not advance any new argument to establish good cause . . . ." *Id.* at *1.

The insurers timely appealed both the denial of their motions to intervene and the denial of their motions to set aside the entry of default.

## II

The district court had federal question jurisdiction under 28 U.S.C. § 1331. As to our appellate jurisdiction, "[a] district court's denial of a motion for intervention as of right is an appealable 'final decision.' Therefore, we have jurisdiction to review such a denial pursuant to 28 U.S.C. § 1291." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (cleaned up).

We review de novo a district court's denial of a motion for intervention as of right except for the district court's determination of timeliness, which we review for an abuse of discretion. *See id.*

10

III

Before turning to the merits, we first pause to consider the jurisdictional question of the insurers' standing to intervene. Intervenors that seek relief that is broader than or different from the relief sought by existing parties to the case must possess constitutional standing, *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017), but intervenors that seek the same relief sought by at least one existing party to the case need not do so. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020); *McConnell v. FEC*, 540 U.S. 93, 233 (2003) ("It is clear . . . that the [defendant agency] has standing, and therefore we need not address the standing of the intervenor-defendants, whose position here is identical to the [agency's]."), *overruled in part on other grounds*, *Citizens United v. FEC*, 558 U.S. 310 (2010).

Here, the insurers seek to intervene to defend Collins & Aikman, which (being controlled by the Department) is not defending itself. As they seek relief that no existing party to the case seeks, the insurers must establish constitutional standing. *Town of Chester*, 137 S. Ct. at 1651; *Little Sisters of the Poor*, 140 S. Ct. at 2379 n.6; *McConnell*, 540 U.S. at 233.

In this context, where the insurers seek to intervene as defendants, they must show that the relief sought by the plaintiff, DTSC, threatens them with "injury in fact . . . that is concrete and actual or imminent, not conjectural or hypothetical."

11

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (cleaned up). They must also show "causation—a fairly traceable connection between [their threatened] injury" and the relief sought by the Department. *Id.* Finally, they must demonstrate "redressability—a likelihood that [their] requested relief will redress the [asserted] injury." *Id.*

We conclude that the insurers easily satisfy the requirements of constitutional standing. DTSC seeks relief in form of a money judgment against their insured, and insofar as the California direct action statute applies, the Department could then sue the insurers for recovery under the policies, which DTSC has stated its intention to do. This contingent liability and its attendant costs (defending against the threatened direct action suit) creates injury in fact for standing purposes. *See Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1299 (10th Cir. 2008) (explaining that a contingent liability may constitute "injury in fact" when the "consequences" of that contingent liability are "actual or imminent"). DTSC's suit against their insured, Collins & Aikman, creates an imminent threat of injury, and the district court's denial of any relief to the Department would redress that injury. Standing, therefore, is no impediment to the insurers' intervention.

## IV

As relevant here, Federal Rule of Civil Procedure 24(a) provides that, "[o]n timely motion," a district court must permit an outsider to intervene who

claims an interest relating to the property or transaction that is the sub-
ject of the action, and is so situated that disposing of the action may as
a practical matter impair or impede the movant's ability to protect its
*interest*, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2) (emphasis added).[7]

In this circuit, Rule 24(a)(2) requires the outsider to show that (1) it has a
significant protectable interest as to the property or transaction that is the subject of
the action; (2) the disposition of the action may, as a practical matter, impair or im-
pede the applicant's ability to protect its interest; (3) the application is timely; and
(4) the existing parties may not adequately meet the applicant's interest. *Donnelly*,
159 F.3d at 409. A putative intervenor has the burden of establishing all four require-
ments. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

Here, there is no dispute that the insurers timely sought to intervene. Nor is
there any dispute that the existing parties do not represent the insurers' interests, if
any such interests exist, or that their absence from the litigation "may as a practical

---

[7] An outsider moving to intervene, whether as of right under Rule 24(a) or permis-
sively under Rule 24(b), "must" attach to its motion "a pleading that sets out the
claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c); *see also*
Fed. R. Civ. P. 7(a) (defining "pleadings" for purposes of the Federal Rules of Civil
Procedure). In this case, the insurers' intervention motions failed to proffer the re-
quired pleadings. On remand, the district court should require the insurers to correct
this technical defect in their respective motions. *Cf. Westchester Fire Ins. Co v. Men-
dez*, 585 F.3d 1183, 1188 (9th Cir. 2009) (stating that a putative intervenor's failure
to comply with Rule 24(c) pleading requirement "is a 'purely technical' defect which
does not result in the 'disregard of any substantial right' ") (quoting *Shores v. Hendy
Realization Co.*, 133 F.2d 738, 742 (9th Cir. 1943)).

matter impair or impede [their] ability to protect [those assumed] interest[s]." Fed. R. Civ. P. 24(a)(2). Thus, whether the insurers can intervene as of right turns on whether they have an "interest" under Rule 24(a)(2).

A

"The Supreme Court has yet to provide any clear definition of the nature of the 'interest relating to the property or transaction which is the subject of the action.' " *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003) (quoting 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1908, at 21 (Supp. 2002)). This question—"What *kind* of interest is required?," *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc) (*NOPSI*) (emphasis in original)—has bedeviled the lower federal courts since Rule 24(a) was last substantively amended in 1966. *See* Caleb Nelson, *Intervention*, 106 Va. L. Rev. 271, 275 n.10 (2020) (collecting authorities).

In general, the word "interest" in Rule 24(a)(2) is susceptible of two very different readings. It can be read "in a specifically legal sense, to mean a right or other advantage that the law gives one person as against another person." *Id.* at 275. Or it can be read more broadly and "in a less technical sense to refer to anything that a person wants, whether or not the law protects that desire." *Id*. at 275–76.

14

The only Supreme Court case that sheds any meaningful light on this question is *Donaldson v. United States*, where a taxpayer sought to intervene in district court actions brought by the IRS against his former employer and its accountant seeking to compel production of their financial records related to his potential tax liability. 400 U.S. 517 (1971). The Court identified the taxpayer's asserted "interest" as a "desire . . . to counter and overcome" the former employer's and accountant's "willingness . . . to comply and to produce records," *id*. at 531, and observed that "[t]he nature of the 'interest' . . . is apparent from the fact that the material in question . . . would not be subject to suppression if the Government obtained it by other routine means," such as the defendants' voluntary disclosure or through the taxpayer's own income tax returns, *id*.

The Court then cryptically announced that "[t]his interest cannot be the kind contemplated by Rule 24(a)(2)," *id*., because "[w]hat is obviously meant there is a *significantly protectable interest*," *id*. (emphasis added). As examples of "such a protectable interest," the Court identified claims of an asserted privilege or abuse of process. *Id*.[8]

---

[8] In two recent cases, the Supreme Court touched in passing upon the nature of Rule 24(a)(2)'s "interest" requirement. In *Cameron v. EMW Women's Surgical Center, P.S.C.*, the Court characterized Rule 24(a)(2) as referring to a "*legal* 'interest.'" 142 S. Ct. 1002, 1010 (2022) (emphasis added). And in *Berger v. North Carolina State Conference of the NAACP*, the Court recognized that "States possess a legitimate

As these examples of "protectable interests" were legally cognizable—unlike the taxpayer's asserted interest, which was not protected by any law—it seems "that the Supreme Court in *Donaldson* used 'protectable' in the sense of legally protectable, and it is difficult to conceive of any other sense in which the Court might have been employing 'protectable' in that context." *NOPSI*, 732 F.2d at 464.

Although the Supreme Court decided *Donaldson* in 1971, with one minor exception[9] the Ninth Circuit's intervention cases didn't acknowledge it for almost twenty years, and instead generally followed an older line of authority recognizing the more expansive concept of "interest." *See, e.g.*, *Cnty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) ("We have rejected the notion that Rule 24(a)(2) requires a specific legal or equitable interest."). Under that line of authority, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.' " *Id*. (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

---

interest in the continued enforcement of their own statutes." 142 S. Ct. 2191, 2201 (2022) (cleaned up).

[9] *See Garrett v. United States*, 511 F.2d 1037, 1038 (9th Cir. 1975) (per curiam) (applying the "significantly protectable" test to affirm the district court's denial of an intervention as of right by a taxpayer in a case factually "on all fours with *Donaldson*"). In *Dilks v. Aloha Airlines, Inc.*, the court indirectly relied on *Donaldson* by citing out-of-circuit authority to hold that Rule 24(a)(2) requires an "interest" that "is direct, non-contingent, substantial and legally protectable." 642 F.2d 1155, 1157 (9th Cir. 1981) (citing *Heyman v. Exch. Nat'l Bank of Chicago*, 615 F.2d 1190, 1193 (7th Cir. 1980)). *Heyman*, in turn, followed *Donaldson*. *See* 615 F.2d at 1193.

In 1989, we recognized that *Donaldson* had "modified" "our circuit doctrine" by construing Rule 24(a)(2) to "require a 'significantly protectable interest.' " *Portland Audubon Soc'y v. Hodel*, 866 F.2d 302, 309 (9th Cir. 1989), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc). In *Portland Audubon Society*, we held that private entities with financial interests in logging on federal land and sympathetic local governments had no "significantly protectable interest" in the government's defense against a National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 *et seq.*, challenge to the Bureau of Land Management's approval of such logging. 866 F.2d at 309. We reasoned that "NEPA provides no protection for the purely economic interests that they assert." *Id*.

*Wilderness Society* abrogated *Portland Audubon Society*'s conclusion that private parties could never have a protectable interest under NEPA, explaining "that private parties seeking to intervene in NEPA cases may, *in certain circumstances*, demonstrate an interest 'protectable under some law,' and a relationship between that interest and the claims at issue." *Wilderness Soc'y*, 630 F.3d at 1179 (emphasis added) (quoting *Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1179–80).

Thus, *Wilderness Society* did not overrule *Portland Audubon Society*'s recognition that *Donaldson* "modified" our circuit's expansive reading of "interest" under

Rule 24 by cabining "interest" to legally protected interests. Far from it—the en banc court summarized the "operative inquiry" as being, "*as in all cases*, whether 'the [asserted] *interest is protectable under some law*,' and whether 'there is a relationship between the legally protected interest and the claims at issue.' " *Id.* at 1176 (emphasis added) (quoting *Sierra Club*, 995 F.2d at 1484).[10]

We therefore read *Wilderness Society* to mean that, despite our pre-*Donaldson* "liberal policy in favor of intervention," which " 'follow[s] practical and equitable considerations,' " *id.* at 1179 (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)), at an irreducible minimum Rule 24(a)(2) requires that the asserted interest be "protectable under some law" and that there exist "a relationship between the legally protected interest and the claims at issue," *id.* If these two core elements are not satisfied, a putative intervenor lacks any "interest" under Rule 24(a)(2), full stop.

Here, there is no dispute that if the insurers have an interest "protectable under some law," there exists "a relationship between the legally protected interest and the claims at issue." We therefore turn to whether the insurers have any such interest.

---

[10] This means that "a prospective intervenor's asserted interest need not be protected by the statute under which the litigation is brought . . . ." *Id.* at 1179 (citing *Sierra Club*, 995 F.2d at 1481, 1484).

B

1

The insurers' briefing does not claim that federal law protects any interest of theirs in this litigation.[11] Thus, if any legal protection extends to their asserted interest, the source must be state law.[12] That in turn leads to an antecedent question—we must ascertain which choice-of-law rules to use to determine which state's substantive law governs in this case grounded on federal-question jurisdiction.

In diversity cases, we apply the choice-of-law rules of the forum state to decide state-law questions. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). But in federal question (such as this one) and other cases in which our jurisdiction is not grounded in diversity, our decisions have been inconsistent—sometimes we have applied the federal common law to the "choice of choice-of-law principles," *Cassirer v.*

---

[11] At oral argument, the insurers' counsel asserted that CERCLA protects the insurers' interests. We disagree. That statute gives the Department a cause of action against their insured, Collins & Aikman, but we cannot discern how it protects any interest of a CERCLA defendant's insurers.

[12] Whether a putative intervenor possesses an interest under Rule 24(a)(2) is a question of *federal* law. *See* 7C Wright, Miller & Kane, *Federal Practice & Procedure: Civil* § 1905 (3d ed. Apr. 2022 update) ("[T]he right to intervene in a civil action pending in a United States District Court is governed by Rule 24 and not by state law."). Necessarily subsumed within that federal question is whether a putative intervenor's asserted interest is "protectable under some law," i.e., protectable under *either* federal or state law.

*Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1507 (2022), and in other cases we have applied forum state rules, *see Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 862 (9th Cir. 2022) (Baker, J., concurring) (collecting cases).

The Supreme Court's recent decision in *Cassirer* dispels this uncertainty and establishes a clear rule of decision governing choice of choice-of-law in federal question and other cases in which our jurisdiction is not grounded in diversity. "Judicial creation of federal common law to displace state-created [choice-of-law] rules must be 'necessary to protect uniquely federal interests.' " *Cassirer*, 142 S. Ct. at 1509 (quoting *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981)). Where, as here, state law supplies the "the substantive rule of decision," there is no federal interest in "supplant[ing] the otherwise applicable choice-of-law rule." *Id*. We therefore apply the choice-of-law principles of the forum state, California, to determine whether the insurers have a legally protected interest under state law for purposes of Rule 24(a)(2).

2

California courts apply two sets of choice-of-law rules. Insofar as the state law question at issue involves the interpretation of contracts, state courts look to Civil Code § 1646, which provides that if a contract "indicates a place of performance," it "is to be interpreted according to the law and usage of the place where it is to be performed," but if it "does not indicate a place of performance," it "is to be

interpreted according to the law and usage of the place where it was made." *Frontier Oil Corp. v. RLI Ins. Co.*, 63 Cal. Rptr. 3d 816, 826 (Ct. App. 2007) (cleaned up); *see also* Cal. Civ. Code § 1646. In all other contexts, California courts "analyze the governmental interests of the various jurisdictions involved to select the most appropriate law." *Wash. Mut. Bank, FA v. Super. Ct.*, 15 P.3d 1071, 1077 (Cal. 2001).

Under both approaches, when (as here) the parties have not suggested that some other state's law applies, California courts will apply their own state's law. *Cf. Ace Am. Ins. Co. v. Fireman's Fund Ins. Co.*, 206 Cal. Rptr. 3d 176, 181 n.1 (Ct. App. 2016) (applying California law in insurance coverage dispute involving the interpretation of contracts because the parties did not address choice of law); *Hurtado v. Super. Ct.*, 522 P.2d 666, 670 (Cal. 1974) (under the governmental interests analysis, "generally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law" of another jurisdiction). We therefore apply California substantive law to determine whether the insurers have a legally protected interest for purposes of Rule 24(a)(2).

3

The insurers contend that the California direct action statute, Cal. Ins. Code § 11580, supplies them with a legally protected "interest" under Rule 24(a)(2). The Supreme Court of California recognized such an interest in *Clemmer v. Hartford Insurance Co.*, 587 P.2d 1098 (Cal. 1978), *overruled on other grounds by Ryan v.*

*Rosenfeld*, 395 P.3d 689 (Cal. 2017). In *Clemmer*, the court held that an insurer had an interest under the direct action statute in preventing its noncooperating incarcerated insured's default, and its failure to take any available steps to protect that interest estopped it from contesting a default judgment entered against its insured. *See id.* at 1109 (the insurer "knew or should have known that judgment against its insured would form the basis for a later claim against it under Insurance Code section 11580," and "[h]aving failed to pursue remedies thus available to it, it cannot now claim prejudice or lack of opportunity to litigate damages").[13] Section 11580 thus protected the insurer's interest in preventing entry of default judgment against its insured, notwithstanding that the former had "disclaimed coverage." *Id.* at 1108.

The California Court of Appeal has since consistently followed *Clemmer* and repeatedly held that insurers have a protectable interest under § 11580 in preventing defaults by their insureds that are incapable of defending themselves or otherwise unwilling to do so.[14]

---

[13] The court identified those remedies as intervention, *id.* at 1108, or, absent sufficient notice to intervene, an application to set aside the entry of default judgment, *id.* at 1109.

[14] *See, e.g.*, *Jade K. v. Viguri*, 258 Cal. Rptr. 907, 912–13 (Ct. App. 1989) (holding that liability insurer had a cognizable interest in preventing the default of its insured) (citing *Clemmer*); *Reliance Ins. Co. v. Super. Ct.*, 100 Cal. Rptr. 2d 807, 810 (Ct. App. 2000) ("Thus, where the insurer may be subject to a direct action under Insurance Code section 11580 by a judgment creditor who has or will obtain a default judgment in a third party action against the insured, intervention is appropriate.")

In response to the insurers' argument that § 11580 protects their interest in defending Collins & Aikman against default, DTSC argues—echoing the district court's reasoning—that they forfeited that interest by refusing to admit coverage. In support of this proposition, the Department relies primarily upon *Gray v. Begley*, 106 Cal. Rptr. 3d 729 (Ct. App. 2010); *Hinton v. Beck*, 98 Cal. Rptr. 3d 612 (Ct. App. 2009); and *Noya v. A.W. Coulter Trucking*, 49 Cal. Rptr. 3d 584 (Ct. App. 2006).[15]

In *Gray*, an insurer providing a defense under a reservation of rights sought to intervene when its insured settled without the insurer's consent. The Court of Appeal held that the insurer had a protectable interest for intervention purposes, reasoning that "the key factor . . . *is whether the insurer provided the insured with a defense*,

---

(citing *Clemmer*); *Garamendi v. Golden Eagle Ins. Co.*, 10 Cal. Rptr. 3d 724, 738 (Ct. App. 2004) (same) (citing *Reliance*); *Kaufman & Broad Cmtys., Inc. v. Performance Plastering, Inc.*, 39 Cal. Rptr. 3d 33, 34 (Ct. App. 2006) ("In this case we hold when an insurance company seeks to provide a defense in pending litigation for a corporation that has been suspended for nonpayment of its taxes, the insurance company must intervene in the action to protect its own interests and those of its insured."); *see also Nasongkhla v. Gonzalez*, 34 Cal. Rptr. 2d 379, 381 (App. Dep't Super. Ct. 1994) ("We are satisfied that under *Clemmer*, unless State Farm is allowed to intervene, it may have no other opportunity to litigate fault or damage issues in any action brought by plaintiff on its judgment under Insurance Code section 11580.").

[15] The Department also relies on various federal cases applying state law other than California's. *See, e.g.*, *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629 (1st Cir. 1989). These authorities are not germane to whether the insurers have a protectable interest under California law.

23

not whether the insurer denied coverage." 106 Cal. Rptr. 3d at 740 (emphasis added). Like the insurer in *Gray*—and unlike the insurers in *Hinton*, who refused to provide a defense, *see* 98 Cal. Rptr. 3d at 616, and in *Noya*, who denied coverage and refused to provide a defense, *see* 49 Cal. Rptr. 3d at 588—the insurers here seek to provide a defense. The insurers explained to the district court that, if allowed to intervene, they would defend Collins & Aikman's interests by challenging its alleged liability for site contamination and whether DTSC's remediation actions are consistent with the statutory requirements for a CERCLA action, as well as by arguing "that DTSC is not entitled to recover prejudgment interest" or "fixed costs" that have "no relation to the site."

We emphasize here that none of the insurers had previously denied a defense to their insured. The insurers only received notice of the litigation against Collins & Aikman from DTSC's agent, Arcina Risk Group, more than four years after it commenced and after the clerk's entry of default. During that time, the court-appointed and DTSC-paid receiver for Collins & Aikman never notified the insurers of DTSC's claims, let alone sought a defense from them. The insurers timely sought to defend Collins & Aikman through the only practical means by which they could do so—by intervention directly into the case.

Under our reading of *Clemmer* and its progeny, what is dispositive here is that the insurers timely sought to intervene to defend their helpless insured and prevent

a default judgment. An insurer's coverage position is irrelevant under the direct action statute so long as the insurer timely acts to defend a helpless insured and prevent its default. *See Clemmer*, 587 P.2d at 1106, 1109; *Gray*, 106 Cal. Rptr. 3d at 740.

We therefore hold that under the California direct action statute, a primary or excess insurer[16] that seeks to timely intervene in a tort action for the stated purpose of defending its insured that is either unwilling or incapable of defending itself has a protectable interest for purposes of Rule 24(a)(2), no matter what position, if any, the insurer has taken as to coverage.[17] In this case, the insurers promptly moved to intervene to defend their insured and prevent the entry of default judgment upon

---

[16] We read the rule of *Clemmer* and its progeny as extending to excess insurers such as Allianz. The rationale of *Clemmer* is that under § 11580, an insurer has an interest in preventing the entry of default judgment against its insured. Excess insurers have such an interest as much as primary insurers, especially given the facts in this case. Excess insurers ordinarily have no right to participate in the defense of their insured (absent contractual language to the contrary) because we assume that excess carriers' interests are protected by the primary insurers who will vigorously defend against liability. *Cf. Ticor Title Ins. Co. v. Employers Ins. of Wausau*, 48 Cal. Rptr. 2d 368, 373 (Ct. App. 1995). Not so here. The receiver for the insured, Collins & Aikman, apparently colluded with DTSC and declined to defend the lawsuit, leading to the entry of default. Allianz thus has an interest in challenging the clerk's default and preventing the entry of default judgment.

[17] We express no view on the *coverage* implications, if any, of Continental's failure to reserve its rights, Century's disclaimer of coverage, and Allianz's self-described reservation of rights in conjunction with their respective intervention motions taken for the purposes of defending their insured. *Cf. Kaufman & Broad*, 39 Cal. Rptr. 3d at 40 ("[A]n insurer who seeks to intervene and protect its coverage defenses may provide an explicit reservation of rights to its client and allege that reservation of rights within its pleading to put the plaintiff on notice that the insurance company is reserving those rights and asserting coverage defenses.").

learning of the Department's suit. In denying their motions to intervene as of right for lack of a protectable interest, the district court erred as a matter of law, and we reverse.

## V

Finally, the insurers appeal the district court's denial of their Rule 55(c) motions to set aside the clerk's entry of default against Collins & Aikman. *See* Fed. R. Civ. P. 55(a), (c).

DTSC asserts that we lack appellate jurisdiction because such an order is interlocutory. We agree. "Whereas we have jurisdiction to review a district court's order denying a motion to set aside the entry of a default judgment, we lack jurisdiction over an appeal from an order denying a motion to set aside the entry of default alone." *Symantec Corp. v. Global Impact, Inc.*, 559 F.3d 922, 923 (9th Cir. 2009) (cleaned up); *see also Haw. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 512 (9th Cir. 1986) (noting, in case involving review of entry of default judgment, rather than clerk's default as here, that "[o]ur review necessarily encompasses the entry of default and the conditional order setting the default aside, *as neither of those orders constituted appealable final orders*") (emphasis added); *Baker v. Limber*, 647 F.2d 912, 916 (9th Cir. 1981) (characterizing appellee as "correct" that appeal was premature where district court entered default but had not yet issued default judgment).

Thus, we dismiss the insurers' appeal of the denial of their motions to set aside the clerk's default. That said, on remand the district court may reconsider its denial of those motions.[18]

**REVERSED in part, DISMISSED in part, and REMANDED.** The parties shall bear their own costs.

---

[18] As noted above, the reasons for the district court's denial of the insurers' motions to set aside the default are unclear at best. Insofar as the predicate for that order was the intervention denial, our decision today reverses that predicate.

*Cal. Dep't Toxic Substances Control v. Century Indemnity Co.*, *et al.*, 20-15029

COLLINS, Circuit Judge, concurring in part and concurring in the judgment:

As the majority correctly notes, whether the insurers in this case should have been permitted to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) "turns on whether they have an 'interest' under" that rule.  *See* Opin. at 14.  We have held that, in order for a putative intervenor to establish that it has a "significantly protectable" interest sufficient to support intervention as of right under Rule 24(a)(2), it must show that its asserted interest "is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (quoting *Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)).  Here, there is no dispute that if the insurers have an interest "protectable under some law," then there exists "a relationship between the legally protected interest and the claims at issue."  For the reasons stated in Part IV(B)(3) of the majority opinion, I agree that the insurers here have established such a significantly protectable interest and that the district court therefore erred in denying intervention as of right.  And for the reasons set forth in Part V of the majority opinion, I also agree that we lack jurisdiction over the insurers' appeal from the denial of their motions to set aside the default of their insured.

1

Accordingly, I join Parts I, II, IV(B)(3), and V of the court's opinion, and I concur in the court's judgment.

Sections III, IV(A), IV(B)(1), and IV(B)(2) of the majority opinion respectively address additional issues regarding standing, the development of the law leading up to our articulation of Rule 24's standards in our en banc opinion in *Wilderness Society*, and choice-of-law principles.  The matters discussed in these sections were not raised, briefed, or contested by the parties on appeal.  While it is certainly appropriate for a court to raise a jurisdictional issue of standing *sua sponte* when the issue is close or difficult, that is not the case here.  Because I therefore perceive no reason for us to discuss any of these additional points, I do not join Parts III, IV(A), IV(B)(1), and IV(B)(2) of the majority opinion.