# EXHIBIT B

STATE OF CALIFORNIA — ENVIRONMENTAL PROTECTION AGENCY       PETE WILSON, Governor

**DEPARTMENT OF TOXIC SUBSTANCES CONTROL**
10151 CROYDON WAY, SUITE 3
SACRAMENTO, CA 95827-2106



(916) 255-3545

March 12, 1996

Mr. James D. Moore III
Environmental Manager
Collins & Aikman Products Co.
P.O. Box 32665
Charlotte, North Carolina 28232

WICKES FOREST INDUSTRIES, ELMIRA CALIFORNIA, SOLANO COUNTY: SITE CERTIFICATION

Dear Mr. Moore:

    Enclosed is a copy of the signed final Operation and Maintenance Agreement (OMA) for the Wickes Forest Industries site in Elmira, California. The OMA incorporates the language that was agreed upon through negotiations between DTSC and the Collins & Aikman Products Co (CAPCo). With the approval of the October 16, 1995, Operation and Maintenance Manual (OMM) and the signing of the OMA, DTSC hereby certifies implementation of the final remedial actions at the Wickes Site. Be advised that, in addition to the implementation of the OMM, the OMA contains paragraphs which specify compliance conditions. It is CAPCo's responsibility to insure that these conditions are met.

    DTSC has also completed a review of the March 4, 1996, transmittal of the sheet for Wickes. The fact sheet was prepared by Levine * Fricke on behalf of CAPCo and it is intended to present a description of the remedial actions conducted at the site as well as the activities to be conducted as part of ongoing operation and maintenance. By this letter DTSC approves the fact sheet. It shall be distributed to the recipients identified on the Wickes mailing list mail and the DTSC mandatory mailing list within 15 days of the date of this letter. Attached is the latest copy of DTSC,s mandatory mailing list.

    If you have any questions or comments please contact Timothy Patenaude at (916) 255-3580.

                              Sincerely,

                              James L. Tjosvold, P.E.
                              Branch Chief
                              Central California Cleanup
                                  Operations Branch

Enclosure



cc: John B. Orgain, Esq.
    Senior Counsel
    Collins & Aikman Corporation
    P.O. Box 32665
    Charlotte, North Carolina 28232

    Mr. Frank Lorincz
    Levine-Fricke
    1900 Powell Street, 12th Floor
    Emeryville, California 94608

    Mr. Lawrence Pearson, P.E.
    Supervising Engineer
    Regional Water Quality Control Board
    Central Valley Region
    3443 Routier Road
    Sacramento, California 95827

    Greg Mackin
    Collins & Aikman Corporation
    P.O. Box 32665
    Charlotte, North Carolina 28232

REGION 1
MANDATORY MAILING LIST
8-17-95

SIERRA CLUB
LIZ ALLEN
394 BLAISDELL
CLAREMONT   CA 91711

TOXICS ASSESSMENT GROUP
JODY SPARKS
P O BOX 73620
DAVIS   CA 95617

CA COUNCIL FOR ENVIRONMENT AND
  ECONOMIC BALANCE
LISA BICKER
100 SPEAR STREET   SUITE 805
SAN FRANCISCO   CA 94105

CA DEPT TOXICS
MARCIA MURPHY   CHIEF
PUBLIC PARTICIPATION
P O BOX 806
SACRAMENTO   CA 95812-0806

CA DEPT TOXICS
JESSE R. HUFF DIRECTOR
P O BOX 806
SACRAMENTO   CA 95812-0806

CA DEPT TOXICS-REGION 1
J   BAKER
EXTERNAL AFFAIRS LIAISON
10151 CROYDON WAY   SUITE 3
SACRAMENTO   CA 95827

CITIZENS FOR A BETTER ENVIRONMENT
MIKE BELLIVEAU
501 SECOND STREET   SUITE 305
SAN FRANCISCO   CA 94107

ENVIRONMENTAL HEALTH COALITION
DIANE TAKVORIAN
1717 KETTNER   SUITE 100
SAN DIEGO   CA 92101

GREENPEACE
BRADLEY ANGEL
568 HOWARD STREET   3RD FLOOR
SAN FRANCISCO   CA 94105-3008

CA DEPT TOXICS-REGION 1
LARRY WOODSON
PUBLIC PARTICIPATION SUPERVISOR
10151 CROYDON WAY   SUITE 3
SACRAMENTO   CA 95827

CENTER FOR COMMUNITY ACTION
 AND ENVIRONMENTAL JUSTICE
PENNY NEWMAN
P O BOX 33124
RIVERSIDE   CA 92519

LEAGUE OF WOMEN VOTERS
ANN COOMBS
5?? GUADALUPE DRIVE
L   ALTOS   CA 94022

CALPIRG
MARY RAFTERY
LEGISLATIVE ADVOCATE
926 J STREET   SUITE 713
SACRAMENTO   CA 95814

captured and routed off-site; and affected groundwater to be extracted and treated with an on-site electrochemical co-precipitation treatment system. The RAPs also set forth the chemicals to be remediated, remediation levels, requirements for monitoring capture zones, and reporting requirements.

4. **Type of Site:**

   RCRA-Permitted Facility _____     Bond-funded _____

   RCRA Facility Closure _____       RP-funded __X__

   Federal Facility _____            NPL _____

   Other:

   Explain Briefly:

5. **Size of Site:**

   Small _____   Medium _____   Large __X__   Extra Large _____

6. **Dates of Remedial Action**

   • Ground Water Extraction and Treatment - December 1983.

   • Soil removal, asphalt cap and expanded groundwater extraction and treatment - October 1994.

7. **Response Action Taken on Site:**

   _____ Initial Removal or Remedial Action (site inspection/sampling)
   __X__ Final Remedial Action
   _____ RCRA enforcement/closure action
   _____ No action, further investigation verified that no cleanup action at site was needed.

   A. Type of Remedial Action:

   • Soil excavation and off-site disposal.
   • Asphalt cap.
   • Ground water extraction and treatment in an on-site chemical treatment plant.
   • Deed Restriction.

   B. Estimated quantity of waste associated with the site:

   1. __X__ removed soil              Amount: 3,040 Cu Yrds
   2. __X__ untreated (capped sites)  Amount: 4.3 acres
   3. __X__ treated ground water      Amount: 45,000,000 gallons to date

2

8. <u>Cleanup Levels/Standards</u>

   A. What were the cleanup standards established by DTSC/EPA pursuant to the final RAP or workplan (if cleanup occurred as the result of a removal action (RA) or interim remedial measures (IRM) prior to development of a RAP)?

   50 part per billion total chromium in groundwater

   B. Were the specified cleanup standards met? Yes____ No _X_

   C. If "no", why not:

   Ground water is continuing to be extracted and treated pursuant to an operation and maintenance agreement.

9. <u>DTSC Involvement in the Remedial Action:</u>

   A. Did DTSC order the Remedial Action?

   Yes _X_ No ____

   Date of order: 02/26/84

   B. Did DTSC/EPA review and approve:

   _X_ Sampling Analysis Procedures   Date: 02/25/94

   _X_ Health & Safety Protections    Date: 02/25/94

   _X_ Removal/Disposal Procedures    Date: 02/25/94

   _X_ Remedial Action Plan           Date: 02/25/94

   C. If site was abated by a responsible party, did DTSC receive a signed statement from a licensed professional on all Remedial Action?

   Yes _X_ No ___   Dates (from) 10/30/84 (to) 06/30/95

   D. Did a registered engineer or geologist verify that acceptable engineering practices were implemented?

   Yes _X_ No ___   Name: Mark Knox

   Date of verification: 12/13/94

   E. Did DTSC confirm completion of all Remedial Action?

   Yes ___ No _X_ Date of verification: 03/16/95

3

F.   Did DTSC actually perform the Remedial Action?

   Yes___  No_X_  Name of Contractor:

G.   Was there a community relations plan in place?

   Yes_X_  No___

H.   Was a remedial action plan developed for this site?

   Yes_X_  No___

I.   Did DTSC/USEPA hold a public meeting regarding the draft RAP?

   Yes_X_  No___

J.   Were public comments address?  Yes_X_  No___

   Date of DTSC/USEPA analysis and response: 02/25/94

K.   Are all of the facts cited above adequately documented in DTSC files?  Yes_X_  No___

   If no, identify areas where documentation is lacking:

10. **EPA Involvement in the Remedial Action:**

   A.   Was the EPA involved in the site cleanup?  Yes___  No_X_

      If yes, did EPA concur with all remedial actions?

      Yes___  No___

   B.   EPA comments:

   C.   EPA staff involved in cleanup:

11. **Other Regulatory Agency Involvement in the Cleanup Action:**

   Agency:          Activity:

   _X_  RWQCB       Waste Discharge Requirements, NPDES

   ___  ARB         _____

   ___  CHP         _____

   ___  Caltrans    _____

   ___  Other       _____

   Name of contact persons and agency: RWQCB - Issac Kiang

4

12. <u>Post-Closure Activities:</u>

   A. Will there be post-closure activities at this site?

   Yes __X__ No_____

   If yes, describe:

   Pursuant to an operation and maintenance agreement, the Collins & Aikman Products Co. will continue to extract, treat, sample and analyze ground water from the site. There are also operation, maintenance, sample and analysis procedures associated with the on-site chemical treatment system and asphalt cap which are described in the June 20, 1995, Operation and Maintenance Plan.

   B. Have post-closure plans been prepared and approved by the DTSC/USEPA?  Yes __X__ No_____

   C. What is the estimated duration of post-closure activities? 10 years.

   D. Are deed restrictions proposed or in place? Yes __X__ No____

   If yes, have deed restrictions been recorded with the County Recorder? Yes __X__ No____ Date: 10/27/95

   If no, who is responsible for assuring that the deed restrictions are recorded?

   Who is the Division contact?

   E. Has cost recovery been initiated?  Yes __X__ No_____

   If yes, amount received: $43,731.83

   F. Were local planning agencies notified of the cleanup action?  Yes_____ No __X__

   If yes, the name and address of agency:

13. <u>Expenditure of Funds and Source:</u>

   _____HWCA    $_____    _____HSA   $_____

   _____HSCF    $_____    _____RCRA  $_____

   __X__ RP      $<u>5,500,000 Aprox</u>   _____Other $_____

   _____Federal Cooperative Agreement $_____

5

14. **Certification Statement:** Based upon the information which is currently and actually known to DTSC,

   ___ DTSC has determined that all appropriate response actions have been completed, that all acceptable engineering practices were implemented and that no further removal/remedial action is necessary.

   ___ DTSC has determined, based upon a remedial investigation or site characterization that the site poses no significant threat to public health, welfare or the environment and therefore implementation of removal/remedial measures is not necessary.

   _X_ DTSC has determined that all appropriate removal/remedial actions have been completed and that all acceptable engineering practices were implemented; however, the site requires ongoing operation and maintenance (O&M) and monitoring efforts. The site will be deleted from the "active" site list following (1) a trial operation and maintenance period and (2) execution of a formal written settlement between DTSC and the responsible parties, if appropriate. However, the site will be placed on DTSC's list of sites undergoing O&M to ensure proper monitoring of long-term clean-up efforts.

15. **Additional Comments:**

   Chromium sludge generated from the treatment of ground water is disposed in an off-site permitted disposal facility. Treated ground water is used to recharge the aquifer by means of existing drainage ditches.

16. **Certification of Remedial Action:**

   I hereby certify that the foregoing information is true and correct to the best of my knowledge.

   1. _[signature]_ Project Manager    3/6/96 Date
   2. _[signature]_ Fran Anderson, Unit Chief    3/6/96 Date
   3. _[signature]_ Branch Chief    3/7/96 Date

6

## SITE CERTIFICATION SYNOPSIS

NAME AND LOCATION OF SITE:

    Wickes Forest Industries
    147 A Street
    Solano County
    Elmira, California 95625

DATE PROJECT BEGAN: February 1983

DATE PROJECT CERTIFIED: March 1996

DESCRIPTION OF THE SITE AND CONTAMINANTS:

    During the 1970's the site was used as a wood treatment facility. Lumber was treated with preserving solutions containing arsenic, chromium, and copper. Preserving fluid spills and dribble from treated lumber contaminated the soils at the site with these metals. Chromium has migrated through the soils and contaminated the ground water beneath the site and beneath the adjacent properties.

DESCRIPTION OF REMOVALS AND REMEDIAL ACTIONS:

    Soils with concentrations of metals that exceeded the hazardous waste threshold were excavated and disposed at a permitted off-site disposal facility (89 cubic yards). An asphalt cap was constructed on the site to prevent direct exposure to metals in concentrations above background (25,150 square yards). A ground water extraction and treatment system was constructed to remediate chromium ground water contamination (15 gallons per minute average flow).

DESCRIPTION OF PROBLEMS ENCOUNTERED WHICH CAUSE MAJOR DELAYS:

    For the purpose of investigation, the site was divide into two operable units, wood treatment unit (south) and the wood storage unit (north). During the remedial investigation, preliminary sampling data indicated that the northern portion of the site was not contaminated. A remedial action plan was prepared and implemented for the southern portion of the site. Subsequent confirmation sampling identified additional soil contamination in the northern portion. Consequently, a second remedial action plan, design, and implementation had to be conducted.

DESCRIPTION OF ACCOMPLISHMENTS UNIQUE TO THIS PROJECT:

    To date, approximately 45 millions gallons of ground water has been extract and treated to below clean up goals. Sludge from the treatment process is disposed at an off-site disposal facility. Treated ground water recharges the existing aquifer by means of an existing drainage ditch. A storm water management system has been constructed to divert collected rain water away from the asphalt cap.

FINAL USE OF SITE:

    The site is currently fenced and is vacant. However, the responsible party is conducting research into potential use of the site as a railroad equipment or highway maintenance equipment storage facility.