Rob Bonta
Attorney General of California
Laura J. Zuckerman
Supervising Deputy Attorney General
Thomas Schumann (Counsel for service)
State Bar No. 324559
James Potter, State Bar No. 166992
Deputy Attorneys General
1300 I Street
Sacramento, CA
Telephone:  (916) 210-7790
Fax:  (916) 731-2128
E-mail:  Thomas.Schumann@doj.ca.gov
*Attorneys for Plaintiffs California
Department of Toxic Substances Control and Toxic
Substances Control Account*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,**<br><br>Plaintiffs,<br><br>v.<br><br>**JIM DOBBAS, INC., a California corporation, et.al.**<br><br>Defendants.<br><br><br>**AND RELATED CROSS-ACTIONS.** | 2:14-cv-00595-WBS-JDP<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTIONS TO DISMISS INTERVENORS' COUNTERCLAIMS AND TO STRIKE AN AFFIRMATIVE DEFENSE AND THE DEMAND FOR JURY TRIAL FROM INTERVENORS' ANSWER**<br><br>Date:      June 12, 2023<br>Time:      1:30 p.m.<br>Courtroom:   5<br>Judge:      Hon. William B. Shubb<br>Trial Date:  Not set.<br>Action Filed:  March 3, 2014 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................... 2

PROCEDURAL HISTORY ........................................................................................ 3

ARGUMENT .............................................................................................................. 4

     I.     Overview of CERCLA Liability ..................................................... 4

     II.    The Court Should Dismiss Intervenors' Counterclaims in Their Entirety............ 5

          A.    Legal Standard for Motion to Dismiss ........................................ 5

          B.    Intervenors' Counterclaims Are Entirely Dependent on Intervenors' Unsupported Conclusion that DTSC was an Operator of the Site. ............. 6

          C.    Neither of the Allegations in Paragraph 14 of Intervenors' Counterclaims is Legally Sufficient to State a Claim that DTSC Operated the Site. .................................................................................. 6

                1.    The Ability-to-Control Allegation Is Not Sufficient To Establish Operator Liability Under the Ninth Circuit's 2020 Decision in *United States v. Sterling Centrecorp*. ........................ 7

                2.    Nor Is the Causation Allegation Of Paragraph 14 Sufficient To Establish Operator Liability.................................................... 10

                3.    The Factual Allegations of the Counterclaims Show Only that DTSC Oversaw and Conducted Response Actions at the Site and Do Not Support Either of the Paragraph 14 Allegations. .................................................................................. 12

                4.    Because Intervenors' Paragraph 14 is Pled in the Alternative, the Ability-to-Control and the Contribution Allegations Must Each State a Claim.......................................... 14

          D.    Allowing Intervenors to Maintain These Counterclaims without Detailed Allegations is Inconsistent with CERCLA............................... 15

     III.   The Court Should Grant DTSC's Motion to Strike. ............................. 16

          A.    Legal Standard for Motion to Strike ........................................ 16

          B.    The Court Should Strike Intervenors' Affirmative Defense of Comparative and Contributory Negligence. ............................................. 16

                1.    Limited Affirmative Defenses Are Available Under CERCLA. ..................................................................................... 16

                2.    Comparative and Contributory Negligence Are Not Among the Defenses Available Under CERCLA Cost Recovery or Declaratory Relief Actions........................................................ 17

          C.    The Court Should Strike Intervenors' Jury Trial Demand....................... 17

                1.    The Seventh Amendment Guarantees a Right to a Jury Trial Only for Claims Seeking Relief That Is Not Equitable in Nature. ................................................................................. 17

**TABLE OF CONTENTS**
(continued)

Page

2. The Parties' Claims Fall Within Settled Precedent, Acknowledged by This Court, That CERCLA Cost Recovery and Contribution Claims Seek Equitable Relief and Are Not Covered by the Seventh Amendment. ...................... 18

3. The Court's Reasons for Denying DTSC's Earlier Motion to Strike the Jury Trial Demand are Not Applicable Here. ............... 19

CONCLUSION ............................................................................................................ 20

ii

# TABLE OF AUTHORITIES

**Page**

CASES

*Adobe Lumber, Inc. v. Hellman*
   658 F. Supp. 2d 1188 (E.D. Cal. 2009)............................................................... 2

*AMW Materials Testing, Inc. v. Town of Babylon*
   584 F.3d 436 (2d Cir. 2009)............................................................................... 19

*Asarco LLC v. NL Indus., Inc.*
   No. 4:11-CV-00864-JAR, 2012 WL 12350736 (E.D. Mo. Jan. 19, 2012)............ 13

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ..................................................................................... 5, 12

*B.F. Goodrich Co. v. Murtha*
   958 F.2d 1192 (2d Cir. 1992)........................................................................ 4, 15

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ........................................................................................... 5

*Burlington N. & Santa Fe Ry. Co. v. United States*
   556 U.S. 599, 602 (2009) ................................................................................. 15

*Cal. Dep't of Toxic Substances Control v. Interstate Non-Ferrous Corp.*
   298 F. Supp. 2d 930 (E.D. Cal. 2003)..................................................... 9, 11, 15

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*
   No. 2:14-595, 2014 WL 4627248 (E.D. Cal. Sept. 16, 2014)........................... 18

*California Dep't of Toxic Substances Control v. Alco Pac., Inc.*
   217 F. Supp. 2d 1028 (C.D. Cal. 2002).................................................... 16, 18

*California Dep't of Toxic Substances Control v. NL Indus., Inc.*
   No. 220CV11293SVWAGR, 2021 WL 5933102 (C.D. Cal. Sept. 24, 2021)....... 9

*California Dep't of Toxic Substances Control v. Westside Delivery, LLC*
   888 F.3d 1085 (9th Cir. 2018)........................................................................... 16

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*
   494 U.S. 558 (1990)......................................................................................... 17

*City of Lodi v. Randtron*
   118 Cal. App. 4th 337 (2004)............................................................................. 2

*City of W. Sacramento, California v. R & L Bus. Mgmt.*
   No. 2:18-CV-900 WBS EFB, 2018 WL 3198118 (E.D. Cal. June 27, 2018) ....... 14

iii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Dedham Water Co. v. Cumberland Farms Dairy, Inc.*
   805 F.2d 1074 (1st Cir. 1986) ............................................... 15

*FMC Corp. v. U.S. Dep't of Com.*
   29 F.3d 833 (3d Cir. 1994).................................................... 6

*Granite Rock Co. v. Int'l Bhd. of Teamsters, Freight, Constr., Gen. Drivers,*
   *Warehousemen & Helpers, Loc. 287*
   649 F.3d 1067 (9th Cir. 2011)............................................... 17

*Great–W. Life & Annuity Ins. Co. v. Knudson*
   534 U.S. 204 (2002)............................................................. 19

*Gregory Vill. Partners, L.P. v. Chevron U.S.A.,* Inc.
   805 F. Supp. 2d 888 (N.D. Cal. 2011) ................................ 12

*Hanford Downwinders Coal., Inc. v. Dowdle*
   71 F.3d 1469 (9th Cir. 1995)................................................ 4

*Hatco Corp. v. W.R. Grace & Co. Conn.*
   59 F.3d 400 (3d Cir. 1995).............................................. 18, 19

*Interinsurance Exch. of the Auto. Club v. Electrolux Home Care Prod., Inc.*
   No. SACV1401817CJCJCGX, 2014 WL 12588462 (C.D. Cal. Dec. 16, 2014).................. 11

*J & J Sports Prods., Inc. v. Mayreal II, LLC*
   849 F. Supp. 2d 586 (D. Md. 2012) .................................... 14

*Long Beach Unified Sch. Dist. v. Dorothy B. Godwin Cal. Living Trust*
   32 F.3d 1364 (9th Cir. 1994)............................................ 8, 9

*Michigan Dep't of Env't Quality v. Bestfoods*
   524 U.S. 924 (1998) .......................................................... 11

*N.J. Dep't of Env't Prot. v. Amerada Hess Corp.*
   No. CV 15-6468 (FLW), 2018 WL 2317534 (D.N.J. May 22, 2018) .................. 19

*Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*
   596 F.3d 112 (2d Cir. 2010)................................................. 4

*PPG Indus. Inc. v. United States*
   957 F.3d 395 (3d Cir. 2020)................................................ 15

*Ramos-Soto v. C.R. Bard, Inc.*
   No. CV 21-1506, 2022 WL 1056581 (E.D. Pa. Jan. 14, 2022) ............ 11

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Shroyer v. New Cingular Wireless Servs., Inc.*
    622 F.3d 1035 (9th Cir. 2010) .................................................................. 5

4

*TDY Holdings, LLC v. United States*

5

    122 F. Supp. 3d 998 (S.D. Cal. 2015) ................................................. 4, 15

6

*Team Enterprises, LLC v. W. Inv. Real Estate Trust*

7

    647 F.3d 901 (9th Cir. 2011)..................................................................... 5

8

*Tull v. United States*
    481 U.S. 417-18 (1987) .......................................................................... 17

9

*United States v. Bestfoods*

10

    524 U.S. 51 (1998) ......................................................................... 4, 8, 11

11

*United States v. Chapman*

12

    146 F.3d 1166 (9th Cir. 1998) ................................................................ 15

13

*United States v. Cordova Chem. Co. of Michigan*
    113 F.3d 572 (6th Cir. 1997)................................................................... 11

14

*United States v. Dart Indus., Inc.*

15

    847 F.2d 144 (4th Cir. 1988).................................................................... 8

16

*United States v. Davis*
    20 F. Supp. 2d 326 (D.R.I. 1998) ........................................................... 11

17

*United States v. Ne. Pharm. & Chem. Co.*

18

    810 F.2d 726 (8th Cir. 1986).................................................................. 18

19

*United States v. Rohm and Haas Co.*

20

    939 F. Supp. 1142 (D.N.J. 1996) ........................................................... 16

21

*United States v. Sterling CentreCorp Inc.*

22

    977 F.3d 750 (9th Cir. 2020)....................................................... 7, 8, 9, 15

23

*United States v. Twp. of Brighton*
    153 F.3d 307 (6th Cir. 1998)..................................................................... 7

24

*Visser v. Caribbean Cruise Lines, Inc.*

25

    No. 1:13-CV-1029, 2014 WL 12921353 (W.D. Mich. Apr. 4, 2014) ................................... 14

26

*Whittlestone, Inc. v. Handi-Craft Co.*

27

    618 F.3d 970 (9th Cir. 2010).................................................................. 16

28

Mem. In Supp. Pls.' Mot. to Dismiss Intervenors' Counterclaims And to Strike an Affirmative Defense and the
Demand for Jury Trial from Intervenors' Answer (2:14-cv-00595-WBS-JDP)

## TABLE OF AUTHORITIES
### (continued)

**Page**

**FEDERAL STATUTES**

42 U.S.C.

§ 9601 ................................................................................................................ 1

§ 9601(20)(A)(ii) ............................................................................................... 7

§ 9601(20)(D) .................................................................................................. 15

§ 9601(21) .......................................................................................................... 5

§ 9607 ....................................................................................... 5, 16, 18, 19

§ 9607(a). ....................................................................................................... 1, 5

§ 9607(b) ......................................................................................................... 16

§ 9607(d)(2) .......................................................................... 10, 11, 12, 15

§ 9613(f) ..................................................................................................... 18, 19

§ 9613(g) ......................................................................................................... 18

§ 9613(g)(2) ....................................................................................... 16, 18, 19

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amendment VII .......................................................................... 17

**FEDERAL RULES**

Federal Rules of Civil Procedure

12 ....................................................................................................................... 1

12(b)(6) ............................................................................................................. 5

12(f) ................................................................................................................. 16

**STATE STATUTES**

Cal. Health & Safety Code

§ 25300 *et seq.* ...................................................................................... *passim*

§ 25355 ............................................................................................................. 2

# TABLE OF AUTHORITIES
## (continued)

Page

Cal. Health & Safety Code (continued)

§ 25356 .................................................................................................................... 2

§ 25258.3 ................................................................................................................. 2

§ 58004 .................................................................................................................... 2

§ 58009 .................................................................................................................... 2

Mem. In Supp. Pls.' Mot. to Dismiss Intervenors' Counterclaims And to Strike an Affirmative Defense and the
Demand for Jury Trial from Intervenors' Answer (2:14-cv-00595-WBS-JDP)

**INTRODUCTION**

This matter concerns the releases and threatened releases of highly toxic wastes and materials from the property located at 147 A Street in Elmira, California ("Site"). Plaintiffs California Department of Toxic Substances Control and the California Toxic Substances Account (collectively, "DTSC") seek (1) recovery of over $3.2 million in response costs that DTSC incurred responding to and abating the hazards created by those releases and (2) a declaration of DTSC's right to reimbursement of its future costs. DTSC brings this suit under section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), and section 25360 of California's Hazardous Substances Account Act ("HSAA"), California Health and Safety Code sections 25300 *et seq*. In 2014, DTSC filed a First Amended Complaint ("Complaint"), joining Collins and Aikman Products, LLC ("C&A Products") as an additional defendant. ECF No. 77. C&A Products is the successor to Wickes Corporation, a former owner and operator of the Site.[1] In 2023, certain of Wickes's former insurers ("Intervenors"), from whom DTSC seeks indemnification, intervened in this litigation. ECF Nos. 266, 269. Intervenors served an Answer-in-Intervention ("Answer") to the Complaint, which included counterclaims, affirmative defenses, and a request for a jury trial. ECF No. 271. DTSC now asks the Court to dismiss the counterclaims and to strike the jury trial demand and one of the affirmative defenses.

In 2014, Defendant Jim Dobbas, Inc. filed an answer that included counterclaims alleging DTSC was an "operator" of the Site (as defined in 42 U.S.C. § 9601), various affirmative defenses, and a jury trial request.[2] ECF No. 23. The Court, acting on DTSC's Rule 12 motion, allowed the operator allegations and the jury trial request to stand and struck some but not all of the affirmative defenses. ECF Nos. 27, 43. Intervenors' Answer reprises that of Dobbas, Inc. by alleging that DTSC was an operator of the Site, by including an affirmative defense based on negligence, and by requesting a jury trial. DTSC brings this Motion to show that there has been a

---

[1] C&A Products is a cancelled Delaware corporation. For the purpose of this lawsuit, and in order to pursue indemnification from Wickes's former insurers, DTSC revived C&A Products and had a receiver appointed to act for the corporation.

[2] Dobbas is no longer a party to this action. On November 13, 2015, this Court approved a consent decree between DTSC and defendant Dobbas. ECF No. 148.

1  significant change in Ninth Circuit law with respect to operator liability, that this Court struck the

2  earlier negligence-based affirmative defense, and that DTSC's claims against C&A Products do

3  not include the claim that justified Mr. Dobbas's jury trial demand. For these reasons,

4  Intervenors' counterclaims, affirmative defense, and jury-trial demand should be stricken. Most

5  importantly, with respect to the counterclaims, none of the allegations support Intervenors'

6  contention that DTSC is an operator of the Site; rather they demonstrate only that DTSC has a

7  long record of working to reduce the threat to public health and the environment at the Site. Such

8  remedial actions are not a basis for government liability.

9  **FACTUAL BACKGROUND**

10      DTSC is the state agency responsible for responding to releases or threatened releases of

11  hazardous substances into the environment. Cal. Health & Safety Code §§ 58004, 58009. In that

12  domain, DTSC has the power and duties "to protect and preserve the public health*." Id.* DTSC

13  implements the HSAA, which is the state counterpart of the federal CERCLA. *City of Lodi v.*

14  *Randtron*, 118 Cal. App. 4th 337, 351 (2004); *Adobe Lumber, Inc. v. Hellman,* 658 F. Supp. 2d

15  1188, 1192 (E.D. Cal. 2009) ("Similar to CERCLA, California's HSAA provides for civil actions

16  for indemnity and contribution and expressly incorporates CERCLA's liability standards and

17  defenses."). DTSC's authority under the HSAA includes identifying contaminated sites that may

18  endanger the public health or welfare or the environment; compelling liable parties to take actions

19  to reduce the danger; and, when such parties are not available or are unwilling to take action,

20  conducting response actions itself to reduce the potential hazard to the public health or welfare or

21  to the environment. Cal. Health & Safety Code §§ 25355, 25356, & 25258.3.

22      The Site is a 7.5-acre, privately-owned former wood treatment and preserving facility that

23  operated until the approximately 1982. ECF No. 77-1 at 1. During the operational years, wood

24  was treated with preservative solutions containing arsenic, chromium, and copper, which metals

25  have contaminated the soils. *Id.* Arsenic is highly toxic and a known carcinogen; copper at high

26  concentrations can be toxic to humans, while aquatic life is sensitive to lower concentrations. *Id.*

27  The soils at the Site exceed local background concentrations for these metals. *Id.* Substantial

28  work has been required to abate the hazard from those releases, including investigating the

2

1   contamination, capping the Site, and extracting and treating groundwater. ECF No. 271, ¶¶ 12-13

2   & Exhibit A.  DTSC has overseen and sometimes conducted those activities. *Id.*

3                                   **PROCEDURAL HISTORY**

4        DTSC filed its original complaint on March 3, 2014, asserting claims against multiple

5   defendants under CERCLA and the HSAA for costs DTSC incurred responding to toxic

6   substances released at, beneath, and/or from the Site. DTSC reached settlements with three of the

7   named defendants: West Coast Wood Preserving, LLC, Jim Dobbas, Inc., and David Van Over.

8   These settlements are embodied in consent decrees approved by the Court on September 16,

9   2015, November 18, 2015, and March 27, 2018. ECF Nos. 141, 150, 182. The Clerk of the Court

10  entered the defaults of Defendants Continental Rail, Inc. and Pacific Wood Preserving on June

11  22, 2014. ECF Nos. 18, 19.

12       Wickes Corporation was another owner and operator of the Site. In 2014, DTSC

13  successfully petitioned the Delaware Court of Chancery to appoint a receiver to revive C&A

14  Products, the successor to Wickes Corporation. Once the receiver for C&A Products was in place,

15  DTSC served him with the Complaint. ECF No. 127. No answer was filed. The Clerk of the

16  Court entered C&A Products' default on March 25, 2015. ECF No. 129.

17       On August 12, 2019, DTSC filed an Application for Default Judgment by Court against

18  C&A Products, which was still in receivership. ECF No. 184. Subsequently, a number of C&A

19  Products' historical insurers (hereafter "Intervenors") filed motions to intervene and to set aside

20  C&A Products' default.[3] ECF Nos. 196, 205, 217, 222. The Court denied these motions. ECF No.

21  221, 237.

22       Intervenors, excluding Travelers, appealed the denials of the motions to intervene and set

23  aside the default. On December 1, 2022, the Ninth Circuit issued an opinion reversing this

24  Court's denial of the motions to intervene as of right, and dismissing the appeal of their motions

25  to set aside the clerk's entry of default against C&A Products. Mandate issued on December 23,

26  

_____

27  [3] The insurer/Intervenors include The Travelers Indemnity Company; The Continental
    Insurance Company; Century Insurance Company, as successor to CCI Insurance Company, as
    successor to Insurance Company of North America; and Allianz Underwriting Insurance
28  Company;Chicago Insurance Company; and Fireman's Fund Insurance Company.

                                        3

1   2022. ECF No. 261. DTSC and the Intervenors filed stipulations proposing that the appealing

2   Intervenors be allowed to intervene in the case. ECF No. 268. On February 16, 2023, the Court

3   set aside C&A Products' default and granted the Intervenors' motion to intervene. ECF Nos. 269,

4   270. Intervenors served their Answer, including the counterclaims and affirmative defenses, on

5   March 15, 2023.

6                                              **ARGUMENT**

7   **I.    OVERVIEW OF CERCLA LIABILITY**

8          Congress enacted CERCLA in 1980 "in response to the serious environmental and health

9   risks posed by industrial pollution." *United States v. Bestfoods*, 524 U.S. 51, 55 (1998). With

10  CERCLA, Congress sought "to protect and preserve public health and the environment by

11  facilitating the expeditious and efficient cleanup of hazardous waste sites." *Hanford*

12  *Downwinders Coal., Inc. v. Dowdle*, 71 F.3d 1469, 1474 (9th Cir. 1995) (citations omitted).

13  "CERCLA, remedial in nature, is designed to encourage prompt and effective cleanup of

14  hazardous waste sites. CERCLA empowers the federal government and the states to initiate

15  comprehensive cleanups and to seek recovery of expenses associated with those cleanups."

16  *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 120 (2d Cir. 2010)

17  (citations omitted).

18         One of CERCLA's principal purposes is to enable the government to recover cleanup costs

19  from those parties who were involved with business and commerce involving hazardous

20  substances and contaminated properties, rather than impose those costs on taxpayers with no

21  connection to the land or contamination. *See TDY Holdings, LLC v. United States*, 122 F. Supp.

22  3d 998, 1021-22 (S.D. Cal. 2015), *appeal docketed*, No. 15-56483 (9th Cir. Sept. 28, 2015)

23  (intent of CERCLA is to "not shift the burden of cleaning up the environment to the taxpayers.");

24  *B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1198 (2d Cir. 1992) ("In that way Congress

25  envisioned the EPA's costs would be recouped, the Superfund preserved, and the taxpayers not

26  required to shoulder the financial burden of a nationwide cleanup.").

27

28

Section 107 of CERCLA identifies four categories of persons as liable parties.[4] 42 U.S.C. § 9607(a). "These categories include: (1) the current owners and operators of a vessel or facility, (2) the former owners or operators of a facility at the time of disposal of any hazardous substance, (3) any persons who arranged for disposal or treatment of a hazardous substance at any facility owned or operated by another party, and (4) transporters of such substances to a disposal or treatment facility." *Team Enterprises, LLC v. W. Inv. Real Estate Trust*, 647 F.3d 901, 907 n.2 (9th Cir. 2011) (citing 42 U.S.C. § 9607(a)). Under CERCLA and the HSAA, liable parties must conduct response actions when so directed by the United States Environmental Protection Agency or DTSC and are liable for costs that the agencies or private parties incur conducting response actions.

## II.   THE COURT SHOULD DISMISS INTERVENORS' COUNTERCLAIMS IN THEIR ENTIRETY.

### A.   Legal Standard for Motion to Dismiss

To survive this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Intervenors must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556–57). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010).

---

[4] Under CERCLA, "[t]he term 'person' means an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body." 42 U.S.C. § 9601(21).

5

**B.    Intervenors' Counterclaims Are Entirely Dependent on Intervenors' Unsupported Conclusion that DTSC was an Operator of the Site.**

Intervenors' counterclaims attempt to force DTSC to bear the costs of cleaning up contamination partly caused by their insured, C&A Products. ECF No. 271, Counterclaims, ¶¶ 24, 33 ("Counter-Claimant Intervenors deny that they or Collins & Aikman are liable for any costs incurred as the result of the alleged release or threatened release of hazardous substances at or from the Site."). On the basis of their unsupported conclusion that DTSC is or was an operator of the Site for purposes of CERCLA liability, Intervenors *seek to recover response costs previously incurred* by C&A Products.[5] *Id*., ¶¶ 25, 34. Not only does Intervenors' operator allegation have has no basis in fact or law, Intervenors' counterclaims would turn CERCLA on its head, forcing taxpayers to pay cleanup costs appropriately incurred by one of the parties responsible for the contamination. *FMC Corp. v. U.S. Dep't of Com*., 29 F.3d 833, 841 (3d Cir. 1994) ("We do not think that CERCLA's 'essential purpose of making those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created,' is served by making the government liable for attempting to clean up wastes created by others.") (citations omitted).

**C.    Neither of the Allegations in Paragraph 14 of Intervenors' Counterclaims is Legally Sufficient to State a Claim that DTSC Operated the Site.**

Paragraph 14 is the lynchpin of the counterclaims. ECF No. 271, ¶ 14. It is where Intervenors present a legal theory for why, in their view, the facts alleged in their counterclaims support their legal conclusion that DTSC operated the Site. Paragraph 14 pleads two distinct and independent allegations—described below as the "Ability-to-Control Allegation" and the "Causation Allegation"—to justify their conclusion. Neither allegation, however, states a claim for operator liability, nor is either supported by specific factual allegations in the Answer.

Paragraph 14 states:

Counter-Claimant Intervenors are informed and believe, and thereon allege that a factfinder could determine that DTSC had authority to control the cause of the

---

[5] C&A Products is a defunct corporation. Intervenors do not specify who they believe should receive any such payments from DTSC.

6

contamination at the time the hazardous substances were released into the environment and/or that DTSC's actions and operations at, and with regard to, the Site contributed to or caused the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.

The two independent allegations are, first, "*that DTSC had authority to control the cause of the contamination at the time the hazardous substances were released into the environment*" (the "Ability-to-Control Allegation") and, second, "*that DTSC's actions and operations at, and with regard to, the Site contributed to or caused the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations*" (the "Causation Allegation").[6]

Sections C.1. and C.2. below discuss why each allegation is inadequate as a matter of law. Section C.3. highlights the absence of any factual basis for either allegation, and demonstrates that Intervenors allege nothing more than that DTSC conducted response actions at the Site. Section C.4. addresses Intervenors' improper use of the conjunction "and/or" in Paragraph 14.

**1.     The Ability-to-Control Allegation Is Not Sufficient To Establish Operator Liability Under the Ninth Circuit's 2020 Decision in *United States v. Sterling Centrecorp.***

In 2014, this Court denied DTSC's motion to dismiss counterclaims filed by another defendant in this action, Jim Dobbas, Inc. ECF No. 43. Like Intervenors, Dobbas, Inc. asserted that DTSC was subject to operator liability because it had, in the Court's summary, "mismanaged cleanup efforts" at the Site. *See* ECF No. 43 at 4. The Court noted that operator liability has posed a vexing interpretive problem for courts, given CERCLA's "tautological" definition of operator as "any person … operating" a facility. *Id.* (quoting 42 U.S.C. § 9601(20)(A)(ii)). Circuit courts had developed two competing interpretations of "operator" to fill the vacuum. Some held that mere "authority to control" facility activities suffices, while others held that "actual control" of activities is necessary. ECF No. 43 at 5-6. The Sixth Circuit, for example, applied the "authority to control" test, recognizing that it could potentially result in operator liability for a government agency that closely regulated the operations at a site. *See United States v. Twp. of Brighton*, 153 F.3d 307, 315 (6th Cir. 1998) (remanding to the district court the question whether a township that regulated a landfill's actual operations was itself an operator).

---

[6] The inherent ambiguity in the Causation Allegation is discussed in section C.2. below.

7

1     In 2014, when the Court ruled on DTSC's motion to dismiss the Dobbas Inc. counterclaim,

2     the law was somewhat in flux. Ninth Circuit precedent favored the "actual control" test. *See, e.g.,*

3     *Long Beach Unified Sch. Dist. v. Dorothy B. Godwin Cal. Living Trust*, 32 F.3d 1364, 1367 (9th

4     Cir. 1994) (holding that operator liability requires that parties "play an active role in running the

5     facility, typically involving hands-on, day-to-day participation.") (cited by ECF No. 43 at 7).

6     Likewise, other courts had dismissed operator-liability counterclaims against government

7     agencies that were premised solely on the agency's role in cleaning up contamination. *See*, *e.g.*,

8     *United States v. Dart Indus., Inc.*, 847 F.2d 144, 146 (4th Cir. 1988) (requiring "hands on"

9     activities) (cited by ECF No. 43 at 7). These cases, however, predated *United States v. Bestfoods,*

10    524 U.S. 51, 66-67 (1998), where the Court held that "an operator must manage, direct, or

11    conduct operations specifically related to pollution, that is, operations having to do with the

12    leakage or disposal of hazardous waste, or decisions about compliance with environmental

13    regulations." In its 2014 order, the Court questioned whether the earlier cases retained

14    precedential value in light of *Bestfoods.* The Court concluded that *Bestfoods* instituted a definition

15    of operator more "expansive" than the formulation of the actual control test set forth in *Long*

16    *Beach Unified School District*, and therefore operator liability was potentially broad enough to

17    include government regulators. ECF No. 43 at 8.

18    Since then, however, the Ninth Circuit reaffirmed its decision in *Long Beach Unified*

19    *School District*, holding that the correct test for operator liability is actual control and firmly

20    rejecting the position that mere regulatory authority may subject a government to operator

21    liability. In *United States v. Sterling CentreCorp Inc.,* 977 F.3d 750 (9th Cir. 2020), the Ninth

22    Circuit affirmed a grant of summary judgment to the United States on the basis that the United

23    States' actual exercise of World-War-II-era regulatory authority over a Sierra Nevada gold mine

24    *did not* render the United States an operator with respect to hazardous substance releases from the

25    mine.  *Id.* at 758.  The Ninth Circuit explained:

26        The definition of "operator" in *Bestfoods* clarifies that actual participation in decisions
          related to pollution is necessary for a finding of operator liability. We have similarly held
27        that "[t]o be an operator of a hazardous waste facility, a party must do more than stand by
          and fail to prevent the contamination. It must play an active role in running the facility,
28        typically involving hands-on, day-to-day participation in the facility's management." *Long*

8

1

2

3

4

> *Beach Unified Sch. Dist. v. Dorothy B. Godwin Cal. Living Tr.*, 32 F.3d 1364, 1367 (9th
> Cir. 1994). The *Bestfoods* standard confirms that operator status has a nexus requirement.
> That is, it requires that an operator's relationship to the facility at issue must, at least in part,
> focus on "operations specifically related to pollution." *Bestfoods*, 524 U.S. at 66. Therefore,
> operator liability requires something more than general control over an industry or facility.
> It requires some level of direction, management, or control over the facility's polluting
> activities.

5    *Id*. at 758.

6    DTSC's involvement in cleaning up the Site simply does not rise to this standard.

7    Intervenors try to support their operator liability argument by citing DTSC's history of

8    involvement with the Site, including approval of a remedial action plan, certification of remedial

9    action, approval of work plans and investigations, and its contracting with a third party to perform

10   remediation activities, actions DTSC took pursuant to its regulatory authority to control releases

11   of hazardous waste. Intervenors claim these actions illustrate that DTSC had "authority to control

12   the cause of contamination." ECF 271, ¶¶ 7-14. Nowhere, however, do Intervenors allege that

13   DTSC played "an active role in running the facility" or that it was "involve[ed in] hands-on, day-

14   to-day participation in . . . management" as would be necessary to allege that DTSC operated the

15   Site. *Sterling CentreCorp Inc.*, 977 F.3d at 758 (quoting *Long Beach Unified Sch. Dist. v.*

16   *Dorothy B. Godwin Cal. Living Tr.*, 32 F.3d 1364, 1367 (9th Cir. 1994)).

17   Further, it was the Site operators, including Intervenors' insured, who caused the

18   contamination. The Ninth Circuit, in *Sterling CentreCorp*, indicated that operator liability springs

19   from control over "the polluting activity." Remedial actions, such as those that DTSC oversaw

20   and conducted, were not the polluting activities. It would be an anathema to the purposes of

21   CERCLA to put government—and by extension taxpayers—on the hook for cleaning up the mess

22   caused by polluters, rather than the polluters themselves. *Cal. Dep't of Toxic Substances Control*

23   *v. Interstate Non-Ferrous Corp*., 298 F. Supp. 2d 930, 955 (E.D. Cal. 2003) ("Governmental

24   regulatory action taken to clean up a contaminated site does not subject the government to

25   liability under CERCLA."). *See also California Dep't of Toxic Substances Control v. NL Indus.,*

26   *Inc.,* No. 220CV11293SVWAGR, 2021 WL 5933102, at *1–4 (C.D. Cal. Sept. 24, 2021) (It "is

27

28

1    not clear that a government's remedial efforts undertaken pursuant to statutory authority are

2    sufficient for a finding of operator liability.)"[7]

3               **2.     Nor Is the Causation Allegation Of Paragraph 14 Sufficient To
                        Establish Operator Liability.**

4

5        The Causation Allegation in Paragraph 14 is entirely ambiguous.[8] It asks the Court to mix

6    and match two alternative verbs characterizing DTSC's actions with three alternative direct

7    objects reflecting possible outcomes of DTSC's actions. Specifically, the Causation Allegation

8    alleges that DTSC's actions either "[1] contributed to or [2] caused" one of "[1] the leakage or [2]

9    disposal of hazardous waste, or [3] decisions about compliance with environmental regulations."

10   *Id.*, ¶ 14. The meaning of this mix-and-match allegation depends both on the verb—causing an

11   action is different from contributing to that action—and on the direct object or consequence—

12   leakage is different from disposal and from decision-making. Thus, the Causation Allegation

13   could be alleging, for example, that DTSC's action "caused . . . the disposal of hazardous waste,"

14   or that DTSC's actions "contributed to . . . decisions about compliance with environmental

15   regulations."  Two very different allegations.

16       In any case, none of the possible interpretations of this Causation Allegation would be

17   legally sufficient to overcome the immunity provided by section 9607(d)(2) of CERCLA. Section

18   9607(d)(2) provides limited immunity from liability to state and local governments taking actions

19   to address a release or threatened release of a hazardous substances at a privately owned facility.

20   42 U.S.C. § 9607(d)(2). The statute provides:

21           No State or local government shall be liable under this subchapter for costs or
             damages as a result of actions taken in response to an emergency created by the
22           release or threatened release of a hazardous substance generated by or from a facility
             owned by another person. This paragraph shall not preclude liability for costs or
23           damages as a result of gross negligence or intentional misconduct by the State or local
             government . . . .

24

25

26          [7] Judge Wilson based his decision in the *NL Industries case* to allow the counterclaim to
     stand on allegations regarding DTSC activities while the facility was operating, rather than on
27   DTSC's subsequent remedial activities.
            [8] Notably Dobbas, Inc.'s counterclaims did not include a causation allegation. ECF No.
28   23.

                                                     10

Numerous decisions, including from this District, hold that "Governmental regulatory action taken to clean up a contaminated site does not subject the government to liability under CERCLA." *California Dep't of Toxic Substances Control v. Interstate Non-Ferrous Corp*., 298 F. Supp. 2d 930, 955 (E.D. Cal. 2003); *United States v. Davis*, 20 F. Supp. 2d 326, 335 (D.R.I. 1998), *aff'd in part, remanded in part*, 261 F.3d 1 (1st Cir. 2001) ("Nor was CERCLA intended to make governmental agencies liable for good faith efforts to clean up hazardous wastes created by others."[9])

Perhaps recognizing the need to address section 9607(d)(2), Intervenors included in Paragraph 15 of the counterclaims the allegation that "DTSC's selection and implementation of response actions at, on, and/or near the Site and surrounding properties were, and continue to be, negligent, grossly negligent and/or constitute intentional misconduct." It does not help them. First, the allegations in Paragraph 15 (which are repeated in Paragraphs 22, 30, and 41) state only the legal conclusion that DTSC acted with gross negligence or intentional misconduct, with no supporting facts. A conclusory allegation that defendant "was negligent [] 'is precisely the type of merely conclusory statement not entitled to a presumption of truth on a motion to dismiss.'" *Ramos-Soto v. C.R. Bard, Inc*., No. CV 21-1506, 2022 WL 1056581, at *1 (E.D. Pa. Jan. 14, 2022) (citation omitted). The elements of negligence must be pled and supported by specific factual allegations. *See, e.g., Interinsurance Exch. of the Auto. Club v. Electrolux Home Care Prod., Inc*., No. SACV1401817CJCJCGX, 2014 WL 12588462, at *1 (C.D. Cal. Dec. 16, 2014) (finding allegation that defendant "owed a duty" to plaintiff insufficient to support a claim for negligence).[10]

_____

[9] *See also United States v. Cordova Chem. Co. of Michigan*, 113 F.3d 572, 581–82 (6th Cir. 1997), *vacated sub nom. United States v. Bestfoods*, 524 U.S. 51, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998), and *cert. granted, judgment vacated sub nom. Michigan Dep't of Env't Quality v. Bestfoods*, 524 U.S. 924, 118 S. Ct. 2317, 141 L. Ed. 2d 692 (1998), and *cert. granted, judgment vacated sub nom. Bestfoods v. Aerojet-Gen. Corp.*, 524 U.S. 924, 118 S. Ct. 2317, 141 L. Ed. 2d 692 (1998) (holding Minnesota agency not liable for response costs due to its attempt to remediate groundwater contamination at the Site.)

[10] This Court's 2014 order, finding that Dobbas, Inc. had adequately pled "negligence, gross negligence, and/or intentional misconduct" with respect to the ability-to-control standard since rejected by the Ninth Circuit, is not to the contrary. ECF No. 43 at 9.  Intervenors' particular allegation that some unspecified action of DTSC caused the disposal of hazardous waste and constituted gross negligence or intentional misconduct demands allegations of specific facts.  An

1    Second, the immunity of section 9607(d)(2) is lost only when the costs or damages are the

2    "result of" the agency's alleged gross negligence or intentional misconduct. 42 U.S.C. §

3    9607(d)(2). Paragraph 15 falls short, alleging only that DTSC in some unspecified manner acted

4    with gross negligence or intentional misconduct. *See Gregory Vill. Partners, L.P. v. Chevron*

5    *U.S.A.,* Inc., 805 F. Supp. 2d 888, 897 (N.D. Cal. 2011) (dismissing a CERCLA cause of action

6    because, inter alia, plaintiff failed to allege a release occurred during "the only period when

7    [defendant] owned" the parcel in question and plaintiff failed to allege that the releases affected

8    plaintiff's property).  Neither Paragraph 15, nor any other part of the counterclaims, alleges that

9    the supposed grossly negligent behavior "resulted in" costs or damages.

### 3.    The Factual Allegations of the Counterclaims Show Only that DTSC Oversaw and Conducted Response Actions at the Site and Do Not Support Either of the Paragraph 14 Allegations.

12    The few factual allegations in the counterclaims appear in the "General Allegations"

13    section, Paragraphs 7-15, and fall far short of supporting Paragraph 14. Indeed, Paragraphs 7

14    through 12 allege nothing more than that DTSC conducted and oversaw response actions at the

15    Site.

| Paragraph | Allegation |
|---|---|
| 7 | DTSC "has been involved with the [Site] for more than thirty-five years" |
| 8 | DTSC approved a remedial action plan for the Site in or around 1983." |
| 9 | DTSC then "took additional response actions at, on, and/or near the Site." |
| 10 | in 1996, DTSC "issued a Certification of Remedial Action for the Site" |
| 11 | DTSC then "continued to be actively involved in the Site." |
| 12 | DTSC has undertaken "efforts to repair and restart the groundwater extraction and treatment system, completion of a remedial investigation for site soils, preparation of the Removal Action Workplan in October and November 2011, groundwater monitoring, and other tasks." |

Answer, ¶¶ 7-11.

---

allusion to some possible act of disposal is not "sufficient factual matter" to "state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

12

1    Nothing in any of those allegations provides any meaningful support for the proposition

2    that DTSC was an operator at the Site, or for either allegation in Paragraph 14. They show at most

3    that DTSC was doing its job at the Site and that site cleanups often take much longer than

4    anybody would like. Paragraph 12 goes one small step further: it notes that DTSC took over the

5    conduct of certain response actions after prior owners and operators "failed to complete the

6    actions described in" the governing work plans and orders, quoting Complaint (ECF No. 77, ¶

7    32). But that is exactly what agencies such as DTSC are expected to do when there are no private

8    entities able or willing to do the work.

9    In Paragraph 13, Intervenors make a slightly more specific allegation, but still provide no

10   support for either of the Paragraph 14 allegations. Paragraph 13 alleges first that DTSC's

11   contractor resumed operation of the groundwater extraction and treatment system, "despite its

12   2001 report stating the 'groundwater pump and treat system would likely be unsuccessful in

13   meeting the remedial action objections. [sic.]'" Intervenors do not allege that the system

14   accomplished nothing, or even that restarting it was an error, only that this particular system was

15   unlikely on its own to meet the full remedial action objectives. That is not enough to support the

16   legal conclusion that DTSC was an operator at the Site. Most importantly, they do not allege that

17   restarting the system led to any release of hazardous substances. *See, e.g., Asarco LLC v. NL*

18   *Indus., Inc.*, No. 4:11-CV-00864-JAR, 2012 WL 12350736, at *4 (E.D. Mo. Jan. 19, 2012)

19   (finding an allegation that a railroad "conducted storage, transport and/or related operations

20   through facilities in or near [the site] . . . [provided] no specific factual allegations to support its

21   allegation" that the railroad was a responsible party.)

22   Paragraph 13's final allegation is that there were cracks in an asphalt cover that DTSC had

23   directed a contractor to maintain. Again, Intervenors do not allege that DTSC's actions led to any

24   release or disposal of hazardous substances. Nor does the allegation support the legal conclusion

25   that DTSC is or was an operator of the Site.[11]

26   _____

27   [11] Further, this allegation is misleading. As written, it suggests that DTSC, by contract, had agreed to take on responsibility for maintaining the cap. Not so. DTSC was acting as a public health agency, and had directed *its* contractor to maintain the cap. ECF No. 77 (Complaint, Ex. D,

28   at 4-5).

13

1   In sum, the factual allegations of the counterclaims, Paragraphs 7-13, do not come

2   anywhere close to providing the specificity necessary to allow the Court to find it plausible that

3   DTSC was an operator of the Site. A "conclusory allegation that [a party] is liable as [an]

4   operator[] under CERCLA is not entitled to a presumption of truth." *City of W. Sacramento,*

5   *California v. R & L Bus. Mgmt.*, No. 2:18-CV-900 WBS EFB, 2018 WL 3198118, at *3 (E.D.

6   Cal. June 27, 2018) (holding that plaintiff had not adequately alleged that individual shareholders

7   had directed the affairs of the facility).

8           **4.     Because Intervenors' Paragraph 14 is Pled in the Alternative, the**
            **Ability-to-Control and the Contribution Allegations Must Each State**
9           **a Claim.**

10   Paragraph 14 alleges the Ability-to-Control and the Causation Allegations in the

11   alternative: DTSC had the authority to control the cause of the contamination "*and/or*" caused the

12   contamination. Courts generally disfavor the use of and/or "because of its inherent ambiguity."

13   *Visser v. Caribbean Cruise Lines, Inc.*, No. 1:13-CV-1029, 2014 WL 12921353, at *9 (W.D.

14   Mich. Apr. 4, 2014). "Plaintiffs in federal court are permitted to plead in the alternative, but they

15   are not permitted to plead 'in the ambiguous.'" *J & J Sports Prods., Inc. v. Mayreal II, LLC*, 849

16   F. Supp. 2d 586, 591 (D. Md. 2012).

17   The conjunction "and/or" renders a pleading ambiguous and leaves a court uncertain what

18   plaintiff intends to prove. Here, because Intervenors are promising to prove only one of the

19   allegations of Paragraph 14, there is a disconnect between what is alleged and what Intervenors

20   would need to prove to be entitled to judgment in their favor. Suppose, for example, Intervenors

21   ultimately proved the Ability-to-Control allegation, but not the Causation Allegation. If, as DTSC

22   contends, the Ability-to-Control allegation is not sufficient as a matter of law to establish operator

23   liability, the Court would be in the difficult position of finding that Intervenors proved the

24   allegations of the counterclaims, including one but not both of the Paragraph 14 allegations, but

25   having to conclude that Intervenors are nonetheless not entitled to judgment. For that reason, the

26   Court must dismiss the counterclaims unless it concludes that both the Ability-to-Control

27   Allegation and the Causation Allegation are independently sufficient to state a claim.

28

14

**D.   Allowing Intervenors to Maintain These Counterclaims without Detailed Allegations is Inconsistent with CERCLA.**

CERCLA does allow government agencies to be found liable for hazardous substances releases on private property based on actions the government took at the property. Many of those cases involve allegations similar to those in *Sterling CentreCorp*, discussed above. A party alleges government liability based on control the government had over the operating facility. *See, e.g., PPG Indus. Inc. v. United States,* 957 F.3d 395, 403 (3d Cir. 2020) (wartime controls did not include method of waste disposal). But we have identified no case in which a court has found government liability based solely on remedial actions taken by the government agency. "Governmental regulatory action taken to clean up a contaminated site does not subject the government to liability under CERCLA. . . ." *Cal. Dep't of Toxic Substances Control v. Interstate Non-Ferrous Corp.*, 298 F. Supp. 2d 930, 955 (E.D. Cal. 2003).

In fact, CERCLA is structured just the opposite way.  It was "designed to promote the 'timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009) (citations omitted). Courts "construe [CERCLA's] provisions liberally to avoid frustration of the beneficial legislative purposes." *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir. 1986). CERCLA's purposes include allowing governments to exercise their sovereign responsibilities, including health and safety protection, without incurring CERCLA liability. *See, e.g.,* 42 U.S.C. § 9607(d)(2) (exempting government response actions from CERCLA liability, discussed in section II.C.2. above); 42 U.S.C. § 9601(20)(D) & (35)(A)(ii) (exempting from CERCLA liability governments who involuntarily acquire contaminated property); *United States v. Chapman*, 146 F.3d 1166, 1176 (9th Cir. 1998) (holding that government agencies may recover attorney fees under CERCLA, while private parties generally cannot).

As discussed above, the allegations that DTSC is or has been an operator at the Site are thin to the point of being vaporous and hardly differentiate this Site from any other CERCLA/HSAA

15

1  cleanup. If Intervenors' counterclaim is allowed to stand, government agencies in virtually every

2  CERCLA cost recovery action would be subject to a counterclaim. That is not the law.

3  **III.   THE COURT SHOULD GRANT DTSC'S MOTION TO STRIKE.**

4      **A.   Legal Standard for Motion to Strike**

5          Upon a party's or the Court's own motion, the Court may order stricken from any pleading

6  "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.

7  Civ. P. 12(f). While courts "disfavor[]" such motions, "they are often granted where the

8  insufficiency of the defense is clearly apparent.'" *United States v. Rohm and Haas Co.*, 939 F.

9  Supp. 1142, 1151 (D.N.J. 1996) (citations omitted). "The possibility that issues will be

10  unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw

11  "unwarranted" inferences at trial is the type of prejudice that is sufficient to support the granting

12  of a motion to strike." *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F.

13  Supp. 2d 1028, 1033 (C.D. Cal. 2002). "The function of a 12(f) motion to strike is to avoid the

14  expenditure of time and money that must arise from litigating spurious issues by dispensing with

15  those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir.

16  2010) (citation and internal quotations marks omitted).

17      **B.   The Court Should Strike Intervenors' Affirmative Defense of Comparative and Contributory Negligence.**

18

19          **1.   Limited Affirmative Defenses Are Available Under CERCLA.**

20          As this Court stated in its 2014 order, CERCLA section 107(b) specifies a limited number

21  of affirmative defenses to liability. ECF No. 43 at 18 (citing *California ex rel. Cal. Dep't of Toxic

22  Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 672 (9th Cir. 2004)); *but see California

23  Dep't of Toxic Substances Control v. Westside Delivery, LLC*, 888 F.3d 1085, 1091 (9th Cir.

24  2018) (noting that Congress added additional affirmative defenses in the 2002 Brownfields Act)).

25  Further, because section 113(g)(2) declaratory-relief actions are derivative of cost-recovery

26  actions, this Court has recognized that section 107 also provides the exclusive list of defenses

27  available in a declaratory relief action. ECF No. 43 at 18-20. As set forth below, the Intervenors'

28  seventh affirmative defense is not available to them under CERCLA.

2. **Comparative and Contributory Negligence Are Not Among the Defenses Available Under CERCLA Cost Recovery or Declaratory Relief Actions.**

In their answer, Intervenors assert as an affirmative defense that DTSC is partially or wholly liable for recovery costs due to comparative and contributory negligence:

> Any and all injury or damage was caused, in whole or in part, by Plaintiffs' own negligence, carelessness, lack of due care and fault, or by the negligence, carelessness, lack of due care and fault of Plaintiffs' predecessors in interest, their agents, employees or tenants and/or third parties, excluding Collins & Aikman.

Answer at 12, Seventh Affirmative Defense.

Comparative and contributory negligence, however, are not among the affirmative defenses available in the CERCLA cost-recovery and declaratory-relief actions DTSC has filed here. Indeed, the Court previously ruled in this case, "[C]ourts have consistently 'rejected negligence on the part of the government as a defense to liability in CERCLA actions.'" ECF No. 43 at 23. DTSC is not aware of any changes in law that would alter the Court's earlier determination. The Court should reaffirm its earlier ruling by striking Intervenors' asserted affirmative defense of comparative and contributory negligence.

C. **The Court Should Strike Intervenors' Jury Trial Demand.**

1. **The Seventh Amendment Guarantees a Right to a Jury Trial Only for Claims Seeking Relief That Is Not Equitable in Nature.**

The Constitution guarantees the right to a jury trial in "Suits at common law where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII. There is no such guarantee, however, for claims seeking equitable relief. *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 564 (1990). Whether a jury trial may be demanded on a claim therefore depends on the nature of the action, based on comparison to actions within the traditional jurisdiction of law and equity courts, and the nature of the relief sought. *Tull v. United States*, 481 U.S. 417-18 (1987). Of these considerations, the nature of the relief sought is the more important element. *Terry*, 494 U.S. at 571 n.8; *but see Granite Rock Co. v. Int'l Bhd. of Teamsters, Freight, Constr., Gen. Drivers, Warehousemen & Helpers, Loc.* 287, 649 F.3d 1067,

17

1   1069 (9th Cir. 2011) ("In close cases, a court should err on the side of preserving the right to a

2   jury trial.").

3        **2.    The Parties' Claims Fall Within Settled Precedent, Acknowledged by
            This Court, That CERCLA Cost Recovery and Contribution Claims**

4        **Seek Equitable Relief and Are Not Covered by the Seventh
            Amendment.**

5

6        All of the relief sought by DTSC against C&A Products in this case is equitable. The

7   Complaint seeks cost recovery and declaratory relief under sections 107(a) and 113(g)(2) of

8   CERCLA, respectively. Likewise, in their counterclaims, Intervenors seek only equitable relief:

9   cost recovery, contribution, and declaratory relief under sections 107(a), 113(f), and 113(g) of

10  CERCLA, respectively. Intervenors also assert a state-law counterclaim for contribution and

11  indemnity under the HSAA. CERCLA section 113(g)(2) actions are derivative of cost-recovery

12  actions. *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, No. 2:14-595, WBS-EFB,

13  2014 WL 4627248, at *8 (E.D. Cal. Sept. 16, 2014). Although the form of relief under section

14  113(g)(2) is a declaratory judgment, the nature of relief is the same as under section 107(a)—cost

15  recovery. The same is true of CERCLA section 113(f) and HSAA contribution and indemnity

16  actions.

17       Claims for recovery of response costs under section 107 of CERCLA "effective[ly] seek[]

18  equitable relief in the form of restitution or reimbursement." *United States v. Ne. Pharm. &*

19  *Chem. Co.*, 810 F.2d 726, 749 (8th Cir. 1986). Restitution is "within the traditional equitable

20  powers of the court." *Hatco Corp. v. W.R. Grace & Co. Conn.*, 59 F.3d 400, 412 (3d Cir. 1995)

21  (citing *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946)). Therefore, there is no right to a

22  jury trial under section 107 of CERCLA. *Id.* at 414. As this Court noted in its 2014 order, at least

23  one court in the Ninth Circuit has recognized the weight of that authority: "Substantial case law

24  supports the conclusion that CERCLA cost recovery actions are equitable in nature and thus that

25  no jury trial is available." ECF No. 43 at 13 (citing *Cal. Dep't of Toxic Substances Control v.*

26  *Alco Pac., Inc.,* 217 F. Supp. 2d 1028, 1046 (C.D. Cal. 2002)).

27       Similarly, claims for contribution under section 113(f) of CERCLA are equitable because

28  contribution determinations depend on allocation of costs traditionally adjudicated by equity

18

1    courts; moreover, section 113(f) empowers courts to allocate costs "using such equitable factors

2    as the court determines are appropriate." *Hatco Corp.*, 59 F.3d at 413-14. Therefore, there is no

3    right to a jury trial under section 113(f) of CERCLA. *Id*. at 414. Because DTSC's CERCLA

4    section 113(g)(2) claim and Intervenors' HSAA counterclaim seek relief of the same equitable

5    nature as that provided by CERCLA sections 107 and 113(f), respectively, they do not create a

6    right to a jury trial either.

7              **3.    The Court's Reasons for Denying DTSC's Earlier Motion to Strike
                       the Jury Trial Demand are Not Applicable Here.**

8

9              This Court earlier denied DTSC's motion to strike the jury trial demand of another

10   defendant in this case. ECF No. 43 at 16. In that instance, however, DTSC's claims included a

11   request for civil penalties, which the court found to be legal in nature. *Id*. Here, DTSC is not

12   seeking penalties from C&A Products (or from Intervenors); all of the relief sought is equitable

13   in nature. For this reason, Intervenors have no right to a jury trial.

14             Although recognizing that "substantial case law supports the conclusion . . . that no jury

15   trial is available" for CERCLA cost recovery actions, this Court in the 2014 order noted a case

16   raising "some question" about the soundness of that authority. ECF No. 43 at 13 (citing *AMW*

17   *Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 452 (2d Cir. 2009)). While the *AMW*

18   *Minerals Testing* case cast doubt on precedent holding that CERCLA section 107 creates no right

19   to a jury trial, it did so only in dicta. *AMW Materials Testing, Inc.*, 584 F.3d at 452 (declining to

20   decide plaintiff's right to jury trial because defendant was entitled to judgment as matter of law).

21   Further, *AMW Minerals Testing* relied on a case involving the right to a jury trial under a

22   provision of ERISA, not CERCLA or the Seventh Amendment. *See N.J. Dep't of Env't Prot. v.*

23   *Amerada Hess Corp.*, No. CV 15-6468 (FLW), 2018 WL 2317534, at *10 (D.N.J. May 22, 2018)

24   (discussing *Great–W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002)). For these

25   reasons, the discussion in the *AMW Materials Testing* case does not provide a basis for a right to

26   a jury trial in this matter.

27

28

1

**CONCLUSION**

2        For the reasons set forth above, DTSC requests that the Court issue an order dismissing

3   Intervenors' counterclaims, striking the affirmative defense of comparative and contributory

4   negligence, and striking the demand for a jury trial.

5   Dated:  May 3, 2023                        Respectfully Submitted,

6                                              ROB BONTA
                                               Attorney General of California
7                                              LAURA J. ZUCKERMAN
                                               Supervising Deputy Attorney General
8
                                               /s/  James Potter
9
                                               THOMAS SCHUMANN
10                                             JAMES POTTER
                                               Deputy Attorneys General
11                                             *Attorneys for Plaintiffs California*
                                               *Department of Toxic Substances Control*
12                                             *and Toxic Substances Control Account*

13   LA2012602448

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28