Thomas F. Vandenburg (State Bar No. 163446)
tvandenburg@wshblaw.com
Nicholas M. Gedo (State Bar No. 130503)
ngedo@wshblaw.com
Alice Charkhchyan (State Bar No. 332670)
acharkhchyan@wshblaw.com
505 North Brand Boulevard, Suite 1100
Glendale, California 91203
Phone: 818 551-6000 ♦ Fax: 818 551-6050

Attorneys for Intervenors THE CONTINENTAL
INSURANCE COMPANY; CENTURY INDEMNITY
COMPANY as successor to CCI INSURANCE COMPANY
as successor to INSURANCE COMPANY OF NORTH
AMERICA; ALLIANZ UNDERWRITERS INSURANCE
COMPANY; CHICAGO INSURANCE COMPANY;
FIREMAN'S FUND INSURANCE COMPANY, and
THE TRAVELERS INDEMNITY COMPANY in each
of their capacities as alleged insurers of Wickes Companies,
Inc., alleged predecessor of Defendant COLLINS &
AIKMAN PRODUCTS, LLC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,<br><br>Plaintiffs,<br><br>v.<br><br>JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC, a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTIONS | Case No. 2:14-cv-0595-WBS-JDP<br><br>OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS AND TO STRIKE AN AFFIRMATIVE DEFENSE AND THE DEMAND FOR JURY TRIAL<br><br>Date:      June 12, 2023<br>Time:     1:30 p.m.<br>Crtrm.:   5<br><br>Assigned to Judge William B. Shubb<br><br>Trial Date:          January 22, 2025<br><br>Action Filed:        March 3, 2014 |

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1

# TABLE OF CONTENTS

2

INTRODUCTION ................................................................................................................. 1

3

FACTUAL BACKGROUND ............................................................................................... 3

RELEVANT PROCEDURAL HISTORY ........................................................................... 4

4

ARGUMENT ....................................................................................................................... 5

5

   I.    DTSC'S MOTION TO DISMISS SHOULD BE DENIED ......................................... 5

6

     A.  Legal Standard for Motion to Dismiss ................................................................. 5

     B.  Counter-Claimant Intervenors have Sufficiently Alleged Claims Pursuant to CERCLA ..... 6

7

        i.   *CERCLA Liability Provisions* ..................................................................... 6

8

        ii.  Counter-Claimant Intervenors' Allegations Plausibly Support a Claim Against DTSC for "Operator" Liability Under CERCLA ..................... 8

9

        iii.  Counter-Claimant Intervenors Properly Seek Declaratory Relief under the Declaratory Judgment Act ................................................................ 12

10

     C.  Counter-Claimant Intervenors have Sufficiently Alleged Claims Pursuant to the HSAA .. 12

11

   II.   DTSC'S MOTION TO STRIKE SHOULD BE DENIED ...................................... 12

12

     A.  Legal Standard for Motion to Strike ................................................................. 12

13

     B.  Intervenors' Seventh Affirmative Defense is Not Subject to Being Stricken Under Rule 12(f) .............................................................................. 13

14

        i.   *Rule 12(f) Only Authorizes District Courts to Strike an Answer When the Defense Lacks Merit Under any Set of Facts that the Defendant Might Allege* ................... 13

15

16

        ii.  *The 42 U.S.C. § 9607(b) Restriction on Affirmative Defenses in Certain Actions Do Not Bar the Intervenors' Seventh Affirmative Defense* ...................... 13

17

        iii.  *The Section 9607(b) Restrictions Do Not Apply to All Claims Asserted in DTSC's FAC* .............................................................................. 16

18

     B.  The Intervenors' Demand for a Jury Trial is Properly Pled ............................. 16

19

   III.  CONCLUSION .......................................................................................................... 17

20

21

22

23

24

25

26

27

28

28460939.1:10468-0108

OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS AND
TO STRIKE AN AFFIRMATIVE DEFENSE AND THE DEMAND FOR JURY TRIAL

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

# TABLE OF AUTHORITIES

**Cases**

*Acushnet River & New Bedford Harbor Proceedings*, (D. Mass. 1989). .......................................... 16
*Adobe Lumber, Inc. v. Hellman*, 658 F.Supp.2d 1188 (E.D. Cal. 2009)............................................ 14
*Beacon Theatres Inc. v. Westover*, 359 U.S. 500 (1959) ................................................................... 17
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ................................................................ 6
*CA Dept. of Toxic Substances Control v. Neville Chemical Co*. 358 F.3d 661(9th Cir. 2004)....... 15
*Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863 (9th Cir. 2001) .................................... 7
*Castaic Lake Water Agency v. Whittaker Corp.*, 272 F.Supp.2d 1053 (C.D. Cal. 2003) .............. 14
*Champlaie v. BAC Home Loans Servicing, LP*, 706 F.Supp.2d 1029 (E.D. Cal. 2009)................ 13
*Chapman v. Kleindienst*, 507 F.2d 1246 (7th Cir. 1974). ................................................................... 17
*City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998................................................. 7
*Curtis v. Loether*, 415 U.S. 189, n.11 (1974)..................................................................................... 16
*Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074 (1st Cir. 1986).................... 9
*Dichter—Mad Family Partners, LLP v. United States*, 709 F.3d 749 ............................................... 6
*Dodson v. Strategic Restaurants Acquisition Co. II, LLC*, 289 F.R.D. 595 (E.D. Cal. 2013) ........ 13
*FMC Corp. v. U.S. Dep't of Commerce*, 29 F.3d 833 (3d Cir. 1994)................................................. 9
*GTE Sylvania, Inc. v. Continental T. V., Inc*. 537 F.2d 980, n.7 (9th Cir. 1976), .......................... 16
*Henry A. v. Willden*, 678 F.3d 991 .................................................................................................... 6
*Hishon v. King & Spalding*, 467 U.S. 69 (1984).................................................................................. 6
*Hobart Corp. v. Waste Management of Ohio, Inc.,* 840 F.Supp.2d 1013 ......................................... 6
*Iron Mountain Mines, Inc*., 881 F.Supp. at 1444 ............................................................................... 9
*Kaiser Aluminum v. Catellus Dev*., 976 F.2d 1338 (9th Cir. 1992) .................................................. 9
*Levin Metals Corp. v. Parr-Richmond Terminal Co*., 799 F.2d 1312 .............................................. 15
*Lincoln Properties., Ltd. v. Higgins*, 823 F. Supp. 1528 (E.D. Cal. 1992) ...................................... 14
*Long Beach USD v. Dorothy B. Godwin Cal. Living Trust*, 32 F.3d 1364 (9th Cir. 1994) ............ 10
*Lytle v. Household Mfg., Inc*., 494 U.S. 545 (U.S.N.C. 1990).......................................................... 16
*Minnesota Mut. Life Ins. Co. v. Brodish*, 200 F.Supp. 777 (E.D. Penn. 1962)............................... 17
*N. Penn Transfer, Inc. v. Victaulic Co. of America*, 859 F.Supp. 154 (E.D. Penn. 1994) .............. 13
*New York v. Solvent Chemical Co., Inc.,* 664 F.3d 22 (2d Cir. 2011)............................................... 12
*Parklane Hosiery Co. Inc. v. Shore*, 439 U.S. 322 (1979) ................................................................ 16
*Rescuecom Corp. v. Google, Inc*., 562 F.3d 123 (2d Cir. 2009) ....................................................... 6
*Scheuer v. Rhodes*, 416 U.S. 232 (1974)............................................................................................. 6
*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002)............................................................................. 6
*Taylor Farm Ltd. Liability Co. v. Viacom, Inc.,* 234 F.Supp.2d 950 (S.D. Ind. 2002) .................... 8
*United States v. Bestfoods*, 524 U.S. 51, 66-7 (1998) ........................................................ 8, 9, 10, 12
*United States v. Iron Mountain Mines, Inc.*, 881 F.Supp. 1432, 1443 (E.D. Cal. 1995) ................. 7
*United States v. Rohm and Haas Co*., 919 F. Supp. 1142 (D.N.J. 1996)........................................... 13
*United States v. Sterling CentreCorp Inc*., 977 F.3d 750 (9th Cir. 2020)............................... 10, 12
*United States v. Township of Brighton*, 153 F.3d 307 (6th Cir. 1998)............................................... 9
*United States v. Vertac Chem. Corp*., 46 F.3d 803 (8th Cir. 1995) ........................................... 9, 17
*Viking Resources, citing United States v. Williams*, 441 F.2d 637 (5th Cir. 1971) ....................... 16
*Voggenthaler v. Maryland Square, LLC,* 724 F.3d 1050 ................................................................... 7

**Statutes**

42 *U.S.C.* § 9601 ............................................................................................................................ 6, 8
42 *U.S.C.* § 9607 ..................................................................................................... 1, 6, 7, 13, 14, 15, 16

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

42 U.S.C. § 9706 ............................................................................................................ 15
42 U.S.C. § 9613 ...................................................................................................... 1, 8, 14
Cal. *Health & Safety Code* §§ 25355.5, 25358.3, 25359, 25359.2, and 25367 .................... 1, 16, 17

**Other Authorities**
Declaratory Judgment Act, 28 U.S.C. § 2201 .............................................................. 17

**Rules**
Fed. R. Civ. Proc. 8 ......................................................................................................... 5
Fed. R. Civ. Proc. 12 ............................................................................................... 12, 13

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

28460939.1:10468-0108

-iii-

**<u>INTRODUCTION</u>**

As this court knows, in its operative First Amended Complaint ("FAC"), plaintiffs CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT (collectively, "DTSC") alleged that Collins & Aikman Products, LLC ("C&A"), the insured of THE CONTINENTAL INSURANCE COMPANY; CENTURY INDEMNITY COMPANY as successor to CCI INSURANCE COMPANY as successor to INSURANCE COMPANY OF NORTH AMERICA; ALLIANZ UNDERWRITERS INSURANCE COMPANY; CHICAGO INSURANCE COMPANY; FIREMAN'S FUND INSURANCE COMPANY, and THE TRAVELERS INDEMNITY COMPANY in each of their capacities as alleged insurers of Wickes Companies, Inc., alleged predecessor of Defendant COLLINS & AIKMAN PRODUCTS, LLC (collectively, "Intervenors") and multiple co-defendants were liable under CERCLA for cleanup/remediation costs incurred at an Elmira, California wood preserving facility ("Site"). This was done after more than three decades of DTSC's active oversight and involvement, and its mismanagement of the activities at the Site, including during periods when it had exclusive control over the Site.

In the FAC, DTSC asserts First through Third Causes of Action for recovery of response costs under CERCLA (42 *U.S.C.* § 9607(a)), declaratory relief under CERCLA (42 *U.S.C.* § 9613(g)(2)-(3)), and failure to comply with imminent or substantial determination order and remedial action order under the HSAA (Cal. *Health & Safety Code* §§ 25355.5, 25358.3, 25359, 25359.2, and 25367, respectively.)

Following the Ninth Circuit's reversal of this Court's denial of Intervenors' motion seeking to intervene (Docket No. 261), this Court set aside the default judgment against Intervenors' insured and granted their motion seeking to intervene. (Docket Nos. 269 and 270.) Intervenors then served their Answer which is the subject of DTSC's current motions to dismiss Intervenors' counterclaims ("Motion to Dismiss") and to strike an affirmative defense and the demand for jury trial ("Motion to Strike") (collectively, "Motions") (Docket No. 279.)

/ / /

/ / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1    Exactly like DTSC's motion to dismiss Defendant Jim Dobbas, Inc.'s ("Dobbas")

2    counterclaim, the only issue for this Court to consider for the Motion to Dismiss is whether the

3    Counterclaim filed by The Continental Insurance Company; Century Indemnity Company as

4    successor to CCI Insurance Company as successor to Insurance Company of North  America

5    (collectively, "Counter-Claimant Intervenors") meets the liberal pleading requirements of Federal

6    Rules of Civil Procedure, Rule 8.[1]  As discussed below, it does.

7    The second of the two Motions, the Motion to Strike, asserts two main, and needless to say,

8    unwarranted issues – one, striking of an appropriate affirmative defense, and two, striking of the

9    demand for jury trial.   As to the first, DTSC argues that Intervenors' affirmative defense of

10   Comparative and Contributory Negligence should be stricken.  The Seventh Affirmative Defense in

11   Intervenors' Answer asserted in relevant part that DTSC's loss:

12    "was caused… by Plaintiffs' own negligence, carelessness, lack of due care and
      fault, or by the negligence, carelessness, lack of due care and fault of Plaintiffs'
13    predecessors in interest, their agents, employees or tenants and/or third parties,
      excluding Collins & Aikman.  Accordingly, the FAC, and each claim therein, is
14    barred, in whole or in part, by Plaintiffs' contributory or comparative fault."

15   DTSC, in effect, seeks to make Intervenors' insured a legal punching bag, subject to being

16   sued under CERCLA yet unable to assert that the release of hazardous materials at the Site was

17   caused by DTSC's own mismanagement, rather than by Intervenors' insured's conduct.  As discussed

18   below, DTSC's instant motion seeking to strike that defense fails as a matter of law.

19   As with the Motion to Strike the demand for jury trial, this demand is proper and should not

20   be stricken by the Court as it has a clear relationship to the controversy of this case.  Moreover, as

21   this Court has previously ruled, the civil penalties authorized by the HSAA suggest that they are of

22   a legal character, and therefore, at a minimum, the demand for jury trial should not be stricken as to

23   the HSAA claim.

24   / / /

25   / / /

26

27

28
_____

[1] Intervenors Allianz Underwriters Insurance Company, Chicago Insurance Company, Fireman's Fund Insurance Company, and The Travelers Indemnity Company did not join the Counterclaim and have no pending claims against DTSC.

28460939.1:10468-0108

**FACTUAL BACKGROUND**

DTSC has been involved with the Site for more than thirty-five years.  Counterclaim ("Countercl.") at 2:19-23, ¶ 7.  DTSC claims that hazardous substances have been released into the environment at and from the Site "since 1972."  FAC at 6:13-7, ¶ 19.  In 1983, the Department of Health Services ("DHS") (predecessor to DTSC) approved a Remedial Action Plan ("RAP") for the Site.  Countercl. at 2:24-8, ¶ 8, Ex. A; FAC at 3:3-8 ¶ 6.  C&A, then-owner of the Site, under oversight of DTSC implemented response actions that DHS identified and selected in the RAP.  FAC at 6:18-23, ¶ 20.

After several years of implementation of the RAP requirements by Collins & Aikman Products Co. ("C&A Products Co.") and DHS/DTSC, DTSC issued a Certification of Remedial Action for the Site in 1996 ("Certification"), which "certifie[d] implementation of the final remedial actions" at the Site.  Countercl. at 3:5-9, ¶ 10, Ex. B.  The Certification further contains the following "Certification Statement":

> DTSC has determined that all appropriate removal/remedial actions have been completed and that all acceptable engineering practices were implemented; however, the site requires ongoing operation and maintenance (O&M) and monitoring efforts. The site will be deleted from the "active" site list following (1) a trial operation and maintenance period and (2) execution of a formal written settlement between DTSC and the responsible parties, if appropriate. However, the site will be placed on DTSC's list of sites undergoing O&M to ensure proper monitoring of long-term clean-up efforts.

Countercl. at Ex. B, 9.

After C&A Products declared bankruptcy in 2005, DTSC undertook "efforts to repair and restart the groundwater extraction and treatment system, completion of a remedial investigation for site soils, preparation of the Removal Action Workplan in October and November 2011, groundwater monitoring, and other tasks."  Countercl. at 3:14-9 ¶ 12; FAC ¶ 33.  DTSC negligently implemented these tasks, thereby exacerbating the contamination.  Countercl. at 3:27-8 ¶ 22; see also Countercl. at 5:1-2 ¶ 30 and 6:18-9 ¶ 41.

/ / /

/ / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

As part of DTSC's efforts, "[o]n January 19, 2007, DTSC contracted with Kleinfelder Inc. to resume operation of the [groundwater extraction and treatment system], groundwater monitoring and reporting and maintenance of the asphalt cap." Countercl. at 3:20-4 ¶ 13; FAC at Ex. D, 7.   DTSC actively operated the groundwater extraction and treatment system despite its 2001 report stating the "ground water pump and treat system would likely be unsuccessful in meeting the remedial action objectives." Countercl. at 3:24-6 ¶ 13; FAC at Ex. D, 4-5.   Notably, DTSC's 2010 Removal Action Workplan requires demolition of the groundwater extraction and treatment system because it has been unsuccessful.  *Id.* at Ex. D, 4-5, 9.  A Site inspection in 2010 also revealed that there were "numerous cracks in the asphalt cap" that DTSC contracted to maintain in 2007.  *Id.* at Ex. D, 4-5.

In 2008, DTSC contracted with URS Corporation to investigate the soils at the Site.  *Id.* at Ex. D, 7. Despite DTSC's prior Certification of the Site and the fact that no further wood treatment and preservation operations occurred after the Certification, the soils and groundwater analysis at the Site revealed elevated levels of contaminants.  *Id.* at Ex. D, 5-9.

In the Counterclaim, Counter-Claimant Intervenors assert, among other things, that DTSC has liability for damages associated with its selection and implementation of the response actions because it is and has been: (1) an "operator" of the Site under CERCLA; and (2) a "liable person" under the HSAA.  Countercl. at 4:24-5, ¶ 19; 5:25-27, ¶ 29.  Counter-Claimant Intervenors further allege that DTSC engaged in negligent, grossly negligent and/or intentional misconduct at or with respect to the Site relating to the selection and implementation of the response actions. *Id.* at 4:7-10, ¶ 15.  Accordingly, Counter-Claimant Intervenors seek contribution and cost recovery for actions C&A already performed and for those future costs that C&A may incur. *Id.* at 6:13-8, ¶ 34; Prayer for Relief, ¶¶ 2-3.

## **RELEVANT PROCEDURAL HISTORY**

On March 3, 2014, DTSC filed this action seeking to recover costs it has incurred responding to releases of hazardous substances at a privately-owned, former wood treatment and preserving facility at the Site, and related relief.  On December 11, 2014, DTSC filed the FAC naming C&A as an additional defendant, a cancelled Delaware limited liability company.   (ECF No. 77.) Intervenors filed their respective motions seeking to intervene in this case between September 18,

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

2019 and November 4, 2019 (ECF No. 196, 217, 222.)  After the denial of the motions to intervene in this action, on January 3, 2020 the Intervenors except The Travelers Indemnity Company filed a notice of appeal, pursuant to Federal Rules of Appellate Procedure 3(d), with the Ninth Circuit regarding the orders denying their respective motions to intervene.  (ECF No. 241.)  The Ninth Circuit reversed this Court's denial of those Intervenors' motions seeking to intervene (Docket No. 261), permitted The Travelers Indemnity Company to intervene (Docket No. 266), and subsequently, this Court set aside the default judgment against Intervenors' insured and granted their motion seeking to intervene.  (Docket Nos. 269 and 270.)  Intervenors then served their Answer along with the Counter-Claimant Intervenors' Counterclaim on March 15, 2023 (Docket No. 271) which is the subject of DTSC's Motions.  (Docket No. 279.)

## ARGUMENT

### I. DTSC'S MOTION TO DISMISS SHOULD BE DENIED

DTSC's Motion to Dismiss argues the following: (1) DTSC is not an "operator" under CERCLA (and, accordingly, not a "liable person" under HSAA); and (2) DTSC argues that the Counterclaim is defective because it fails to allege detailed facts which is inconsistent with CERCLA.  As explained below, Counter-Claimant Intervenors properly allege cost recovery and contribution claims against DTSC pursuant to section 9607 and section 9613 of CERCLA, and sufficiently allege their claims under the HSAA.  As such, DTSC's arguments do not hold merit.  As the remaining arguments in the Motion to Dismiss are derivative of and rely upon the foregoing two arguments, such arguments are similarly unavailing.

#### A. Legal Standard for Motion to Dismiss

A counterclaim generally must satisfy the minimal notice pleading requirements of Rule 8 to survive a motion to dismiss for failure to state a claim.  Rule 8 simply requires that the counterclaim include a "short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2).  The statement of the claim does not need to set forth specific facts; rather, the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1   544, 555 (2007) ("Twombly").

2   In assessing a motion to dismiss, the Court must construe the counterclaim liberally, accept
3   the allegations in the counterclaim as true, and draw all reasonable inferences in favor of the pleader.
4   *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974);  *Rescuecom Corp. v. Google, Inc*., 562 F.3d 123 (2d
5   Cir. 2009).   The Court may consider documents attached to the counterclaim, documents
6   incorporated by reference in the counterclaim, or matters of judicial notice. *Dichter—Mad Family*
7   *Partners, LLP v. United States*, 709 F.3d 749, 761 (9th Cir. 2013).

8   The Court may not dismiss a counterclaim for failure to state a claim unless it appears beyond
9   a doubt that the pleader can prove no set of facts in support of the claim which would entitle him or her
10  to relief.  *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). "his simplified notice pleading standard
11  relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and
12  to dispose of unmeritorious claims." *Hobart Corp. v. Waste Management of Ohio, Inc.,* 840 F.Supp.2d
13  1013, 1019 (S.D. Ohio 2011), quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512-13 (2002)
14  (internal quotes omitted). If a motion to dismiss is granted, "[the] district court should grant leave to
15  amend even if no request to amend the pleading was made." *Henry A. v. Willden,* 678 F.3d 991, 1005
16  (9th Cir. 2012).

17  **B.   Counter-Claimant Intervenors have Sufficiently Alleged Claims Pursuant to**
18  **CERCLA**

19  **i.   *CERCLA Liability Provisions***

20  CERCLA has three liability provisions pertinent to this action: (1) section 107(a), which
21  imposes strict liability; (2) section 107(d), which imposes liability for costs or damages as a result
22  of negligence, and (3) section 113(f), which allows claimants to seek contribution from any liable
23  or potentially liable party. These two liability provisions are explained in greater detail below.

24  CERCLA section 107(a) imposes strict liability on the following persons with respect to
25  "any facility at which hazardous substances were disposed of": (1) "the owner or operator" of the
26  facility; and (2) "any person who at the time of disposal of any hazardous substance owned or
27  operated" the facility. 42 U.S.C. § 9607(a)(1)-(2). A state agency, such as DTSC, is expressly
28  included within the definition of "person." *Id.* at § 9601(21), (27). The statute is interpreted liberally

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1   in order to achieve the goals of cleaning up hazardous waste sites promptly and ensuring that the

2   responsible parties pay the costs of the clean-up. *Voggenthaler v. Maryland Square, LLC,* 724 F.3d

3   1050, 1061, 1064 (9th Cir. 2013).

4          To establish a prima facie claim for recovery of response costs under section 107(a), a

5   private-party plaintiff must demonstrate: (1) the site on which the hazardous substances are

6   contained is a "facility"; (2) a "release" or "threatened release" of any "hazardous substance" from

7   the facility has occurred; (3) such "release" or "threatened release" has caused the plaintiff to incur

8   response costs that were "necessary" and "consistent with the national contingency plan"; and (4)

9   the defendant is a "potentially responsible party" ("PRP") subject to the liability provisions. *City of*

10  *Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1002-03 (9th Cir. 2010); *Carson*

11  *Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 870-71 (9th Cir. 2001). DTSC does not

12  challenge Counter-Claimant Intervenors' allegations with respect to the first three elements; its sole

13  challenge is with respect to the PRP element and whether DTSC qualifies as an "operator" under

14  that element. Motion at 5:17-9:5.

15         Even if a person does not qualify as a PRP under the strict liability provisions of Section

16  107(a), a person may nonetheless be held liable for costs and damages resulting from his or her

17  negligent acts under Section 107(d), entitled "rendering care or advice." "CERCLA expressly

18  addresses the liability of those who act in a remedial capacity, and who are otherwise not liable as

19  owners or operators, and provides them with protection from strict liability," except for "liability for

20  costs or damages as a result of negligence on the part of such person." *United States v. Iron Mountain*

21  *Mines, Inc.*, 881 F.Supp. 1432, 1443 (E.D. Cal. 1995), citing 42 U.S.C. § 9607(d)(1). "This provision

22  applies to governmental bodies because they are within the definition of `person.'" *Id.* However,

23  CERCLA provides an additional layer of protection for governmental bodies when they act in

24  response to an emergency — "[i]n such instances, state and local governments are liable only for

25  costs or damages resulting from their `gross negligence or intentional misconduct.'" *Id.* at 1443-44.

26         In addition to the allowable cost recovery under section 107, a PRP may also recover

27  contribution from another PRP under section 113 for its share of the responsibility for the

28  contamination. Specifically, section 113(f)(1) provides, in pertinent part, that "[a]ny person may

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1   seek contribution from any other person who is liable or potentially liable under [section 9607(a)],

2   during or following any civil action [under section 9607(a)]." 42 U.S.C. § 9613(f)(1). As the Court

3   explained in *Taylor Farm Ltd. Liability Co. v. Viacom, Inc.,* 234 F.Supp.2d 950, 962-63 (S.D. Ind.

4   2002):

> Contribution is an action among parties who have been found to be liable for at least
> some portion of the damages alleged in the underlying lawsuit. Of course, an action
> for contribution may also be initiated by a party who is a defendant in a lawsuit (and
> therefore not yet liable). But once a person is sued, that person's potential liability is
> not merely hypothetical. A ruling on contribution, or relative fault, will not occur
> unless the defendant is first found to be liable during the course of the lawsuit...
> section 113(f)(1) of CERCLA does not authorize preemptive contribution actions.
> It only authorizes a party who is potentially liable to seek contribution during a civil
> action, or alternatively, a party who is found liable under section 106 or 107(a) to
> seek contribution following that civil action.

11   Based on the foregoing, Counter-Claimant Intervenors may assert claims for both cost

12   recovery and contribution under CERCLA.

13   **ii.   Counter-Claimant Intervenors' Allegations Plausibly Support a Claim Against**

14   **DTSC for "Operator" Liability Under CERCLA**

15   Assuming all of the facts as true and viewing those facts in Counter-Claimant Intervenors'

16   favor, the Counterclaim sufficiently states a claim that DTSC was and is an "operator" of the Site.

17   CERCLA defines an "operator" as "any person owning or operating [a] facility." 42 U.S.C. §

18   9601(20)(A). While the term "operator" expressly excludes a state or local government that

19   involuntarily acquires title to such a facility, the exclusion does not extend to actions taken at

20   privately-owned facilities. *Id.* at § 9601(20)(D).  The statute further states that this exclusion "shall

21   not apply to any State or local government which has caused or contributed to the release or

22   threatened release of a hazardous substance from the facility and such a State or local government

23   shall be subject to [CERCLA's provisions] in the same manner and to the same extent, both

24   procedurally and substantively, as any nongovernmental entity, including liability under section

25   9607 of this title." *Id.*  Thus, the language set forth in CERCLA is clear – a governmental entity that

26   asserts control over the operations of a facility may be held liable.

27   In *United States v. Bestfoods*, 524 U.S. 51, 66-7 (1998), the Supreme Court explained that

28   "an operator must manage, direct, or conduct operations specifically related to pollution," that is,

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1  "operations having to do with the leakage or disposal of hazardous waste, or decisions about

2  compliance with environmental regulations."  As this Court has correctly noted in a past Order (see

3  Docket No. 43 at 7:19-23 to 8:1-6), courts have struggled to conclude the level of control that is

4  needed to evidence operatory liability.  See *United States v. Township of Brighton*, 153 F.3d 307,

5  313 (6th Cir. 1998).  Notwithstanding the fact that courts have still not determined a bright-line rule,

6  this standard "requires a fact-intensive inquiry and consideration of the totality of circumstances."

7  *United States v. Vertac Chem. Corp*., 46 F.3d 803, 808 (8th Cir. 1995), cert. denied. A motion to

8  dismiss is not the appropriate occasion or method to make a substantive determination regarding

9  whether DTSC was, in fact, an "operator."

10          Based on the allegations identified herein and in the relevant pleadings and exhibits, it is

11  plausible that the operations ordered and performed by DTSC caused or contributed to the release

12  of contamination at the Site.  It is further plausible that a factfinder could determine that DTSC had

13  "authority to control the cause of the contamination at the time the hazardous substances were

14  released into the environment," *Kaiser Aluminum v. Catellus Dev*., 976 F.2d 1338, 1341 (9th Cir.

15  1992), or that DTSC's actions and operations at and with regard to the Site "ha[d] to do with the

16  leakage or disposal of hazardous waste, or decisions about compliance with environmental

17  regulations." *Bestfoods*, 524 U.S. at 66-7.  This Court has held that CERCLA does not provide an

18  "overarching, unexpressed remedial immunity for state or federal agencies." *Iron Mountain Mines,*

19  *Inc*., 881 F.Supp. at 1444.  CERCLA's legislative history makes clear that "Congress intended that

20  those responsible for problems caused by the disposal of chemical poisons bear the costs and

21  responsibility for remedying the harmful conditions they created." *Dedham Water Co. v.*

22  *Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1081 (1st Cir. 1986) (quotation omitted).  By

23  including governmental entities within the term "persons," while failing to provide an exception for

24  regulatory activity, Congress intended that a governmental entity acting in its regulatory capacity

25  should be held responsible for cleanup costs where it operates a hazardous waste facility. *See FMC*

26  *Corp. v. U.S. Dep't of Commerce*, 29 F.3d 833, 843 (3d Cir. 1994) (*en banc*) (noting that the

27  government is in the same position "as any nongovernmental entity").

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

28460939.1:10468-0108

-9-

This Court has also previously noted in its Order (Docket No. 43) denying DTSC's motion to dismiss Defendant Dobbas' counterclaim that several courts have found that government entities may fall within the scope of statutory language in CERCLA and disagreed with DTSC's then approach citing to cases employing a narrow definition of "operator," which require an operator to play an active role in running the facility.   One such case that DTSC cited to is *Long Beach Unified Sch. Dist. v. Dorothy B. Godwin Cal. Living Trust*, 32 F.3d 1364, 1367 (9th Cir. 1994), which this Court declined to adopt given that this case predated the *Bestfoods* decision.   Further, this Court declined to adopt other cases which dismissed claims against state agencies when there were no allegations that the state agency had any involvement with the facility other than remedial cleanup efforts.   But, the Court went on to say more.   The Court stated that said cases rest on the pre-*Bestfoods* understanding of the term "operator."   See Order at 7:18-28 through 8:1-2.

As it did in its 2014 motion to dismiss Dobbas' counterclaim, DTSC, once more, in this instant Motion to Dismiss, cites to *Long Beach Unified Sch. Dist.* and *United States v. Dart Indus.* to support its position that a regulator cannot be an "operator."    The DTSC then argues that the Court's reliance on the authority set forth in its Order (Docket No. 43) is no longer valid and has "no persuasive force" here, as these cases were decided before the Supreme Court's clarification in *Bestfoods*.

The Court should reject the DTSC's attempt to distinguish this Court's prior order and the authority on which it relied.   Similarly, the new authority that DTSC now cites, *United States v. Sterling CentreCorp Inc.*, 977 F.3d 750 (9th Cir. 2020) is inapposite.   DTSC states in its Motion to Dismiss that *Sterling* reaffirmed its decision in *Long Beach Unified School District*.   The DTSC argues *Sterling* provides the "correct test for operator liability" and requires pleading of actual control by the DTSC.   Motion 8:18-21.   But the *Sterling* court cited to a pre-*Bestfoods* holding—the same case this Court previously declined to adopt in DTSC's prior 2014 motion to dismiss Dobbas' counterclaim—that a CERCLA "operator" liability requires an "active role in running the facility." *Id.* at 758 (citing to *Long Beach Unified Sch. Dist.,* 32 F.3d at 1367).

Even if this Court found *Sterling* apposite, the Counterclaim alleges facts that meet the standard set forth therein for operator liability.   As alleged in Counter-Claimant Intervenors'

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS AND
TO STRIKE AN AFFIRMATIVE DEFENSE AND THE DEMAND FOR JURY TRIAL

1   Counterclaim, as part of DTSC's efforts, "[o]n January 19, 2007, DTSC contracted with Kleinfelder

2   Inc. to resume operation of the [groundwater extraction and treatment system], groundwater monitoring

3   and reporting and maintenance of the asphalt cap." Countercl. at 3:20-4 ¶ 13; FAC at Ex. D, 7.   DTSC

4   actively operated the groundwater extraction and treatment system despite its 2001 report stating the

5   "ground water pump and treat system would likely be unsuccessful in meeting the remedial action

6   objectives." Countercl. at 3:24-6 ¶ 13; FAC at Ex. D, 4-5.   Despite its knowledge in 2001 that the

7   groundwater extraction and treatment operations were unsuccessful in treating the contamination,

8   DTSC continued to require C&A Products to operate the system, operated the system itself after

9   2005, and contracted with Kleinfelder to operate the system in 2007 (FAC at 6:24-8:2, ¶¶ 21-29; id.

10  at Ex. B, 7-9).   The wood treatment and preservation operations at the Site (the original source of

11  the contamination) ceased prior to the Certification (Countercl. at Ex. B, 10; Compl. at Ex. B, 5-6);

12  DTSC "began performing the response actions" that C&A Products previously performed at the

13  Site, in 2005 (FAC at 6:24-8:2, ¶¶ 21-29).   DTSC knew in 2001 that an alternative technology was

14  needed to address the contamination, but it continued to direct operation of the groundwater

15  extraction and treatment system, and operated the system itself after 2005 (FAC at 6:24-8:2, 21-29;

16  id. at Ex. B, 8-9).   DTSC required the management of and has actively managed the very

17  groundwater extraction and treatment system at the Site that its 2010 Removal Action Workplan

18  identified for demolition (FAC at Ex. B, 4-5, 9).   DTSC noticed cracks in the asphalt cap after

19  Kleinfelder contracted with DTSC to maintain the cap (FAC at Ex. B, 4-5, 9).   The soil and

20  groundwater analysis after 2007 indicated unacceptable levels of contamination at the Site (FAC at

21  Ex. B; Countercl. at Ex. B).   DTSC claims that hazardous substances have been released into the

22  environment at and from the Site "since 1972," indicating that the releases of contamination

23  occurred during DTSC's oversight and operations of the Site (FAC at 6:1-5, ¶ 16).   Thus, based on

24  the foregoing, and assuming these facts are true and read in the light most favorable to Counter-

25  Claimant Intervenors, it may reasonably be inferred that DTSC's negligent, reckless, wanton,

26  willful, and intentional conduct in overseeing the clean-up activities and itself conducting such

27  activities at the Site plausibly resulted in the release of or threatened release of the contaminants that

28  form the subject of this action. The totality of the allegations in the pleadings and the attachments

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1   are sufficient to put DTSC on notice of the claims against it.  Even considering just the

2   Counterclaim, it includes sufficient allegations that DTSC was acting as an "operator" for CERCLA

3   purposes, actively.  *Bestfoods*, 524 U.S. at 66-67; *Sterling*, 977 F.3d at 758.

4         **iii.   Counter-Claimant Intervenors Properly Seek Declaratory Relief under the**

5            **Declaratory Judgment Act**

6         Counter-Claimant Intervenors seek a separate declaratory relief claim under CERCLA

7   section 113(g)(2).  This claim seeks separate and distinct remedies and are appropriately alleged.

8   The request for declaratory relief under section 113(g)(2) is for future costs associated with DTSC's

9   section 107 liability.  Counter-Claimant Intervenors also allege a counterclaim against DTSC for

10  contribution under section 113(f), and appropriately seeks declaratory relief for future costs under

11  the Declaratory Judgment Act based upon DTSC's section 113(f) liability, as such, relief is not

12  available under section 113(g)(2).  *New York v. Solvent Chemical Co., Inc.,* 664 F.3d 22, 25 (2d Cir.

13  2011).  In the absence of any authority for DTSC's proposition, and because Counter-Claimant

14  Intervenors' declaratory relief claims are proper, there is no basis for a dismissal of these claims.

15      **C.   Counter-Claimant Intervenors have Sufficiently Alleged Claims Pursuant to the**

16        **HSAA**

17        The HSAA claim survives in the same manner as the CERCLA claims.  DTSC's challenge

18  to the HSAA claim solely relies on the success of its arguments on the CERCLA claims.  Since, as

19  argued above, DTSC's arguments regarding the CERCLA claims do not prevail, its arguments

20  likewise fail with regard to Counter-Claimant Intervenors' HSAA claim.

21        For all of the above reasons, Counter-Claimant Intervenors respectfully request the Court to

22  summarily deny DTSC's Motion to Dismiss. If, however, the Court is inclined to grant the Motion

23  to Dismiss, Counter-Claimant Intervenors' respectfully request the Court to grant leave to amend.

24  **II.   DTSC'S MOTION TO STRIKE SHOULD BE DENIED**

25      **A.   Legal Standard for Motion to Strike**

26        DTSC also has brought a Motion to Strike under the Federal Rules of Civil Procedure, Rule

27  12(f) ("Rule 12(f)").  Rule 12(f) allows a Court to "strike from a pleading an insufficient defense or

28  any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. Proc. 12(f).  "Partly

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

-12-

because of the practical difficulty of deciding cases without a factual record it is well established that striking a pleading should be sparingly used by courts. It is a drastic remedy to be resorted to only when required for the purposes of justice." *N. Penn Transfer, Inc. v. Victaulic Co. of America*, 859 F.Supp. 154, 158 (E.D. Penn. 1994).

Courts therefore generally disfavor motions to strike and will usually deny them "unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties. [Citation omitted.] If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for the adjudication on the merits." *Champlaie v. BAC Home Loans Servicing, LP*, 706 F.Supp.2d 1029, 1039 (E.D. Cal. 2009). Intervenors have asserted sufficient allegations relating to the controversy to survive the MTS, its request for a jury trial, and the affirmative defenses that it does not willingly strike on its own.

**B.   Intervenors' Seventh Affirmative Defense is Not Subject to Being Stricken Under Rule 12(f)**

 **i.   *Rule 12(f) Only Authorizes District Courts to Strike an Answer When the Defense Lacks Merit Under any Set of Facts that the Defendant Might Allege***

While Rule 12(f) authorizes plaintiffs to move to strike an affirmative defense in a defendant's answer, an affirmative defense fails as a matter of law only if it lacks merit under any set of facts the defendant might allege. *Dodson v. Strategic Restaurants Acquisition Co. II, LLC*, 289 F.R.D. 595, 603 (E.D. Cal. 2013). Motions seeking to strike affirmative defenses under Rule 12(f) are disfavored, and District Courts can only grant them "where the insufficiency of the defense is clearly apparent." *United States v. Rohm and Haas Co.*, 919 F. Supp. 1142, 1151 (D.N.J. 1996).

 **ii.   *The 42 U.S.C. § 9607(b) Restriction on Affirmative Defenses in Certain Actions Do Not Bar the Intervenors' Seventh Affirmative Defense***

42 *U.S.C.* § 9607(b) governs defenses to liability in cost recovery actions under CERCLA. Section 9607(b) provides that liability does not attach if the release or threatened release of a hazardous substance was caused solely by: (1) "an act of God"; 2) "an act of war" or 3) "an act or omission of a third party other than an employee or agent of the defendant" if the defendant "(a)

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1  …exercised due care . . . and (b) …took precautions against foreseeable acts or omissions of any

2  such third party."  (Emphasis added.)

3          The Section 9607(b)((1)-(3) defenses apply to CERCLA cost recovery actions because they

4  relate to whether the release of hazardous substances was "caused solely" by the act or omission of

5  a third party under § 9607(b)(3).  *See Adobe Lumber, Inc. v. Hellman*, 658 F.Supp.2d 1188, 1204

6  (E.D. Cal. 2009) (where defendant's release was unforeseeable, and its conduct was `indirect and

7  insubstantial' in the chain of events leading to release, then the defendant's conduct was not the

8  proximate cause of release, and the third party defense is available);  *Lincoln Properties., Ltd. v.*

9  *Higgins*, 823 F. Supp. 1528, 1542 (E.D. Cal. 1992)(CERCLA's statutory defenses "incorporate the

10 concept of proximate or legal cause").

11         Courts have interpreted Section 9607(b)(3)'s express causation standard as "incorporat[ing]

12 legal cause."  *Castaic Lake Water Agency v. Whittaker Corp.*, 272 F.Supp.2d 1053, 1082 (C.D. Cal.

13 2003).  As the court stated in *Adobe Lumber, supra*, 658 F.Supp.2d at 1204:

14         "If the defendant's release was not foreseeable, and if its conduct…was so 'indirect
            and insubstantial' in the chain of events leading to the release, then the defendant's
15         conduct was not the proximate cause of the release and the third party defense may
            be available…."  (Emphasis added.)
16

17 In the instant case, these principles dictate that Intervenors' affirmative defense is not subject to

18 being stricken, since it does not lack merit under any potential set of facts that those defendants

19 might allege.  Specifically, Intervenors may be able to establish that any release of hazardous

20 substances on the subject site was caused by DTSC, a "third party other than an employee or agent

21 of the defendant," solely or in conjunction with other third parties.

22          Intervenors may also be able to establish that their insured, the defendant, "(a) …exercised

23 due care . . . and (b) …took precautions against foreseeable acts or omissions of any such third

24 party," satisfying all requirements of the Section 9607(b)(3)(a)-(b) causation defense.  In that

25 scenario, that defense would bar plaintiff's action against the intervenors' insured.  *Adobe Lumber,*

26 *Inc., supra*, 658 F.Supp.2d at 1204 (Section 9706(b)(3)(a)-(b) defense applies where defendant's

27 conduct was not the proximate/legal cause of release).

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

-14-

While Intervenors may ultimately not be able to establish those factual elements, DTSC is not entitled to strike the subject defense at the pleading stage of this litigation and preclude Intervenors even from having the opportunity to try to develop this defense to DTSC's multi-million dollar claim against them—especially when, due to DTSC's own machinations in ensuring that a default was entered against their insured in 2014, Intervenors have, up until now, never had any opportunity to conduct discovery on behalf of their defunct insured.

The authorities cited by DTSC in support of their claim that the subject affirmative defense can be stricken are all distinguishable and inapplicable.  In *California ex rel. California Dept. of Toxic Substances Control v. Neville Chemical Co*., 358 F.3d 661. 670-71 (9th Cir. 2004) ("Neville"), the primary case on which DTSC rely, the appellate court merely held that, under CERCLA, the limitations period for suing to collect remedial action costs from a party responsible for contamination by hazardous substances does not begin to accrue until after the final adoption of the remedial action plan required by the statute.

In doing so, the court also held that the equitable defenses of waiver and estoppel, based on the defendant's claim that the governmental agency had promised that it would not sue for full recovery if the defendant conducted the research, investigation, and clean-up of the site was not available to the defendant because those defenses were not specifically enumerated as available under Section 9607(b).  *Neville*, *supra*, 358 F.3d at 671-72.

The *Neville* court, therefore, never addressed the issue of whether a governmental agency's negligence contributing to the release of hazardous substances could represent an affirmative defense.  Under the causation defense expressly permitted by Section 9706(b)((3)(a)-(b), however, Intervenors are entitled to present that defense in the instant case.

*Levin Metals Corp. v. Parr-Richmond Terminal Co*., 799 F.2d 1312, 1316-17, also cited by DTSC, is likewise unavailing to it because that case merely stands for the proposition that a defendant in a CERCLA action can assert in a counterclaim a claim seeking declaratory protection from a coercive CERCLA claim brought by a third party, without having to allege in that declaratory relief claim that it itself incurred response costs.  *Levin Metals Corp*., therefore, does not support DTSC's claim that the Intervenors' Seventh Affirmative Defense is subject to being stricken.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

**iii.** *The Section 9607(b) Restrictions Do Not Apply to All Claims Asserted in DTSC's FAC*

Even assuming for the sake of argument that Section 9706(b) limited the affirmative defenses that the intervenors could assert with respect to DTSC's CERCLA claims, DTSC has also asserted a claim under California's HSAA. While California's *Health & Safety Code* § 25323.5(b) provides that the defenses available in an HSAA action "shall be those defenses specified in [Section 9706(b)]," as discussed above, that provision of CERCLA does not bar Intervenors' subject Seventh Affirmative Defense in the instant case.

**B.   The Intervenors' Demand for a Jury Trial is Properly Pled**

The Counterclaim provides Intervenors the fundamental right to a jury trial for two main reasons:  (1) the Counterclaim alleges both legal and equitable claims; and (2) given that the courts are split on the issue of whether cost recovery under CERCLA is equitable rather than legal in nature, the Court should err on the side of preserving the fundamental right to a jury trial.

The Counterclaim alleges both legal and equitable claims. When legal and equitable claims are combined in the same action, "the right to jury trial on the legal claim, including all issues common to both claims, remains intact." *Lytle v. Household Mfg., Inc*., 494 U.S. 545, 550 (U.S.N.C. 1990), citing *Curtis v. Loether*, 415 U.S. 189, 196, n.11 (1974).  Further, when legal and equitable claims are both heard, the legal issue is heard first and informs the equitable determination. *Beacon Theatres, Inc*., 359 U.S. at 510-511 ("[O]nly under the most imperative circumstances ... can the right to a jury trial of legal issues be lost through prior determination of equitable claims."); see also *Parklane Hosiery Co. Inc. v. Shore*, 439 U.S. 322, 353-55 (1979); and *GTE Sylvania, Inc. v. Continental T. V., Inc*. 537 F.2d 980, 986, n.7 (9th Cir. 1976), *aff'd* 433 U.S. 36.

Further, "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."  *In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F.Supp. 994, 998 (D. Mass. 1989).  Accordingly, the Court should err on the side of preserving the jury trial. *Viking Resources, citing United States v. Williams*, 441 F.2d 637, 644 (5th Cir. 1971) (quoting *Beacon Theatres Inc. v. Westover*, 359 U.S.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1    500 (1959) ("When legal and equitable issues are merged in a single case, the trial court's discretion

2    `is very narrowly limited and must, wherever possible, be exercised to preserve jury trial'").

3         While CERCLA cost recovery actions do not expressly provide a right to a jury trial; courts,

4    however, are split on the issue of whether cost recovery under CERCLA is equitable rather than

5    legal in nature.  *United States v. Vertac Chem. Corp.*, 966 F.Supp.1491, 1498 (E.D. Ark. 1997) *aff'd*

6    *sub nom. United States v. Hercules, Inc.*, 247 F.3d 706 (8th Cir. 2001)).  The Counterclaim requests

7    such contributory relief.  Moreover, the Counterclaim requests relief pursuant to the Declaratory

8    Judgment Act, 28 U.S.C. § 2201 *et al.*, which preserves the right for a jury.  *See, e.g., Beacon*

9    *Theatres, Inc.*, 359 U.S. 500; *Minnesota Mut. Life Ins. Co. v. Brodish*, 200 F.Supp. 777, 778 (E.D.

10   Penn. 1962); *Chapman v. Kleindienst*, 507 F.2d 1246 (7th Cir. 1974).

11        As this case consists of both legal and equitable issues which underly the FAC, Intervenors'

12   Answer thereto, and Counter-Claimant Intervenors' Counterclaim, the Court should adopt its ruling

13   for the motion to strike Dobbas' demand for jury trial and here, too, decline to strike the Intervenors'

14   jury demand.  DTSC has failed to raise any persuasive new authority or argument in support of its

15   claim that this Court's reasons for denying DTSC's earlier motion to strike Dobbas' demand for jury

16   trial is not applicable here.  It is. To begin with, this Court's reasoning in its Order declining to strike

17   Dobbas' demand for jury trial was based, only partly, on an analysis of civil penalties claimed for

18   under the HSAA.  Moreover, the FAC sets forth an allegation expressly referencing California

19   Health and Safety Code 25359(a).  FAC 11:5-10 ¶ 49.  Even if DTSC is not specifically seeking

20   said relief from C&A, the FAC, nevertheless, consists of a legal nature, and DTSC has not cited to

21   legal authority holding that this issue is defendant-specific.  Accordingly, the Court should decline

22   to strike Intervenors' demand for a jury trial.

## III.   **CONCLUSION**

24        For the reasons set forth above, Counter-Claimant Intervenors' Counterclaim meets the

25   standard set forth in Rule 8 and further, provides both an adequate and fair notice of Counter-

26   Claimant Intervenors' claims to DTSC.  Accordingly, the Motion to Dismiss should be denied.  In

27   the alternative, should the Court grant DTSC's requests set forth in its Motion to Dismiss, Counter-

28   Claimant Intervenors' request that the Court grant Counter-Claimant Intervenors leave to amend

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

28460939.1:10468-0108

OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS AND
TO STRIKE AN AFFIRMATIVE DEFENSE AND THE DEMAND FOR JURY TRIAL

1    their Counterclaim.  Additionally, Intervenors request that the Court deny the Motion to Strike.

2

3    DATED:  May 18, 2023                   WOOD, SMITH, HENNING & BERMAN LLP

4

5                                          By: _____
                                               THOMAS F. VANDENBURG
6                                              NICHOLAS M. GEDO
                                               ALICE CHARKHCHYAN
7                                          Attorneys for Intervenors THE CONTINENTAL
                                           INSURANCE COMPANY; CENTURY INDEMNITY
8                                          COMPANY as successor to CCI INSURANCE
                                           COMPANY as successor to INSURANCE COMPANY
9                                          OF NORTH  AMERICA; ALLIANZ
                                           UNDERWRITERS INSURANCE COMPANY;
10                                         CHICAGO INSURANCE COMPANY; FIREMAN'S
                                           FUND INSURANCE COMPANY, and  THE
11                                         TRAVELERS INDEMNITY COMPANY in each  of
                                           their capacities as alleged insurers of Wickes
12                                         Companies, Inc., alleged predecessor of Defendant
                                           COLLINS & AIKMAN PRODUCTS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

28460939.1:10468-0108

OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS AND
TO STRIKE AN AFFIRMATIVE DEFENSE AND THE DEMAND FOR JURY TRIAL