ROB BONTA
Attorney General of California
LAURA J. ZUCKERMAN
Supervising Deputy Attorney General
THOMAS SCHUMANN (Counsel for service)
State Bar No. 324559
JAMES POTTER, State Bar. No. 166992
Deputy Attorneys General
  1300 I Street
  Sacramento, CA 94244-2550
  Telephone:  (916) 210-7790
  Fax:  (916) 731-2128
  E-mail:  Thomas.Schumann@doj.ca.gov
*Attorneys for Plaintiffs California Department of
Toxic Substances Control and Toxic Substances
Control Account*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,**<br><br>Plaintiffs,<br><br>v.<br><br>**JIM DOBBAS, INC., a California corporation, et al.,**<br><br>Defendants. | 2:14-cv-00595-WBS-EFB<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS INTERVENORS' COUNTERCLAIMS AND MOTION TO STRIKE AN AFFIRMATIVE DEFENSE AND THE DEMAND FOR JURY TRIAL FROM INTERVENORS' ANSWER**<br><br>Date:          July 24, 2023<br>Time:          1:30 p.m.<br>Courtroom:  5<br>Judge:         Hon. William B. Shubb<br>Trial Date:   Not set.<br>Action Filed:  March 3, 2014 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

I.    Counter-Claimant Intervenors Do Not Demonstrate That Any of the Four
Counterclaims State a Claim for Relief ...................................................................... 1

    A.    The Opposition Misstates the Pleading Standard Imposed by
*Twombly* and *Iqbal*. ..................................................................................... 1

    B.    The Opposition's Argument re DTSC's Control of the Site
Misrepresents both CERCLA and the Contents of the Relevant
Pleadings. ....................................................................................................... 3

        1.    Counter-Claimant Intervenors Ask the Court to Disregard
*United States v. Sterling CentreCorp Inc.,* Controlling Ninth
Circuit Precedent. ................................................................................ 3

        2.    Counter-Claimant Intervenors' Argument that DTSC was
the Operator at the Time of a Release Is Based on a
Mischaracterization of DTSC's First Amended Complaint. ............... 4

        3.    The Opposition Abandons the Counterclaim's Allegation
that DTSC Caused a Release at the Site. ............................................ 5

    C.    Counter-Claimant Intervenors Misstate the Law with Respect to the
Liability of Response and Regulatory Agencies. ........................................... 5

    D.    Because the Counterclaim Has Not Properly Alleged that DTSC is
an Operator of the Site, the Court Should Dismiss All Four Causes
of Action. ........................................................................................................ 7

II.    Intervenors Mischaracterize Their Negligence Defense as a Third-Party
Causation Defense and Misrepresent DTSC's First Amended Complaint. ............... 8

    A.    Intervenors Cannot Distinguish the Earlier Ruling in This Case
Holding That Comparative and Contributory Negligence Are Not
Available Affirmative Defenses in CERCLA Cost Recovery
Actions. .......................................................................................................... 8

    B.    The Opposition Mischaracterizes Intervenors' Comparative and
Contributory Negligence Defense as a Third-Party Causation
Defense Permitted Under CERCLA Section 107(b)(3). ............................... 9

    C.    Intervenors Incorrectly Assert That DTSC Brought a Claim Against
Intervenors' Insured Under California's Hazardous Substance
Account Act. ................................................................................................... 9

III.    Intervenors' Opposition Does not Identify Any Authorities That Support a
Right to a Jury Trial in a CERCLA Cost Recovery Action. ................................... 10

CONCLUSION ..................................................................................................................... 11

i

# TABLE OF AUTHORITIES

**Page**

CASES

*AMW Materials Testing, Inc. v. Town of Babylon*
    584 F.3d 436 (2d Cir. 2009) .................................................................................. 6

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ............................................................................... 1, 2, 3, 5

*Beacon Theatres, Inc. v. Westover*
    359 U.S. 500 (1959) ............................................................................................ 11

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ..................................................................................... 1, 2, 5

*Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*
    217 F. Supp. 2d 1028 (C.D. Cal. 2002) ........................................................... 8, 10

*Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Neville Chem. Co.*
    358 F.3d 661 (9th Cir. 2004) ................................................................................ 8

*Carson Harbor Vill., Ltd. v. Unocal Corp.*
    270 F.3d 863 (9th Cir. 2001) ................................................................................ 4

*Chapman v. Kleindienst*
    507 F.2d 1246 (7th Cir. 1974) ............................................................................ 11

*Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*
    805 F. Supp. 2d 888 (N.D. Cal. 2011) ................................................................. 4

*Hatco Corp. v. W.R. Grace & Co. Conn.*
    59 F.3d 400 (3d Cir. 1995) ................................................................................. 10

*Hishon v. King & Spalding*
    467 U.S. 69 (1984) ................................................................................................ 2

*Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*
    840 F. Supp. 2d 1013 (S.D. Ohio 2011) ............................................................... 2

*Interinsurance Exch. of the Auto. Club v. Electrolux Home Care Prod., Inc.*
    No. SACV1401817CJCJCGX, 2014 WL 12588462 (C.D. Cal. Dec. 16, 2014) .................... 6

*Kaiser Aluminum v. Catellus Dev.*
    976 F.2d 1338 (9th Cir. 1992) .............................................................................. 4

*Levin Metals Corp. v. Parr-Richmond Terminal Co.*
    799 F.2d 1312 (9th Cir. 1986) .............................................................................. 8

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

2

<u>Page</u>

3

*Little v. Gore*
    148 F. Supp. 3d 936 (S.D. Cal. 2015) ..................................................................... 2

4

5

*Long Beach Unified School District v. Dorothy B. Godwin California Living Trust*
    32 F.3d 1364 (9th Cir. 1994)............................................................................. 3, 4

6

*Minn. Mut. Life Ins. Co. v. Brodish*
    200 F. Supp. 777 (E.D. Pa. 1962) ...................................................................... 11

7

*Porter v. Warner Holding Co.*
    328 U.S. 395, 402 (1946) ................................................................................... 10

8

9

*Ramos-Soto v. C.R. Bard, Inc.*
    No. CV 21-1506, 2022 WL 1056581 (E.D. Pa. Jan. 14, 2022) ............................. 6

10

*Shroyer v. New Cingular Wireless Servs., Inc.*
    622 F.3d 1035 (9th Cir. 2010)............................................................................... 2

11

12

*MRP Properties Co., LLC v. United States*
    No. 22-1789, 2023 WL 4276571 (6th Cir. June 29, 2023) ..................................... 3

13

14

*United States v. Bestfoods*
    524 U.S. 51 (1998)............................................................................................ 3, 4

15

16

*United States v. Ne. Pharm. & Chem. Co.*
    810 F.2d 726 (8th Cir. 1986).............................................................................. 10

17

*United States v. Shell Oil Co.*
    No. CV 91-0589-RJK, 1992 WL 144296 (C.D. Cal. Jan. 16, 1992) ...................... 8

18

19

*United States v. Sterling CentreCorp Inc.*
    977 F.3d 750 (9th Cir. 2020).......................................................................... 1, 3, 4

20

21

*United States v. Vertac Chem. Corp.*
    966 F. Supp. 1491 (E.D. Ark. 1997) .................................................................. 10

22

23

*ZL Techs., Inc. v. Gartner, Inc.*
    No. CV 09-02393 JF(RS), 2009 WL 3706821, at *13 (N.D. Cal. Nov. 4, 2009)..................... 2

24

25

26

27

28

# TABLE OF AUTHORITIES
### (continued)

Page

STATUTES

42 U.S.C.
§ 9607(a) ............................................................................................ 6, 7
§ 9607(a)(2) ........................................................................................ 4
§ 9607(b) ............................................................................................ 9
§ 9607(d)(2) ........................................................................................ 5
§ 9621(c) ............................................................................................ 7
§ 9913(g)(2) ........................................................................................ 7

Health and Safety Code
§ 25300 ............................................................................................... 6, 9
§ 25323.5 ............................................................................................ 7

COURT RULES

Federal Rules of Civil Procedure, Rule 8 ....................................................... 2

FEDERAL REGULATIONS

40 C.F.R.
§ 300.400(f)(4)(ii) ............................................................................... 7

OTHER AUTHORITIES

74 AM. JUR. 2D *Torts* § 51 ......................................................................... 9

Plaintiffs California Department of Toxic Substances Control and the California Toxic Substances Account (collectively, "DTSC") hereby reply to the Opposition to Motion to Dismiss Counterclaims And to Strike An Affirmative Defense and the Demand for Jury Trial (Docket No. 281) (the "Opposition") to DTSC's Motions to Dismiss and Strike (Docket No. 280) (the "Motion"), filed by Intervenors in this action.[1]

## INTRODUCTION

Counter-Claimant Intervenors' Opposition fails to rebut any of the arguments in DTSC's Motion. The opposition to DTSC's motion to dismiss the Counterclaims asks the Court to set aside the Ninth Circuit's 2020 ruling in *United States v. Sterling CentreCorp Inc.*, 977 F.3d 750, 758 (9th Cir. 2020). It also asks the Court to harken back to the looser pleading standards predating *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The opposition to the motion to strike the affirmative defense of comparative and contributory negligence does not provide the Court with any reason to deviate from its 2014 ruling on that same affirmative defense. Finally, the opposition to DTSC's motion to strike the jury trial demand does not account either for the clear authority that there is no right to a jury trial in CERCLA cost recovery actions. DTSC respectfully asks the Court to grant the Motion in full.

## ARGUMENT

**I.    COUNTER-CLAIMANT INTERVENORS DO NOT DEMONSTRATE THAT ANY OF THE FOUR COUNTERCLAIMS STATE A CLAIM FOR RELIEF**

In their Opposition, Counter-Claimant Intervenors (1) misstate the applicable pleading standard; (2) fail to show that DTSC was an operator of the Site, misrepresenting both the law regarding operator liability and the allegations in the pleadings; and (3) misstate the law regarding the potential liability of response agencies such as DTSC.

### A.    The Opposition Misstates the Pleading Standard Imposed by *Twombly* and *Iqbal*.

Counter-Claimant Intervenors' Opposition fails to account for the changes in pleading standards imposed by the Supreme Court decisions: *Bell Atlantic Corp. v. Twombly*, 550 U.S.

---

[1] The Counterclaim was filed by Intervenors The Continental Insurance Company; Century Indemnity Company as successor to CCI Insurance Company as successor to Insurance Company of North America ("Counter-Claimant Intervenors") only..

544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Opposition does not cite or address either the *Iqbal* case itself or *any* case that applies the *Twombly* or *Iqbal* standards. Instead, it relies on earlier Court of Appeals cases that are inconsistent with *Twombly and Iqbal*.

In particular, the Opposition relies on a pre-*Twombly* case, *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984), for the proposition that a court "may not dismiss a counterclaim for failure to state a claim unless it appears beyond a doubt that the pleader can prove no set of facts in support of the claim which would entitle him or her to relief."[2] Opp. at 6. Yet in *Twombly*, the Supreme Court rejected that very standard. *See Hobart Corp. v. Waste Mgmt. of Ohio, Inc*., 840 F. Supp. 2d 1013, 1019 (S.D. Ohio 2011) (observing that *Twombly* "rejected the standard that a claim should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (Citation omitted).

Under *Iqbal,* to "survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1044 (9th Cir. 2010). Counter-Claimant Intervenors fail to refute DTSC's argument (Motion at 6-14) that the Counterclaim does not contain "sufficient factual matter" to state a claim for DTSC liability, i.e. to survive DTSC's Motion. Although the Opposition, on pages 5 and 11, recites allegations from the Counterclaim, it does so without explanation and not demonstrate that those allegations state a claim for DTSC liability. Even if all of those allegations are "accepted as true," the Counterclaim does not state a plausible claim that DTSC was an operator at the Site.

Moreover, allegations like those on page 11 of the Opposition could be made at many groundwater cleanup sites. For example, Counter-Claimant Intervenors recite the allegation, from Paragraph 13 of the Counterclaim, that DTSC "managed the very groundwater extraction and

---

[2] Similarly, Counter-Claimant Intervenors defend the Counterclaim as meeting "the liberal pleading requirements of Federal Rules of Civil Procedure, Rule 8," Opp. at 2, again ignoring *Iqbal* and *Twombly*. *See, e.g., ZL Techs., Inc. v. Gartner, Inc.*, No. CV 09-02393 JF(RS), 2009 WL 3706821, at *13 (N.D. Cal. Nov. 4, 2009) ("even under the liberal pleading standard of Fed. R. Civ. P. 8(a) a claim must be 'plausible on its face . . . [.]'") (citing *Twombly* and *Iqbal*)*; Little v. Gore*, 148 F. Supp. 3d 936, 957 (S.D. Cal. 2015) (noting the Ninth Circuit's liberal pleading policy with respect to "*Monell*" claims . . . did not survive *Iqbal*) (citations and internal quotation marks omitted).

2

Reply in Support of Plaintiffs' Motion to Dismiss Intervenors' Counterclaims And to Strike an Affirmative Defense and the Demand for Jury Trial from Intervenors' Answer (2:14-cv-00595-WBS-EFB)

treatment system at the Site that its 2010 Removal Action Workplan identified for demolition."
Opp. at 11. But it is hardly noteworthy that DTSC kept the groundwater treatment system running
until the end of its life, or that the groundwater system was scheduled for demolition. That routine
aspect of overseeing a groundwater cleanup is merely "consistent with" DTSC having operated
the Site and "stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678.
Failing to cross that line, the Opposition fails to state a claim for DTSC liability.

**B.** **The Opposition's Argument re DTSC's Control of the Site Misrepresents both CERCLA and the Contents of the Relevant Pleadings.**

**1.** **Counter-Claimant Intervenors Ask the Court to Disregard *United States v. Sterling CentreCorp Inc.,* Controlling Ninth Circuit Precedent.**

The Opposition asserts that to state a claim for operator liability, the Counterclaim merely
needs to allege that DTSC had the "authority to control" the Site and it need not allege that DTSC
had "actual control" of the Site Opp. at 9, 11. That position is squarely inconsistent with the
governing Ninth Circuit authority. In *United States v. Sterling CentreCorp Inc.*, 977 F.3d 750,
758 (9th Cir. 2020), the Ninth Circuit held that "to be an operator of a hazardous waste facility, a
party . . . must play an active role in running the facility, typically involving hands-on, day-to-day
participation in the facility's management." 977 F.3d at 758. Operator liability requires some
level of direction, management, or control over the facility's polluting activities. *Id*.[3] As discussed
in the Motion, *Sterling CentreCorp.* affirmed that *Long Beach Unified School District v. Dorothy
B. Godwin California Living Trust*, 32 F.3d 1364, 1367 (9th Cir. 1994), is consistent with the
Supreme Court's decision in *United States v. Bestfoods,* 524 U.S. 51, 66-67 (1998) and therefore
remains good law. 977 F.3d at 758; *see also* Mot. at 7-8.

Counter-Claimant Intervenors make the surprising argument that *Sterling CentreCorp* is
invalid because "the *Sterling* court cited to a pre-*Bestfoods* holding—the same case this Court
previously declined to adopt in DTSC's prior 2014 motion to dismiss Dobbas'." Opp. at 10-11.
This rejection of *Sterling CentreCorp.* has no merit. Just as it was proper for this Court, in 2014,
to question whether the *Long Beach Unified School District* decision remained good law in the

---

[3] Just last month, the Sixth Circuit followed *Sterling CenterCorp. MRP Properties Co., LLC v. United States,* No. 22-1789, 2023 WL 4276571, at *4 (6th Cir. June 29, 2023).

1   wake of *Bestfoods*, it was proper for the Ninth Circuit to subsequently reaffirm its earlier

2   decision. At this juncture, the Court is bound by *Sterling CentreCorp*, which establishes the

3   standard for operator liability in the Ninth Circuit.[4]

4           **2.    Counter-Claimant Intervenors' Argument that DTSC was the**
                      **Operator at the Time of a Release Is Based on a Mischaracterization**

5                         **of DTSC's First Amended Complaint.**

6         The Opposition's argument that DTSC operated the facility "at the time of disposal of any

7   hazardous substance," as is required for liability under 42 U.S.C. § 9607(a)(2) is based on an

8   unjustified inference and specious. Specifically, the Opposition argues that because "DTSC

9   claims that hazardous substances have been released into the environment at and from the Site

10  'since 1972,' [it follows] that the releases of contamination occurred during DTSC's oversight and

11  operations of the Site." Opp. at 11 (quoting DTSC's First Amended Complaint at 6:1-5, ¶ 16

12  [*sic*]). This inference might be valid if the First Amended Complaint alleged that releases

13  occurred *continuously* since 1972.

14        In fact, the First Amended Complaint alleges just the opposite: Paragraph 19 states: "*At*

15  *various times* since 1972, hazardous substances . . . were released into the environment at and

16  from the Site . . . ." ECF No. 77 at 6 (emphasis added). It does not allege there were continuous

17  releases.[5] Similarly, nowhere does the Counterclaim allege that DTSC *continuously* operated the

18  Site, it alleges at most that DTSC operated the Site at some time. Thus, although the First

19  Amended Complaint alleges that releases occurred at the Site "*at various times*" and the

20  Counterclaim alleges that DTSC operated the Site *at some time*, the Counterclaim does not allege

21  facts indicating that there was any specific overlap between those times. Consequently, there is no

22  basis for Counter-Claimant Intervenors' conclusion that DTSC was an operator at the time of the

23  releases. *See  Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.,* 805 F. Supp. 2d 888, 897

24  (N.D. Cal. 2011*)* (dismissing a CERCLA cause of action because, inter alia, plaintiff failed to

25  _____

26       [4] Ironically, though criticizing the Ninth Circuit for citing pre-*Bestfoods* decisions, the
Counter-Claimant Intervenors do the same. For example, they cite *Kaiser Aluminum v. Catellus*

27  *Dev*., 976 F.2d 1338, 1341 (9th Cir. 1992), which likewise predates *Bestfoods.* Opp. at 9.
     [5] Passive migration of contamination through soil or groundwater does not constitute

28  disposal. *Carson Harbor Vill., Ltd. v. Unocal Corp*., 270 F.3d 863, 877 (9th Cir. 2001).

allege a release occurred during "the only period when [defendant] owned" the parcel in question.) "Where a counterclaim pleads facts that are 'merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 557).[6] Counter-Claimant Intervenors have failed to state a plausible claim that DTSC operated the facility "at the time of disposal of any hazardous substance." *See id*.

### 3.    The Opposition Abandons the Counterclaim's Allegation that DTSC Caused a Release at the Site.

As discussed on pages 6-14 of the Motion, the Counterclaim pled two alternative theories to contend DTSC was an operator of the Site: that DTSC had the ability to control the Site and that DTSC caused a release of hazardous substances at the Site. As discussed above, the Opposition attempts, unsuccessfully, to defend the ability-to-control theory. The Opposition does not mention, let alone defend, the causation theory, effectively abandoning it. For this reason, the Counterclaiming-Intervenors should be deemed to have waived the allegation in the Counterclaim that DTSC caused a release.

### C.    Counter-Claimant Intervenors Misstate the Law with Respect to the Liability of Response and Regulatory Agencies.

DTSC does not dispute that a government agency conducting or overseeing response actions can incur CERCLA liability. While CERCLA section 107(d) provides an exemption from CERCLA liability for state and local agencies responding to hazardous substance releases, that exemption "shall not preclude liability for costs or damages as a result of *gross negligence or intentional misconduct* by the State or local government." 42 U.S.C. § 9607(d)(2) (emphasis added).

Counter-Claimant Intervenors' statement that section 107(d) "imposes liability for costs and damages as a result of negligence," Opp. at 6, is incorrect.[7] Section 107(d) does not provide an

---

[6] Counter-Claimant Intervenors also misrepresent the allegations of the Counterclaim, asserting that the Counterclaim alleges that "DTSC negligently implemented [certain remedial] tasks, thereby exacerbating the contamination." Opp. at 3 (citing Dkt. Nos.  ¶¶ 22, 30, 41). Yet Paragraphs 22, 30, and 41 nowhere allege that any action by DTSC exacerbated the contamination.

[7] The Opposition makes the same error on page 7. "Even if a person does not qualify as a

5

1   independent basis of liability. Rather, section 107(d) provides both an exemption from 107(a)

2   liability and an exception to that exemption when the costs or damages are caused by gross

3   negligence or intentional misconduct on the part of the State or local agency. *See AMW Materials*

4   *Testing, Inc. v. Town of Babylon,* 584 F.3d 436, 446 (2d Cir. 2009) ("[A]ll liability for response

5   actions under CERCLA originates with § 9607(a)") (emphasis in original). Because section

6   107(d) does not provide an independent basis for liability, it is not sufficient for the Counterclaim

7   to allege that DTSC was negligent—or even grossly negligent.[8]  To state a claim for CERCLA

8   liability, the Counterclaim must also allege that the state agency is a liable party under section

9   107(a).

10   Lastly, Counter-Claimant Intervenors posit a non-existent test of agency liability. In

11   describing DTSC's relationship to the Site, the Opposition emphasizes the length of DTSC's

12   engagement with the Site and the fact that the remedy DTSC initially approved ultimately was

13   insufficient, forcing DTSC to continue operating the groundwater system and to conduct

14   additional remedial actions at the Site and suggests these facts are "sufficient" to allege operator

15   liability. Opp. at 11. But neither of these alleged facts would transform DTSC (or any CERCLA

16   agency) from the entity cleaning up the contamination left by the Site's owners and operators into

17   an operator itself. Regarding the duration of the agency's actions, there is no rule under CERCLA

18   that a cleanup agency, whether overseeing a private party cleanup or managing a government-

19   funded cleanup, must complete the cleanup within a certain period of time or assume liability for

20   the costs of cleanup.

21   Likewise, the fact that a remedy needed to be reopened does not transform the lead agency

22   into a responsible party. From the outset, CERCLA has required that remedies, once

23   implemented, must be reviewed every five years. 42 U.S.C. § 9621(c). Moreover, when the five-

24   PRP under the strict liability provisions of Section 107(a), a person may nonetheless be held
25   liable for his or her negligent acts under Section 107(d), entitled 'rendering care or advice.'" Opp. at 7.

26   [8] Moreover, the Opposition fails to identify a specific negligent act, as it must do to state a claim for negligence, Mot. at 11 (citing *Ramos-Soto v. C.R. Bard, Inc.*, No. CV 21-1506, 2022 WL 1056581, at *1 (E.D. Pa. Jan. 14, 2022) [Negligence "is precisely the type of merely

27   conclusory statement not entitled to a presumption of truth on a motion to dismiss."]); *Interinsurance Exch. of the Auto. Club v. Electrolux Home Care Prod., Inc.*, No.

28   SACV1401817CJCJCGX, 2014 WL 12588462, at *1 (C.D. Cal. Dec. 16, 2014).

year review indicates that further action would be "appropriate," i.e. the remedy is not working as the approving agency intended, the lead agency must take or require those additional actions. *See also* 40 C.F.R. § 300.400(f)(4)(ii). Nowhere has Congress or U.S. EPA suggested that when a five-year review determines that the chosen remedy is inadequate, the lead agency who approved and oversaw that remedy is liable for future response costs.

As discussed on pages 15-16 of the Motion, Counter-Claimant Intervenors' attempt to shift liability from the parties responsible for the contamination to the government agency responding to that contamination is antithetical to CERCLA's purpose.

### D.   Because the Counterclaim Has Not Properly Alleged that DTSC is an Operator of the Site, the Court Should Dismiss All Four Causes of Action

As shown above, the Opposition fails to refute the Motion's demonstration that the Counterclaim did not allege sufficient facts to make it plausible that DTSC was an operator of the Site. Each of the four individual Counterclaims is wholly dependent on that allegation, and the Court should therefore dismiss all four Counterclaims for failure to state a cause of action. Fed. R. Civ. Pr. 12(b)(6).

The First and Second Counterclaims allege that DTSC is liable for cost recovery and contribution, under CERCLA sections 107(a) and 113(f)(1) respectively and both are explicitly dependent on the allegation that DTSC "operated" the Site, as that term is used in CERCLA section 107(a). Dkt. No 271, ¶¶ 20, 29. Both therefore fail to state a claim. The Third Counterclaim is for declaratory relief under 42 U.S.C. section 9913(g)(2). As the Court found previously, the section 113(g)(2) claim "is entirely derivative of [the] claim under § 9607 for response costs." ECF No. 43 at 10-11. Finally, the Fourth Counterclaim alleges that DTSC "is a 'liable person' within the meaning of California Health and Safety Code section 25323.5." Dkt. No 271. ¶ 40. Section 25323.5 merely incorporates the liability standards from 42 U.S.C. section 9607(a) and therefore requires a a proper allegation under section 107(a).

Thus, because the Counterclaim does not properly allege that DTSC is an operator under section 107(a), each of the four Counterclaims fails to state a claim and must be dismissed.

**II.  INTERVENORS MISCHARACTERIZE THEIR NEGLIGENCE DEFENSE AS A THIRD-PARTY CAUSATION DEFENSE AND MISREPRESENT DTSC'S FIRST AMENDED COMPLAINT.**

**A.  Intervenors Cannot Distinguish the Earlier Ruling in This Case Holding That Comparative and Contributory Negligence Are Not Available Affirmative Defenses in CERCLA Cost Recovery Actions.**

In 2014, this Court ruled that defendants in this case could not raise comparative and contributory negligence as an affirmative defense to DTSC's CERCLA cost recovery action. ECF No. 43 at 23. The Court relied on two Ninth Circuit cases holding that the three affirmative defenses enumerated in section 107(b) are the exclusive affirmative defenses to CERCLA cost recovery actions.[9] ECF No. 43 at 18-19. The Court also cited two decisions by its sister court, the Central District of California, expressly holding that comparative and contributory negligence cannot be raised as a defense to CERCLA cost recovery actions.[10] ECF No. 43 at 22-23.

In their Opposition, Intervenors attempt to distinguish the Ninth Circuit cases on the grounds they did not specifically address whether a negligence defense may be raised in a CERCLA cost recovery action. Opp. at 13-15. But, as this Court noted in its earlier ruling, the Ninth Circuit cases clearly held that the defenses enumerated in CERCLA section 107(b) are the exclusive affirmative defenses to CERCLA cost recovery actions. ECF No. 43 at 18. That the Ninth Circuit has not specifically stated that negligence is not a valid defense in CERCLA cost recovery actions does not undermine the validity of the conclusion that, since comparative and contributory negligence are not enumerated defenses under section 107(b), they are not available as affirmative defenses in such an action.

Further, Intervenors' Opposition fails to address, much less distinguish, the two decisions from the Central District of California cited in this Court's earlier ruling, which expressly held that comparative and contributory negligence are not available defenses in a CERCLA cost recovery action. As this Court observed, "[C]ourts have consistently 'rejected negligence on the

---

[9] *Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 672 (9th Cir. 2004); *Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1317 (9th Cir. 1986).

[10] *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1037 (C.D. Cal. 2002); and *United States v. Shell Oil Co.*, No. CV 91-0589-RJK, 1992 WL 144296, at * 9 (C.D. Cal. Jan. 16, 1992).

8

1   part of the government as a defense to liability in CERCLA actions.' " ECF No. 43 at 23. As

2   DTSC stated in its Motion, it is not aware of any subsequent case law that would call into

3   question this Court's earlier ruling, and Intervenors offer none. *See* Motion at 17.

4       **B.    The Opposition Mischaracterizes Intervenors' Comparative and
             Contributory Negligence Defense as a Third-Party Causation Defense
5             Permitted Under CERCLA Section 107(b)(3).**

6       Intervenors argue that the Court should not strike their comparative and contributory

7   negligence affirmative defense because "Intervenors may be able to establish that any release of

8   hazardous substances . . . was caused by DTSC , . . . solely or in conjunction with other third

9   parties." ECF No. 281 at 14. CERCLA section 107(b)(3) allows defendants in cost recovery

10   actions to raise the defense that the release of a hazardous substance was "caused solely . . . by

11   the act or omission of a third party." The doctrines of comparative and contributory negligence,

12   however, assume that the defendant is at least in part the cause of injury to the plaintiff. These

13   doctrines merely reduce the defendant's liability based on the relative fault of the plaintiff for the

14   injury caused by the defendant (*see* 74 AM. JUR. 2D *Torts* § 51) and therefore cannot be an

15   affirmative defense under CERCLA's strict liability scheme. *See* ECF No. 43 at 18-19 ("The

16   exclusivity of . . . defenses reflects the unique nature of CERCLA's statutory scheme, under

17   which liability is strict, without regard to fault . . . .") (citation and internal quotation marks

18   omitted).

19       As the Court recognized in its earlier order striking defendants' negligence defense, Section

20   9607(b) requires a defendant to prove that damages were 'solely caused' by a third party, . . .

21   preventing Dobbas from asserting these kinds of comparative negligence defenses." ECF No. 43

22   at 23. This Court should reaffirm its earlier ruling and not allow Intervenors to assert a defense

23   barred under CERCLA by mischaracterizing it as a different defense.

24       **C.    Intervenors Incorrectly Assert That DTSC Brought a Claim Against
             Intervenors' Insured Under California's Hazardous Substance Account
25             Act.**

26       Intervenors argue that even if their negligence defense is barred by CERCLA, this Court

27   should not strike it because DTSC's First Amended Complaint includes a claim against

28   Intervenors' insured, Collins & Aikman Products, LLC ("C&A Products"), under the Hazardous

                                        9

1   Substance Account Act, Health & Saf. Code section 25300 ("HSAA"). Opp. at 16. Intervenors

2   are mistaken. Plaintiffs' Third Claim for Relief brought HSAA claims against some defendants,

3   but not C&A Products. *See* ECF No. 77 at 10. Plaintiffs' two claims against C&A Products arise

4   solely under CERCLA. *Id*. at 9-10.

5   **III.   INTERVENORS' OPPOSITION DOES NOT IDENTIFY ANY AUTHORITIES THAT SUPPORT A RIGHT TO A JURY TRIAL IN A CERCLA COST RECOVERY ACTION.**

6

7          In its Motion, DTSC cited two circuit court decisions and a decision from the Central

8   District of California holding that there is no right to a jury trial in CERCLA cost recovery

9   actions because the relief sought is equitable in nature.[11] Motion at 18-19. One of those circuit

10  court decisions also held that there is no right to a jury trial in CERCLA contribution actions,

11  because the relief sought in such actions is similarly equitable.[12] *Id*. Intervenors' Opposition

12  nowhere addresses, much less refutes, the holdings of any of these cases.

13         Instead, Intervenors rely on *United States v. Vertac Chem. Corp.*, 966 F. Supp. 1491, 1498

14  (E.D. Ark. 1997), *aff'd sub nom. United States v. Hercules, Inc.*, 247 F.3d 706 (8th Cir. 2001), for

15  the proposition that courts "are split on the issue of whether cost recovery under CERCLA is

16  equitable rather than legal in nature." Opp. at 17. But the *Vertac* case also noted, "[i]t is well

17  established that because a CERCLA *cost recovery* action constitutes an action for restitution,

18  which lies in equity, no right to jury trial attaches to it." *Vertac Chem. Corp.*, 966 F. Supp. at

19  1497 (emphasis added). Likewise, while the *Vertac* case acknowledged that "district courts are

20  split as to whether a right to jury trial exists in [CERCLA] contribution claims," it conceded that

21  the one circuit court that addressed the question ruled that "an action for contribution . . . is

22  essentially equitable, and that there [is] no right to jury trial" in either cost recovery or

23  contribution actions. *Id.* at 1498 (citing *Hatco Corp. v. W.R. Grace & Co. Conn*, 59 F.3d 400, 414

24  (3d. Cir. 1995) (citations and internal quotations marks omitted); *see also* Motion at 18-19.

25

26         [11] *United States v. Ne. Pharm. & Chem. Co.*, 810 F.2d 726, 749 (8th Cir. 1986); *Hatco Corp. v. W.R. Grace & Co. Conn*., 59 F.3d 400, 412 (3d Cir. 1995) (citing *Porter v. Warner*

27  *Holding Co*., 328 U.S. 395, 402 (1946); *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1046 (C.D. Cal. 2002).

28         [12] *Hatco Corp.*, 59 F.3d at 413-14.

1   The other decisions cited by the Opposition hold that the Declaratory Judgment Act

2   preserves the right to a jury trial. ECF 281 at 17 (citing *Beacon Theatres, Inc. v. Westover*, 359

3   U.S. 500 (1959); *Minn. Mut. Life Ins. Co. v. Brodish*, 200 F. Supp. 777 (E.D. Pa. 1962); *Chapman*

4   *v. Kleindienst*, 507 F.2d 1246 (7th Cir. 1974)). But the fact that a jury trial is available in certain

5   actions seeking declaratory judgment does not mean that requesting a declaratory judgment

6   confers the right to a jury trial. As DTSC's Motion explained, whether an action entails the right

7   to a jury trial depends on the nature of the relief sought, not its form. ECF 279 at 17. CERCLA

8   section 113(g) authorizes the grant of a declaratory judgment for cost recovery and contribution.

9   Since settled precedent holds that actions for cost recovery and contribution seek relief that is

10   equitable in nature, and thus do not confer the right to a jury trial, requesting a declaratory

11   judgment for such liability does not either.

12                                           **CONCLUSION**

13   For the reasons set forth above, the Court should dismiss the Counterclaim filed by the

14   Counter-Claimant Intervenors; strike the affirmative defense of comparative and contributory

15   negligence filed by Intervenors and strike Intervenors' jury trial demand.

16

17   Dated:  July 10, 2023

18                                                       Respectfully submitted,

19                                                       ROB BONTA
                                                         Attorney General of California
20                                                       LAURA J. ZUCKERMAN
                                                         Supervising Deputy Attorney General

21                                                          /s/ James Potter

22                                                       THOMAS SCHUMANN
                                                         JAMES POTTER
23                                                       Deputy Attorneys General
                                                         *Attorneys for Plaintiffs California*
24                                                       *Department of Toxic Substances Control*
                                                         *and Toxic Substances Control Account*
25

26
    LA2012602448
27   37325024

28

# CERTIFICATE OF SERVICE

Case Name:  **California Department of Toxic**          No.   **2:14-cv-00595-WBS-EFB**
            **Substances Control, et al. v.**
            **Jim Dobbas, Inc., et al.**

I hereby certify that on July 10, 2023, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS INTERVENORS' COUNTERCLAIMS AND MOTION TO STRIKE AN AFFIRMATIVE DEFENSE AND THE DEMAND FOR JURY TRIAL FROM INTERVENORS' ANSWER**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on July 10, 2023, at Los Angeles, California.

|                Carol Chow                |              /s/ *Carol Chow*              |
| :--------------------------------------: | :----------------------------------------: |
|                Declarant                 |                 Signature                  |

LA2012602448
66074538.docx