UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, et al.,

            Plaintiffs,

     v.

JIM DOBBAS, INC., a California corporation, et al.,

            Defendants.

No. 2:14-cv-00595 WBS EFB

MEMORANDUM AND ORDER RE: MOTION TO DISMISS COUNTERCLAIMS AND MOTION TO STRIKE

----oo0oo----

Plaintiffs Department of Toxic Substances Control and the Toxic Substances Control Account (collectively "DTSC") seek recovery of costs and declaratory relief under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., in connection with the cleanup of a wood preserving operation in Elmira, California. (First Am. Compl. ("FAC") ¶ 19 (Docket No. 77).) Intervenors Century Indemnity Company, The Continental Insurance Company, Allianz Underwriters Insurance, Chicago Insurance Company, and

1

1    Fireman's Fund Insurance Company (collectively, "Intervenors"),

2    acting behalf of their insured, C&A Products, LLC ("C&A"),[1] have

3    filed an answer in intervention and counterclaims against DTSC.

4    (Docket No. 271.)  Specifically, Intervenors filed counterclaims

5    for cost recovery under CERCLA § 107, 42 U.S.C. § 9607;

6    contribution under CERCLA § 113(f); declaratory relief under

7    CERLCA § 113(g), 42 U.S.C. § 9613(g); and contribution and

8    indemnity under the California Hazardous Substance Account Act

9    ("HSAA"), California Health and Safety Code § 25300, et seq.

10   (Docket No. 271.)  Intervenors also included certain affirmative

11   defenses within their answer and have requested a jury trial.

12        DTSC has moved to dismiss the counterclaims, strike

13   Intervenors' affirmative defense for contributory and comparative

14   negligence, and strike the jury demand.  (Docket No. 279.)  The

15   court held a hearing on the motion on July 24, 2023.

16   I.    Motion to Dismiss Counterclaims

17        When considering a motion to dismiss a counterclaim

18   under Federal Rule of Civil Procedure 12(b)(6), the court uses an

19   identical standard as that for dismissal of a claim.  See, e.g.,

20   AirWair Int'l Ltd. v. Schultz, 84 F. Supp. 3d 943, 949 (N.D. Cal.

21   2015).  The court must accept the allegations in the claim as

22   true and draw all reasonable inferences in favor of the claimant.

23   See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on

24   other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v.

25   Beto, 405 U.S. 319, 322 (1972).  To survive a motion to dismiss,

26   a claimant must plead "only enough facts to state a claim to

27   _____

28        [1]   C&A Products is the successor to Wickes Corporation,
     one of the former owners and operators of the site.

1   relief that is plausible on its face." Bell Atl. Corp. v.

2   Twombly, 550 U.S. 544, 570 (2007).  This "plausibility standard,"

3   however, "asks for more than a sheer possibility that a defendant

4   has acted unlawfully," and where a counterclaim pleads facts that

5   are "merely consistent with a defendant's liability," it "stops

6   short of the line between possibility and plausibility."

7   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550

8   U.S. at 557).

9        The Intervenors' first and second counterclaims seek

10  cost recovery and contribution from DTSC pursuant to CERCLA §§

11  107 and 113.  In order to assert such claims, the Intervenors

12  must allege that DTSC was (1) "the owner and operator of a vessel

13  or a facility," (2) a "person who at the time of disposal of any

14  hazardous substance owned or operated any facility at which such

15  hazardous substances were disposed of," (3) a "person who . . .

16  arranged for disposal or treatment . . . of hazardous

17  substances," or (4) a "person who accepts or accepted any

18  hazardous substances for transport . . . ."  42 U.S.C. § 9607(a).

19  The Intervenors assert their counterclaims on the theory that

20  DTSC mismanaged cleanup efforts at the remediation site and is

21  liable as an "operator" under § 9607(a)(2). (Intervenors

22  Countercls. ¶¶ 7-34.)

23       This court previously addressed similar counterclaims

24  brought by defendant Jim Dobbas, Inc. ("Dobbas") in deciding a

25  similar motion to dismiss brought by DTSC.  (Docket No. 43 at 5-

26  12.)  The court noted that while a government entity may be

27  considered an operator under CERCLA, there was some dispute among

28  courts about the level of control necessary to support operator

1    liability.  Specifically, some courts have applied a narrower

2    "actual control standard," requiring affirmative acts from a

3    purported operator to support liability, with other courts

4    applying a broader "authority to control" standard.  (Docket No.

5    43 at 6-7 (citations omitted).)

6         This court recognized that cases from the Ninth and

7    Fourth Circuits had applied the narrower actual control

8    definition, requiring that the entity "play an active role in

9    running the facility, typically involving hands-on, day-to-day

10   participation in the facility's management."  See Long Beach

11   Unified Sch. Dist. v. Dorothy B. Godwin Cal. Living Tr., 32 F.3d

12   1364, 1367 (9th Cir. 1994); see also United States v. Dart

13   Indus., Inc., 847 F.2d 144, 146 (4th Cir. 1988).  The court

14   further noted that several courts had dismissed claims against

15   state agencies where there were no allegations that the state

16   agency had any involvement with the facility other than remedial

17   cleanup efforts.  (Docket No. 43 at 7 (citing Dart Indus., 847

18   F.2d at 146 (requiring "hands on" activities that contributed to

19   the release of hazardous waste); Stilloe v. Almy Bros., 782 F.

20   Supp. 731, 735-36 (N.D.N.Y. 1992); United States v. W. Processing

21   Co., 761 F. Supp. 725, 730-31 (W.D. Wash. 1991).)

22        However, this court also noted that those cases pre-

23   dated the Supreme Court's decision in United States v. Bestfoods,

24   524 U.S. 51, 66 (1998), and held they were not persuasive.  The

25   court explained that "Bestfoods does not require an operator to

26   play an active role.  It requires only that an entity 'manage,

27   direct, or conduct . . . operations having to do with the leakage

28   or disposal of hazardous waste, or decisions about compliance

4

1   with environmental regulations.'"  (Docket 43 at 9 (quoting

2   Bestfoods, 524 U.S. at 66-67).)

3           The court also noted, among things, (1) agreements

4   between DTSC or its predecessor agency and C&A or its

5   predecessor, which set forth the agencies' approval of remedial

6   action at the Elmira site and which were attached to Dobbas'

7   counterclaims; and (2) the allegations of the complaint that DTSC

8   performed "response actions" at the facility, including "efforts

9   to repair and restart the groundwater extraction and treatment

10  system, completion of a remedial investigation for site soils,

11  preparation of the Removal Action Workplan, implementation of the

12  Removal Action Workplan in October and November 2011, groundwater

13  monitoring, and other tasks."  (Docket No. 43 at 8-9 (citing

14  Compl. ¶¶ 21-29; Exs. A & B (Docket No. 1).)[2]  Ultimately, the

15  court determined that the pleadings sufficiently pled DTSC's

16  liability as an operator under CERCLA, and the court denied

17  DTSC's motion to dismiss Dobbas' counterclaims for cost recovery

18  and contribution.  (Docket No. 43 at 9-10.)

19          Here, Intervenors' allegations regarding operator

20  liability are similar to those asserted by Dobbas.  Nevertheless,

21  notwithstanding the court's prior ruling, DTSC argues that

22  Intervenors have not sufficiently alleged its liability as an

23  ────────────────

24          [2]   DTSC filed an amended complaint in December 2014, after
    the court issued its order regarding Dobbas' counterclaims.
    (Docket No. 77.)  DTSC amended the complaint to add C&A Products
25  as a defendant after investigation revealed that C&A might have
    insurance coverage which could be a source of funds to reimburse
26  DTSC's response costs.  (Docket No. 68-1 at 3.)  The amended
    complaint's allegations regarding DTSC's response actions are
27  identical, and the amended complaint also attaches the same
    documents as the original complaint, in addition to others.
28

                                    5

1  operator.  Specifically, DTSC argues that the Ninth Circuit's

2  recent decision in <u>United States v. Sterling Centrecorp Inc.</u>, 977

3  F.3d 750 (9th Cir. 2020), decided after this court's order ruling

4  on plaintiff's motion to dismiss Dobbas's counterclaims, now

5  requires allegations that a party play an active role to held

6  liable as an operator, and there are no such allegations here.

7       In <u>Sterling</u>, the Ninth Circuit examined whether the

8  United States could be held liable as an operator because of its

9  issuance of an order during World War II shutting down gold

10 mines, including the mine at issue in the case.  The panel

11 explained that <u>Bestfoods</u> "clarifies that actual participation in

12 decisions related to pollution is necessary for a finding of

13 operator liability," and noted that it had previously stated in

14 <u>Long Beach</u>, 32 F.3d at 1367, that "[t]o be an operator of a

15 hazardous waste facility, a party must do more than stand by and

16 fail to prevent the contamination.  It must play an active role

17 in running the facility, typically involving hands-on, day-to-day

18 participation in the facility's management."  977 F.3d at 758.

19      The panel continued, explaining that "[t]he <u>Bestfoods</u>

20 standard confirms that operator status has a nexus requirement.

21 That is, it requires that an operator's relationship to the

22 facility at issue must, at least in part, focus on 'operations

23 specifically related to pollution.'"  <u>Id.</u> (quoting <u>Bestfoods</u>, 524

24 U.S. at 66).  The panel reiterated that "operator liability

25 requires something more than general control over an industry or

26 facility.  It requires some level of direction, management, or

27 control over the facility's polluting activities."  <u>Id.</u>

28      In light of the additional guidance provided by the

1   Ninth Circuit in Sterling, the court determines that Intervenors

2   have not sufficiently alleged that DTSC was an operator under

3   CERCLA.  While this court previously expressed doubt about

4   whether the Ninth Circuit's narrower definition of an operator in

5   Long Beach applied after the Supreme Court's decision in Best

6   Foods, the Ninth Circuit has once again after Best Foods noted in

7   Sterling that a party "must play an active role in running the

8   facility, typically involving hands-on, day-to-day participation

9   in the facility's management."

10          Here, Intervenors' allegations repeat the First Amended

11   Complaint's allegations regarding DTSC's response actions and add

12   additional allegations that "DTSC actively operated the

13   groundwater extraction and treatment system despite its 2001

14   report stating the 'ground water pump and treat system would

15   likely be unsuccessful in meeting the remedial action

16   objections'" and "[a] Site inspection in 2010 also revealed there

17   were 'numerous cracks in the asphalt cap' that DTSC contracted to

18   maintain in 2007."  (Counterclaims at 16 (citations omitted).)

19   However, a vague allegation that DTSC "actively operated" a

20   groundwater system and DTSC's alleged knowledge of its

21   contractor's failure to maintain a remedial structure on the site

22   do not sufficiently allege that DTSC's involvement with the site

23   rose to the level of active control with hands-on, day-to-day

24   participation in managing the Elvira site.  Accordingly, the

25   court will dismiss the first and second counterclaims based on

26   the failure to properly allege DTSC was an operator under CERCLA.

27          Further, even assuming that DTSC's management of the

28   site rose to the level that it could be considered an operator,

1   there is no plausible allegation that DTSC operated the Elvira

2   site when any hazardous materials were "disposed", as defined by

3   CERCLA.  As stated above, Section 107(a)(2) provides for

4   liability of "any person who at the time of disposal of any

5   hazardous substance owned or operated any facility at which such

6   hazardous substances were disposed of," (emphasis added).  As

7   explained by the Ninth Circuit in Carson Harbor Village, Ltd. v.

8   Unocal Corp., 270 F.3d 863, 874-87 (9th Circ. 2001), the gradual

9   passive migration of contamination through soil during a former

10  owner's ownership of a property was not a "disposal" under

11  CERCLA.  Yet that appears to be the Intervenors' allegation here

12  -- that DTSC has not properly managed existing contamination as

13  it passively migrates through the soil, due to inadequate

14  remedial measures.  While Intervenors assert the conclusory

15  allegation that DTSC's actions "contributed to or caused the

16  leakage or disposal of hazardous waste," (Countercls. ¶ 14),

17  there is no allegation how anything DTSC did could be considered

18  disposal under CERCLA § 107.  Accordingly, Intervenors' failure

19  to sufficiently allege disposal of hazardous materials during

20  DTSC's alleged operation of the site is a second and independent

21  ground for dismissal of the first and second counterclaims.

22      Because Intervenors have not properly alleged DTSC's

23  liability as an operator or disposal under § 107 and § 113, the

24  court will dismiss their counterclaims for cost recovery and

25  contribution.  Further, the court will also dismiss the § 113(g)

26  counterclaim for declaratory relief and the counterclaim under

27  the HSAA.  See Coppola v. Smith, 19 F. Supp. 3d 960, 977 (E.D.

28  Cal. 2014) (claim for declaratory relief under § 113(g)(2) is

1   dependent on a valid § 107 claim); <u>Adobe Lumber, Inc. v. Hellman</u>,

2   658 F. Supp. 2d 1188, 1192-93 (E.D. Cal. 2009). (California's

3   HSAA provides for civil actions for indemnity and contribution

4   and expressly incorporates CERCLA's liability standards and

5   defenses).

6   II. <u>Motion to Strike Affirmative Defense</u>

7           Federal Rule of Civil Procedure 12(f) authorizes the

8   court to "strike from a pleading an insufficient defense or any

9   redundant, immaterial, impertinent, or scandalous matter." Fed.

10  R. Civ. P. 12(f).  "[T]he function of a [Rule] 12(f) motion to

11  strike is to avoid the expenditure of time and money that must

12  arise from litigating spurious issues by dispensing with those

13  issues prior to trial."  <u>Sidney-Vinstein v. A.H. Robins Co.</u>, 697

14  F.2d 880, 885 (9th Cir. 1983).

15          DTSC moves to strike Intervenors' seventh affirmative

16  defense for contributory and comparative negligence, which reads

17  in part:

18      Any and all injury or damage was caused, in whole or
        in part, by Plaintiffs' own negligence, carelessness,
19      lack of due care and fault, or by the negligence,
        carelessness, lack of due care and fault of
20      Plaintiffs' predecessors in interest, their agents,
        employees or tenants and/or third parties, excluding
21      Collins & Aikman.

22  (Docket No. 271 at 12.)

23          This court previously addressed similar affirmative

24  defenses asserted by defendant Dobbas.  The court first noted

25  that CERCLA § 107(b) provides an exclusive list of defenses

26  available in cost recovery actions under CERCLA.  (Docket No. 43

27  at 18-19 (citing, inter alia, <u>Cal. ex rel. Cal. Dep't of Toxic</u>

28  <u>Substances Control v. Neville Chem. Co.</u>, 358 F.3d 661, 672 (9th

1    Cir. 2004);[3] <u>Levin Metals Corp. v. Parr-Richmond Terminal Co.</u>,

2    799 F.2d 1312, 1317 (9th Cir. 1986)).)  The court further noted

3    that while DTSC also asserted a claim for civil penalties under

4    the HSAA, that statute "expressly incorporates CERCLA's liability

5    standards and defenses," and thus Dobbas could not assert

6    defenses to the HSAA that it could not assert under § 107(a) of

7    CERCLA.  (Docket No. 43 at 19-20 (citing, inter alia, <u>Adobe</u>

8    <u>Lumber, Inc. v. Hellman</u>, 658 F. Supp. 2d 1188, 1192 (E.D. Cal.

9    2009); <u>Coppola v. Smith</u>, 935 F. Supp. 2d 993, 1011 (E.D. Cal.

10   2013).)

11           This court then looked to Dobbas's affirmative defenses

12   that DTSC's claims were barred or should be reduced because

13   DTSC's own actions caused or aggravated the release of hazardous

14   substances.  The court struck those defenses, explaining:

15       [C]ourts have consistently "rejected negligence on the
         part of the government as a defense to liability in
16       CERCLA actions."  <u>Cal. Dep't of Toxic Substances</u>
         <u>Control v. Alco Pac., Inc.</u>, 217 F. Supp. 2d 1028, 1037
17       (striking contributory fault defense and citing
         cases); <u>see also</u> <u>United States v. Shell Oil Co.</u>, Civ.
18       No. 91-589, 1992 WL 144296, at *9 (C.D. Cal. Aug. 9,
         1992) ("[C]omparative fault and contributory
19       negligence are not defenses to CERCLA actions."
         (citations omitted)).  Section 9607(b) requires a
20       defendant to prove that damages were "solely caused"
         by a third party, 42 U.S.C. § 9607(b), preventing
21       Dobbas from asserting these kinds of comparative

22   _____

23       [3]      As explained by this court previously, the <u>Neville</u>
     court held that this exclusive list of defenses did not apply to
24   suits for contribution under § 113(f) of CERCLA, but DTSC has not
     asserted a CERCLA claim for contribution in this case – it only
25   asserts CERCLA claims for cost recovery and declaratory relief,
     in additional to the HSAA claim, which is not asserted against
26   C&A Products.  (Docket No. 43 at 19 (citing <u>Neville</u>, 358 F.3d at
     672).)  Further, "because declaratory relief claims are
27   derivative of cost recovery," <u>see</u> <u>Neville</u>, 358 F.3d at 672, §
     107(b)'s limitation on defenses applies to DTSC's claim for
28   declaratory relief as well.  (Docket No. 43 at 19).

1    negligence defenses."

2    (Docket No. 43 at 23.)

3            Intervenors provide no authority calling into question

4    this prior determination, but rather argue for a different

5    interpretation of the authorities relied on the court.  The court

6    sees no reason to depart from its prior determination regarding

7    the availability of comparative fault or contributory negligence

8    affirmative defenses.  Because negligence by the government is

9    not a defense to CERCLA, and correspondingly not a defense under

10   the HSAA, the court will strike Intervenors' seventh affirmative

11   defense.[4]

12   III. Motion to Strike Jury Demand

13           The Seventh Amendment entitles a party to a jury trial

14   in all "[s]uits at common law" in which the amount in controversy

15   exceeds twenty dollars, U.S. Const. amend. VII, but does not

16   require a jury trial for claims that are exclusively equitable in

17   nature, see Tull v. United States, 481 U.S. 412, 417-18 (1987).

18   DTSC requests to strike Intervenors' demand for a jury trial,

19   arguing that its claims are exclusively equitable in nature.

20           The court previously denied DTSC's similar motion to

21

22   _____

23           [4]    At oral argument, intervenors stated that their main
     reason for opposing the motion to strike their contributory and

24   comparative negligence affirmative defense was their desire to
     fully assert their theory that C&A was not the cause of the

25   contamination at the Elvira site.  However, as the court noted in
     its 2014 decision, CERCLA does not bar defenses related to

26   whether a defendant's conduct was the proximate cause of any
     release of hazardous substances.  (Docket No. 43 at 20-21

27   (citations omitted).)  Moreover, DTSC has not moved to strike
     Intervenors' other affirmative defenses, most of which pertain to

28   causation.

1    strike the jury trial demand asserted by defendant Jim Dobbas,

2    Inc.  (Docket No. 43 at 12-14.)  The court explained that there

3    was substantial authority that CERCLA cost recovery actions

4    provided restitution and were thus equitable in nature because

5    they seek to restore parties who incur cleanup costs to the

6    position they previously occupied.  Accordingly, these courts

7    have held that there is no right to a jury trial in CERCLA cost

8    recovery actions.  (Docket No. 43 at 13 (citing Cal. Dep't of

9    Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d

10   1028, 1046 (C.D. Cal. 2002) (collecting cases); Wehner v. Syntex

11   Corp., 682 F. Supp. 39, 40 (N.D. Cal. 1987)).)

12          However, the court noted that those authorities were

13   called into question by the Supreme Court's statement in Great-

14   West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204

15   (2002), in which it cautioned that "not all relief falling under

16   the rubric of restitution is equity."  Id. at 212.  Moreover, the

17   Second Circuit has held that "in light of [Great-West], it is by

18   no means clear that the restitution provided by § 9607(a) is

19   equitable, rather than legal, in nature."[5]  AMW Materials

20   Testing, Inc. v. Town of Babylon, 584 F.3d 436, 452 (2d Cir.

21   2009).

22          Given this uncertainty and the need to err on the side

23   of preserving the right to a jury, see Granite Rock Co. v.

24   International Brotherhood of Teamsters, 649 F.3d 1067, 1069 (9th

25   

26          [5]  This court also noted the split among courts whether
     there was a right to a jury trial for § 9613(f) contribution
27   claims.  (Docket No. 43 at 13-14 (citing Hatco Corp. v. W.R.
     Grace & Co. Conn., 59 F.3d 400, 412 n.9 (3d Cir. 1995)(collecting
28   cases).)

1  Cir. 2011), the undersigned determined that disposing of Dobbas'

2  jury demand as to the CERCLA claims was inappropriate on a motion

3  to strike.  The court also denied the motion to strike the jury

4  demand as to DTSC' claim under the HSAA because the civil

5  penalties authorized under the HSAA are essentially legal in

6  nature, as they go beyond restitution.  (Docket No. 43 at 14-15

7  (citations omitted).)

8         DTSC argues that Intervenors' jury demand should be

9  stricken given the authorities finding that cost recovery actions

10  are in fact equitable in nature.  DTSC also seeks to distinguish

11  this court's prior denial of the motion to strike Dobbas' jury

12  demand by noting that while it asserted an HSAA claims against

13  Dobbas, it has not asserted a claim under the HSAA against C&A

14  Products.  However, the court's 2014 order addressed DTSC's HSAA

15  claim separately from the CERCLA cost recovery and declaratory

16  relief claims when discussing whether Dobbas was entitled to a

17  jury.  In the court's view, the uncertainty raised by Great-West

18  and ANW Materials Testing alone was sufficient to warrant denial

19  of the motion to strike the jury demand.  Moreover, DTSC has

20  provided no authorities decided after Great-West and ANW

21  Materials Testing establishing that CERCLA cost recovery actions

22  are strictly equitable in nature.

23         Here, Intervenors are defending the same CERCLA claims

24  for cost recovery asserted by DTSC against Dobbas, and they also

25  assert a counterclaim for cost recovery similar to Dobbas'.  In

26  light of the continued uncertainty as to whether CERCLA cost

27  recovery actions are equitable in nature, the court will deny

28  DTSC's motion to strike Intervenors' jury demand.

1    IT IS THEREFORE ORDERED that DTSC's motion to dismiss
2 and motion to strike (Docket No. 279) are GRANTED IN PART.
3 Intervenors' counterclaims are DISMISSED.  Intervenor's seventh
4 affirmative defense for contributory and comparative negligence
5 is hereby STRICKEN.  DTSC's motion to strike Intervenors' jury
6 demand is DENIED.

7    Intervenors have twenty days from the date of this
8 Order is signed to file amended counterclaims, if they can do so
9 consistent with this Order.

10 Dated:  July 31, 2023

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

14