UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, and the TOXIC SUBSTANCES CONTROL ACCOUNT,<br><br>Plaintiffs,<br><br>v.<br><br>JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually, PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC; a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,<br><br>Defendants,<br><br>and<br><br>THE CONTINENTAL INSURANCE COMPANY, CENTURY INDEMNITY COMPANY, ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, and THE TRAVELERS INDEMNITY COMPANY,<br><br>Defendant-Intervenors. | No. 2:14-cv-595 WBS JDP<br><br>ORDER RE: PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

1

----oo0oo----

Plaintiffs the California Department of Toxic Substances Control and the Toxic Substances Control Account (collectively, "plaintiffs") move for partial summary judgment on the liability of defendant Collins & Aikman Products, LLC ("Collins & Aikman Products"), as the insured of defendant-intervenors the Continental Insurance Company, Century Indemnity Company, Allianz Underwriters Insurance Company, Chicago Insurance Company, Fireman's Fund Insurance Company, and the Travelers Indemnity Company (collectively, "intervenors"). (Docket No. 300.)[1]

Plaintiffs seek to recover costs for responding to an alleged release of hazardous chemicals at a former wood treatment site in Elmira, California ("the Elmira site"), as well as a declaratory judgment that Collins & Aikman Products is liable for such costs, via their first and second claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). (See Docket No. 77 at ¶¶ 37-45 (citing 42 U.S.C. §§ 9607(a), 9613(g)(2)).)

Before selling the Elmira site to former defendant Jim Dobbas, Inc. ("Dobbas"), Wickes Corporation owned and operated it. (See Decl. of McKinley Lewis, Jr. ("Lewis Decl.") Exs. C-D, F (Docket Nos. 300-4, 300-5).) On January 18, 1985, Wickes Corporation rebranded as Wickes Companies, Inc. (See Declaration

---

[1] At the conclusion of the hearing on the motion on July 7, 2025, the court called for additional briefing. Having read and considered the supplemental briefs, the court now decides the motion on the papers, without the need for additional oral argument. See L.R. 230(g). The scheduled September 2, 2025 hearing on the motion is hereby VACATED.

of James Potter ("Potter Decl.") Exs. A-B (Docket No. 311-2).)[2] Wickes Companies, Inc. renamed itself Collins & Aikman Group, Inc., on July 15, 1992. (See id. Ex. C.) On July 13, 1994, Collins & Aikman Group, Inc. merged into Collins & Aikman Products Co. (See id. Exs. E-F.) Collins & Aikman Products Co. became Collins & Aikman Products on December 31, 2007. (See id. Exs. G-H.)

Despite its awareness of the alleged contamination, Dobbas purchased the Elmira site from Collins & Aikman Products Co., while Collins & Aikman Products Co. agreed to continue environmental remediation there. (See Lewis Decl. Ex. F (Docket No. 300-5).)[3]

I. Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). A party may move for summary judgment either for one or more claims or defenses, or for portions thereof. See id. A material fact is one "that might affect the outcome of the suit under the governing law," and a genuine issue is one that could

---

[2] The court GRANTS plaintiffs' request for judicial notice (Docket No. 311-1) only as it pertains to Exhibits A-C and E-H of the Potter Declaration because the specified exhibits are "public records." See Cal. Ins. Co. v. Lara, 547 F. Supp. 3d 908, 914-15 & n.3 (E.D. Cal. 2021) (Shubb, J.) (citing Harris v. County of Orange, 682 F.3d 1126, 1131-32 (9th Cir. (2012)), aff'd on other grounds sub nom. Applied Underwriters, Inc. v. Lara, 37 F.4th 579, 585, 599-600 (9th Cir. 2023), cert. denied, 143 S. Ct. 748 (2023).

[3] On November 16, 2015, the court dismissed Dobbas from the case after it settled with plaintiffs. (See Docket No. 149 at 11-12.)

3

permit a reasonable trier of fact to enter a verdict in the non-moving party's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  However, "the underlying facts must be viewed in the light most favorable to the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citation modified).

II. Admissibility

Intervenors objected to plaintiffs' reliance on three cases from other courts which, according to plaintiffs, found that Collins & Aikman Products was a successor in interest to the Wickes Corporation.  See Herbolsheimer v. Collins & Aikman Prods., Inc., No. 224679, 2001 WL 1545893, at *1-2 (Mich. Ct. App. Nov. 30, 2001) (per curiam); Arevalo v. Saginaw Machine Sys., Inc., 344 N.J. Super. 490, 492-504 (App. Div. 2001); Ramos v. Collins & Aikman Grp., 977 F. Supp. 537, 537-40 (D. Mass. 1997).  However, the court need not address the question of whether it may apply either the doctrine of collateral estoppel or res judicata to compel the same conclusion here because it makes its own determination on the liability of Collins & Aikman Products based on the record before the court in this action.

Intervenors raised 46 other objections to two declarations and one request for judicial notice submitted by plaintiffs on the grounds of lack of foundation, lack of personal knowledge, lack of authentication, and inadmissible hearsay.

4

(See Docket No. 304-2 at 2-35.)

"This court has previously explained the inapplicability of many of these forms of objections at summary judgment. A court can award summary judgment only when there is no genuine dispute of material fact." Cal. Sportfishing Prot. All. v. Allison, No. 2:20-cv-2482 WBS AC, 2022 WL 3718253, at *2-3 (E.D. Cal. Aug. 29, 2022) (citation modified) (citing Burch v. Regents of the Univ. of Cal., 433 F. Supp. 2d 1110, 1118-21 (E.D. Cal. 2006) (Shubb, J.)). "Statements based on improper legal conclusions or without personal knowledge are not facts and can only be considered as arguments, not as facts, on a motion for summary judgment. Instead of challenging the admissibility of this evidence, lawyers should challenge its sufficiency." Id. (citation modified).

"Similarly, at the summary judgment stage, the court does not 'focus on the admissibility of the evidence's form,' but rather 'focuses on the admissibility of its contents.'" Id. (citation modified) (quoting Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003)). "Objections on the basis of a failure to comply with the technicalities of authentication requirements are, therefore, inappropriate. On summary judgment, unauthenticated documents may be considered where it is apparent that they are capable of being reduced to admissible evidence at trial." Id. (citation modified).

"The same is true for hearsay." Id. "If the contents of a document can be presented in a form admissible at trial -- for example, through live testimony by the author of the document -- the fact that the document itself is excludable hearsay

5

provides no basis for refusing to consider it on summary judgment." Id. (citation modified) (quoting Sandoval v. County of San Diego, 985 F.3d 657, 665-67 (9th Cir. 2021)).

Each ground for intervenors' objections presents only curable issues were the matter to proceed to trial. See Lewis v. Russell, No. 2:03-cv-2646 WBS CKD, 2012 WL 4747172, at *2-3 & n.1 (E.D. Cal. Oct. 3, 2012). For instance, plaintiffs may authenticate the challenged evidence which they seek to introduce at trial or lay a foundation for doing so. See Sportfishing, 2022 WL 3718253, at *2-3. Similarly, plaintiffs may call witnesses with personal knowledge to avoid introducing hearsay. See id.

This principle of disfavoring evidentiary objections at summary judgment holds true in CERCLA suits. See, e.g., City of Lincoln v. County of Placer, 668 F. Supp. 3d 1079, 1086-87 (E.D. Cal. 2023) (Mueller, J.); City of Lincoln v. United States, No. 2:16-cv-1164 KJM AC, 2020 WL 5107613, at *4-5 & nn.4-5 (E.D. Cal. Aug. 31, 2020); Lewis, 2012 WL 4747172, at *2-3 & n.1; United States v. Iron Mountain Mines, 724 F. Supp. 2d 1086, 1093-94 & n.2 (E.D. Cal. 2010) (Mendez, J.) (overruling evidentiary objections in CERCLA suit via footnote). Thus, intervenors' objections "are superfluous" and are all OVERRULED. See Sportfishing, 2022 WL 3718253, at *2-3.

III. Controlling Law

"CERCLA imposes 'strict liability for environmental contamination.'" Cal. Dep't of Toxic Substances Control v. Hearthside Residential Corp., 613 F.3d 910, 912 (9th Cir. 2010) (quoting Burlington N. & Santa Fe Ry. Co. v. United States, 556

U.S. 599, 608 (2009)). "CERCLA liability is joint and several, meaning that a responsible party may be held liable for the entire cost of cleanup even where other parties contributed to the contamination." Id.

By enacting CERCLA, "Congress has allocated the burden of disproving causation to the defendant who profited from the generation and inexpensive disposal of hazardous waste." Pakootas v. Teck Cominco Metals, Ltd. (Pakootas II), 905 F.3d 565, 591 (9th Cir. 2018) (citation modified). "Under CERCLA's burden-shifting procedures, once plaintiffs establish their prima facie case for response costs, the burden shifts to defendant." United States v. W.R. Grace & Co., 429 F.3d 1224, 1232 & n.13 (9th Cir. 2005) (citation modified).

The elements of a government entity's claim under § 9607(a) are (1) that the site of the contamination is a "facility" under 42 U.S.C. § 9601(9), (2) where a "release" or "threatened release" of a "hazardous substance" occurred, (3) which caused plaintiffs to respond and incur costs which were "necessary" and "consistent with the national contingency plan," and (4) defendant falls into one of four categories of persons subject to liability under the statute. See United States v. Chapman, 146 F.3d 1166, 1169 (9th Cir. 1998).

IV. Discussion

First, a "facility" is "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located" under CERCLA. See Pakootas v. Teck Cominco Metals, Ltd. (Pakootas I), 452 F.3d 1066, 1073-74 (9th Cir. 2006) (quoting 42 U.S.C. § 9601(9)(b)).

7

1  Plaintiffs have shown that several hazardous substances, such as
2  arsenic, chromium, and copper, have contaminated the Elmira site
3  for almost fifty years.  (See Lewis Decl. Exs. C-E, G (Docket
4  Nos. 300-5 to 300-6).)  Thus, the Elmira site is a CERCLA
5  facility.  See 42 U.S.C. § 9601(9)(b).
6         Second, a "release" means "any spilling, leaking,
7  pumping, pouring, emitting, emptying, discharging, injecting,
8  escaping, leaching, dumping, or disposing into the environment"
9  for purposes of CERCLA.  See Chapman, 146 F.3d at 1169-70 & n.1
10 (quoting 42 U.S.C. § 9601(22)).  The term "'environment' includes
11 ground water, drinking water supply, land surface or subsurface
12 strata, or ambient air under the jurisdiction of the United
13 States."  See Pakootas I, 452 F.3d at 1076-77 (citation modified)
14 (quoting 42 U.S.C. § 9601(8)).  Plaintiffs have demonstrated that
15 hazardous substances contaminated the Elmira site's soil.  (See,
16 e.g., Decl. of Maxine Cottrell ("Cottrell Decl.") Exs. A, C
17 (Docket No. 300-4).)  Therefore, a release of hazardous
18 substances occurred at the Elmira site.  See 42 U.S.C.
19 §§ 9601(8), (22).
20        Third, CERCLA defines "'respond' or 'response' to mean
21 remove, removal, remedy, and remedial action."  See Chapman, 146
22 F.3d at 1174 & n.9 (citation modified) (quoting 42 U.S.C.
23 § 9601(25)).  In addition, the statute clarifies that "'remove'
24 or 'removal'" includes "the cleanup of released hazardous
25 substances from the environment," as well as "the taking of such
26 other actions as may be necessary to prevent, minimize, or
27 mitigate damage to the public health or welfare or to the
28 environment, which may otherwise result from a release or threat

8

of release" of hazardous substances. See Pakootas II, 905 F.3d at 578-79 & n.10 (citation modified) (quoting 42 U.S.C. § 9601(23)).

As for "remedy" or "remedial action," CERCLA equates them with actions "taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger." See W.R. Grace, 429 F.3d at 1228-29 & n.6 (citation modified) (quoting 42 U.S.C. § 9601(24)). Plaintiffs have established that they responded to the release of hazardous substances at the Elmira site and incurred costs by monitoring the groundwater's levels of heavy metals and excavating contaminated soil. (See, e.g., Lewis Decl. Exs. G, I-P (Docket Nos. 300-6 to 300-7, 300-9 to 300-12).)

Finally, "the owner and operator of a vessel or facility" or "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of" is liable under CERCLA as a responsible party. See, e.g., 42 U.S.C. §§ 9607(a)(1)-(2); Hearthside Residential, 613 F.3d at 912-15. In analyzing the "owner and operator" language, the Ninth Circuit stated that "ownership is measured at the time of cleanup." See Hearthside Residential, 613 F.3d at 914-15.

Intervenors' concede that Collins & Aikman Products "was a current owner of the site." (See Docket No. 310 at 17-

18.)[4]  Their admission lines up with the Ninth Circuit's assertion in this case that Collins & Aikman Products was an "owner of the property during the relevant time." See Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc., 54 F.4th 1078, 1082-83 (9th Cir. 2022).[5]  This confirms that Collins & Aikman Products qualifies as an "owner and operator" and "a responsible party" under CERCLA.  See Hearthside Residential, 613 F.3d at 912-15 (quoting 42 U.S.C. § 9607(a)).[6]

Intervenors take the position that "whether Collins & Aikman Products qualifies as a 'current owner' under Hearthside is entirely independent of, and has no connection with, whether Collins & Aikman Products is a 'responsible party' for purposes of CERCLA liability."  (See Docket No. 310 at 17-18.)  However, intervenors misread Hearthside using a distinction without a difference.  See 613 F.3d at 912-13 (quoting 42 U.S.C. § 9607(a)).  In Hearthside, the Ninth Circuit explained that "at issue here is one type of potentially responsible party: 'the

---

[4] "In the instant case, intervenors are not contesting whether Collins & Aikman Products was a current owner of the site, which is all that Hearthside found.  However, intervenors instead dispute C&A Products' liability for response costs despite such status." (See Docket No. 310 at 17-18 (citation modified).)

[5] "A former owner of the property during the relevant time but missing from the suit was a defunct Delaware limited liability company, Collins & Aikman Products."  See Jim Dobbas, 54 F.4th at 1082-83.

[6] "At issue here is one type of potentially responsible party: the owner and operator of a vessel or a facility.  We interpret this category to refer to current owners or operators." See Hearthside Residential, 613 F.3d at 912-13 (citation modified).

10

owner and operator of a vessel or facility.'  We interpret this category to refer to 'current' owners or operators." See id.  Thus, a "current owner," such as Collins & Aikman Products, is but one kind of "responsible party" under CERCLA.  See id.

Intervenors do not disprove any elements of plaintiffs' prima facie showing of Collins & Aikman Products' CERCLA liability.  (See, e.g., Docket Nos. 304, 310.)  Nor do intervenors attempt to introduce any new evidence to create a single dispute of material fact.  See Fed. R. Civ. P. 56(a).  Accordingly, plaintiffs having established their prima facie case for response costs, Collins & Aikman Products has failed to satisfy its obligation of disproving causation, despite intervenors' assistance.  See, e.g., Pakootas II, 905 F.3d at 591; W.R. Grace, 492 F.3d at 1232 & n.13.

IT IS THERFORE ORDERED that plaintiffs' motion for partial summary judgment on the issue of Collins & Aikman Products' liability on their first CERCLA claim under 42 U.S.C. § 9607(a) (Docket No. 300) be, and the same hereby is, GRANTED; and JUDGMENT SHALL BE ENTERED declaring that Collins & Aikman Products is jointly and severally liable for future response costs which plaintiffs may incur at the Elmira site on their second CERCLA claim under 42 U.S.C. § 9613(g)(2).

Dated:  August 28, 2025

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

11